IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 04-833 (KAJ) |
| | ) | |
| v. | ) | |
| | ) | |
| SICOR INC. and SICOR | ) | |
| PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PHARMACIA'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE
DEFENDANTS' INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE AND DISMISS
DEFENDANTS' COUNTERCLAIM COUNT**

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200
mnoreika@mnat.com
*Attorneys Plaintiff*
*Pharmacia & Upjohn Company, LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
 HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

June 17, 2005

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| INTRODUCTION | 1 |
| NATURE AND STAGE OF THE PROCEEDING AND FACTUAL BACKGROUND | 2 |
| ARGUMENT | 4 |
| I.   Sicor Fails to Plead Inequitable Conduct with Specificity | 4 |
| II.  Sicor Fails to Plead a Cognizable Inequitable Conduct defense or declaratory judgment counterclaim | 7 |
| A.  There Is No Duty To Cite References Early In Prosecution | 7 |
| B.  There Is No Duty To "Highlight" References | 9 |
| CONCLUSION | 11 |

ii.

TABLE OF CITATIONS

Page(s)

**Cases**

*Bly-Magee v. California*,
        236 F.3d 1014 (9th Cir. 2001)                                        4

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
        106 F. Supp. 2d 667 (D.N.J. 2000)                                 8, 10

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*,
        394 F.3d 1348 (Fed. Cir. 2005)                                      9

*Design Time, Inc. v. Synthetic Diamond Tech., Inc.*,
        674 F. Supp. 1564 (D. Ind.1987)                                     4

*Eli Lilly and Co. v. Zenith Goldline Pharms., Inc.*,
        364 F. Supp. 2d 820 (S.D. Ind. 2005)                                8

*EMC Corp. v. Storage Tech. Corp.*,
        921 F. Supp. 1261 (D. Del. 1996)                                    4

*Haney v. Timesavers, Inc.*,
        900 F. Supp. 1378 (D. Or. 1995)                                    10

*Maryland Staffing Servs., Inc. v. Manpower, Inc.*,
        936 F. Supp. 1494 (E.D.Wis.1996)                                    5

*Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*,
        9 F. Supp. 948 (S.D. Fla. 1972)                                     9

*Prima Tek II, L.L.C. v. Polypap SARL*,
        316 F. Supp. 2d 693 (S.D. Ill. 2004)                               10

*Saporito v. Combustion Eng'g Inc.*,
        843 F.2d 666 (3d Cir.1988)                                          4

*Strange v. Nationwide Mut. Ins. Co.*,
        867 F. Supp. 1209 (E.D. Pa. 1994)                                   4

*United States v. EER Sys. Corp.*,
        950 F. Supp. 130 (D. Md. 1996)                                      4

iii.

**Other Authorities**

37 C.F.R. § 1.56                                                  *passim*

37 C.F.R. § 1.97                                                      7, 8

56 Fed. Reg. 37321                                                   7, 9

57 Fed. Reg. 2021                                                       9

M.P.E.P. § 2001.01                                                   6, 8

# INTRODUCTION

Sicor's allegations of inequitable conduct, pled as both an affirmative defense and declaratory judgment counterclaim count, should be stricken because they are deficient both procedurally and substantively.  Instead of identifying specific accused individuals as required by Rule 9(b), Sicor implicates the broad class of "[t]he inventors and the assignee of the '285 patent and their attorneys and agents ("the Applicants")" of inequitable conduct.  Sicor has accused them of two acts, neither of which would constitute inequitable conduct even if Sicor's allegations were true.  That is, there is no duty to "highlight" a reference to the Patent and Trademark Office or to cite a reference early in the prosecution of a patent application.  Thus, Sicor's allegations cannot support an affirmative defense or counterclaim count for inequitable conduct.  Pharmacia therefore respectfully requests this Court to strike Sicor's inequitable conduct affirmative defense and dismiss Sicor's inequitable conduct counterclaim count.

### NATURE AND STAGE OF THE PROCEEDING AND FACTUAL BACKGROUND

On July 8, 2004, Pharmacia brought this action against Sicor because of Sicor's infringement of U.S. Patent No. 6,107,285 (the "'285 patent"). On June 1, 2005, the final day for amendment of the pleadings, Sicor sought leave to file an Amended Answer to the First Amended Complaint,[1] Counterclaim and Demand for a Jury Trial. In that pleading, Sicor alleged for the first time that the '285 patent was procured through inequitable conduct. This Court granted Sicor's Motion for Leave on June 3, 2005, giving Pharmacia until June 17, 2005 to reply or otherwise plead.

Sicor's Counterclaim added a new inequitable conduct count, incorporated by reference into an inequitable conduct affirmative defense. Answer and Counterclaim, ¶¶ 24, 37-49. Both the affirmative defense and the counterclaim count identify those accused of inequitable conduct only generally: "The inventors and the assignee of the '285 patent and their attorneys or agents."[2] Answer and Counterclaim, ¶¶ 24,[3] 38. Sicor accuses those broad classes of persons of having effectively withheld material references, including a 1967 reference by Sandell and a 1959 reference by Schou and Jensen,[4] with an intent to deceive by burying such material references in a submission of 228 references submitted to the United States Patent and

---

[1]  The First Amended Complaint reflected a change in Pharmacia's name. It did not include any substantive changes.

[2]  In the June 17, 2005 Interim Status Hearing before the Court, Sicor as much as admitted that its identification of the accused was overinclusive. Sicor indicated that it was less interested in the deposition of Roberto DePonti, one of the inventors, than the depositions of other inventors because he was not the subject of the inequitable conduct charge.

[3]  Paragraph 24 uses slightly different language, but without a clear distinction in meaning: "the patentees and the assignees of the '285 patent, or their attorneys or agents." Answer, ¶ 24.

[4]  The Sandell and the Schou & Jensen references are books; each appears to be written in a Nordic language.

Trademark Office ("the Patent Office") very late in the course of prosecuting the application that matured into the '285 patent and only after learning that the Patent Office was going to allow some claims as a patent. Answer, ¶ 24. In the Counterclaim count, Sicor characterizes the alleged failure as a breach of the duty "to avoid dumping reams of information upon the Patent Office late in the course of the prosecution of the '742 Application and to not bury key references within such long lists of documents in hopes of appearing to discharge their duty of candor, but, in reality, hiding information from the Patent Office." Counterclaim, ¶ 41. Specifically, Sicor accuses the Applicants of failing to "highlight" the Sandell and the Schou & Jensen references to the Patent and Trademark Office.[5] Counterclaim, ¶ 47.

Sicor does *not* allege that anyone actually withheld information from the Patent and Trademark Office, only that someone "effectively" withheld the two references. Counterclaim, ¶ 49. Sicor must argue "effective" withholding because the references were disclosed to the Patent and Trademark Office in July 1998, as Sicor admits, long before the '285 patent issued in August 2000. Counterclaim, ¶¶ 46, 47. Further, while Sicor notes that the Sandell and the Schou & Jensen references were submitted with many others, it does not allege that the other submitted references were immaterial to the subject matter of the '285 patent. Finally, Sicor does not allege that any accused person knew of the submitted references earlier in the prosecution of the '742 Application. Thus, Sicor's allegation of "effective" withholding boils down to a complaint that too much was submitted at once.

---

[5]     Sicor actually accuses the Applicants of failing to highlight "material references," including the Sandell and the Schou & Jensen references. Counterclaim, ¶ 47. To the extent that Sicor's affirmative defense and Counterclaim count would be based on anything other than the Sandell and the Schou and Jensen references, Sicor has failed to plead with specificity.

## ARGUMENT

### I.   SICOR FAILS TO PLEAD INEQUITABLE CONDUCT WITH SPECIFICITY

Sicor's inequitable conduct allegations should be stricken as inadequately pled because they fail to identify with specificity the persons accused of inequitable conduct and improperly include the "assignee," "attorneys," and "agents." A claim that a patent was procured through inequitable conduct must be pled with particularity to satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996) (Farnan, J.). The purpose of Rule 9(b) heightened pleading standards is "to deter the filing of complaints as a pretext for the discovery of unknown wrongs," and to protect individuals from "the harm that comes from being subject to fraud charges." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

To satisfy Rule 9(b), a pleading must identify the specific individuals who are alleged to have acted inequitably. See *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 675 (3d Cir.1988) (holding that a complaint that did "not indicate who the speakers were ... or who received the information" did not meet the requirements of Rule 9(b)), *vacated on other grounds*, 489 U.S. 1049 (1989); *United States v. EER Sys. Corp.*, 950 F. Supp. 130, 132 (D. Md. 1996) (dismissing pleading for failing to name individuals accused of misrepresentation); *Strange v. Nationwide Mut. Ins. Co.*, 867 F. Supp. 1209, 1219-20 (E.D. Pa. 1994) (dismissing complaint for failing to identify individuals accused of misrepresentation). In contrast, "[a] complaint that attributes misrepresentations to all defendants, 'lumped' together for pleading purposes, generally is insufficient." *Design Time, Inc. v. Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564, 1569 (D. Ind.1987); *see also Maryland Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp.

1494, 1500 (E.D.Wis.1996) ("Rule 9(b) prohibits 'lumping together' all the defendants under a general accusation . . . ."). A failure to meet the specificity requirements is especially clear when persons not subject to any duty to speak, such as companies, are lumped into a general allegation of inequitable conduct.

In this case, Sicor never accuses any individual by name. The sole identification of persons accused of inequitable conduct is "[t]he inventors and the assignee of the '285 patent and their attorneys and agents ("the Applicants")." Counterclaim, ¶ 38. By setting forth an extremely broad and vague class of persons[6] – not limited to individuals – to be the subject of its allegations of inequitable conduct, Sicor sullies the reputation of nearly everyone associated with Pharmacia with a claim of dishonesty. That is the very sort of baseless accusation that Rule 9(b) was created to prevent.

Sicor exacerbates the harm caused by the baseless allegations of dishonesty through the inclusion of persons who, as a matter of law, cannot be held to have committed inequitable conduct. Sicor names four broad categories of persons it accuses of inequitable conduct: the inventors of the '285 patent, the assignee of the '285 patent, attorneys for the inventors and assignee of the '285 patent, and the agents of the inventors and assignee of the '285 patent. Counterclaim, ¶ 38. However, a corporate assignee *never* has a duty of candor and good faith to the Patent and Trademark Office and attorneys and agents have such a duty under only rare circumstances.

---

[6]    Sicor's idiosyncratic definition of "the Applicants" is far broader than the Patent and Trademark Office's definition. Under the Patent and Trademark Office's rules, "[u]nless the contrary is indicated the word 'applicant' when used in [37 C.F.R.] refers to the inventor or joint inventors who are applying for a patent, or to the persons mentioned in §§ 1.42, 1.43 or 1.47 who is applying for a patent in place of the inventor." 37 C.F.R. § 1.41(b) (Exh. A); M.P.E.P. § 605 (Exh. B). Thus, Sicor went out of its way to make its allegations of inequitable conduct improperly indeterminate and overbroad.

Sicor's accusation of the assignee of the '285 patent – Pharmacia – should be stricken because a corporate entity is not subject to any duty of disclosure. Under Patent and Trademark Office rules, only _individuals_ owe a duty of candor.  37 C.F.R. § 1.56(a) (Exh. B) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith . . ."). Any uncertainty about the interpretation of that provision disappears upon review of the Patent and Trademark Office's guidelines, which expressly state that "the duty applies only to individuals, not to organizations.  For instance, the duty of disclosure would not apply to a corporation or institution as such."  M.P.E.P. § 2001.01 (Exh. A).  Without a duty of disclosure, nothing Pharmacia has done could constitute inequitable conduct.  Thus, Sicor's allegations as pled should be stricken as an affirmative defense and counterclaim count due the inclusion of "the assignee of the '285 patent" as an accused person.

Similarly, most attorneys and agents of a company never have a duty of disclosure to the Patent and Trademark Office.  The duty is owed only by individuals "associated with the filing or prosecution of a patent application."  37 C.F.R. § 1.56(a) (Exh. B).  Individuals affiliated with the inventor or assignee have such a duty only if they are "substantively involved" in the prosecution of the application.  37 C.F.R. § 1.56(c) (Exh. B).  Other individuals have no duty of disclosure to the Patent and Trademark Office.  M.P.E.P. § 2001.01 (Exh. A).  These rules prevent specious charges of inequitable conduct based on claims that some individual, somewhere within a corporation, may have had information relevant to a patent application he knew nothing about.  That is the case with the vast majority of Pharmacia's attorneys and agents. Accordingly, Sicor's allegations as pled should be stricken as an affirmative defense and counterclaim count due the inclusion of "their attorneys and agents" as accused persons.

## II.   SICOR FAILS TO PLEAD A COGNIZABLE INEQUITABLE CONDUCT DEFENSE OR DECLARATORY JUDGMENT COUNTERCLAIM

This case does not involve a traditional claim of inequitable conduct, in which a patentee is alleged to have known of prior art, yet chose not to cite it.  Indeed, Sicor concedes that the patent applicants disclosed the relevant information to the Patent and Trademark Office. *See* Counterclaim, ¶¶ 46-47. Instead, Sicor bases its theory of inequitable conduct on allegations that the Applicants (1) failed to disclose the information "as early in prosecution of the [] Application as it was known," and (2) failed to "highlight those references which were known to be of significance." Counterclaim, ¶¶ 39, 40. Even if these allegations were taken to be true, it is well-settled that neither one constitutes inequitable conduct.

### A.   There Is No Duty To Cite References Early In Prosecution

Sicor alleges that the Applicants breached a duty under which they were required to reveal relevant information to the PTO "as early in prosecution of the [] Application as it was known." Counterclaim, ¶ 39.  No such duty exists.  Patent and Trademark Office rules are intended to "provide flexible time limits for submitting information disclosure statements." 56 Fed. Reg. 37321 (Aug. 6, 1991) (Exh. C). According to these time limits, the PTO allows patent applicants to submit references at any time "before payment of the issue fee."  37 C.F.R. § 1.97(d) (Exh. B).  Sicor does not, and cannot, make any allegation that the Sandell and Schou & Jensen references were submitted after payment of the issue fee.

As a matter of law, the duty of candor is satisfied if material prior art is submitted before payment of the issue fee.  Under 37 C.F.R. § 1.56(a) (Exh. B), "[t]he duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or

submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98." 37 C.F.R. § 1.56(a) (Exh. B). The courts have similarly recognized that an applicant who follows Patent and Trademark Office rules cannot properly be accused of inequitable conduct.

> "PTO procedure allows a patent applicant to file an information disclosure statement at any time before the PTO closes the prosecution of the application. 37 C.F.R. § 1.97(c). An applicant who fails to disclose prior art cannot be said to have acted inequitably when the information was, in fact, considered by the PTO."

*Eli Lilly and Co. v. Zenith Goldline Pharms., Inc.*, 364 F. Supp. 2d 820, 916-17 (S.D. Ind. 2005); *see also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 106 F. Supp. 2d 667, 691 n.13 (D.N.J. 2000) ("Rule 1.56 and the Federal Circuit are now consistent in holding that where an examiner ultimately considers a reference, the applicant's failure to disclose that reference to the USPTO cannot support a finding of inequitable conduct.").

Here, there is no dispute that the Sandell and Schou & Jensen references were submitted to the Patent and Trademark Office with an Information Disclosure Statement before the close of substantive prosecution. Under these circumstances, the examiner was *required* to consider the references. 37 C.F.R. § 1.97(c) (Exh. B). There is also no dispute that the examiner considered the references, as he initialed the Information Disclosure Statement by each reference to indicate his review. Under these circumstances, it is clear that the Applicants satisfied their duties *as a matter of law* and Sicor's inequitable conduct charge must fail.

In addition to the legal insufficiency of Sicor's argument, the delayed submission theory of inequitable conduct must fail because Sicor did not plead a factual basis for such a theory. An individual associated with the filing and prosecution of a patent has a duty of candor, but only with regard to "information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a) (Exh. B); M.P.E.P. § 2001.04 (Exh. A). Sicor does not allege that the

Applicants knew of the Sandell and Schou & Jensen references early in the prosecution of the '742 Application. Thus, there is no factual basis for suggesting the Applicants were derelict in discharging any duty to cite the references at that time.

### B.    There Is No Duty To "Highlight" References

If there ever was a duty to "highlight" references, it is clear that duty did not apply to the application that issued as the '285 patent. Indeed, far from imposing a duty to highlight the most relevant information, the Patent and Trademark Office actually *eliminated* any argument that such a requirement existed when it amended its rules in 1992.[7] A patent applicant's duty of candor is defined by 37 C.F.R. § 1.56 (Exh. B). *See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1352 (Fed. Cir. 2005) ("[W]e have consistently referred to the definition provided in 37 C.F.R. § 1.56, by which the PTO has promulgated the duty of disclosure."). Section 1.56 was amended in 1992 in order to "clarify the duty of disclosure for information required to be submitted to the Office." 56 Fed. Reg. 37321 (Aug. 6, 1991) (Exh. C). One purpose of the change was to "facilitate the filing of information" with the Patent and Trademark Office by "eliminating, in most cases, the requirement for a concise statement of the relevance of each item of information listed in an information disclosure statement." 57 Fed. Reg. 2021 (reply to comment 4) (Exh. D). That is, in applications pending after 1992, there is no duty to highlight relevant information. It is unambiguously written into § 1.56 that an applicant's

---

[7]    It is questionable whether there was *ever* an independent duty to highlight the most relevant references submitted to the Patent and Trademark Office. *Cf. Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*, 359 F. Supp. 948, 965 (S.D. Fla. 1972) (finding inequitable conduct where the patentee was alleged not only to have "buried" a reference, but also to have affirmatively mischaracterized that reference to the Patent and Trademark Office). In any event, the 1992 amendments to the C.F.R. and subsequent Federal Circuit rulings make it clear that no such duty applied to the prosecution of the '285 patent.

duty to disclose is "deemed to be satisfied" once relevant information is disclosed under the rules—rules that do not require any "highlighting." *See* 37 C.F.R. 1.56(a) (Exh. B).[8]

Courts have repeatedly confirmed that there is no duty to "highlight." In *Haney v. Timesavers, Inc.*, an accused infringer alleged that the patentee had buried relevant prior art among ninety-one "other, mostly far less relevant, references." 900 F. Supp. 1378, 1381 (D. Or. 1995). The court unambiguously held that this fact "cannot form the basis for a claim of inequitable conduct. The court cannot infer an intent to deceive on the part of Haney from the manner in which the information was conveyed to the Patent Office when the information was, in fact, conveyed." *Id.* at 1382.

In *Prima Tek II, L.L.C. v. Polypap SARL*, the patentee was accused of having "buried references among many other unrelated references in order to mislead the PTO examiner." 316 F. Supp. 2d 693, 710 (S.D. Ill. 2004). In that case, the patentee had even "received a letter . . . that the references obscured Plaintiffs' prior art statement." *Id.* However, the examiner had "initialed each of the references indicating that he considered each of them when deciding to allow the [] patent to issue." *Id.* As a result, the *Prima Tek* court concluded that there was "no basis upon which to conclude that the prior art submissions made by Plaintiffs and their attorneys were improper." *Id.*; *see also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F. Supp. 2d 508, 546 (D.N.J. 1999) ("Schering has failed to set forth even a mildly tenable defense of inequitable conduct based upon Boehringer's submission of the L.C.I. booklet to the USPO without highlighting the Drs. Dea and Van Alstine articles."). As in *Prima Tek*, the examiner in this case initialed the Information Disclosure Statement to indicate his review of the

---

[8]     The relevant amendment to § 1.56 is applicable to all applications pending or filed after March 16, 1992, including the application for the '285 patent. *See Bruno*, 394 F.3d at 1352.

Sandell and the Schou & Jensen references.  Accordingly, his Court should dismiss Sicor's arguments based on a failure to "highlight" the references.

## CONCLUSION

For the foregoing reasons, Pharmacia requests that the Sicor's affirmative defense and counterclaim of inequitable conduct be stricken and dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200
mnoreika@mnat.com
  *Attorneys Plaintiff*
  *Pharmacia & Upjohn Company, LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

June 17, 2005