IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY, LLC,

Plaintiff,

v.

SICOR INC. and SICOR PHARMACEUTICALS, INC.,

Defendants.

C.A. No. 04-833-KAJ

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PHARMACIA'S MOTION TO STRIKE DEFENDANTS' INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE AND DISMISS DEFENDANTS' COUNTERCLAIM COUNT**

ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Brian T. Moriarty
Michael S. Gugig
Justin N. Kattan
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated: July 8, 2005
159284.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................ 1

ARGUMENT ........................................ 3

I. STANDARD OF REVIEW ........................................ 3

II. SICOR HAS PLED INEQUITABLE CONDUCT WITH ADEQUATE SPECIFICITY ........................................ 4

III. SICOR STATES A CLAIM FOR INEQUITABLE CONDUCT ........................................ 10

CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES

### CASES

*ALA, Inc. v. CCAIR, Inc.*,
29 F.3d 855 (3d Cir. 1994)....................3

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
68 F. Supp. 2d 508 (D.N.J. 1999).................... *passim*

*Concept Innovation v. CFM Corp.*,
No. 04 C3345, 2005 WL 670637 (N.D. Ill. Mar. 21, 2005)....................5, 7, 10

*Design Time, Inc. v. Synthetic Diamond Technology, Inc.*,
674 F. Supp. 1564 (N.D. Ind. 1987)....................8

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
364 F. Supp. 2d 820 (S.D. Ind. 2005)....................12

*Enzo Life Sciences, Inc. v. Digene Corp.*,
270 F. Supp. 2d 484 (D. Del. 2003)....................9, 10

*Frorup-Alie v. V.I. Housing Finance Authority*,
No. Civ. NO. 200-0086, 2003 WL 23515136 (D.V.I. Oct. 26, 2003)....................7

*Fuentes v. South Hills Cardiology*,
946 F.2d 196 (3d Cir. 1991)....................3

*Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co., Inc.*,
837 F. Supp. 1444 (N.D. Ind. 1992)....................11

*Haney v. Timesavers, Inc.*,
900 F. Supp. 1378 (D. Or. 1995)....................13

*MBIA Insurance Corp. v. Royal Indemnity Co.*,
221 F.R.D. 419 (D. Del. 2004)....................2, 4, 5, 8

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995).................... *passim*

*Paragon Podiatry Laboratories, Inc. v. KLM Laboratories, Inc.*,
984 F.2d 1182 (Fed. Cir. 1993)....................10

*Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*,
359 F. Supp. 948 (S.D. Fla. 1972)....................11

*Prima Tek II, L.L.C. v. Polysap Sarl*,
316 F. Supp. 2d 693 (S.D. Ill. 2004)....................12

*Saporito v. Combustion Engineering, Inc.*
843 F.2d 666, 675 (3d Cir. 1988)....................................................................................8

*Scripps Clinic & Research Foundation v. Baxter Travenol Laboratoriess, Inc.*,
Civ. A. No. 87-140-CMW, 1988 WL 22602 (D. Del. Mar. 9, 1988) ..................................4, 5

*Semiconductor Energy Laboratories Co., Ltd. v. Samsung Electric Co., Ltd.*,
204 F.3d 1368 (Fed. Cir. 2000)...........................................................................10, 14

*Trueposition, Inc. v. Allen Telecom, Inc.*,
No. C.A. 01-823, 2003 WL 151227 (D. Del. Jan. 21, 2003).......................................4, 5, 6, 7

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*,
No. 99-CV-274-SLR, 2000 WL. 1481015 (D. Del. Sept. 29, 2000) ....................................7, 8

*U.S. v. EER System Corp.*,
950 F. Supp. 130 (D. Md. 1996) ....................................................................................8

**REGULATIONS**

37 C.F.R. §1.56 ...................................................................................................9, 14

**MISCELLANEOUS**

J. Mills III, D. Reiley III, and R. Highley, Patent Law Fundamentals, §15:78 (2005).................11

Manual of Patent Examining Procedure, §2004 (7th Ed. 1998) ..................................................12

Manual of Patent Examining Procedure, §2001.01 (May 2004) ............................................9, 12

Defendants Sicor Inc. and SICOR Pharmaceuticals, Inc. (collectively "Sicor") respectfully submit this Memorandum of Law in opposition to the motion, filed by Plaintiff Pharmacia & Upjohn Company, LLC ("Pharmacia"), to strike Sicor's inequitable conduct affirmative defense, and to dismiss Sicor's counterclaim (the "Motion").[1]

## PRELIMINARY STATEMENT

Sicor's Answer sufficiently states an affirmative defense and cause of action for inequitable conduct. Contrary to Pharmacia's assertion, the Federal Circuit and district courts around the country have recognized that an inequitable conduct claim can be based upon allegations that a party "buried" material prior art references during patent prosecution. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F. Supp. 2d 508, 545 (D.N.J. 1999) ("burying a relevant, material prior art reference among a multitude of less pertinent references can support a finding of inequitable conduct."). This is precisely what Sicor's Answer alleges – and more. Not only did Pharmacia's inventors, attorneys and agents (the "Applicants") bury material prior art references in a 228-reference submission to the Patent and Trademark Office ("PTO"), identified as the Ninth Supplemental Information Disclosure Statement ("Ninth Supplemental IDS"), but this disclosure was made by Pharmacia ***only after the PTO informed the Applicants that some of the claims in the '742 Application, which ultimately resulted in the '285 Patent at issue here, would be allowed to issue as a patent***. Moreover, the buried references directly contradicted statements made to the PTO by the Applicants in support of the '742 Application.

---

[1] For ease of reference, a copy of Sicor's Amended Answer to First Amended Complaint, Counterclaim and Demand for a Jury Trial (the "Answer") is attached hereto as Exhibit A.

Given the clear line of authority recognizing that "burying" allegations can support a finding of inequitable conduct, Pharmacia attempts to deflect the Court's attention by discussing at length the "duty to highlight" and "duty to disclose early in prosecution." But those are not the duties at issue here. Rather, the Applicants' duty of ***candor*** to the PTO – and their breach of that duty – form the basis of Sicor's counterclaim and affirmative defense.

Pharmacia's attempt to defeat the counterclaim based upon a purported lack of pleading specificity also fails. As Judge Farnan recently held, parties are not required to provide an "exhaustive cataloging" of facts in order to satisfy Rule 9(b). *See MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004). Instead, Rule 9(b) only requires that parties plead facts sufficient to place alleged wrongdoers on notice of the factual basis for the allegations against them. *Id.* Sicor's counterclaim easily satisfies that standard, specifically alleging the chronology of relevant events, the wrongful acts taken by the Applicants, their intent to deceive the PTO, and the methods by which they perpetrated their deception. Among other things, the Answer alleges that:

- From 1992, when the '742 Application process began, through June 1998, Pharmacia's inventors, attorneys and agents made statements to the PTO that are refuted by two prior art references – a 1967 reference by Sandell (the "Sandell Reference") and a 1959 reference by Schou and Jensen (the "Schou & Jensen Reference"). (Answer, ¶¶ 44, 47).

- Pharmacia finally disclosed these highly material prior art references only *after* the PTO had informed them that some claims in the '742 Application would be allowed as a patent. (*Id.* ¶¶ 45).

- In disclosing these prior art references, Pharmacia's attorneys "buried" them in the Ninth Supplemental IDS, knowing that, given the late stage of the patent prosecution, and after six years of dealing with the '742 Application, the PTO would give little attention to these material references. (*Id.* ¶ 46).

The timing and manner in which the two buried references were submitted, in addition to the fact that those references explicitly contradict statements the Applicants made to the PTO in order to

secure what became the '285 Patent, gives rise to a strong inference that the Applicants intended to deceive the PTO.

Pharmacia's Motion ignores directly applicable caselaw holding that, with respect to inequitable conduct claims, Rule 9(b) requires only that a pleading disclose the name of the allegedly withheld relevant prior art and the acts of the alleged inequitable conduct. Pharmacia does not dispute that Sicor has satisfied these requirements. Pharmacia's claim that Rule 9(b) requires Sicor to "name names" is contrary to controlling legal authority.

In short, Sicor has stated a valid affirmative defense and counterclaim based upon the inequitable conduct of the Applicants in their pursuit of the '285 Patent.

## ARGUMENT

### I. STANDARD OF REVIEW

It is axiomatic that, unless Pharmacia demonstrates that Sicor can prove no set of facts that would entitle it to relief, Pharmacia's Motion should be denied. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fuentes v. South Hills Cardiology*, 946 F.2d 196, 201 (3d Cir. 1991). In making this inquiry, the Court must accept as true, and view in the light most favorable to Sicor, the well-pleaded allegations of the Answer. *See Fuentes*, 946 F.2d at 201 (in deciding a motion to dismiss, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them"). Moreover, the counterclaim should be viewed "as a whole and [the ruling should be based] not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable." *Trueposition, Inc. v. Allen Telecom, Inc.*, No. C.A. 01-823, 2003 WL 151227, at *1 (D. Del. Jan. 21, 2003) (citations omitted) (attached as Exhibit B).

Like motions to dismiss, motions to strike affirmative defenses are "disfavored." *Id.* When ruling on such a motion, the Court must construe all facts in favor of the non-moving

party, and deny the motion if the defense is "sufficient under the law." *Id.* A court should not grant a motion to strike "if there are questions of fact or law remaining to be adjudicated." *Scripps Clinic & Research Found. v. Baxter Travenol Labs., Inc.*, Civ. A. No. 87-140-CMW, 1988 WL 22602, *3 (D. Del. Mar. 9, 1988) (attached as Exhibit C). Such questions plainly exist here.

## II. SICOR HAS PLED INEQUITABLE CONDUCT WITH ADEQUATE SPECIFICITY

While Federal Rule of Civil Procedure 9(b) requires that all pleadings of fraud or mistake be stated with particularity, "[t]hese averments… remain subject to the liberal pleading standard of Rule 8, which requires only a 'short and plain' statement of a claim or defense." *Trueposition, Inc.*, 2003 WL 151227, at *5; *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004) ("Rule 9(b) does not require the exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated… the alleged fraud and reasonably believes that a wrong has occurred."). To satisfy Rule 9(b), an affirmative defense or counterclaim must simply "place the plaintiffs on notice of the misconduct with which they are charged." *Trueposition, Inc.*, 2003 WL 151227, at *5; *MBIA Inc. Corp.*, 221 F.R.D. at 421; *Concept Innovation v. CFM Corp.*, No. 04 C3345, 2005 WL 670637, *2 (N.D. Ill. Mar. 21, 2005) (denying motion to dismiss/strike inequitable conduct affirmative defense/counterclaim where pleading gave plaintiff "sufficient notice of the facts giving rise to the affirmative defenses") (attached as Exhibit D).

Where the basis for a claim is alleged inequitable conduct before the PTO during a patent prosecution, "***pleadings that disclose the name of the allegedly withheld relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of 9(b)***." *Trueposition, Inc.*, 2003 WL 151227, at *5, *citing EMC Corp. v. Storage Tech Corp.*, 921 F. Supp. 1261, 1263 (D. Del.

1996) (emphasis added). Indeed, in *Scripps Clinic & Research Foundation*, *supra* (Ex. C), Judge Wright held that a defense of inequitable conduct was sufficiently pled when defendants simply "allege[d] that [the plaintiff] failed to identify to the PTO relevant prior art of which it was aware." 1988 WL 22602, at *3. Sicor's Answer sets forth these requisite allegations.

Sicor's Answer specifically identifies two prior art publications – the Sandell and Schou & Jensen references – that the Applicants effectively withheld from the PTO during prosecution of the '742 Application. (*See* Answer, ¶ 47). Sicor's Answer also expressly sets forth the "acts of the alleged" misconduct, including (among other things): 1) the manner in which the Applicants "buried" the Sandell and Schou & Jensen references among 228 others submitted with Pharmacia's ***Ninth*** Supplemental IDS (*Id.* ¶¶ 46-48); 2) that the individuals who prosecuted the '742 Application failed to disclose the Sandell and Schou & Jensen references even though, for more than six years, they made representations to the PTO that are contradicted by this material prior art (*Id.* ¶¶ 44, 46);[2] and 3) that the Applicants did not disclose these references until *after* they had been informed by the PTO that some of the claims of the '742 Application would be allowed to issue as a patent, at which time the Applicants knew that the PTO examiner would afford these references little or no scrutiny (*Id.* ¶¶ 45-46).

Judge Sleet's decision in *Trueposition, Inc.* is instructive here. In that case, plaintiffs moved to strike the defendants' inequitable conduct affirmative defense and counterclaim, on the grounds that they failed to meet the pleading requirements of Rule 9(b). Judge Sleet denied the motion, finding that "[t]he pleading requirements are satisfied by [defendant's] third affirmative

---

2 Specifically, the Answer alleges that the Sandell and Schou & Jensen references refute or are inconsistent with the Applicants' position, stated repeatedly throughout the '742 Application process, that persons skilled in the art would not adjust the pH of injectable solutions to a level

(Footnote continues on next page.)

defense[, which] constitutes one paragraph which names the title and publication date of at least one allegedly withheld material prior art publication," and that this was sufficient to "apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings as Rule 9 requires." 2003 WL 151227, at *5 (internal citation omitted).

As in *Trueposition, Inc.*, Sicor has "place[d] the plaintiffs on notice of the misconduct with which they are charged" – the apparent withholding, for over six years, and then the burying of material prior art references during the patent prosecution process. *Id.*; *Molins PLC, supra*; *Boehringer Ingelheim Vetmedica, Inc., supra*. Sicor's Answer sufficiently notified Pharmacia that the alleged misconduct was based on the its inventors', attorneys' and agents' failure to disclose properly to the PTO the Sandell and Schou & Jensen references.

Unable to deny that Sicor's pleading sufficiently places them on notice of the specific claims against them, Pharmacia engages in semantic gamesmanship, arguing that Sicor was required under Rule 9(b) to name the "specific individuals" who are alleged to have acted inequitably. This is not the law. Sicor's Answer leaves no doubt as to which individuals are responsible for the misconduct alleged – those attorneys, inventors and agents responsible for "burying" the Sandell and Schou & Jensen references in the Ninth Supplemental IDS, and those attorneys, inventors and agents responsible for misleading the PTO throughout the six years prior to the submission of the Ninth Supplemental IDS.[3] Sicor's Answer alleges what these

above 2 using an acid. (*Id.* ¶¶ 44, 47).

[3] The attorneys who submitted the Ninth Supplemental IDS are Jeremy E. Noe and Emily Maio. (*See* Exhibit E). One of the inventors, Carlo Confalonieri, signed the May 27, 1991 declaration cited in ¶44 of the Answer, which contained representations that were inconsistent with the Sandell and Schou & Jensen References. Another of Pharmacia's patent attorneys, Daniel Boehnen, submitted Dr. Confalonieri's declaration to the PTO on July 12, 1996. (*See* Exhibit F). To the extent the Court finds that Sicor should have specifically listed these

(Footnote continues on next page.)

individuals did wrong (and specifically identifies certain of their misrepresentations), when those individuals acted improperly, and to whom they made the misrepresentations at issue. This is more than sufficient under Rule 9(b). *See e.g.*, *Concept Innovation*, 2005 WL 670637, at *2 (denying motion to dismiss counterclaim for failure to plead inequitable conduct with requisite particularity where defendants' "allegations state the who (Lucas entities), what (misrepresentations of the real owners), where ([the PTO]) and when (during patent prosecution) of the alleged inequitable conduct"); *see also Trueposition, Inc.*, 2003 WL 151227, at *5 ("[T]he Third Circuit has made clear that, although 'it is true that allegations of date, place or time satisfy the pleading requirements, nothing in [Rule 9] requires them.'"), *quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Union Carbide*, 2000 WL 1481015, at *2.

The cases cited by Pharmacia do not establish the existence of a hard-and-fast rule requiring a party to "name names" in order to satisfy Rule 9(b). For instance, in *Design Time, Inc. v. Synthetic Diamond Technology, Inc.*, the Court dismissed plaintiffs' fraud claim, not because the amended complaint failed to name those who made misrepresentations, but because the Court found that the pleading in that case, unlike Sicor's Answer, "alleges nothing more than that misrepresentations were made," and "gives ***no hint*** as to what was said, to whom, by whom,

---

individuals by name in the Answer, we note that courts often allow parties clarify their pleadings in briefs opposing motions to dismiss. *See, e.g., Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, No. 99-CV-274-SLR, 2000 WL 1481015, *4 (D. Del. Sept. 29, 2000) (attached as Exhibit G); *Frorup-Alie v. V.I. Housing Fin. Auth.*, No. Civ. NO. 200-0086, 2003 WL 23515136 (D.V.I. Oct. 26, 2003) (attached as Exhibit H). In all events, should the Court find that the Answer should have named these individuals, Sicor respectfully requests that the Court grant it leave to re-plead its inequitable defense affirmative defense and counterclaim.

when or where." 674 F. Supp. 1564, 1571 (N.D. Ind. 1987) (emphasis added).[4] And contrary to Pharmacia's assertion, this situation is not analogous to cases, like *Saporito*, where a complaint attributes fraudulent misstatements to multiple defendants "lumped" together. Here, there is only one counterclaim-defendant, Pharmacia, and Sicor has identified specific misrepresentations attributable to a limited group of individuals within Pharmacia – the attorneys, inventors and agents who prosecuted the '742 Application – thus complying with Rule 9(b). *See MBIA Ins. Corp. Co.*, 221 F.R.D. at 422 (distinguishing *Saporito* and other cases in which "courts are compelled to dismiss complaints because of vague attributions of fraudulent statements to 'defendants,'" from the case at bar, where the pleading "details specific instances of fraud and misrepresentation" committed by a named defendant individually or through entities controlled and/or owned by that defendant, and thus gave "defendants notice of the claims against them").

Pharmacia's last ditch argument – that the definition of "Applicants" in Sicor's Answer is overly broad, and encompasses individuals or entities that may not have a duty of candor to the PTO – is a red herring. Sicor's allegations are directed to the inventors and those individual "attorneys and agents" that acted on Pharmacia's behalf "while prosecuting the ['742] application." (Answer, ¶¶ 38-39). Pharmacia cannot deny that "patent applicants and their patent attorneys," to whom Sicor specifically attributes the misconduct at issue (*id.* ¶ 38), "have a duty of candor, good faith and honesty in their dealings with the PTO." *See Enzo Life Sciences, Inc.*

---

4 The plaintiffs' allegations in *Saporito v. Combustion Engineering, Inc.* were similarly vague – the complaint only indicated the "general content of the representations," the misrepresentations at issue were attributed generally to "defendants and/or persons acting under their direction and control," and plaintiffs did not indicate who received the alleged misinformation. 843 F.2d 666, 675 (3d Cir. 1988), *vacated by* 489 U.S. 1049 (1989). *See also U.S. v. EER Sys. Corp.*, 950 F. Supp. 130, 132 (D. Md. 1996) (dismissing fraud claims, without prejudice, where plaintiff's complaint, in addition to failing to name the persons who made the

(Footnote continues on next page.)

*v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003), *citing* 37 C.F.R. §1.56(a). While Pharmacia contends that "the vast majority" of their attorneys and agents owed no duty to the PTO, it is indisputable that each of the attorneys "who prepare[d] or prosecute[d]" the '742 application – for instance, Mr. Noe and Ms. Maio, whose signatures appear on the Ninth Supplemental IDS – were bound by a duty of good faith and candor in dealing with the PTO. 37 C.F.R. §1.56(c)(2).[5]

## III. SICOR STATES A CLAIM FOR INEQUITABLE CONDUCT

"The duty of candor, good faith and honesty [that patent applicants and their attorneys owe to the PTO] includes the duty to… disclose to the PTO information known to the patent applicants or their attorneys which is material to the examination of the patent application." *Enzo Life Sciences, Inc.*, 270 F. Supp. 2d at 489. An intentional breach of that duty may constitute inequitable conduct. *Id.* Pharmacia cannot dispute that a patent holder who "deliberately deceive[s]" the PTO by "constructively withh[olding]" material references, "hardly satisfies the duty of candor required of every applicant before the PTO." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elec. Co., Ltd.*, 204 F.3d 1368, 1378 (Fed. Cir. 2000).[6]

---

representations, did not specifically state either what misrepresentations were made, or what defendant(s) acquired as a result of the alleged misrepresentations).

5 The materials cited by Pharmacia make clear that while the duty of disclosure applies only to those who are "substantively involved in the preparation or prosecution of the application," that limitation exempts "typists, clerks and similar personnel who assist with an application" from any duty, rather than the attorneys who prosecute the patent application. *See* Manual of Patent Examining Procedure, §2001.01 (May 2004). Pharmacia's argument that Sicor's allegations could encompass any of its employees and agents anywhere in the world is, to put it mildly, a remarkable overstatement of the obvious intent of Sicor's counterclaim and affirmative defense.

6 Intent to deceive the PTO need not be proven by direct evidence. *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189-90 (Fed. Cir. 1993) ("[S]moking gun evidence is not required in order to establish an intent to deceive."). Rather, this element of

(Footnote continues on next page.)

Pharmacia does not dispute that the Sandell and Schou & Jensen references were "material" to the '742 Application. Rather, it asserts that simply because the Applicants provided the references to the PTO – albeit ***after*** being informed by the PTO that the patents would issue, and then only buried in a voluminous submission containing hundreds of references – the duty of disclosure is satisfied as a matter of law. Nonsense. It is well-settled that intent to deceive the PTO can be inferred where, as here, material references are "buried," or effectively hidden in a long list of other references. *See Molins PLC*, 48 F.3d at 1184 ("'burying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith."). In *Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co., Inc.,* 837 F. Supp. 1444, 1477 (N.D. Ind. 1992), *aff'd*, 11 F.3d 1072 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1128 (1994), the district court could not have been more clear on this point, holding:

> The court further holds that it is likewise a violation of the duty of candor and fair dealing with the [PTO] for an applicant or its attorney to disclose a pertinent prior art patent reference to the examiner in such a way as to 'bury' it or its disclosures in a series of disclosures of less relevant prior art references, so that the examiner would be likely to ignore the entire list and permit the application to issue.

*See also Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*, 359 F. Supp. 948 (S.D. Fla. 1972), *aff'd*, 479 F.2d 1338 (5th Cir. 1973), *cert. denied*, 414 U.S. 874 (1974) (finding that where patent holder buried prior art "in a long list of allegedly old prior art patents in the hope that the Patent

---

inequitable conduct is generally inferred from the facts and circumstances surrounding the applicant's overall conduct. *See Molins, PLC v. Textron, Inc.*, 48 F.3d, 1172, 1184 (Fed. Cir. 1995) ("[I]ntent to deceive should be determined in light of the realities of patent practice, and not as a matter of strict liability whatever the nature of the action before the PTO"); *Concept Innovation*, 2005 WL 670637, at *2 ("intent can be inferred from the allegations"). Pharmacia cannot colorably attempt to require Sicor to prove intent (or any other element of its

(Footnote continues on next page.)

Examiner... would ignore the list and permit the...patent to issue [, s]uch conduct clearly violates the required standard of candor and fair dealing with the [PTO]"); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F. Supp. 2d 508, 545 (D.N.J. 1999) ("Several courts have held that burying a relevant, material prior art reference among a multitude of less pertinent references can support a finding of inequitable conduct."); J. Mills III, D. Reiley III, and R. Highley, Patent Law Fundamentals, §15:78 (2005) ("It has been deemed a violation of the duty of candor for an applicant to disclose a pertinent prior art reference to the Examiner in such a way as to 'bury' it or its disclosure in a series of disclosures of less relevant prior art references so that the Examiner would be likely to ignore the entire list and permit the application to issue.").[7]

Pharmacia's attempts to dismiss Sicor's "burying" allegations, by contending that courts have found that there is neither a "duty to cite references early in prosecution," nor a "duty to highlight" material references, flies in the face of this established body of law – including *Molins PLC*, controlling legal authority which Pharmacia fails to address, much less distinguish – all of which acknowledges that "burying" material references can support a claim for inequitable conduct. ***None*** of the cases Pharmacia cites supports its contention that an inequitable conduct

---

counterclaim and affirmative defense) at the pleading stage. To the contrary, Sicor is entitled to discovery on the issue so that it may prove its allegations at a later point in time.

[7] Additionally, the PTO's Manual for Patent Examination Procedure in effect at the time the Ninth Supplemental IDS was filed specifically discourages "burying" material references:

> It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to applicant's attention and/or are known to be of most significance.

Manual of Patent Examining Procedure, § 2004 (7th Ed. 1998).

claim cannot be based on allegations that a patent-holder has "constructively mislead" the PTO, and must be dismissed at the pleading stage. Indeed, in each of those cases, the Court assessed the viability of the inequitable conduct claims on their merits, after discovery, and with the benefit of evidence submitted by the parties. *See Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 364 F. Supp. 2d 820 (S.D. Ind. 2005) (making findings of fact and law with respect to defendant's inequitable conduct defense ***after trial***); *Prima Tek II, L.L.C. v. Polysap Sarl*, 316 F. Supp. 2d 693 (S.D. Ill. 2004) (same), *rev'd in part and appeal dismissed in part on other grounds*, __ F.3d __, 2005 WL 1459332, Nos. 04-1411, 04-1421 (Fed. Cir. June 22, 2005); *Boehringer Ingelheim Vetmedica, Inc.*, 68 F. Supp. 2d at 546 (assessing inequitable conduct defense based on full evidentiary record presented at preliminary injunction hearing); *Haney v. Timesavers, Inc.*, 900 F. Supp. 1378 (D. Or. 1995) (assessing inequitable conduct claim after discovery, on motions for summary judgment) (attached as Exhibit I). Like the parties in the cases Pharmacia cites, Sicor is entitled to prove its inequitable conduct claims with the benefit of full discovery.

Moreover, as stated above, the Applicants here did not merely bury the material references at issue, as the patent-holders in *Molins PLC* did. They apparently withheld the references for more than six years, and submitted them only after the PTO indicated its intention to issue a patent based on the '742 Application. Moreover, the PTO initially rejected the '742 Application because the prior art taught that solutions of doxorubicin hydrochloride, one of the drugs claimed in the '285 patent, were known to be stable in the pH range the Applicants sought to claim. (Answer ¶ 42). The Applicants repeatedly challenged this rejection during patent prosecution, arguing that the solutions described in the prior art were stabilized with buffers, not

with hydrochloric acid, as the Applicants sought to claim. (*Id.* ¶ 43). These representations to the PTO were inconsistent with the Sandell and Schou & Jensen references. (*Id.* ¶ 47).

Yet, the Applicants waited until July 1, 1998, *after* the PTO informed them that some of the claims of the '742 Application would be allowed to issue as a patent (and six years after filing the '742 Application), to disclose to the PTO the Sandell and Schou & Jensen references. (*Id.* ¶¶ 45-46). The Applicants apparently calculated that, given the late stage of the prosecution, and after six years of dealing with the '742 Application, the PTO would give little attention to these material references – an outcome the Applicants ensured by delivering these references to the PTO in the voluminous Ninth Supplemental IDS. (*Id.* ¶¶ 46-48). These facts, as alleged in Sicor's Answer, are more than sufficient to state a claim for inequitable conduct.[8]

Only by completely mischaracterizing the nature of Sicor's inequitable conduct counterclaim can Pharmacia even craft an argument to support the instant motion. Sicor alleges that the attorneys, inventors and agents who prosecuted the '742 Application violated their "duty of candor, good faith and honesty" to the PTO by engaging in the conduct alleged in the Answer and discussed in detail herein. Pharmacia's straw-man argument that there is neither a "duty to highlight" material references nor a "duty to cite references early in prosecution," (Pls.' brf., pp. 7-10), is irrelevant, and improperly attempts to shift the Court's attention away from the overall course of conduct alleged in Sicor's Answer. That course of conduct is inequitable and

---

8 While Pharmacia asserts that the PTO examiner's signature on the Ninth Supplemental IDS "indicate[s] his review of the Sandell and Schou & Jensen References" (Pls' brf., pp. 9-10), there is no basis in law for their contention that the PTO examiner's action in all events forecloses a claim for inequitable conduct. While there may be a "presumption" that an examiner who has initialed a submission has looked at and reviewed the reference at issue, it is rebuttable – and Sicor submits that the manner in which the Applicants submitted the Sandell and Schou & Jensen references to the PTO make it such that the presumption is untenable here.

actionable under the authorities cited herein.[9] There can be ***no*** dispute that patent applicants owe to the PTO a duty of candor, and that a violation of that duty may support a claim for inequitable conduct. 37 C.F.R. §1.56(a) (2004) ("no patent will be granted on an application in connection with which fraud on the Office was practiced ***or attempted or the duty of disclosure was violated through bad faith or intentional misconduct***.").

**CONCLUSION**

For the foregoing reasons, this Court should deny Pharmacia's Motion in its entirety, and should grant such further relief as this Court deems appropriate. To the extent that the Court is inclined to grant the motion, Sicor respectfully requests that it be given leave to replead.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Defendants*

---

9 Indeed, to the extent that Pharmacia claims that "burying" can no longer, as a matter of law, support an inequitable conduct cause of action or affirmative defense, it is incorrect. A number of the post-1992 cases cited herein and in Pharmacia's papers recognize that an inequitable conduct claim may be based on allegations that a patent-holder "constructively" withheld material references from the PTO. *See, e.g., Semiconductor Energy Lab. Co., Ltd. v. Samsung Elec. Co., Ltd.*, 204 F.3d 1368, 1378 (Fed. Cir. 2000); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995).

*Of Counsel:*

Reid L. Ashinoff
Brian T. Moriarty
Michael S. Gugig
Justin N. Kattan
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated: July 8, 2005
159284.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of July, 2005, the attached **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PHARMACIA'S MOTION TO STRIKE DEFENDANTS' INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE AND DISMISS DEFENDANTS' COUNTERCLAIM COUNT** was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

HAND DELIVERY

Joshua R. Rich, Esquire
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

VIA FEDERAL EXPRESS

/s/ *John G. Day*
John G. Day