# EXHIBIT A

PAGE 1

```
                                                              1
 1                 IN THE UNITED STATES DISTRICT COURT
 2                 IN AND FOR THE DISTRICT OF DELAWARE
 3                              - - -
 4   PHARMACIA & UPJOHN COMPANY,      :  CIVIL ACTION
 5                                    :
            Plaintiff and             :
 6          Counter-defendant,        :
                                      :
 7   v.                               :
                                      :
 8   SICOR INC., and SICOR            :
     PHARMACEUTICALS INC.,            :
 9                                    :
            Defendants and            :  NO. 04-833 (KAJ)
10          Counter-Claimants.        :
11                              - - -
                        Wilmington, Delaware
12              Thursday, June 16, 2005 at 4:45 p.m.
                        TELEPHONE CONFERENCE
13
                                - - -
14
     BEFORE:       HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                                - - -
16   APPEARANCES:
17
             MORRIS NICHOLS ARSHT & TUNNELL
18           BY:  MARYELLEN NOREIKA, ESQ.
19                and
20           McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
             BY:  DANIEL A. BOEHNEN, ESQ., and
21                JOSHUA R. RICH, ESQ.
                  (Chicago, Illinois)
22
                       Counsel for Pharmacia & Upjohn Company
23
24
25                               Brian P. Gaffigan
                                 Registered Merit Reporter
```

PAGE 2

```
                                                              2
 1   APPEARANCES: (Continued)
 2
 3           ASHBY & GEDDES
             BY:  JOHN G. DAY, ESQ.
 4
                  and
 5
             SONNENSCHEIN NATH & ROSENTHAL, LLP
 6           BY:  REID L. ASHINOFF, ESQ., and
                  BRIAN T. MORIARTY, ESQ.
 7                (New York, New York)
 8                   Counsel for Sicor Inc. and Sicor
                     Pharmaceuticals Inc.
 9
10                        - oOo -
11                  P R O C E E D I N G S
12           (REPORTER'S NOTE:  The following telephone
13   conference was held in chambers, beginning at 4:45 p.m.)
14           THE COURT:  Hi, this is Judge Jordan.  Who do I
15   have on the line?
16           MS. NOREIKA:  Your Honor, for plaintiff,
17   Maryellen Noreika at Morris Nichols; and with me are my
18   co-counsel, Dan Boehnen and Joshua Rich from Chicago.
19           THE COURT:  All right.
20           MR. DAY:  Your Honor, for the defendants, you
21   have Reid Ashinoff and Brian Moriarty of Sonnenschein
22   Rosenthal and John Day from Ashby & Geddes.
23           MR. BOEHNEN:  Your Honor, if I may, this is Dan
24   Boehnen with Sicor.  Maryellen introduced me.  I'm in a car
25   so it's a little noisy.  I'm just going to be on mute and
```

PAGE 3

```
                                                              3
 1   let Mr. Rich do the speaking unless I feel I need to try to
 2   pipe up here.
 3           THE COURT:  All right.  That's fine.  Thanks.
 4           MR. ASHINOFF:  Your Honor?
 5           THE COURT:  Yes.
 6           MR. ASHINOFF:  This is Mr. Ashinoff.  Would you
 7   like me to proceed with really the one issue that has arisen
 8   that we can use some help with today?
 9           THE COURT:  Sure.
10           MR. ASHINOFF:  All right.  Your Honor, we
11   advised Court early on in the case that we would need the
12   depositions of the six Italian inventors.  The counsel for
13   plaintiffs initially said that they would work with us to
14   try to facilitate obtaining those depositions so we didn't
15   have to go through cumbersome process.  We sent some letters
16   to the Court today to show the Court what has happened
17   because, unfortunately, there has been a material adverse
18   development since the Court received a report from the
19   parties.
20           THE COURT:  I read those letters.  What is the
21   material adverse development?
22           MR. ASHINOFF:  The adverse material difference
23   is, quite frankly, Your Honor, these letters make clear, as
24   did Mr. Rich's conversation with Mr. Moriarty, that they
25   were going to produce three of the inventors for depositions
```

PAGE 4

```
                                                              4
 1   pursuant to this United States case and there was no mention
 2   of arcane or different processes.  They told us to get a
 3   translator.  We got local counsel and the process for
 4   translating.
 5           Subsequent to Your Honor's receipt of this
 6   report, we got a letter yesterday from the plaintiff's
 7   counsel saying that they are not going to make these people
 8   available for deposition and that they are going to make
 9   them available only pursuant to the Hague Convention and
10   Italian law whereby you have to write questions and they sit
11   down and write answers with aid of their counsel who are
12   counsel for the plaintiffs here and they will not allow any
13   oral testimony in the context of what a deposition is.
14           THE COURT:  Hello?
15           (UNIDENTIFIED SPEAKER):  Hello?
16           MS. NOREIKA:  It sounds like they got cut off.
17           THE COURT:  All right.  I'm going to get off the
18   line here and ask you folks to put this call back together,
19   if you can; all right?
20           MS. NOREIKA:  Sorry about that, Your Honor.  We
21   will do that.
22           THE COURT:  Thanks.
23           (Brief pause.)
24           THE COURT:  Hi, this is Judge Jordan.  Who do I
25   have on now?
```

## PAGE 5

MS. NOREIKA: Your Honor, it's Maryellen Noreika again; and you still have Josh Rich and Dan Boehnen for the plaintiffs.

THE COURT: Okay. Mr. Day, are you there?

MR. DAY: I'm here, Your Honor, and Mr. Ashinoff and Mr. Moriarty are back.

THE COURT: Okay. I lost you, Mr. Ashinoff, at the point which you were telling me thought this was all squared away and you feel like the rug got pulled out from under you because they were only going to agree to answer questions submitted in writing, et cetera. I think that's the point at which you were cut off. Is there anything else you want to add?

MR. ASHINOFF: Yes, Your Honor, there is. It seems they are now talking about the need to invoke Italian court process. We engaged in negotiations and discussions with them in good faith. We've asked them to -- they've stated that they represent four of these individual inventors. We've stated to them that they chose to bring this action here, they've agreed and they represent these individuals now.

We need to take the depositions of these inventors. If they have any intention of bringing them to trial, they certainly can bring these people to sit in a deposition to answer questions. It's fundamentally not only

## PAGE 6

a reversal of course on their part but also unfair practice to suggest that we can't take the depositions of these people, particularly where they have not said that they will not be bringing them to trial.

THE COURT: All right. Well, I've got your position, I think.

Who is speaking on this from the other side?

MR. RICH: Your Honor, this is Joshua Rich. I will speak on it.

THE COURT: All right.

MR. RICH: I think there are a number of points we'd like to make.

THE COURT: Okay. Start with the fundamental point, which is -- and I did read the correspondence -- how did you go from "we'll provide them for deposition, get a translator," et cetera, et cetera, to, "okay, now we're changing rules of the game?" Has he given me the story straight on that?

MR. RICH: I don't think that is the correct story. I think both sides in this case -- and we don't need to point fingers. We'd rather work cooperatively. Both side have used the word "deposition" to describe a proceeding under the Hague Convention. I think what we've done is -- and by "we," I mean actually my law firm. I don't mean Pharmacia & Upjohn. These individuals are no

## PAGE 7

longer affiliated with Pharmacia & Upjohn. They're not employees. In fact, two of them work for competitors, I believe, and two are retired. They are individuals who we contacted and tried to get to work with us but we don't have the ability to compel them to appear or -- appear at trial, certainly, as Pharmacia's counsel.

THE COURT: So why don't you give me your statement about what, if anything, has changed. You know, I read the letters and it sure looked to me, as Mr. Ashinoff described it, like you guys had an agreement that you were going to have good ol' American-style depositions with you folks sitting around a table in some lovely city in Italy with a translator and at least three of these inventors, seven hours a day for each one of them, and everything was copacetic at least as to those three. Now, that leaves aside the other stuff.

Now, that is the impression I was left with. Do you want to help me understand why your counsel on the other side should not have been left with the same impression and with an understanding of how things stand now and what the practical upshot of that is, please?

MR. RICH: Sure. Absolutely. And I'd like to work backward from the letter that the parties jointly submitted to the Court. I think there has been no change whatsoever since that letter because we used exactly the

## PAGE 8

same language to describe the invocation of rights that these individual deponents were going to make. I think that people not only knew about it but they said they disagreed with the reservation of rights in that letter.

I do agree that the communication between counsel could have been clearer. I think one of the things that perhaps Sicor's counsel does not understand is that all along what we've been trying to do is facilitate these processes for them. We don't have this waived. We never said we would absolutely be able to present somebody.

THE COURT: Okay.

MR. RICH: These individuals are appearing voluntarily. When we started the conversation between Sicor's counsel and us, we talked about going through the Hague Convention for deposition. And I now recognize that we probably should have been clearer and should have said "taking testimony" rather than the shorthand deposition.

They indicated, at first blush last October, that they were going to go through the Hague Convention to get the deposition which I technically should have called taking the testimony when they eventually contacted us and they sent us notice of the deposition. So it was sort of a shifting on their part to try and frame the issue as depositions as opposed to the taking of testimony. We responded that we would try and see how we could get them

9

1  available for these proceedings.
2          The one person who speaks relatively good
3  English and has been through a deposition process before
4  actually is going to be testifying in a U.S.-style
5  deposition.
6          The others are less adept at English, although
7  are far better at English than my Italian, and their
8  willingness and ability to participate in U.S.-style
9  depositions and to forego protection of the Hague Convention
10 are therefore substantially limited by that.
11         THE COURT:  Well, let me ask you this, Mr. Rich.
12         MR. RICH:  Yes.
13         THE COURT:  And I'll ask the same question of
14 Mr. Ashinoff in a moment.
15         If this matter went through the Hague
16 Convention, would the folks on the other side of the table
17 be entitled to more than what you're saying you're going to
18 be giving them cooperatively or would they be entitled to
19 just what you are saying you will give them cooperatively?
20         MR. RICH:  The latter.
21         THE COURT:  Okay.
22         MR. RICH:  And to be clear, there was one
23 statement that Mr. Ashinoff made that I wanted to clarify,
24 because, again, I don't think we said this but he may have
25 misunderstood our letter.  This is not a process in which

PAGE 10

10

1  the witnesses will be working with counsel to prepare
2  written answers to the written question.  What we did is we
3  actually spoke to Italian counsel to get an understanding
4  of what the proceedings are, and they involve written
5  questions being submitted by the parties but then verbal
6  oral answers that normally would be summarized by the Court,
7  but we think it made sense to have a court reporter there to
8  take down the translated answers.
9          MR. BOEHNEN:  Your Honor, this is Mr. Boehnen.
10 Could I interrupt my partner and explain a bit more?
11 Because he had to leave when we were talking with the
12 counsel.
13         The process that occurs is not as Sicor
14 described it.  It's true that it does start with written
15 questions but that is true for both parties, so that to
16 the extent Sicor wishes to propound any questions to the
17 witnesses, they have to be in writing.  Likewise, to the
18 extent we have any cross-examination questions, they have to
19 be in writing.  And then they go normally to an Italian
20 judge and the judge then conducts the examination.  And
21 it's live with a witness.  The parties are entitled to be
22 there.  The parties could ask the judge to submit follow-up
23 questions but the judge is the one who examines the witness
24 and receives the testimony.
25         THE COURT:  Okay.  I got you.

11

1          MR. BOEHNEN:  Second of all, just the other
2  point I wanted to make, Your Honor, is that we fully realize
3  that before any of these witnesses would actually appear in
4  trial -- well, they would not appear in trial unless Sicor
5  were allowed to have a true U.S.-style deposition.  I
6  understand that.
7          At the moment, the only person that we
8  anticipate having as a witness would be a Dr. DePonti and
9  that is why we had pressed him further and he has agreed to
10 a U.S. style deposition.  The other people really are not at
11 all interested in being at trial or coming to trial.  We
12 don't expect to have them at trial.
13         THE COURT:  Okay.
14         MR. BOEHNEN:  Maybe with the exception of
15 Dr. Gambini.
16         THE COURT:  All right.  Mr. Ashinoff, it's time
17 for you to take the ball for a minute here.  And I have to
18 tell you folks that I don't have much more time to give you.
19 If this is all you would have been entitled to under the
20 Hague Convention, other than feeling that you got led down
21 the garden path, which is what I hear you telling me, other
22 than that, what is the remedy?  What would I do?  What would
23 you have me do?
24         MR. ASHINOFF:  What we would have you do, Your
25 Honor, given this correspondence and the fact that for the

PAGE 12

12

1  better part of two months -- and I will represent to the
2  Court that the conversation we had with Mr. Rich was an
3  American-style deposition.  And after 4:00 o'clock --
4          THE COURT:  I just need you to go to the answer
5  to my question.
6          MR. ASHINOFF:  The answer is we would like to be
7  able to approach the Court for an order either telling this
8  plaintiff, having chosen the forum, to produce these people
9  for U.S.-style deposition or they will be precluded from
10 having them on trial as witnesses.
11         THE COURT:  And I hear the other side saying
12 they don't want them as witnesses.  The one person they
13 want, you're going to get a U.S.-style deposition for.
14         MR. ASHINOFF:  But the problem is, Your Honor,
15 of the six inventors, that not all inventors are created
16 equal.  Of the six inventors, that one is the most
17 peripheral to the matters involved, the one that had nothing
18 to do with the Patent Office, had nothing to do with the
19 inequitable conduct defense.
20         THE COURT:  So what you are really saying is you
21 want me to say that they're precluded from using anybody at
22 trial, any inventor at trial if you don't get to take the
23 ones that you want by U.S. deposition style.
24         MR. ASHINOFF:  I don't think it's appropriate
25 for them to put forward the one they want to allow to be

**Page 13**

1  deposed and hide the other five back, having selected a U.S.
2  Court to prosecute their rights in.
3      THE COURT: All right. Well, here is upshot of
4  it, Mr. Ashinoff. Can you point to me to anything in the
5  law that makes it unlawful for them to hold you to the Hague
6  Convention? I mean you are saying it's not fair for them to
7  pick this forum and then for them to say, well, we're not
8  bringing people over. But I haven't heard you say anything
9  to me or provide me any evidence that contradicts what they
10 told me, and that is these people are not employed, they're
11 not under the control of the party, they're available for
12 discovery of the same character as the defense would be
13 entitled to have if this went through the Hague. So I am
14 having trouble here wrestling with the notion you are
15 pushing on me that there is a general fairness issue that
16 ought to keep them from doing what the law tells them they
17 can do.
18     MR. ASHINOFF: Your Honor, I understand your
19 concern. And there is another aspect that we haven't talked
20 about but it is responsive to what you are asking me now.
21     It is very common for companies who have people
22 like inventors to have understandings or agreements with
23 them of some nature, formal or informal, that they will be
24 cooperative upon leaving the employ as to matters that
25 they've worked on; in this example, certainly the patents

**Page 14**

1  that they helped work on. And to the extent that Pharmacia
2  is able to obtain these people to be cooperative without the
3  Hague process, to the extent of providing what they want, we
4  have asked in discovery requests and in letters that they
5  produce any understandings that exist with these people,
6  because in the context where they have the ability to obtain
7  the cooperation of these people, there are case laws that
8  have extended that to give us the right to these kind of
9  depositions, but they have not yet responded formally to
10 that discovery.
11     We asked Mr. Rich this morning and told Mr. Rich
12 that we would like that discovery, if it's relevant to this.
13 He said he did not believe he had that understanding but he
14 would have to go back to the client and check. And my point
15 is if these four people are willing to cooperate with them
16 to this degree, it's a fair inquiry, since we had outstand-
17 ing discovery. Whether that cooperation is because of any
18 kind of understandings or cooperative agreements, that would
19 give us the right to ask those cooperations to be extended
20 to the provision of a deposition.
21     THE COURT: All right. Well --
22     MR. RICH: Your Honor, if I might respond to
23 that, very quickly?
24     THE COURT: Yes, I'll give you 60 seconds.
25     MR. RICH: Okay. Based on their request, we

**Page 15**

1  went back and looked again today and we have no further
2  reason to believe that -- not to hide the ball. I believe
3  the person they're most interested in taking the deposition
4  of is Carlo Confalonieri. And Dr. Confalonieri, to our
5  understanding, and after double-checking, having looked now
6  several times to see if we have any ability to get him to
7  appear, there is nothing there.
8      THE COURT: Okay.
9      MR. RICH: He has expressly indicated to us --
10     THE COURT: Yes, you don't have to repeat it.
11 You don't have repeat it.
12     MR. BOEHNEN: Your Honor --
13     THE COURT: Whoa, whoa, whoa. Stop. Stop.
14     MR. RICH: Dan. Dan.
15     THE COURT: You've got to stop. We started this
16 conference late through fault of nobody, just circumstances,
17 but I can't let this keep spinning out.
18     Here is the bottom line. I have a specific
19 issue in front of me and that specific issue that is being
20 put to me is this: Make them give us U.S.-style depositions
21 or preclude them. And as to that, the answer is no.
22     That doesn't say anything about whether you
23 aren't required to give them answers to their discovery
24 about understandings you may have with inventors because
25 that sounds to me like a perfectly appropriate inquiry for

**Page 16**

1  the defense to be making. And if you haven't responded to
2  that discovery, you ought to do it and you ought to do it
3  forthwith.
4      But as to the general notion that based on the
5  information given to me now, I should conclude there ought
6  to be some sort of evidence preclusion going on, it doesn't
7  make it. In fact, it doesn't come close to making it.
8      So you guys take the deposition of the one
9  inventor who is going to be deposed in an American-style
10 deposition and you get the testimony down from the other
11 folks who are willing to appear under the same sort of
12 circumstances that would exist in a Hague proceeding and get
13 your discovery done.
14     And I will answer a further point which we
15 haven't raised in this call but which is important, and that
16 is, is there going to be a discovery extension in this case?
17 And I would say to you "not likely." You folks have known,
18 in fact, it was raised in the initial scheduling conference
19 last October that there were people in Italy that you needed
20 to speak to. And if people haven't made the filings in this
21 case to get that done, that's right on your doorstep and
22 it's not landing on mine.
23     And I'm going to be real blunt with you. As
24 important as this case is to you and your clients, it is
25 also important to me, but there are many other people whose

SHEET 5 PAGE 17

17

1  cases important to them and their clients. You are in a
2  spot now on my calendar and other people are all around you
3  and I can't shift you around simply and easily because
4  people decided well, you know, we really weren't going to do
5  that Hague stuff until it seemed absolutely necessary. If
6  these guys were important, you should have been moving on
7  that months ago.
8       So unless something totally unexpected happens,
9  and that occasionally does, things that aren't anticipated
10 come up, you all should be planning that the discovery
11 cutoff is what it is, and that the trial date is what it is,
12 and the dates in between those two are what they are and
13 we're living with them.
14      MR. ASHINOFF: Your Honor?
15      THE COURT: So go out and do what you need to
16 do.
17      MR. ASHINOFF: Your Honor?
18      THE COURT: Yes.
19      MR. ASHINOFF: We hear and understand what you
20 are saying. One last point on the depositions going
21 forward.
22      We understand from Italian counsel, because
23 we have retained Italian counsel, that under the Hague
24 Convention, the deposition, as it is, is limited to three
25 hours. Given that and given that it seems that the

PAGE 18

18

1  defendant has the burden on that, we would like this court
2  to direct the parties to allow us to have two and-a-half of
3  those three hours since we don't even get half of the seven
4  we would have here. And if the plaintiffs want to have
5  further testimony and use time for that, that that be in
6  addition to or in a separate Hague deposition.
7       MR. BOEHNEN: We agree, Your Honor.
8       THE COURT: Okay. Done. Good.
9       All right. Good luck in getting these things
10 worked out. I hope things all proceed smoothly in obtaining
11 the deposition over in Italy; and I also hope, frankly, that
12 as long as you are going over, folks may have to find some
13 time to do something enjoyable there besides duking it out
14 over patents.
15      All right. Thanks for your time.
16      (The attorneys respond, "Thank you, Your
17 Honor.")
18      (Telephone conference ends at 5:10 p.m.)
19
20
21
22
23
24
25

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan