IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMACIA & UPJOHN COMPANY,<br><br>    Plaintiff,<br><br>  - *against* -<br><br>SICOR, INC. and SICOR<br>PHARMACEUTICALS, INC.,<br><br>    Defendants. | Civil Action No. 04-833-KAJ |

## NOTICE OF DEPOSITION OF PHARMACIA & UPJOHN COMPANY

Pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure, Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc. (collectively "Sicor") by their undersigned attorneys, request that Plaintiff Pharmacia & Upjohn Company ("PNU") designate and produce one or more persons to testify on its behalf on each of the matters set forth in Schedule A attached hereto beginning at 9:00 a.m. on September 15, 2005 in the offices of Ashby & Geddes, 222 Delaware Avenue, 17th Floor, Wilmington, Delaware 19899. The deposition shall be recorded by stenographic means and shall be videotaped.

ASHBY & GEDDES

*/s/ John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888

*Attorneys for Defendants*

-2-

*Of Counsel:*

Reid Ashinoff
Brian T. Moriarty
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700


Dated:   August 1, 2005

159989.1

# SCHEDULE A

Sicor requests that PNU designate and produce one or more representatives who can testify on behalf of PNU with respect to the following subjects (all defined terms set forth in Sicor's First Request for Production of Documents dated November 29, 2004 are incorporated herein):

1. Monthly, quarterly and annual sales, gross revenues and net profits generated by PNU from any product containing Idarubicin and the Anthracycline Glycosides in each dosage form and size since January 1, 1990.

2. Monthly, quarterly and annual costs to manufacture or sell Idarubicin or any of the Anthracycline Glycosides in each dosage form and size since January 1, 1990, including but not limited to costs of sales and costs of goods sold.

3. Business or financial planning concerning Idarubicin and any of the Anthracycline Glycosides.

4. The prices for any sales of Idarubicin or any of the Anthracycline Glycosides, including, without limitation, all rebates and discounts thereto, and any related summaries, budgets, analyses, forecasts or projections.

5. Any budgets, forecasts, plans or analyses for pricing of Idarubicin, the Anthracycline Glycosides or any other product in connection with the entry of a competing generic product into the marketplace.

6. The marketing or advertising of Idarubicin and the Anthracycline Glycosides since January 1, 1990.

7. All costs of research and development of Idarubicin and the Anthracycline Glycosides.

8. The relationships with the manufactures, distributors, resellers, sales representatives, marketers, promoters and others who are involved in the sale, offer for sale, distribution or marketing of Idarubicin and the Anthracycline Glycosides since January 1, 1990.

9. The advertising, marketing and/or development of ready to use solutions of Idarubicin and the Anthracycline Glycosides since January 1, 1990.

10. Considerations, negotiation, licenses, executions, covenants not to sue, settlements of litigation or legal claims or other agreements concerning any invention or subject matter of the '285 Patent or any of the Related Patents, including all licenses to manufacture, distribute or resell Idarubicin and the Anthracycline Glycosides to any third party and any royalties received or due under any such license or other agreement.

11. Any effect that Sicor's advertising or marketing of Idarubicin and any Anthracycline Glycosides have had or will have on PNU's sales or projective sales of Idarubicin and the Anthracycline Glycosides.

12. The market of any Idarubicin and the Anthracycline Glycoside products and PNU's share of that market.

13. Any market trends in connection with the sale of Idarubicin and the Anthracycline Glycosides.

14. The royalty rate or rates that would constitute a "reasonable royalty" under 35 U.S.C. § 284, assuming that an infringement of the '285 Patent is found in this case.

15. The amount PNU would have been willing to accept at any time for a license to practice the '285 Patent.

16. Any settlement agreements including any supply agreements or licenses between PNU and any other entity concerning infringement or alleged infringement of the '285 Patent or any of the Related Patents.

17. Any agreements concerning any right, title or interest in the '285 Patent, including without limitation all agreements concerning licensing and/or ownership of the '285 Patent and all documents relating to the negotiations of such agreements.

18. Valuation of the '285 Patent and/or the Related Patents.

19. PNU's ownership of and rights in and to, including right to sue for infringement, the '285 Patent.

20. The location and nature of documents that contain any information relating to any of the foregoing topics.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2005, the attached **NOTICE OF DEPOSITION OF PHARMACIA & UPJOHN COMPANY** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Jack B. Blumenfeld, Esquire<br>Morris, Nichols, Arsht & Tunnell<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899 | HAND DELIVERY |
| Joshua R. Rich, Esquire<br>McDonnell Boehnen Hulbert & Berghoff<br>300 South Wacker Drive<br>Suite 3200<br>Chicago, IL 60606 | VIA FEDERAL EXPRESS |

*/s/ John G. Day*

John G. Day