# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 27, 2005

HAND DELIVERY

The Honorable Kent A. Jordan         **REDACTED PUBLIC VERSION**
United States District Court
844 King Street
Wilmington, DE 19801

    Re:  *Pharmacia & Upjohn Co. v. Sicor Inc.,*
           C.A. No. 04-833-KAJ

Dear Judge Jordan:

    We write in response to the letter submitted by plaintiff P&U dated July 22, 2005 (D.I. 67) seeking a protective order to postpone the depositions of the attorneys who prosecuted the patent-in-suit, U.S. patent 6,107,285 (the "'285 patent"): Daniel Boehnen, Emily Miao, and Jeremy Noe, all lawyers at McDonnell Boehnen Hulbert and Berghoff LLP ("MBHB"). Mr. Boehnen, but not Ms. Miao or Mr. Noe, is litigation counsel for P&U in this action.

    P&U premises its motion on the erroneous assumption that the depositions sought relate solely to Sicor's inequitable conduct claim which is the subject of P&U's motion to dismiss, and because that motion is *sub judice*, P&U contends that the depositions should not go forward now. As set forth below, the depositions are not limited to the current inequitable conduct claim. Moreover, contrary to P&U's arguments, deposing prosecuting counsel is perfectly appropriate under the circumstances of this case. *See aaiPharma, Inc. v. Kremers Urban Development Co.*, 361 F. Supp. 2d 770, 776 (N.D. Ill. 2005) (emphasis added) ("Defendants have produced significant evidence indicating that MBHB [defendants' law firm] was involved, at least at some level, with aai's patent prosecution strategy for the technology at issue in the underlying case. Accordingly, the discovery sought by aai is likely to lead to the discovery of admissible evidence regarding the extent of MBHB's involvement in the prosecution of the applications resulting in the patents in suit, and whether <u>MBHB may have violated any duty</u> of candor that applied to any of aai's attorneys or agents.")

**Background:** Briefly, each of the three attorneys seeking protection from deposition were personally and directly involved in the prosecution of the '285 patent before the United States Patent and Trademark Office ("PTO"), and each has relevant and unique knowledge that cannot be obtained from any other source. Mr. Boehnen submitted and signed lengthy statements to the PTO on June 28, 1996 (Ex. A) and May 6, 1997 (Ex. B), and he submitted several declarations from one of the foreign inventors, Dr. Confalonieri and others, in order to persuade the PTO to issue the '285 patent. P&U will not agree to voluntarily produce Dr. Confalonieri or three other inventors for depositions in this case. In August 1996, Ms. Miao, following up on Mr. Boehnen's June 1996 statements to the PTO, conducted a personal interview with the PTO to attempt to persuade the examiner to allow some of the claims of the patent to issue. (Ex. C.) These attorneys also submitted several hundred pieces of prior art to the PTO, but only after they knew the PTO was going to permit some of the claims of the '285 patent to issue. Moreover,

The Honorable Kent A. Jordan
July 28, 2005
Page 2

P&U even identified Ms. Miao in its Initial Disclosure Statement (dated November 9, 2004) as a person with relevant knowledge about the prosecution of the '285 patent.

**REDACTED**

      Mr. Boehnen also made admissions about the content of prior art that are relevant to the merits of this case, not solely to the inequitable conduct claim. For example, in his June 28, 1996 statement Mr. Boehnen stated: "Baurain [prior art reference] discloses a doxorubicin salt solution at pH 4.0, and Arcamone [prior art reference] discloses a doxorubicin salt solution at pH of 3-6." (Ex. A at 6.) These admissions are directly relevant to showing that the pH range (2.5 to 5.0) of the solutions of doxorubicin claimed in the patent were known in the art and/or obvious.

**Legal Analysis:** Contrary to P&U's assertion, the general rule is that an attorney involved in the prosecution of a patent can be deposed. *Resqnet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578 (RWS), 2004 WL 1627170, at *1, *3 (S.D.N.Y. July 21, 2004) ("It is not anomalous for a party to seek to depose the attorney who prosecuted the patent at issue in a litigation . . . . The fact that the attorney who prosecuted the patent has been selected to serve as litigation counsel does not, in and of itself, protect that attorney from being deposed.") (Ex. D); *Amicus Communications. L.P. v. Hewlett-Packard Co.*, No. 99-0284 HHK/DAR, 1999 WL 33117227, at *2 (D. D.C. Dec. 3, 1999) (noting "several courts have allowed the depositions of patent prosecution counsel") (Ex. E).

      "A patent prosecution attorney cannot avoid being deposed simply because he is later selected to act as trial counsel in an infringement action concerning the very patent he helped to prosecute." *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002). In a leading case, *Shelton v. Am. Motors Corp.*, the court ruled that an attorney involved in litigation may be deposed if the party "seeking to take deposition has [1] shown that no other means exist to obtain information than to depose opposing counsel, [2] information sought is relevant and nonprivileged, and [3] information is crucial to

The Honorable Kent A. Jordan
July 28, 2005
Page 3

preparation of case." 805 F.2d 1323, 1327 (8th Cir. 1987) (internal citation omitted); see *Allergan Inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) (following *Shelton*) (Ex. F).

Here, the *Shelton* standards are easily met. First, two inventors recently testified that they had no involvement with the prosecution of the '285 patent before the PTO. Thus, the persons with certain knowledge about what transpired before the PTO are the attorneys who prosecuted the patent. For example, Ms. Miao is the only person Sicor can depose who has knowledge of the August 1996 interview with the PTO. See *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 690 (D. Kan. 1990) ("meetings with the patent examiner are relevant to the defense of inequitable conduct"). Similarly, Mr. Boehnen's knowledge when he submitted false statements to the PTO is particular to him and cannot be readily obtained from other sources. Mr. Noe, along with Mr. Boehnen and Ms. Miao, are the only persons who know why P&U and its attorneys waited until only after they felt P&U's patent rights were secure before they dumped hundreds of references on the PTO. See *Environ Prods. Inc. v. Total Containment Inc.*, 41 U.S.P.Q.2d 1302, 1306 (E.D. Pa. 1996) ("The affirmative defense of inequitable conduct makes [prosecuting attorney's] mental impressions during the reexamination proceedings an issue in this litigation.") (Ex. G).

Second, there is no question that the information, and the admissions made by Mr. Boehnen, are relevant not only to the current inequitable conduct charge, but also to the issue of patent invalidity, REDACTED See *Environ Prods. Inc.*, 41 U.S.P.Q.2d at 1306 ("a deposition of [the prosecuting attorney's] is the only way to conduct discovery into [Plaintiff's] alleged inequitable conduct during the reexamination of the [] patent, the motion for a protective order must be denied"). Moreover, the information Sicor seeks relates to the proceedings before the PTO, which is not privileged.

Third, the information sought is critical to Sicor's defense, both as to invalidity and inequitable conduct. If it is proven that any of the attorneys knowingly submitted false information to the PTO, or otherwise acted with a lack of candor to the PTO, then the '285 patent would be unenforceable. Likewise, Mr. Boehnen's statements to the PTO characterizing the prior art may prove to be important admissions for Sicor's obviousness defense.

In conclusion, while Sicor has no objection to a short adjournment of the attorney depositions (with a commensurate adjournment of the date for Sicor's submission of an expert report on the topic), Sicor respectfully submits that plaintiff's request for a protective order should be denied.

Respectfully,

John G. Day (I.D. #2403)

JGD: nml
Attachments
159882.1
cc:     Clerk of the Court (by hand; with attachments)
        Maryellen Noreika, Esquire (by hand; w/attachments)
        Joshua R. Rich, Esquire (via electronic mail; w/attachments)
        Reid L. Ashinoff, Esquire (via electronic mail; w/attachments)