IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 04-833-KAJ |
| v. | ) ) | |
| SICOR INC. and SICOR PHARMACEUTICALS, INC., | ) ) ) | |
| Defendants | ) ) | |

**COMPENDIUM OF UNREPORTED DECISIONS CITED IN
DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION FOR LEAVE TO AMEND THEIR
AMENDED COUNTERCLAIM FOR INEQUITABLE CONDUCT**

ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Brian T. Moriarty
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated: September 13, 2005

# TAB 1

Not Reported in F.Supp.                                                                                                     Page 1
Not Reported in F.Supp., 1994 WL 285035 (E.D.Pa.)
**(Cite as: 1994 WL 285035 (E.D.Pa.))**
**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
**B. BRAUN** MEDICAL INC., Plaintiff,
v.
**ABBOTT** LABORATORIES and NYPRO INC.,
Defendants.
No. CIV.A. 93-3883.

June 27, 1994.

MEMORANDUM AND ORDER

HUYETT.

I. *BACKGROUND*

*1 In this patent infringement action, B. Braun Medical Inc. ("Plaintiff") alleges that Abbott Laboratories and Nypro Inc. ("Defendants") have infringed U.S. Patent No. 4,168,916 issued to Plaintiff's employee. Pursuant to Fed.R.Civ.P. 13(f) and 15(a), Defendants now move for leave to file an amended Answer and Counterclaim adding affirmative defenses of implied license, estoppel, and failure to comply with 35 U.S.C. § 287 relating to patent marking. For the reasons stated below, the motion is granted.

II. *DISCUSSION*

Fed.R.Civ.P. 15(a) directs that leave to amend pleadings "shall be freely given when justice so requires." The grant or denial of a motion to amend is within the discretion of the trial court. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984). However, the Court will normally grant the request unless the circumstances show "undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure the deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis,* 371 U.S. at 182.

Plaintiff alleges that the proposed amendments are futile or, alternatively, would prejudice Plaintiff at this late stage of the action.

A claim of futility is akin to a motion to dismiss. *See, e.g., Dixon v. Pennsylvania Crime Com.,* 67 F.R.D. 425 (M.D. Pa.1975). By contrast, Plaintiff's futility arguments contest the merits of Defendants' new defenses and turn on evidentiary issues. These types of challenge are more appropriately raised on motions for summary judgment, or determined by the trier of fact. The Court does not find the Defendants' new defenses to be obviously futile within the meaning of the court in *Foman.*

In addition, "[i]t is well settled that prejudice to the non-moving party is the touchstone for denial of an amendment." *Cornell & Co. v. Occup. Safety & Health Review Com.,* 573 F.2d 820, 823 (3d Cir.1978). "The non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989), citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing,* 663 F.2d 419, 426 (3d Cir.1981), *cert. denied,* 455 U.S. 1018 (1982). Plaintiff has failed properly to assert prejudice. Nor does the Court find any prejudice.

The Court notes that there has been significant delay in asserting the new defenses. The moving party bears the burden of explaining this delay. *Tarkett Inc. v. Congoleum Corp.,* 144 F.R.D. 289, 290 (E.D.Pa.1992). However, again, in the Third Circuit, passage of time alone will not justify denial of a motion to amend. *Howze,* 750 F.2d at 1212. Rather, the touchstone is whether the non-moving party will be prejudiced if the court permits amendment. *Id.; Bechtel v. Robinson,* 886 F.2d at 652. Plaintiff does not explain how it will be prejudiced by amendment. Instead, Plaintiff repeats its futility arguments. These do not justify denial of Defendants' motion.

III. *CONCLUSION*

*2 For the foregoing reasons, Defendants' motion for leave to file an amended Answer and Counterclaim is granted. If the parties require further discovery on matters raised by the newly asserted defenses, they shall file motions in compliance with the attached Order.

An appropriate Order follows.

ORDER

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                  **Page 2**
**(Cite as: 1994 WL 285035, *2 (E.D.Pa.))**

Upon consideration of Defendants' motion for leave to file an amended Answer and Counterclaim, and the argument of the parties in support of and in opposition thereto, the motion is GRANTED.

If the parties require further discovery on matters raised by the newly asserted defenses, they shall file appropriate motions by no later than 12:00 noon on Thursday, June 30, 1994, with a copy sent to the Reading Chambers by facsimile transmission. Any extended discovery period granted shall end no later than August 1, 1994.

IT IS SO ORDERED.

Not Reported in F.Supp., 1994 WL 285035 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

· 2:93cv03883 (Docket) (Jul. 20, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Not Reported in F.Supp.2d                                                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.)
(Cite as: 2003 WL 22711586 (D.Del.))
**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**MYLAN** PHARMACEUTICALS, INC., et al.,
Plaintiffs,
v.
**KREMERS** URBAN DEVELOPMENT, et al.,
Defendants.
No. Civ.A. 02-1628 GMS.

Nov. 14, 2003.
John W. Shaw, Young, Conaway, Stargatt & Taylor,
Wilmington, DE, for Plaintiffs.

Philip A. Rovner, Potter Anderson & Corroon, LLP,
Wilmington, DE, for Defendants.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

**\*1** On November 2, 2002, plaintiff, Mylan
Pharmaceuticals Inc. ("Mylan"), filed the above-
captioned action alleging infringement of the '875
patent and tortious interference by the defendants,
Kremers Urban Development Company, Schwartz
Pharma, Inc., Schwartz Pharma Manufacturing, Inc.,
Schwartz Pharma USA Holdings, Inc. and Kremers
Urban, Inc. (collectively "Kremers"). On January 2,
2003, Mylan filed an amended complaint joining the
plaintiff, Esteve Quimica, S.A. ("Esteve" or
collectively with Mylan, "Mylan"), a corporation
organized under the laws of Spain with its principal
place of business in Spain and the assignee of the '875
patent. On April 4, 2003, Mylan filed a second
amended complaint correcting the name of one of the
defendants.

Presently before the court is Mylan's motion for leave
to file a third amended complaint adding two new
defendants, Dr. Pawn Seth and Dr. Andre Stamm, and
alleging four new counts for transfer of ownership of
the '499, '198, and '355 patents, infringement of the
'499, '198, and '355 patents, misappropriation of trade
secrets technology and know-how, and conversion,
respectively. For the following reasons, the court will
grant this motion.

II. BACKGROUND

The existing complaint alleges that Kremers'
manufacturing and marketing of omeprazole generic
drug infringes Mylan's '875 patent and tortiously
interferes with Mylan's prospective business
opportunity to the sole use of its patented invention and
the right to compete fairly for customers. After Mylan
joined Esteve in this action, it undertook further
investigation of these issues during discovery. In doing
so, Mylan uncovered proof that two Esteve consultants,
Dr. Seth and Dr. Stamm, misappropriated certain trade
secrets, know-how, and other proprietary information
regarding the development and manufacture of
omeprazole. This proprietary information, Mylan
claims, is the exclusive property of Esteve pursuant to
the terms of an agreement between Saltrade Ltd. and
Laboratorios Esteve, S.A. (hereinafter the "Saltrade
Agreement"), [FN1] an affiliate of plaintiff Esteve.
According to Mylan, Dr. Seth and Dr. Stamm used the
know-how they misappropriated from Esteve to
develop the omeprazole formula that is the subject of
the '499, '198, and '355 patents assigned to Schwartz
Pharma A.G. upon issuing. Mylan contends that those
three patents, therefore, rightfully belong to itself and
not to Schwartz Pharma A.G. or any of the other
defendants.

> FN1. The pertinent section of the Saltrade
> Agreement states, "SALTRADE hereby
> transfers to ESTEVE on exclusive basis on
> the KNOW-HOW to manufacture the
> PRODUCT." "Know-how" is defined to mean
> "a body of technical information,
> documentation and data which refer to the
> process technology, machinery required and
> analytical technology used in manufacture,
> testing and analysis of the PRODUCT."
> "Product" is defined to mean OMEPRAZOLE
> PELLETS, bioequivalent to \*ANTRA
> pellets."

Mylan's allegations are reflected in the proposed
amended complaint by four new counts, modification
of the existing tortious interference count, and the
addition of two defendants, Dr. Seth and Dr. Stamm.
Count Two of Mylan's proposed amended complaint
alleges that Dr. Seth and Dr. Stamm improperly
obtained and assigned to Schwartz Pharma A.G. the
'499, '198, and '355 patents for a formulation of
omeprazole. Count Three then claims that Kremers
marketing of omeprazole infringes the '499, '198, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
(Cite as: 2003 WL 22711586, *1 (D.Del.))

'355 patents. In Count Five, Mylan asserts that Dr. Seth and Dr. Stamm, in addition to the other defendants, misappropriated confidential technology and know-how that Dr. Seth gained during his association with Esteve and that was the exclusive property of Esteve. Mylan also seeks to amend its tortious interference claim in Count Four to include allegations that Dr. Seth and Dr. Stamm conspired to misappropriate confidential technology and know-how that was the exclusive property of Esteve. In Count Six of the proposed amended complaint, Mylan alleges that the defendants' receipt of profits from the sale of omeprazole constitutes conversion of funds properly belonging to Mylan.

**\*2** Mylan claims it should be permitted to amend the complaint because the facts supporting the additional counts and joinder of parties were ascertained and developed during discovery. Kremers contends that the amendments are prejudicial because Mylan seeks to add four entirely new claims concerning three new patents and two new defendants at a late date in the case which would require reworking of the case management plan and rescheduling of the trial date. Kremers also makes a series of arguments claiming that Mylan's motion for leave to amend is also futile. It argues that Mylan lacks standing to claim patent infringement over the '499, '198, and '355 patents. Kremers also contends that the court lacks subject matter jurisdiction over the claims and personal jurisdiction over Dr. Seth and Dr. Stamm. It further argues that the new claims must be settled through arbitration because they arise out of the Saltrade Agreement which contains an arbitration provision. The tort claims, Kremers asserts, are barred by the three-year statute of limitations because Esteve was aware of the underlying facts as early as 1996. Kremers makes additional arguments that Mylan improperly relies on Delaware law, the Saltrade Agreement does not transfer a future interest in all omeprazole technology, and the conversion and tortious interference counts fail to state claims upon which relief may be granted. The court disagrees with these contentions.

## III. STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." Fed.R.Civ.P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue

prejudice to the opposing party, or when the amendment would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Cureton v. National Collegiate Athletics Ass'n,* 252 F.3d 267, 273 (3d Cir.2001). Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington,* 646 F.Supp. 118, 120 (D.Del.1986). In other words, "the court should apply the same standards as are applied to Rule 12(b)(6) motions to dismiss." *Id.*

## IV. DISCUSSION

The court does not find the relevant factors to weigh against granting leave to amend the complaint to add Dr. Seth and Dr. Stamm as defendants and to include the proposed new and modified claims for transfer of ownership, infringement, tortious interference, misappropriation of trade secrets and conversion.

A. Mylan Has Neither Unduly Delayed Nor Exhibited Bath Faith in Seeking to Amend the Complaint, and Kremers Will Not Be Significantly Prejudiced by the Amendments.

**\*3** Having discovered the factual basis for the claims only after conducting discovery, Mylan timely seeks to amend its complaint to include the proposed counts. Mylan has not unduly delayed in seeking leave to amend the complaint to add the new counts, nor does its motion for leave appear to arise out of any bad faith or dilatory motive. This is particularly true because the proposed claims are based on facts having to do with the newer plaintiff, Esteve. Being a foreign corporation, Esteve had not been represented by counsel in the United States until being joined in this action after the filing of the initial complaint. After being joined in this action, Esteve had just over three months, pursuant to the March 19, 2003 scheduling order, to obtain any discovery necessary to evaluate potential additional claims and amend the complaint accordingly. Given the foregoing circumstances, it seems that the plaintiffs acted quickly and diligently to investigate Esteve's involvement in the events that gave rise to this action.

Furthermore, permitting Mylan to amend the complaint to include the above-described counts would not significantly prejudice Kremers. The court is not unsympathetic to Kremers' concerns that the addition of the new defendants and claims would require

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   **Page 3**
(Cite as: 2003 WL 22711586, *3 (D.Del.))

discovery from new third parties and additional
discovery from the plaintiff Esteve. However, Mylan
sought leave to amend nearly two months before the
close of discovery, and the new defendants, Dr. Seth
and Dr. Stamm, have already produced documents and
been deposed as third parties. In view of Mylan's
timely request and considering the discovery that has
already been obtained, the court finds that little
prejudice would result from re-opening discovery for
the limited purpose of obtaining additional information
on these claims.

B. Mylan's Proposed Amendments Are Not Futile.

Kremers' remaining arguments against Mylan's
proposed amendments, though possibly proper bases
for a fully briefed motion to dismiss, are premature
reasons for denying Mylan's motion to amend. The
court will not determine at this juncture that Mylan
lacks standing to bring infringement claims for the '
499, '198, and '355 patents. The issue of Mylan's
standing to bring an infringement claim for these
patents is riveted with factual disputes over the
meaning of the Saltrade Agreement. Precedent suggests
that Mylan would have standing to bring these claims if
the Saltrade Agreement indeed transferred to Esteve
legal title in the omeprazole formulation that is the
subject of the ' 499, '198, and '355 patents. *See
Speedplay Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1250
(Fed.Cir.2000) ("A party that has been granted all
substantial rights under the patent is considered the
owner regardless of how the parties characterize the
transaction that conveyed those rights."); *Filmtec Corp.
v. Allied-Signal Inc.,* 939 F.2d 1568, 1573
(Fed.Cir.1991) (where a contract expressly granted
rights in any future invention, finding the transfer of
title would occur by operation of law). However, to
make such a determination the court would have to
probe the fact-intensive issue of the scope of the know-
how and technology transferred under the Saltrade
Agreement. The court will not undertake this kind of
inquiry on a motion to amend the complaint.

*4 Because the court at this juncture will not opine
ultimately on the issue of Mylan's standing to claim
infringement of the '499, '198, and '355 patents, it
likewise would be premature for the court to conclude
that it lacks subject matter jurisdiction over Mylan's
proposed additional state law claims. Where it has
original jurisdiction over a federal claim, a district
court may exercise supplemental jurisdiction over "all
other claims that are so related to claims in the action
within such original jurisdiction that they form part of
the same case or controversy under Article III of the

United States Constitution." 28 U.S.C. § 1367(a).
Specifically, supplemental jurisdiction is proper under
28 U.S.C. § 1367 if the state law claims "derive from a
common nucleus of operative fact" to the federal
claims. *United Mine Workers v. Gibbs,* 383 U.S. 715,
725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Based on
the allegations in the proposed amended complaint,
Mylan's state law claims for transfer of ownership,
tortious interference, misappropriation of trade secrets
and conversion purport to arise from the same or
similar set of facts and circumstances that give rise to
Mylan's claim of ownership and infringement of the
'499, '198, and '355 patents. It therefore appears that
the court would have sufficient grounds to exercise
supplemental jurisdiction over the additional state law
claims if Mylan has properly brought the additional
infringement claims. Nevertheless, without expressing
a view on Mylan's standing to bring the additional
infringement claims, the court cannot determine
whether or not to exercise supplemental jurisdiction
over the accompanying proposed state law claims.

Kremers' challenge to this court's exercise of personal
jurisdiction over Dr. Seth and Dr. Stamm is also not a
proper basis for denying Mylan leave to amend the
complaint under these circumstances. There is no
requirement that a plaintiff allege the facts that support
a finding of personal jurisdiction in a complaint. *See,
e.g., Hansen v. Neumueller GmbH,* 163 F.R.D. 471,
474 (D.Del.1995) ("Noticeably absent from ... Rule [8]
is a requirement of a statement setting forth the
grounds upon which the court has personal jurisdiction
over the defendant."). In view of this consideration,
along with the fact that the parties have not yet
developed a record on the possible contacts Dr. Seth
and Dr. Stamm may or may not have in the state of
Delaware, denying Mylan leave to amend its complaint
for lack of personal jurisdiction over these two
defendants would be inappropriate.

The court furthermore finds it inappropriate to
determine the arbitrability of Mylan's claims on a
motion to amend. Generally, the "appropriate
procedural mechanism to enforce an arbitration
agreement is a motion to compel, not a motion to
dismiss." *West v.. Merillat Indus., Inc.,* 92 F.Supp.2d
558, 561 (W.D.Va.2000); *see also Strick Corp. v.
Cravens Homalloy (Sheffield) Ltd.,* 352 F.Supp. 844,
848 (E.D.Pa.1972). Moreover, although the Saltrade
Agreement does contain an arbitration clause, the
actual parties to that contract, Saltrade Ltd. and
Laboratorios Esteve, S.A., have not been joined in this
action. Given these considerations, it would be
premature at this juncture to compel arbitration,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    **Page 4**
**(Cite as: 2003 WL 22711586, \*4 (D.Del.))**

particularly where the dispute is among non-parties to
the contract.

**\*5** Likewise, Kremers' argument that Mylan's tort
claims are barred by the statute of limitations is also
premature. "Unless the complaint, on its face, fails to
comply with the applicable limitations period, a motion
to dismiss based on the failure to comply with the
statute of limitations should be denied." *Tracinda
Corp. v. Daimlerchrysler* AG 197 F.Supp.2d 42, 57
(D.Del.2002) (citing *In re Equimed, Inc.,* 2000 WL
562909, at \*9 (E.D.Pa. May 9, 2000)). The parties
clearly dispute when the proposed claims accrued.
Kremers contends that Mylan knew of the claims over
six years ago whereas Mylan asserts that it had the
opportunity to learn of the defendants' unlawful
activities on January 14, 2003, at the earliest. Applying
the same standard as for a 12(b)(6) motion, the court
will not deny Mylan leave to amend on the grounds
that its proposed counts are barred by the statute of
limitations.

Finally, construing the allegations of the proposed
amendments in the light most favorable to Mylan, the
facts underlying Kremers' remaining contentions that
the conversion and tortious interference counts fail to
state claims upon which relief may be granted, that the
Saltrade Agreement does not transfer a future interest
in all omeprazole technology, and that Mylan
improperly relies on Delaware law are not sufficiently
developed at this time to warrant a finding that the
amendments are futile.

### IV. CONCLUSION

In the absence of undue delay, bad faith, or dilatory
motive on the part of the movant, repeated failure to
cure deficiencies, undue prejudice to the opposing
party, or futility of the amendment, the court should
exercise its discretion in favor of granting leave to
amend. *See Forman,* 371 U.S. at 182; *Cureton,* 252
F.3d at 273. To ensure that cases are decided on the
merits rather than on technicalities, the court should
use strong liberality in considering whether to grant to
leave to amend. *See Dole v. Arco Chem. Co.,* 921 F.2d
484, 487 (3d Cir.1990); *Bechtel v. Robinson,* 886 F.2d
644, 652 (3d Cir.1989); *Heyl & Patterson Int'l, Inc. v.
F.D. Rich Housing Virgin Islands,* 663 F.2d 419, 425
(3d Cir.1981). Having found no dilatory motive or
undue prejudice and that the claims would not be futile,
the court will exercise its discretion in favor of granting
Mylan leave to amend the complaint in the proposed
manner.

Therefore, IT IS HEREBY ORDERED that:
   1. Plaintiff's Motion for Leave to Amend (D.I.81)
   is GRANTED.
   2. Mylan shall be permitted leave to file the Third
   Amended Complaint in the form attached as
   Exhibit A to the Plaintiff's Motion for Leave to
   Amend.

Not Reported in F.Supp.2d, 2003 WL 22711586
(D.Del.)

   Motions, Pleadings and Filings (Back to top)

.              1:02CV01628              (Docket)
(Nov. 13, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Not Reported in F.Supp.2d                                                                                      **Page 3**
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
**(Cite as: 2002 WL 1458853 (D.Del.))**
**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
**ONDEO** NALCO COMPANY, a Delaware
Corporation, Plaintiff,
v.
**EKA** CHEMICALS, INC., a Delaware Corporation,
Defendant.
No. Civ.A.01-537-SLR.

June 10, 2002.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 10th day of June, 2002, having reviewed the briefs submitted by the parties with respect to plaintiff's pending motions;

IT IS ORDERED that plaintiff's motion to dismiss defendant's counterclaims   (D.I.23) is granted; and plaintiff's motion for leave to filed an amended complaint (D.I.42) is granted, for the reasons that follow:

1. The court has jurisdiction over this action pursuant to 35 U.S .C. §§ 271 and 281 and 28 U.S.C. § 1338(a).

2. Motion to Dismiss Counterclaims. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

3. Plaintiff argues that defendant's counterclaims, which allege that plaintiff's products infringe three of

defendant's patents, [FN1] fail to provide fair notice of the claims and the grounds upon which they rest, as required by Federal Rule of Civil Procedure 8(a). *Conley,* 355 U.S. at 47 (Rule 8(a) requires that a claim provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests"). Plaintiff asserts that the counterclaims insufficiently identify which products are accused of infringement [FN2] and fail to adequately plead induced infringement. [FN3] Plaintiff also objects that the counterclaims do not specify when the alleged infringement occurred (the '961 and '150 patents are now expired) and they combine the direct, contributory, and induced infringement claims into one count for each patent.

> FN1. United States Patent No. 5,603,805 ("the '805 patent"); United States Patent No. 4,385,961 ("the '961 patent"); and United States Patent No. 4,388,150 ("the '150 patent").

> FN2. The infringing products are described as "Nalco's products, including the 8692 product." (D.I.22, ¶¶ 29,34,40) The only additional clue to the identity of the alleged infringing products is the averment "Nalco makes and sells products, including the product numbered 8692, ... that are used in paper-making processes ..." or "to make paper." (*Id.* at ¶ 24)

> FN3. Defendant simply avers that "[u]pon information and belief, Nalco has induced the infringement of the claims of the ... patent, in violation of 35 U.S.C. § 271(b), by selling its products, including the 8692 product, and in instructing and encouraging others in the use of its products, including the 8692 product." (D.I.22, ¶¶ 30,36,42)

4. The court agrees with plaintiff that the counterclaims do not satisfy  Rule 8(a). With the exception of the description of the 8692 product, the pleadings are too vague to provide plaintiff with fair notice of which products are accused of infringing defendant's patents. *See Conley,* 355 U.S. at 47; *Gen-Probe, Inc. v. Amoco Corp.,* 926 F.Supp. 948, 961 (S.D.Cal.1996) (vague reference to "products and/or kits" does not provide adequate notice). *Compare Interdigital Technology Corp. v. OKI America, Inc.,* 845 F.Supp. 276, 283 (E.D.Pa.1994) (patent claim need not identify specific products that are alleged to infringe by name so long as they are "sufficiently identified in some way"). In addition, the pleadings fail

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    **Page 4**
**(Cite as: 2002 WL 1458853, \*1 (D.Del.))**

to allege direct infringement by a party other than ONDEO Nalco and, therefore, insufficiently plead induced infringement. *See Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986) (direct infringement required element of induced infringement); *Shearing v.. Optical Radiation Corp.,* 30 U.S.P.Q. 1878, 1880 (D.Nev.1994) (complaint must allege direct infringement by someone other than the inducer).

**\*2** *5.* Based on the above, the court dismisses defendant's counterclaims with leave to amend.

6. Motion for Leave to File a First Amended Complaint. Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires." *See also Gooding v. Warner-Lambert Co.,* 744 F.2d 354, 358 (3d Cir.1984) . Plaintiff seeks leave to amend its complaint (a) to remove two alien defendants whom plaintiff and defendant have agreed to dismiss with prejudice (see Stipulation and Order, D.I. 20, ¶ 1); and (b) to add declaratory judgment counts related to invalidity of the

patents-in-suit. Defendant objected that the proposed amended complaint would be deficient for failure to plead with specificity inequitable conduct and for asserting "unenforceability" of the subject patents in combination with invalidity. In response, plaintiff added more specific allegations of inequitable conduct with respect to the procurement of the '805 patent to a revised first amended complaint (D.I.45, Ex. D, ¶¶ 22-54); plaintiff makes no inequitable conduct allegations with respect to the '150 patent or the '961 patent (*Id.* at 5-6; Ex. D, ¶¶ 55-65). Based on the above, the court grants plaintiff leave to file a first amended complaint.

Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)

Motions, Pleadings and Filings (Back to top)

.                1:01CV00537                (Docket) (Aug. 10, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 4

Not Reported in F.Supp.2d                                                                                 Page 5
Not Reported in F.Supp.2d, 2002 WL 598457 (D.Del.)
(Cite as: 2002 WL 598457 (D.Del.))
⊞

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
PEGASUS DEVELOPMENT CORPORATION and
PERSONALIZED MEDIA COMMUNICATIONS,
L.L.C.,
Plaintiffs,
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics,
Inc., and Philips Electronics North America
Corporation, Defendants.
THOMSON MULTIMEDIA, INC., Counterplaintiff,
v.
PEGASUS DEVELOPMENT CORPORATION,
Personalized Media Communications, L.L.C.,
TVG-PMC, Inc., Starsight Telecast, Inc., and Gemstar-
TV Guide International,
Inc., Counterdefendants.
No. CIV.A. 00-1020-GMS.

April 18, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On December 4, 2000, the plaintiffs, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, LLC ("PMC"), filed the above-captioned action alleging patent infringement. Specifically, Pegasus and PMC allege that each defendant has willfully infringed seven patents owned or licensed exclusively by PMC and Pegasus.

On November 2, 2001, the defendant Thomson Multimedia, Inc. ("Thomson") sought leave to add third-parties Gemstar-TV Guide International, Inc., StarSight Telecast, Inc., and TVG-PMC, Inc. (collectively "Gemstar") to the case. At that time, Thomson also filed a pleading entitled, "First Amended Answer and Counterclaim and Third Party Complaint." Along with this amended pleading, Thomson also filed a motion for a sixty-day extension of time to "amend [its] pleadings to add counts relating to [the] newly added [Gemstar] parties."

On January 7, 2002, Thomson filed its "Second Amended Answer and Counterclaims and Third Party Complaint." On February 1, 2002, Gemstar moved to dismiss Thomson's second amended counterclaims. Subsequently, on March 1, 2002, Thomson sought leave to amend its second amended answer and counterclaims and third-party complaint. [FN1] Thomson's motion proposes the following changes to its counterclaims and third-party complaint: (1) reorganization of the facts and claims set forth in the allegations, (2) additional detail supporting Thomson's allegations as to how the counterdefendants have violated the antitrust laws, and (3) a restatement of its claims to cure any alleged defects in its pleading. The Gemstar parties are the only parties that oppose this motion. For the reasons that follow, the court will grant Thomson's motion.

FN1. Although the motion is entitled "Thomson's motion for leave to amend its second amended answer and counterclaim and third party complaint," Thomson has indicated that it is seeking only to amend its counterclaim and third party complaint.

II. DISCUSSION

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when justice so requires. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). Following this mandate, the Third Circuit has routinely held that leave to amend should be freely granted when pleadings lack the requisite factual specificity for a particular cause of action. *See District Council 47 v. Bradley,* 795 F.2d 310, 316 (3d Cir.1986); *see also U.S. v. Teeven,* 1992 WL 683682, at *8 (D.Del. Oct. 27, 1992) (citing cases). Indeed, "[t]he clearest cases for leave to amend are correction of an insufficient claim or defense and amplification of previously alleged claims or defenses." *Teeven,* 1992 WL 683682, at *7. Notwithstanding Rule 15(a)'s broad application, courts may deny leave to amend where they find "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment ...." *Foman,* 371 U.S. at 182. In its opposition to this motion, Gemstar first argues that Thomson has continuously acted improperly with regard to its Gemstar claims, beginning with adding Gemstar as a counterdefendant in November 2001. The court disagrees. It was not until September 14, 2001 that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2002 WL 598457, *1 (D.Del.))

plaintiffs identified sixteen claims from the patents that it was asserting against Thomson. Moreover, it was not until October 15, 2001 that the plaintiffs set forth their infringement contentions concerning these claims. Thomson maintains that these infringement contentions clearly rely on functionality that falls squarely within an exclusive field of use that Gemstar admittedly has licensed from PMC.

*2 Less than a month after receiving the plaintiffs' contentions, Thomas sought, and was granted, leave to add Gemstar as a party based on the license defense. Furthermore, Thomson argues that it needed additional time to review the plaintiff's "voluminous" document production. Thus, when Thomson sought leave to add Gemstar as a defendant, it simultaneously filed a motion for a sixty-day extension for leave to add additional claims against Gemstar. The court granted the motion, thereby giving Thomson until January 7, 2002 to file additional claims against Gemstar. Accordingly, Thomson timely filed its second amended counterclaim on January 7, 2002. On these facts, Gemstar's charges that Thomson acted in bad faith or with dilatory intent in adding Gemstar as a party are baseless.

Gemstar next relies on statements made by Thomson's counsel at the December 5, 2001 office conference. Specifically, on that date, Thomson's counsel stated that, "we can live with an early January date by which we either amend, that we should make any amendments based on the documents we currently have access to." Gemstar reads this statement as precluding Thomson from filing any additional pleadings in this action. However, based on the transcript of that conference, the court concludes that the issue of whether Thomson should be permitted to seek leave to amend in the future was not before the court at that time. Thus, to read such a broad meaning into Thomson's statements at that conference would be improper.

Gemstar further argues that it will suffer undue prejudice if the court were to grant Thomson's motion. Gemstar bears the burden of proving that actual prejudice will result from an amendment. *See Pension Fund v. North Philadelphia Health Sys.,* 1999 WL 236606, at *2 (E.D. Pa. April 21, 1999). To satisfy this burden, Gemstar must do more than merely claim prejudice. *See id.* Instead, Gemstar "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Id.* (citing *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989)). "Prejudice does not result merely from a

party's having to incur additional counsel fees; nor does it result from a delay in the movement of a case." *Pension Fund,* 199 WL 236606, at *2 (citing *Adams v. Gould, Inc .,* 739 F.2d 858, 869 (3d Cir.1984)). Rather, prejudice under Rule 15 "means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." *Pension Fund,* 1999 WL 236606, at *2 (citing *Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 300 (3d Cir.1990)).

On the facts before it, the court concludes that Gemstar has failed to demonstrate how it would be prejudiced if the court were to grant Thomson permission to amend. Indeed, nowhere does Gemstar explain how it was "deprived of the opportunity to present facts or evidence." *See Pension Fund,* 1999 WL 236606, at *2. Nor does Gemstar explain how it would suffer "undue difficulty" in defending against Thomson's claims in the face of an amendment. *See id.* Indeed, the only prejudice Gemstar has asserted is that it has incurred, and will incur, attorney's fees in briefing the motions to dismiss. [FN2] The law is clear, however, that "prejudice does not result merely from a party's having to incur additional counsel fees ...." *Id., see also Adams,* 739 F.2d at 869.

> FN2. The court notes, however, that it appears that Gemstar filed substantially similar motions to dismiss in the pending MDL cases as well.

*3 Furthermore, given the current stage of the proceedings, the court finds no indication of any prejudice to Gemstar that would result from the grant of this amendment. The Markman schedule remains in flux. The fact that this case may be transferred to the MDL Court in Atlanta, Georgia creates further uncertainty with regard to the schedule. Additionally, at least several months of discovery remain in this case, and no duplicative discovery will be necessary as a result of Thomson's proposed amended counterclaims. Given the fact that Thomson is not seeking to add new claims, there is ample time for Gemstar to conduct discovery on Thomson's counterclaims.

Finally, Gemstar contends that this will be Thomson's third amended pleading. As such, Gemstar is of the opinion that, because Thomson was unable to cure the defects twice before, it should not be given another bite at the pleading apple. While the court is sympathetic to this argument, it concludes that Gemstar has overstated Thomson's earlier actions. Thomson first filed an answer to the complaint on January 22, 2001, when it

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   **Page 7**
**(Cite as: 2002 WL 598457, \*3 (D.Del.))**

was arguably unclear whether Gemstar's license would be invoked. In November 2001, when it became clear to Thomson that it should include Gemstar in this action, it did so. Thereafter, on January 7, 2002, it amended its answer again in light of relevant new information it had discovered. The January 7, 2002 pleading is the first time the antitrust allegations appear. Thus, Thomson has, in fact, had no opportunity to correct any pleading defects or to amplify its allegations with regard to the antitrust issues.

 In granting Thomson's motion, the court is particularly mindful that one of Thomson's objectives in amending its pleading is to survive Gemstar's motion to dismiss. In that motion, Gemstar argued, among other things, that the allegations in Thomson's existing pleading were "vague and unsupported." Allowing an amendment which purports to rectify this alleged fatal defect in a pleading is surely in the interest of justice. *See Kiser v. General Elec. Corp .,* 831 F.2d 423, 427 (3d Cir.1987) (rejecting the approach that pleading is a game of skill in which one misstep by counsel my be decisive to the outcome, when the Federal Rules clearly accept that the purpose of pleading is to facilitate a proper decision on the merits.)

III. CONCLUSION

 For the foregoing reasons, the court will grant Thomson's motion to amend.  [FN3]

> FN3. Because the court has found no evidence of reckless and indifferent conduct on Thomson's part which would warrant the imposition of sanctions, it need not address Gemstar's request for sanctions.

 Therefore, IT IS HEREBY ORDERED that:

 1. Thomson's motion for leave to amend (D.I.232) is GRANTED.

 Not Reported in F.Supp.2d, 2002 WL 598457 (D.Del.)

   Motions, Pleadings and Filings (Back to top)

.                    1:00cv01020                   (Docket) (Dec. 04, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2005, the attached **COMPENDIUM OF UNREPORTED DECISIONS CITED IN DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR AMENDED COUNTERCLAIM FOR INEQUITABLE CONDUCT** was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                              HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Joshua R. Rich, Esquire                              VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

/s/ *John G. Day*
_____

John G. Day