# EXHIBIT D

EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMACIA & UPJOHN COMPANY, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 04-833-KAJ |
| ) | |
| v. ) | |
| ) | |
| SICOR, INC. and SICOR ) | |
| PHARMACEUTICALS, INC., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 BY PLAINTIFF PHARMACIA & UPJOHN LLC

Defendants Sicor Inc. and SICOR Pharmaceuticals, Inc. (collectively "Defendants" or "Sicor"), by and through its undersigned counsel, as and for their second supplemental objections and response to Interrogatory No. 1 of the First Set of Interrogatories by Plaintiff Pharmacia & Upjohn Company LLC ("Plaintiff" or "Pharmacia"), state as follows:

## GENERAL OBJECTIONS

The following general objections ("General Objections") apply to all of Plaintiff's Interrogatories and are incorporated by reference into each specific response made herein. The assertion of the same, similar, or additional objections or the provisions of partial answers in the individual responses to these Interrogatories does not waive any of Sicor's General Objections as set forth below:

1. Defendants object generally to the Interrogatories to the extent that they purport to impose burdens or obligations beyond those required by the Federal Rules of Civil Procedure and the Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local Rules").

2. Defendants object generally to the Interrogatories to the extent they seek privileged information, including, without limitation, information which was developed for or in anticipation of litigation, or which constitutes the work product of counsel or confidential attorney-client communications.

3. Defendants object generally to the Interrogatories to the extent that: (a) they exceed the number of Interrogatories permitted under the Federal Rules of Civil Procedure and Local Rule 26.1; (b) they are overbroad, vague, ambiguous, indefinite, compound, or cumulative; (c) compliance with such Interrogatory would be oppressive and unduly burdensome; (d) they are harassing; (e) they seek information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence and exceed the bounds of the legitimate purposes of discovery; (f) they seek information not in Defendants' possession; and/or (g) they seek information that is equally available to Defendants and Plaintiff.

4. Defendants object to each Interrogatory to the extent that it is compound and includes discrete subparts covering separate factual and/or legal issues. Each such discrete subpart should be counted separately towards the maximum number of Interrogatories that are permitted under the Federal Rules of Civil Procedure and Local Rule 26.1.

5. These responses are submitted without waiving in any way, and on the contrary reserving:

       (i) the right to amend or supplement any and all responses or other information provided herein at any time upon receipt of additional information; and

       (ii) the right to object on any grounds to the use in evidence or other use of these Responses or other information provided herein in this or any other proceeding by these parties or any other parties or non-parties.

6.   Defendants object to the Interrogatories to the extent they purport to require the identification of "all" persons or documents relating to broad categories of various subjects on the ground that such requests are overly broad, unduly burdensome and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In most cases, it simply is not reasonably possible to search for and identify all such persons and/or documents. Subject to Local Rule 26.1 and without waiving the foregoing, or its other general or specific objections, Defendants will identify and locate after reasonable search such persons or documents sufficient to provide information inquired about.

7.   Defendants object to each Interrogatory to the extent it is a premature contention interrogatory. Responses to contention interrogatories are appropriate only after discovery has been substantially completed. Specifically, Defendants object to Pharmacia's contention interrogatories as premature because they have been propounded before any documents have been produced and before any depositions have been taken in this action. Defendants anticipate that Pharmacia and perhaps non-parties may have information and/or documents and things in their possession, custody and control that relate to the issues raised by Pharmacia's contention interrogatories. The responses provided to these contention interrogatories at this stage are preliminary, and Defendants expressly reserve the right to supplement each of their responses to each of Pharmacia's contention interrogatories as discovery proceeds.

8.   These General Objections and any future responses are made for the sole purpose of this action. By providing a response to these Interrogatories, Defendants do not concede that the information provided is discoverable, relevant, or admissible, and reserve the right to challenge further discovery into the subject matter of any of the individual requests. Defendants also reserves the right to challenge the competency, relevance, materiality, privilege, and/or admissibility into evidence of any documents, information, or material produced in response to

- 3 -

these Interrogatories in this or any subsequent proceeding, or at the trial of this or any other action.

9. Responses provided to specific Interrogatories are subject to, and without waiver of, the General Objections and those specific objections raised with respect to particular Interrogatories. Accordingly, the provision of substantive responses to any Interrogatory shall not be construed as an admission or used as the basis for a contention that Plaintiff is entitled to any response more specific than that provided.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Describe in detail each factual and legal basis for Sicor's contention that "the '285 patent is invalid under the patent laws of the United States, including without limitation 35 U.S.C. §§ 101, 102, 103 and 112," and, as part of your response, identify each claim of the '285 patent that Sicor contends is invalid; for each such claim, identify each statutory provision that Sicor contends renders it invalid; identify in detail all facts that constitute the basis for each of Sicor's assertions of invalidity; identify all documents that support, refute or are inconsistent with each of Sicor's assertions of invalidity; and identify all corroborating witnesses or others having knowledge of any facts that relate to such assertion of invalidity.

### RESPONSE TO INTERROGATORY NO. 1:

Defendants object to this interrogatory on the ground that it is compound and includes discrete subparts. Defendants will respond to this interrogatory based on its separate subparts.

### INTERROGATORY NO. 1 SUBPART NO. 1

Describe in detail each factual and legal basis for Sicor's contention that the '285 patent is invalid under 35 U.S.C. §§ 101 & 102 and, as part of your response, identify each claim of the '285 patent that Sicor contends is invalid; for each such claim, identify each statutory provision that Sicor contends renders it invalid; identify in detail all facts that constitute the basis for each of Sicor's assertions of invalidity; identify all documents that support, refute or are inconsistent with each of Sicor's assertions of invalidity; and identify all corroborating witnesses or others having knowledge of any facts that relate to such assertion of invalidity.

### RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 1

Defendants object to this interrogatory on the grounds that it is premature, as the issue of invalidity, including the interpretation of the prior art references and the level of a person of

- 4 -

ordinary skill in the art, will be the subject of expert reports and expert testimony. Expert discovery in this case has not yet even begun, and initial expert reports are not due until August 5, 2005. Moreover, discovery in this case has only recently commenced and Sicor has not yet obtained any discovery from Pharmacia on this subject matter. Defendants further object to this interrogatory on the grounds that it seeks information covered by the attorney-client privilege or work product doctrine.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: subject to the Court's ruling on claim construction, claims 1-3, 9, and 11-13 of the '285 patent are invalid as not being new and useful and/or as anticipated, based on admissions made by the applicants during prosecution of the patent application that matured into the '285 patent, the file history of the '285 patent, and/or any of the references listed in Attachment I hereto. The subject matter claimed in claims 1-3, 9, and 11-13 of the '285 patent is not new and useful and/or not novel over the prior art. Individuals with knowledge in this matter include: Gaetano Gatti, Diego Oldani, Giuseppe Bottoni, Carlo Confalonieri, Luciano Gambini, Roberto De Ponti, Richard D. Kelly, Norman F. Olbon, Daniel A. Boehnen, Emily Miao, Jeremy E. Noe, John J. McDonnell, William J. Dana, Mary Horstman, and Debra Holton-Smith.

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants intend to produce documents in response to Pharmacia's First Request for the Production of Documents which are sufficient for Plaintiff to derive or ascertain additional information in response to this interrogatory.

Plaintiff has identified claims 1-3, 9, and 11-13 of the '285 patent as being asserted in this litigation, therefore Defendants are not providing a response as to any of the other unasserted

claims of the '285 patent. Should Plaintiff change its allegations and assert additional claims, Defendants will amend their response to address such additional claims.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 1

Asserted claims 1-3 and 9 are anticipated and, thus rendered invalid, by the teachings and disclosure of prior art references identified as M. J. H. Janssen, D. J.A. Crommelin, G. Storm and A. Hulshoff, <u>Doxorubicin decomposition on storage. Effect of pH, type of buffer and liposome encapsulation</u>, 23 *International Journal of Pharmaceutics*, 1-11 (1985) ("Janssen 1985").

| Claim Language | Disclosure from Janssen 1985 |
|---|---|
| 1. A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride | Discloses physiologically acceptable solutions of doxorubicin hydrochloride |
| dissolved in a physiologically acceptable aqueous solvent, | Discloses doxorubicin hydrochloride dissolved in water |
| having a pH adjusted to from 2.5 to 5.0 | Discloses doxorubicin hydrochloride solutions with a pH of 4.0 |
| with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfonic acid, and tartaric acid, | Discloses doxorubicin hydrochloride solutions where "the pH was adjusted with 2 mol/l hydrochloric acid" |
| the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, | Discloses doxorubicin hydrochloride solutions with a doxorubicin hydrochloride concentration of 0.05 mg/ml, 0.1 mg/ml and 0.5 mg/ml |
| wherein said solution is contained in a sealed container. | Discloses doxorubicin hydrochloride solutions in sealed polypropylene tubes, glass vials and |

| | |
|---|---|
| | other sealed containers |
| 2. The solution of claim 1 wherein said physiologically acceptable aqueous solvent is selected from the group consisting of water, ethanol, polyethylene glycol, dimethylacetamide, and mixtures thereof. | Discloses doxorubicin hydrochloride solutions of claim 1 and discloses doxorubicin hydrochloride dissolved in water |
| 3. The solution of claim 1 wherein the physiologically acceptable aqueous solvent is water. | Discloses doxorubicin hydrochloride solutions of claim 1 and discloses doxorubicin hydrochloride dissolved in water |
| 9. The anthracycline glycoside solution of claim 1, wherein said solution exhibits storage stability as a result of said pH being adjusted to the said pH range using said acids. | Discloses doxorubicin hydrochloride solutions of claim 1 and discloses that "the results of this study indicate that pH 4 and 4 [degrees] C provide optimum shelf-life" and that "a pH of 4.0 is the pH preferred for an optimum shelf-life." |

Additional individuals with knowledge in this matter include: Aristide Vigevani, Federico Arcamone and Martin Williamson.

SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 1

Defendants incorporate by reference the expert report of Douglas Clark dated August 15, 2005.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 1 SUBPART NO. 2

Describe in detail each factual and legal basis for Sicor's contention that the '285 patent is invalid under 35 U.S.C. §§ 103 and, as part of your response, identify each claim of the '285 patent that Sicor contends is invalid; for each such claim, identify each statutory provision that Sicor contends renders it invalid; identify in detail all facts that constitute the basis for each of Sicor's assertions of invalidity; identify all documents that support, refute or are inconsistent with each of Sicor's assertions of invalidity; and identify all corroborating witnesses or others having knowledge of any facts that relate to such assertion of invalidity.

- 7 -

RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 2

Defendants object to this interrogatory on the grounds that it is premature, as the issue of invalidity, including the interpretation of the prior art references and the level of a person of ordinary skill in the art, will be the subject of expert reports and expert testimony. Expert discovery in this case has not yet even begun, and initial expert reports are not due until August 5, 2005. Moreover, discovery in this case has only recently commenced and Sicor has not yet obtained any discovery from Pharmacia on this subject matter. Defendants further object to this interrogatory on the grounds that it seeks information covered by the attorney-client privilege or work product doctrine.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: subject to the Court's ruling on claim construction, claims 1-3, 9, and 11-13 of the '285 patent are invalid for obviousness based on admissions made by the applicants during prosecution of the patent application that matured into the '285 patent, the file history of the '285 patent, and/or any of the references listed in Attachment I hereto. The combined teachings of the pertinent prior art references render the subject matter claimed in claims 1-3, 9, and 11-13 of the '285 patent obvious to a person of ordinary skill in the art. Individuals with knowledge in this matter include: Gaetano Gatti, Diego Oldani, Giuseppe Bottoni, Carlo Confalonieri, Luciano Gambini, Roberto De Ponti, Richard D. Kelly, Norman F. Olbon, Daniel A. Boehnen, Emily Miao, Jeremy E. Noe, John J. McDonnell, William J. Dana, Mary Horstman, and Debra Holton-Smith.

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants intend to produce documents in response to Pharmacia's First Request for the Production of Documents which are sufficient for Plaintiff to derive or ascertain additional information in response to this interrogatory.

Plaintiff has identified claims 1-3, 9, and 11-13 of the '285 patent as being asserted in this litigation, therefore Defendants are not providing a response as to any of the other unasserted claims of the '285 patent. Should Plaintiff change its allegations and assert additional claims, Defendants will amend their response to address such additional claims.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 2

Asserted claims 1-3, 9 and 11-13 are anticipated and/or obvious based on the teachings of the references listed in the attachment, including, but not limited to, the Janssen 1985 (item 181) reference and Mori, Japanese Journal of Antibiotics, XXXIII-4, April 1980, p. 466-471, Wasserman (1983) (item 315), Vivegani (1980) (item 305), Hoffman (1979) (item 174), Poochikian(1981)(item 260), NCI Investigational Drugs 1982-84 (items 336-338), Arcamone (1972) (item 50) and Baurain (1981) (item 77) references. Aqueous solutions containing doxorubicin hydrochloride dissolved in a physiologically acceptable solvent at concentrations of 0.1 mg/ml to at least 5 mg/ml with a pH adjusted within the range of 2.5 to 5.0 with acids, including hydrochloric acid, and/or buffers were known to persons skilled in the art prior to the filing of application for the '285 patent. It was known in the art prior to the filing of the application for the '285 patent that solutions of anthracycline glycosides, including doxorubicin hydrochloride, and idarubicin hydrochloride, exhibited storage stability or would be expected to exhibit storage stability in physiologically acceptable aqueous solvents, including water, at a pH of 2.5 to 5.0, especially at pH of 4.0 by adjusting the pH with an acid, such as hydrochloric acid; it was further known in the art that because anthracycline glycosides, including doxorubicin hydrochloride and idarubicin hydrochloride, were cytotoxic that such solutions needed to be kept

in sealed containers; it was also known in the art that such solutions should have a concentration of about 0.1 mg/ml and at least 5 mg/ml, particularly concentrations of about 1 mg/ml to 2 mg/ml. Moreover, because of the nature of anthracycline glycosides, including the use of injection and intravenous methods to administer the drugs, there was ample motivation to make the claimed solutions.

Additional individuals with knowledge in this matter include: Aristide Vigevani, Federico Arcamone and Martin Williamson.

SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 2

Defendants incorporate by reference the expert report of Douglas Clark dated August 15, 2005.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 1 SUBPART NO. 3

Describe in detail each factual and legal basis for Sicor's contention that the '285 patent is invalid under 35 U.S.C. §§ 112 and, as part of your response, identify each claim of the '285 patent that Sicor contends is invalid; for each such claim, identify each statutory provision that Sicor contends renders it invalid; identify in detail all facts that constitute the basis for each of Sicor's assertions of invalidity; identify all documents that support, refute or are inconsistent with each of Sicor's assertions of invalidity; and identify all corroborating witnesses or others having knowledge of any facts that relate to such assertion of invalidity.

RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 3

Defendants object to this interrogatory on the grounds that it is premature, as the issue of invalidity, including the level of a person of ordinary skill in the art, will be the subject of expert reports and expert testimony. Expert discovery in this case has not yet even begun, and initial expert reports are not due until August 5, 2005. Moreover, discovery in this case has only

recently commenced and Sicor has not yet obtained any discovery from Pharmacia on this subject matter. Defendants further object to this interrogatory on the grounds that it seeks information covered by the attorney-client privilege or work product doctrine.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: subject to the Court's ruling on claim construction, claims 1-3, 9, and 11-13 of the '285 patent are invalid based on the specification of the '285 patent, admissions made by the applicants during prosecution of the patent application that matured into the '285 patent, and/or the file history of the '285 patent, for lack of written description because the claims are not limited to solutions not reconstituted from a lyophilizate. Individuals with knowledge in this matter include: Gaetano Gatti, Diego Oldani, Giuseppe Bottoni, Carlo Confalonieri, Luciano Gambini, Roberto De Ponti, Richard D. Kelly, Norman F. Olbon, Daniel A. Boehnen, Emily Miao, Jeremy E. Noe, John J. McDonnell, William J. Dana, Mary Horstman, and Debra Holton-Smith.

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants intend to produce documents in response to Pharmacia's First Request for the Production of Documents which are sufficient for Plaintiff to derive or ascertain additional information in response to this interrogatory.

Plaintiff has identified claims 1-3, 9, and 11-13 of the '285 patent as being asserted in this litigation, therefore Defendants are not providing a response as to any of the other unasserted claims of the '285 patent. Should Plaintiff change its allegations and assert additional claims, Defendants will amend their response to address such additional claims.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## SUPPLEMENTAL AND SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 3

Asserted claims 1-3, 9 and 11-13 are invalid under Title 35, United States Code, Section 112 because the claims failure to meet the written description requirement. Specifically, asserted claims 1-3, 9 and 11-13 purport to claim solutions of certain anthracycline glycosides where the solutions are made by first reconstituting a lyophilized preparation containing the salt of the anthracycline glycoside (e.g., doxorubicin hydrochloride and idarubicin hydrochloride). There is no support in the specification for claims of that breadth. In fact, the specification clearly teaches that the claimed solutions exclude those solutions made from a reconstituted lyophilized anthracycline glycoside. For example, and not by way limitation, the specification teaches as follows:

| Location | Citation |
|---|---|
| Abstract | "According to the invention there is provided a sterile, pyrogen-free, ready-to-use solution of an anthracycline glycoside, especially doxorubicin, which consists essentially of a physiologically acceptable salt of an anthracycline glycoside dissolved in a physiologically acceptable solvent therefor, **which has not been reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5. The solution of the invention is particularly advantageous for the administration by injection of the anthracycline glycoside drugs, e.g. doxorubicin, in the treatment of both human and animal tumors." |
| Col 1 Ln 22-29 | "At present, anthracycline glycoside antitumor drugs, in particular, e.g., doxorubicin, are **solely available in the form of lyophilized preparations, which need to be reconstituted before administration**. Both the **manufacturing and the reconstitution of such preparations** expose the involved personnel (workers, pharmacists, medical personnel, nurses) to risks of contamination which are particularly serious due to the toxicity of the antitumor substances." |
| Col 1 Ln 43-58 | "To administer a lyophilized preparation, double handling of the drug is required, the lyophilized cake having to be first reconstituted and then administered and, moreover, in some cases, the complete dissolution of the powder may require prolonged shaking because of solubilization problems. As the risks connected with the manufacturing and the reconstitution of a lyophilized preparate would be highly reduced if a ready-to-use solution of the drug were |

| | |
|---|---|
| | available, we have developed a stable, therapeutically acceptable intravenously injectable solution of an anthracycline glycoside drug, e.g. doxorubicin, whose preparation and administration **does not require either lyophilization or reconstitution.**<br>According to the present invention, there is provided a sterile, pyrogen-free, anthracycline glycoside solution which consists essentially of a physiologically acceptable salt of an anthracycline glycoside dissolved in a physiologically acceptable solvent therefor, **which has not been reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5." |
| Col 3<br><br>Ln 25-38 | "According to a particularly preferred feature of the invention, there is provided a sterile, pyrogen-free, doxorubicin solution which consists essentially of a physiologically acceptable salt of doxorubicin dissolved in a physiologically acceptable solvent therefor, **which has not been reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5.<br>In the above indicated preferred feature of the invention the physiologically acceptable salt of doxorubicin may be, e.g. the salt with a mineral inorganic acid such as hydrochloric, hydrobromic, sulfuric, phosphoric, nitric and the like, or the salt with an organic acid such as acetic, succinic, tartaric, ascorbic, citric, glutammic, benzoic, methanesulfonic, ethanesulfonic and the like. The hydrochloride salt is a particularly preferred salt." |
| Col 3<br><br>Ln 59-67 | "The invention also provides a process for producing a sterile, pyrogen-free anthracycline glycoside solution with a pH of from 2.5 to 6.5, which process comprises dissolving a physiologically acceptable salt of the anthracycline glycoside, **which salt is not in the form of a lyophilizate**, in a physiologically acceptable solvent therefor; optionally adding a physiologically acceptable acid or buffer to adjust the pH within the said range as desired; and passing the resulting solution through a sterilising filter." |
| Col 4<br><br>Ln 5-24 | "With the solutions of the invention it is possible to obtain compositions having a very high concentration of the anthracycline glycoside active substance even at 50 mg/ml and more. **This constitutes a great advantage over the presently available lyophilized preparates wherein high concentrations of anthracycline glycoside can only be obtained with difficulty because of solubilization problems encountered in reconstitution, mainly with saline.** The presence of the excipient, e.g. lactose, in the lyophilized cake, and its generally high proportion in respect of the active substance, even up to 5 parts of excipient per part of active substance, has a negative effect on solubilization so that difficulties may arise in obtaining dissolution of the lyophilized cake, especially for concentrations of anthracycline glycoside higher than 2 mg/ml.<br>The solutions of the invention are characterized by a good stability. Solutions in various solvents and with different pH's and concentrations have been found to be stable for long periods at temperatures accepted for the storage of pharmaceutical preparations. This is illustrated in the Examples which follow." |

Asserted claims 1-3 and 9 are invalid under Title 35, United States Code, Section 112 because the claims failure to meet the enablement requirement. Specifically, asserted claims 1-3 and 9 purport to claim solutions of certain anthracycline glycosides where the concentration of the anthracycline glycoside, including in solutions that are made by reconstitution, range from 0.1 to 100 mg/ml. The specification fails to enable the scope of the range of concentration claimed because the specification expressly teaches against using concentrations above 2 mg/ml where the solution is reconstituted from a lyophilazate. In light of the express teaching away in the specification, one skilled in the art could not practice the scope of the claimed invention without undue experimentation.

To the extent Pharmacia argues that the properties and qualities of idarubicin and/or idarubicin hydrochloride are sufficiently different and dissimilar to the properties of doxorubicin and/or doxorubicin hydrochloride or other anthracycline glycosides known in the art, such that information in the art about doxorubicin or such other anthracycline glycoside would not allow a person skilled in the art to reasonably expect that the claimed solutions of idarubicin could also be made, then the claims of the '285 patent directed to idarubicin are not enabled and invalid.

SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 SUBPART NO. 3

Defendants incorporate by reference the expert report of Douglas Clark dated August 15, 2005.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

ASHBY & GEDDES

/s/ signature

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
Brian T. Moriarty
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated: August 26, 2005
160821.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2005, the attached **DEFENDANTS' SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 BY PLAINTIFF PHARMACIA & UPJOHN LLC** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Jack B. Blumenfeld, Esquire<br>Morris, Nichols, Arsht & Tunnell<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899 | **HAND DELIVERY** |
| Joshua R. Rich, Esquire<br>McDonnell Boehnen Hulbert & Berghoff<br>300 South Wacker Drive<br>Suite 3200<br>Chicago, IL 60606 | **VIA FEDERAL EXPRESS** |

_____
John G. Day