# EXHIBIT I

EXHIBIT 1

### Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              IN AND FOR THE DISTRICT OF DELAWARE
 3                           - - -
 4   PHARMACIA & UPJOHN COMPANY,      : CIVIL ACTION
 5                                    :
         Plaintiff and                :
 6       Counter-defendant,           :
 7      v                             :
 8   SICOR INC., and SICOR            :
     PHARMACEUTICALS INC.,            :
 9                                    :
         Defendants and               : NO. 04-833 (KAJ)
10       Counter-Claimants            :
                             - - -
11
                     Wilmington, Delaware
12              Thursday, March 17, 2005 at 4:30 p.m.
                     TELEPHONE CONFERENCE
13
                             - - -
14
     BEFORE:   HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                             - - -
16   APPEARANCES:
17
         MORRIS NICHOLS ARSHT & TUNNELL
18       BY: MARYELLEN NOREIKA, ESQ.
19           and
20       McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
         BY: DANIEL A. BOEHNEN, ESQ.,
21           JOSHUA R. RICH, ESQ., and
             LARA V. FLEISHMAN, ESQ.
22           (Chicago, Illinois)
23           and
24
                     Brian P. Gaffigan
25
```

### Page 2

```
 1   APPEARANCES: (Continued)
 2
         PFIZER, INC.
 3       CHASE ROMMICK, ESQ. and
         KAREN STAFF, ESQ.
 4       (New York, New York)
 5              Counsel for Pharmacia & Upjohn Company
 6
         ASHBY & GEDDES
 7       BY: JOHN G. DAY, ESQ.
 8           and
 9       SONNENSCHEIN NATH & ROSENTHAL, LLP
         BY: REID L. ASHINOFF, ESQ. and
10           BRIAN T. MORIARTY, ESQ
             (New York, New York)
11
                Counsel for Sicor Inc. and Sicor
12              Pharmaceuticals Inc.
13
14                           -oOo-
15                     P R O C E E D I N G S
16      (REPORTER'S NOTE: The following telephone
17   conference was held in chambers, beginning at 4:30 p.m.)
18          THE COURT: Hi, this is Judge Jordan. Who do I
19   have on the line?
20          MS. NOREIKA: Your Honor, MaryEllen Noreika from
21   Morris Nichols for the plaintiff. With me on the phone, I
22   have Daniel Boehnen, Joshua Rich and Lara Fleishman who are
23   outside counsel in Chicago. We also have Chase Rommick on
24   the phone. She is with Pfizer.
25          THE COURT: Okay.
```

### Page 3

1  MR. DAY: Good afternoon, Your Honor. For the
2  defendants, you have John Day at Ashby & Geddes; and my lead
3  counsel at Sonnenschein, Nath and Rosenthal in New York, Reid
4  Ashinoff and Brian Moriarty.
5      THE COURT: Is there anybody else?
6  Okay.
7      MR. BOEHNEN: Judge, I think Karen Staff, a
8  Pfizer attorney, is on the line.
9      This is Dan Boehnen speaking.
10     THE COURT: All right. Thank you.
11     This is conference call touched off by an
12 exchange of letters beginning with Ms. Noreika's March 15,
13 2005 letter and the response the following date from Mr. Day.
14     And I basically have Pharmacia & Upjohn telling
15 me, hey, these guys at Sicor won't properly answer discovery
16 and I have the folks at Sicor saying, what are you talking
17 about? We haven't even started discovery yet.
18     So we're going to start with, I think rather than
19 have people repeat the arguments that are in their letters,
20 which I have seen, let me ask the folks at Pharmacia & Upjohn
21 a question or two and then I have some for you folks at
22 Sicor.
23     Who is speaking on behalf of Pharmacia & Upjohn?
24     MR. BOEHNEN: Daniel Boehnen, Your Honor. That's
25 me.

### Page 4

1      THE COURT: All right. Mr. Boehnen, I saw in
2  your co-counsel's letter to me that you had served these
3  discovery requests on November 9th, 2004. I want you to
4  explain to me how it is that your opposing counsel is able to
5  argue that -- and I'm going to quote here:
6      "On several occasions, Sicor attempted to
7  engage P&U -- meaning Pharmacia & Upjohn -- to discuss an
8  appropriate schedule to finalize the parties protective
9  order, exchange documents and privilege logs and commence
10 depositions. It was only this Monday on the eve of appearing
11 before the Court that P&U finally agreed to set a date (March
12 28) to begin exchanging documents and finally forwarded a
13 proposed protective order."
14     That is the letter you had, your co-counsel sent
15 indicates, hey, November 9th, we've been waiting around.
16 It's more than five months. And then your opposing counsel
17 comes and says, we couldn't even get a protective order out
18 of these guys. That's the piece I need you to address.
19     MR. BOEHNEN: Okay. Well, I would point out,
20 Your Honor, that these are all interrogatories so they have
21 nothing to do with document exchange. That is a straw man.
22 That has nothing to do with why we're here today.
23     As to the protective order, I'd also point out
24 that under local rules, that is not a reason for the parties
25 to not engage in discovery. Everything is done "outside

Page 5

1  counsel's eyes only" unless and until there is a protective
2  order in place. So that also has nothing to do with any
3  reason why these responses haven't been forthcoming before
4  now.
5      There are a lot of documents. Both sides say
6  they have been out collecting documents. I can assure you
7  we have. We've been to locations in the United States and in
8  Europe, more than one location in Europe, collecting
9  documents. So that has taken awhile.
10     But whether documents have been exchanged,
11 whether protective orders have been exchanged has absolutely
12 nothing to do with whether or not interrogatory responses
13 should be answered because the local rules expressly
14 provide a mechanism for this kind of discovery to get going
15 regardless of whether there is a protective order. The case
16 was filed nine months ago in July. Our discovery requests
17 were served over four months ago, in early November.
18     I think it's very telling that although we served
19 our discovery requests on November 9th. 30 days, about a
20 month later, they came to us requested an extension of time,
21 a 30-day extension of time. We said fine, no problem. And
22 then they used that 30-day extension of time not to get the
23 information but instead to serve their own discovery requests
24 on December 23rd, which they did late in the day on December
25 23rd and then on January 7th, we got their interrogatory

Page 6

1  responses. There was not a single substantive answer in
2  those. They were all objections. Our responses to their
3  discovery requests were due a few weeks later. On January
4  24, we did serve those. Their requests had contention type
5  interrogatories in them. They asked in particular for our
6  position on infringement and we gave them a full infringement
7  claim chart, each limitation, how it applied to their case.
8      And so all we're asking for on that infringement
9  question, and all that information is completely in their own
10 hands, is for them to just go down our infringement chart and
11 say which one do you dispute or disagree with and why.
12     THE COURT: Okay. Now -- whoa, whoa, whoa.
13 Stop.
14     Perhaps you can explain. give me your side of
15 why it's the end of March before document exchange and
16 depositions are getting scheduled. I'm still a little at sea
17 as to why it's taken this long.
18     MR BOEHNEN: And I will address that. but I
19 would point out, Your Honor. that neither side has raised
20 with you anything or has raised any complaint about
21 documents.
22     THE COURT: Well, I'll disagree with you to this
23 extent -- I'll let your opponents speak for themselves but
24 I understand their letter to be saying we feel like we need
25 documents in order to address contention interrogatories. A

Page 7

1  contention interrogatory isn't "tell us the name of the
2  person who hit the car at the red light." It's something
3  more complete and et cetera, et cetera. I understand that.
4  But they're going to make their arguments, so leaving aside
5  your argument --
6      No, wait a minute. Mr. Boehnen. Let's be real
7  clear on how this needs to work. I need you to answer my
8  specific question, which is tell me why it's taking this
9  long. That is what I want to hear, not your argument about
10 what they've said or hadn't said. Just give me your piece of
11 that.
12     MR BOEHNEN: Your Honor, we intend to start
13 producing documents to them within a couple of weeks. We've
14 been collecting them from all over the world, rapidly, and
15 we expect to begin to produce them to them in a couple of
16 weeks. But I don't think, Your Honor, that I have had a
17 chance to really answer the question that you say they have
18 raised, which is that they say they need these documents in
19 order to respond. And I haven't had a chance to answer them.
20     THE COURT: Yes. Well. I'll give you that. But
21 I'd like an answer to my question first. If I understood
22 your answer, it's taken a long time because these are spread
23 all over the world. The specific question I'm putting to you
24 is why has it taken so long? And your answer to that is
25 we're going to do it in a couple weeks.

Page 8

1      MR BOEHNEN: We're starting in a couple of
2  weeks.
3      THE COURT: Okay. Now let me press you. Why has
4  it taken so long? Saying I'm going to do it in two weeks
5  does not answer the question why, five months later, has it
6  not happened yet. That is what I want you to answer to me
7  now.
8      MR BOEHNEN: Okay. First of all, Your Honor, it
9  isn't five months. Their discovery requests were not served
10 until December 23. So it is at most three months from the
11 time we first got their discovery requests. Three months in
12 a case like this is not that long.
13     As to why it has taken, let's say, five months
14 from the time we served our discovery requests -- not theirs
15 but ours. your question was why has it taken five months --
16 you know, three patents, the owners of these patents have
17 changed a lot over the years. They were originally owned
18 by a company called Farmaitalia Carlo Erba. They then
19 became owned by a company named Pharmacia. That became
20 Pharmacia & Upjohn. That company is now Pfizer.
21     There has been a lot of reorganization of these
22 documents over the course of the years. The people who have
23 dealt with this in the past are, there are a few inventors
24 who still live in Italy but none of the inventors are
25 employees of the company. None of the people who are

Page 9

1  involved in that are still employees of Pharmacia & Upjohn or
2  Pfizer. And so there has been an enormous change of
3  personnel and it has taken time to track down people and
4  documents.
5       THE COURT: Okay. You might need to give us the
6  spelling of that first version of the Pharmacia company.
7       MR. BOEHNEN: Farmaitalia Carlo Erba. It's
8  spelled F-A-R-M-A-I-T-A-L-I-A; second word Carlo, C-A-R-L-O;
9  third word Erba, E-R-B-A, I believe.
10      THE COURT: Okay. Thanks. Now, there was -- you
11 said you wanted to have an opportunity to address the other
12 question that I had put to you and I give you that chance
13 now.
14      MR. BOEHNEN: Okay. Thank you, sir. I would
15 point out that the Court's scheduling order in this case
16 long ago said that the parties were encouraged -- I'm sorry.
17      THE COURT: No, I didn't say anything. And
18 you're right, if you are going to cite me to the trial
19 management order, I'm well aware that the standard language
20 is that the Court encourages counsel to serve contention
21 interrogatories early in discovery.
22      MR. BOEHNEN: Okay.
23      THE COURT: I'm with you on that.
24      MR. BOEHNEN: We served those in early November
25 and, you know, we didn't come running to the Court here at

Page 10

1  the end of 30 days. We didn't come running at the end of
2  60 days and even at the end 60 days when all we got was
3  objections. We tried to continue to work it out. But their
4  argument is that, that they say that, somehow or other, our
5  position is contradicted by our response on interrogatories.
6       Well, that complaint by them that it's
7  contradicted by our responses on their interrogatories is
8  something they raised for the first time to us in their
9  letter yesterday. They have not gotten anything that they've
10 given that to us before. But the examples they're giving are
11 apples and oranges.
12      THE COURT: Okay. Tell me why.
13      MR. BOEHNEN: It is something that is entirely
14 within their possession, much more so than was in our
15 possession. Challenge against validity is something that is
16 in their hands, not ours. A patent is presumed valid.
17 We're entitled to rely upon that and we have. Secondary
18 considerations like, you know, failure of others, long felt
19 need, copying, those are things that are either in Sicor's
20 own hands or in the hands of third parties.
21      So the fact that we haven't gone out and taken
22 third-party discovery or gotten discovery from Sicor about
23 copying is not a justification for them to say, well, you've
24 told us that you don't have the information yet.
25      But even more so, let's go to the individual

Page 11

1  positions. The first question, Interrogatory No. 1, has to
2  deal with invalidity.
3       THE COURT: No. Wait, wait, wait. Don't take me
4  back into your letter. I read your letter and I have read
5  what you had to say about what they said in response to your
6  stuff. In order for me --
7       MR. BOEHNEN: I'm not going to repeat the letter,
8  Your Honor.
9       THE COURT: Okay. Well, and you are not going
10 to say anything else right now because given the time
11 constraints I have, I've got to let the other folks have a
12 chance to speak up here.
13      MR. BOEHNEN: The one point I do wish to make,
14 Your Honor.
15      THE COURT: Whoa. Stop. When I say stop, you
16 have to stop.
17      MR. BOEHNEN: Yes, sir.
18      THE COURT: Mr. Ashinoff, are you speaking for
19 the Sicor people?
20      MR. ASHINOFF: Your Honor, Mr. Moriarty is going
21 to address that today.
22      THE COURT: All right. Mr. Moriarty.
23      MR. MORIARTY: Yes, Your Honor.
24      THE COURT: I'm going to paraphrase what I
25 understand to be coming to me from the Pharmacia folks.

Page 12

1  When I look at their letter, they say -- and in
2  this call, Mr. Boehnen -- is it Bay-nin (phonetic)? Am I
3  saying that right, sir?
4       MR. BOEHNEN: Yes, it's pronounced different than
5  it sounds.
6       THE COURT: Baih-nin (phonetic).
7       MR. BOEHNEN: Bay-nin (phonetic). You said it
8  right the first time.
9       THE COURT: Okay. Mr. Boehnen has emphasized
10 that the custom and practice in this court certainly in my
11 court is you can get your contention interrogatories out
12 of the gate early and citing a 1970 case from this District
13 doesn't really carry the day when it comes to what the custom
14 and practice in 2005 is. So in response to their argument
15 that, hey, we gave you the infringement position we have, we
16 want to know your infringement position, answer his argument
17 that you don't need documents for this, you are just dragging
18 your feet and you have no good reason for it.
19      MR. MORIARTY: Your Honor, first of all, the
20 Pfizer people or Pharmacia are trying to give impression we
21 didn't answer the interrogatories. We did give the answers
22 and on the infringement, for example, we told them the reason
23 we don't infringe the claims is because our product doesn't
24 have one of the features of the claims of the patent, that
25 the lyophilization feature and we objected to that. The

Page 13

1  Court should adopt a claim construction that embraces this
2  theory we have which would lead to noninfringement. That is
3  our noninfringement defense. And we laid it out for them
4  quite clearly what it is.
5         Likewise, our written description defense, we
6  laid out what that is. That the Court, you know, following
7  -- I'm not going to get into a legal discussion here too
8  long but the Scimed line of cases where there are essentially
9  essential elements in the specification that are not in the
10 claims, that those elements should be part of the claims and
11 we laid that out in our interrogatories. That there is a
12 failure of the written description requirement.
13        Other aspects of our interrogatory response are
14 preliminary, such as our laches defense
15        THE COURT: Yes, let's talk about that for a
16 minute
17        MR. MORIARTY: Laches defense, Your Honor, is
18 they -- and I may be getting my dates jumbled here so I'm
19 going to preface it with that. But in 2000, Pharmacia
20 started doing a dance with Sicor to buy and sell, have
21 business relationships buying and selling different products.
22 They were aware that Sicor was making an Idarubicin product.
23 They gave Sicor the impression they weren't going to sue them
24 as long as they couldn't doing business together
25        What happened was after Sicor launched their

Page 14

1  product and were selling the product, Pharmacia got sold to
2  Pfizer and then after another year or so. Pfizer decided --
3  the laches defense is they were aware of what we were doing
4  for several years before we were -- they were aware what
5  Sicor was doing for several years before they decided to
6  sue and what we're going to need is the depositions of the
7  business people from Pharmacia and their documents as to why
8  they took so long to sue and why they gave us the impression
9  that they were not going to -- you know, essentially they
10 weren't going to give us a pass in this case and then they
11 decided not to
12        THE COURT: Let me ask you this, Mr. Moriarty.
13 They tell me that in response to your Interrogatory No. 4,
14 you gave them one sentence. Now you've given me already
15 probably 10 times the information I guess that you gave
16 them. I understand their complaint to be not that you didn't
17 say anything but that what you said was woefully inadequate.
18 And so how is it that you can explain your theory of laches
19 to me on the phone but all you can muster for them is:
20        "Pharmacia was aware that Sicor filed an ANDA
21 well before it was approved and could have asserted its
22 purported claim for patent infringement at that time," which
23 they tell me was the entirety of your response.
24        MR. MORIARTY: There was another battle the
25 parties resolved themselves. We thought they had more than

Page 15

1  one sub-part in their interrogatories and we had a long
2  telephone conversation with them. And we broke up the
3  Interrogatory No. 4 into additional sub-parts. And there is
4  additional information in, for example, sub-part number two
5  which they don't quote in their letter that says Pharmacia
6  engaged in commercial negotiation and transactions at Sicor
7  that conveyed to Sicor, Pharmacia did not intend to enforce
8  its alleged patent.
9         So we did provide additional information in other
10 parts of the interrogatory. Given the constraints of the
11 three page letter, we didn't lay all that out. But the point
12 that we're trying to make to Your Honor is that we do need
13 discovery, we need to hear from their people about these
14 business negotiations
15        THE COURT: What do you need to hear from their
16 discovery to answer their -- be specific with me. They say
17 we gave them a claim chart and they've only given us one
18 response. Is your answer to that you don't have a claim
19 position yet? You don't have claim construction position yet
20 so you can't answer that?
21        MR. MORIARTY: Yes, we do have claim construction
22 position on one essential element. We don't feel we meet
23 that one essential element and therefore we don't infringe.
24        THE COURT: And you are not going to be raising
25 anything else?

Page 16

1         MR. MORIARTY: We don't know if we're going to be
2  raising the other things. We have not taken the depositions
3  of the inventors, you know
4         THE COURT: Why would you need? That's what I
5  take Mr. Boehnen -- I've had to pretty aggressively pull the
6  reigns in on him because he is eager to tell me you guys
7  aren't answering and you shouldn't need anything else. That
8  is what I need you to respond to in his argument so that if
9  you want to take the wind out of his argument, you need to
10 explain to me why you need an inventor's deposition to
11 know whether or not you have a dispute with specific claim
12 elements.
13        MR. MORIARTY: Your Honor, the file history here
14 is enormous, it's probably 500 pages long, at least what we
15 were able to get from the Patent Office. There are, for
16 example, 15 page arguments submitted to the Patent Office
17 that Mr. Boehnen himself submitted that contain information
18 about how the patentee construes the claims. We're going
19 to need to talk to Mr. Boehnen by deposition as well as
20 the inventors to understand what they convey to the Patent
21 Office, what the negotiation was, and all of these estoppel
22 concepts are going to be very important in this case in
23 terms of framing the claim construction
24        Obviously, we're only going to present claim
25 construction that advanced our case. Every single element

Page 17

is not usually important for the case, but at this point, at this preliminary part of the case, the only claim construction element we know of that we want to advance for our case is the one on this freeze dried or lyophilization element. But we know, and Your Honor will certainly tell us at trial, we know that we're going to need to supplement these contention interrogatories and Pfizer knows the same thing. We know when we get to trial and it's not there it's going to be a big problem for everyone.

THE COURT: Well, it will be a big problem a lot sooner than trial if people come to me late in the game and say, well, wait, we want to amend and our discovery time has run or somebody can say to me with credibility we can't do what we need to do on the schedule because I'm not inclined -- and I'll tell this to everybody in the case -- I'm not inclined to view sympathetically a case where things aren't moving ahead when people complain that they haven't been getting responses.

Now, I don't want this to turn into this we did this, we did that, because I'm not assigning blame right now. I'm merely noting that I entered a scheduling order on November 2nd of last year and I'm hearing the parties say we weren't able to come to an agreement on the exchange of documents until the end of March. All right?

Now, I view that as an excessively long period of

Page 18

time for parties to get together on something as basic as a schedule for the exchange of documents. So you guys need to get your act together on this because it's hard for me to feel a lot of sympathy for the plaintiff, no matter how aggressively you want to assert to me, Mr Boehnen, that they shouldn't need anything, if you can't get together on a discovery schedule for document exchange until months after the scheduling order is entered. And it's hard for me to feel sympathetic to the defendants when they're able to explain to me in the phone call what a position on a legal point is but their contention interrogatory answer according to the plaintiff is one sentence.

In short, I get the sense relatively early in the case, I'll take your position on where we are in the case, Mr. Boehnen, that you've been diligent, we're still kind of leery, or maybe that's the defense side, or maybe that is both of you saying, hey, we're kind of early in the case for this.

Let's say we're early in the case. For early in the case still, you guys don't seem to be talking with each other. You seem to be talking "at" and "past" each other. So I can't help you and I won't help you with an order that somebody give some more specific discovery request at this stage except to say the following:

If the plaintiffs, after some reasonable period

Page 19

of time within which to address this document exchange -- and the assertion that they shouldn't need anything I reject. I just don't know enough about it to know. So I'm going to say okay, defense says I need some documents. Fine. Get your documents exchanged.

But there is a reason I tell people I want contention interrogatories exchanged early in the case. It's so that it has a fair opportunity to shape the parties positions in discovery. So if the plaintiffs are able to come to me, after an exchange of documents, and say they still won't answer this, then you folks on the Sicor side -- if I'm saying your company's name right? Am I saying it right, Mr Moriarty? Is it See-Cor (phonetic)?

MR. MORIARTY: It's See-Cor (phonetic). S-E-E.

THE COURT: All right. Sicor, I'll be feeling like you haven't heard me in this conversation because what I won't tolerate is a continued sort of response that looks like I gave you a line and that's all I have to give you. You are supposed to explain your position, not wait to explain it until you got everything you want. You should have in your own mind and you have just demonstrated on a laches point you do have in your own mind a reason for saying, hey, we have a laches defense. You apparently have in your mind a reason for saying you have a invalidity defense. You need to explain what that position is. And you

Page 20

are absolutely correct you are free to amend those. What you are not free to do is to say I'm just not telling you until I get everything I want.

So I've got a little bit of a pox on both your houses feeling about this because I do feel like if you had moved a little sooner on something as basic as your document exchange stuff, then the other side wouldn't, the defense wouldn't be in a position of being able to argue to me that we have some things that could fairly inform our contentions that we haven't had yet. So whether you buy that or not, Mr. Boehnen, it has enough credibility on me to say on this call I'm not doing anything for you except this. I'm giving you the benefit of this warning to the defense: Get your documents exchanged promptly. And then Sicor, you better come forward with better discovery responses than the plaintiff is telling me you are giving them or there is going to be another conference call, maybe a hearing, and I don't want to get moving down the road toward anything heavier in the way of making you pay for their efforts to get you to respond.

MR. MORIARTY: Your Honor, I assume that we haven't been complaining loudly about what the plaintiff has done but obviously I think to the extent they're not forthcoming with their responses, would we be in the same position of coming to the Court or not?

Page 21

1  THE COURT: Boy, absolutely. This is going to
2  absolutely be, I hope, a fair and equitable requirement on
3  both sides in this dispute. Nobody gets to pound the table
4  harder and say I win because I pounded harder. Both sides
5  are entitled to the fair, thoughtful, sensible approach to
6  discovery that the Federal Rules of Civil Procedure, my trial
7  management order and the scheduling order set on November
8  2nd, I think it is in this case, require of you. So I don't
9  want multiple discovery disputes out of you. I just want
10 both sides behaving. All right?
11     MR. BOEHNEN: Your Honor, Dan Boehnen.
12 Is it fair to say that once discovery responses,
13 for example, to interrogatories are served, they can be
14 supplemented to the extent that a party is able to establish
15 that it acquired later information but they can't be amended
16 later to provide information that you had all along?
17     THE COURT: Well, no. What it means is you
18 better have a good reason for why you're seeking to put
19 something new in the mix. Now, short of "I didn't have it at
20 all," there may be some other reason which I can't guess at
21 right now. But if your question is should people be fairly
22 answering the discovery based on the information they have
23 now, absolutely. No question about it, Mr. Boehnen. They
24 should be giving a fair, honest discovery response based on
25 the information available to them now.

Page 22

1  So you know what? I probably haven't done much
2  at all for you folks except hear you and maybe communicate
3  to you a little bit of my disappointment that you're not
4  evidently moving this case in a cooperative and sensible way
5  several months after the discovery schedule was set in the
6  scheduling order. So I expect both sides to pick up the
7  ball, move it more sensibly and better. And then if you
8  have actually got a dispute that you can specify for me,
9  if we have to have you both in and go interrogatory by
10 interrogatory and have a smack-down, we'll do it, but I'm
11 hoping that isn't necessary.
12 All right. Recognizing that that isn't probably
13 what either side was hoping for in the way of specificity but
14 also recognizing that that is all I feel I'm able to give you
15 right now, is there anything else that you feel you need to
16 put on the record, Mr. Boehnen?
17     MR. BOEHNEN: No, Your Honor.
18     THE COURT: How about you, Mr. Moriarty?
19     MR. MORIARTY: No, Your Honor. And we understand
20 your comments.
21     THE COURT: I hope both sides understand them and
22 I hope you are able to get your discovery exchanged in a good
23 and immediate fashion. Thanks.
24     (The attorneys respond, "Thank you, Your Honor.")
25     (Telephone conference ends at 5:07 p.m.)

Case 1:04-cv-00833-KAJ    Document 101-11    Filed 09/15/2005    Page 8 of 12

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-833 [1] | 1:9 | answer [17] | 3:15 | benefit [1] | 20:13 | 16:11 | 16:23 | 16:24 | 4:4 | 4:16 | 9:20 |
| 07 [1] | 22:25 | 6:1 | 7:7 | 7:17 | | 17:2 | | | counsel's [1] | 5:1 | |
| 1 [1] | 11:1 | 7:19 | 7:21 | 7:22 | BERGHOFF [1] | claims [5] | | 12:23 | Counter-Claimants | | |
| 10 [1] | 14:15 | 7:24 | 8:5 | 8:6 | 1:20 | 12:24 | 13:10 | 13:10 | [1] | 1:10 | |
| 15 [2] | 3:12 | 16:16 | 12:16 | 12:21 | 15:16 | better [4] | | 20:14 | 16:18 | | Counter-defendant [1] |
| 17 [1] | 1:12 | | 15:18 | 15:20 | 18:11 | 20:15 | 21:18 | 22:7 | clear [1] | 7:7 | 1:6 |
| 1970 [1] | 12:12 | | 19:11 | | | big [2] | 17:9 | 17:10 | clearly [1] | | 13:4 |
| 2000 [1] | 13:19 | answered [1] | 5:13 | | bit [2] | 20:4 | 22:3 | co-counsel [1] | 4:14 | couple [4] | 7:13 |
| 2004 [1] | 4:3 | answering [2] | 16:7 | blame [1] | | 17:20 | co-counsel's [1] | | 7:15 | 7:25 | 8:1 |
| 2005 [3] | 1:12 | 3:13 | 21:22 | | Boehnen [37] | 1:20 | 4:2 | | | course [1] | 8:22 |
| 12:14 | | answers [1] | 12:21 | 1:20 | 2:22 | 3:7 | collecting [3] | 5:6 | court [42] | | 1:1 |
| 23 [1] | 8:10 | APPEARANCES [2] | | 3:9 | 3:24 | 3:24 | 5:8 | 7:14 | 2:18 | 2:25 | 3:5 |
| 23rd [2] | 5:24 | 5:25 | 1:16 | 2:1 | 4:1 | 4:19 | 6:18 | coming [2] | | 11:25 | 3:10 | 4:1 | 4:11 |
| 24 [1] | 6:4 | appearing [1] | 4:10 | 7:6 | 7:12 | 8:1 | 20:25 | | | 6:12 | 6:22 | 7:20 |
| 28 [1] | 4:12 | apples [1] | 10:11 | 8:8 | 9:7 | 9:14 | commence [1] | 4:9 | 8:3 | 9:5 | 9:10 |
| 2nd [2] | 17:22 | 21:8 | applied [1] | 6:7 | 9:22 | 9:24 | 10:13 | comments [1] | 22:20 | 9:17 | 9:20 | 9:23 |
| 30 [4] | 1:12 | 2:17 | approach [1] | 21:5 | 11:7 | 11:13 | 11:17 | commercial [1] | 15:6 | 9:25 | 10:12 | 11:3 |
| 5:19 | 10:1 | | appropriate [1] | 4:8 | 12:2 | 12:4 | 12:7 | communicate [1] | | 11:9 | 11:15 | 11:18 |
| 30-day [2] | 5:21 | approved [1] | 14:21 | 12:9 | 16:5 | 16:17 | 22:2 | | | 11:22 | 11:24 | 12:6 |
| 5:22 | | argue [2] | 4:5 | 16:19 | 18:5 | 18:15 | company [7] | 1:4 | 12:9 | 12:10 | 12:11 |
| 4 [4] | 1:12 | 2:17 | 20:8 | | 20:11 | 21:11 | 21:11 | 2:5 | 8:18 | 8:19 | 13:1 | 13:6 | 13:15 |
| 14:13 | 15:3 | argument [7] | 7:5 | 21:23 | 22:16 | 22:17 | 8:20 | 8:25 | 9:6 | 14:12 | 15:15 | 15:24 |
| 5 [1] | 22:25 | 7:9 | 10:4 | 12:14 | Boy [1] | 21:1 | company's [1] | 19:12 | 16:4 | 17:10 | 19:15 |
| 500 [1] | 16:14 | 12:16 | 16:8 | 16:9 | Brian [3] | 1:25 | complain [1] | 17:17 | 20:25 | 21:1 | 21:17 |
| 60 [2] | 10:2 | 10:2 | arguments [3] | 3:19 | 2:10 | 3:4 | | complaining [1] | | 22:18 | 22:21 | |
| 7th [1] | 5:25 | 7:4 | 16:16 | | broke [1] | 15:2 | 20:22 | | Court's [1] | 9:15 | |
| 9th [3] | 4:3 | 4:15 | ARSHT [1] | 1:17 | business [4] | 13:21 | complaint [3] | 6:20 | credibility [2] | 17:13 |
| 5:19 | | Ashby [2] | 2:6 | 13:24 | 14:7 | 15:14 | 10:6 | 14:16 | 20:11 | | |
| able [9] | 4:4 | 16:15 | 3:2 | | buy [2] | 13:20 | 20:10 | complete [1] | 7:3 | custom [2] | 12:10 |
| 17:23 | 18:9 | 19:9 | Ashinoff [4] | 2:9 | buying [1] | | 13:21 | completely [1] | 6:9 | 12:13 | | |
| 20:8 | 21:14 | 22:14 | 3:4 | 11:18 | 11:20 | C [1] | 2:15 | | con [1] | 17:2 | D [1] | 2:15 | |
| 22:22 | | aside [1] | 7:4 | C-A-R-L-O [1] | 9:8 | concepts [1] | 16:22 | Dan [2] | 3:9 | 21:11 |
| absolutely [5] | 5:11 | aspects [1] | 13:13 | car [1] | 7:2 | conference [5] | 1:12 | dance [1] | | 13:20 |
| 20:1 | 21:1 | 21:2 | assert [1] | 18:5 | Carlo [3] | 8:18 | 2:17 | 3:11 | 20:17 | Daniel [3] | | 1:20 |
| 21:23 | | asserted [1] | 14:21 | 9:7 | 9:8 | | 22:25 | | | 2:22 | 3:24 | |
| according [1] | 18:11 | assertion [1] | 19:2 | carry [1] | 12:13 | considerations [1] | date [2] | 3:13 | 4:11 |
| acquired [1] | 21:15 | assigning [1] | 17:20 | case [21] | 5:15 | 6:7 | 10:18 | | | dates [1] | 13:18 | |
| act [1] | 18:3 | assume [1] | 20:21 | 8:12 | 9:15 | 12:12 | constraints [2] | 11:11 | days [4] | 5:19 | 10:1 |
| ACTION [1] | 1:4 | assure [1] | 5:6 | 14:10 | 16:22 | 16:25 | 15:10 | | 10:2 | 10:2 | |
| additional [3] | 15:3 | attempted [1] | 4:6 | 17:1 | 17:2 | 17:4 | construction [5] | | deal [1] | 11:2 | |
| 15:4 | 15:9 | | attorney [1] | 3:8 | 17:15 | 17:16 | 18:14 | 13:1 | 15:19 | 15:21 | dealt [1] | 8:23 | |
| address [6] | 4:18 | attorneys [1] | 22:24 | 18:14 | 18:17 | 18:19 | 16:23 | 16:25 | | December [3] | 5:24 |
| 6:18 | 6:25 | 9:11 | available [1] | 21:25 | 18:20 | 19:7 | 21:8 | construes [1] | 16:18 | 5:24 | 8:10 | |
| 11:21 | 19:1 | | aware [5] | 9:19 | 22:4 | | | contain [1] | 16:17 | decided [3] | 14:2 |
| adopt [1] | 13:1 | 13:22 | 14:3 | 14:4 | cases [1] | 13:8 | contention [8] | 6:4 | 14:5 | 14:11 | |
| advance [1] | 17:3 | 14:20 | | certainly [2] | 12:10 | 6:25 | 7:1 | 9:20 | defendants [3] | 1:9 |
| advanced [1] | 16:25 | awhile [1] | 5:9 | 17:5 | | 12:11 | 17:7 | 18:11 | 3:2 | 18:9 | |
| afternoon [1] | 3:1 | Baih-nin [1] | 12:6 | cetera [2] | 7:3 | 19:7 | | | defense [11] | 13:3 |
| against [1] | 10:15 | ball [1] | 22:7 | 7:3 | | contentions [1] | 20:9 | 13:5 | 13:14 | 13:17 |
| aggressively [2] | | based [2] | 21:22 | Challenge [1] | 10:15 | continue [1] | 10:3 | 14:3 | 18:16 | 19:4 |
| 16:5 | 18:5 | 21:24 | | chambers [1] | 2:17 | continued [2] | 2:1 | 19:23 | 19:25 | 20:7 |
| ago [3] | 5:16 | 5:17 | basic [2] | 18:1 | 20:6 | chance [4] | 7:17 | 19:17 | | 20:13 | | |
| 9:16 | | battle [1] | 14:24 | 7:19 | 9:12 | 11:12 | contradicted [2] | | Delaware [2] | 1:2 |
| agreed [1] | 4:11 | Bay-nin [2] | 12:2 | change [1] | 9:2 | 10:5 | 10:7 | 1:11 | | |
| agreement [1] | 17:23 | 12:7 | | changed [1] | 8:17 | conversation [2] | | demonstrated [1] |
| ahead [1] | 17:17 | became [2] | 8:19 | chart [3] | 6:7 | 6:10 | 15:2 | 19:16 | 19:21 | | |
| alleged [1] | 15:8 | 8:19 | | 15:17 | | | convey [1] | 16:20 | deposition [2] | 16:10 |
| along [1] | 21:16 | begin [2] | 4:12 | Chase [2] | 2:3 | conveyed [1] | 15:7 | 16:19 | | |
| amend [2] | 17:12 | 7:15 | | 2:23 | | cooperative [1] | 22:4 | depositions [4] | 4:10 |
| 20:1 | | beginning [2] | 2:17 | Chicago [2] | 1:22 | copying [2] | 10:19 | 6:16 | 14:6 | 16:2 |
| amended [1] | 21:15 | 3:12 | | 2:23 | | 10:23 | | description [2] | 13:5 |
| ANDA [1] | 14:20 | behalf [1] | 3:23 | cite [1] | 9:18 | correct [1] | 20:1 | 13:12 | | |
| | | behaving [1] | 21:10 | citing [1] | 12:12 | counsel [7] | 2:5 | different [2] | 12:4 |
| | | | | Civil [2] | 1:4 | 21:6 | 2:11 | 2:23 | 3:3 | 13:21 | | |
| | | | | claim [11] | 6:7 | | | diligent [1] | 18:15 |
| | | | | 13:1 | 14:22 | 15:17 | | | disagree [2] | 6:11 |
| | | | | 15:18 | 15:19 | 15:21 | | | 6:22 | | |

disappointment [1] 22:3
discovery [29] 3:15 3:17 4:3 4:25 5:14 5:16 5:19 5:23 6:3 8:9 8:11 8:14 9:21 10:22 10:22 15:13 15:16 17:12 18:7 18:23 19:9 20:15 21:6 21:9 21:12 21:22 21:24 22:5 22:22
discuss [1] 4:7
discussion [1] 13:7
dispute [4] 6:11 16:11 21:3 22:8
disputes [1] 21:9
District [3] 1:1 1:2 12:12
document [5] 4:21 6:15 18:7 19:1 20:6
documents [20] 4:9 4:12 5:5 5:6 5:9 5:10 6:21 6:25 7:13 7:18 8:22 9:4 12:17 14:7 17:24 18:2 19:4 19:5 19:10 20:14
doesn't [2] 12:13 12:23
done [3] 4:25 20:23 22:1
down [3] 6:10 9:3 20:18
dragging [1] 12:17
dried [1] 17:4
due [1] 6:3
E [2] 2:15 2:15
E-R-B-A [1] 9:9
eager [1] 16:6
early [9] 5:17 9:21 9:24 12:12 18:13 18:17 18:19 18:19 19:7
efforts [1] 20:19
either [2] 10:19 22:13
element [5] 15:22 15:23 16:25 17:3 17:5
elements [3] 13:9 13:10 16:12
embraces [1] 13:1
emphasized [1] 12:9
employees [2] 8:25 9:1
encouraged [1] 9:16
encourages [1] 9:20
end [5] 6:15 10:1 10:1 10:2 17:24
ends [1] 22:25
enforce [1] 15:7
engage [2] 4:7

4:25
engaged [1] 15:6
enormous [2] 9:2 16:14
entered [2] 17:21 18:8
entirely [1] 10:13
entirety [1] 14:23
entitled [2] 10:17 21:5
equitable [1] 21:2
Erba [3] 8:18 9:7 9:9
ESQ [9] 1:18 1:20 1:21 1:21 2:3 2:3 2:7 2:9 2:10
essential [3] 13:9 15:22 15:23
essentially [2] 13:8 14:9
establish [1] 21:14
estoppel [1] 16:21
et [2] 7:3 7:3
Europe [2] 5:8 5:8
eve [1] 4:10
everybody [1] 17:15
evidently [1] 22:4
example [4] 12:22 15:4 16:16 21:13
examples [1] 10:10
except [3] 18:24 20:12 22:2
excessively [1] 17:25
exchange [10] 3:12 4:9 4:21 6:15 17:23 18:2 18:7 19:1 19:10 20:7
exchanged [6] 5:10 5:11 19:5 19:7 20:14 22:22
exchanging [1] 4:12
expect [2] 7:15 22:6
explain [8] 4:4 6:14 14:18 16:10 18:10 19:19 19:20 19:25
expressly [1] 5:13
extension [3] 5:20 5:21 5:22
extent [3] 6:23 20:23 21:14
eyes [1] 5:1
F-A-R-M-A-I-T-A-L-I-A [1] 9:8
fact [1] 10:21
failure [2] 10:18 13:12
fair [5] 19:8 21:2 21:5 21:12 21:24
fairly [2] 20:9 21:21
Farmaitalia [2] 8:18

9:7
fashion [1] 22:23
feature [1] 12:25
features [1] 12:24
Federal [1] 21:6
feeling [2] 19:15 20:5
feet [1] 12:18
felt [1] 10:18
few [2] 6:3 8:23
file [1] 16:13
filed [2] 5:16 14:20
finalize [1] 4:8
finally [2] 4:11 4:12
fine [2] 5:21 19:4
first [8] 7:21 8:8 8:11 9:6 10:8 11:1 12:8 12:19
five [5] 4:16 8:5 8:9 8:13 8:15
Fleishman [2] 1:21 2:22
folks [7] 3:16 3:20 3:21 11:11 11:25 19:11 22:2
following [4] 2:16 3:13 13:6 18:24
forthcoming [2] 5:3 20:24
forward [1] 20:15
forwarded [1] 4:12
four [1] 5:17
framing [1] 16:23
free [2] 20:1 20:2
freeze [1] 17:4
full [1] 6:6
G [2] 2:7 2:15
Gaffigan [1] 1:25
game [1] 17:11
gate [1] 12:12
Geddes [2] 2:6 3:2
given [5] 10:10 11:10 14:14 15:10 15:17
giving [4] 10:10 20:12 20:16 21:24
gone [1] 10:21
good [4] 3:1 12:18 21:18 22:22
guess [2] 14:15 21:20
guys [5] 3:15 4:18 16:6 18:2 18:20
hands [4] 6:10 10:16 10:20 10:20
hard [2] 18:3 18:8
harder [2] 21:4 21:4
hear [4] 7:9 15:13 15:15 22:2
heard [1] 19:16

hearing [2] 17:22 20:17
heavier [1] 20:18
held [1] 2:17
help [2] 18:22 18:22
hey [5] 3:15 4:15 12:15 18:17 19:23
Hi [1] 2:18
himself [1] 16:17
history [1] 16:13
hit [1] 7:2
honest [1] 21:24
Honor [22] 2:20 3:1 3:24 4:20 6:19 7:12 7:16 8:8 11:8 11:14 11:20 11:23 12:19 13:17 15:12 16:13 17:5 20:21 21:11 22:17 22:19 22:24
HONORABLE [1] 1:14
hope [3] 21:2 22:21 22:22
hoping [2] 22:11 22:13
houses [1] 20:5
HULBERT [1] 1:20
Idarubicin [1] 13:22
Illinois [1] 1:22
immediate [1] 22:23
important [2] 16:22 17:1
impression [3] 12:20 13:23 14:8
inadequate [1] 14:17
Inc [5] 1:8 1:8 2:2 2:11 2:12
inclined [2] 17:14 17:16
indicates [1] 4:15
individual [1] 10:25
inform [1] 20:9
information [11] 5:23 6:9 10:24 14:15 15:4 15:9 16:17 21:15 21:16 21:22 21:25
infringe [2] 12:23 15:23
infringement [8] 6:6 6:6 6:8 6:10 12:15 12:16 12:22 14:22
instead [1] 5:23
intend [2] 5:7 7:12
interrogatories [13] 4:20 6:5 6:25 9:21 10:5 10:7 12:11 12:21 13:11 15:1 17:7 19:7 21:13
interrogatory [11] 5:12 5:25 7:1 11:1 13:13 14:13

15:3 15:10 18:11 22:9 22:10
invalidity [2] 11:2 19:24
inventor's [1] 16:10
inventors [4] 8:23 8:24 16:3 16:20
involved [1] 9:1
Italy [1] 8:24
January [2] 5:25 6:3
John [2] 2:7 3:2
Jordan [2] 1:14 2:18
Joshua [2] 1:21 2:22
Judge [2] 2:18 3:7
July [1] 5:16
jumbled [1] 13:18
justification [1] 10:23
KAJ [1] 1:9
Karen [2] 2:3 3:7
KENT [1] 1:14
kind [3] 5:14 18:15 18:17
knows [1] 17:7
L [1] 2:9
laches [6] 13:14 13:17 14:3 14:18 19:22 19:23
laid [3] 13:3 13:6 13:11
language [1] 9:19
Lara [2] 1:21 2:22
last [1] 17:22
late [2] 5:24 17:11
launched [1] 13:25
lay [1] 15:11
lead [2] 3:2 13:2
least [1] 16:14
leaving [1] 7:4
leery [1] 18:16
legal [2] 13:7 18:10
letter [11] 3:13 4:2 4:14 6:24 10:9 11:4 11:4 11:7 12:1 15:5 15:11
letters [2] 3:12 3:19
light [1] 7:2
Likewise [1] 13:5
limitation [1] 6:7
line [4] 2:19 3:8 13:8 19:18
live [1] 8:24
LLP [2] 1:20 2:9
local [2] 4:24 5:13
location [1] 5:8
locations [1] 5:7

Telephone Conference                               CondenseIt™                                                    logs - S

| | | | | |
|---|---|---|---|---|
| logs [1]   4:9 | 16:19   17:6   17:14 | 22:6 | place [1] 5:2 | read [2]   11:4   11:4 |
| look [1]   12:1 | 18:2   18:6   19:2 | orders [1]   5:11 | plaintiff [6]   1:5 | real [1]   7:6 |
| looks [1]   19:17 | 19:4   19:25   22:15 | originally [1]   8:17 | 2:21   18:4   18:12 | really [2]   7:17 |
| loudly [1]   20:22 | needs [1]   7:7 | ours [2] 8:15   10:16 | 20:16   20:22 | 12:13 |
| lyophilization [2] | negotiation [2] 15:6 | outside [2]   2:23 | plaintiffs [2]   18:25 | reason [9]   4:24 |
| 12:25   17:4 | 16:21 | 4:25 | 19:9 | 5:3   12:18   12:22 |
| man [1]   4:21 | negotiations [1] | own [5]  5:23   6:9 | point [9] 4:19   4:23 | 19:6   19:22   19:24 |
| management [2] | 15:14 | 10:20   19:21   19:22 | 6:19   9:15   11:13 | 21:18   21:20 |
| 9:19   21:7 | neither [1]   6:19 | owned [2]   8:17 | 15:11   17:1   18:11 | reasonable [1]   18:25 |
| March [5]   1:12 | new [6]  2:4   2:4 | 8:19 | 19:22 | recognizing [2] 22:12 |
| 3:12   4:11   6:15 | 2:10   2:10   3:3 | owners [1]   8:16 | position [13]   6:6 | 22:14 |
| 17:24 | 21:19 | P [2]   1:25   2:15 | 10:5   12:15   12:16 | record [1]   22:16 |
| MaryEllen [2]   1:18 | Nichols [2]   1:17 | P&U [2] 4:7   4:11 | 15:19   15:19   15:22 | red [1]   7:2 |
| 2:20 | 2:21 | p.m [3]   1:12   2:17 | 18:10   18:14   19:19 | regardless [1]   5:15 |
| matter [1]   18:4 | nine [1]   5:16 | 22:25 | 19:25   20:8   20:25 | Reid [2] 2:9   3:3 |
| may [2]  13:18   21:20 | Nobody [1]   21:3 | page [2] 15:11   16:16 | positions [2]   11:1 | reigns [1]   16:6 |
| McDONNELL [1] | none [2] 8:24   8:25 | pages [1]   16:14 | 19:9 | reject [1]   19:2 |
| 1:20 | noninfringement [2] | paraphrase [1]   11:24 | possession [2]   10:14 | relationships [1] |
| meaning [1]   4:7 | 13:2   13:3 | part [2]  13:10   17:2 | 10:15 | 13:21 |
| means [1]   21:17 | Noreika [2]   2:20 | particular [1]   6:5 | pound [1]   21:3 | relatively [1]   18:13 |
| mechanism [1] 5:14 | 2:20 | parties [8]   4:8 | pounded [1]   21:4 | rely [1]   10:17 |
| meet [1] 15:22 | Noreika's [1]   3:12 | 4:24   9:16   10:20 | pox [1]   20:4 | reorganization [1] |
| merely [1]   17:21 | NORIEKA [1]   1:18 | 14:25   17:22   18:1 | practice [2]   12:10 | 8:21 |
| might [1]   9:5 | NOTE [1]   2:16 | 19:8 | 12:14 | repeat [2]   3:19 |
| mind [3] 19:21   19:22 | nothing [4]   4:21 | parts [1] 15:10 | preface [1]   13:19 | 11:7 |
| 19:24 | 4:22   5:2   5:12 | party [1] 21:14 | preliminary [2] 13:14 | REPORTER'S [1] |
| minute [2]   7:6 | noting [1]   17:21 | pass [1]  14:10 | 17:2 | 2:16 |
| 13:16 | November [7]   4:3 | past [2]  8:23   18:21 | present [1]   16:24 | request [1]   18:23 |
| mix [1]  21:19 | 4:15   5:17   5:19 | patent [7]   10:16 | press [1] 8:3 | requested [1]   5:20 |
| Monday [1]   4:10 | 9:24   17:22   21:7 | 12:24   14:22   15:8 | presumed [1]   10:16 | requests [9]   4:3 |
| month [1]   5:20 | now [17] 5:4   6:12 | 16:15   16:16   16:20 | pretty [1]   16:5 | 5:16   5:19   5:23 |
| months [11]   4:16 | 8:3   8:7   8:20 | patentee [1]   16:18 | privilege [1]   4:9 | 6:3   6:4   8:9 |
| 5:16   5:17   8:5 | 9:10   9:13   11:10 | patents [2]   8:16 | problem [3]   5:21 | 8:11   8:14 |
| 8:9   8:10   8:11 | 14:14   17:19   17:21 | 8:16 | 17:9   17:10 | require [1]   21:8 |
| 8:13   8:15   18:7 | 17:25   21:19   21:21 | pay [1]  20:19 | Procedure [1]   21:6 | requirement [2] 13:12 |
| 22:5 | 21:23   21:25   22:15 | people [12]   3:19 | produce [1]   7:15 | 21:2 |
| Moriarty [17]   2:10 | number [1]   15:4 | 8:22   8:25   9:3 | producing [1]   7:13 | resolved [1]   14:25 |
| 3:4   11:20   11:22 | O [1]   2:15 | 11:19   12:20   14:7 | product [4]   12:23 | respond [4]   7:19 |
| 11:23   12:19   13:17 | objected [1]   12:25 | 15:13   17:11   17:17 | 13:22   14:1   14:1 | 16:8   20:20   22:24 |
| 14:12   14:24   15:21 | objections [2]   6:2 | 19:6   21:21 | products [1]   13:21 | response [10]   3:13 |
| 16:1   16:13   19:13 | 10:3 | Perhaps [1]   6:14 | promptly [1]   20:14 | 10:5   11:5   12:14 |
| 19:14   20:21   22:18 | obviously [2]   16:24 | period [2]   17:25 | pronounced [1] 12:4 | 13:13   14:13   14:23 |
| 22:19 | 20:23 | 18:25 | properly [1]   3:15 | 15:18   19:17   21:24 |
| Morris [2]   1:17 | occasions [1]   4:6 | person [1]   7:2 | proposed [1]   4:13 | responses [9]   5:3 |
| 2:21 | off [1]   3:11 | personnel [1]   9:3 | protective [7]   4:8 | 5:12   6:1   6:2 |
| most [1] 8:10 | Office [3]   16:15 | Pfizer [9]   2:2 | 4:13   4:17   4:23 | 10:7   17:18   20:15 |
| move [1]   22:7 | 16:16   16:21 | 2:24   3:8   8:20 | 5:1   5:11   5:15 | 20:24   21:12 |
| moved [1]   20:6 | once [1] 21:12 | 9:2   12:20   14:2 | provide [3]   5:14 | Rich [2]  1:21   2:22 |
| moving [3]   17:17 | one [11]  5:8   6:11 | 14:2   17:7 | 15:9   21:16 | right [16]   3:10 |
| 20:18   22:4 | 11:13   12:24   14:14 | Pharmaceuticals [2] | pull [1]  16:5 | 4:1   9:18   11:10 |
| Ms [2]   2:20   3:12 | 15:1   15:17   15:22 | 1:8   2:12 | purported [1]   14:22 | 11:22   12:3   12:8 |
| multiple [1]   21:9 | 15:23   17:4   18:12 | Pharmacia [18]   1:4 | put [3]  9:12   21:18 | 17:20   17:24   19:12 |
| muster [1]   14:19 | oOo [1]   2:14 | 2:5   3:14   3:20 | 22:16 | 19:13   19:15   21:10 |
| N [1]   2:15 | opponents [1]   6:23 | 3:23   4:7   8:19 | putting [1]   7:23 | 21:21   22:12   22:15 |
| name [2] 7:1   19:12 | opportunity [2] 9:11 | 8:20   9:1   9:6 | quite [1] 13:4 | road [1]  20:18 |
| named [1]   8:19 | 19:8 | 11:25   12:20   13:19 | quote [2]   4:5 | Rommick [2]   2:3 |
| Nath [2] 2:9   3:3 | opposing [2]   4:4 | 14:1   14:7   14:20 | 15:5 | 2:23 |
| necessary [1]   22:11 | 4:16 | 15:5   15:7 | R [2]   1:21   2:15 | Rosenthal [2]   2:9 |
| need [25]   4:18 | oranges [1]   10:11 | phone [4]   2:21 | raised [4]   6:19 | 3:3 |
| 6:24   7:7   7:18 | order [17]   4:9 | 2:24   14:19   18:10 | 6:20   7:18   10:8 | rules [3] 4:24   5:13 |
| 9:5   10:19   12:17 | 4:13   4:17   4:23 | phonetic [5]   12:2 | raising [2]   15:24 | 21:6 |
| 14:6   15:12   15:13 | 5:2   5:15   6:25 | 12:6   12:7   19:13 | 16:2 | run [1]   17:13 |
| 15:15   16:4   16:7 | 7:19   9:15   9:19 | 19:14 | rapidly [1]   7:14 | running [2]   9:25 |
| 16:8   16:9   16:10 | 11:6   17:21   18:8 | pick [1]  22:6 | rather [1]   3:18 | 10:1 |
| | 18:22   21:7   21:7 | piece [2] 4:18   7:10 | | S [1]   2:15 |

S-E-E [1]  19:14
saw [1]  4:1
says [3]  4:17  15:5  19:4
schedule [5]  4:8  17:14  18:2  18:7  22:5
scheduled [1]  6:16
scheduling [5]  9:15  17:21  18:8  21:7  22:6
Scimed [1]  13:8
sea [1]  6:16
second [1]  9:8
Secondary [1]  10:17
See-Cor [2]  19:13  19:14
seeking [1]  21:18
seem [2]  18:20  18:21
sell [1]  13:20
selling [2]  13:21  14:1
sense [1]  18:13
sensible [2]  21:5  22:4
sensibly [1]  22:7
sent [1]  4:14
sentence [2]  14:14  18:12
serve [3]  5:23  6:4  9:20
served [7]  4:2  5:17  5:18  8:9  8:14  9:24  21:13
set [3]  4:11  21:7  22:5
several [4]  4:6  14:4  14:5  22:5
shape [1]  19:8
short [2]  18:13  21:19
Sicor [21]  1:8  1:8  2:11  2:11  3:15  3:16  3:22  4:6  10:22  11:19  13:20  13:22  13:23  13:25  14:5  14:20  15:6  15:7  19:11  19:15  20:14
Sicor's [1]  10:19
side [6]  6:14  6:19  18:16  19:11  20:7  22:13
sides [6]  5:5  21:3  21:4  21:10  22:6  22:21
single [2]  6:1  16:25
smack-down [1]  22:10
sold [1]  14:1
Sonnenschein [2]  2:9  3:3
sooner [2]  17:11  20:6
sorry [1] 9:16

sort [1]  19:17
sounds [1]  12:5
speak [2]  6:23  11:12
speaking [3]  3:9  3:23  11:18
specific [5]  7:8  7:23  15:16  16:11  18:23
specification [1]  13:9
specificity [1]  22:13
specify [1]  22:8
spelled [1]  9:8
spelling [1]  9:6
spread [1]  7:22
Staff [2] 2:3  3:7
stage [1] 18:24
standard [1]  9:19
start [2]  3:18  7:12
started [2]  3:17  13:20
starting [1]  8:1
States [2]  1:1  5:7
still [6]  6:16  8:24  9:1  18:15  18:20  19:11
stop [4]  6:13  11:15  11:15  11:16
straw [1]  4:21
struction [1]  17:3
stuff [2]  11:6  20:7
sub-part [2]  15:1  15:4
sub-parts [1]  15:3
submitted [2]  16:16  16:17
substantive [1]  6:1
such [1]  13:14
sue [3]  13:23  14:6  14:8
supplement [1]  17:6
supplemented [1]  21:14
supposed [1]  19:19
sympathetic [1] 18:9
sympathetically [1]  17:16
sympathy [1]  18:4
T [1]  2:10
table [1]  21:3
taking [1]  7:8
telephone [4]  1:12  2:16  15:2  22:25
telling [4]  3:14  5:18  20:2  20:16
terms [1]  16:23
Thank [3]  3:10  9:14  22:24
Thanks [2]  9:10  22:23
theirs [1]  8:14

themselves [2]  6:23  14:25
theory [2]  13:2  14:18
therefore [1]  15:23
they've [3]  7:10  10:9  15:17
third [2] 9:9  10:20
third-party [1]  10:22
thought [1]  14:25
thoughtful [1]  21:5
three [4] 8:10  8:11  8:16  15:11
Thursday [1]  1:12
times [1]  14:15
today [2]  4:22  11:21
together [4]  13:24  18:1  18:3  18:6
tolerate [1]  19:17
too [1]  13:7
took [1]  14:8
touched [1]  3:11
toward [1]  20:18
track [1] 9:3
transactions [1]  15:6
trial [5]  9:18  17:6  17:8  17:11  21:6
tried [1]  10:3
trying [2]  12:20  15:12
TUNNELL [1]  1:17
turn [1]  17:19
two [3]  3:21  8:4  15:4
type [1]  6:4
U.S.D.C.J [1]  1:14
under [1]  4:24
understand [7]  6:24  7:3  11:25  14:16  16:20  22:19  22:21
understood [1]  7:21
United [2]  1:1  5:7
unless [1]  5:1
up [3]  11:12  15:2  22:6
Upjohn [8]  1:4  2:5  3:14  3:20  3:23  4:7  8:20  9:1
used [1]  5:22
usually [1]  17:1
v [2]  1:7  1:21
valid [1] 10:16
validity [1]  10:15
version [1]  9:6
view [2]  17:16  17:25
wait [6]  7:6  11:3  11:3  11:3  17:12  19:19
waiting [1]  4:15

warning [1]  20:13
weeks [6]  6:3  7:13  7:16  7:25  8:2  8:4
whoa [4] 6:12  6:12  6:12  11:15
Wilmington [1]  1:11
win [1]  21:4
wind [1]  16:9
wish [1]  11:13
within [3]  7:13  10:14  19:1
woefully [1]  14:17
word [2] 9:8  9:9
world [2]  7:14  7:23
written [2]  13:5  13:12
year [2]  14:2  17:22
years [4] 8:17  8:22  14:4  14:5
yesterday [1]  10:9
yet [6]  3:17  8:6  10:24  15:19  15:19  20:10
York [5]  2:4  2:4  2:10  2:10  3:3