IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY, LLC

           Plaintiff,

v.

SICOR, INC., and
SICOR PHARMACEUTICALS, INC.

           Defendants.

Civil Action No. 04-833 KAJ

REDACTED VERSION

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR LEAVE TO AMEND
THEIR AMENDED COUNTERCLAIM FOR INEQUITABLE CONDUCT

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*Pharmacia & Upjohn Company, LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
 HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, IL 60606
(312) 913-0001

Original Filing Date: September 19, 2005

Redacted Filing Date: September 26, 2005

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| NATURE AND STAGE OF THE PROCEEDINGS | | 2 |
| SICOR'S PROPOSED AMENDED PLEADING | | 5 |
| ARGUMENT | | 9 |
| | I. SICOR ENGAGED IN UNDUE DELAY | 9 |
| | II. SICOR'S MOTIVE'S IN BRINGING ITS MOTION ARE SUSPECT | 10 |
| | III. SICOR'S MOTION APPEARS TO SEEK TO DELAY PROCEEDINGS | 11 |
| | IV. SICOR HAS FAILED TO CURE THE DEFICIENCIES IN ITS INEQUITABLE CONDUCT CHARGE | 12 |
| | V. ALLOWING SICOR TO AMEND WOULD UNFAIRLY PREJUDICE PHARMACIA | 12 |
| | VI. SICOR'S PROPOSED AMENDMENT WOULD BE FUTILE | 13 |
| CONCLUSION | | 14 |

# TABLE OF CITATIONS

Page(s)

Cases

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ........................................................................ 12

*EMC Corp. v. Storage Tech Corp.*,
921 F. Supp. 1261 (D. Del. 1996) (Farnan, J.) ........................................... 13

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................ 9, 13

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) .................................................................... 13

*Monahan v. New York City Dep't of Corrs.*,
214 F.3d 275 (2d Cir. 2000) ...................................................................... 12

*Remington Arms Co. v. Modern Muzzleloading, Inc.*,
1998 U.S. Dist. Lexis 21526 (M.D.N.C. Dec. 17, 1998) .......................... 10

*S3 Inc. v. nVidia Corp.*,
1999 U.S. Dist. LEXIS 23218 (N.D. Cal. Aug. 16, 1999) ........................ 12

*Saporito v. Cumbustion Eng'g Inc.*,
843 F.2d 666 (3d Cir. 1988) ...................................................................... 13

*Strange v. Nationwide Mut. Ins. Co.*,
867 F. Supp. 1209 (E.D. Pa. 1994) ............................................................ 13

*U.S. v. EER Systems Corp.*,
950 F. Supp. 130 (D. Md. 1996) ............................................................... 13

Statutes

Fed. R. Civ. P. 15(a) ............................................................................................. 10

Fed. R. Civ. P. 9(b) ........................................................................................... 9, 13

1.     Sicor's Opening Brief assembles an superficially appealing package of circumstances that appear to support Sicor's request for leave to amend.  The problem is that what Sicor presents as "facts" are simply not "facts" at all.  For example, contrary to Sicor's assertion, Pharmacia produced the Confalonieri declarations and Charman and Weston affidavits more than five months ago –long <u>before</u> the deadline for amending pleadings.  Thus, Sicor lacks any newly discovered evidence to justify amendment at this late date.  Similarly, contrary to Sicor's assertion, Upjohn was *never* the assignee of the '285 patent.  Further, the Examiner was aware of the 1983 Wassermann & Bundgaard reference and the potential applicability of the Arrhenius equation at all pertinent times during the patent prosecution.  When  these actual "facts" are considered, it is clear that Sicor's allegations are futile, untimely, and should be refused.

Separate and apart from the deficiencies in Sicor's pleading as amended, Sicor's other actions in this case show that Sicor's request should be denied.  For example, subsequent to the deadline for amendment of pleadings, Sicor sent a letter to the Court alleging that its inequitable conduct claim would be based on wholly different evidence (never actually pleaded).  Further, Sicor answered an interrogatory about its inequitable conduct position without identifying the Confalonieri declarations and Charman and Weston affidavits.  Still further, Sicor allowed the deadline for expert reports to pass and the close of discovery to approach rapidly.  Now, after substantial delay – when there is time for very little other discovery to be taken – Sicor seeks leave to file a second amended counterclaim that would change the scope and shape of discovery greatly.  That leave, which appears intended to delay the case unfairly, should be denied.

1.

## **NATURE AND STAGE OF THE PROCEEDINGS**

The Court held a scheduling conference for this case on October 14, 2004. Pharmacia sought an expeditious schedule because the patent-in-suit expires in 2006; Sicor sought far greater time for discovery. Based on Sicor's representations regarding the scope of discovery needed for this case, the Court provided for a longer discovery period, one that expires on November 4, 2005. The Court's November 2, 2004 Scheduling Order also established June 1, 2005 as the last date for filing motions for leave to add parties or amend the pleadings.

By the end of March 2005, Pharmacia had answered interrogatories and produced documents bearing production numbers up to PU 0018026, as well as PI 00001-12067 and PI 15000-16559. Among the documents included in that early production were the affidavits of William Neil Charman (Ex. 1: PU 0011682-717) and Robert Laurence Weston (Ex. 2: PU 0014464-81), the terminal disclaimer in relation to the '285 patent (Ex. 3: PU 0015257-59) and Dr. Confalonieri's 1991 declaration to the PTO (Ex. 4: PU 0015197-201). On April 11, 2005, Pharmacia produced documents bearing production numbers PU 0018207 and PU 0024521, which included the Declaration of Carlo Confalonieri, dated December 14, 1994, previously submitted in relation to Swedish Patent Application No. 8602743.0 (Ex. 5: PU 0022030-36). Pharmacia has continually supplemented its production of documents and, among other documents, produced additional copies of all of those documents that were held in other files. Sicor has had all these documents for many months.

On June 1, 2005,[1] Sicor contacted Pharmacia and stated that it would like to amend its pleadings to assert inequitable conduct. While asserting at all times that Sicor could not make out such a defense, Pharmacia consented to that timely amendment. Contrary to Sicor's present representations (*see* Br. at 3-5, 7), Sicor already had the Charman and Weston affidavits and U.S. Confalonieri declaration in its hands for more than two months as of that date. Sicor had also had the Swedish Confalonieri declaration for more than a month and a half.

Pharmacia timely moved to dismiss Sicor's inequitable conduct defense and counterclaim on June 17, 2005.[2] Pharmacia also sought a protective order against the depositions of the three MBHB attorneys implicated in Sicor's insufficient inequitable conduct charge. In responding to Pharmacia's motion, Sicor submitted a July 28, 2005

---

[1]   Sicor asserts in its Opening Brief, "Before June 1, 2005, Sicor, with Pharmacia's consent, filed an amended pleading that alleged that the Applicants for the '285 patent engaged in inequitable conduct by burying, or hiding, material references, among a list of 228 references submitted to the Patent Office late in prosecution and only after Pharmacia knew that its potential patent was secure." Br. at 1-2. That is not correct. Sicor waited until the last day to seek leave to amend, failing even to seek Pharmacia's consent until that day. Ex. 6.

[2]   Sicor asserts in its Opening Brief that "Contemporaneously with the filing of Sicor's amended pleading [on June 1, 2005], Sicor also served deposition notices for the testimony of Pharmacia's patent attorneys (one of whom also happens to be Pharmacia's trial counsel) in order to develop additional information for its counterclaim." Br. at 2. That is not correct. Sicor did nothing until June 27, 2005, when it wrote to Pharmacia, enclosing draft subpoenas for three depositions. *See* Ex. 7. Sicor also states that "Sicor also submitted at about that time a proposed Request for International Judicial Assistance, regarding depositions in Italy of four of the six named inventors of the '285 patent." Br. at 2. Again, that is incorrect. Sicor first contacted Pharmacia about those depositions on July 1, 2005, first provided a draft letter of request to Pharmacia on July 8, 2005, and first submitted a proposed request to the Court on July 21, 2005 – nearly seven weeks after filing its amended pleading. *See* Ex. 8.

letter to the Court that included numerous allegations of inequitable conduct that had not then, or since, been pled:

> With respect to Mr. Boehnen's participation, he made a number of representations to the PTO that, Sicor respectfully submits, are false or misleading. . . . For example, on June 28, 1996, Mr. Boehnen stated: "Applicants have demonstrated time and again in comparative data . . . that the resulting solution exhibits surprisingly better long term storage stability than solutions . . . using a buffer other than the claimed acids to adjust the pH." P&U's own data contradicts this statement.
>
> Similarly, on May 6, 1997, Mr. Boehnen stated to the PTO that the important prior art reference: "Janssen [] does not teach or suggest that any of the disclosed buffers are 'pharmaceutically acceptable solutions'" and "There is nothing in Janssen that suggests the same results could be obtained by pH adjustment of a physiologically acceptable aqueous solvent medium with the use of a 'physiologically acceptable acid.'" These statements are contradicted by contemporaneous statements made by inventor Dr. Confalonieri in declarations submitted by P&U for applications related to the '285 patent made in the Danish and Norwegian Patent Offices, respectively on July 2, 1997 and April 18, 1996, as well as by the Merck Index. . . .

Pharmacia had produced and Sicor had received the Charman and Weston affidavits and the U.S. Confalonieri declaration four months earlier and the Swedish Confalonieri declaration three and one-half months earlier as of that time. Nevertheless, Sicor did not mention those documents in its communications to the Court.

Pharmacia had served a Second Set of Interrogatories on July 11, 2005 directed to Sicor's inequitable conduct contentions. Given the distinctions between Sicor's pleadings and its letter to the Court, Pharmacia expected that Sicor would identify all allegations in its letter to the Court (and seek leave to amend its pleadings). In its August 10, 2005 response, however, Sicor identified only the allegations made in its June 1, 2005 Amended Answer, again not mentioning the Charman and Weston affidavits or the Confalonieri declarations which Sicor had possessed for many months..

4.

Opening expert reports were served on August 15, 2005 and responsive expert reports are due on September 23, 2005, well before issue would be joined on Sicor's additional allegations. Yet, until the day before it filed its Motion for Leave to Amend, five months after receiving the Charman and Weston affidavits and U.S. Confalonieri declaration and four and one-half months after received the Swedish Confalonieri declaration, Sicor never mentioned any of those materials.[3]

### SICOR'S PROPOSED AMENDED PLEADING

Sicor does not identify with specificity who it accuses of inequitable conduct. Instead, it generically accuses

REDACTED

Proposed Amended Answer, ¶ 12. Similarly, Sicor has failed to identify with particularity what material information it believes was withheld from the PTO. Instead, it states:

a.

REDACTED

*Id.*, ¶ 34. In its Proposed Amended Answer, Sicor identifies with specificity only two references that it contends

---

[3] On the afternoon of September 1, 2005, having been previously informed that counsel was out of the office that day, Sicor sent a letter requesting that Pharmacia consent to Sicor's proposed amendment by the next morning. Ex. 9.

were improperly withheld, failing to identify the other four allegedly withheld references in any manner.

b.

### REDACTED

*Id.*, ¶ 35 (alleging that reference "taught, among other things, the potentially deleterious effect a buffer could have on the stability of a final drug product and the experimental method whereby one of ordinary skill in the art would identify buffers having such an effect"). However, Dr. Charmin's only reference to that book was as follows:

> For example, a standard text published in 1976 termed "The Theory and Practice of Industrial Pharmacy" by Lachman, Lieberman and Kanig (Lee [*sic*] and Febiger, Philadelphia) extensively describes preformulation studies and stability principles as applied to formulation design. They specifically refer to the need to determine the effect of pH on the stability of the drug as a guide to formulation development.

Ex. 1, PU 0011695. When Dr. Charman sought to discuss the effect of buffers on stability, he relied on a 1985 Janssen *et al.* paper and a 1972 Arcamone *et al.* paper – both of which were not only cited to the Examiner, but also served as bases for rejections that were overcome. *See* Ex. 1, PU 0011710-11.

c.

### REDACTED

Proposed Amended Answer, ¶ 36. Dr. Charman raised the '515 patent only because it was found in a search, not because it was relevant:

> Most of the patents listed in item 13 of "WNC6" were of little direct relevance. They describe methods of synthesis of anti-cancer derivatives rather than specific aspects of formulation design. Patents which describe potentially useful information include:
>
> (a)   US Patent No. 4,310,515
>
> Although the compound described is Cisplatin, the patent describes typical acids which are useful in formulating a compound at an acidic pH to achieve maximal stability. However, there is nothing new in the use of these acids.

Ex. 1, PU 0011704. Notably, Dr. Charman then rejected use of that reference, stating, "In deciding how to approach formulation of Doxorubicin, I would specifically identify those factors which were reported to effect the stability of Doxorubicin." *Id.*

    d.

## REDACTED

    Proposed Amended Answer, ¶ 39. <u>That is incorrect</u>. As the terminal disclaimer establishes, Pharmacia acquired Upjohn, merged Upjohn into Pharmacia (at which point Upjohn ceased to exist), and changed its name to Pharmacia & Upjohn Company. Ex. 3, PU 0015258. At no point was "Upjohn" ever the assignee of any rights related to the '285 patent.

    e.

## REDACTED

---

[4]   It is unclear whether Sicor asserts that anyone was required to cite the 1992 letter from Australian counsel for Upjohn to Australian counsel for Pharmacia, as that letter set forth a list of references but did not discuss them.

REDACTED

Proposed Amended Answer, ¶ 40. Of course, as Sicor admitted in response to Pharmacia's Motion to Dismiss, a corporation such as Upjohn has no obligation to submit information; that obligation falls only on individuals.

 f. Sicor alleges that certain statements in the U.S. Confalonieri declaration that were submitted as a matter of opinion were "false." *Id.*, ¶ 43; *compare* Ex. 4, ¶¶ 5, 8. Sicor edited Dr. Confalonieri's statements to suggest that there were submitted as a matter of fact, rather than opinion. Proposed Amended Answer, ¶ 43.

 g. Sicor alleges that the Swedish Confalonieri declaration was improper to withhold from prosecution because it established certain mathematical relationships related to the Arrhenius equation were well-established. *Id.*, ¶ 45. But not only had Dr. Confalonieri submitted a declaration to the PTO years earlier that discussed his use of the routine calculations of $K_{obs}$ and the Arrhenius equation, the '285 patent itself clearly indicates that those calculations were well-established:

> The extrapolation of the analytical data in order to determine the time when the 90% of the initial assay could be expected ($t_{90}$ value) was made following an Arrhenius plot.
>
> This procedure of analytical data treatment is well known and widely used and described in the art: see, e.g., Chemical Stability of Pharmaceuticals, Kennet A. Connors, Gordon L. Amidon, Lloyd Kennon, Publ. John Wiley and Sons, New York, N.Y., 1979.

'285 patent, col. 5, lines 45-53.

 h.

REDACTED

8.

REDACTED                                                Proposed Amended Answer, ¶
50.  Again, Sicor fails to identify those references with any further specificity.

## ARGUMENT

Sicor's Motion for Leave to Amend displays multiple grounds for denying such motions – undue delay, dilatory motive, failure to cure deficiencies, undue prejudice to the opposing party, and futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  It is difficult to determine from Sicor's pleading exactly who allegedly withheld or misrepresented what from the PTO because Sicor has pleaded a morass of facts that clearly do not meet the heightened pleading standard of Rule 9(b).  It is absolutely clear, however, that Sicor's proposed amendment is based on information that plaintiff produced many months ago, long before the deadline for amendment.  Sicor has provided no good faith reason for its delay.

Given the broad scope of additional discovery that would be necessary if Sicor's amendment were permitted and the clear deficiencies in the pleading, the only apparent reason for Sicor's potential amendment seems to be to delay these proceedings.  But not only has Sicor had several opportunities to raise these issues earlier, it has chosen not to cure even the deficiencies it knows to exist because of Pharmacia's Motion to Dismiss.  Finally, because there is no way Sicor's allegations could survive the heightened pleading standard applicable to inequitable conduct, allowing amendment would be futile.

### I.   SICOR ENGAGED IN UNDUE DELAY

Sicor had the references underlying its inequitable conduct charge well before the deadline for amendment of the pleadings, but chose not to cite them in its Amended Answer.  Sicor could have raised these references when it was discussing its inequitable

10.

conduct charge with the Court on July 28, 2005; it chose not to do so. It could have included its contentions in its August 10, 2005 answers to Pharmacia's Second Set of Interrogatories; it chose not to do so. There is no reason to allow it to plead based on those references now at this late stage.

A motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. *Remington Arms Co. v. Modern Muzzleloading, Inc.*, 1998 U.S. Dist. Lexis 21526, at *5 (M.D.N.C. Dec. 17, 1998) (denying motion to amend because the motion was unduly delayed and the opposing party would be prejudiced). A party who delays in seeking an amendment is acting contrary to the spirit of Rules 15(a) of the Federal Rules of Civil Procedure. *Id.* Here, Sicor waited five months to assert inequitable conduct, until discovery was closing and expert reports were served. There is no reason to allow it to engage in such delay, without any explanation whatsoever,[5] in seeking to amend its inequitable conduct charge.

## II.   SICOR'S MOTIVE'S IN BRINGING ITS MOTION ARE SUSPECT

Sicor's Motion for Leave to Amend is a factual house of cards that must fall when the fundamental misstatement of Sicor's brief are corrected. Namely, Sicor alleges that the Charman and Weston affidavits, U.S. Confalonieri declaration, and Swedish Confalonieri declaration were served after the deadline for amendment of the pleadings, but that is simply and absolutely incorrect. As explained above, the bates numbers of these documents show that they were served on Sicor in March and April 2005, long

---

[5] Even though Sicor incorrectly asserted that it received the documents on June 28, 2005, Sicor does not attempt to justify its two month delay in amending its inequitable conduct charge.

before the deadline to amend the pleadings. Apparently seeking to establish diligence in the face of its delay, Sicor incorrectly represents the timing of (i) its amendment to assert inequitable conduct, (ii) its service of deposition notices, and (iii) its service of letters of request. Sicor also misstates the chain of ownership of the '285 patent, distorts quotes from the U.S. Confalonieri declaration, and ignores the patent itself as providing information it claims was withheld from the PTO. Sicor has not met its duty of candor to this Court.

### III. SICOR'S MOTION APPEARS TO SEEK TO DELAY PROCEEDINGS

Because the '285 patent expires soon, Pharmacia has consistently sought to expedite these proceedings; Sicor has consistently sought to extend the proceedings. Sicor's Motion to Amend, which would expand the scope of discovery substantially, appears to be yet another attempt. Discovery closes in one and a half months, but all expert discovery and much deposition discovery must occur during that time. For example, in addition to the issues to be addressed on the same day as the submission of this opposition, Sicor has yet to provide a witness to testify competently on the development and manufacturing of its accused products. It would be virtually impossible in that time to complete all of the discovery set to be taken and also require Pharmacia to take the discovery required to defend itself fairly against the new inequitable conduct allegations..

### IV. SICOR HAS FAILED TO CURE THE DEFICIENCIES IN ITS INEQUITABLE CONDUCT CHARGE

Sicor has clear notice of the need to allege inequitable conduct with particularity: Pharmacia moved to dismiss its pending counterclaim on that basis. Sicor, however, has again chosen not to do so. It not only again fails to plead with particularity who allegedly committed inequitable conduct, but it also expands its prior failures by failing to identify the references purportedly uncited or buried. In short, Sicor has learned nothing from Pharmacia's Motion to Dismiss. This late in the day, it should be held to have done so.

### V. ALLOWING SICOR TO AMEND WOULD UNFAIRLY PREJUDICE PHARMACIA

Sicor has strategically chosen not to reveal its additional inequitable conduct allegations until after the time for its answers to Pharmacia's Second Set of Interrogatories and expert reports had come and gone, prejudicing Pharmacia's trial preparations. The new claims may call for numerous additional depositions, travel, expenses, and retaining additional experts and preparing additional expert reports. *See S3 Inc. v. nVidia Corp.*, 1999 U.S. Dist. LEXIS 23218 at 155 (N.D. Cal. Aug. 16, 1999) (denying leave to amend where the proposed amendments required extensive discovery and, thus, were unduly prejudicial). Indeed, depending on how the opaque pleadings are interpreted, international discovery in Australia might be required. The new aspects of the proposed pleading would require Pharmacia to expend significant additional resources to conduct discovery and prepare for trial, which are recognized bases for denying leave to amend. *See Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). That is, Pharmacia will have to conduct potentially onerous, possibly

international, discovery. There simply is no time to do so before the close of discovery, especially if involuntary international discovery is required.

### VI. SICOR'S PROPOSED AMENDMENT WOULD BE FUTILE

As noted in *Foman*, leave to amend may be denied if the amendment would be futile. 371 U.S. at 182. The Third Circuit has noted that "an amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (internal quotations omitted). That is exactly the case here, as Sicor's proposed amended inequitable conduct charge clearly fails to satisfy the specificity requirement of Rule 9(b), and further relies upon a distortion of the references beyond all recognition.

A claim that a patent was procured through inequitable conduct must be pled with particularity to satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *EMC Corp. v. Storage Tech Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996) (Farnan, J.). An important part of the heightened pleading standard is the need to identify just who is supposed to have acted inequitably. *See Saporito v. Cumbustion Eng'g Inc.*, 843 F.2d 666, 675 (3d Cir. 1988); *U.S. v. EER Systems Corp.*, 950 F. Supp. 130, 132 (D. Md. 1996); *Strange v. Nationwide Mut. Ins. Co.*, 867 F. Supp. 1209, 1219-1220 (E.D. Pa. 1994). Sicor simply did not do so, instead besmirching the entire class of "the attorneys, agents, and employees of Pharmacia acting on behalf of Pharmacia in connection with the filing and prosecution of the '742 Application."

Similarly, Sicor fails to identify with specificity the prior art reference from the Australian litigation that were allegedly withheld or "buried." Proposed Amended Answer, ¶¶ 34, 50. Sicor cites a number for each category – "at least a half-dozen" for

14.

the former and eight for the latter – but does not identify which ones. When it does identify references with particularity, however, they show just how unfounded Sicor's allegations are. Sicor cites a reference that Dr. Charmin ignored in favor of references that were cited to the PTO, as well as one that Dr. Charmin acknowledged was "of little direct relevance" before discarding it. *Id.*, ¶¶ 35, 36. Those sorts of references can scarcely constitute the good cause required for amendment.

## CONCLUSION

For the foregoing reasons, Pharmacia respectfully requests that Sicor's Motion for Leave to Amend be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ James W. Parrett, Jr. (#4292)*
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*Pharmacia & Upjohn Company, LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
 HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, IL 60606
(312) 913-0001

Original Filing Date: September 19, 2005

Redacted Filing Date: September 26, 2005

## CERTIFICATE OF SERVICE

I hereby certify that copies of the forgoing were caused to be served this 26th day of September, 2005 upon the following in the manner indicated:

### BY HAND

Steven J. Balick, Esquire
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Reid L. Ashinoff, Esquire
Brian T. Moriarty, Esquire
William J. Sipio, Esquire
David R. Baum, Esquire
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020

/s/ James W. Parrett, Jr. (#4292)
James W. Parrett, Jr. (#4292)