IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC, | ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) ) ) | |
| v. | ) | C.A. No. 04-833-KAJ |
| SICOR INC. and SICOR PHARMACEUTICALS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
SUPPORTING THEIR MOTION TO AMEND COUNTERCLAIM**

ASHBY & GEDDES
Steven J. Balick (ID# 2114)
John G. Day (ID# 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700
Facsimile: (212) 768-6800

Dated: October 5, 2005

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .......................................................................................................... 3

I.     PHARMACIA FAILS TO SHOW THAT IT WILL BE PREJUDICED BY
       ALLOWING SICOR TO AMEND ITS PLEADING ......................................... 3

II.    SICOR HAS NOT ENGAGED IN "UNDUE DELAY" -- NOR DID SICOR
       HAVE "A DILATORY MOTIVE" IN FILING ITS AMENDED
       COUNTERCLAIM ........................................................................................ 5

       A.   Pharmacia Has Persistently Delayed its Document Production .................... 6

       B.   Pharmacia Has Sought to Delay the Depositions Sought by Sicor ............... 9

III.   SICOR HAS PLED INEQUITABLE CONDUCT WITH ADEQUATE
       SPECIFICITY .............................................................................................. 11

IV.    PHARMACIA IMPROPERLY (AND INCORRECTLY) ARGUES THE
       MATERIALITY OF ITS INEQUITABLE CONDUCT ON OUR MOTION
       TO AMEND ................................................................................................. 16

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                                **Page(s)**

*Boileau v. Bethlehem Steel Corp.,*
 730 F.2d 929 (3d Cir. 1984).................................................................6

*Butcher & Singer, Inc. v. Kellam,*
 105 F.R.D. 450 (D. Del. 1984) ...........................................................4

*Concept Innovation v. CFM Corp.,*
 2005 WL 670637 (N.D. Ill. Mar. 21, 2005)..............................13, 15

*Dole v. Arco Chemical Co.,*
 921 F.2d 484 (3d Cir. 1990)............................................................3, 4

*EMC Corp. v. Storage Technology Corp.,*
 921 F. Supp. 1261 (D. Del. 1996)......................................................16

*Lundy v. Adamar of N.J., Inc.,*
 34 F.3d 1173 (3d Cir. 1994)................................................................6

*MBIA Inc. Corp. v. Royal Indemnity Co.,*
 221 F.R.D. 419 (D. Del. 2004) .................................................13, 16

*Monahan v. New York City Department of Corrections,*
 214 F.3d 275 (2d. Cir. 2000).............................................................4

*Mylan Pharm., Inc. v. Kremers Urban Dev.,*
 2003 WL 22711586 (D. Del. Nov. 14, 2003) .....................................5

*Pegasus Devel. Corp. v. DirecTV, Inc.,*
 2002 WL 598457 (D. Del. Apr. 18, 2002)..........................................4

*Procter & Gamble Co. v. Nabisco Brands, Inc.,*
 125 F.R.D. 405 (D. Del. 1987) ..................................................4, 5, 17

*Remington Arms Co. v. Modern Muzzleloading, Inc.,*
 1998 WL 1037920 (M.D.N.C. Dec. 17, 1998) ...................................6

*S3 Inc. v. nVidia Corp.,*
 1999 U.S. Dist. LEXIS 23218 (N.D. Cal. Aug. 16, 1999)...................4

*Saporito v. Combustion Engineering, Inc.,*
 843 F.2d 666 (3d Cir. 1988)...............................................................16

*Scripps Clinic & Research Foundation v. Baxter Travenol Laboratoriess, Inc.,*
 1988 WL 22602 (D. Del. Mar. 9, 1988) ..........................................13

## TABLE OF AUTHORITIES (continued)

**CASES**                                                                    **Page(s)**

*Stowe Woodward, L.L.C. v. Sensor Prods., Inc.,*
    2005 WL 2160036 (W.D. Va. Sept. 7, 2005) ...........................................................14, 15

*Trueposition, Inc. v. Allen Telecom, Inc.,*
    2003 WL 151227 (D. Del. Jan. 21, 2003)................................................................. *passim*

*U.S. v. Donald Lane Construction,*
    19 F. Supp. 2d 217 (D. Del. 1998)...............................................................................4, 5

*U.S. v. EER Systems Corp.,*
    950 F. Supp. 130 (D. Md. 1996) .....................................................................................16

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.,*
    2000 WL 1481015 (D. Del. Sept. 29, 2000) ...................................................................16

Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc. (collectively, "Sicor") respectfully submit this Reply Memorandum of Law in further support of their motion to amend their counterclaim against plaintiff Pharmacia & Upjohn Company, LLC ("Pharmacia").

## PRELIMINARY STATEMENT

Unable to challenge the pleading sufficiency of Sicor's detailed proposed Amended Counterclaim (the "Amended Counterclaim"), which sets forth specifics concerning Pharmacia's withholding of material references from the U. S. Patent and Trademark Office (the "PTO"), and its delayed disclosure and burying of other material references, Pharmacia resorts to attacking Sicor. Such attacks cannot alter the fundamental fact that Sicor's Amended Counterclaim is well-pled. Indeed, Pharmacia's opposition brief begrudgingly acknowledges this, stating that Sicor's inequitable conduct pleading is "superficially appealing" – obviously providing Pharmacia clear and ample notice of what Sicor alleges Pharmacia did wrong.

Most significantly, while Pharmacia's opposition prematurely attacks the merits of *some* of Sicor's allegations, Pharmacia does not and cannot dispute the heart of Sicor's Amended Counterclaim. The Amended Counterclaim plainly alleges that the Applicants who prosecuted the '742 Application violated their duty of candor by failing to disclose to the PTO: a February 7, 1992 letter from Upjohn's counsel which forcefully avers the invalidity of the '197 patent, a foreign application related to the '285 patent (the "Upjohn Letter"); Dr. William Neil Charman's 36-page expert report and analysis; Mr. Robert Laurence Watson's 18-page expert report and analysis, and, among other prior art; the pertinent portions of Lachman (2nd Edition Lea & Febiger 1976), all of which challenged Pharmacia's arguments for patentability in its '742 Application. (*See* Amended Counterclaim, ¶¶ 30-41). Pharmacia does not – cannot – deny that those substantively involved in the prosecution of the '742 Application failed to make these

material disclosures to the PTO. Its efforts in its Opposition to make technical, merits-type arguments to try to mitigate these non-disclosures are inappropriate at the pleading stage.

Similarly, Pharmacia's effort to argue that Applicant Confalonieri's Declaration submitted to the PTO did not contradict his Swedish declaration – which Pharmacia also withheld from the PTO – is a merits dispute that should be addressed after full discovery, including Dr. Confalonieri's deposition, is allowed. Sicor's pleading clearly states a valid claim for relief and puts Pharmacia on specific notice of what Sicor claims Pharmacia did wrong.

Pharmacia asserts, disingenuously, that Sicor should not be allowed to pursue its well-pled claims because: (1) Sicor had a dilatory, improper "motive" in filing its amended pleading after the June 1 Scheduling Order deadline, (2) Sicor engaged in "undue" delay and "bad faith" in serving its amended pleading after June 1 and not presenting these allegations sooner; (3) Pharmacia will be "unfairly" prejudiced if Sicor is now allowed to pursue discovery concerning its inequitable conduct claim, and (4) Sicor's pleading is defective because it has not alleged "this late in the day" precisely who among the Applicants (*see* Amended Counterclaim, ¶ 12), misled the PTO.

These attacks on Sicor and its pleading are each meritless, and provide no basis to deny Sicor's motion to amend. As described below, Pharmacia's own litigation tactics in this case are the cause of whatever delay Pharmacia may claim as a result of the amendment. A simple chronological presentation of *Pharmacia's* blatant, persistent, and continuing pattern of discovery delay in this case, as set forth with respect to both "Document Production" and "Depositions" in the charts, attached hereto as Exhibits 4 and 8, respectively, demonstrates that Pharmacia itself is principally responsible for the delay in discovery about which it now complains. Moreover, while Sicor has in fact identified some of the Applicants who it believes

misled the PTO, as this Court has already noted, the very depositions Sicor needs in order to

flesh out the exact identities of the Applicants who dealt inequitably with the PTO have been

delayed for several months – and still are delayed – by Pharmacia's refusal to present those

witnesses – all current or former employees, agents, attorneys and/or consultants of Pharmacia –

for depositions. Lastly, as a matter of law, the purported prejudice that Pharmacia states will

befall it if the motion is granted (*i.e.* having to engage in additional discovery) is ***not***, under well-

settled Third Circuit precedent, the type of harm that could warrant denial of Sicor's motion to

amend.

## **ARGUMENT**

### I.  **PHARMACIA FAILS TO SHOW THAT IT WILL BE PREJUDICED BY ALLOWING SICOR TO AMEND ITS PLEADING**

"Prejudice to the non moving party is the touchstone for the denial of" a motion for leave

to amend. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (citation omitted).

Nonetheless, Pharmacia makes no attempt to prove, as it must, that allowing Sicor's proposed

amended pleading would either "disadvantage" Pharmacia or "deprive [it] of the opportunity to

present facts or evidence which it [otherwise] would have offered." *Id.*; *Butcher & Singer, Inc.*

*v. Kellam*, 105 F.R.D. 450, 453 (D. Del. 1984). In fact, no such prejudice exists here.

To satisfy its burden, Pharmacia "must do more than merely claim prejudice." *Pegasus*

*Devel. Corp. v. DirecTV, Inc.*, No. CIV.A 00-1020-GMS, 2002 WL 598457, *2 (D. Del. Apr. 18,

2002) (citation omitted) (attached as Exhibit 12). Yet, instead of showing how its "ability to

present its case would be seriously impaired were amendment allowed," *U.S. v. Donald Lane*

*Constr.*, 19 F. Supp. 2d 217, 221 (D. Del. 1998), *quoting Dole*, 921 F.2d at 488, Pharmacia

claims that it "*may*" have to take "additional depositions," incur "travel expenses" or take

discovery in Australia if Sicor is permitted to amend its Counterclaim. (Plaintiff's brief ("Pl's

br."), p. 12) (emphasis added). Time and again, both this Court and the Third Circuit Court of Appeals have rejected contentions like Pharmacia's as insufficient to defeat a motion for leave to amend. *See, e.g., Dole*, 921 F.2d at 488; *Pegasus Devel. Corp.*, 2002 WL 598457, at *2 ("Prejudice does not result merely from a party's having to incur additional counsel fees."); *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. 405, 409 (D. Del 1987) (rejecting defendants' argument that allowing proposed amendments would result in "enormous additional time and expense for discovery"); *Butcher & Singer, Inc.*, 105 F.R.D. at 453 (granting defendant leave to amend where "Plaintiff suggests that additional discovery will be required [but] fails to explain precisely the additional discovery that it will need").[1] As a matter of law, Pharmacia has not established unfair prejudice and cannot defeat Sicor's motion simply by raising the possibility of additional depositions or costs.

Pharmacia's ability to defend itself at trial will in no way be impaired by allowing Sicor to amplify its inequitable conduct allegations. Sicor's proposed amendment "does not come on the eve of trial," and does not interject a completely new theory of liability (Sicor first pled inequitable conduct in June). *Procter & Gamble Co.*, 125 F.R.D. at 411. Scores of documents relating to this claim have already been disclosed, and a number of the witnesses to be deposed on this issue have already been identified.[2] There are still a number of weeks before the discovery cutoff, and this Court has already stated that it would permit some discovery on

---

[1]    Notably, the only two cases Pharmacia could find to support its contention that causing a party to expend additional resources in discovery is a "recognized bas[i]s for denying leave to amend," (Pl's br., p. 12), were decided by courts outside the Third Circuit. (*See* Pl's br., p. 12, *citing Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000); *S3 Inc. v. nVidia Corp.*, 1999 U.S. Dist. LEXIS 23218 (N.D. Cal. Aug. 16, 1999)) (attached as Exhibit 13)  Even if these cases supported Pharmacia's position, Pharmacia cannot – and did not even attempt – to overcome the binding and persuasive authority from this Circuit.

[2]    Although, as set forth below, Pharmacia has impeded Sicor's ability to depose the witnesses who are likely to possess knowledge of Pharmacia's inequitable conduct, Pharmacia's efforts to thwart full, fair and timely discovery should not be held against Sicor. *See, infra*, §II.B.

Sicor's inequitable conduct claim after the deadline if the need arises. (Exhibit 14, Hearing Tr., 7/28/2005, p. 9:12-16); *see also Mylan Pharm., Inc. v. Kremers Urban Dev.*, No. Civ.A. 02-1628, 2003 WL 22711586, *3 (D. Del. Nov. 14, 2003) (granting leave to amend where "little prejudice would result from re-opening discovery for the limited purpose of obtaining additional information on [the new] claims.") (attached as Exhibit 15).

Finally, all of these witnesses are Pharmacia's own current or former employees, agents or attorneys. Pharmacia has been and remains free to speak with them at any time; it is not the party which needs the additional discovery here by Sicor. Pharmacia will not be "unduly prejudiced" by the amendment Sicor seeks, and this alone is a sufficient basis to grant the motion to amend.

## II.    SICOR HAS NOT ENGAGED IN "UNDUE DELAY" – NOR DID SICOR HAVE "A DILATORY MOTIVE" IN FILING ITS AMENDED COUNTERCLAIM

Because Pharmacia is unable to demonstrate any harm that would result from granting Sicor leave to amend, its claims of "undue delay" are meritless. *See Donald Lane Constr.*, 19 F. Supp. 2d at 222 ("The passage of time, without more, does not require that a motion to amend an answer be denied.") (citation omitted). Pharmacia's argument that Sicor should have moved to amend its pleading a few weeks earlier ignores the law in this Circuit, which makes clear that "undue delay refers solely to delay in the proceedings, not to delay in amending the pleadings." *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1197 (3d Cir. 1994) (Becker, J. concurring), *citing Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 939 (3d Cir. 1984), *and citing Adams v. Gould, Inc.*, 739 F.2d 858, 868-69 (3d Cir. 1984). Notably, the ***only*** case that Pharmacia could find purportedly to support its argument that Sicor "act[ed] contrary to the spirit of Rule 15(a)" by not amending earlier arises out of the Middle District of North Carolina, and ***does not deal with a motion to amend under Rule 15(a)***, but rather a motion to stay litigation pending a defendant's

request to have the PTO reexamine the plaintiff's patent. *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 2:97 CV 00660, 1998 WL 1037920, *1 (M.D.N.C. Dec. 17, 1998) (emphasis added) (attached as Exhibit 16). Thus, Pharmacia provides no legal support for its "undue delay" argument.

Moreover, there is no evidence that Sicor is seeking to or will delay these proceedings by this amendment. Not only does Pharmacia lack *any* support for its contention that Sicor is "improperly motivated" to delay this matter, but Pharmacia's own dilatory conduct throughout discovery belies its oft-repeated, but as-yet-undemonstrated desire to "expedite these proceedings." (Pl's br., p.11).[3]

### A.     Pharmacia Has Persistently Delayed its Document Production

Sicor has not previously documented for this Court Pharmacia's dilatory discovery practices. Instead, Sicor has persisted in doing what it could to pursue the discovery it needs to flesh out its claims and prepare to try this case. However, given that Pharmacia is now claiming "undue delay" and "dilatory motive" as bases to disallow Sicor's proposed Amended Counterclaim – which was served over two months before the November 4, 2005 discovery cut-off – Pharmacia's persistent and continuing efforts to delay Sicor's efforts to conduct discovery must be set forth.

The charts attached hereto as Exhibits 4 and 8 chronologically set forth Pharmacia's discovery conduct in this case, citing documents and correspondence (which are in turn attached as exhibits). The first chart (Ex. 4), relating to Pharmacia's Document Production, shows that:

---

[3]     Although Pharmacia notes that the '285 patent expires in 2006, Pharmacia offers no explanation as to why that fact requires it to prosecute this action on an expedited basis. Sicor started to sell its idarubicin hydrochloride product in 2002, yet Pharmacia waited until 2004 before even filing this lawsuit.

(1)    Pharmacia unilaterally waited *three full months* after its document production was due before producing a single document to Sicor, thus delaying Sicor's discovery efforts for months;

(2)    Pharmacia withheld from production almost 35,000 documents – *more than half* of the documents it has produced in this case – until well after the June 1 deadline for parties to amend their pleadings, and for *more than six months* after these documents should have been produced;

(3)    Pharmacia inexplicably piece-mealed its production and withheld from Sicor crucial documents concerning its Australian litigation until late July 2005, well after the Scheduling Order's June 1 date to amend pleadings; and

(4)    the single most telling document – the *1992* Upjohn Letter (Ex. 7), showing that Upjohn (now part of the plaintiff in this case) was intimately involved with and controlling the related Australian Delta West litigation against Pharmacia (the "Australian Litigation") – was withheld by Pharmacia until July 18, 2005, well after the June 1 amendment date. The Upjohn Letter was a keystone for Sicor in understanding the true impact of the Australian Litigation on the '742 Application.

The simple truth is that Pharmacia's pattern of late document production, coupled with the withholding of important materials, which continues to date (*see* Ex. 17, Sicor's September 13, 2005 letter to Pharmacia), affords it no basis to claim that Sicor engaged in "undue" delay. Sicor worked hard to review and assimilate the roughly 60,000 documents it received from Pharmacia between April and late July 2005, and when Sicor completed this review it promptly served its motion to amend on September 2.

When understood in this context, Pharmacia's claim that Sicor acted with improper dilatory motive is specious. It was only after Sicor received and reviewed the Upjohn Letter challenging the validity of the patent – a letter Pharmacia could have produced to Sicor when it was due on December 29, 2004, but withheld from production for seven months – that Sicor was able to piece together all of the documents relating to the Australian Litigation. In its Opposition, Pharmacia *never* discusses the late-produced Upjohn Letter – a truly remarkable omission. The document demonstrated that Upjohn was itself vigorously asserting invalidity arguments very similar to those that Sicor presses here, and was controlling the Australian Litigation, submitting expert declarations and extensive prior art references contesting the patent's validity. As Sicor advised the Court in its moving papers (*see* p. 4), "Sicor then re-reviewed two 1995 expert reports provided to Pharmacia by Delta West (but in reality by Upjohn) in the Australian litigation."[4] Sicor believes that the same individuals knowledgeable of and dealing with the Australian Litigation for Pharmacia and Upjohn were involved in the prosecution of the '742 Application, and Sicor is seeking discovery on this point, among others. In this context, the fact that Sicor needed the last week of July and August to piece together Pharmacia's late production of some 35,000 documents, assimilate the information contained therein, and draft a detailed amended pleading, is not even close to "undue" delay. Nor is it evidence of dilatory motive on Sicor's part.[5]

---

[4] Among the documents that received intense scrutiny from Sicor following the production of the Upjohn Letter was Dr. Confalonieri's 1994 Declaration to the Swedish Patent Office. While Pharmacia first produced a copy of this document four months late, in April 2005, it produced a second copy three months later, in June 2005. It was the latter copy to which Sicor's attention was drawn following the production of the Upjohn Letter.

[5] Pharmacia's complaint that Sicor did not have all of this pieced together by August 10, 2005, when it amended its interrogatory responses to explain its earlier pleading (*see* Pl's br., p. 4), proves neither dilatory motive nor "undue" delay. Sicor got it all pieced together in the ensuing three weeks.

The reality is that, after Pharmacia and Upjohn became a single company in 1995, none of the individuals charged with the duty of candor to the PTO in connection with the '742 Application chose to share any of Upjohn's or its scientific experts' views with the PTO at any time during the 8-year prosecution period of the '742 Application process. Moreover, those views and the other withheld information contradicted statements made by Applicants and their patent counsel in the prosecution of the '742 Application, further evidencing their intent to deceive the PTO. This deceptive withholding of highly material information constitutes inequitable conduct, and Sicor has properly and specifically pled it.

**B.**    **Pharmacia Has Sought to Delay the Depositions Sought by Sicor**

As this Court is well aware, Sicor has been trying to depose the foreign inventor Applicants for many months, over Pharmacia's steadfast resistance to making these important witnesses available for U.S. style depositions. Only last week the Italian (Milan) Court of Appeals appointed a Commissioner to (hopefully) schedule and preside over these depositions, though, as the Court knows, Pharmacia continues to press the "right" of these former employees to object in Italy in order to further delay these proceedings.

Pharmacia's representation to this Court that "Sicor did nothing until June 27, 2005" to pursue these Italian depositions (Pl's br., p. 3, fn. 2) is not accurate. As the chart attached as Exhibit 8 demonstrates, Sicor has been in continuous communication with Pharmacia since April 22, 2005 to try to schedule these Italian depositions. (*See* Ex. 9).[6] It is Pharmacia that has stalled this process for months, first raising issues about which of the former employees it was and was

---

[6]    In fact, Pharmacia's attorney, Mr. Boehnen, advised the Court during the July 28, 2005 Telephonic Conference: "***Months ago***, we began trying to contact these [Italian inventor] witnesses and to persuade them to participate in the discovery process." (Ex. 14, Hearing Tr., 7/28/2005, p. 19:16 -18) (emphasis added). This is completely inconsistent with Pharmacia's statement to the Court in its opposition papers that Sicor did not raise the issue until late June.

not representing, then refusing American style depositions for the principal inventors Drs. Confalonieri and Gatti, and then arguing against the form of the Letters of Request for International Judicial Assistance presented by Sicor.

The Court may recall the July 28, 2005 Telephonic Conference during which Sicor's counsel referred to the "conundrum" caused by Pharmacia's resistance to these Italian depositions, while it simultaneously opposed Sicor's request to depose the U.S. attorney Applicants who prosecuted the '742 Application. This Court clearly perceived that Pharmacia, not Sicor, was creating a roadblock to the inequitable conduct discovery needed here:

> THE COURT: I don't have a lot of sympathy for the position you [Pharmacia] are pressing on me here. These people are inventors on a patent that you are seeking to enforce. And I think it comes with some degree of, well, inconsistency, let's put it that way, to say, hey, judge, make them develop a bunch of other avenues of evidence with regard to certain defenses before they can depose folks here in the United States and, on the other hand, be throwing up roadblocks to efforts to take depositions overseas.
>
> \*       \*       \*
>
> I've given you [Pharmacia] the protective order to the degree I described here today but I wanted to raise with you the issue of your opposition to Sicor's attempt to get evidence through the Hague Convention as problematic.

(Ex. 14, Hearing Tr., 7/28/2005, pp. 17-18.)

As the chart attached as Exhibit 8 indicates, as of today Sicor still has no agreed-upon dates to depose the principal Italian Applicants, and its request to depose the U.S. attorney Applicants has been stayed by this Court pending the Italian depositions. Pharmacia's argument – on this record – that Sicor has been dilatory in pursuing the discovery it needs on inequitable conduct, is disingenuous at best.

Finally on this point, Pharmacia complains that Sicor is prejudicing Pharmacia by delaying expert reports and discovery on the inequitable conduct issues. (Pl's br., p. 5.) This

exact issue also came up at the July 28, 2005 Telephone Conference, and the Court dealt with it squarely:

> THE COURT:  Okay.  Well, I'm going to shorten this up.  I'm granting Sicor's request in this regard because if we're going where I think we're going with what you are saying, Mr. Rich [Pharmacia's counsel], have [Sicor] them file an expert report and have them supplement it, I'm not going to put them to the extra expense of that.  *It's your request they can't get some evidence they think they need to get* and under those circumstances, I'm not going to make them file an expert report on this issue until we've got this specific point, that is, is there evidence that Mr. Boehnen and others have? . . .  [u]ntil we get that piece wrapped up, I'm not going to make them put in an expert report.

(Ex. 14, Hearing Tr., 7/28/2005, pp. 21-22).

## III.    SICOR HAS PLED INEQUITABLE CONDUCT WITH ADEQUATE SPECIFICITY

Pharmacia argues that the Amended Counterclaim is "futile" because it fails to meet the pleading requirements set forth in Federal Rule of Civil Procedure 9(b).  But in contending that Sicor "fail[s] to identify the references purportedly uncited or buried," (Pl's br., p. 12), Pharmacia turns a blind eye to what is plain on the face of Sicor's pleading:  Sicor has specifically identified the following material references that Pharmacia withheld from the PTO during the '742 patent application process:

- The Upjohn Letter (Amended Counterclaim, ¶¶ 26, 40);

- The affidavit/expert report of Dr. Charman (*Id.*, ¶ 37);

- The affidavit/expert report of Mr. Weston (*Id.*);

- Relevant pages from Lachman, <u>The Theory and Practice of Industrial Pharmacy</u>, Third Edition (*Id.*, ¶ 35);[7]

- U.S. Patent No. 4,310,515 (*Id.*, ¶ 36);

---

[7]    Sicor's Amended Counterclaim also points out that the Applicants did not submit to the PTO the second edition of Lachman's work, which was cited in Dr. Charman's expert report, even though that edition was prior art to the '285 patent and the third edition was not. (Amended Counterclaim, ¶ 35).

- Dr. Confalonieri's December 14, 1994 declaration to the Swedish Patent Office (*Id.*, ¶ 46), which directly contradicts statements made in Dr. Confalonieri's declaration submitted to the PTO on July 12, 1996 (*Id.*, ¶ 46).[8]

Pharmacia's claim that the Amended Counterclaim fails to identify what was withheld or buried is nonsense. Only by ignoring Sicor's detailed allegations can Pharmacia contend that Sicor has failed to meet the pleading standards of Rule 9(b). The Rule does not require an "exhaustive cataloguing" of facts, but rather that a pleading be "suffic[ient] to place the plaintiffs on notice of the misconduct with which they are charged." *Trueposition, Inc. v. Allen Telecom, Inc.*, No. C.A. 01-823, 2003 WL 151227, *5 (D. Del. Jan. 21, 2003) (denying motion to strike inequitable conduct affirmative defense) (attached as Exhibit 18); *Scripps Clinic & Research Foundation v. Baxter Travenol Labs., Inc.*, Civ. A. No. 87-140-CMW, 1988 WL 22602, *3 (D. Del. Mar. 9, 1988) (same) (attached as Exhibit 19); *Concept Innovation v. CFM Corp.*, No. 04 C3345, 2005 WL 670637, *2 (N.D. Ill. Mar. 21, 2005) (denying motion to dismiss/strike inequitable conduct affirmative defense/counterclaim where pleading gave plaintiff "sufficient notice of the facts giving rise to the affirmative defenses") (attached as Exhibit 20); *see also MBIA Inc. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004) (Rule 9(b) requires "sufficient factual specificity to provide assurance that plaintiff has investigated... the alleged fraud and reasonably believes that a wrong has occurred"). Where the basis for a claim is alleged inequitable conduct before the PTO during a patent prosecution, "*pleadings that disclose the name of the allegedly withheld relevant prior art and disclose the acts of the alleged fraud*

---

[8] In addition, Sicor specifically alleges in the Amended Counterclaim that the Applicants buried two material prior art references – a 1959 reference by Schou and Jensen (the "Schou & Jensen Reference") and a 1967 reference by Sandell (the "Sandell Reference") – in the 228-reference Ninth Supplemental Information Disclosure Statement (the "Ninth Supplemental IDS"), which was submitted to the PTO six years into the '742 patent application process, and only *after* the Applicants had been informed that the '285 patent would issue. (Amended Counterclaim, ¶¶ 51-52).

*fulfill the requirements of Rule 9(b).*" *Trueposition, Inc.*, 2003 WL 151227, at *5, *citing EMC Corp. v. Storage Tech Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996) (emphasis added). Indeed, in *Scripps Clinic & Research Foundation*, Judge Wright held that a defense of inequitable conduct was sufficiently pled when defendants simply "allege[d] that [the plaintiff] failed to identify to the PTO relevant prior art of which it was aware." 1988 WL 22602, at *3. Sicor's Amended Counterclaim sets forth these requisite allegations.

Sicor specifically identifies various prior art publications, "communications from or with competitors," and information from "related litigation" that the Applicants were required to disclose to the PTO during prosecution of the '742 Application, *see* Manual of Patent Examining Procedure, § 2001.06, yet did not. (*See* Amended Counterclaim, ¶¶ 26, 35-37, 40, 46). Sicor's Amended Counterclaim also expressly sets forth the "acts of the alleged" misconduct. Specifically, Sicor alleges that despite being aware of their obligation to bring material information from related foreign litigations to the attention of the Patent Examiner handling the '742 Application, the Applicants failed to disclose highly material information that arose in connection with the Australian litigation between Upjohn and Pharmacia. (*Id.*, ¶¶29-30). Moreover, the Applicants and other individuals substantively involved in the prosecution of the '742 Application failed to disclose these and other references even though, for more than six years, they made representations to the PTO that are contradicted by this material information. All of this is specifically alleged in the Amended Counterclaim. (*Id.* ¶¶ 42-47).

Judge Sleet's decision in *Trueposition, Inc.* is particularly instructive here. In that case, the plaintiffs moved to strike the defendants' inequitable conduct affirmative defense and counterclaim on the grounds that they failed to meet the pleading requirements of Rule 9(b). Judge Sleet denied the motion, finding that "[t]he pleading requirements are satisfied by

[defendant's] third affirmative defense[, which] constitutes one paragraph which names the title and publication date of at least one allegedly withheld material prior art publication," and that this was sufficient to "apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings as Rule 9 requires." 2003 WL 151227, at *5 (internal citation omitted). As in *Trueposition, Inc.*, Sicor has "place[d] the plaintiffs on notice of the misconduct with which they are charged." *Id.*[9]

Unable to deny that Sicor's pleading sufficiently places them on notice of the specific claims against them, Pharmacia engages in semantic gamesmanship, arguing that Sicor was required under Rule 9(b) to name the "specific individuals" who are alleged to have acted inequitably. This is not the law. *See Stowe Woodward, L.L.C. v. Sensor Prods., Inc.*, No. CIV.A5:04 CV 00001, 2005 WL 2160036, *4 (W.D. Va. Sept. 7, 2005) (finding that defendant's allegation that "the patentee, inventors, and/or other individuals" were the parties responsible for the inequitable conduct gave plaintiff "sufficient notice of the allegations such that [plaintiff] may adequately identify the people... that are implicated in the defense") (attached as Exhibit 21).

In any event, Sicor leaves no doubt as to which individuals are responsible for the misconduct alleged – those attorneys, inventors and employees and agents of Pharmacia responsible for misleading the PTO throughout the '742 Application process by submitting

---

[9]     Pharmacia has previously attempted to distinguish *Trueposition, Inc.* by arguing that Sicor quotes the case "out of context," and that *EMC Technology Corp.*, upon which *Trueposition, Inc.* relies, "rejected" defendants' inequitable conduct allegations because they "failed to specify just who had committed" the alleged misconduct. (*See* Pharmacia's Reply Brief in Support of Its Motion To Strike Defendants' Inequitable Conduct Affirmative Defense and Dismiss Defendants' Counterclaim, p. 7). That is not the case. Both *Trueposition, Inc.* and *EMC Technology Corp.* affirm the principle that "pleadings that disclose the name of the relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)," and neither decision qualifies this language or discusses a purported requirement to "name names."

declarations contradicted by the withheld, highly material information. At minimum, Sicor has identified Dr. Confalonieri as providing information to the PTO that was inconsistent with various withheld references. One of Pharmacia's patent attorneys, Daniel Boehnen, submitted Dr. Confalonieri's declaration to the PTO on July 12, 1996. (*See* Ex. 22). Additionally, the attorneys who submitted the Ninth Supplemental IDS, in which the Sandell and Schou & Jensen References were buried, are identified as Jeremy E. Noe and Emily Maio. (*See* Ex. 23). Sicor's Amended Counterclaim alleges what these individuals did wrong (and specifically identifies certain of their misrepresentations), when those individuals acted improperly, and to whom they made the misrepresentations at issue. This is more than sufficient under Rule 9(b). *See e.g.,* *Concept Innovation*, 2005 WL 670637, at *2 (denying motion to dismiss counterclaim for failure to plead inequitable conduct with requisite particularity where defendants' "allegations state the who (Lucas entities), what (misrepresentations of the real owners), where ([the PTO]) and when (during patent prosecution) of the alleged inequitable conduct"); *see also Trueposition, Inc.*, 2003 WL 151227, at *5 ("[T]he Third Circuit has made clear that, although 'it is certainly true that allegations of date, place or time satisfy the pleading requirements, nothing in [Rule 9] requires them.'"), *quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, No. 99-CV-274-SLR, 2000 WL 1481015, *2 (D. Del. Sept. 29, 2000) (attached as Exhibit 24).

In *EMC Corp. v. Storage Technology Corp.*, Judge Farnan dismissed the defendant's inequitable conduct defense, not because defendant failed to identify the specific individuals responsible for misleading the PTO, but because, unlike Sicor, the defendant "should have," but failed to, "disclose[] the relevant prior art." 921 F. Supp. at 1263. In *Saporito v. Combustion Engineering, Inc.*, the complaint indicated only the "general content of the representations," and

the plaintiffs did not indicate who had received the alleged misinformation. 843 F.2d 666, 675 (3d Cir. 1988), *vacated by* 489 U.S. 1049 (1989).[10] *See also MBIA Ins. Corp. Co.*, 221 F.R.D. at 422 (distinguishing *Saporito* and other cases in which "courts are compelled to dismiss complaints because of vague attributions of fraudulent statements to 'defendants,'" from the case at bar, where the pleading "details specific instances of fraud and misrepresentation" committed by a named defendant individually or through entities controlled and/or owned by that defendant, and thus gave "defendants notice of the claims against them").

## IV. PHARMACIA IMPROPERLY (AND INCORRECTLY) ARGUES THE MATERIALITY OF ITS INEQUITABLE CONDUCT ON OUR MOTION TO AMEND

Notably, Pharmacia makes no attempt to dispute Sicor's allegations that the Applicants withheld all of the above-referenced material information from the PTO, and/or buried it within voluminous submissions. Rather, Pharmacia – belying any notion that it cannot glean from Sicor's Amended Counterclaim what specific information the Applicants failed to disclose to the PTO – attempts to bolster its 9(b) argument by disputing the materiality of certain of the aforementioned prior art. *See generally* pages 5-8 of Pharmacia's Opposition, where they attempt to address the merits concerning many of the material references omitted from their prosecution of the '742 Application.

These contentions should not be considered in determining whether Sicor has met the pleading standard under Rule 9(b). As Judge Sleet stated in *Trueposition, Inc.*, it is not proper to "weigh the relevance and materiality of the allegedly withheld prior art for purposes of this motion. ***It is the court's duty for purposes of this motion only to test the sufficiency of the***

---

[10]    Similarly, in *U.S. v. EER Systems Corp.*, the Court dismissed plaintiff's fraud claims, without prejudice, where the complaint, in addition to failing to name the persons who made the representations, did not specifically state either *what misrepresentations* were made, or what defendant(s) acquired as a result of the alleged misrepresentations. 950 F. Supp. 130, 132 (D. Md. 1996).

*pleading, not to resolve disputed facts or decide the merits of the case.*" 2003 WL 151227, at

*5 (emphasis added), *citing Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *see also*

*Procter & Gamble Co.*, 125 F.R.D at 411 (stating that "the ultimate decision as to success on the

merits of [a] claim is an issue for trial and not for resolution" on a Rule 15(a) motion to

amend).[11]

## CONCLUSION

For all of the foregoing reasons, this Court should deny Pharmacia's Motion in its

entirety, and should grant such further relief as this Court deems appropriate.

ASHBY & GEDDES

Steven J. Balick (ID# 2114)
John G. Day (ID# 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Defendants*

---

[11]     Additionally, Pharmacia's challenges to the materiality of the withheld references are factually inaccurate. As set forth in Sicor's Amended Counterclaim, the materials withheld by Pharmacia were material to the '742 Application, and directly refute or are inconsistent with statements made to the PTO by the Applicants. (*See* Amended Counterclaim, ¶¶ 11, 14-26, 28, 35-38, 42-46).

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700
Facsimile: (212) 768-6800

Dated: September 28, 2005
161853.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2005, the attached **REDACTED PUBLIC VERSION OF DEFENDANTS' REPLY MEMORANDUM OF LAW SUPPORTING THEIR MOTION TO AMEND COUNTERCLAIM** was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                    <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Joshua R. Rich, Esquire                                    <u>VIA FEDERAL EXPRESS</u>
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606




                                    /s/ *John G. Day*
                                    _____
                                    John G. Day