# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMACIA & UPJOHN COMPANY, | ) |
| | ) |
| Plaintiff, | )    C. A. No. 04-833-KAJ |
| | ) |
| v. | ) |
| | ) |
| SICOR, INC. and SICOR | ) |
| PHARMACEUTICALS, INC., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS BY PLAINTIFF

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 34, Defendants

SICOR, Inc. and Sicor Pharmaceuticals, Inc. (collectively "Sicor") request Plaintiff Pharmacia &

Upjohn Company ("PNU") to produce, for the purpose of inspection and copying by Sicor, the

documents and things described in this request in their possession, custody or control within

thirty (30) days of the service date hereof at the offices of Sicor's attorneys, Sonnenschein Nath

& Rosenthal, LLP, 1221 Avenue of the Americas, New York, NY 10020-1089.

### Instructions and Definitions

A.  In the event that any document requested herein is withheld based on a claim

of privilege, set forth with respect to each document so withheld: (1) the type and nature of the

document, (2) the subject matter of the document, (3) the date of the document, (4) the name and

position of each author of the document; (5) the name and position of each recipient or addressee

of the document or a copy thereof, (6) the present location and custodian of the document, (7) the

grounds for the claim of privilege, and (8) the paragraph number of the request to which the

document is responsive.

B.  With respect to each document requested that has been lost, destroyed or otherwise disposed of since its preparation or receipt, set forth with respect to each such document: (1) the type and nature of the document, (2) the subject matter of the document, (3) the date or approximate date of the document, (4) the name and position of each author; (5) the name and position of each recipient or addressee of the document or a copy thereof, (6) the time when and the circumstances under which the document was lost, destroyed, or otherwise disposed of, including the name of the person who directed that the document be disposed of or destroyed, (7) the name, position and address of the last known custodian of the document or a copy thereof, and (8) the paragraph number of the request to which the document would have been responsive.

C.  Documents shall be produced either (1) in the manner and file in which they are currently being retained, or (2) in separate files organized in accordance with this document request.

D.  No part of a request should be left unanswered because an objection is interposed to another part of the request.

E.  These requests are continuing in nature.  If at any time prior to the trial of this action you obtain additional documents responsive to any of these requests, you shall seasonably serve upon the undersigned amended and supplemental responses.

F.  Except when express reference is made to another paragraph, each paragraph herein should be construed independently and not by reference to any other paragraph herein for purposes of limitation.

G.  The singular and masculine form of any noun or pronoun shall embrace, and be read and applied as embracing the plural, the feminine and the neuter, except where context clearly makes it inappropriate.

H.  "And" as well as "or" shall be construed either as disjunctive or conjunctive so as to bring within the scope of the Request any documents that might otherwise be construed to be outside the scope of the Request.

I.  "Refer" or "relate" means to include, mention, define, explain or pertain to in any way, expressly or impliedly, the matter called for.

J.  "Document" or "Documents" shall have the broadest possible meaning pursuant to the Federal Rules of Evidence, including, but not limited to, tangible objects and records and includes, without limitation, correspondence, communications, computer printouts, data on computers or computer diskettes of any nature (e.g., whether hard drive, floppy disks, CD-ROMS or DVDS), including e-mail communications, reports, memoranda (internal and otherwise) and/or records of conversations, audio and video tape recordings, diaries, calendars, scheduling books, notes, notebooks, drafts, contracts, agreements, invoices, checks, deposit slips, and all other tangible or intangible written or printed or otherwise recorded material of whatever kind known to be in your possession, custody or control and of anyone under your control including any or all persons or entities acting on your behalf at your direction.

K.  "Communication" means any written, oral or mechanical transmittal of information (in the form of facts, ideas, opinions, thoughts, inquiries or otherwise) including, but not limited to, correspondence, memoranda, notes, telexes, telephone conversations, computerized e-mail, in-person meetings, and any written documents relating to any such communications.

L. "Person" as used herein means natural persons, as well as corporations, partnerships, joint ventures, and all other forms of organization or association.

M. "Product" shall include a commercially available product as well as any experimental or developmental predecessor of a commercially available product, any abandoned experimental or developmental composition, and any experimental or developmental future product.

N. "Sale" or "sold" shall mean the transfer of ownership, possession or control from one person or entity to another with or without monetary consideration and shall include any offer or sale, transfer of ownership, possession or control.

O. "PNU" shall mean Pharmacia & Upjohn Company and its subsidiaries, affiliates, predecessor companies or controlled companies, including Pfizer, and any of those companies' officers, directors, employees, attorneys, agents, independent contractors or other persons acting or purporting to act on its behalf.

P. "Sicor" shall mean SICOR, Inc. and Sicor Pharmaceuticals, Inc. and each of their respective subsidiaries, affiliates, predecessor companies or controlled companies, and any of those companies' officers, directors, employees, attorneys, agents, independent contractors or other persons acting or purporting to act on their behalf.

Q. The "PTO" shall mean the United States Patent and Trademark Office.

R. The "'285 Patent" shall mean U.S. Patent No. 6,107,285 entitled "Injectible Ready-To-Use Solutions Containing an Antitumor Anthracycline Glycoside."

S. "Idarubicin" shall mean the chemical idarubicin and any salt or esters of Idarubicin, and all pharmaceutical products containing idarubicin, whether in solid state, in the form of an injectable product, or in any other physical form.

T. "Anthracycline Glycosides" shall mean the chemicals Epirubicin, Doxorubicin, Idarubicin or Danorubicin, including any salt or esters of such chemicals, and all pharmaceutical products containing such chemicals, whether in solid state, in the form of an injectable product, or in any other physical form.

U. "Cease and Desist Letter" means and refers to any communication or document sent from PNU or its predecessors-in-interest or its licensees, including Boehringer and its subsidiaries, to any other party alleging any actual or potential infringement, or raising any concern to any third party about potential or possible infringement.

V. "Including" means including without limitation.

W. "Prior Art" includes, by way of example, and without limitation, the subject matter described in 35 U.S.C. §§102 and 103 as measured, for the purpose of this Request of Production, from before the U.S. filing date of the '285 Patent, January 29, 1992.

X. "Related Patent" means any patent, U.S. or foreign, that relates in any way to the '285 Patent, including but not limited to all patents that claim priority from the patent, or from the patent or patent application the '285 Patents claims priority from, including GB 8519452, all parents, divisionals, reissues, reexaminations, continuations, continuations-in-part, requests for continued examination, continued prosecution applications, or correction certificates, including U.S. patents nos. 5,124,318, 5,124,317 and 4,946,831.

Y. "Related Patent Application" means any patent application, U.S. or foreign, that relates in any way to the '285 Patent, including all applications for which no patents have issued, and including but not limited to all patent applications that claim priority from the '285 Patent, or from the patent or patent application the '285 Patents claims priority from, including GB 8519452, all parents, divisionals, reissues, reexaminations, continuations, continuations-in-

part, requests for continued examination, continued prosecution applications, or correction certificates.

## **Request For Production**

1.    All documents that state, summarize or refer to the amount of gross revenues generated by PNU from the sale of any product containing Idarubicin since January 1, 1990.

2.    All documents that state, summarize or refer to the amount of gross revenues generated by PNU from the sale of any product containing any of the Anthracycline Glycosides since January 1, 1990.

3.    All documents that state, summarize or refer to the amount of net profits generated by PNU from the sale of Idarubicin since January 1, 1990.

4.    All documents that state, summarize or refer to the amount of net profits generated by PNU from the sale of any of the Anthracycline Glycosides since January 1, 1990.

5.    All documents that evidence, summarize, analyze, forecast, project or refer to the sales by PNU from the sale of Idarubicin since January 1, 1990.

6.    All documents that evidence, summarize, analyze, forecast, project or refer to the sales by PNU from the sale of any of the Anthracycline Glycosides since January 1, 1990.

7.    All documents that evidence, summarize, analyze, forecast, project or refer to the nature or amount of any costs to manufacture or sell Idarubicin since January 1, 1990, including but not limited to costs of sales and costs of goods sold.

8.    All documents that evidence, summarize, analyze, forecast, project or refer to the nature or amount of any costs to manufacture or sell any of the Anthracycline

Glycosides since January 1, 1990, including but not limited to costs of sales and costs of goods sold.

9.    All documents that are, have been or will be used in the marketing or advertising of Idarubicin since January 1, 1990, including, without limitation, product literature and brochures, strategic marketing plans and marketing budgets.

10.    All documents that are, have been or will be used in the marketing or advertising of any Anthracycline Glycosides since January 1, 1990, including, without limitation, product literature and brochures, strategic marketing plans and marketing budgets.

11.    All documents sufficient to identify all manufactures, distributors, resellers, and sales representatives who are involved in the sale, offer for sale, distribution or marketing of Idarubicin or any other Anthracycline Glycosides since January 1, 1990.

12.    All organizational charts that identify the people who are involved in the marketing and / or  development of any of PNU's oncology products, including ready to use solutions of Idarubicin or any other Anthracycline Glycosides, since January 1, 1990.

13.    All documents that constitute, mention or refer to any consideration, negotiation, license, execution, covenant not to sue, settlement of litigation or legal claims or other agreement concerning any invention or subject matter disclosed, described or claimed in the '285 Patent or any of the Related Patents, including all licenses to manufacture, distribute or resell Idarubicin or any of the other Anthracycline Glycosides to any third party including Bedford Laboratories, Inc., Abbott Laboratories, American Pharmaceutical Partners, Inc. or any of their corporate affiliates, and including any royalties received or due under any such license or other agreement.

14.   All documents provided or made available to any actual or potential shareholder, stock analyst, investment banker, lender or investor that evidence, summarize, analyze, forecast, project or refer to the business of manufacturing, licensing or selling of Idarubicin or any of the other Anthracycline Glycosides, including the projected sales, costs of goods sold, or profitability of such products.

15.   All documents that constitute a business plan, proposal, presentation, or any other form of business or financial planning, that refer or relate to Idarubicin.

16.   All documents that constitute a business plan, proposal, presentation, or any other form of business or financial planning, that refer or relate to any of the Anthracycline Glycosides.

17.   All documents that state, summarize or refer to any costs incurred in developing Idarubicin.

18.   All documents that state, summarize or refer to any costs incurred in developing any of the Anthracycline Glycosides.

19.   All documents that evidence, summarize, analyze, forecast, project or refer to any effect that Sicor's advertising or marketing of Idarubicin have had or will have on PNU's sales or projective sales of Idarubicin.

20.   All documents that evidence, summarize, analyze, forecast, project or refer to any effect that Sicor's advertising or marketing of any Anthracycline Glycosides have had or will have on PNU's sales or projective sales of any Anthracycline Glycosides.

21.   All documents that evidence, summarize, or refer to the market of any Idarubicin product and PNU's share of that market.

22. All documents that evidence, summarize, or refer to the market of any of the Anthracycline Glycosides products, and PNU's share of that market.

23. All documents that evidence, summarize, analyze, forecast, project or refer to any market trends in connection with the sale of Idarubicin.

24. All documents that evidence, summarize, analyze, forecast, project or refer to any market trends in connection with the sale of any of the Anthracycline Glycosides.

25. All documents that mention or refer or relate to or discuss the utility or advantages of Idarubicin or any invention disclosed, described or claimed in the '285 Patent or any of the Related Patents over alternative products.

26. All documents that mention, refer to or evidence the royalty rate or rates that would constitute a "reasonable royalty" under 35 U.S.C. § 284, assuming that an infringement of the '285 Patent is found in this case.

27. All documents that evidence, discuss, analyze or refer to the commercial success or performance of Idarubicin.

28. All documents that evidence, discuss, analyze or refer to the commercial success or performance of any of the Anthracycline Glycosides.

29. All documents that evidence, discuss, analyze or refer to the amount PNU would have been willing to accept at any time for a license to practice the '285 Patent.

30. All documents that constitute, mention or refer to any demand by PNU or any of its licensees, including Boehringer and its subsidiaries, for another entity to cease manufacturing or selling any product that infringed or allegedly infringed the '285 patent or any of the Related Patents.

31.    All documents that constitute, mention or refer to any complaints or other pleadings filed in any court by PNU that allege infringement of the '285 Patent or any of the Related Patents.

32.    All documents that constitute, mention or refer to any settlement agreements including any supply agreements or licenses between PNU and any other entity concerning infringement or alleged infringement of the '285 Patent or any of the Related Patents.

33.    All documents that refer or relate to, or that were used in, the analysis, preparation, filing, prosecution and issuance of the patent applications leading to the '285 Patent or any of the Related Patents.

34.    All documents concerning invention disclosures and/or the first written descriptions for the '285 Patent and any of the Related Patents.

35.    All documents concerning any information used or supplied by the listed inventors of the '285 Patent or any of the Related Patents in connection with the preparation or prosecution of these patents.

36.    All drafts of the patent applications leading to the '285 Patent and/or any of the Related Patents.

37.    All copies (including drafts) of responses to Office Actions, amendments, affidavits, and other communications or submissions of any kind with or to the PTO or other patent office with respect to the '285 Patent and any of the Related Patents.

38.    All Documents that discuss, refer or relate to the '285 Patent, any of the Related Patents and/or any of the Related Patent Applications.

39.     All documents that mention, discuss, or comment upon the identity of the inventors who are, who should be, or should have been, named on each of the '285 Patents and any of the Related Patents.

40.     All documents, including but not limited to organizational charts, that identify all persons involved in research, conception and reduction to practice of the subject matter disclosed and/or claimed in the '285 Parent and any of the Related Patents, and all persons involved in preparation and/or prosecution of the '285 Patent and any of the Related Patents.

41.     All documents relating to or providing support for the date of conception of the '285 Patent.

42.     All documents relating to the first reduction to practice of the invention claimed in the '285 Patent.

43.     All documents relating to the diligence exercised in reducing to practice the invention claimed in the '285 Patent.

44.     All prior patents, publications, references or other Prior Art, and all records or documents concerning any Prior Art or any possible ground of unpatentability and/or invalidity, related to, cited, discussed or considered in connection with the '285 Patent and/or any of the Related Patents.

45.     All documents concerning the citation of any references and/or prior art to the PTO or other patent office, including search reports, including copies of all references actually submitted to the PTO or other patent office.

46.    All Documents relating to Prior Art searches related to the subject matter claimed and/or discussed in the '285 Patent or any of the Related Patents conducted by, or under the instruction of PNU or that PNU is aware of.

47.    All documents concerning any actual, potential or possible Prior Art with respect to the '285 Patent or the Related Patents, including but not limited to any Prior Art patents, publications, disclosures, uses and/or sales.

48.    All documents relating to any assertion by anyone as to the existence of Prior Art for the '285 Patent or any of the Related Patents.

49.    All documents relating to the knowledge or use by others of any and all subject matter disclosed and/or claimed in the '285 Patent prior its filing date.

50.    All documents relating to any disclosures, communications, or presentations to others by PNU of any of the inventions disclosed and/or claimed in the '285 Patent.

51.    All documents concerning any manufacture, production, marketing, sale, offer for sale, importation, consumer testing, or public use of any products relating to the subject matter disclosed and/or claimed in the '285 Patent.

52.    Each and every article, advertisement, press release, news bulletin and/or any other presentation (whether or not accepted for publication or presented, and including any drafts or reprints) concerning Idarubicin, any other Anthracycline Glycosides, or any subject matter disclosed and/or claimed in the '285 Patent and/or the Related Patents.

53.    All documents concerning the first public disclosure, first public use, first advertisement, first offer for sale, and/or first sale of any product relating to the subject matter disclosed and/or claimed in the '285 Patent, including but not limited to disclosures,

advertisements, offers for sale and sales of such products prior to the filing date of the '285 Patent.

54.    All documents relating to any potential, theoretical or actual secondary consideration that PNU believes may be applicable to rebut any showing of non obviousness of the '285 Patent.

55.    All documents relating to any actual secondary consideration for non obviousness of the '285 Patent that PNU intends to rely on in this litigation.

56.    All documents that describe, show or provide support for any alleged satisfaction of a long felt need by the invention claimed by the '285 Patent.

57.    All documents that relate to any alleged failure by others to make, use or implement the invention claimed by the '285 Patent.

58.    All documents relating to any alleged commercial success and/or any commercial failure achieved by the invention claimed by the '285 Patent.

59.    All documents relating to any alleged copying by others of the invention claimed by the '285 Patent.

60.    All documents relating to any alleged unexpected results created by the invention claimed by the '285 Patent.

61.    All documents relating to any alleged unexpected properties of the invention claimed by the '285 Patent.

62.    All documents relating to any alleged skepticism of skilled artisans before the invention claimed by the '285 Patent.

63.    All documents relating to any non-infringing alternatives to the invention claimed by the '285 Patent.

64.    All documents referring or relating to, or constituting any agreements concerning any right, title or interest in the '285 Patent, including without limitation all agreements concerning licensing and/or ownership of the '285 Patent and all documents relating to the negotiations of such agreements.

65.    All documents that either are or that evidence valuation of the '285 Patent and/or the Related Patents.

66.    All documents referring or relating to any agreements between PNU and any other person or entity who presently or at any other time had any ownership interest in the '285 Patent.

67.    All documents referring or relating to all Cease and Desist Letters sent by PNU or its licensees, including Boehringer and its subsidiaries in relation to the '285 Patent or any of the Related Patents, including the investigation leading to such letters, the letters themselves, and any ensuing correspondence between PNU and the recipients.

68.    All documents relating to any communication between PNU or its licensees, including Boehringer and its subsidiaries, and any other person regarding the '285 Patent or any of the Related Patents, including without limitation any reports, statements, or analyses by third parties.

69.    All documents concerning patentability, validity or invalidity, enforceability or unenforceability, infringement or non-infringement, or interpretation of the scope of the claims of the '285 Patent or any of the Related Patents, including any opinion of counsel or other, whether legal or otherwise, any search, investigation, analysis, review or study relating thereto.

70.    All documents relating to any lawsuits, opposition proceedings, interferences, reexaminations, reissue proceedings, nullity proceedings, revocation proceedings, arbitrations, conflicts or disputes regarding the '285 Patent or any of the Related Patents, including all pleadings, evidence, exhibits and depositions.

71.    All documents related to any other past or current proceeding that involved the alleged infringement of the '285 Patent and/or the Related Patents, including without limitation any pleadings, motions, transcripts, reports, exhibits, filings, order and discovery.

72.    Each document request and the response thereto by PNU, including the documents produced from any case involving the '285 Patent or any of the Related Patents.

73.    Each request for admission(s) and the response(s) thereto by PNU during discovery of any lawsuit involving the '285 Patent or any of the Related Patents.

74.    A copy of each PNU declaration, including any and all exhibits, which has been signed by or on behalf of PNU in any case involving the '285 Patent or any of the Related Patents.

75.    All documents relating to any product that PNU believes is covered by the claims of the '285 Patent.

76.    All documents that PNU intends to rely upon or otherwise utilize in establishing a reasonable royalty in this litigation.

77.    All documents relating to any tests or inspections that PNU performed on any Sicor product.

78.    All documents relating to any investigation that PNU performed in relation to filing a complaint against Sicor alleging infringement of the '285 Patent.

79.     All documents relating to the first occasion on which PNU became aware of Sicor's alleged infringement of the '285 Patent.

80.     All documents relating to the decision by PNU to file a complaint against Sicor alleging infringement of the '285 Patent.

81.     All communications and documents relating to communications between PNU and Sicor regarding the '285 Patent, Idarubicin, any of the other Anthracycline Glycosides, or any other oncology product.

82.     Each and every lab notebooks of any entity kept within the possession, custody, and/or control of PNU, containing any information relevant to the claims and/or defenses in this litigation.

83.     Each and every notebook and other record of the work, research, results, or conclusions concerning any subject matter claimed and/or disclosed in the '285 Patent or any of the Related Patents.

84.     All documents evidencing any expert opinion testimony given by any of the listed inventors of the '285 Patent or any of the Related Patents.

85.     All documents relating to or constituting any testing or test data referred to in declarations submitted during prosecution of the '285 Patent or any of the Related Patents, including copies of and documents related to the pilot studies, standard operating procedures, protocol, proposed protocol, the testing methodology and the validation method used for such testing, in particular the testing methodology used for determining stability and pH.

86.     All documents relating to or constituting any testing or test data referred to in the declarations of Carlo Colfalonieri submitted during prosecution of the '285 Patent and any of the Related Patents, including copies of and documents related to the pilot studies, standard

operating procedures, protocol, proposed protocol, the testing methodology and the validation method used for such testing, in particular the testing methodology used for determining stability and pH.

87.     All documents relating to or constituting any testing or test data relating to the subject matter claimed and/or disclosed in the '285 Patent or any of the Related Patents, including copies of and documents related to the pilot studies, standard operating procedures, protocol, proposed protocol, the testing methodology and the validation method used for such testing, in particular the testing methodology used for determining stability and pH.

88.     A copy of each testing data relating to the use of a buffer or an acid to adjust pH levels of any solution containing Idarubicin or any other Anthracycline Glycosides, including copies of and documents related to the pilot studies, standard operating procedures, protocol, proposed protocol, the testing methodology and the validation method used for such testing, in particular the testing methodology used for determining stability and pH.

89.     A copy of each testing data relating to the stability of any solution containing Idarubicin or any other Anthracycline Glycosides, including copies of and documents related to the pilot studies, standard operating procedures, protocol, proposed protocol, the testing methodology and the validation method used for such testing, in particular the testing methodology used for determining stability and pH.

90.     All documents relating to any and all examples in the '285 Patent, including but not limited to notebooks and other records of the work, experiments, research, results, and conclusions concerning the subject matter of such examples.

91.    All documents relating to, including documents relevant to, supporting, and/or contradicting, in whole or in part, any and all statements that are part of the file histories of the '285 Patent or any of the Related Patents.

92.    All communications between the listed inventors of the '285 Patent or any of the Related Patents, or PNU,  and their patent attorney(s) or agent(s) concerning the subject matter described or claimed in the '285 Patent and/or any of the Related Patents, and any bills or invoices for related legal services.

93.    All documents, including drafts, of any communications between or among PNU and any third party and/or any foreign or domestic regulatory agency including the United States Food and Drug Administration (FDA) concerning the properties, stability, pH levels and indications for use of Idarubicin.

94.    All documents, including drafts, of any communications between or among PNU and any third party and/or any foreign or domestic regulatory agency including the United States Food and Drug Administration (FDA) concerning the properties, stability, pH levels and indications for use of any Anthracycline Glycosides.

95.    All documents concerning any application submitted by or on behalf of PNU seeking approval to market Idarubicin, related to the properties, stability, pH levels and indications for use, including documents concerning any such applications to the FDA and any communications with the FDA or any individuals conducting trials or studies in support thereof.

96.    All documents concerning any application submitted by or on behalf of PNU seeking approval to market any Anthracycline Glycosides, related to the properties, stability, pH levels and indications for use, including documents concerning any such

applications to the FDA and any communications with the FDA or any individuals conducting trials or studies in support thereof.

97.    All documents relating to the FDA's notification of approval for PNU's sale or offer for sale of Idarubicin or any other Anthracycline Glycosides.

98.    All documents concerning the structure, composition, properties, and/or characteristics of Idarubicin and any other Anthracycline Glycosides made, used sold, imported, or offered for sale by PNU.

99.    The labels and package inserts of Idarubicin and any other Anthracycline Glycosides made, used sold, imported, or offered for sale by PNU.

100.    All batch records concerning the manufacturing process of Idarubicin as an active pharmaceutical ingredient and any other Anthracycline Glycosides an active pharmaceutical ingredient made, used, sold, imported, or offered for sale by PNU.

101.    All batch records concerning the manufacturing process of Idarubicin as finished dosage and any other Anthracycline Glycosides as finished dosage made, used, sold, imported, or offered for sale by PNU.

102.    All documents concerning the manufacturing capacity of PNU or any other entity manufacturing for PNU of Idarubicin and any other Anthracycline Glycosides made, used, sold, imported, or offered for sale by PNU.

103.    The Drug Master File for Idarubicin as an active pharmaceutical ingredient and any other Anthracycline Glycosides made, used, sold, imported, or offered for sale by PNU.

104.    Twenty samples of Idarubicin and any other Anthracycline Glycosides made, used, sold, imported, or offered for sale by PNU for each of the commercially available dosage forms and sizes.

105.    Articles, abstracts, posters, and any other scientific literature concerning Idarubicin and any other Anthracycline Glycosides made, used, sold, imported, or offered for sale by PNU.

106.    All documents concerning PNU's development of Idarubicin and any other Anthracycline Glycosides .

107.    All documents concerning any pending or issued U.S. or foreign patent application directed to Idarubicin or any other Anthracycline Glycosides or methods of making or using same, filed by or on behalf of PNU or any employee thereof, or assigned to PNU.

108.    All documents supporting, contradicting or relating to PNU's allegations in its Complaint against Sicor for infringement of the '285 Patent.

109.    All documents supporting, contradicting or relating to PNU's claim for damages in its Complaint against Sicor for infringement of the '285 Patent.

110.    All documents supporting, contradicting or relating to PNU's allegations in its Complaint or Amended Complaint against Sicor for willful infringement of the '285 Patent.

111.    All documents relating to or prepared by or for any expert retained by PNU in relation to its complaint against Sicor for infringement of the '285 Patent.

112.    All documents PNU intends to rely on in this litigation.

113.    All documents PNU intends to use as exhibits during depositions and trial in this matter.

114.    All documents identified by PNU in its Initial Disclosure Pursuant to Fed.R.Civ.P.26(a)(1).

115.    All communications between PNU and any of the witnesses identified in Sicor's and PNU's Initial Disclosure Pursuant to Fed.R.Civ.P.26(a)(1).

116.    All documents showing PNU's ownership of and rights in and to, including right to sue for infringement, the '285 Patent.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
Brian T. Moriarty
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 768-6700

Dated: November 29, 2004
150555.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November, 2004, the attached **DEFENDANTS'**

**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS BY PLAINTIFF** was served

upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                  HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899


Joshua R. Rich, Esquire                                  VIA FEDERAL EXPRESS
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


149886.1                                      _____
                                               John G. Day