# EXHIBIT 17

# Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

1221 Avenue of the Americas
New York, NY 10020
212.768.6700
212.768.6800 fax
www.sonnenschein.com

Chicago
Kansas City
Los Angeles
New York
San Francisco
Short Hills, N.J.
St. Louis
Washington, D.C.
West Palm Beach

**Brian T. Moriarty**
212 398 5760
bmoriarty@sonnenschein.com

September 13, 2005

**VIA FACSIMILE AND E-MAIL**

Joshua R. Rich, Esq.
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709

    Re:    Pharmacia & Upjohn Co. Sicor 04 Civ 833 (KAJ)
                  Pharmacia's Missing Documents

Dear Josh:

    As a follow up to my letter of September 9, 2005, we have received and reviewed various installments of Pharmacia's rolling document productions over the past few months in response to our document requests and letters. Notwithstanding Pharmacia's productions, we still have not received many documents that are important and relevant to this case. Attached is a detailed list of material that has not been produced. Due to the impending dates for depositions and other case deadlines, we request confirmation from you no later than noon on September 15 that, all of this additional material will be produced to us within the next ten days (by September 23), so that we may review the material before proceeding with further depositions of Pharmacia witnesses. Failing that commitment, we will be constrained to raise the issue with the Court.

    We believe that all the material on the attached list fall within our prior document demands, and have annotated our list with the specific document demands to which they correspond. Should you believe any particular item(s) might not be covered by our prior requests, we disagree, but in such case you may deem this letter to be Sicor's Third Request for Production of Documents.

Sincerely,

Brian T. Moriarty

cc:    Reid Ashinoff, Esq.
        Maryellen Noreika, Esq.
        John Day, Esq.

17491552\V-1

## OUTSTANDING CATEGORIES OF PHARMACIA DOCUMENTS

1. The court docket information, motions, pleadings, transcripts, and correspondence related to litigation of Australian Patent No. 598197 appears incomplete. For example, there is no information concerning the court docket or documents concerning settlement. (Sicor Document Demands 31, 70-73.)

2. The court docket information, motions, pleadings, transcripts, and correspondence related to litigation of Canadian Patent No. 1291037 appears incomplete. For example, there is no information concerning the court docket or documents concerning settlement. (Sicor Document Demands 31, 70-73.)

3. The prosecution histories and correspondence related to the following Related Patents do not appear to be produced: AT73336T; AT129896T; AT176886; AT240108; AT397463; AU632036; AU5885886; AU8205987; BA97187B; BE1000540; BG60425; CH690490; CN1058391; CN87108225; CN1064531; CN86104283; CS277561; CS8604708; DE3741037; DE3751589; DE3752368; DE3777365; DK167557; DK306286; DK175815; DK635287; EP0273603; EP0438183; EP0659435; EP1283044; ES556291; ES8801580; ES2039460; ES2082023; ES2198424; FI86800; FI862629; FI91710; FI875340; GB2200047; GB8614800; GB8519452; GB8629193; GR861556; GR871846; GR3004303; GR3018867; HK39591; HK93990; HR920525; HU42326; HU196123; IE59297; IE861598; IL79129; IL84703; IT1226072; IT8722869; JP1927218; JP6055667; JP62048629; JP2621255; JP63215633; KR158672; KR9201773; KR9607861; NL191507; NL8601698; NL300011I; NL8702914; NO175802; NO875055; PT82865; PT86285; SE512881; SE8704849; SG36591; SG80690; SU1837883; YU44788; YU103586; ZA8604792; and ZA8709087. Each of these Related Patents comprises a member of the patent family in common with the '285 Patent. (Sicor Document Demands 33-38.)

4. The prosecution histories and correspondence for the following Related Patents appear produced in incomplete form: AU598197; BE905202; CH668911; CH680494; CY1592; DE3621844; DE3645281; FR2585569; FR2607702; IT204906; MX9203578; NO170913; NO862587; PH22332; SE466383; SE8602743; SI8611035. Each of these Related Patents comprises a member of the patent family in common with the '285 Patent. For example, only the original application or the patent grant is provided for many of these Related Patents, while correspondence related to amendments is absent for others. (Sicor Document Demands 33-38.)

5. The record for the opposition proceedings drawn to the following Related Patents appears produced in incomplete form: DE3621844; SE8602743; Dutch Laid Open 191.507. (Sicor Document Demand 70.) For example, the correspondence between the Applicant and the respective patent offices is incomplete; moreover, the complete record of opposition proceedings is absent.

6. The documents that mention or refer or relate to or discuss the utility, advantages, or performance of idarubicin described or claimed in the '285 patent or any of the Related

      Patents over alternative products were not produced, other than the comparative stability data at different pH's of idarubicin liquid solutions, epirubicin liquid solutions and doxorubicin liquid solutions (e.g., Bates Nos. PU 0021717-19). (Sicor Document Demands 25 and 27.)

7. The documents relating to Prior Art searches related to the subject matter claimed or discussed in the '285 Patent or Related Patents conducted by, or under instruction of Pharmacia, or that Pharmacia is aware of, were not produced. (Sicor Document Demands 46 and 47.)

8. The documents relating to any tests that Pharmacia performed on <u>Sicor's</u> idarubicin ready-to-use product were not produced. Prior to filing of the complaint in the instant litigation, Pharmacia would have been expected to have performed such tests and Sicor is entitled to production of those documents that describe the results of such tests. (Sicor Document Demand 77.)

9. The laboratory notebook pages that support all experimental data reported in Table II of Dr. Confalonieri's Declaration dated Aug. 11, 1989 were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

10. The laboratory notebook pages that support all experimental data at 55 °C reported in Appendix E of Dr. Confalonieri's Declaration dated December 20, 1990 were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

11. The laboratory notebook pages that support all experimental data drawn to "other physiologically acceptable acids" reported in Dr. Confalonieri's Declaration dated December 9, 1992 were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

12. The laboratory notebook pages that support all experimental data drawn to 35 °C and 45 °C stability assays for anthracycline solutions having a pH 2.3 and pH 3.5 reported in Dr. Confalonieri's Declaration dated January 12, 1996 were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

13. The laboratory notebook pages that support all experimental data reported in Dr. Confalonieri's Declaration for Swedish Patent Application 8602743 dated April 18, 1994 were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

14. The laboratory notebook pages that support all experimental data drawn to 35 °C, 45 °C and 55 °C at the time of 4 days reported in Dr. Confalonieri's Declaration for Swedish Patent Application 8602743 dated December 24, 1994 were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

15. The laboratory notebook pages that support all experimental data reported in Dr. Confalonieri's Declaration for Norwegian Patent Application 862587 dated March 1, 1993 as follows: Experimental Report 1 (stability data of doxorubicin solutions at pH

2

2.5-5.0 in phosphate buffer); Experimental Report 2 (stability data of doxorubicin solutions in aqueous HCl or phosphate buffer); Experimental Report 3 (stability data for doxorubicin solutions in aqueous HCl at pH 4.0 or according to conditions of Janssen et al.); Experimental Report 5 (stability data of doxorubicin and epirubicin solutions in physiological saline adjusted to pH 3 with HCl); Experimental Report 6 (stability data of idarubicin solutions with tonicity adjusting agents, either 5% dextrose or 3.6% glycerol); Experimental Report 7 (comparative data for stability of doxorubicin, epirubicin, and idarubicin at different pH values) were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

16. The laboratory notebook pages that support all experimental data drawn to epirubicin stability and doxorubicinone (adriamycinone) solubility reported in Dr. Confalonieri's Declaration for German Patent Application 3645269 dated December 13, 1993 were not produced. (Sicor Document Demands 60-62; 82; 85-89.)

17. The laboratory notebook pages that provide the detailed calculations of t90% from the accelerated stability experiments for the examples of the '285 Patent, as reported in Bates range PU 0022561 - PU 0022848 were not produced. (Sicor Document Demand 90.)

18. Documents reflecting the organizational structures of Pharmacia's oncology franchise since 1995, including internal marketing, corporate accounts, field sales, sales management, oncologic drug research and development, and commercial operations. (Sicor's Document Demands 11, 12 and 40.)

19. Specific or general strategic, business, management and marketing plans, reports, presentations or summaries concerning idarubicin since 1995, including, without limitation: (i) a complete final copy of the document entitled "Global Oncology Strat Plan 2003-2005" that is Bates No. PU 45030 and all supporting documents; (ii) all similar or related strategic plans for the period 1995-2003; (iii) a final copy of the document entitled "Idamycin PFS Zavedos Lifecycle Management Plan" that is Bates No. PU 46786-803 and all related drafts, supporting documents and financial analyses; and (iv) all documents reflecting actual or budgeted allocation of expenses for idarubicin. (Sicor Document Demands 9, 10, 14-16, 19-25, 27 and 28.)

20. All monthly reports concerning idarubicin since 1995; Pharmacia has produced a document entitled "Ellence Aromasin Monthly Report" dated May 2002 that is Bates No. PU 48105 but has not produced any such reports or related documents for idarubicin. (Sicor Document Demands 21, 23, 27, 52 and 106.)

21. All monthly reports concerning other oncology products since 1995 in the form of or similar to the document entitled "Ellence Aromasin Monthly Report" referenced above. (Sicor Document Demands 22, 24, 28, 52 and 106.)

22. Documents reflecting any consideration by Pharmacia to withdraw in whole or in part

from the idarubicin market or the overall oncology market, or any part thereof, since 1995, including, without limitation, any memos, meeting minutes, presentation materials and other communications. (Sicor Document Demands 9, 10, 14-16, 20-24, 27 and 28.)

23. Communications between or among Pharmacia, sales representatives and any customers concerning idarubicin since 1995, including, without limitation, communications concerning efforts to sell idarubicin, generic competition for idarubicin, pricing issues and customer surveys. (Sicor Document Demands 9, 10, 21, 22, 25, 27 and 102.)

24. Complete reports, summaries, plans or other documents reflecting the commissions and commission payout criteria and formulas in connection with idarubicin since 1995. (Sicor Document Demands 1-6.) The only documents produced by Pharmacia that potentially concern commissions are six pages under the title "USMC Sales Force," Bates Nos. PU 45126-32, which appear to be incomplete draft portions of the "Global Oncology Strat Plan 2003-2005" that address the 2002 budget for its oncology sales force and the anticipated budget for 2003-2005. Pharmacia has not produced final versions of those documents, much less any similar or related documents for any prior years.

25. Complete reports, summaries, plans or other documents reflecting the commissions and commission payout criteria and formulas in connection with Pharmacia's portfolio of oncology products since 1995. (Sicor Document Demands 1-6.) Once again, as noted above, Pharmacia's production for this category of documents is incomplete.

26. Training and presentation materials developed to direct, support, or assist field sales representatives or corporate accounts since 1995 in connection with the marketing and sale of: (i) idarubicin; and (ii) and all other oncology products. (Sicor Document Demands 9 and 10.)

27. Pharmacia's contracts for sale of idarubicin to hospitals, clinics, wholesalers, distributors, group purchasing organizations, physician practice management groups, and other third parties. (Sicor Document Demands 5, 6.) The only idarubicin sales contract produced by Pharmacia is the between Pharmacia and Novation, LLC that is Bates No. PU 46694-747. In addition, Pharmacia also has not produced a complete record of communications, notes, memos or presentations concerning the Novation contract.

28. Documents concerning pricing adjustments or strategies for idarubicin in connection with a competing generic product, including, without limitation, financial plans, models or presentations demonstrating or forecasting price increases or decreases, and communications with sales representatives, distributors or end users. (Sicor Document Demands 117-120.) For example, Pharmacia has produced a detailed document entitled "US Pricing Recommendation" for the drug Lipitor dated November 5, 2002 that is Bates No. 47687-93, but has not produced similar presentations for idarubicin.

29. Documents concerning or reflecting pricing adjustments or strategies in connection with

4

the entry of any competing generic product in the oncology marketplace, including, without limitation, financial plans, models or presentations demonstrating or forecasting price increases and decreases, and communications between and among Pharmacia employees or with any sales representative or other individual or entity concerning the foregoing. (Sicor Document Demands 117-120.)

30. Documents concerning capital expenditures and capital budgets associated with the initial launch and the production of idarubicin. (Sicor Document Demands 7 and 8.)

31. A complete record or detailed expense documents concerning the entire supply chain of idarubicin. (Sicor Document Demands 7 and 8.)