# EXHIBIT 18



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 151227 (D.Del.)
(Cite as: 2003 WL 151227 (D.Del.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TRUEPOSITION, INC. and KSI, Inc., Plaintiffs / Counterclaim Defendants
v.
ALLEN TELECOM, INC. Defendant / Counterclaim Plaintiff.
No. C.A. 01-823 GMS.

Jan. 21, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On December 11, 2001, the plaintiffs, TruePosition, Inc. and KSI, Inc. (collectively "TruePosition") filed a complaint against the defendant, Allen Telecom, Inc. ("Allen"). In the complaint, TruePosition alleges that Allen has infringed three of its patents, namely U.S. Patent No. 4,728,959 ("the '959 patent"), U.S. Patent No. 6,108,555 ("the '555 patent"), and U.S. Patent No. 6,119,013 ("the '013 patent"). Each of these patents discloses a technology for locating cellular phones. In its Answer and Counterclaims (D.I.6, 48), the defendant asserted six affirmative defenses to the plaintiffs' claims, as well as five counterclaims.

Presently before the court is TruePosition's Motion to Dismiss and/or Strike the Defendant's Counterclaims III, IV, and V, and Affirmative Defenses III and VI (D.I.58). For the following reasons, the court will grant in part and deny in part the plaintiffs' motion.

II. STANDARDS OF REVIEW

The plaintiffs move to dismiss Counterclaims III, IV, and V pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal is appropriate pursuant to this Rule if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In this inquiry, the court must accept as true and view in the light most favorable to the non-movant the well-pleaded allegations of the complaint. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir.2000). The court 'need not accept as true "unsupported conclusions and unwarranted inferences." ' *Id.* (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n. 13 (3d Cir.1998)) (quoting *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997)). However, it is the duty of the court 'to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable.' *Id.* at 184 (quoting *City of Pittsburgh*, 147 F.3d at 263).

The plaintiffs rely upon Federal Rules of Civil Procedure 8 and 12(f) for their motion to strike Affirmative Defenses III and VI. Rule 8 requires a "short and plain" statement of a claim or defense. Fed. R. Civ. P. 8(a) and (b). It is well settled that the Federal Rules intend a liberal pleading standard. *See Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"). Indeed, Rule 8 expressly mandates that "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e).

Rule 12(f) allows a court to strike "any insufficient defense" from any pleading. Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are disfavored. *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 697 F.Supp. 1360, 1362 (D.Del.1988). When ruling on such a motion, "the [c]ourt must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law." *Id.*

III. DISCUSSION

A. Counterclaim III

*2 Counterclaim III alleges tortious interference with a contract. The plaintiffs move to dismiss the counterclaim pursuant to Rule 12(b)(6) on the grounds that it fails to plead an essential element of the alleged tort, namely, a breach of the relevant contract.

The tort of interference with a contract requires "an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

intentional act that is a significant factor in causing the breach of the contract." [FN1] *Cantor Fitzgerald, L.P. v. Cantor,* 724 A .2d 571, 584 (Del. Ch.1998). Without a breach, there is no viable tortious interference claim. As to this point, Delaware law is well-settled. *See id.; see also Associated/Acc Int'l, LTD. v. Dupont Flooring Sys. Franchise Co.,* 2002 U.S. Dist. LEXIS 6464, at *27- 28 (D.Del.2002); *DeBakey Corp. v. Raytheon Serv. Co.,* 2002 WL 1273317 (Del. Ch.2000); *Boyer v. Wilmington Materials,* 1997 WL 382979 (Del. Ch.1997); *Irwin & Leighton, Inc. v. W.M. Anderson Co.,* 532 A.2d 983, 992 (Del. Ch.1987). There is no discussion in these cases as to behavior that could constitute tortious interference when no breach of contract occurs. Presumably, this is because there is no conduct that could constitute the tort of interference with a contract, unless a breach of that contract results. [FN2]

> FN1. Contrary to the defendant's paraphrasing, the court did not style this element as requiring only some kind of interference and no resultant breach. *See* Answering Brief at 9.

> FN2. Although the defendant acknowledges that "a review of the relevant case law shows that the cases are universally precipitated by a breach of contract," it maintains that "the absence of a total breach does not foreclose recovery for damages caused by improper interference." Answering Brief at 10-11. This assertion is unpersuasive as it applies to interference with a contract, particularly given Allen's conspicuous failure to cite any supporting caselaw for it. Furthermore, Allen's contention that a breach of contract is not required in such a case because "the applicable tort here is, for a reason, labeled 'tortious *interference* with contractual relations' not 'tortious *breach* of contractual relations,' " Answering Brief at 12 n. 5 (emphasis added), is astounding in its fatuity. The tort is not labeled "tortious breach of contractual relations" because a non-party to a contract generally is not bound by the contract and thus can not breach the contract. *See, e.g., Traffas v. Bridge Capital Investors II,* 1993 WL 339293 (D.Kan.1993), at *3 ("It would be a novel holding for the court to rule that a breach of contract action can be maintained against a person who is not a party to the contract being sued upon.... A party to a contract cannot sue a person who is not a party to that contract for breach of contract."); *Credit Gen. Ins. Co. v. Midwest Indem. Corp.,* 916 F.Supp. 766, 722 (N.D.Ill.1996) (finding "ludicrous" the defendants' contention that a non-party to a contract can breach that contract).

In this case, the contract at issue is between AT & T Wireless Services, Inc. ("AT & T") and Allen for the purchase of Allen's wireless location systems, which systems are the subject of the present patent infringement suit. In its counterclaim, Allen alleges that the plaintiffs, by filing the present suit and by publicizing it, intended to cause a breach of the AT & T contract. Answer and Counterclaims (D.I.48) ¶¶ 17-18. This is insufficient to state a claim of tortious interference with a contract because, as the defendant concedes, there has been no breach of the AT & T contract. [FN3] Answering Brief at 10. Therefore, Counterclaim III must be dismissed.

> FN3. The court is mindful of Allen's contention that "much of this may ... be a matter of semantics." Answering Brief at 12 n. 6. Allen argues that, because the original AT & T contract was modified subsequent to TruePosition's initiation of the present suit, it suffered a complete loss of the original anticipated contract. *Id.* Apparently, Allen wishes the court to view this "loss" as a breach. However, a mutual modification of a contract certainly is not a breach. *See, e.g., Anderson v. Golden,* 569 F.Supp. 122, 140 (S.D.Ga.1982) (distinguishing between breach and mutual modification). To the extent such a loss represents the loss of an economic expectation, the corresponding tort is interference with a prospective business opportunity. The court reiterates that Delaware law requires a breach to sustain the tort of interference with a contract.

B. Counterclaim IV

Counterclaim IV alleges tortious interference with prospective business opportunities. The elements of this tort are: '(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lawful manner.' *DeBonaventura v. Nationwide Mut. Ins. Co.,* 428 A.2d 1151, 1153 (Del.1981) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.,* 419 A.2d 942, 947 (Del. Ch.1980)) (citations omitted). The plaintiffs move to dismiss the counterclaim on the grounds that the defendant cannot prove all of the required elements, namely, a prospective business opportunity, or an interference with that opportunity.

The only "prospective business opportunity" at issue in the counterclaim is the AT & T contract. As stated above, the defendant acknowledges a completed and continuing contract with AT & T. Allen's expected business opportunity, thus, appears to have been consummated before the allegedly tortious conduct of the plaintiffs. This is particularly true because "the probability of the business opportunity must be assessed at the time of the alleged interference ." *Malpiede v. Towson,* 780 A.2d 1075, 1099 (Del.2001). In this case, the alleged interference occurred after Allen had been awarded the contract with AT & T. Answer and Counterclaims (D.I.48) ¶ 17.

*3 Allen maintains, however, that the plaintiffs' interference caused a modification of the expected contract terms. Following TruePosition's commencement of a patent infringement action against Allen and a press release announcing the same, Allen allegedly incurred additional legal expenses in renegotiating certain provisions of the AT & T contract, more onerous indemnification terms in the contract, and damages to its reputation. Thus, Allen contends, TruePosition's actions interfered with its expected business opportunity in that the final terms of the AT & T contract differed from the original terms. For purposes of this motion only, this is sufficient to state a claim of tortious interference with prospective business opportunities. See *McHugh v. Board of Educ.,* 100 F.Supp.2d 231, 247 n. 15 (D.Del.2000) (noting that the tort requires "a valid business relationship or expectancy" and citing cases).

Assuming that these facts constitute a sufficient interference, the counterclaim may be challenged on other grounds, namely, that Allen has not shown that the plaintiffs engaged in any wrongful conduct. To sustain the tort of interference with a business opportunity, the interference must have been improper. *Bohatiuk v. Delaware Chiropractic Servs. Network, L.L.C.,* 1997 Del.Super. LEXIS 215, at *8-10 (Del.Super.1997). The conduct at issue is the filing of a patent infringement suit and the public announcement of the suit by a press release. Normally, lawful actions cannot form the basis of a claim of tortious interference, particularly in light of TruePosition's "privilege to compete and protect its own business interests." *Acierno v. Preit-Rubin, Inc.,* 199 F.R.D. 157, 164-65 (D.Del.2001) (dismissing tortious interference with contractual relations claim because defendant corporation and real estate investment trust, in failing to affirmatively suggest to County that competitor plaintiff's property be included in a traffic impact study, committed no wrongful conduct) (citing caselaw). In this case, however, the defendant also has alleged the counterclaim of "sham litigation." In the sham litigation context, the mere initiation of a lawsuit may be wrongful if it constitutes unlawful antitrust activity. Because the court will allow the "sham litigation" counterclaim to stand, see *infra* Section I.C., the tortious interference with a prospective business opportunity claim must survive as well. It is axiomatic that if the defendant can prove that the instant lawsuit is merely a "sham" and violative of antitrust law, then the filing of the lawsuit constitutes improper conduct. Therefore, in the interest of consistency, and viewing the pleadings in the light most favorable to Allen, Counterclaim IV survives the instant motion to dismiss.

C. Counterclaim V

TruePosition moves for the dismissal of Counterclaim V, which alleges "sham litigation," on the grounds that such a cause of action does not exist. The term "sham litigation" refers to an exception to the doctrine of antitrust immunity. Immunity to certain antitrust suits was established by the Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U .S. 127 (1961), and *Mine Workers v. Pennington,* 381 U.S. 657 (1965). These cases established that "the Sherman Act does not prohibit ... persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Noerr,* 365 U.S. at 136. The Supreme Court refused to "impute to Congress an intent to invade" the First Amendment right to petition. *Id.* at 136. Thus, the *Noerr-Pennington* doctrine protects those who petition the government from antitrust liability.

*4 Later caselaw extended *Noerr* antitrust immunity to "the approach of citizens ... to administrative agencies ... and to courts." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972). However, such immunity is not afforded to "sham" petitioning that is only "an attempt to

interfere directly with the business relationships of a competitor." Noerr, 365 U.S. at 144. Litigation is a mere "sham" if it is objectively baseless and subjectively motivated to interfere with business competition by using a governmental process 'as an anticompetitive weapon.' Professional Real Estate Investors v. Columbia Pictures Indus., 508 U.S. 49 (1993) (quoting Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380 (1991)).

The plaintiffs urge that "sham litigation" is not a cognizable cause of action. The court cannot agree. A counterclaim of sham litigation is, essentially, an assertion that antitrust law has been violated. Indeed, in litigation leading to the Court's decision in Professional Real Estate Investors, Columbia Pictures had sued the defendant, PRE, for copyright infringement. Id. at 52. The defendant counterclaimed, accusing Columbia of violations of §§ 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C. §§ 1-2. Id. "In particular, PRE alleged that Columbia's copyright action was a mere sham that cloaked underlying acts of monopolization and conspiracy to restrain trade." Id. Although the counterclaim did not survive summary judgment on the facts of the case, the Court upheld the validity of the sham counterclaim itself. Indeed, in announcing a two-part test for its application, the Court only clarified the existence and context of the sham litigation exception. [FN4]

> FN4. Of course, as already stated, a violation of antitrust law underlies any sham exception to antitrust immunity. Although the defendant has not specifically pled a violation of the Sherman Act in Counterclaim V, the invocation of the sham litigation doctrine is sufficient to give notice of the basis of its claim. This is particularly true in the context of a Rule 12(b)(6) motion to dismiss, and in light of both the liberal pleading philosophy of the Federal Rules and the court's responsibility 'to examine the complaint to determine if the allegations provide for relief on any possible theory.' O'Boyle v. Jiffy Lube Int'l, Inc., 866 F.2d 88, 93 (3d Cir.1989) (quoting C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357, at 601-02 (1969) (footnotes omitted)).

Since Professional Real Estate Investors, the sham litigation exception has been invoked in varied contexts. For example, in a recent case, the Supreme Court refused to strip antitrust immunity from an employer who filed a losing and retaliatory lawsuit where the suit was not objectively baseless. BE & K Constr. Co. v. NLRB, 122 S.Ct. 2390 (2002). In so doing, the Court implicitly held that the sham litigation exception applies to the National Labor Relations Act in the same way it applies to the Sherman Act. See id. at 2402 (Scalia, J., concurring) ("[T]he implication of our decision today is that ... we will construe the National Labor Relations Act ... in the same way we have already construed the Sherman Act: to prohibit only lawsuits that are both objectively baseless and subjectively intended to abuse process.") (emphasis in original). Other courts have applied the immunity principles of Noerr-Pennington to other contexts. See, e.g., State of Missouri v. National Organization of Women, 620 F.2d 1301, 1318-19 (8th Cir.1980) (applying Noerr-Pennington liability principles to state tort laws); Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir.1988) (holding that Noerr-Pennington doctrine applies to Civil Rights Act liability); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 614-15 (8th Cir.1980) (same). It follows that if the Noerr-Pennington immunity principles apply in these contexts, the sham litigation exception to immunity applies as well. [FN5] Other cases have explicitly or implicitly accepted the sham exception in the patent infringement context. See, e.g., Carroll Touch, Inc. v. Electro Mechanical Sys., 15 F.3d 1573 (D.C.Cir.1993) (discussing sham litigation counterclaim in patent infringement context); U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 597 (Fed.Cir.1995) (rejecting sham counterclaim on the facts of the case).

> FN5. Unlike the defendant, however, the court recognizes a distinction between the Noerr-Pennington doctrine, which shields petitioners from antitrust liability, and the sham litigation exception, which strips this immunity when the petition is meritless and anticompetitive in nature. See, e.g., Answering Brief at 15 ('... the Noerr-Pennington [i.e., "sham litigation"] doctrine ...').

*5 In sum, the court can find no justification for refusing to allow the sham exception to be litigated in the instant case. Indeed, a copyright infringement action, like that at issue in Professional Real Estate Investors, and a patent infringement action such as the one at issue here present such analogous contexts regarding the application of the sham litigation exception that it would strain credibility to announce

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 151227 (D.Del.)
**(Cite as: 2003 WL 151227 (D.Del.))**

Page 5

a relevant and dispositive difference between them. Thus, Counterclaim V may remain, to succeed or fail as it may in the ensuing litigation. [FN6]

> FN6. In this vein, the court stresses that the defendant, of course, will be tasked in the ensuing litigation with proving the elements of the sham litigation exception, namely, that the present patent infringement suit is objectively baseless and subjectively motivated by an intent to interfere with competition. See Carroll Touch, 15 F.3d at 1583 (holding that sham litigation counterclaim could not survive summary judgment because defendant did not establish a genuine issue regarding whether the patent infringement action was baseless).

D. Affirmative Defense III

As its third affirmative defense, Allen alleges that TruePosition engaged in "fraud and/or inequitable conduct" in acquiring the relevant patents. The plaintiffs move to strike the defense, as well as Counterclaim I, which is predicated on the inequitable conduct defense, on the grounds that the affirmative defense does not meet the pleading requirements of Federal Rule of Civil Procedure 9(b).

Rule 9 requires that all pleadings of fraud or mistake "be stated with particularity." Fed. R. Civ. P. 9(b). [FN7] These averments, however, remain subject to the liberal pleading standard of Rule 8, which requires only a "short and plain" statement of a claim or defense. See In re Westinghouse Sec. Litig., 90 F.3d 696, 703 (3d Cir.1996) (citing cases); see generally Leatherman, 507 U.S. at 168 (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"); 5 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 1281, at 520-21 (1990) (pleading with particularity under Rule 9(b) should be done consistently with the general philosophy of Rule 8); 2A James W. Moore, Moore's Federal Practice ¶ 8.13, at 8-58 (2d ed.1995) (the mandate of Rule 8 applies "even where the Rules command particularity, as in the pleading of fraud under Rule 9(b)") (footnote omitted).

> FN7. Because the court has found that Allen's pleadings satisfy the heightened pleading requirements of Rule 9(b), it need not address the defendant's argument that Rule 9(b) may not apply to allegations of inequitable conduct.

The pleading requirements are satisfied by Allen's third affirmative defense. The defense constitutes one paragraph which names the title and publication date of at least one allegedly withheld material prior art publication. In the context of alleged inequitable conduct before the PTO during a patent prosecution, "pleadings that disclose the name of the [allegedly withheld] relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)." EMC Corp. v. Storage Tech. Corp., 921 F.Supp. 1261, 1263 (D.Del.1996). The third affirmative defense discloses at least this much, and thus suffices "to apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings" as Rule 9 requires. 5 WRIGHT & MILLER § 1296 (1990).

TruePosition objects that the named publication is relevant to only certain of their patents and, therefore, the defendant has not sufficiently pled the defense of inequitable conduct as to the other patents. The court declines, however, to weigh the relevance and materiality of the allegedly withheld prior art for purposes of this motion. It is the court's duty for purposes of this motion only to test the sufficiency of the pleading, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). Furthermore, the Third Circuit has made clear that, although "it is certainly true that allegations of 'date, place or time' " satisfy the pleading requirements, "nothing in [Rule 9] requires them." Seville Industrial Machinery v. Southmost Machinery, 742 F.2d 786, 791. The affirmative defense, as pled, suffices to place the plaintiffs on notice of the misconduct with which they are charged. Id.; see also Scripps Clinic and Research Found., et al. v. Baxter Travenol Lab., et al., 1988 WL 22602, at *3 (D.Del.) (defense of inequitable conduct sufficiently pled when defendant simply "allege[d] that [the plaintiff] failed to identify to the PTO relevant prior art of which it was aware").

*6 The motion to strike the third affirmative defense, and to dismiss Counterclaim I, which is at least partially premised on the defense of inequitable conduct, is denied.

E. Affirmative Defense VI

Finally, the plaintiffs move to strike Affirmative Defense VI, abuse of process, on the grounds that it is not a defense to a patent infringement action, and that, in any event, it has not been pled properly.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 151227 (D.Del.)
(Cite as: 2003 WL 151227 (D.Del.))

Page 6

The plaintiffs are correct that abuse of process is not a defense to a patent infringement action. Rather, it is a tort, see PROSSER, LAW OF TORTS, § 121 (4th Ed.1971), which should have been pled as a counterclaim. This mistake is not fatal, however. Federal Rule of Civil Procedure 8(c) states that "[w]hen a party has mistakenly designated ... a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Fed. R. Civ. P. 8(c). The court will view the defendant's averment of the "defense" of abuse of process as a counterclaim.

Abuse of process may be alleged in a patent infringement case as in any other. See, e.g., Bayer AG v. Sony Elecs., Inc., 229 F.Supp.2d 332 (D.Del.2002). A claim of abuse of process is established when "the defendant ... prove[s] that the plaintiff had an 'ulterior purpose' and committed 'a willful act in the use of the process that is not proper in the regular conduct of the proceedings .' " Id. at 368 (quoting Feinman v. Bank of Delaware, 728 F.Supp. 1105, 1115 (D.Del.1990), aff'd, 909 F.2d 1475 (3d Cir.1990)). "There must be 'some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of process ... there is no liability where the [plaintiff] has done nothing more than carry out the process to its authorized conclusion .' " Id. (citations omitted).

The defendant has asserted that the "[p]laintiffs have abused the judicial process by bringing the present action based on the [p]atents that [p]laintiffs know are invalid, unenforceable, and/or not infringed." Answer and Counterclaims (D.I.48) at 8. There is no elaboration in the Answer and Counterclaims. The defendant's briefing, however, contends that "the same averments with regard to TruePositions tortious interference with Allen's business contracts and relations also establish a basis to proceed against TruePosition for abuse of process." Answering Brief at 17-18 n. 10.

The defendant's averments are sufficient to sustain a Rule 8, Rule 12(f), or Rule 12(b)(6) motion to strike and/or dismiss. Allen has offered a "short and plain" statement of the claim and has presented a factual context that, viewed in the light most favorable to Allen, states an abuse of process claim. Again, it is the court's duty for purposes of this motion only to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost, 1 F.3d at 183. Despite the defendant's anemic presentation of its abuse of process claim, the facts presented in the context of its sham litigation and tortious interference claims suffice to state a claim for relief for abuse of process as well. The plaintiffs' motion to dismiss the claim is denied.

IV. CONCLUSION

*7 The court concludes that the defendant's tortious interference with a contract claim can not be sustained because there has been no breach of contract. Allen's other counterclaims of tortious interference with prospective business opportunities, sham litigation, declaratory judgment, and abuse of process survive this motion to dismiss. Likewise, the defendant's third affirmative defense of fraud and/or inequitable conduct may remain.

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. TruePosition's Motion to Dismiss and/or Strike (D.I.58) is GRANTED IN PART and DENIED IN PART.
2. Counterclaim III, alleging tortious interference with a contract, is DISMISSED.

Not Reported in F.Supp.2d, 2003 WL 151227 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.