# EXHIBIT 19

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1988 WL 22602 (D.Del.), 7 U.S.P.Q.2d 1562
(Cite as: 1988 WL 22602 (D.Del.))

▷

**Motions, Pleadings and Filings**

United States District Court, D. Delaware.
SCRIPPS CLINIC AND RESEARCH
FOUNDATION, and Rorer Group, Inc., Plaintiffs,
v.
BAXTER TRAVENOL LABORATORIES, INC.,
and Travenol Laboratories, Inc.,
Defendants.
Civ. A. No. 87-140-CMW.

March 9, 1988.
Gregory A. Inskip, Potter, Anderson & Corroon Wilmington, Delaware. of counsel: Eugene Moroz, Kurt E. Richter, and William S. Feiler, Morgan & Finnegan, New York City, for plaintiffs.

Allen M. Terrel, Jr., Richards, Layton & Finger Wilmington, Delaware. of counsel: Granger Cook, Jr., and Dean A. Monco, Cook, Wetzel & Egan, Ltd., Chicago, Illinois, and Paul C. Flattery, and Robert E. Hartenberger, Baxter Travenol Laboratories, Inc., Deerfield, Illinois. for defendants.

OPINION

CALEB M. WRIGHT, Senior District Judge.

*1 This Motion to Strike arises out of a patent infringement suit filed by the Scripps Clinic and Research Foundation ("Scripps Clinic") and Rorer Group, Inc. ("Rorer") [FN1] against Baxter Travenol Laboratories, Inc., and Travenol Laboratories, Inc. (collectively, "Baxter"). Scripps claims that Baxter has infringed United States Reissue Patent No. Re. 32,011 ("the '011 patent") entitled "Ultrapurification of Factor VIII using monoclonal antibodies." Scripps Clinic is the assignee of the patent and Rorer is its exclusive licensee.

Factor VIII is a blood clotting factor found naturally in the blood which has two components, Factor VIII:C and Factor VIII:RP. Because a deficiency in either component can cause hemophilia, it is desirable to obtain purified components to use in treating hemophiliacs.

Rorer markets a purified form of Factor VIII:C which it obtains using the process claimed in the '011 patent. Baxter does not presently market Factor VIII:C, but it does conduct clinical research with it and has applied for licenses to market a pure form both in the United States and abroad. Baxter uses two methods to obtain purified Factor VIII:C for this testing, one utilizing recombinant DNA technology to create a purified form, and the other utilizing monoclonal antibodies to separate the components in human blood plasma. In its patent, Scripps Clinic claims a process similar to this second method, claims the actual purified Factor VIII:C itself, and claims Factor VIII:C derived by the monoclonal antibody process.

Scripps filed its complaint on March 20, 1987. On May 15, 1987, Baxter filed a Motion to Dismiss or, in the alternative, for Summary Judgment ("Baxter's Motion" or "Motion to Dismiss"). Baxter alleged that the complaint failed to state a claim upon which relief could be granted because Baxter's use of Factor VIII:C to gather data to submit to the Food and Drug Administration ("FDA") for the purpose of obtaining approval to market its form of Factor VIII:C is excused under 35 U.S.C. § 271(e)(1) (Supp. III 1985). On August 12, 1987, this Court elected to treat Baxter's Motion as a summary judgment motion because evidence was submitted aside from the pleadings. The Court then stayed Baxter's Motion pending further discovery concerning Baxter's use of Factor VIII:C.

On November 6, 1987, Baxter withdrew its Motion for Summary Judgment. Baxter then filed its Answer and Counterclaims on November 18, 1987. On December 8, 1987, Scripps filed this Motion to Strike certain pleadings, including Baxter's defense under section 271(e)(1), under Federal Rules of Civil Procedure 9(b) and 12(f).

I. SCRIPPS' MOTION TO STRIKE PARAGRAPHS 26 AND 27 OF BAXTER'S ANSWER

Scripps requests that the Court strike paragraphs 26 and 27 of Baxter's answer because they are not pleaded with sufficient particularity. Fed.R.Civ.P. 9(b). These paragraphs state:

*2 26. At the time SCRIPPS and/or the alleged inventors filed the application resulting in the issuance of the '509 patent, [the original patent,]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1988 WL 22602 (D.Del.), 7 U.S.P.Q.2d 1562  
**(Cite as: 1988 WL 22602 (D.Del.))**

Page 2

SCRIPPS and/or the alleged inventors were aware of relevant prior art which was not identified to the Patent office at the time of filing or during the prosecution of the '509 patent. SCRIPPS and/or the alleged inventors failed to satisfy their uncompromising duty of candor to the U.S. Patent Office under the Code of Federal Regulations, 37 CFR 1.56.

27. The '509 patent was and U.S. Letters Patent No. Re. 32,011 is unenforceable because of Plaintiff SCRIPPS and/or the alleged inventors' failure to disclose the relevant prior art to the Patent Office.

Scripps alleges that these claims amount to a charge of "fraud" on the Patent and Trademark Office ("PTO"). It argues that, as such, they are subject to Rule 9(b), which states that the "circumstances" of the fraud must be pleaded with particularity.

Baxter counters by arguing that paragraphs 26 and 27 do not claim the defense "fraud", but instead claim the broader defense "inequitable conduct" which is not subject to the strict requirements of Rule 9(b). In addition, Baxter claims that it clarified its pleadings in its responses to Scripps' interrogatories. In its responses, Baxter stated that Scripps failed to file *any* prior art statement during the prosecution of the original patent but did provide 75 references with the reissue application, some of which pre-dated the filing of the original application.

A patent applicant has a duty of candor to the PTO. It breaches this duty "when material information is misrepresented or withheld, and such misrepresentation or withholding is intentional or accompanied by gross negligence or bad faith." Hycor Corp. v. Schlueter Co., 740 F.2d 1529, 1538 (Fed.Cir.1984). Such a breach can lead to charges of either fraud on the PTO or inequitable conduct.

While the terms fraud and inequitable conduct are sometimes used synonomously, they are distinct defenses covering different conduct and leading to different consequences. Fraud involves the "misrepresentation of a material fact" to the PTO, while inequitable conduct involves the omission of material fact, as well as the misrepresentation of information. J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1559 (1984), cert. denied, 474 U.S. 822 (1985). The consequences of proving these defenses are that a charge of fraud leads to patent invalidity, while a charge of inequitable conduct leads to patent unenforceability. 2 P. Rosenberg, *Patent Law Fundamentals* § 15.08, at 15-126 (2d ed.

1987). The Federal Circuit has described the defense of inequitable conduct by stating

Conduct before the PTO that may render a patent unenforceable is broader than "common law fraud" [citation omitted]. It includes failure to disclose material information, with an intent to mislead. Because the "fraud" label can be confused with other forms of conduct, this opinion avoids that label and uses "inequitable conduct" as a more accurate description of the proscribed activity, it being understood that the term encompasses affirmative acts of commission, *e.g.,* submission of false information, as well as omission, *e.g.,* failure to disclose material information.

J.P. Stevens, 747 F.2d at 1559. Baxter alleges that Scripps omitted prior art from its original application and that this makes the '011 patent unenforceable. Thus, Baxter alleges that Scripps engaged in inequitable conduct, not fraud.

*3 A charge of fraud on the PTO is subject to the strict pleading requirements of Rule 9(b). See Micro Motion, Inc. v. Exac Corp., 112 F.R.D. 2 (N.D.Cal.1985). However, Baxter alleges inequitable conduct, not fraud, and it is unclear whether such a charge is subject to Rule 9(b).

The Court need not decide whether Rule 9(b) applies to charges of inequitable conduct because Baxter has met its burden of pleading even under the strict standard. Baxter alleges that Scripps failed to identify to the PTO relevant prior art of which it was aware. Answer ¶¶ 26, 27. The conclusion that the pleading is sufficient is strengthened by the fact that Baxter clarified its pleadings in response to Scripps' interrogatories. See Essex Int'l, Inc. v. Industra Products, Inc., 64 F.R.D. 361 (N.D.Ind.1974) ("as a practical matter, it is evident that considerable detailed information related to the alleged fraud has been disclosed in the response to plaintiff's interrogatories"). Baxter's claim that Scripps did not file any prior art with its original application is a sufficient description of the "circumstances" of Baxter's claim to meet Rule 9(b)'s strict requirements, even if Rule 9(b) is applicable. Thus, Scripps' Motion to Strike Paragraphs 26 and 27 must be denied.

*II. SCRIPPS' MOTION TO STRIKE PARAGRAPHS 33 AND 34 OF BAXTER'S ANSWER*

Paragraphs 33 and 34 of Baxter's answer state:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1988 WL 22602 (D.Del.), 7 U.S.P.Q.2d 1562  
(Cite as: 1988 WL 22602 (D.Del.))

Page 3

33. BAXTER's accused Factor VIII:C product has been used solely to develop and submit information to the appropriate regulatory agencies as provided for under Federal law.

34. Under 35 USC 271(e)(1), BAXTER has not infringed any of the claims of U.S. Patent No. Re. 32,011.

Section 271(e)(1) was added to the patent laws as part of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98-417, 98 Stat. 1985 (1984). It states that "[i]t shall not be an act of infringement to make, use, or sell a patented invention ... *solely for uses reasonably related to* the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs." (Emphasis added). This creates an exception to the general rule that anyone who "makes, uses or sells any patented invention ... infringes the patent." 35 U.S.C. § 271(a) (1982). The FDA requires a great deal of testing concerning the safety and efficacy of a drug before allowing it to be marketed. Section 271(e)(1) allows scientists to use a patented product or process to gather data and submit them to the FDA in order to obtain regulatory approval to market a drug at a later time, after the patent on the drug expires. Scripps claims that the Court should strike Baxter's section 271(e)(1) defense as insufficient under Fed.R.Civ.P. 12(f).

Scripps mounts a multipronged attack on this defense. It first claims that the defense is not viable because Baxter eliminated it when it used the defense as the basis for its Motion to Dismiss and then withdrew the Motion. It also claims that pleading the defense after withdrawing the Motion amounted to a delay tactic. This argument does not warrant the Court's striking the defense as insufficient. Baxter claims that its decision to withdraw its Motion was based on "strategy", not delay. Such a withdrawal of the Motion does not influence the viability of the defense because the issue raised has still not been adjudicated.

*4 Scripps next claims that the fact that Baxter distinguished this defense from "the merits" of this suit in the correspondence concerning the withdrawal of its Motion is evidence of using the Motion as a delay tactic. This argument also does not support striking the defense. It is not unusual to refer to the issues of infringement and patent invalidity as being the "merits" of a patent suit. Distinguishing a defense from these two issues does not make its interposition a delay tactic.

Scripps' next argument is based on the fact that Judge Schwarzer of the Northern District of California dismissed a similar defense raised by Genentech, Inc., based on similar facts, in another patent infringement suit brought by Scripps Clinic. *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 666 F.Supp. 1379, 1395-97 (N.D.Cal.1987). It argues that this proves that Baxter's defense is insufficient. That case, however, is not controlling in this Court. More importantly, Baxter was not a party in that case, and thus its activities were never at issue. Section 271(e)(1) excuses from infringement defendants who use a patented invention "solely for uses reasonably related to" developing information for the FDA. Baxter's defense is based on *its* use of Factor VIII:C, not Genentech's or even Scripps'. Thus, the facts pertaining to Baxter's use must be examined by this Court and *Scripps Clinic v. Genentech* does not make Baxter's defense any less viable.

Scripps' final claim is that Baxter used the data it gathered, not only to submit it to the FDA in order to gain pre-market approval, but also to submit it to regulatory agencies in foreign countries in order to obtain approval to market it there. Scripps argues that Baxter's foreign-related activities fall outside the limited exception from infringement contained in section 271(e)(1) and make Baxter's defense insufficient as a matter of law.

This question arises in the context of a Motion to Strike. The Court can grant Scripps' Motion to Strike only if it finds the defense to be "insufficient". Fed.R.Civ.P. 12(f). Thus, the Court should not grant Scripps' Motion if there are questions of fact or law remaining to be adjudicated. *See Lunsford v. United States,* 418 F.Supp. 1045, 1051 (D.S.D.1976), *aff'd,* 570 F.2d 221 (8th Cir.1977) (factors to be considered include whether there are factual and legal questions remaining); *see also* 5 C. Wright and A. Miller, *Federal Practice and Procedure Civil* § 1381 (motion to strike should not be granted if there are factual issues that deserve a hearing). Such questions are present here.

The scope of section 271(e)(1) presents a question of law that has no clear answer. Section 271(e)(1) was added to the patent laws in order to legislatively overrule the Federal Circuit's decision in *Roche Products, Inc. v. Bolar Pharmaceutical Co., Inc.,* 733 F.2d 858 (Fed.Cir.), *cert. denied,* 469 U.S. 856 (1984). H.R.Rep. No. 98-857, 98th Cong., 2d Sess. 45- 46. *reprinted in* 4 U.S. Code Cong. &

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1988 WL 22602 (D.Del.), 7 U.S.P.Q.2d 1562  
**(Cite as: 1988 WL 22602 (D.Del.))**

Page 4

Admin.News 2647, 2678; see Flannery and Hutt, *Balancing Competition and Patent Protection in the Drug Industry: The Drug Price Competition and Patent Term Restoration Act of 1984*, 40 Food Drug Cosm.L.J. 269, 308 (1985). In *Roche Products*, the Federal Circuit held that the use of a patented ingredient of a sleeping pill to gather data for the FDA pre-market approval process was an infringement of the patent. It is clear that section 271(e)(1) now condones such activities related to gathering information under laws regulating the marketing of drugs. It is also clear that section 271(e)(1) applies only to drugs, not to medical devices. *Eli Lilly & Co. v. Medtronic, Inc.*, No. 83-5393, slip op. (E.D.Pa. Dec. 7, 1987). What is still unclear is what is meant by the phrase "solely for uses reasonably related to" gathering and submitting information and whether Section 271(e)(1) should apply even if the data are also given to foreign regulatory agencies. The impact of this question can best be illustrated by examining Baxter's situation.

*5 A subsidiary of Rorer markets Factor VIII:C made under a license of the '011 patent. In contrast, Baxter has not received approval to market its Factor VIII:C anywhere, but uses it in connection with a joint venture with Genetics Institute. Baxter admits that it uses the information obtained from its experimentation with Factor VIII:C for purposes other than submitting it to the FDA, but maintains that all of the experiments it conducts to obtain the information are required by FDA regulations.

Baxter admits that it seeks to market Factor VIII:C in Europe eventually. Either Baxter or Genetics Institute has filed for patent protection and regulatory approval in Europe. Baxter even submitted copies of the application it filed with the FDA to these foreign regulatory agencies. However, it claims that the data generated by the foreign agencies are also given to the FDA to aid the drug approval process in the United States. A possible result of this activity could be that Baxter or Genetics Institute could obtain approval to market Factor VIII:C in Europe, where they may also obtain a patent, as a result of testing performed in this country. Scripps objects to this potential commercial use of its patent and argues that section 271(e)(1) should not excuse it because Congress only excused actions relating to approval for marketing in the United States.

The question of law, then, is whether any foreign activities can be "reasonably related" to FDA drug approval. If not, then Baxter's activities would fall outside of section 271(e)(1) and Baxter's defense would be insufficient. The legislative history does not provide guidance on what activities are "reasonably related" to FDA drug approval. Judge Schwarzer was faced with this issue, but he interpreted the statute to only cover activities that were "solely related" to FDA approval and did not consider what acts are "reasonably related" to it. *Scripps v. Genentech*, 666 F.Supp. at 1396 ("Even if the uses to which Genentech and Cutter put the Factor VIII:C were reasonably related to meeting FDA requirements, they certainly were not solely related to that purpose."). This question must be more fully developed before the Court can decide it.

There are also questions of fact as to what data were sent to the European agencies, what data developed in Europe were given to the FDA, and what tests were required by FDA regulations. This situation must be fully developed before the Court can determine whether Baxter's activities were "solely for purposes reasonably related to" approval of Factor VIII:C by the FDA. Because this cannot be done at this stage of the proceedings, the Court must deny Scripps' Motion to Strike paragraphs 33 and 34.

III. *Rule 11*

*6 Scripps, in its reply brief, alleges that Baxter violated Fed.R.Civ.P. 11 by using its Motion to Dismiss as a delay tactic. It also claims that counsel for Baxter misrepresented certain facts in its briefs and during oral argument, such as the extent of Baxter's foreign activities and whether it or Genetics Institute controlled the tests to gather data for regulatory approval. The Court declines to impose sanctions.

Rule 11 sanctions are warranted only if Baxter did not act reasonably under the circumstances. *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535 (3d Cir.1985). Rule 11 does not apply to counsel's alleged misrepresentations during oral argument because "Rule 11 sanctions are improper in situations which do not involve signing a paper." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir.1987). The fact that Baxter filed and later withdrew its Motion while leaving the issue as a defense also does not warrant sanctions. Baxter claims that its move was a strategic one and that it acted reasonably. It is certainly reasonable for Baxter to believe that it could be better off asserting the defense only after full discovery. Finally, the Court finds that Baxter admitted its foreign activity rather than concealing it. Therefore, the Court holds that Baxter acted reasonably and will not impose

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1988 WL 22602 (D.Del.), 7 U.S.P.Q.2d 1562  
**(Cite as: 1988 WL 22602 (D.Del.))**

Page 5

Rule 11 sanctions.

An Order will issue in accordance with this Opinion.

> FN1. Plaintiffs will at times be referred to collectively as "Scripps".

Not Reported in F.Supp., 1988 WL 22602 (D.Del.), 7 U.S.P.Q.2d 1562

**Motions, Pleadings and Filings (Back to top)**

- 1:87cv00140                (Docket) (Mar. 20, 1987)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.