# EXHIBIT 24



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 1481015 (D.Del.)  
**(Cite as: 2000 WL 1481015 (D.Del.))**

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
UNION CARBIDE CHEMS. & PLASTICS TECH. CORP. and UNION CARBIDE CORP .,
Plaintiff, Counter-Defendant
v.
SHELL OIL CO., Shell Chemical Co., and CRI Catalyst Co., Defendants, Counter-Plaintiffs.
No. 99-CV-274-SLR.

Sept. 29, 2000.

Jeffrey B. Bove, Esquire and R. Eric Hutz, Esquire of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware. Counsel for plaintiff, counter-defendant. Steven J. Glassman, Esquire and Benjamin C. Hsing, Esquire of Kaye, Scholer, Fierman, Hays & Handler, New York, New York. Of counsel for plaintiff, counter-defendant.

Allen M. Terrell, Jr., Esquire and Jeffrey L Moyer, Esquire of Richards, Layton & Finger, Wilmington, Delaware. Counsel for defendant, counter-plaintiff. William Slusser, Esquire of Slusser & Frost, Houston, Texas and John D. Norris, Esquire of Howrey, Simon, Arnold & White, Houston, Texas. Of counsel for defendant, counter-plaintiff.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Union Carbide Chemicals & Plastics Technology Corporation filed this patent infringement action on May 3, 1999 against defendant Shell Oil Company, Shell Chemical Company, and CRI Catalyst Company (collectively, "defendant"), alleging that defendant infringes U.S. Patent No. 4,908,343 ("the '343 patent"); U.S. Patent No. 4,916,243 ("the '243 patent"); and U.S. Patent No. 5,057,481 ("the '481 patent"). The '343 and '243 patents relate to particular types of catalysts and processes for making ethylene oxide. The '481 patent relates to compositions used in coatings applications. Plaintiff Union Carbide Corporation joined this litigation through an amended complaint on January 4, 2000. (D.I.75)

Defendant, in its answer to plaintiff's amended complaint, has denied infringement of all three patents-in-suit and filed affirmative defenses and counterclaims alleging that all three patents are invalid, unenforceable, and not infringed. Specifically, defendant alleges that the '243 patent is unenforceable because it was procured by misrepresentations to the Patent and Trademark Office ("PTO"). (D.I.78)

Plaintiff [FN1] is incorporated in Delaware and has its principal place of business in Connecticut. (D.I.75, ¶¶ 4-5) Defendant is a Delaware corporation with its principal place of business in Texas. (D.I. 75, ¶¶ 7-9; D.I. 78 ¶¶ 7- 9) The court has jurisdiction over this action under 28 U.S.C. § § 1331 and 1338. Venue is proper in this judicial district by virtue of 28 U.S.C. § § 1391(c) and 1400(b).

> FN1. Union Carbide Chemicals & Plastics Technology Corporation and Union Carbide Corporation are hereinafter referred to collectively as "plaintiff."

Currently before the court is defendant's motion to strike under Fed.R.Civ.P. 12(f) defendant's affirmative defense, and under Fed.R.Civ.P. 12(b)(6) to dismiss defendant's counterclaim with respect to allegations of inequitable conduct. (D.I.84) Because defendant's subsequent filings with this court clarify its pleadings, plaintiff's motion is denied.

II. BACKGROUND

Plaintiff brings this motion claiming that defendant's inequitable conduct allegation fails to meet the particularity requirement of Fed.R.Civ.P. 9(b) [FN2] and leaves plaintiff guessing as to the details of its alleged wrongdoing. Plaintiff specifically complains about the affirmative defense in paragraph thirty-eight of defendant's answer which is repeated and realleged as a counterclaim in paragraph fifty. (D.I. 85 at 3) Paragraph thirty-eight reads:

> FN2. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00833-KAJ    Document 124-22    Filed 10/05/2005    Page 3 of 4

Not Reported in F.Supp.2d                                                                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 1481015 (D.Del.)
**(Cite as: 2000 WL 1481015 (D.Del.))**

The '243 patent is unenforceable because it was procured by misrepresentations to the PTO regarding the materiality of Union Carbide's own commercial activities to the patentability of claims pending in the prosecution of patent applications leading to the issuance of the patent and by misrepresentations regarding data submitted to the PTO to support the patentability of pending claims. During the prosecution of the '243 patent, a continuation-in-part application was filed containing claims barred under 35 U.S.C. § 102(b) as a result of Union Carbide's commercial use of the processes of these claims more than one year before their effective filing date. In a statement to the PTO, the applicants, through their attorneys, acknowledged the commercialization of the invention, but did so in a manner that obscured and misrepresented the significance of the event to the patentability of then pending claims. Additionally, during the prosecution of the '243 patent, Union Carbide, on its own initiative, conducted tests based on the teachings of cited prior art references in an effort to distinguish the claimed invention from the teachings of these references. During this testing, Union Carbide deviated from the teachings of the prior art in ways yielding results that inaccurately portrayed the claimed invention as falling outside the teachings of the prior art. Union Carbide also selectively submitted data tending to support the patentability of claims while not submitting data tending to show the contrary. All these misrepresentations were highly material to the PTO proceedings, were made with reckless or intentional disregard of the duty of candor required in proceedings before the PTO, and were made with an intent to deceive the PTO.

*2 (D.I.78, ¶ 38)

Plaintiff contends the above paragraph does not satisfy Rule 9(b) because the allegations: (1) fail to identify what Union Carbide tests are alleged to have deviated from the teachings of the prior art, (2) fail to state how any such tests purportedly deviated from the prior art to yield misleading results, (3) fail to identify what data is alleged to have been "selectively submitted" to the PTO in support of the patentability of the claims, or what "data tending to show the contrary" is alleged to have been withheld, and (4) fail to state how any such data tended to support or refute patentability.

Defendant claims that plaintiff reads the Rule 9(b) requirements too broadly. Defendant claims there is no requirement to identify particular tests and, in any event, plaintiff is aware of the tests to which defendant refers. In its opposition to plaintiff's motion to strike, defendant contends that plaintiff submitted only two declarations that purported to duplicate examples in the prior art cited by the examiner as a basis for rejecting pending claims. Defendant attached those two declarations and claimed that the prior art references and tests they refer to in the pleadings are consistently referred to throughout the declarations. [FN3]

> FN3. The defendant is referring to two 37 C.F.R. § 132 declarations signed by: (1) the inventor, Dr. Madan Bhasin, on December 28, 1979 ("the Bhasin declaration"), and (2) Dr. Thomas Notermann on December 29, 1979 ("the Notermann declaration"). (D.I. 97 at 6)

Plaintiff argues that it submitted not two, but seven declarations during the prosecution of the '243 patent--four of which discuss testing of catalysts prepared from the teachings of the prior art. In the four declarations, eighteen catalysts were prepared based on five prior art references and twenty tests were conducted to determine whether the catalysts were synergistic. Plaintiff claims that even if defendant limited their inequitable conduct allegations to the two declarations cited in defendant's opposition brief, they would still be guessing about the specifics of the inequitable conduct allegations. In the two cited declarations, fifteen catalysts were prepared based on four prior art references and fifteen tests were conducted to determine whether those catalysts were synergistic.

III. DISCUSSION

The purpose of Fed.R.Civ.P. 9(b) is "to place the [parties] on notice of the precise misconduct with which they are charged, and to safeguard [the parties] against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984). The particularity requirement of Rule 9 applies to inequitable conduct charges. See *EMC Corp. v. Storage Tech. Corp.,* 921 F.Supp. 1261, 1263 (D.Del.1996). Pleadings that disclose the relevant prior art and alert the patentee to the alleged fraud satisfy the requirements of Rule 9(b). *Id.* Rule 9(b) does not require that the pleadings allege the time, date, and place of the alleged misconduct. *Id.*

Here, the defendant's pleadings do appear to be "bare-boned" on their face. However, its brief submitted in opposition to the present motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sufficiently clarified its pleadings to overcome Rule 9(b)'s requirements. (D.I.97) In that brief, defendant cites two specific 37 C.F.R. § 132 declarations that were part of the '243 patent's prosecution history. In the Bhasin declaration, the inventor, through his attorney, responded to a rejection based on U.S. Patent Nos. 3,548,018; 4,038,175; 4,014,913; 4,096,164; and 4,162,262. (D.I. 97, Ex. A at 115) The examiner contended that the above references disclosed combinations of potassium and cesium in silver catalysts for ethylene oxide manufacture to provide the synergism which Bhasin claimed to be his invention. (*Id.*) To overcome the rejection, Bhasin selected examples from four of the five cited references to show the use of a silver catalyst containing both potassium and cesium which would demonstrate whether such synergism is inherently taught by the references. (*Id.* at 116) Bhasin then prepared several catalysts and conducted several tests to determine whether the catalysts were synergistic.

*3 When defendant pleads that plaintiff "conducted tests based on the teachings of cited prior art references in an effort to distinguish the claimed invention from the teachings of these references," defendant is, in the court's opinion, referring to the five prior art references cited above. When defendant pleads that plaintiff "deviated from the teachings of the prior art" and "selectively submitted data tending to support the patentability of claims," defendant is suggesting that Bhasin did not select representative samples from the prior art references as he proclaimed in his declaration.

The Notermann declaration explains that Notermann evaluated the catalysts prepared by Bhasin. Notermann concurred with Bhasin's opinion that the catalysts he selected were the best choices in determining whether the cited references showed a synergistic combination of silver, cesium, and potassium for the manufacturing of ethylene oxide. (D.I. 97, Ex. B at 105)

This court has allowed a party to clarify its pleadings through responses to interrogatories. *See Scripps Clinic & Research Found. v. Baxter Travenol Labs., Inc.*, 7 U.S.P.Q.2d 1562, 1564 (D.Del.1988). Likewise, the court will allow defendant to clarify its affirmative defenses and counterclaims through its opposition brief. Note, however, insufficiently pled allegations of inequitable conduct shall not be used to justify subsequent discovery into such allegations. *See EMC Corp.*, 921 F.Supp. at 1263.

Defendant's clarification has sufficiently put plaintiff on notice of the precise misconduct with which they are charged. Defendant will still carry the burden at trial to show that plaintiff did indeed engage in that conduct.

IV. CONCLUSION

Plaintiff's motion to strike defendant's affirmative defense and to dismiss defendant's counterclaim with respect to allegations of inequitable conduct is denied. Defendant shall have thirty days to amend its answer to include the clarifications laid out in its opposition brief.

Not Reported in F.Supp.2d, 2000 WL 1481015 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.