IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 04-833-KAJ |
| SICOR INC. and SICOR PHARMACEUTICALS, INC., | ) ) ) | |
| Defendants. | ) ) | |

**COMPENDIUM OF UNREPORTED CASES CITED IN DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO BIFURCATE LIABILITY AND WILLFULNESS AND
STAY DISCOVERY RELATING TO THE WILLFULNESS INQUIRY**

ASHBY & GEDDES
Steven J. Balick (ID# 2114)
John G. Day (ID# 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700
Facsimile: (212) 768-6800

Dated: October 5, 2005

TAB 1

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21557632 (N.D.Ill.)
(Cite as: 2003 WL 21557632 (N.D.Ill.))

▷

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
**APTARGROUP**, INC., Plaintiff,
v.
OWENS-ILLINOIS, INC. and Armin Tool and
Manufacturing Co., Defendants.
No. 02 C 5058.

July 3, 2003.

*MEMORANDUM OPINION AND ORDER*

MORAN, Senior J.

**\*1** Defendants move to bifurcate the issues of liability and willfulness for purposes of discovery and trial. That motion is granted.

 The parties agree on one thing: bifurcation is within the sound discretion of the court. Each marshalls a number of cases in support of its opposing position, with defendants seeking bifurcation and plaintiff opposing it. A review of those cases discloses such varied circumstances that an extended analysis of each case serves little purpose. A few observations will suffice. The Federal Circuit encourages bifurcation when a party is faced with what has come to be known as the "Quantum dilemma": a choice between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found. *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642 (Fed.Cir.1991). The support from some of the professional literature is even stronger. The district courts are reluctant to bifurcate, however, if there is not a good reason to bifurcate damages as well, or it is uncertain that the party faces the "Quantum dilemma," or legal advice becomes relevant for other reasons, or prior rulings establish that the patent holder has a strong liability case (although this last reason appears to be somewhat of a make-weight). They divide as to whether or not intent can ever be relevant to a non-infringement defense.

 Here the "Quantum dilemma" is raised by the submission of attorney opinion letters *in camera.* The issue of damages has already been bifurcated, there appears to be no reason why legal advice would be relevant to any issue other than willfulness, and plaintiff's liability case has taken a real hit from this court's *Markman* construction. Finally, we think there is a basis for believing that an "intent" issue mixed up with an infringement issue will have a tendency to confuse and possibly prejudice the jury, without any real relevant evidence benefit.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 2

Not Reported in F.Supp.                                                    **Page 6**
Not Reported in F.Supp., 1991 WL 340569 (D.Or.), 22 U.S.P.Q.2d 1475
**(Cite as: 1991 WL 340569 (D.Or.))**

**c**

United States District Court, D. Oregon.
AVIA GROUP INTERNATIONAL, INC., Plaintiff
and Counterdefendant,
v.
NIKE, INC., Defendant and Counterclaimant
Civ. No. 91-326-JU.

Nov. 21, 1991.
Magistrate's Order Sept. 17, 1991.
Daniel H. Skerritt, Portland, Or., for Avia Group Int'l,
Inc.

Peter H. Koehler, Jr., Portland, Or., for Nike, Inc.

ORDER

PANNER, District Judge.

*1 Pursuant to 28 U.S.C. § 636(b)(1)(A) and
Fed.R.Civ.P. 72(a), Magistrate Judge George E. Juba
ruled on September 17, 1991. Plaintiff has requested
review of that ruling. "Pretrial orders of a magistrate
judge under § 36(b)(1)(A) are reviewable under the
'clearly erroneous and contrary to law' standard; and
they are not subject to *de novo* determination as are a
magistrate judge's proposed findings and
recommendations under § 636(b)(1)(B)." *Merritt v.
International Bhd. of Boilermakers,* 649 F.2d 1013,
1017 (5th Cir.1981) (per curiam). *Accord, United
States v. Saunders,* 641 F.2d 659, 663-64 n. 1 (9th
Cir.1980), *cert. denied,* 452 U.S. 918 (1981).

Plaintiff has not demonstrated that the order is either
clearly erroneous or contrary to law.

Magistrate Judge Juba's order dated September 17,
1991, is AFFIRMED.

IT IS SO ORDERED.

ORDER

JUBA, United States Magistrate:

*INTRODUCTION*

This is an action for patent infringement brought by
plaintiff, AVIA Group International, Inc. ("Avia")
against defendant, Nike, Inc. ("Nike"). Avia is a
Delaware corporation having its principal place of
business in Portland, Oregon. Nike is an Oregon
corporation having its principal place of business in
Beaverton, Oregon. This court has jurisdiction over
the subject matter of this action pursuant to 28 U.S.C. §
1338(a). Venue is proper in the District of Oregon
under 28 U.S.C. §§ 1391(c) and 1400(b).

Avia charges Nike with infringement of Avia's U.S.
Patent Nos. 4,372,058 ("the '058 Patent"); 4,741,114
("the '114 Patent"), and 4,449,307 ("the '307 Patent").
Avia requests preliminary and permanent injunctive
relief, damages, treble damages for willful
infringement, and reasonable attorneys' fees and costs.
Avia has demanded a trial by jury of all issues.

Nike denies any allegations of infringement on its part
and asserts affirmative defenses challenging the
validity and enforceability of the three Avia Patents.
Nike also asserts counterclaims charging Avia with
infringement of Nike's U.S. Patent Nos. 4,439,936
("the '936 Patent") and 4,562,651 ("the '651 Patent").
In the counterclaims, Nike requests an injunction,
damages, treble damages for willful infringement, and
attorneys' fees and costs. Nike has also demanded a
jury trial.

Defendant Nike has brought this motion for separate
trials of the issues of liability and damages, separate
trial to the court of the issues of enhancement of
damages under 35 U.S.C. § 284 and awarding of
attorneys' fees under 35 U.S.C. § 285, and a stay of
discovery on enhanced damages and attorneys' fees.

*STANDARDS*

F.R.Civ.P. 42(b) provides in relevant part:
  The court, in furtherance of convenience or to
  avoid prejudice or when separate trials will be
  conducive to expedition and economy, may order a
  separate trial ... of any separate issue ... or issues,
  always preserving inviolate the rights of trial by
  jury as declared by the Seventh Amendment to the
  Constitution or as given by a Statute of the United
  States.
*2 Bifurcation of trial liability and damages issues is
to be decided on a case-by-case basis at the informed
discretion of the trial judge. *Lis v. Robert Packer
Hospital,* 579 F.2d 819, 824 (3rd Cir.1978), *cert.
denied,* 439 U.S. 955 (1978). The trial court has
broad discretion to deny or grant separate trials under
F.R.Civ.P. 42(b). *Davis & Cox v. Summa Corp.,* 751
F.2d 1507, 1517 (9th Cir.1985). Notwithstanding this
broad discretion, a court should not routinely order
separate trials. *Keyes Fibre Co. v. Packaging Corp. of
America,* 763 F.Supp. 374, 375-376 (N.D.Ill.1991).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### DISCUSSION

A. *The Issues of Liability Should Be Tried Separately From and Prior to the Issues of Damages.*

A leading patent infringement case notes that although a normal law suit seldom requires bifurcation, "the issues of validity, title, infringement, and damages in patent and copyright cases may be separately tried, unless this course will inconvenience the court or seriously prejudice the rights of some of the parties." *Swofford v. B & W, Inc.,* 34 F.R.D. 15 (S.D.Tex.1963), *aff'd,* 336 F.2d 406, 415 (5th Cir.1964).

1. *Separate Trials Will Promote Judicial Economy and Efficiency.*

Currently five patents are at issue in this case, and there are at least eight allegedly infringing products. Defendant's Memorandum, Page 5. Through highly technical proof, the jury will be required to interpret the patents and the allegedly infringing products. Evidence regarding damages may also be complex and involved with the potential for calculations of reasonable royalties and lost profits.

A separate trial on liability will likely result in a simplification of damage issues or the elimination of such an inquiry altogether. Should the jury find any of the patents invalid, unenforceable, or not infringed, no damages inquiry need be presented for those patents nor for any non-infringing product. Furthermore, a jury finding on liability may encourage settlement of the damages issue and thereby eliminate the need for a second trial.

2. *The Issues of Liability and Damages are Substantially Distinct To Permit Separate Trials.*

An important limitation under F.R.Civ.P. 42(b) is that the issues to be tried must be sufficiently distinct and separable such that separate trials will not result in overlap. *Swofford,* 336 F.2d at 415. Here the liability issues will require proof of the specifics of the invention, the validity of the patent, and the structure and operation of the allegedly infringing product. The damages issue is substantially different and will require proof of sales, costing factors, profit levels and offsetting costs.

Plaintiff contends that the issue of willfulness will overlap under both liability and damages and therefore result in violation of the Seventh Amendment. The Ninth Circuit has unequivocally asserted, "In determining the question of infringement, the desire or intent to infringe a patent is *irrelevant.* However intent is crucial to the imposition of increased damages." *Wilden Pump & Engineering Co. v. Pressed & Welded Products Co.,* 655 F.2d 984, 989 (9th Cir.1981) (emphasis added) (citations omitted). Because intent is irrelevant to a determination of patent infringement, there is no overlap concerning willfulness between the issue of liability and damages.

*3 Although an overlap regarding evidence of the "commercial success" of the products is likely to occur, this court is not convinced that such an overlap is great enough to justify denial of bifurcation. One court granting separate trials for liability and damages in a patent infringement dispute explains, "The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and a big seller." *Paine, Webber, Jackson & Curtis v. Merrill Lynch,* 587 F.Supp. 1112, 1116 (D.Del.1984).

Plaintiff also contends that defendant's request for bifurcation is premature because discovery has just commenced. It is not uncommon, however, for courts to bifurcate issues of liability and damages before substantial discovery has occurred and there is time to stay discovery of damages. *See, e.g., Giro Sport Design, Inc. v. Pro-Tec, Inc.,* 10 U.S.P.Q.2d 1863 (N.D.Cal.1989); *Eaton Corp. v. Auburn Gear, Inc.,* 8 U.S.P.Q.2d 1373 (N.D.Ind.1988).

3. *Plaintiff Will Not Be Prejudiced by Separate Trials.*

Separate trials only violate the Seventh Amendment when they involve *both* overlapping issues *and* different juries. *Paine, Webber,* 587 F.Supp. at 1116 (emphasis in original). Because this court has found no substantial overlap between the issues of liability and damages, there is no Seventh Amendment violation.

B. *There Is No Right to a Jury Trial On The Issue of Enhancement of Damages and Awarding Attorneys' Fees.*

35 U.S.C. § 284 provides that the court may increase damages up to three times the amount found or assessed in patent infringement cases. 35 U.S.C. § 285 allows the court to award reasonable attorneys' fees to the prevailing party in an exceptional case. After both a detailed analysis of the language of 35 U.S.C. § 284 and prior patent case law, the leading case on this issue

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

held that there is no constitutional right to a jury trial on issues under either § 284 or § 285. *Swofford,* 336 F.2d at 411-414. *See, also White v. Mar-Bel, Inc.,* 509 F.2d 287, 292 (5th Cir.1975) (jury's finding that compensatory damages should be trebled is advisory only). Therefore the issues of enhancement of damages and awarding of attorneys' fees must be presented to the court in a separate trial.

C. *Discovery of Attorney-Client Privileged Information and Attorney Work-Product Related to Enhanced Damages and Attorneys' Fees Shall Be Stayed Until After a Determination of Liability.*

The Federal Circuit has asserted that when a party charged with patent infringement fails to produce exculpatory opinion of counsel, the court may infer that the party failed to obtain such an opinion or that the opinion advised against the party's continued use of its product. *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1672-73 (Fed.Cir.1988). A party may be forced to waive the attorney-client privilege and the work product immunity in order to defend against a charge of willful infringement.

*4 Because willfulness is not relevant to the issue of liability, Nike's request to stay all attorney-client privileged information and attorney work-product related to willfulness until after a determination of liability is reasonable. Nike will be unfairly prejudiced if it is required to divulge the contents of its private communication with counsel prior to a determination on liability because such communications typically discuss legal theories and strategy. The rationale for staying privileged information or attorney work product does not extend to a stay of all discovery relating to enhanced damages or awarding attorneys' fees. Therefore, discovery of attorney-client privileged information and attorney work product relating to enhanced damages and attorneys' fees is stayed until after a determination of liability.

*CONCLUSION*

Defendant's motion for separate trials of the issues of liability, damages, enhanced damages and attorneys' fees and for a stay of discovery related to willfulness (docket # 13) is GRANTED. Separate jury trials for the issues of liability and damages will be held. After these trials a separate court trial on the issue of enhanced damages and attorneys' fees will be held. Discovery related to willfulness is stayed until after a determination of liability, but this stay is limited to attorney-client privileged information and attorney work product.

Not Reported in F.Supp., 1991 WL 340569 (D.Or.), 22 U.S.P.Q.2d 1475

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 3

Slip Copy
Slip Copy, 2005 WL 1766369 (N.D.Ill.)
**(Cite as: 2005 WL 1766369 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
**MORTON** GROVE PHARMACEUTICALS, INC.
v.
**PAR** PHARMACEUTICAL COMPANIES, INC. and
**Par** Pharmaceutical, Inc. Defendants.
No. 04 C 7007.

July 22, 2005.

*MEMORANDUM OPINION AND ORDER*

KEYS, Magistrate J.

**\*1** In 2003, Morton Grove Pharmaceuticals ("MGP") filed an Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration, seeking approval for a generic version of Bristol-Myers Squibb's Megace(R) megestrol acetate oral suspension, an appetite enhancing composition used to treat anorexia, cachexia and AIDS-related weight loss. On May 7, 2004, counsel for Pharmaceutical Resources, Inc. [FN1] and Par Pharmaceutical, Inc. (collectively referred to as "Par") wrote to MGP, advising that Par owned "all right and interest" in four United States Patents--namely, U.S. Patent No. 6,028,065 (the '065 Patent), U.S. Patent No, 6,268,356 (the '356 Patent), U.S. Patent No. 6,593,318 (the '318 Patent), and U.S. Patent No. 6,593,320 (the '320 Patent)--that describe and claim megestrol acetate oral suspensions, their use and method of manufacture, and therefore might be relevant to MGP's product. In its letter, Par asked MGP to provide certain information about its generic product so that Par could determine whether MGP's product infringed any of the four patents; Par also urged MGP not to launch its product until Par had a chance to make that determination.

> FN1. Counsel for Par has advised the Court that, as of May 27, 2004, Pharmaceutical Resources Inc. has changed its name to Par Pharmaceutical Companies, Inc.

MGP apparently chose not to provide Par with the requested information. Instead, on November 1, 2004 (the same day the FDA approved its ANDA), MGP filed this lawsuit, seeking a declaratory judgment that it had not infringed, does not infringe and will not infringe any of the four patents identified in Par's May 7 letter. MGP also sought a declaration that the claims of the '065 Patent, the '356 Patent, the '318 Patent, and the '320 Patent are invalid and unenforceable because of certain alleged instances of inequitable conduct during the prosecution of one or more of the patents at issue.

Par answered the complaint and filed a counterclaim, alleging that MGP's product does, in fact, infringe the '318 Patent. Par also alleged willful infringement of the '318 Patent, intentional interference with prospective economic advantages, and unjust enrichment. Par's counterclaim alleged infringement of just the '318 Patent; it did not allege that MGP had infringed any claim of the '065 Patent, the '356 Patent, or the '320 Patent. MGP answered Par's counterclaims, denying any wrongdoing and claiming that the claims of the '318 Patent are invalid and unenforceable.

On January 11, 2005, the district court entered a preliminary discovery order providing, among other things, that the issue of willfulness would be bifurcated and "considered only if, and after, liability is established"; the order similarly tabled discovery on this issue until after liability was resolved. *See* Preliminary Discovery Order, ¶ 1. The court also deferred the inequitable conduct issue and ordered that "no discovery shall take place with regard thereto until after the issue of liability has been determined." *Id.*, ¶ 2. The court's order further provided that fact discovery would close on June 14, 2005, and that expert discovery would begin thereafter. *See* Minute Order entered January 11, 2005.

**\*2** The court's January 11, 2005 order also required Par to prepare a claim chart, identifying which claims of which patents it alleges MGP is infringing. Par did so on February 25, 2005. In its chart, Par argued that MGP's product literally infringes at least claims 41, 42, 47, 48, 49, 52, 53, and 59 of the '318 Patent--all of which disclose a particular pharmaceutical composition--and it attempted to show the basis for its arguments as to each claim. Par also argued, in its claim chart, that MGP's product literally infringes at least claims 1, 2, and 6 of the '320 Patent, which together disclose a method of preparing a particular pharmaceutical composition. Par also argued, in its claim chart, that MGP's product literally infringes at least claims 1, 2, 3, 4, and 14 of the '065 Patent, which together disclose a particular composition. Par also stated that, although it had, as yet, no basis to allege direct infringement of the '356 Patent, MGP's product might also induce or contribute to infringement by doctors and other healthcare providers.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Significantly, Par specifically stated in its claim chart that it "shall move the Court for leave to file an Amended Supplement Answer and Counterclaim alleging infringement of the '320 Patent and any other related claim shortly." *See* Counterplaintiff's Claim Chart, p. 7. Par said the same thing in the section of the chart dealing with the '065 patent.

Pursuant to the January 11, 2005 order and in response to Par's claim chart, on March 28, 2005, MGP prepared its own claim chart. In it, MGP noted that Par had not asserted claims of infringement with respect to the '320 and '065 patents, *see* Counterdefendant's Claim Chart, p. 1, but it nonetheless responded to Par's infringement claims as to those patents.

On April 18, 2005, Par advised MGP that it planned to amend its answer and counterclaim, and it sent MGP a copy of its draft amended pleading. In response, MGP advised Par that it intended to amend its Complaint; MGP also asked Par to agree to a 30-day extension of discovery. Par indicated that it did not object in principle to MGP amending its complaint, but it refused to consent to a 30-day extension of discovery; instead, it agreed to extend discovery for two weeks. MGP rejected this offer and advised Par that it would consent to Par's amendment only if Par agreed to a 60-day extension of discovery; Par offered three weeks. Apparently convinced that MGP was not going to agree to the amendment, on May 27, 2005, Par filed its motion seeking leave of Court to file the amended answer and counterclaim, which the district judge then referred to this Court.

Par's proposed amendment includes, in addition to the claims of infringement and willful infringement of the '318 Patent, intentional interference with prospective economic advantages and unjust enrichment, claims of infringement and willful infringement of the '320 Patent, and infringement and willful infringement of the '065 Patent. Despite this, Par argues that the new claims involve matters that are already at issue in the case and should not require any extension of the discovery schedule.

**\*3** MGP objects to Par's request to amend its counterclaim, arguing that amendment is inappropriate at this late stage, especially because Par has stalled and failed to meet its obligations concerning discovery involving the existing claims and counterclaims. MGP argues that, if Par is allowed to amend its counterclaim, MGP should at least be given a 60-day extension of discovery so that it can properly address Par's deficiencies with regard to discovery on the current

claims, as well as discovery on the claims Par seeks to add. MGP also seeks leave to amend its complaint to beef up the inequitable conduct allegations and to add a claim alleging violations of Section 2 of the Sherman Act.

"Leave to amend a pleading is to be 'freely given when justice so requires.' " *Crest Hill Land Development, LLC v. City of Joliet,* 396 F.3d 801, 804 (7th Cir.2005) ; Fed.R.Civ.P. 15(a). "Even so, leave to amend is not automatically granted, and may be properly denied at the district court's discretion for reasons including undue delay, the movant's bad faith, and undue prejudice to the opposing party." *Crest Hill,* 396 F.3d at 804 (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). In *Crest Hill,* for example, the district court denied the defendant the opportunity to amend its answer because the request to amend came five months after the defendant had filed its original answer and one month after discovery had closed, and because the amendments the defendant sought raised for the first time a new argument; the Seventh Circuit affirmed that decision. *Id.*

In this case, Par filed its original answer and counterclaim on December 6, 2004, and sought leave to amend on May 23, 2005--a little over five months later. Additionally, although Par filed its motion for leave to amend before the close of discovery, it didn't beat the clock by much: discovery closed less than a month later, on June 14, 2005, before the motion was even briefed. None of which is to say that Par should necessarily be denied the opportunity to amend; the timing of the motion simply means that the Court must take a close look at whether the issues raised in the amended answer and counterclaim have truly been explored and developed in discovery and whether MGP will truly be surprised and prejudiced by the amendment.

Before analyzing the particulars under Rule 15, the Court must lay out a bit of background about the particular allegations raised in the complaint and counterclaim. With respect to the patents at issue in this lawsuit, it is helpful to know that all four bear the same title and recite the same abstract; each is entitled "flocculated suspension of megestrol acetate," and each discloses "[a] novel oral pharmaceutical composition in the form of a stable flocculated suspension in water ... comprising: megestrol acetate; at least one compound selected from the group consisting of polyethylene glycol, propylene glycol, glycerol, and sorbitol; and a surfactant, wherein polysorbate and polyethylene glycol are not simultaneously present." *See* U.S. Patent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 6,593,318B2, abstract (issued July 15, 2003); U.S. Patent No. 6,593,320B2, abstract (issued July 15, 2003); U.S. Patent No. 6,028,065, abstract (issued Feb. 22, 2000); U.S. Patent No. 6,268,356 B1, abstract (issued July 31, 2001). And all of the patents are related: the '356 Patent states on its face that it is a continuation of the '065 Patent, *see* U.S. Patent No. 6,268,356B1, col. 1, lines 6-7; the '318 Patent states on its face that it is a continuation of the '356 Patent, which was, in turn, a continuation of the '065 Patent, *see* U.S. Patent No. 6,593,318B@, col. 1, lines 6-9; and the '320 Patent states that it "is a division of application Ser. No. 09/757,261, filed Jan. 9, 2001, now allowed, which is a continuation of ... U.S. Pat. No. 6,268,356B1, issued Jul. 31, 2001, and which is a continuation of ... U.S. Pat. No. 6,028,065, issued Feb. 22, 2000, all in the name of N. Ragunathtan, et al., entitled 'Flocculated Suspension of Megestrol Acetate." ' U.S. Patent No. 6,593,320 B2, col. 1, lines 6-14.

*4 And the patents disclose inventions that are related. The '065 Patent discloses, in 19 claims, several different oral pharmaceutical compositions-- each in the form of a stable flocculated suspension in water. *See* U.S. Patent No. 6,028,065, col. 7, line 23--col. 8, line 49. The '356 Patent claims, in just one claim, a method of treating a neoplastic condition that consists of administering the particular oral pharmaceutical composition disclosed in claim 1 of the '065 Patent. *See* U.S. Patent No. 6,268,356B1 col. 8, lines 14-32. The '318 Patent appears to combine and supplement the two previous patents to disclose, in 68 claims, various pharmaceutical compositions and methods for using those compositions to treat a neoplastic condition. *See* U.S. Patent No. 6,593,318B2, col. 7, line 43--col. 12, line 11. Finally, the '320 Patent claims, in 10 claims, a method of preparing the stable flocculated suspension compositions. *See* U.S. Patent No. 6,593,320B2, col. 8, lines 26-58.

With this background in mind, the Court considers the parties' arguments concerning the appropriateness of Par's requested amendment. Turning first to the question of "undue delay," although it is true, as MGP points out, that Par's request to amend came late in the day--just a few weeks before fact discovery was set to close--there is nothing in the record to suggest that this delay was "undue" or that it was in any way the result of bad faith on Par's part. Par has represented that, when it filed its original answer and counterclaim, it lacked sufficient information to allege infringement of the ' 320 and '065 patents because it had only MGP's product label at that time, and therefore did not yet know the concentrations of ingredients in MGP's product or the method MGP used to manufacture its product. *See* Par's Brief in Reply to MGP's Objection to Par's Motion for Leave to File an Amended Answer and Counterclaims, p. 4. The Court has no reason to doubt this explanation, which would suggest that Par's delay was reasonable, not undue.

The Court next considers whether MGP will be unduly prejudiced--not just prejudiced--by Par's amendment. MGP argues that it will be prejudiced because the proposed amendment, which alleges infringement of two additional patents, will dramatically expand the scope of the case at a point after fact discovery has already closed. And, if one did not fully understand the substance of what is claimed in the various patents, this argument might at first blush seem compelling. But, as is evident from the background set out above, to the extent the new counterclaims expand the scope of this case, they do so only minimally. MGP's complaint, which seeks a declaration of non-infringement as to all four patents, puts at issue the '320 and the '065 patents, as well as the specific question of whether MGP's product infringes those patents. And, given that the '318 Patent is a continuation of the '065 Patent, and given that the '320 Patent discloses a method of preparing the compositions disclosed in the other patents, the issues involved in proving that MGP has infringed (or not infringed) the '318 Patent would seem to dovetail significantly, if not entirely, with the issues involved in proving that MGP has infringed the '065 and the '320 Patents.

*5 Additionally, although it is true that Par's request for leave to amend was filed just before fact discovery closed, MGP was aware that the amendment was coming down the pike several months earlier, while discovery was in full swing. Par expressly told MGP on several occasions that it intended to amend its counterclaim. And, indeed, in its complaint, MGP conceded that it was "under a reasonable apprehension" that Par would sue it for infringement of all four patents. *See* Complaint, ¶ 22. And that apprehension was continually fed by Par's words and actions, culminating in the formal request to amend filed in May.

Moreover, even though the claims of infringement as to the '320 and the ' 065 patents were not formally a part of Par's case, the discovery undertaken by the parties to date has encompassed not just the '318 Patent , but the other patents as well. For example, MGP's First Set of Rule 34 Requests to Par includes numerous requests for information about "the patents-in-suit," which MGP defined as the '318 Patent, the '065 Patent,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the '356 Patent and the '320 Patent. Similarly, Par's claim chart, which sets forth the claims that are alleged to be infringed and the basis for the claim of infringement, includes claims of the '320 Patent and the '065 Patent, as well as the '318 Patent. And MGP's claim chart, prepared and submitted in response to Par's claim chart, also covers certain claims of the '320 Patent and the '065 Patent, as well as the '318 Patent. In short, the parties have not limited themselves, at least on the infringement question, to the '318 Patent.

In light of all of this--the fact that MGP knew or should have known that the request to amend was coming, the fact that the parties have engaged in fact discovery concerning all of the patents, not just the patent referenced in Par's original counterclaim, and the fact that expert discovery has yet to begin--the Court finds that MGP will not suffer undue prejudice if Par is permitted to amend its counterclaim. Under the circumstances, especially given that leave to amend should be freely granted, the Court finds that Par is entitled to amend its answer and counterclaim.

The Court next considers whether allowing the amendment warrants a re-opening of fact discovery. As explained, the claims at issue are already a part of MGP's case-in-chief, and the parties' discovery to date--which has been limited to the issues of infringement and damages--has included the '320 Patent and the '065 Patent. In its requests to date, MGP asked for discovery on the prosecution history and file history of all four patents, not just the '318 patent. MGP asked for discovery on any litigation and opposition as to validity, enforceability and infringement of any of the four patents, not just the '318 patent. MGP asked for discovery concerning Par's litigation with other potential infringers, including Alpharma, Teva, and Roxane, concerning any of the four patents, not just the '318 patent. MGP asked for all documents and things concerning any licensing agreements related to any of the four patents, not just the '318 patent. In short, it does not appear that MGP tailored or limited its discovery requests based upon Par's omission of the '320 patent and the '065 patent from its original counterclaims.

*6 That finding is buttressed by the draft discovery requests MGP has submitted to support its objection to the amendment, which purport to lay out the specific discovery MGP says it will need if Par is permitted to amend. MGP claims for example that, if Par is permitted to add infringement claims on the '320 and the '065 patents, it must be permitted to ask Par, via discovery, to admit that the megestrol acetate products

manufactured by other competitors--namely, Teva, Roxane Laboratories and Alpharma--do not infringe the pertinent claims of these patents. See MGP's First Set of Rule 36 Requests for Admission (Proposed), Request Numbers 1--24 (attached as Exhibit 1 to MGP's Response in Support of its Objection to par's Motion for Leave to File an Amended Answer and Counterclaims). Yet it does not appear that MGP asked Par to admit the same things with respect to the '318 patent. And, given the way MGP styled the rest of its discovery, if it had asked Par about these products, it would have asked the question for each of the four patents, not just the '318 patent.

Similarly, MGP claims that it must now be permitted to pose an interrogatory asking Par whether it is contending that the products manufactured by these competitors are "non-acceptable" substitutes, and, if it is contending as much, to provide a complete, detailed basis for this contention. See MGP's Third Set of Rule 33 Interrogatories to PRI and PAR (Proposed), Interrogatory No. 22 (attached as Exhibit 2 to MGP's Response in Support of its Objection to par's Motion for Leave to File an Amended Answer and Counterclaims). But this interrogatory is not limited to the '320 and '065 patents, and was therefore just as relevant under the original counterclaim as it is under the amended counterclaim; if MGP thought it needed this information, it could have--and should have--asked for it before fact discovery closed. MGP may not use the amendment of pleadings to correct its mistakes or oversights in discovery.

MGP has argued that Par's amendments introduce new issues relating to damages, and that it needs additional discovery from Par and from third parties to address those new issues. In particular, MGP argues that the new claims change "the scope of discovery as to the presence or absence of acceptable non-infringing substitutes." MGP's Response in Support of its Objection to Par's Motion for Leave to File an Amended Answer and Counterclaims, p. 2. But given the substance of the claims of the '318 patent and the '320 and the '065 patents, the Court does not see why this would be the case; certainly, MGP has not explained the point.

Moreover, with respect to damages, Par has indicated that it will not be seeking separate recovery of lost profits for infringement of each asserted patent, but that it intends to treat lost profit damages for infringement of all its patents together. This representation--which will bind Par going forward--undermines MGP's argument on the need for additional fact discovery on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

damages, at least as to lost profit damages. And, with respect to the remaining damages components, Par has represented that those issues will be addressed during expert discovery, which has not yet begun, and MGP has offered nothing to suggest that this is not the case. MGP's concerns about "acceptable non-infringing substitutes" would seem to be more appropriately explored through expert discovery, than fact discovery anyway.

**\*7** Finally, the Court considers whether MGP should be permitted to amend its complaint to include its "counterclaim-in-reply" allegations and to add a claim for violation of Section 2 of the Sherman Act. The Court will allow the amendment, in part, because Rule 15 applies with equal force to MGP and Par, in part because MGP should be able to conform its allegations in reply to Par's new counterclaims, *see Pogue v. Allied Products Corp.,* No. 89 C 3548, 1989 WL 111854, at *4 (N.D.Ill. Sept.20, 1989), and in part because Par has not opposed the motion.

### Conclusion

For the reasons set forth above, the Court grants Par's motion for leave to amend its answer and counterclaim, denies MGP's motion to extend discovery, and will permit MGP to amend its complaint.

Slip Copy, 2005 WL 1766369 (N.D.Ill.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 4

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21800981 (S.D.N.Y.)
(Cite as: 2003 WL 21800981 (S.D.N.Y.))

C

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
**PLASMANET**, INC., Plaintiff,
v.
**APAX** PARTNERS, INC., f/k/a/ Patricof & Co.
Ventures, Inc., Traffix, Inc., f/k/a
Quintel Communications, Inc., Jeffrey L. Schwartz,
Robert Machinist, Thomas
Hirschfeld, and Alan J. Patricof, Defendants.
No. 02 Civ.9290 BSJ THK.

Aug. 5, 2003.

Owner of patent on lottery gaming system brought infringement action against competitor who counterclaimed for declaratory judgment that patent was not infringed, was invalid, and was unenforceable. Upon competitor's motion for order allowing completion of pretrial discovery on issue of liability and damages and staying of discovery on competitor's reliance of advice of counsel as defense to willful infringement claim, the District Court, Theodore H. Katz, United States Magistrate Judge, held that: (1) competitor's motion would be construed as motion for protective order, and (2) prejudice to competitor far outweighed any prejudice to patent owner by deferring discovery on competitor's reliance on advice of counsel, and warranted staged discovery order.

Motion granted.

West Headnotes

[1] Patents ☞292.4
291k292.4
Motion filed by competitor in patent infringement action, seeking order allowing partial completion of discovery and staying of discovery regarding advice-of-counsel defense, would be construed as motion for protective order, pursuant to which court was required to balance impact of deferral of discovery on interests of justice by protecting competitor from undue oppression or burden, against resulting prejudice to patent owner caused by undue expense, inefficiency, or delay. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

[2] Patents ☞292.4
291k292.4

Balance of interests between competitor that would have to choose either to waive attorney-client privilege to protect itself against finding of willful infringement or to maintain privilege at risk of being found to be willful infringer, compared to alleged prejudice that would result to patent owner from stay of discovery on competitor's reliance advice-of-counsel defense, warranted order allowing staged discovery to enable competitor to avoid waiver of attorney-client privilege; patent owner would not be prejudiced by deferring discovery relating to competitor's reliance on attorney's opinion because discovery would continue as to issues of damages and willfulness, and deferral of discovery on limited issue would not result in substantial delay. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

MEMORANDUM OPINION AND ORDER

KATZ, Magistrate J.

*1 This patent infringement action has been referred to this Court for general pretrial supervision and reports and recommendations on various dispositive motions. This Opinion and Order addresses a motion brought by two of the Defendants to stay pretrial discovery with respect to a possible advice-of-counsel defense to Plaintiff's claim of willful infringement, until pretrial discovery on all other issues is completed and dispositive motions relating to the validity of Plaintiff's patent and Plaintiff's claim of infringement have been resolved. For the reasons that follow, Defendants' motion is granted. [FN1]

> FN1. Defendants' motion also seeks a bifurcation of the trial on issues of liability and damages, with issues relating to the alleged willfulness of Defendants' infringement of Plaintiff's patent deferred to the damages portion of the trial. This portion of the motion is not addressed, as it rests within the discretion of the trial judge--the Honorable Barbara S. Jones.

BACKGROUND

Plaintiff, Plasmanet, Inc. ("Plasmanet"), alleges willful infringement of its patent--a lottery gaming system and the method of conducting that system in a computer network environment--by Defendants Traffix Inc. ("Traffix") and Jeffrey L. Schwartz ("Schwartz") (hereinafter referred to collectively as "Traffix"). Traffix has brought counterclaims, seeking a declaratory judgment that the patent-in-suit is not infringed, is invalid, and is unenforceable. [FN2] Prior

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to the initiation of this suit, Traffix sought and was provided with a legal written opinion ("the Opinion") from its patent attorneys, as to whether the Traffix GroupLotto website infringes Plaintiff's patent. Traffix may rely on an advice-of-counsel defense to rebut Plaintiff's allegation of willful infringement. However, Traffix seeks to defer its assertion of the advice-of-counsel defense since to do so now would require the complete disclosure of its attorney's Opinion, thus resulting in the waiver of the attorney-client privilege as to its contents. Without staged discovery, in order to avoid disclosing the Opinion and waiving the privilege, Traffix would be required to forego its advice-of-counsel defense.

> FN2. There are pendent state law claims for trade secret misappropriation against all of the Defendants, and for breach of contract only against the Defendants other than Traffix and Schwartz.

To avoid this Hobson's choice, Traffix seeks an order which would first allow for the completion of pretrial discovery on all issues relating to both liability and damages, staying discovery solely on the issue of Traffix's reliance on the Opinion as a defense to willfulness. Traffix intends to then file a motion for summary judgment seeking dismissal of Plaintiff's claims of patent infringement. If that motion is denied, and the case is to proceed to trial, the remaining discovery relating to the Opinion would be conducted in advance of trial. In this way, Traffix would not be required to disclose privileged communications that would reveal its litigation strategies and the opinions of its counsel on issues of liability, which will be the subject of the summary judgment motion.

Plaintiff opposes the motion, arguing that the proposed procedures would be inefficient and would unnecessarily complicate discovery.

## DISCUSSION

This Court need not address much of Plaintiff's opposition to the motion because, as discussed, the issue of bifurcation of the trial will be addressed separately by Judge Jones, if necessary. Moreover, the thrust of Plaintiff's objections to the proposed discovery plan is based upon a misunderstanding of Traffix's motion. Traffix is not proposing to stay all discovery on damages and willfulness. It is proposing the deferral of only that discovery which relates to the Opinion.

**\*2** [1] Because the Court addresses only that portion

of the motion relating to discovery, the Court treats Traffix's motion as one for a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. [FN3] Thus, the Court balances on the one hand, whether the deferral of discovery with respect to the Opinion serves the interests of justice by protecting Traffix from undue oppression or burden, and, on the other hand, whether by deferring the discovery Plaintiff will be prejudiced in any way, or whether undue expense, inefficiency, or delay would result.

> FN3. By contrast, Traffix's motion to bifurcate the trial is governed by Fed.R.Civ.P. 42(b).

[2] The interests Traffix seeks to protect are the work product of their counsel and the attorney-client privilege with respect to communications in and about the Opinion. While acknowledging that invocation of the defense of advice-of-counsel places in issue privileged communications between Traffix and its counsel, Traffix relies on a line of cases which recognizes that patent cases are particularly amenable to bifurcation on issues of liability and damages, and that such a course is often advisable in order to avoid the prejudice of requiring a defendant to make a choice, early in the litigation, about whether to invoke advice-of-counsel as a defense to willfulness or to waive the attorney-client privilege. The seminal case on this subject is *Quantum Corp. v. Tandon Corp.,* 940 F.2d 641 (Fed.Cir.1991). In the *Quantum* case, the Federal Circuit stated:

> An accused infringer ... should not, without the trial courts's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts should thus give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court, *in camera,* reveal that the defendant is indeed confronted with this dilemma.

*Id.* at 1762.

Consistent with the *Quantum* court's recommendation, this Court has conducted an *in camera* review of the Opinion and concludes that Defendants are indeed confronted with a so-called *Quantum* dilemma. [FN4] Disclosure of the Opinion would prejudice Traffix with respect to the issue of liability by revealing its attorney's thinking, strategy and opinions.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21800981, *2 (S.D.N.Y.))

FN4. Contrary to Plaintiff's counsel's contention, the submission of the Opinion for *in camera* review is not an improper *ex parte* disclosure of facts and argument to the Court regarding the issue of infringement. First, this Court will not be deciding the merits of any claims of infringement and does not rely on the substantive views expressed in the Opinion for resolution of the instant motion. Moreover, courts regularly review privileged communications *in camera* in order to assess whether the privilege has been properly invoked. To require disclosure of such communications to opposing counsel would result in a waiver of the privilege. Finally, *in camera* review where a *Quantum* issue is presented is routine. *See, e.g., Valois of America, Inc. v. Risdon Corp.,* No. 3:95 CV 1850, 1998 WL 1661397, at *4 (D.Conn.1998) ("It is clear from *Quantum* and its progeny, that before bifurcation, the Court must conduct an *in camera* review of the privileged attorney-client communications."); *Neorx Corp. v. Immunomedics, Inc.,* 28 U.S.P.Q.2d 1395, 1396 (D.N.J.1993); *Robotic Vision Sys., Inc. v. View Engineering, Inc.,* No. CV 96-2288, 1997 WL 809679, at *3 (C.D.Cal.1997).

Moreover, the Court cannot discern any prejudice to Plaintiff by deferring discovery relating to the Opinion. Contrary to Plaintiff's concern, Traffix is not proposing to stay all discovery on the issue of damages and willfulness. It merely seek to defer discovery relating to reliance on the Opinion. Therefore, Plaintiff's concern that great inefficiency would result because witnesses would have to be deposed twice in order to explore facts relevant to various issues, is misplaced. For example, Plaintiff contends that Defendant Schwartz will be deposed on issues relating to liability, invalidity, and damages, as well as whether he copied a confidential business roadmap that he obtained from Plaintiff. It contends that this willful act is central to the claim of trade secret misappropriation. Such copying can also be evidence of non-obviousness and commercial success, matters relevant to the validity of the patent. Plaintiff fears that it would be required to depose Schwartz twice, sorting out issues of liability, damages and willfulness, and that the subject of each deposition would become a "complete tangle," because these subjects are relevant to various issues in the case, not just damages. *See* Plasmanet's Opposition to the Traffix Defendants' Motions to Bifurcate ("Pl.'s Opp."), at 2-3. However, there is no reason for such concern. Traffix has no objection to discovery

proceeding on these topics. It merely seeks to postpone discovery on its reliance on the Opinion, as a defense to an allegation of willful patent infringement.

**\*3** Under Traffix's proposal, discovery relating to the liability issues-- patent infringement, invalidity, and theft of trade secrets--will be conducted concurrently with discovery relating to damages. It is then Traffix's intention to move for summary judgment on the issues of infringement and validity. Should its motion be granted, there will be no need for further discovery on the Opinion, and therefore no need to waive the attorney-client privilege. Should the motion be denied, only a very limited additional amount of discovery will be required for the case to be ready for trial. Although there may be the need for a second deposition of a representative of Traffix to address the issue of reliance on the advice of counsel, the Court anticipates that such a deposition would be focused and relatively brief.

Under these circumstances, the Court concludes that the prejudice to Traffix by being required to disclose the Opinion far outweighs any prejudice to Plaintiff by deferring discovery on reliance on the Opinion. Moreover, deferring discovery on this limited issue until after resolution of Traffix's summary judgment motion will not result in any substantial delay or inefficiency. Accordingly, Traffix's motion to stay discovery on its reliance on the Opinion until after the resolution of dispositive motions is granted. [FN5]

FN5. Contrary to Plaintiff's suggestion, Traffix has not waived the attorney-client privilege by simply articulating its dilemma or by submitting the Opinion for *in camera* review. The whole purpose of the review is to determine whether Traffix will be permitted to preserve the attorney-client privilege by deferring invocation of the advice-of-counsel defense and disclosure of the advice. *See Neorx,* 1993 WL 592531, at *2 ("If defendant chose to assert the advice-of-counsel defense, plaintiff would be entitled to timely discovery of the attorney-client communications. Otherwise, the attorney-client privilege would be preserved.") There has been no disclosure of the actual privileged communication, only notification of its existence.

SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 21800981 (S.D.N.Y.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 5

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)

**(Cite as: 2002 WL 1901268 (D.Del.))**

▷

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
**ST. CLAIR** INTELLECTUAL PROPERTY
CONSULTANTS, INC., Plaintiff,
v.
**SONY** CORPORATION, **Sony** Electronics, Inc., and
**Sony** Corporation of America,
Defendants.
No. Civ.A.01-557-JJF.

Aug. 16, 2002.
Frederick L. Cottrell, III and Thomas H. Kovach, of Richards, Layton & Finger, Wilmington, Delaware. Ronald J. Schutz, Jake M. Holdreith, Becky R. Thorson, and Carrie M. Smith, of Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, Minnesota, for Plaintiff, of counsel.

Josy W. Ingersoll and Adam W. Poff, of Young Conaway Stargatt & Taylor, L.L.P., Wilmington, Delaware. Sidney David, Joseph S. Littenberg, Jonathon A. David, Jeffrey S. Dickey, and April M. Mayo, of Lerner, David, Littenberg, Krumholz & Mentlik, L.L.P., Westfield, New Jersey, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is a Motion For Bifurcation Of Liability And Damages/Willfulness Issues And For A Stay Of Discovery Regarding Damages/Willfulness Issues (D.I.43) filed by Defendants Sony Corporation, Sony Electronics, Inc., and Sony Corporation of America (collectively "Sony"). For the reasons set forth below, Sony's Motion will be granted in part and denied in part.

I. BACKGROUND

This is a patent infringement action in which Plaintiff St. Clair Intellectual Property Consultants, Inc. (hereinafter "St. Clair") alleges that Sony willfully infringes four of St. Clair's patents by manufacturing, using and selling numerous models of digital camcorders and still cameras. (D.I. 44 at 1). Sony answers these allegations by denying infringement, claiming the patents are invalid, and asserting a laches defense. Sony also asserts counterclaims, including

patent misuse and unfair competition. [FN1] (D.I. 44 at 1).

> FN1. Originally, Sony also pleaded the defense of estoppel. (D.I. 44 at 1). However, Sony has since withdrawn this defense. (*See* D.I. 47 at 1).

On March 28, 2002, after discovery had commenced in this action, the Court issued a decision in *Novartis Pharmaceuticals Corp v. EON Labs Mfg., Inc.,* 206 F.R.D. 396 (D.Del.2002). As a result of the *Novartis* decision, Sony filed the instant Motion (D.I.43) pursuant to Federal Rule of Civil Procedure 42(b), seeking to bifurcate the issues of damages and willful infringement from the other issues in this case.

On July 17, 2002, the Court heard argument on Sony's Motion. During the course of the argument, Sony's counsel represented that Sony intends to rely on opinions of counsel in defense of St. Clair's willfulness claim. (D.I.80). At the close of the parties' arguments, the Court denied Sony's Motion to the extent it pertains to damages, and ordered Sony's counsel to provide the opinion letters Sony intends to rely upon for an *in camera* review. [FN2] (D.I.80).

> FN2. The Court agrees with St. Clair that Sony will not suffer any undue prejudice if the liability and damages issues are not bifurcated.

On August 1, 2002, the Court received Sony's opinion letters, as well as other related documents, and has since reviewed them. This Memorandum Opinion will address whether separation of St. Clair's willfulness claim is warranted in the circumstances of this case.

II. DISCUSSION

Counsel for Sony contends that the discovery required by *Novartis* in the circumstances of this case (i.e. that Sony has elected to present a reliance on advice of counsel defense in response to St. Clair's charge of willfulness, and the fact that Sony's trial counsel authored the legal opinion relied upon) requires that the issue of willfulness be separated for both discovery and trial. (D.I. 44 at 2-4). Specifically, Sony's counsel represents that communications occurred between Sony and its counsel which relate to issues other than willfulness as well as strategies that Sony might undertake with regard to those issues. (D.I. 44 at 2; D.I. 80). According to Sony, in the event the Court fails to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

separate the issue of willfulness, the disclosure of these communications to St. Clair will result in undue prejudice to Sony. (D.I. 44 at 2-4).

In response, St. Clair contends that separation of the willfulness issue is not warranted in this case. (D.I. 45 at 4). Specifically, St. Clair contends that separation would result in delay and wasteful duplication of discovery. (D.I. 45 at 11-13).

**\*2** After reviewing the documents submitted by Sony, the Court finds that undue prejudice could result if these otherwise privileged documents were exchanged and used during the trial of the infringement and validity issues. Neither Sony nor St. Clair had the benefit of the Court's *Novartis* decision when Sony engaged counsel to obtain an infringement opinion. Sony and trial counsel conducted their dialogue without the knowledge that their communications on matters other than infringement could be revealed in litigation. For these reasons, the Court is sensitive to Sony's prejudice claim and will separate willfulness from the other patent issues for both discovery and trial.

III. CONCLUSION

For the reasons set forth above, the Court will grant Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to willfulness and deny Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to damages.

An appropriate Order will be entered.

### ORDER
At Wilmington this 16th day of August, 2002, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Sony's Motion (D.I.43) to bifurcate the issue of willfulness for both discovery and trial is *GRANTED;*
2. Sony's Motion (D.I.43) to bifurcate the issue of damages is *DENIED;*
3. Discovery on the issue of willfulness is *STAYED* pending resolution of the issues of infringement, validity, and damages.

Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2005, the **COMPENDIUM OF UNREPORTED CASES CITED IN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO BIFURCATE LIABILITY AND WILLFULNESS AND STAY DISCOVERY RELATING TO THE WILLFULNESS INQUIRY** was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Joshua R. Rich, Esquire                                    VIA FEDERAL EXPRESS
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


/s/ *John G. Day*
_____
John G. Day