# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

MARYELLEN NOREIKA
302 575 7278
302 425 3011 FAX
mnoreika@mnat.com

October 7, 2005

**BY ELECTRONIC FILING**

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

     Re:     Pharmacia & Upjohn Company LLC v. Sicor, Inc. *et al.,*
               C.A. No. 04-833 (KAJ)

Dear Judge Jordan:

Sicor's letter to the Court, served four hours late and two hours after the close of business, addresses many issues that have been resolved to the fullest extent possible. Although Pharmacia asked Sicor to identify the issues it intended to raise with the Court, Sicor would only respond saying essentially "everything set forth in any of our prior letters to you." Had Sicor been willing to discuss with Pharmacia the specific issues, it would have learned that:

    (i)     Even though most of the foreign prosecution history documents that Sicor seeks were not covered by Sicor's previous requests Pharmacia has already begun collecting them and will be producing them as soon as possible;

    (ii)    Pharmacia has already produced more than 200 pages of its privilege log, expects to produce several hundred more pages log by the close of business on October 10, and is working hard to complete the entire log as quickly as possible.

    (iii)   Pharmacia's two European expert witnesses can be deposed during the same trip to Europe that Sicor will be making to depose the Italian witnesses;

    (iv)   This Court has a long-standing practice that prohibits contention depositions, but Pharmacia will be providing a witness to testify on non-contention issues; and

    (v)    No evidence has been "destroyed."

Sicor seems intent on rushing to Court instead of working out issues between counsel. Moreover, Sicor's letter distorts events that have occurred in this case. As detailed in Exs. A and B, any delays in document production and or taking of testimony from the Italian inventors are due to *Sicor's* lack of diligence. Sicor also misstates what information Pharmacia has already produced in this case as well as Pharmacia's statements about document production.

## I&II. PHARMACIA IS PRODUCING PATENT DOCUMENTS AND PROVIDING THE PRIVILEGE LOG

Sicor argues that Pharmacia has not produced certain "foreign patent prosecution files," but the fact is that Sicor's prior document requests did not encompass the files in question. Pharmacia produced

The Honorable Kent A. Jordan
October 7, 2005
Page 2

what Sicor requested, but not the additional documents that were not covered by Sicor's requests. Now that Sicor has specified what additional files it wants, Pharmacia is in the process of collecting and providing those additional documents.

Sicor originally requested all prosecution files "related to the '285 patent," but apparently failed to recognize that some patents issued to the same inventors and dealing with the same class of pharmaceuticals are not related to the '285 patent. Pharmacia long ago produced the prosecution files related to the '285 patent, but did not produce the other prosecution files which are not related to the '285 patent. Nonetheless, Pharmacia stated in a September 29, 2005 letter that it is collecting those files for production to Sicor. Ex. C. Given that (i) Sicor's first request for the additional files was made on September 13, 2005, (ii) the documents are overseas, and (iii) the files must be screened for privilege, Pharmacia was not able to produce the documents immediately.

Sicor similarly demands production of lab notebooks that contain data related to declarations by Carlo Confalonieri. To the extent such notebooks are in Pharmacia's possession, custody, or control, Pharmacia has produced them. For example, Pharmacia has produced and identified all of the data on which it will rely in relation to Dr. Confalonieri's declarations. *See* Ex. D, pp. 12-18. As Pharmacia has told Sicor, Pharmacia has conducted multiple, diligent, thorough, worldwide searches for additional notebook materials of the inventors, but can find nothing more than what has already been produced.

The majority of the foreign materials (and foreign litigation documents)[1] that Sicor seeks are public documents that Sicor could obtain on its own. Those that are not public record are mostly privileged. Indeed, Sicor's overbroad requests have forced Pharmacia to prepare a privilege log with almost ten thousand entries, which Pharmacia is working to complete. Because of the number of entries and the different languages involved, that process is cumbersome and laborious. Nevertheless, Pharmacia has already produced over 200 pages of its privilege log, and expects to produce more by the close of business on Monday October 10th. Notably, despite complaining to the Court that it has not yet received Pharmacia's privilege log, Sicor has not served Pharmacia with Sicor's own privilege log.

## III.   DEPOSITIONS OF PHARMACIA'S EXPERTS AND MR. BRAD WINTER

The Italian Commissioner offered two sets of dates for the inventors' testimony in Milan: October 24-27 (before the close of discovery) or November 7-10 (after the close of discovery). Sicor's counsel indicated a strong preference for November 7-10 (*see* Ex. E), and Pharmacia agreed to those dates notwithstanding its own preference for the other dates.

Pharmacia's counsel has offered to provide its European experts (Dr. Arcamone and Dr. Beijnen) for depositions in Europe the following week, when no other depositions in the case are scheduled. Dr. Arcamone is an elderly man, and Dr. Beijnen, an employee of a Dutch government agency, is not being personally compensated for his time. Rather than put the experts to the difficulty of transatlantic travel, counsel can depose them during the trip when counsel will already be in Europe for depositions scheduled by Sicor. Indeed, in a September 30, 2005 telephone conference, Sicor's counsel indicated a willingness to adopt this approach.

---

[1]     Sicor indicates its request as being for "all documents relating to Australian and Canadian litigation related to the '285 patent." That is not an accurate recitation of the request, or the nature of the litigation.

The Honorable Kent A. Jordan
October 7, 2005
Page 3

Bradley Winter is situated differently. Prior to Pharmacia's submission of its expert report, Sicor expressed no interest in deposing Mr. Winter (employed by Pfizer (Perth) Pty Limited). Mr. Winter was one of eight Pfizer employees whom Pharmacia's damages expert interviewed in developing his opinion. To the extent that Pharmacia's expert relied upon Mr. Winter's information, that information is set forth fully in the Expert Report and documents produced to Sicor. Only *after* Pharmacia submitted its damages expert's report – indeed, only *after* Pharmacia offered to facilitate Mr. Winter's deposition – did Sicor identify documents and claim that "Mr. Winters [*sic*] also authored (contradicting) correspondence to Sicor that reflects Pharmacia's manufacturing problems ...." These documents were in Sicor's files, but had been withheld from discovery up to that point in time. That is, Sicor's entire argument about deposing Mr. Winter is based on documents that Sicor improperly withheld from discovery until Sicor found it convenient to produce.

Pharmacia has no objection to Sicor interrogating Mr. Winter, and has offered to arrange a telephone deposition of Mr. Winter. But if Sicor wishes to depose Mr. Winter in person, it should pay for Mr. Winter's travel to the United States.[2] In addition, Sicor should be required immediately to produce all documents that pertain to Mr. Winter's testimony and/or Sicor's communications with Pharmacia (all of which are undeniably covered by Pharmacia's prior document requests).

## IV.    CONTENTION DEPOSITIONS ARE IMPROPER

Categories 1-7, 9 and 11 of Sicor's September 12 Notice of Deposition ask for "all facts concerning Pharmacia's allegation[s]" on various subjects in the Complaint. Notwithstanding Sicor's protestations that these topics seek "facts," these topics clearly are asking for contentions. Indeed, they read like typical contention interrogatories.

Contention depositions of the sort sought by Sicor have been prohibited by this Court and others. Seagate Tech. LLC v. Cornice, Inc., C.A. No. 04-418 at 37-38 (SLR) (June 28, 2005) ("I don't do contention depositions.") (Ex. F); Elf Atochem v. Libbey-Owens-Ford Co., C.A. No. 94-670 (RRM) (Feb. 24, 1995 and March 16, 1995) (Ex. G); Tiegel Mfg. Co. v. Globe-Union, Inc., C.A. No. 84-483-WKS (D. Del. Oct. 5, 1984) ("it has ... been the consistent practice to require that contention discovery ... [be] confine[d] to interrogatories to a party, period.") (Ex. H).

## V.    PHARMACIA HAS NOT DESTROYED EVIDENCE

In a charge never before raised, Sicor claims that Pharmacia "probably destroyed" a "complete and final copy" of Pharmacia's "Global Oncology Strat Plan 2003-2005." These allegations are baseless; sworn testimony proves them to be untrue. Pharmacia's finance manager testified that it is unlikely that document was ever created (30(b)(6) Dep. (Howard Meyer), p. 119). There is no contrary testimony regarding that document; everything else is the result of Sicor's active imagination. Similarly, the "Idamycin PFS Zavedos Lifecycle Management Plan," dating from the same period as the strategic plan, likely never existed in more than draft form. Pharmacia has searched for and been unable to locate any newer or final version. Sicor's allegation that Pharmacia "informally advised Sicor" that these documents "were probably destroyed" is inaccurate – Pharmacia's own investigation and sworn testimony indicates that such "final" documents most likely never existed.

---

[2]    Sicor's demand that witness be produced here is even more remarkable when viewed in contrast to its own actions. Sicor previously refused to produce its 30(b)(6) witnesses in Delaware, despite this Court's scheduling order requiring it. Instead, Sicor demanded that Pharmacia take a depositions of its corporate witness in California.

The Honorable Kent A. Jordan
October 7, 2005
Page 4

Respectfully,

Maryellen Noreika

MN/bls

cc:     Peter T. Dalleo, Clerk (By Hand)
        Steven J. Balick, Esquire (By Hand)
        Reid L. Ashinoff, Esquire (By Email)
        Jordan A. Sigale, Esquire (By Email)
        David R. Baum, Esquire (By Email)
        Daniel A. Boehnen, Esquire (By Email)