# EXHIBIT E

**Maryellen Noreika**

**From:**      Rich, Joshua [rich@mbhb.com]
**Sent:**      Friday, October 07, 2005 2:43 PM
**To:**        Maryellen Noreika
**Subject:**   FW: PHARMACIA UPJOHN / SICOR - URGENT


-----Original Message-----
From: Racca Elisabetta [mailto:e.racca@ngpatent.it]
Sent: Friday, September 30, 2005 9:34 AM
To: Rich, Joshua
Cc: Sigale, Jordan A.
Subject: RE: PHARMACIA UPJOHN / SICOR - URGENT

Dear Colleague,

Mr.Jordan would prefer the dates November 7 - 10, 2005.

Please let me know if it is suitable also for you.

Thank you in advance,

Very Truly Yours,

Elisabetta Racca

1

# EXHIBIT F

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              IN AND FOR THE DISTRICT OF DELAWARE
 3                        - - -
 4   SEAGATE TECHNOLOGY LLC,        :    CIVIL ACTION
 5              Plaintiff           :
 6        vs.                       :
 7   CORNICE, INC.,                 :
 8              Defendant           :    NO. 04-418 (SLR)
 9                        - - -
10                        Wilmington, Delaware
11                        Tuesday, June 28, 2005
                          4:43 o'clock, p.m.
12                        - - -
13   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge
14                        - - -
15   APPEARANCES:
16        FISH & RICHARDSON P.C.
          BY:  TIMOTHY DEVLIN, ESQ
17
18                   -and-
19
20        FISH & RICHARDSON P.C.
          BY:  BRIAN R. NESTER, ESQ.
               (Washington, D.C.)
21
22                   Counsel for Plaintiff
23                   Valerie J. Gunning
                     Official Court Reporter
24
25
```

Page 2

```
 1   APPEARANCES (continued):
 2        MORRIS, NICHOLS, ARSHT & TUNNELL
          BY:  JACK B. BLUMENFELD, ESQ. and
 3             JULIA HEANEY, ESQ.
 4
 5                   -and-
 6        WEIL, GOTSHAL & MANGES LLP
          BY:  DAVID RADULESCU, ESQ. and
 7             MICHAEL ZUPPO, ESQ.
 8        (New York, New York)
 9             Counsel for Defendant
10                   - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

PROCEEDINGS

(Proceedings commenced in the courtroom, beginning at 4:43 p.m.)

THE COURT: I take it you're here because there are things for us to discuss, so I will let you tell me what they are.

MR. DEVLIN: Good afternoon, your Honor. Tim Devlin, of Fish & Richardson, for Seagate. With me I have Brian Nester from our D.C. office. He'll be arguing primarily on behalf of Seagate.

THE COURT: All right. Thank you.

MR. NESTER: Good afternoon, your Honor. I'd like to start out with a little bit of background, so the Court can appreciate where the parties are and how much work we've actually done at this point.

As you may recall, we had a sister litigation in the ITC that settled on April 29th. In that ITC litigation, the parties took significant discovery on many of the issues that will be relevant here. You know, Cornice issued 144 Interrogatories there that we responded to, and including the experts, we took over 40 depositions. But like I said, the ITC case settled on

Page 4

April 29th and that moved us into this stage, the Delaware action and, as the scheduling order sits now, discovery closes on June 30th.

Despite all the discovery that took place in the ITC, there's still a fair amount of discovery that needs to take place in Delaware, related to damages: Cornice's counterclaims, of which there are three or four, as well as design changes that they've made to their products.

And also relevant to this conference is on the 20th, there is a new counterclaim added to this case. It was their breach of contract counterclaim.

So let me tell you the status of discovery right now. Like I said, the parties have been working hard on discovery. Last week and this week, we got a total of 24 depositions that are taking place, including third-party depositions. Documents are being produced on a rolling basis. We received documents yesterday from Cornice. And as well, we received supplements today on Interrogatories from Cornice. We've also received some third-party discovery, documents relating -- number one, they're documents Cornice produced. They relate directly to damages that we didn't receive from Cornice. They deal with market reports, market share, competitors, valuation of Cornice.

Page 37

1  to play with you, but I would hope that the consequences
2  are such that you really don't want to be doing that,
3  that you will prepare your witnesses to answer the
4  questions.
5      All right. I'm going to just check to make
6  sure that my jury room is clean, that my jury notebooks
7  are not in the room or anything, so that you can go
8  back and you can talk about finishing up this discovery,
9  narrowing perhaps the 193 categories, making sure that
10  you're all on the same page with respect to naming the
11  depositions that you have to happen and work up a
12  tentative schedule to get the depositions done before
13  your experts need to start working on their reports.
14      And when you are done, if you can't work
15  something out, then you can come back to the back of
16  the courtroom and I will meet with you when I'm done my
17  charge conference and I will make whatever decisions I
18  need to make. But I'm not going to go through 193
19  categories to determine what is appropriate and what's
20  not.
21      MR. BLUMENFELD: Your Honor, under 30(b)(6),
22  on the 193 categories, under 30(b)(6), this may help
23  resolve a lot of them. There are 40 or 50 categories
24  that begin by saying Cornice's full factual and legal
25  basis for asserting that it, and then does not infringe,

Page 38

1  the patents are invalid.
2      THE COURT: I don't do contention depositions.
3  You all know that. You all should know that. No
4  contention depositions. Those are in writing. There's
5  no one person that should have to answer that.
6      All right. Let me -- just stay here for a
7  minute. Let me check to see what my situation is.
8      I was supposed to ask you all something. We
9  are now in the wonderful word of electronic filing. We
10  are not going to babysit lawyers in terms of what they
11  file if it's confidential or not. You either need to
12  take your responsibility to file it under seal and then
13  file a redacted version. On the other hand, I have a
14  hard copy of Cornice's motion for leave to file an
15  amended answer and counterclaim, stamped confidential,
16  my hard copy, but I don't think it was filed under seal.
17      So I mean it's out in the world now. If you
18  want to change it, you need to do that.
19      This is just a note I got from my Clerk. I
20  actually don't have any clue as to what you did. But
21  we are not babysitting. Once it's out, it's out. If
22  you want me to do something about it, you have to file
23  a motion and have me do it. All right? Hold on. Let's
24  get us organized.
25      (Short recess taken.)

Page 39

1          - - -
2      (Court resumed after the recess.)
3
4      THE COURT: Maria is going to direct you to
5  the jury room. You're either going to disappear because
6  you've managed to work out your differences or you are
7  going to go to the back. Maria will show you how to
8  get out and I will talk to you after my charge
9  conference.
10      (Court recessed at 5:30 p.m.)
11          - - -

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

ELF ATOCHEM NORTH AMERICA, INC.,   :
                                    :
         Plaintiff                  :
                                    :
v.                                  :  Civil Action
                                    :  No. 94-670-RRM
LIBBEY-OWENS-FORD COMPANY, INC.,    :
                                    :
         Defendant                  :
- - - - - - - - - - - - - - - - - -
LIBBEY-OWENS-FORD COMPANY, INC.,    :
                                    :
         Counter-Claimant           :
                                    :
v.                                  :
                                    :
ELF ATOCHEM NORTH AMERICA, INC.,    :
                                    :
         Counter-Defendant          :

                          Wilmington, Delaware
                          Friday, February 24, 1995
                          11:10 a.m.


BEFORE:   HONORABLE RODERICK R. McKELVIE, U.S.D.C.J.


APPEARANCES:

         Connolly, Bove, Lodge & Hutz
         BY:  STANLEY C. MACEL, III, ESQ.
         1220 Market Building
         Wilmington, Delaware  19801
                 -and-
         Finnegan, Henderson, Farabow, Garrett & Dunner
         BY:  JOHN C. LOWE, ESQ.
              JAMES B. MONROE, ESQ.
         1300 I Street, N.W.
         Washington, D.C.  20005-3315
                 -and-


                          Heather G. Slate
                          Official Court Reporter

1  issue, if your Honor feels that that would be helpful.

2  THE COURT: A couple thoughts, and it's easy for

3  me to say, which is I very much want lawyers who appear in

4  this courtroom to know that when they're out doing discovery

5  that they have a judge who expects them to be reasonable and

6  will hold the other side to be reasonable, and that will

7  protect you from unreasonable conduct. And it's easy for me

8  to say because I'm the one who defines what's reasonable,

9  and you never know what it might quite be from one day to

10  the next.

11  I like people to know if you bend over backwards

12  to try to be reasonable to the other side, I'll try to

13  protect you. So I say give me a call anytime if you think

14  you're being treated unfairly and I'll see what I can do to

15  protect you.

16  And I think the thing to do here is to speak in

17  the context of particular requests and walk through them and

18  see whether it makes sense and whether it's reasonable.

19  I'm not familiar with Judge Stapleton's decision

20  and the law on the topic of contention depositions, but I

21  can tell you that they never make much sense to me because,

22  even at a trial, when a lawyer asks a witness or a party

23  what they're contending, I don't let -- I don't require a

24  witness to answer that in front of a jury. And I will

25  generally tell lawyers I don't think it's productive to try

1    to pull from a witness what their contentions are because

2    they may have relied on what their lawyer views as legal

3    issues raised by facts and duties in a particular situation.

4            And with regard to contention interrogatories, and

5    contentions generally, I encourage the parties to file

6    contention interrogatories and to answer contention

7    interrogatories and use my standard of reasonableness, which

8    is if you ask somebody to identify every document and state

9    every fact that they rely on, I know that you can't answer

10   that, and that what I look for and what I tell people is

11   that if you make -- I think I've done it in an opinion or

12   two -- if you make your best effort at answering a

13   contention interrogatory, that's fine.  And if you don't

14   make your best effort, I'll bar you from offering evidence

15   on that point at the trial.

16           And it's a little like my theory about expert

17   witnesses, which is that if you show me you're treating the

18   other side fairly, I'll protect you.  And if you haven't

19   treated the other side fairly, I'll bar you from obtaining

20   relief on opposing issues at the trial.

21           So on the 30(b)(6), I don't mind, you can do

22   documents first, depositions first, witness once.  I know

23   there's some case law out there that says you can't depose

24   witnesses twice.  But if there's a good reason why a witness

25   should be deposed twice, I don't mind, if you can show me a

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

| | |
|---|---|
| ELF ATOCHEM NORTH AMERICA, INC., | CIVIL ACTION |
| Plaintiff | |
| v. | |
| LIBBEY-OWENS-FORD COMPANY, INC., | |
| Defendant | |
| LIBBEY-OWENS, FORD COMPANY, INC., | |
| Counter-Claimant | |
| v. | |
| ELF ATOCHEM NORTH AMERICA, INC., | |
| Counter-Defendant | NO. 94-670 (RRM) |

- - -

Wilmington, Delaware
Thursday, March 16, 1995
2:30 o'clock, p.m.

- - -

BEFORE:   HONORABLE RODERICK R. McKELVIE, U.S.D.C.J.

- - -

Leonard A. Dibbs
Official Court Reporter

1    MR. BRIGGS:  Yes, your Honor.

2    THE COURT:  Two weeks from Monday is April 3rd.

3  Friday, April 7th.  Sounds like it's a pretty good time to

4  be done, unless something happens.

5    MR. LOWE:  I can live with that.

6    MR. BRIGGS:  Thank you, your Honor.

7    THE COURT:  On this thing about contention

8  depositions, I haven't heard anything to change my mind.

9  If people want something more than that, I will write

10  something.  Otherwise, I read the letters you sent me and,

11  of course, Judge Stapleton is as right now as he was then,

12  especially now that he is on the Third Circuit and I'm not.

13    I think that's where I would like to leave that

14  now.  If somebody else wants something different on it, let

15  me know.

16    MR. LOWE:  Thank you, your Honor.

17    MR. BRIGGS:  Thank you, your Honor.

18    (Telephone conference concluded.)

19         - - -

20

21

22

23

24

25

# EXHIBIT H

1

IN THE UNITED STATES DISTRICT COURT

2

FOR THE DISTRICT OF DELAWARE

3

4

TIEGEL MANU CO.,                    )
                                    )
5

            Plaintiff,              )
                                    )
6

        v.                          )        Civil Action No. 84-483
                                    )
7

GLOBE-UNION, INC.,                  )
                                    )
8

            Defendant.              )

9

                                    Wilmington, Delaware
10                                   October 5, 1984
                                     2:25 o'clock p.m.

11

12

BEFORE:

13                THE HON. WALTER K. STAPLETON, Chief Judge

14

                  A P P E A R A N C E S

15

For Plaintiff:

16                COLLINS J. SEITZ, JR., ESQUIRE
                  Connolly, Bove, Lodge & Hutz
17                FRANK J. BENASUTTI, ESQUIRE
                  C. FREDERICK KOENIG, III, ESQUIRE

18

19      For Defendant:

20                MARY B. GRAHAM, ESQUIRE
                  Morris, Nichols, Arsht & Tunnell
21                GARY CLARK, ESQUIRE [By conference telephone]
                  JAN WEIR, ESQUIRE [By conference telephone]

22

23

24

25

[The following occurred in Chambers:]

THE COURT: We are going to have one participant from California whose name is --

MS. GRAHAM: Gary Clark.

MR. SEITZ: Your Honor, if this is a good time for you, I'd like to move to admit Mr. Frank Benasutti and Mr. Fred Koenig from Benasutti & Murray in Philadelphia pro hac vice for this case.

THE COURT: All right. Happy to grant your motion. Welcome back, gentlemen.

MR. BENASUTTI: Thank you, your Honor.

MR. SEITZ: Thank you, your Honor.

[The Court then turned on the telephone conference box.]

THE COURT: Mr. Clark, are you on the line?

MR. CLARK: Yes, your Honor.

THE COURT: Can you hear us all right?

MR. CLARK: Yes, I can.

THE COURT: All right. I believe it is your application.

MR. CLARK: Yes, sir. May I, with permission, your Honor, put you on the speaker phone so I can have my hands free?

THE COURT: Certainly.

MR. CLARK:  Thank you.

Your Honor, I have with me here in the office Jan Weir, an associate in our firm, who is of record in the case.

Your Honor, we brought this motion because we think that the nature of the discovery that they have sought is more properly conducted by interrogatories.

When we received the notice, I called personally Mr. Volpe, of Mr. Benasutti's firm, and explaine the situation to him and suggested that we would be very willing to answer interrogatories directed to essentially the same subject.  He said he'd get back to me the next day.  When he did, he said discovery by interrogatory wasn't acceptable because they needed the discovery before the preliminary injunction hearing.

I then offered to turn interrogatory answers around in very short order, within a matter of days, so that he would have them before the preliminary injunction hearing, but I was told that that solution wasn't acceptable, which was rejected out of hand without an explanation.

We are now told that the discovery that they need is urgent for the preliminary injunction hearing. I don't think that this argument can be taken very seriously.

4

1

2            Your Honor may recall that they were

3   originally prepared to have their preliminary injunction

4   motion heard within one week's time and in such short order

5   that they obviously did not leave any time for discovery

6   before it could be heard, and when they were taking that

7   position, they had our answer in hand and they knew what

8   our denials were.  So the position they are taking now

9   that there are denials in the answer which raise new

10  matters necessary to be explored on discovery before the

11  preliminary injunction hearing I think simply is not well

12  taken.

13            I would also note, in connection with their

14  argument, that this is designed to elicit discovery for

15  preliminary injunction, that the deposition notice very

16  mechanically lists each and every denial of our answer to

17  the complaint as an area of inquiry on deposition, without

18  any apparent regard to the relevance of each and every

19  point to their motion.

20            Category No. 3 is a prime example.  They

21  want to know the basis upon which we first sued Tiegel in

22  Los Angeles asserting venue over them there, but that has

23  no relevance to the preliminary injunction motion.  And,

24  more than that, it has already been the subject of briefs

25  affidavits, and a hearing in Los Angeles.

            So they are certainly well aware of our

position in that regard and do not need the discovery
before the preliminary injunction hearing on an issue such
as that.

        We think that there would also be substantial
prejudice to Globe-Union from having to give an oral
deposition on the subjects of the bases for our denials in
the answer, particularly in the time frame in which they
want to take the deposition.

        We have made the point that the answer is
outside counsel's work product.  Outside counsel is
uniquely qualified to state the basis for each denial.
Those denials obviously require an application by counsel
of law as facts based upon the facts as counsel understand
them, which is a far different thing from getting discovery
of merely underlying facts after interrogatories have
identified the factual basis and the witnesses and document
that can support them.

        So we think that the deposition creates a
risk of undue waiver of privilege and work product and that
it would be more appropriate for them to take it by
interrogatory.

        I would also like to make the point that the
deposition comes at a time that could not be more disruptiv
for both parties.  During the week that they have noticed
the deposition to take place we have had to spend substanti

time preparing our reply brief on the transfer motion that is before your Honor. Today we are filing an opposition to a stay motion that they had on file in San Francisco in connection with that action. On Monday, we have due our opposition to the preliminary injunction motion. And on Tuesday or Wednesday we have an extensive status report due in San Francisco for Judge Schwartzer.

They have an answer due to our amended complaint in San Francisco on Monday or Tuesday. They have answers due to our interrogatories and document production requests in San Francisco due on Tuesday or Wednesday of next week. They have to put together a reply to our preliminary injunction motion, and they have to assist us in putting together the joint status report next week for Judge Schwartzer.

So it seems to me that there are so many things going on that we can't possibly also squeeze a deposition in.

In that regard, I'd like to conclude my remarks by saying that it is unique in my experience that counsel will file a motion such as this motion for prelimi injunction, seek a hearing in very short order, and then g their memo and supporting affidavits on file, and then con to the Court and take the position that the motion isn't adequately supported without additional discovery, discove

1   which would only take place now after our opposition to thei

2   motion is in.

3              It seems to me that the more appropriate

4   relief that they should be getting here is a postponement

5   of their preliminary injunction motion so that all parties

6   can have adequate time and we of course can have an

7   adequate opportunity to respond in writing to whatever

8   facts they think they might uncover in discovery and

9   utilize in supporting their preliminary injunction motion.

10             Thank you.

11             THE COURT:  All right.  Is it Tiegel -- is

12  that the way your client's name is pronounced?

13             MR. BENASUTTI:  Yes, your Honor.

14             THE COURT:  Who wants to speak on behalf of

15  Tiegel?

16             MR. BENASUTTI:  I will, your Honor.

17             I have a great deal of difficulty with

18  recounting of all of those facts.  I think the record will

19  show that at least the one that seemed to be most important

20  to them is that we filed the motion before their answer

21  came in in this case.  We filed the motion because our

22  client in my belief is being grievously injured, right at

23  this very moment --

24             MR. CLARK:  Your Honor, I'm afraid we can't

25  hear at this end.

THE COURT:  All right.  Do you want to spe

up, Mr. Benasutti?

MR. BENASUTTI:  I believe that we are bein

grievously injured by --

MR. CLARK:  Hello --

THE COURT:  Do you want to speak up?

MR. BENASUTTI:  We're trying to speak up,

but if you make any noise on the other end, the problem i

that these boxes cut out the voice.

MR. CLARK:  I understand that.  We have not

been making any noise, but we haven't been able to hear

anything for about the last 30 or 45 seconds.

MR. BENASUTTI:  All right.  I am wondering

if I could pick up a telephone and talk into that and then

talk to the Court.  In that way I wouldn't have to shout

at the Court.  Is that possible?

[The Court then moved the telephone

conference box.]

MR. BENASUTTI:  Can you hear me now?

MR. CLARK:  Yes, I can.

MR. BENASUTTI:  All right.  They moved the

speaker a little closer.  I'll start from the beginning.

First of all, we didn't have their answer,

your Honor, when we filed our motion for a preliminary

injunction.  We brought this suit to stop them from suing

and to stop them from suing our customers, which is something they are doing right now, and therefore we want action right now, and I think we are entitled to that action as quick as possible.  So we brought the motion.

We then got their answer.  Now, in the answer they have made denials.  The denials are to the very same things that we brought the motion on.  We brought the motion on the complaint, on the substance of the complaint.  If they have made denials, the usual course of discovery is to take depositions to find out what the substance of those denials is, what are the facts.

Counsel just mentioned that he has a factual basis from which lawyers raise legal conclusions.  We are entitled to the facts of those things.  The fact of the matter is, interrogatories are generally used to identify people and to identify things or documents, which you then go through when you get document discovery, and then down the line you start taking depositions.  We want to avoid all that.  We want to avoid all this lawsuit.  All we are saying is, if you have facts that you are going to bring to this Court's attention at next Monday's hearing, we have a right now to find out what they are because we are out front with what our position is and they have no business covering up what their position is.

The purpose of this motion, as I see it, is

simply to keep us from getting those facts before the hearing. If that is true, then it is simply a motion interposed for delay because they have indicated in their motion that they are going to supply us with all the answers we need.

All we have to do is ask every conceivable question in the world and they are going to be able to answer it by the end of next week, from what I hear now. That is the first time, incidentally, that we have heard that, but let's assume that it is true.

They are going to answer every question, and every question has to be based on everything we know now. In other words, we find out a fact and I guess we'd have to write them another question, and then if we find another fact, then we'd have to write them another question. It is an impossible proceeding to get done.

The way to handle that is, you bring in a witness and you have him testify. Unfortunately, a lot of attorneys -- and it is all of our fault -- consider that the Federal Rules are an apple that you can take one bite out of before they get stopped.

I would submit to this Court that this client has already had their one bite this year. In the co-pending case that I mentioned in my papers, involving two of the same patents that are in suit, which is pending

1   now in the Southern District of Indiana, there was an

2   Order entered by Judge Sarah Evans Barker earlier this

3   year requiring them to comply with Rule 30[b][6] and to

4   provide a witness and to prepare that witness to fully and

5   completely answer questions posed at a deposition. And the

6   Judge went on to say, "Further, Johnson is now deemed on

7   notice as to the specific areas in which the defendants will

8   be making discovery inquiries when the deposition is

9   rescheduled." She said that the Court views their past

10  conduct in this matter to be such as to warrant a further

11  reminder of the sanctions available for the abuse of

12  discovery proceedings.

13          Here they are again with the same kind of

14  tactic. They are not going to produce a witness. The only

15  witness is -- if you look at all the different papers that

16  have been filed, the only place you will see a witness

17  appear is on paper -- it is as mysterious as it is

18  ubiquitous, because every time a paper is filed here,

19  well, the witness is over here. If you file a paper out

20  there, well, the witness is over there. The latest paper

21  they filed they don't even identify the witness and then

22  say to the Court, "Pay for him to come to the deposition."

23  We don't know if he is here in Wilmington. We don't know

24  who he is.

25          The purpose of 30[b][6] and the purpose of

laying out, as my colleague, Mr. Koenig did in a very
detailed and narrow attachment to notice a deposition,
is saying, this is the specific question or the specific
issue that we want to talk to that witness about.

This is not a broad general 30[b][6]
covering every aspect of the litigation. We want to go
down the little areas where they have made denials of
specific things that we have raised, and I think we are
entitled to do that, and I certainly hope that the
Court would want to have answers to that sort of thing at
the time that the Court is ready to rule on a motion for
preliminary injunction.

A motion for a preliminary injunction is not
like a TRO. We are not coming in here and taking a swat
at it. We are saying that they should be put out of
business on this lawsuit by laches and estoppel, and they
are saying that their conduct up to now doesn't warrant
that, and I think we are entitled to investigate into what
the basis for that is.

Now, we laid out in our brief in support of
our motion for preliminary injunction a very detailed
statement of each and every paper that we are relying on to
support our motion. We said, On such and such a date so-and-
so wrote so-and-so, and that sort of thing. And I think we
are entitled to see what their position is before we go to

Court.

THE COURT: All right. Mr. Clark?

MR. CLARK: Yes, your Honor. We're not trying to deny them access to the underlying facts of which they are speaking. In fact, that is the reason we offered to answer interrogatories. That offer was specifically made by me to Mr. Volpe, who I understand is not there, unfortunately, and it was rejected. To think that we are now going to go ahead on a preliminary injunction motion and try to conceal from the Court the basis for our denial to their answer -- or denying the relief they have asked f in the preliminary injunction motion is really untenable.

Our opposition to that motion is due on Monday. We have prepared affidavits, exhibits, and of course our legal memorandum in opposition to that motion. It will be filed on Monday, and counsel at that point, as is proper under the local rules of the Court, will be apprised of everything upon which we rely in opposition to the preliminary injunction motion.

So it is not the fact that he is going to go into the hearing on the preliminary injunction motion o Monday naked, totally unadvised of the basis of our denial.

THE COURT: Does anybody else want to say anything?

1                        [No response.]

2               THE COURT:  I view the noticed discovery

3  as being contention discovery.  It has been the consistent

4  position of this Court that a lay person shouldn't be

5  required to formulate a party's contention in response to

6  deposition questioning and that not even a lawyer should

7  be required to formulate trial strategy and contentions in

8  immediate response to questions on deposition.  And it has

9  accordingly been the consistent practice to require that

10  contention discovery, which is clearly permissible and

11  very constructive in narrowing the issues, but to confine

12  it to interrogatories to a party, period.

13              Now, we appear to have a time problem here,

14  although I am not sure whether we have a time problem or

15  not.  When did you say you are prepared -- what did you say

16  your turnaround time on interrogatories would be, Mr.

17  Clark?

18              MR. CLARK:  Your Honor, of course it would

19  depend on the number and the scope of them, but I think that

20  within a matter of -- if they were served on us, for

21  instance, on Monday, I think by Thursday or Friday we could

22  probably have answers for them, assuming that they are of a

23  scope limited to the issues raised on preliminary injunction

24              MR. BENASUTTI:  Your Honor, I might just add

25  one thing to this, and I think I covered it in my papers,

1   but as I understand what he is saying is -- and you

2   mentioned the word "lay person", and I would agree with you

3   as to the lay person -- I was asking a lay person only for

4   factual positions.  For example, their Mr. Burkhart and

5   other people who took affidavits had factual contentions,

6   and it is those things I think that I was entitled to.

7           But if their contention is that outside

8   counsel is in the possession -- and on page 9 of their

9   brief they say that he is in possession of all the

10  information with respect to what their positions are,

11  including what was in their mind when they did certain acts

12  then it seems to me I am entitled to take the deposition

13  and in fact call as a witness whatever counsel that was,

14  because I think that when you set up the mind of counsel

15  as being your defense -- you know, it is just like an

16  advice of counsel defense; when you put up an advice of

17  counsel defense, you are entitled to get all of the

18  attorney-client privilege documents and take that counsel'

19  deposition.

20          So I think there are maybe two questions,

21  if we bifurcate this thing.  First of all, if they have

22  facts that they are relying on, then a fact witness should

23  be provided.  But if they are saying that it is contention

24  of counsel just on legal issues, that is one thing, but if

25  it is legal advice that they are hiding behind, then I thi

1    that we are entitled to take his deposition, or even call

2    him as a witness at our preliminary injunction hearing.

3              THE COURT:  Let me express what I assume was

4    implicit, and that is, I'm not ruling on anything other

5    than the discovery that has been proposed and which is the

6    subject of the protective order.  It well may be that

7    Tiegel has the right to take the deposition of one or more

8    lawyers.  There are cases and issues where it is appropriate

9    to take the deposition of lawyers as fact witnesses.  I am

10   not taking any position with respect to anything other than

11   the protective order that is before me, and I am telling

12   you that as far as the subject matter as currently cast in

13   the notice of deposition, it is cast in my opinion as

14   contention discovery, and if you want to ask those kinds of

15   questions, I'm going to require that you do it by

16   interrogatory.  And I think certainly, under the circum-

17   stances, an offer to provide responses in three or four

18   days seems to me to be a reasonable undertaking.  If that

19   means you want to move back the current argument date on

20   your application for a preliminary injunction, I certainly

21   will be happy to consider that.

22             MR. BENASUTTI:  We want to go ahead with

23   that.

24             THE COURT:  Okay.

25             MR. BENASUTTI:  My only position would have

1

1   been that we really -- the use of the word "basis" I guess

2   is what seems to be troubling the Court, and what we

3   wanted was the factual basis. We don't care about their

4   contentions. They are already set out in their answer.

5   We know what their contentions are. I don't really have

6   too much to ask him in that regard. His contention is he

7   didn't do it, but I want to know what the basis for that

8   is, and that means, what is the factual basis for it.

9   If you interpret the word "basis" to mean "contention", I

10  already know what it is. He says -- his contention is tha

11  he denies the allegation. He contends that he didn't

12  do it. So I was using the word "basis" in this context,

13  and I would limit it in any deposition that I got to factu

14  basis, not legal contention. I am not interested in his

15  legal contentions. They are already a matter of record.

16          So I would again say to the Court, if we

17  want to file interrogatories as to legal contentions, mayb

18  we can think of some, but that certainly wasn't our object

19  in preparing this notice of deposition to use the word

20  "basis" to mean "contention". Basis meant basis in

21  fact.

22          In fact, I think the notice says that

23  somebody is going to testify as to facts. I think it say

24  that, testify as to facts.

25          THE COURT: Well, if contention

1    interrogatories are filed on Monday, I will require a

2    response by service -- I am talking on the other side --

3    by 5:00 o'clock on Thursday.  If fact discovery is noticed,

4    I will look at it and we will see whether it is

5    appropriate or not appropriate.  And we will keep the

6    5:00 o'clock Monday, October 15 time for presentation of

7    both the motion for a preliminary injunction and the

8    transfer motion.  Is that right?

9                    [Counsel indicate in the affirmative.]

10                   THE COURT:  All right.  Thank you.

11                   MR. CLARK:  Your Honor --

12                   THE COURT:  Yes.  Is there anything else we

13   can profitably address?

14                   MR. CLARK:  Your Honor, in connection with

15   your Order allowing them to serve interrogatories, could it

16   require that their service of them be in such a manner that

17   it gets it in the hands of all counsel on Globe-Union's

18   side of the case on Monday, including the house counsel in

19   ▓▓▓▓▓▓▓ he is listed -- I guess he is not listed on

20   ▓▓▓▓▓▓▓, but I can provide that identity to counsel

21   for Tiegel.

22                   MR. BENASUTTI:  I wonder if we could have

23   the identity of this witness who is going to testify on

24   your behalf, the one that is mentioned in your brief.

25   Could we have the identity of that person?

1     THE COURT:  Could you hear that?

2          MR. CLARK:  I didn't, your Honor.

3          MR. BENASUTTI:  I wonder if we could have

4     the identity of the person listed --

5          MR. CLARK:  Joseph Gofman.  He's on the

6     pleadings of the San Francisco action.

7          MR. BENASUTTI:  Excuse me.  You didn't let

8     me finish the question.  I know he is your in-house counsel

9     in Milwaukee, along with John Ryan.  I wonder if we could

10    have the identity of the person who is otherwise unidentifie

11    in your brief who is going to testify with respect to the

12    matters raised by our motion for a preliminary injunction.

13         THE COURT:  I am  not sure I understood the

14    question.

15         MR. BENASUTTI:  The question is, your

16    Honor, that they mention in their motion for a protective

17    order that they would have to bring a certain witness in to

18    testify in response to 30[b][6], and I want to know who

19    that person is because, as your Honor has indicated, we

20    could make application to take fact information from that

21    person, and I'd like to know who he is and where he is,

22    because we might want to take his deposition in the

23    meantime as to the facts.

24         THE COURT:  I don't think you can ask

25    somebody to designate a 30[b] witness when you don't know

1    what the subject matter is.  So when you -- pardon me; if

2    you can't hear, please sing out, Mr. Clark.

3                    MR. CLARK:  All right, I will.  We didn't

4    hear the last bit.

5                    THE COURT:  What I said was that it turns

6    out that Mr. Benasutti was asking you to designate your

7    30[b] witness as to a hypothetical deposition that he is

8    considering taking apparently in some fact areas, and I

9    told him that I didn't think I could in fairness require you

10   to designate a witness until such time as the fact area to

11   be explored in such a deposition was identified.

12                   MR. BENASUTTI:  I guess I made myself

13   unclear and I apologize to the Court.  I was asking for the

14   identity of the witness which they mentioned in their

15   brief.  They mentioned a witness.  All I want is the

16   identity of the person they had in mind, not the identifying

17   of somebody who is hypothetical.  This is a person that

18   they mentioned in their brief as being in existence.  And

19   all I'd like to know is who he is or she or them.

20                   THE COURT:  There isn't going to be the

21   deposition that is the subject matter of these papers, and

22   I don't want to spend time discussing something that is not

23   going to come to pass.

24                   Is there anything else we can profitably

25   discuss?

1    MR. CLARK:  No, your Honor, I think not.

2    THE COURT:  Okay.  Thank you.

3    MR. CLARK:  Thank you.

4    MR. BENASUTTI:  Thank you, your Honor.

5    [Hearing concluded.]

6              - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT I

Meyer Deposition Excerpt.txt

⬜

1                                                        1

2     ----------------------------------------------
      REALTIME AND INTERACTIVE REALTIME TRANSCRIPT
3                 ROUGH DRAFT DISCLAIMER
      ----------------------------------------------
4                   IMPORTANT NOTICE:
                  AGREEMENT OF PARTIES
5     ----------------------------------------------

6     We, the party working with realtime and rough
      draft transcripts, understand that if we
7     choose to use the realtime rough draft screen
      or the printout, that we are doing so with the
8     understanding that the rough draft is a
      noncertified copy.

9
      We further agree not to share, give, copy,
10    scan, fax or in any way distribute this
      realtime rough draft in any form (written or
11    computerized) to any party.  However, your own
      experts, cocounsel and staff may have limited
12    internal use of same with the understanding
      that we agree to destroy your realtime rough
13    draft and/or any computerized form, if any,
      and replace it with the final transcript upon
14    its completion.

15              Case:  Pharmacia v. Sicor
                Date:  September 29, 2005
16
      REPORTER'S NOTE:
17    Since this deposition has been realtimed and
      is in rough draft form, please be aware that
18    there may be a discrepancy regarding page and
      line number when comparing the realtime
19    screen, the rough draft, rough draft disk, and
      the final transcript.
20
      Also please be aware that the realtime screen
21    and the noncertified rough draft transcript
      may contain untranslated steno, reporter's
22    note in double parentheses, misspelled proper
      names, incorrect or missing Q/A symbols or
23    punctuation, and/or nonsensical English word
      combinations.  All such entries will be
24    correct on the final certified transcript.

25              Court Reporter's Name:  Yaffa Kaplan
                Firm Name:  ESQUIRE DEPOSITION SERVICES


1                                                      119

2     a time date stamped it says well June 13,

Page 1

Meyer Deposition Excerpt.txt

3    2002?

4        A.    That would make sense.

5        Q.    To the best of your knowledge, do

6    you believe this document was created on or

7    about June 13, 2002?

8        A.    Yes, it would make sense.

9        Q.    Have you ever seen a final version

10   of this document of the strat plan?

11       A.    Of the strat plan I don't believe

12   so.  Nothing that I certainly haven't seen

13   anything that I would have that would have

14   said final.

15       Q.    Do you know why you guys wouldn't

16   have that document?

17       A.    My guess is because in a merger they

18   never actually finalized the budget because

19   they knew it wouldn't exist next year.

20       Q.    So you believe the final version of

21   this document was never created?

22       A.    That's my guess.  If you ask me to

23   guess my guess is they never finished the

24   document because there was no need.

25       Q.    Well is it also possible that