# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC, | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-833-KAJ |
| | ) | |
| SICOR INC. and SICOR PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated: January 16, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

POINTS AND AUTHORITIES ........................................................................................ 3

I.    PHARMACIA SEEKS DOCUMENTS THAT ARE BEYOND THE SCOPE OF
      SICOR'S LIMITED WAIVER ................................................................................ 3

II.   PHARMACIA'S MISCONDUCT IN THIS MOTION -- ITS KNOWING,
      IMPROPER QUOTATION OF AN INADVERTENTLY PRODUCED
      PRIVILEGED DOCUMENT ................................................................................ 10

III.  SICOR PROPERLY REDACTED CERTAIN DOCUMENTS ........................................ 12

IV.   SICOR'S PRIVILEGE LOG ADEQUATELY DESCRIBES THE BASES
      FOR THE PRIVILEGES ASSERTED ..................................................................... 13

CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*In re Cendant Corp.,*
    343 F.3d 658 (3d Cir. 2003)......................................................................7, 8, 10

*Chimie v. PPG Industries, Inc.,*
    218 F.R.D. 416 (D. Del. 2003) ................................................................4, 5, 7

*Fidelity and Deposit Company of Maryland v. McCulloch,*
    168 F.R.D. 516 (E.D. Pa. 1996)................................................................13, 14

*George v. Wausau Insurance Co.,*
    No. Civ. A 99-CV-6130, 2000 WL 1728511 (E.D. Pa. Nov. 21, 2000)............14

*Intex Rec. Corp. v. Metalast, S.A.,*
    01 Civ. 1213, 2005 U.S. Dist. LEXIS 10149 (D.D.C. March 2, 2005) ............12

*Kravco Co. v. Valley Forge Center Associate,*
    Civ. No. 91-4932, 1991 U.S. Dist. LEXIS 18752 (E.D. Pa. Dec. 18, 1991) ....14

*Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.,*
    210 F.R.D. 673 (D. Minn. 2002)................................................................8, 9

*Robertson v. Allstate Insurance Co.,*
    No. Civ. A. 98-4909, 1999 WL. 179754 (E.D. Pa. March 10, 1999) ..............5, 7

*Thorn EMI N.A., Inc. v. Micron Technology, Inc.,*
    837 F. Supp. 616 (D. Del. 1993)................................................................5, 10

*U.S. v. Keystone Sanitation Co., Inc.,*
    885 F. Supp. 672 (M.D. Pa. 1994) ................................................................14

Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc. (collectively, "Sicor") submit this memorandum of law in opposition to the motion of plaintiff Pharmacia & Upjohn Company, LLC ("Pharmacia") to compel Sicor's production of certain documents withheld on attorney-client privilege and/or work product grounds. Sicor's privilege and work product assertions are proper, and Pharmacia provides no basis for disturbing them.

## PRELIMINARY STATEMENT

In February 2001, Sicor received a detailed, 65-page written opinion from its outside counsel, Brobeck, Phleger & Harrison regarding the validity of the claims in the patent-in-suit (the "'285 Patent") (the "Brobeck Opinion"). The Brobeck Opinion could not have been more clear in setting forth outside patent counsel's view of the legal validity of the '285 Patent, stating: "[W]e have reached the *firm conclusion* that all of the claims of the '285 patent are *invalid*." (Ex. A: Brobeck Opinion (without exhibits), at 2) (emphasis added).

In September 2001, Marvin Samson became Sicor's Chief Executive Officer, and sometime in mid-2002 was confronted with the decision of whether to launch Sicor's idarubicin hydrochloride product. To inform his decision from a legal perspective, Mr. Samson turned to Sicor's in-house general counsel Wesley Fach, who forwarded the Brobeck Opinion to Mr. Samson and told Mr. Samson that the Opinion was "strong." (Ex. B: M. Samson Deposition Tr. ("Samson Tr.") at 70:21-71:7, 74:18-75:15). Mr. Samson relied exclusively upon his own review of the Brobeck Opinion's Executive Summary, which included the language quoted above, and Mr. Fach's description of that Opinion as "strong." (*Id.* at 73:5-17, 74:5-10, 74:18-75:15, 87:21-88:3, 218:11-16, 218:25-219:6, 241:19-242:6).

Sicor does not contest that it waived the attorney-client privilege with respect to the Brobeck Opinion when it asserted an advice of counsel defense to Pharmacia's willful infringement allegations. This is why Sicor has produced approximately 150 documents that it

had previously withheld as privileged. However, by this motion, Pharmacia wrongfully seeks to access highly confidential work product related to threatened litigation that: 1) was irrelevant to Mr. Samson's launch decision; and 2) is beyond the scope of Sicor's privilege waiver.

At the center of Pharmacia's motion are three memos written by Sicor's in-house general counsel Wesley Fach (the "Fach Memos"), which were previously submitted to the Court as Exhibits A, B, and C to Sicor's *in camera* submission dated September 28, 2005. These three documents were written in August and December 2000, and March 2001 -- well before Mr. Samson became Sicor's CEO on September 11, 2001, and more than a year before Mr. Samson considered or made the product launch decision. These documents are not relevant to Pharmacia's examination of Sicor's good faith reliance on the Brobeck Opinion, because as Mr. Samson testified during his deposition: (i) he was the person at Sicor who made the decision to launch the product at issue (Ex. B: Samson Tr. at 94:12-95:16); (ii) the only document he reviewed in making that decision was the Brobeck Opinion (*id.* at 74:5-10, 74:23-25, 87:21-88:3, 218:11-16, 218:25-219:6, 241:19-242:6); and (iii) his discussions with inside counsel Mr. Fach, who is not a patent attorney, about the Brobeck Opinion amounted to nothing more than Mr. Fach's statement that the Brobeck Opinion was a "strong" one (*Id.* at 74:18-75:15, 241:19-242:6). Second, the documents Pharmacia seeks on this motion are protected from disclosure as "core" work product. Rather than bearing on the issue of the validity of the '285 Patent, to which the Brobeck Opinion speaks, they are predominantly comprised of mental impressions of an in-house attorney concerning Pharmacia's threatened litigation and litigation strategy, which this Court and the Third Circuit Court of Appeals have held are entitled to almost absolute protection from discovery.

Pharmacia has obtained all of the willfulness-related discovery to which it is entitled under the Federal Rules. Pharmacia's attempt to leverage Sicor's reliance on counsel defense to

2

obtain irrelevant and otherwise non-discoverable material is not permitted. Moreover, the potential prejudice to Sicor of the material Pharmacia seeks is significant, as this Court stated during the October 11, 2005 telephonic conference. And, that prejudice far outweighs any probative value that the documents may have.

A separate ground for denying Pharmacia's motion is its blatant litigation misconduct -- in violation of this Court's Protective Order (D.I. 48) -- in making the motion.[1] On page 5 of its brief, Pharmacia block quotes and argues from the redacted portion of a document that it *knows* Sicor inadvertently produced in unredacted form, and which Pharmacia had already returned to Sicor -- before filing this motion -- precisely because Pharmacia knew that Section 18(b) of the Protective Order prohibited it from retaining or "using" inadvertently produced materials. Sicor specifically reminded Pharmacia that it could not use this document in connection with this or any other motion. Yet, Pharmacia knowingly violated and ignored this Court's Order and Sicor's notice solely in an attempt to gain some sort of advantage in connection with the instant motion to compel. This type of litigation misconduct should not be condoned or tolerated, and Pharmacia's motion to compel should be denied for this additional reason.

## POINTS AND AUTHORITIES

### I.   PHARMACIA SEEKS DOCUMENTS THAT ARE BEYOND THE SCOPE OF SICOR'S LIMITED WAIVER

By this motion, Pharmacia asks the Court to compel production of "all pre-litigation communications from opining counsel and within Sicor." (Br. at 10). This request is manifestly overbroad, and inconsistent with this Court's guidance with respect to the scope of the privilege waiver associated with Sicor's assertion of an advice of counsel defense, and with settled legal authority. The scope of Sicor's waiver is limited to the actual advice of counsel upon which it

---

[1]     For ease of reference, the Protective Order is attached as Exhibit C.

3

relies to defend Pharmacia's willfulness claim, and the state of mind of the decision maker --

Marvin Samson -- who relied upon it. The waiver's scope does not extend to material protected

by the work product doctrine upon which the decision maker did not rely in making Sicor's

decision to launch its idarubicin hydrochloride product.

During the parties' October 11, 2005 conference with the Court regarding Sicor's motion

to bifurcate, the Court recognized that certain privileged, work product protected documents

Sicor submitted for *in camera* review raised "significant issues in terms of potential prejudice."

(Ex. D: Transcript of October 11, 2005 Hearing, at 8:17-18). The Court further stated that if

Sicor chose to assert an advice of counsel defense, Sicor would not waive attorney-client and

work product protections for all of the documents Sicor had submitted for the Court's inspection.

Specifically, the Court stated: "I'm not telling you that everything you sent over to me is going to

the other side." (*Id.* at 14:22-23).

This Court's October 11 guidance confirmed that -- contrary to Pharmacia's contentions

in this motion (Br. at 1) -- Sicor's advice of counsel defense does not grant Pharmacia

"unfettered" access to the legal files of Sicor and its attorneys. Rather, Sicor's advice of counsel

defense serves only to waive attorney-client privilege for materials that specifically pertain to

legal advice regarding the validity of Pharmacia's patent, which advice was relied upon by Sicor

in making the decision to launch the allegedly infringing product. This Court's October 11

statements are consistent with its decisions in prior cases and with the holdings of other courts in

the Third Circuit.

For example, in *Chimie v. PPG Industries, Inc.*, 218 F.R.D. 416 (D. Del. 2003) (Jordan,

J.), the plaintiff moved to compel discovery of the defendant's privileged documents concerning

patents that were closely related to the one in suit, arguing that the documents *could* undermine

the defendant's claim that it relied in good faith on the opinion of counsel. *Id.* at 418. This

Court denied the motion, holding that the advice of counsel defense did not give the plaintiff license to seek all documents that may have tangentially related to the legal opinion covering the patent-in-suit. This Court stated: "The power of a charge of willful infringement to knock down privileges that are, in most contexts, regarded with the utmost respect is alone a matter of considerable concern. To amplify the potency of the charge seems unwise when the only justification for doing so is the off-chance that some information may turn up that is inconsistent with previously revealed and otherwise privileged material regarding the patent-in-suit." *Id.* (internal citation omitted); *see also Thorn EMI N.A., Inc. v. Micron Technology, Inc.*, 837 F. Supp. 616, 622 (D. Del. 1993) (holding that documents not reviewed by the defendant in evaluating an opinion of outside counsel were not probative of the company's intent, and therefore not discoverable).

*Robertson v. Allstate Ins. Co.*, No. Civ. A. 98-4909, 1999 WL 179754, at *1 (E.D. Pa. March 10, 1999) (attached as Exhibit E), is similarly informative, and on point to the issue here. In that case, an insurance company defended a bad faith claim by asserting reliance on the advice of outside counsel. *Id.* at *2-*3. Denying plaintiff's motion to compel production of communications by the company's <u>in-house</u> lawyers, the court held that those documents remained protected by the attorney-client privilege because the company was only asserting reliance on the advice of <u>outside</u> counsel, and therefore "ha[d] not taken the affirmative step of placing the advice of in-house counsel at issue." *Id.* at *5.

As was true for the defendant in *Robertson*, Sicor's advice of counsel defense relies exclusively upon the advice it received concerning the validity of the patent-in-suit from its <u>outside</u> counsel -- the Brobeck firm -- in the form of an opinion letter. Sicor's October 24, 2005 letter to the Court, which informed the Court of Sicor's intention to rely solely on Brobeck's advice in defending Pharmacia's willful infringement allegations, was clear in this regard:

> [W]e write to advise the Court that Sicor has decided to assert an
> advice of counsel defense to Pharmacia & Upjohn LLC's willful
> infringement allegation. Having made that decision, Sicor
> recognizes that it must waive the attorney-client privilege with
> respect to the legal opinion upon which it relied in deciding to
> launch its idarubicin hydrochloride injection in the Summer of
> 2002. Thus, Sicor will produce to Pharmacia today the February
> 28, 2001 opinion of the Brobeck Phleger & Harrison firm and the
> supporting declaration of Dr. Waldemar Priebe, which was
> obtained by the Brobeck firm during its opinion work, and the
> other exhibits attached thereto (collectively, the "Brobeck
> Opinion"). The Brobeck Opinion states that "we have reached the
> firm conclusion that all of the claims of the '285 patent are
> invalid."

(Ex. F: October 24, 2005 Letter of S. Balick, Esq. to the Court, at 1).

As Mr. Samson testified during his recent deposition, he relied exclusively on his own

reading of the Brobeck Opinion's Executive Summary and in-house general counsel Wesley

Fach's statement that Brobeck had provided a "strong" invalidity opinion, in deciding to launch

Sicor's idarubicin hydrochloride injection in September 2002. (Ex. B: Samson Tr. at 73:5-17,

74:5-10, 74:18-75:15, 87:21-88:3, 218:11-16, 218:25-219:6, 241:19-242:6). Mr. Samson also

testified that he knew that Mr. Fach was not a patent attorney and did not have a scientific

background. (*Id.* at 58:24-59:2, 59:22-25). Mr. Fach could not and did not opine as to his own

view of the '285 Patent's validity. And, Mr. Samson expressly denied plaintiff's suggestion that

he relied on anything other than the Brobeck Opinion, and on Mr. Fach's statement that the

Brobeck invalidity opinion was "strong" -- a statement that was obvious in light of the Opinion's

"firm conclusion that all of the claims of the '285 Patent are invalid." (*Id.* at 73:5-17, 74:5-10,

74:18-75:15, 87:21-88:3, 218:11-16, 218:25-219:6, 241:19-242:6; Ex. A at 2). Simply put, Sicor

has not placed its in-house lawyer's opinions -- and certainly not his work product views about

Pharmacia's threatened litigation -- at issue in this litigation. Under *Robertson*, Sicor has not waived privilege with respect to those views.[2]

Pharmacia also ignores the critical distinction between the attorney-client privilege and work product doctrine, wrongly asserting that the Court need not "regard[] the name attached to" the underlying protection. (Br. at 9). During the October 11 conference, the Court disagreed with Pharmacia's view, stating that it "typically do[es] not view attorney work product as being within that scope of waiver." (Ex. D at 14:7-8). Once again, this Court's statement is consistent with its decision in *Chimie*, where it held that "a waiver of the attorney-client privilege does not, in and of itself, constitute a waiver of the protections afforded by the work product doctrine" (218 F.R.D. at 420), which is based upon a different public policy and protects "different though frequently complementary interests." *Chimie*, 218 F.R.D. at 421.

Whereas the protection of confidential legal advice concerning the validity of a patent can be waived by a client that injects that advice into the case as a defense to the charge of willful infringement, an "attorney's work product should be accorded 'almost absolute protection from discovery'" in order to protect the integrity of an attorney's thought processes and to ensure that each side in a litigation "'relies on its own wit in preparing their respective cases.'" *Id.* at 420 (citation omitted); *see also In re Cendant Corp.*, 343 F.3d 658, 663 (3d Cir. 2003) ("work-product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery'") (citations omitted).

_____

[2]    In *Chimie*, this Court held that questions related to the scope of a privilege waiver based upon an advice of counsel defense should be governed by "precedent from the regional circuits" (as opposed to the Federal Circuit Court of Appeals). *Robertson* falls squarely within that category and provides persuasive authority for distinguishing between outside and inside counsel in cases where a party defends a bad faith -- or in patent parlance, a "willful infringement" --

Mr. Fach's memos were prepared 18 months or more before Mr. Samson's launch

decision (and long before Mr. Samson became Sicor's CEO), in the context of a prior, pre-launch

threat by Pharmacia to commence litigation against Sicor over the '285 Patent. The documents

chiefly address potential litigation with Pharmacia and strategy in connection with that threat,

which strikes at the very heart of the work product doctrine. The United States Court of Appeals

for the Third Circuit made this abundantly clear in *Cendant*, holding:

> Rule 26(b)(3) provides that, even if the party seeking discovery of
> information otherwise protected by the work product doctrine has
> made the requisite showing of need and undue hardship, courts
> *must* still protect against the disclosure of mental impressions,
> conclusions, opinions, or legal theories of an attorney and his
> agents.
>
> ***
>
> "[C]ore" or "opinion" work product that encompasses the "mental
> impressions, conclusions, opinion, or legal theories of an attorney
> or other representative of a party *concerning the litigation*" is
> "generally afforded *near absolute* protection from discovery.
> Thus, core or opinion work product receives greater protection
> than ordinary work product and is discoverable only upon a
> showing of rare and exceptional circumstances.

*Cendant*, 343 F.3d at 663 (citations omitted) (emphasis added).

The information in the Fach Memos is predominantly "core" work product regarding

analysis of, and strategy for, litigation that had already been threatened. Under *Cendant*, it thus

should be afforded "near absolute protection from discovery."

In a very similar situation, the court in *Minnesota Specialty Crops, Inc. v. Minnesota Wild

Hockey Club, L.P.*, 210 F.R.D. 673, 678-79 (D. Minn. 2002), expressly excluded documents that

"concern litigation strategy" from an order compelling production of documents relating to the

opinion of counsel in a willful trademark infringement case where the defendants asserted an

---

claim by asserting only the advice of outside counsel. In any event, to our knowledge, the
Federal Circuit has not addressed this issue.

advice of counsel defense. Specifically, the *Minnesota Specialty* court held that the defendants "produce all communications, *which do not concern litigation strategy*, but which are 'involved in setting forth a communication expressly indicating an opinion or conclusion on the' issue of whether the Defendants could legally use the Minnesota Wild Mark, given the Plaintiff's use of that mark." *Id.* (citation omitted) (emphasis added). As the *Minnesota Specialty* court necessarily recognized, an attorney's litigation analysis has absolutely no bearing on an alleged infringer's belief regarding the validity of the patent-in-suit (or in that case, the trademark at issue).

Each of the Fach Memos falls outside the scope of Sicor's limited waiver of attorney client privilege. None of them bear on Sicor's state of mind in deciding to launch its idarubicin hydrochloride injection. Mr. Samson testified in his deposition that he alone made the decision at Sicor to launch the product at issue in mid-2002. (*See* Ex. B: Samson Tr. at 94:12-19, 241:19-242:6). Mr. Samson further testified that he did not review or consider any documents in making his 2002 launch decision other than the Brobeck Opinion itself, and that his discussions with Mr. Fach concerning that opinion were limited to Mr. Fach's statement that it was a "strong" one. (*Id.* at 73:5-17, 74:5-10, 74:18-75:15, 87:21-88:3, 218:11-16, 218:25-219:6; 241:19-242:6). Although two of the Fach Memos show Mr. Samson as an addressee, it is no surprise that he did not review or rely upon them in making the launch decision because the documents (dated August and December 2000) significantly predate Mr. Samson's September 2001 appointment as Sicor's Chief Executive Officer and the September 2002 product launch decision by approximately one to two years.

Unable to establish that Mr. Samson reviewed or relied upon the Fach Memos in making his launch decision, Pharmacia conclusorily states that Mr. Fach was himself "a key part of the decision-making process within Sicor." (Br. at 10). However, Pharmacia provides absolutely no

9

evidence for this contention. There is none. Thus, Mr. Fach's state of mind and views on litigation conduct and/or strategy are simply irrelevant to the willfulness issue.

Sicor's belief that the '285 Patent was invalid came solely and exclusively from the Brobeck Opinion, which has been produced along with approximately 150 related documents. Moreover, given the "core" nature of the work product sought, its disclosure will potentially cause significant prejudice to Sicor, which far outweighs any claim that the material is somehow probative of Sicor's reliance on the Brobeck Opinion. *See, e.g., Thorn EMI,* 837 F. Supp. at 623 (holding that, per its "authority to limit the extent of discovery," a court should exclude documents from discovery that may fall within the scope of the waiver but do not have high evidentiary value). Quite simply, Pharmacia has not come close to making a showing of "rare and exceptional circumstances," as it must in order to justify disclosure of the "core" work product that forms the foundation of the Fach Memos. *See Cendant,* 343 F.3d at 663.

## II.    PHARMACIA'S MISCONDUCT IN THIS MOTION -- ITS KNOWING, IMPROPER QUOTATION OF AN INADVERTENTLY PRODUCED PRIVILEGED DOCUMENT

In a good faith effort to fully respond to Pharmacia's document requests, Sicor produced certain documents in redacted form instead of withholding them in their entirety on work product grounds. However, Sicor inadvertently produced one document both in redacted and unredacted form, and demanded return of the unredacted version immediately after learning -- during Mr. Samson's deposition -- that it had been produced. (Ex. B: Samson Tr. at 200-02). Pharmacia refused. (*Id.* at 201:7-10). Soon thereafter, Sicor reiterated its request that the document be returned, and specifically stated -- in accordance with the Protective Order -- that Pharmacia "not attempt to use the unredacted version of [the] document ... in any papers filed with the Court." (Ex. G). Pharmacia then returned the document with a cover letter stating:

> In follow up to our phone conversation last Friday, December 2nd,
> this letter confirms that I have collected and destroyed **all copies** of

10

> the unredacted version of the document bearing Bates No. SICOR-
> PNU 029777, including but not limited to the copy that was
> marked as Plaintiff's Deposition Exhibit 83.
>
> Accordingly, we have no copy of Plaintiff's Deposition Exhibit 83
> at this time.

(Ex. H) (emphasis in original).

However, Pharmacia quoted the redacted portion of that document in its brief here. (Br. at 5). This is outrageous conduct, which this Court should not condone, let alone reward by crediting Pharmacia's improper argument. Pharmacia's misuse of this document is a deliberate, flagrant violation of Paragraph 18(b) of the Protective Order, which states:

> If a written claim of inadvertent production is made pursuant to
> this paragraph, with respect to . . . a document supplied to a
> receiving party, upon receipt of such written notice, the receiving
> party shall return all information subject to the written claim of
> inadvertent production (including all copies, summaries and
> transcriptions of the information) and *shall not* make further
> copies, *transcriptions, or use* of the pertinent material until any
> issues surrounding the production are resolved.

(Ex. C at ¶ 18(b)) (emphasis added).

Sicor first learned of the inadvertent production when Pharmacia's lawyer attempted to use it during Mr. Samson's deposition. Sicor's counsel immediately stated on the record that it had been inadvertently produced in unredacted form and demanded the document's return. (Ex. B: Samson Tr. at 200-202). Pharmacia refused. Instead, over Sicor's objections, Pharmacia's lawyer read the redacted material aloud, thus improperly having it included in Mr. Samson's deposition transcript. (*Id.* at 209:9-210:15). Shamelessly, Pharmacia now claims that because it violated this Court's Protective Order by reading the redacted language into the deposition transcript, that language is now fair game. (Br. at 5 n.2). This is nonsense, and this Court should not countenance Pharmacia's misbehavior, and should deny this motion as a sanction for Pharmacia's blatant litigation misconduct.

In all events, Sicor's redaction of the document was proper, and Pharmacia's attempt to use the redacted material as a proxy for contesting Sicor's redactions on other documents is bereft of merit. Sicor's redaction of the document at issue removed classic "core" work product material concerning anticipated litigation, it thus was not within the scope of Sicor's waiver. For the reasons set forth above, the material also would not have been discoverable because Mr. Samson did not review or rely on it in making his launch decision.

## III.   SICOR PROPERLY REDACTED CERTAIN DOCUMENTS

Pharmacia makes a blanket claim that redactions for privilege are somehow improper. This is wrong as a matter of law, and based upon a complete misreading of *Intex Rec. Corp. v. Metalast, S.A.,* 01 Civ. 1213, 2005 U.S. Dist. LEXIS 10149 (D.D.C. March 2, 2005) (attached as Exhibit I). Contrary to Pharmacia's contention, the *Intex* Court actually *sustained* a defendant's right to redact portions of documents, holding that "[t]he guiding principal, again, is fairness, and the fortuity of combining opinions or subjects in one letter should *not* result in a waiver of privilege as to unrelated subject matters." *Id.* at *17-*18 (citation omitted) (emphasis added). Consistent with that authority, Sicor has only redacted portions of its documents that are either outside the scope of waiver or completely irrelevant to this case.

Pharmacia's implication that Sicor's redactions should not be recognized because they were not set forth on a document formally denoted as a "privilege log" is wrong. The redacted documents themselves informed Pharmacia of their dates, authors, recipients, subject matters and Bates numbers -- all of the information that would be included on a formal privilege log. The redacted portions of the documents included a stamp stating "redacted as work product." And, Sicor explained this to Pharmacia's counsel. (Ex. J). The meaning of the term "work product" should be apparent to Pharmacia's counsel, and given all the information provided with respect to documents redacted on work product grounds, there was no need to formally "log" them.

IV.    **SICOR'S PRIVILEGE LOG ADEQUATELY DESCRIBES THE BASES FOR THE PRIVILEGES ASSERTED**

Tacked on to the end of Pharmacia's brief is a one-page argument that "[n]umerous" entries on Sicor's privilege log fail to provide sufficient information." (Br. at 11). However, Pharmacia does not identify these entries. Sicor is thus unable to provide a comprehensive response to this charge.[3]

The only specific complaint by Pharmacia is that some (unidentified) entries on Sicor's log "do not identify any attorneys involved in the communication." (Br. at 11). However, Sicor can only assume that Pharmacia made this argument in error and/or was mistakenly referring to an early version of Sicor's log because Pharmacia concedes elsewhere in its motion that "Sicor provided an amended privilege log which ... *identified attorneys and provided substantive descriptions*." (Br. at 5) (emphasis added). In the event that Pharmacia has any other specific and reasonable complaints, Sicor will, of course, work in good faith to provide further amendments with the missing information. However, absent any other legitimate complaint, there is no basis to compel production of the documents sought here.

Although Pharmacia's brief does not explicitly request production of Brobeck's legal bills, the Court may infer such a request from the brief's side comment that those documents are not entitled to protection from disclosure. As an initial matter, there is no probative value to the legal bills because Brobeck's legal opinion concerning the patent at issue was set forth in full in the written opinion letter that was sent to Sicor. In any event, those bills remain protected under both the attorney-client privilege and the work product doctrine.

Courts routinely hold that attorney billing statements and time records are protected from disclosure pursuant to the attorney-client privilege. *See, e.g., Fidelity and Deposit Company of*

*Maryland v. McCulloch*, 168 F.R.D. 516, 523 (E.D. Pa. 1996); *George v. Wausau Insurance Co.*,

No. Civ. A 99-CV-6130, 2000 WL 1728511, at *2 (E.D. Pa. Nov. 21, 2000) (attached as Exhibit

K) ("Billing statements and time records are protected only to the extent that they reveal

litigation strategy or the nature of the services provided. Even where billing statements may be

redacted of all privileged information, courts generally deny discovery on the grounds that they

are not reasonably calculated to lead to the discovery of admissible evidence in bad faith cases.")

(internal citations omitted).[4] The privilege attached to Brobeck's narrative descriptions of the

legal services performed is not waived by Sicor's reliance on counsel defense because, as set

forth above, the bills were never reviewed by Mr. Samson, and certainly did not form the basis of

his decision to launch Sicor's idarubicin hydrochloride injection.  (*See* Ex. B: Samson Tr. at

73:5-17, 74:5-10, 74:18-75:15, 87:21-88:3, 218:11-16, 218:25-219:6, 241:19-242:6).  In

addition, Brobeck's narratives are protected as work product because they reflect the Brobeck

attorneys' mental impressions concerning an anticipated litigation -- Pharmacia threatened to sue

Sicor over the '285 Patent on or about August 9, 2000.[5]

---

[3]    Any attempt that Pharmacia may make to cure this fatal deficiency on reply should not be permitted.

[4]    Pharmacia's statement that attorney "bills are generally not considered protected by attorney-client privilege or the work product doctrine" (Br. at 11) is belied by its own authority. In *U.S. v. Keystone Sanitation Co., Inc.*, 885 F. Supp. 672, 675 (M.D. Pa. 1994), the court held that "there is general agreement" that legal bills are protected by the attorney-client privilege "to the extent that they reveal litigation strategy and/or the nature of services performed."  Similarly, in *Kravco Co. v. Valley Forge Center Assoc.*, Civ. No. 91-4932, 1991 U.S. Dist. LEXIS 18752, at *8 (E.D. Pa. Dec. 18, 1991) (attached as Exhibit L), the court held that "[g]enerally, communications from an attorney to his client are privileged if they tend to reveal client communications."

[5]    Although Sicor would not have a substantive objection to producing the legal bills with the narratives redacted, the relevant law provides that a defendant need not produce redacted legal bills that are "stripped of all privilege of information" so that they "consist merely of the date, services performed, numbers of hours spent, amount billed, and perhaps the names of the attorneys performing the services."  *Fidelity and Deposit Company of Maryland*, 168 F.R.D. at 523.

Pharmacia's brief does not specifically identify the grounds for its motion with respect to any other documents it seeks. However, its broad request for all documents "from opining counsel and within Sicor" may include two other categories of documents on the log: (i) communications between Mr. Fach and Brobeck; and (ii) internal Sicor meeting documents from committee meetings that refer to the anticipated Brobeck opinion in general terms and the possibility of litigation. None of these documents were sent to or reviewed by Mr. Samson, and, accordingly, they were not relied upon as part of his decision to launch. (See Ex. B: Samson Tr. at 73:5-17, 74:5-10, 74:18-75:15, 87:21-88:3, 218:11-16, 218:25-219:6, 241:19-242:6). The documents also include mental impressions of attorneys concerning litigation strategy. Accordingly, for the reasons discussed above, they remain protected by the attorney-client privilege and work product doctrines.

Finally, Pharmacia's assertion that Sicor must satisfy a higher burden than Pharmacia in terms of the amount of detail it includes on its privilege log because Sicor's log is less "extensive" than Pharmacia's blunderbuss two thousand-page log (Br. at 11), makes no sense. Sicor's log is thirty pages long because Sicor made every effort to limit entries to material that was truly protected by the attorney-client privilege and/or work product doctrines. Pharmacia cannot be permitted to escape its obligations to provide detailed information on a privilege log by listing thousands of unprotected documents on its log and then claiming that it need not provide detailed log entries because its log is too long. Allowing a party to take that approach would be a perverse incentive indeed. Regardless of the size of its log, the sufficiency of Pharmacia's descriptions should be judged on a entry by entry basis, and each entry on Sicor's log provides adequate information for Pharmacia to determine the category of the applicable privilege and the bases for its assertion.

## CONCLUSION

For the foregoing reasons, Sicor respectfully requests that the Court deny Pharmacia's motion to compel in its entirety.

ASHBY & GEDDES

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated:  January 6, 2006

165363.1

16

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January, 2006, the attached **REDACTED**

**PUBLIC VERSION OF DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**

**TO PLAINTIFF'S MOTION TO COMPEL** was served upon the below-named counsel of

record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                          <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Joshua R. Rich, Esquire                                          <u>VIA FEDERAL EXPRESS</u>
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon