# EXHIBIT E





**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
John T. ROBERTSON, Jr.
v.
ALLSTATE INSURANCE COMPANY
**No. CIV. A. 98-4909.**

March 10, 1999.
Shantee Maharaj, Wayne, Pro se.

MEMORANDUM AND ORDER

SCUDERI, Magistrate J.

 **\*1** Before the court are plaintiff's motion to strike objections and compel defendant's production of documents; defendant's answer thereto; and plaintiff's supplemental memorandum in reply to defendant's answer. [FN1] As set forth more fully herein, plaintiff's motion will be granted in part and denied in part.

> FN1. This motion was referred by the Honorable Joseph L. McGlynn, Jr ., pursuant to 28 U.S.C. § 636(b)(1)(A), by Order dated February 17, 1999. On February 25, 1999, this case was reassigned to the Honorable Raymond J. Broderick.

*FACTS:*

 This is a diversity action involving a bad faith claim brought by plaintiff against his insurer, Allstate Insurance Company ("Allstate"). The bad faith claim arises out of the manner in which Allstate processed plaintiff's claim for underinsured motorist ("UIM") benefits. The underlying facts are as follows. On December 12, 1993, plaintiff, John T. Robertson, Jr., suffered injury when his car was struck by an underinsured motorist. On September 24, 1996, plaintiff demanded Allstate's underinsured motorist policy limits of $200,000. On December 19, 1996, plaintiff submitted to an independent medical examination which had been requested by Allstate. On January 27, 1997, plaintiff was advised that Paul

C. Troy, Esquire, was handling Allstate's defense in plaintiff's UIM claim. On February 5, 1997, plaintiff contends that Allstate offered to settle plaintiff's UIM claim for $75,000--an offer which plaintiff rejected. Allstate made a second settlement offer on November 19, 1997, in the amount of $100,000. Plaintiff rejected this offer as well. Plaintiff argues that Allstate did not offer the policy limits of $200,000 until December 9, 1997, on the eve of trial and after plaintiff's counsel returned from Colorado where the trial deposition of plaintiff's physician took place.

 Plaintiff subsequently filed this bad faith action against Allstate giving rise to the present discovery dispute. On August 26, 1998, plaintiff served Allstate with interrogatories and a request for production of documents. On December 1, 1998, and December 10, 1998, Allstate provided responses and objections to plaintiff's interrogatories and produced a portion of the documentation requested by plaintiff. However, Allstate refused to produce their internal claims and procedure manuals, plaintiff's first party medical benefits file, and documents containing communications between Allstate and its **in-house** and **outside counsel**. [FN2] Allstate resists disclosure of the documents on three grounds: (1) the documents are **work product** protected from disclosure by Federal Rule of Civil Procedure 26(b)(3); (2) the documents are protected by the **attorney**-client privilege; and (3) the documents are irrelevant.

> FN2. In plaintiff's original motion to compel, plaintiff had also requested Allstate's "colossus printout." *See* Pl.'s Mot. at 10-13. Plaintiff has subsequently notified the court that this issue is moot because Allstate provided the printout to plaintiff after the parties agreed to sign a confidentiality agreement. *See* Pl.'s Reply to Def.'s Answer.

*DISCUSSION:*

 Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action." The Rule's relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350 (1978).

**\*2** In evaluating plaintiff's claims, it is necessary to examine what constitutes bad faith in the insurance context. The standard for bad faith claims under 42 Pa. Cons.Stat. Ann. § 8371 is set forth in *Terletsky v. Prudential Property & Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994), *appeal denied,* 540 Pa. 641, 659 A .2d 560 (1995). *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997). [FN31] There, the Pennsylvania Superior Court applied a two-part test, both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis. *Id.* The *Terletsky* court also stated that:

> FN3. Neither party has contended that the law of a state other than Pennsylvania governs the plaintiff's bad faith claim.

"[b]ad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Id.* (citing *Terletsky, 649 A.2d at 688)* (citation omitted)).

Plaintiff contends that he is entitled to his unredacted UIM claim file and all documents associated with the file because such documentation is essential to the process of determining the reasonableness of Allstate's actions in evaluating his UIM claim. Allstate's arguments in opposition to the production of certain documentation will be addressed categorically.

### 1. *The **Work Product** Doctrine*

Allstate argues that a December 12, 1996, report from Agnes McKenna to the law offices of Vaughn Booker and a February 6, 1997, letter from **attorney** Paul Troy to **attorney** John Barr are protected from discovery by the **work product** doctrine because they were prepared in "anticipation of litigation." *See* Def.'s Answer at 13-15. Plaintiff contends that since the instant matter centers upon how his UIM claim was handled by Allstate, there can be no **attorney**

**work product** claimed regarding the strategy, mental impressions, and **opinions** of Allstate's agents concerning the handling of his underlying UIM claim.

The Supreme Court case of *Hickman v. Taylor* was the seminal case in the development of what is now termed the **work product** doctrine. In *Hickman,* the Supreme Court created a limited immunity from discovery for the written statements, private memoranda, and personal recollections prepared by an adverse party's **counsel** in anticipation of litigation. *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131, 133 (S.D.1982). Federal Rule of Civil Procedure 26(b)(3) codifies the essential portion of the doctrine as announced in *Hickman* and expands it by extending discovery protection of the work product of a party or his agents and representatives as well as that party's attorney. *Id.;* Fed.R.Civ .P. 26(b)(3). "The general rule for determining whether a document was prepared in anticipation of litigation is whether the document can fairly be said to have been prepared or obtained because of the prospect of litigation ... 'The rule is limited, however, by the requirement that the preparer's anticipation of litigation be objectively reasonable." ' *Garvey v. National Grange Mut. Ins. Co.,* 167 F.R.D. 391, 393-94 (E.D.Pa.1996) (citations omitted).

**\*3** In order for the work product privilege to apply, the party opposing discovery must show that the document requested was obtained or created "because of the prospect of litigation, not in the regular course of business." *Raso v. CMC Equipment Rental, Inc.,* 154 F.R.D. 126, 127-28 (E.D.Pa.1994). Because "insurance companies are required to evaluate the claims made by one of its insureds, discovery disputes involving an insurance company's claims file often present problems for the parties." *Garvey,* 167 F.R.D. at 394. "While it may be true that 'federal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer,' *United Coal Companies v.. Powell Const. Co.,* 839 F.2d 958 (3d Cir.1988), it is equally clear that Rule 26(b)(3) 'was not intended to protect all insurance claim files from discovery." *Jet Plastica Indus. Inc. v. Goodson Polymers, Inc.,* 1992 WL 10474, at \*1-\*2 (E.D.Pa. Jan. 15, 1992) (citation omitted). "An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insureds." *Lyvan D.D.S. v. Harleysville Ins. Co. et al., 1994 WL*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179754 (E.D.Pa.)
**(Cite as: 1999 WL 179754 (E.D.Pa.))**

533907 (E.D.Pa. Sept. 29, 1994). However, plaintiff's mere claim of bad faith is not enough to shatter the work-product privilege. *Provident Life & Acc. Ins. Co. v. Nissenbaum,* 1998 WL 800323, at *1 (E.D.Pa. Nov. 17, 1998); (citing *Dombach v. Allstate Ins. Co.,* 1998 WL 633655, at *1 (E.D.Pa. Aug. 27, 1998); *Fidelity & Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516 (E.D.Pa.1996); *Garvey v. National Grange Mut. Ins. Co.,* 167 F.R .D. 391, 393-95 (E.D.Pa.1996)).

*A. Attorney Troy's letter to Attorney Barr*

Allstate objects to producing a letter from Attorney Troy to Attorney Barr asserting that the letter is protected by the work product privilege. [FN4] I find that Allstate has waived the work product privilege with regard to Attorney Troy's letter to Attorney Barr. "[Work] product immunity is waived by use in litigation only when 'the client asserts' that ... 'the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the clients' conduct." ' *Fidelity and Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 521 (E.D.Pa.1996) (citing *In re Painted Aluminum Products Antitrust Litigation,* 1996 WL 39742, at *4 (E.D.Pa.1996)). In this case, Allstate has clearly waived the **work product** privilege by asserting the affirmative defense that it relied upon the advice of **Attorney** Troy. When a party asserts an advice-of-**counsel** defense, the reasonableness of the reliance is a pertinent factor, and hence the reasonableness of the advice may be examined. By placing the advice of **Attorney** Troy at issue, Allstate has opened to examination facts **relating** to that advice. Indeed, Allstate has provided plaintiff with all letters **Attorney** Troy sent to Allstate and all letters Allstate sent to **Attorney** Troy. Because Allstate has not credibly argued that **Attorney** Troy's letter to **Attorney** Barr alone should be protected by the **work product** doctrine, this court will order production of the letter. *See, e.g., Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486 (3d Cir.1995) (allowing a party to define selectively the subject matter of the advice of **counsel** on which it relied in order to limit the scope of the waiver of the **attorney**-client privilege would undermine the purpose behind the exception to the privilege).

FN4. Allstate contends that the letter from **Attorney** Troy to **Attorney** Barr asks Mr. Barr to serve as Allstate's arbitrator and provides a brief summary of the progress of the UIM claim from Mr. Troy's point of view. *See* Def.'s Answer at 13.

*B. Agnes McKenna's Report to the Law Offices of Vaughn Booker*

**\*4** Allstate has also failed to produce a report dated December 20, 1996, prepared by Allstate employee Agnes McKenna to the law offices of Vaughn Booker. Allstate contends that the report is clearly protected by the work product doctrine since the report was a suit assignment to counsel and contains a litigation plan.

I find that the disputed documentation was prepared or obtained because of the prospect of litigation. Therefore, the documents at issue are protected by the work product doctrine. *See Fidelity and Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 524 (E.D.Pa.1996) (finding that bad faith claims do not present an exception to the work-product doctrine).

The work product doctrine's protections are not absolute, however. Once the movant meets the burden of showing that the materials were prepared in anticipation of litigation, then the opposing party has the burden of overcoming the protection. *Hickman,* 329 U.S. at 512; *see In re Grand Jury Investigation, 599 F.2d 1224, 1230 (3d Cir.1979).* The work product doctrine can be overcome by a showing of "substantial need" in conjunction with a showing that the "substantial equivalent" of the requested materials is unavailable. *Hartman v. Banks,* 164 F.R.D. 167, 169 (E.D.Pa.1995). Even when such a showing has been made, however, a court must take care to protect from discovery "disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

This court finds that plaintiff has failed to establish substantial need for the document in question. The information plaintiff seeks can be developed through depositions and other discovery of non-privileged information. *See Garvey, 167 F.R.D. at 393-95* (recognizing that parties prosecuting bad faith claims can discover the "substantial equivalent" of privileged information through depositions). Absent a showing of substantial need, this Court will not compel discovery of **work-product** protected by Federal Rule of Civil Procedure 26(b)(3). Accordingly, Allstate need not produce Agnes McKenna's report to the Law Offices of Vaughn Booker dated December 20, 1996.

2. ***Attorney*-Client Privilege**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179754 (E.D.Pa.)
**(Cite as: 1999 WL 179754 (E.D.Pa.))**

Page 4

Allstate has asserted reliance on the advice of **counsel** as an affirmative defense in the instant matter. Plaintiff contends that Allstate waived the protections of the **attorney**-client privilege by placing the advice of **counsel** at issue in this case. Allstate counters this argument with the assertion that it has only asserted the defense of reliance of the advice of *outside* **counsel**. *See* Def.'s Answer at 12. Therefore, Allstate contends, any communications between Allstate and its **in-house counsel** should remain protected by the **attorney**-client privilege. [FN5] *Id.*

> FN5. Plaintiff seeks to compel production of the following communications:
> 1) a one-page fax cover sheet from Barbara Fletcher, the claims analyst handling plaintiff's UIM claim, to Joseph Radagno, Esquire, Allstate's **in-house counsel**;
> 2) a two-page memorandum from Agnes McKenna to **Attorney** Radagno;
> 3) a two-page letter from John Connolly, Esquire, also Allstate's **in-house counsel**, to Barbara Fletcher; and 4) three sentences describing a telephone conversation between Barbara Fletcher and **Attorney** Connolly. *See* Def.'s Mot. at 10.

Federal courts sitting in diversity jurisdiction must apply state substantive law with regard to **attorney**-client privilege. *See* Fed.R.Evid. 501; *Eastern Technologies, Inc. v. Chem-Solv., Inc.,* 128 F.R.D. 74, 76 (E.D.Pa.1989). In Pennsylvania, the privilege is governed by 42 Pa. Cons.Stat. Ann. § 5928, which provides: "In a civil matter **counsel** shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." *See* 42 Pa. Cons.Stat. Ann. § 5928. In order to invoke the attorney-client privilege, the party resisting discovery must show the following:

*5 (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is (a) a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the

client.

*Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co.,* 32 F.3d 851, 862 (3d Cir.1994) (citations omitted).

In this Circuit, a party waives the attorney-client privilege by placing the advice of counsel in issue only where "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication ." *Fidelity and Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 520 (E.D.Pa.1996) (citing *Rhone-Poulenc Rorer Inc. v. Home Indemnity Company,* 32 F.3d 851, 863 (3d Cir.1994); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486 (3d Cir.1995)). Advice of counsel "is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Id* . (citations omitted). Rather, the client must take "the affirmative step in the litigation to place the advice of the attorney in issue." *Id.* Leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue provides certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege and provides predictability for the client concerning the circumstances by which the client will waive that privilege. *Rhone-Poulenc Rorer Inc.,* 32 F.3d at 863. This certainty and predictability as to the circumstances of the waiver encourage clients to consult with **counsel** free from the apprehension that the communications will be disclosed without their consent. *Id.* at 863-64.

Allstate has not taken the affirmative step of placing the advice of **in-house counsel** at issue in the instant matter. To allow plaintiff to discover communications between Allstate and **in-house counsel** would undermine the very purpose behind the exception to the **attorney**-client privilege at issue here-- fairness. *Glenmede Trust Co.,* 56 F.3d at 486. The party opposing the defense of reliance on advice of **counsel** must be able to test what information had been conveyed by the client to **counsel** and vice-versa regarding that advice--whether **counsel** was provided with all material facts in rendering their advice, whether **counsel** gave a well-informed **opinion** and whether that advice was heeded by the client. *Id.* In the instant matter, plaintiff has no need to test the information provided by Allstate to **in-house counsel** and vice-versa because that information has not been placed at issue. Plaintiff's simple assertion of bad faith does not entitle him to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 5
Not Reported in F.Supp.2d, 1999 WL 179754 (E.D.Pa.)
**(Cite as: 1999 WL 179754 (E.D.Pa.))**

circumvent the **attorney**-client privilege. As a result, communication between Allstate employees and **in-house counsel** are protected by the **attorney**-client privilege and are not discoverable. [FN6]

> FN6. Plaintiff also asserts that the **attorney**-client privilege would not shield the requested documents from discovery because the privilege does not apply to any communications in which **in-house counsel** was acting as Allstate's business agent. *See* Pl.'s Mot. at 16-17, 22. This argument rejects this argument in light of Allstate's representation that the communications at issue did not contain business advice, but rather involved legal advice about how to proceed with the UIM arbitration.

3. *Relevance*

A. *Allstate's Internal Claims and Procedure Manuals*

**\*6** Plaintiff has requested that Allstate produce claims or procedure manuals setting forth company practices or policies regarding the handling of UIM claims. Plaintiff argues that the relevant portions of the claims manual qualitatively define the specific requirements made of the claims department when handling a UIM claim and that any deviation from these standards may indicate unreasonableness by Allstate's agents or employees. *See* Pl.'s Mot. at 25. Defendant contends that this information is irrelevant since general corporate procedure is not at issue in the instant matter.

This court has determined that information contained in the manuals is relevant because it contains instructions concerning procedures used by Allstate employees in handling UIM claims such as plaintiff's claim. Although the fact that Allstate employees departed from established standards in handling plaintiff's UIM claim would not alone establish bad faith, such information "is probative evidence for plaintiff to demonstrate bad faith." *See Kaufman v. Nationwide Mut. Ins. Co., 1997 WL 703175, at \*2 n. 2 (E . D.Pa. Nov. 12, 1997)* (in bad faith case, insurer ordered to produce information in claims manuals concerning procedures used by insurer's employees in handling UIM claims). Given the liberal scope of federal discovery and the fact that such information may lead to the discovery of admissible evidence, Allstate is ordered to produce claims or procedure manuals setting forth company practices or policies regarding the handling of UIM claims. [FN7]

> FN7. Allstate argues that plaintiff should be required to keep information obtained from the claims manual confidential because "[t]he claims manuals ... contain information in the nature of trade secrets that could be used by Allstate's competitors." *See* Def.'s Answer at 8, n. 4. Despite the vagueness of Allstate's allegations regarding the existence "trade secrets," the court will order that plaintiff is required to keep all information provided in the claims manual confidential in order to provide adequate safeguards for Allstate's confidential materials.

B. *Allstate's First Party Medical Benefits File*

Plaintiff also seeks to have Allstate produce his first party medical benefits file, a file relating to Allstate's direct payment of some of plaintiff's medical expenses. Plaintiff contends that his first party medical claim file may have been made available to the claim representative handling his UIM claim. If so, plaintiff argues, the file would be relevant because the UIM claim representative may have been influenced by the first party medical adjuster's notes, log entries, computer entries and progress reports. In addition, plaintiff argues that there may have been overlap between the first party claims file and the underinsured motorist log and that the first party medical claim file may reveal inconsistencies in the handling of plaintiff's claim, thereby providing evidence of bad faith. Allstate objects to providing their first party medical file on the basis that the file is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence related to plaintiff's UIM claim.

In attempting to establish that plaintiff's first party claims file is unrelated to his UIM claim, Allstate stresses the difference between first party medical benefit coverage and UIM claims. However, this court is not persuaded by the distinction. Allstate admits that the first party claim file had been reviewed by the UIM negotiator. *See* Def.'s Mot. at 10. Clearly, information found in the first party claim file may have influenced the UIM negotiator or may indicate a difference in opinion or analysis between the first party claims adjuster and agents or employees involved in processing plaintiff's UIM claim. As such, the first party claim file may be a relevant factor in determining if plaintiff's UIM claim was ultimately processed by Allstate in a reasonable manner. Accordingly, Allstate is ordered to produce plaintiff's first party claim file. [FN8]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 6
Not Reported in F.Supp.2d, 1999 WL 179754 (E.D.Pa.)
**(Cite as: 1999 WL 179754 (E.D.Pa.))**

        [FN8.](#) Allstate contends that this issue is effectively moot because all of the documents in the first party file have already been produced with the exception of one document, one of the plaintiff's own medical records. *See* Def.'s Answer at 10. To comply with the terms of this order, Allstate need only produce those documents from plaintiff's first party file which have not previously been provided.

  **\*7** An appropriate order follows.

ORDER

 AND NOW, this 10th day of March, 1999, IT IS HEREBY ORDERED, that Plaintiff's Motion to Strike Objections and Compel Defendant's Production of Documents (Document # 12) is GRANTED IN PART and DENIED IN PART. Plaintiff's motion to compel is GRANTED in accordance with the following:

  Defendant Allstate Insurance Company is to produce the following documentation within seven (7) days of the date of this Order:

  1. The February 6, 1997, letter from Attorney Paul Troy to Attorney John Barr;

  2. Plaintiff's first party medical benefits file; and

  3. Claims or procedure manuals setting forth company practices or policies regarding the handling of underinsured motorist claims. Plaintiff is to keep all information provided in the claims or procedure manual confidential.

 All other aspects of Plaintiff's Motion to Compel are DENIED.

 Not Reported in F.Supp.2d, 1999 WL 179754 (E.D.Pa.)

  **Motions, Pleadings and Filings (Back to top)**

• [2:98cv04909](#) (Docket) (Sep. 15, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.