# EXHIBIT 11

(Cite as: 2005 WL 3597712 (E.D.Pa.))

Only the Westlaw citation is currently available.

United States District Court,

E.D. Pennsylvania.

**SMITHKLINE BEECHAM CORPORATION, Smithkline Beecham, P.L.C., Beecham Group, P.L.C. and Glaxosmithkline, P.L.C.**
v.
**APOTEX CORPORATION, Apotex, Inc. and Torpharm, Inc.**
v.
**PENTECH PHARMACEUTICALS, INC. and Par Pharmaceuticals, Inc.**
**SMITHKLINE BEECHAM CORPORATION, Smithkline Beecham, P.L.C. and Beecham Group, P.L.C.**
v.
**GENEVA PHARMACEUTICALS, INC. and Sumika Fine Chemicals Co., Ltd.**
**SMITHKLINE BEECHAM CORPORATION, Smithkline Beecham, P.L.C. and Beecham Group, P.L.C.**
v.
**ZENITH GOLDLINE PHARMACEUTICALS, INC. and Sumika Fine Chemicals Co., Ltd.**
**SMITHKLINE BEECHAM CORPORATION, Smithkline Beecham, P.L.C. and Beecham Group, P.L.C.**
v.
**ALPHAPHARM PTY, Ltd. and Sumika Fine Chemicals Co., Ltd.**
**SMITHKLINE BEECHAM CORPORATION, and Beecham Group, P.L.C.**
v.
**BASF CORPORATION, Basf Pharmachemikalien Gmbh & Co. KG and Knoll AG.**
**SMITHKLINE BEECHAM CORPORATION, and Beecham Group, P.L.C.**
v.
**TEVA PHARMACEUTICALS USA, INC.**
No. 99-CV-4304, 00-C V -4888, 01-CV-0159, 01-CV-2169, 99-CV-2926, 00-CV-5953, 02-CV-1484, 00-CV-1393, 00-CV-6464, 01-CV-2602, 01-CV-1027, 01-CV-3364, 02-CV-8493, 01-CV-2981, 03-CV-6117, 03-CV-3365.

Dec. 30, 2005.

MEMORANDUM & ORDER

SURRICK, J.

**\*1** Presently before the Court is Defendants Apotex Corp., Apotex, Inc., And TorPharm, Inc.'s (collectively "TorPharm" or "Defendant") Motion To Compel Plaintiffs SmithKline Beecham Corporation, Beecham Group, P.L.C., SmithKline Beecham P.L.C., And GlaxoSmithKline, P.L.C. (collectively "SB" or "Plaintiff") To Produce Certain Documents From SB's Privilege Log (Doc. No. 173, 99-CV-4304; Doc. No. 129, 00-CV-4888; Doc. No. 125, 01-CV-159; Doc. No. 116, 01-CV-2169). For the following reasons, Defendant's Motion will be granted in part and denied in part.

I. BACKGROUND [FN1]

FN1. Additional background regarding this litigation and the applicable statutory framework may be found in our Memoranda and Orders dated September 28, 2001, September 30, 2002, October 31, 2002, December 20, 2002, September 29, 2004, and March 31, 2005. (Doc. Nos.50, 71, 77, 85, 165, 182.) Unless otherwise specified, all docket numbers cited in this Memorandum refer to the filings in Civil Action No. 99-4304.

These consolidated cases involve claims by SB of patent infringement. The patents at issue cover certain forms of paroxetine hydrochloride, processes for making paroxetine hydrochloride, and uses of paroxetine hydrochloride. SB manufactures paroxetine hydrochloride, and then tablets and sells that product in the United States under the trademark Paxil ("Paxil"). Paxil is an antidepressant drug used to treat a variety of disorders and is one of the most widely prescribed drugs in the United States.

Defendant is a generic drug manufacturer that seeks to sell a generic version of Paxil. SB claims that Defendant's generic products and/or methods of manufacturing the same infringe upon one or more of SB's patents. In March 1998, Defendant became the first generic drug manufacturer to file an Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration seeking its approval to market a generic version of Paxil. [FN2]

FN2. Pursuant to the Drug Price Competition and Patent Term Restoration Act, also known as the Hatch-Waxman Act ("Hatch-Waxman"), Pub.L. No. 98-417, 90 Stat. 1585 (1984) (codified in scattered sections of 21, 35, and 42 U.S.C.), a generic drug manufacturer may seek expedited approval to market a generic version of a previously approved drug by submitting an ANDA to the FDA. 21 U.S.C. § 355(j) (2000). Under Hatch-Waxman, an ANDA may rely on the FDA's previous determination with respect to the New Drug Application ("NDA") that the drug is safe and effective, if it can demonstrate that the generic drug is the bioequivalent of the previously approved drug. Id. An applicant filing an ANDA must certify that its proposed generic drug will not infringe upon an existing patent because (1) the required patent information has not been filed, (2) the patent has expired,

(Cite as: 2005 WL 3597712 (E.D.Pa.))

(3) the patent has not yet expired, but will expire on a particular date, or (4) the patent is invalid or will not be infringed by the drug for which the applicant seeks approval. Id. § 355(j)(2)(A)(vii). A more detailed summary of Hatch-Waxman's procedures for submission and approval of an ANDA may be found in our Memoranda and Orders of September 28, 2001, December 20, 2002, July 16, 2004, and September 29, 2004. (Doc. Nos.50, 85, 165.)

Defendant submitted its ANDA for a generic version of Paxil on March 31, 1998. The active ingredient listed in Defendant's ANDA is a form of paroxetine hydrochloride and a bioequivalent of Paxil's active ingredient. In response to the ANDA, SB filed five lawsuits alleging that Defendant's production of the generic drug would infringe several patents held by SB. [FN3] On September 28, 2001, the four lawsuits filed in this District were consolidated for purposes of pretrial discovery. SmithKline Beecham Corp. v. Geneva Pharms., Inc., Nos. 99-2925 et al., 2001 U.S. Dist. LEXIS 14434, at *23 (E.D.Pa. Sept. 28, 2001).

FN3. The first action, filed in the Northern District of Illinois (No. 98-CV-3952) on June 26, 1998, alleges infringement of U.S. Patent No. 4,721,723 (the " '723 Patent"). We refer to this action as the "Illinois Litigation." In this District, SB filed Civil Action No. 99-CV-4304 on August 26, 1999, alleging infringement of U.S. Patent No. 5,900,423 (the " '423 Patent"). On September 27, 2000, SB filed Civil Action No. 00-CV-4888, alleging infringement of U.S. Patent No. 6,080,759 (the " '759 Patent") and seeking declaratory judgment that Defendant's future commercial manufacture and sale of its paroxetine hydrochloride product would infringe the process claims of the '759 Patent. Civil Action No. 01-CV-159, filed on January 11, 2001, alleges infringement of U.S. Patent No. 6,133,944 (the " '944 Patent"). SB filed Civil Action No. 01-CV-2169 on May 2, 2001, alleging infringement of U.S. Patent No. 6,172,233 (the " '233 Patent") and seeking a declaratory judgment that the process claims of the '233 Patent would be infringed by Defendant's future commercial manufacture and sale of its proposed paroxetine hydrochloride product.

During the discovery process, SB initially withheld over 1800 documents, claiming that these materials were protected by the attorney-client privilege and/or the work-product doctrine. (Def.'s Mem. In Supp., Doc. No. 173 at 2.) In the instant Motion, Defendant requests that the Court order SB to produce various categories of these documents, because they: (1) are not dated on or after May 18, 1998 and thus cannot qualify as work-product; (2) do not include identifying information necessary to sustain SB's privilege claims; (3) lack any indicia of attorney involvement; or (4) were transmitted to an attorney with no evidence that the attorney was involved in providing confidential legal advice. (Id.)

The exact materials in dispute appear to be constantly in flux. Defendant initially identified and sought production of over 1000 documents. [FN4] After considering SB's Memorandum in Opposition to this Motion (Doc. No. 176) and "revised" privilege log (id. at Ex. 1), Defendant withdrew its request for over 150 of the documents, indicating that "SB ... [has] created a moving target regarding its privilege assertions." (Def.'s Reply In Supp., Doc. No. 180 at 1 n. 1, Attach. 3.) In its Surreply (Doc. No. 183), filed April 8, 2005, SB "withdr[ew] its privilege claim for several other[ ]" documents, without explanation. Plaintiff submitted a further revised log that is forty pages shorter than its predecessor and contains fewer than 800 documents. (Id. at Ex. 1.)

FN4. Defendant submitted a list of 417 documents (Doc. No. 173 at Attach. 1) and a list of 659 documents (Id. at Attach. 2), categorized based on the nature of Defendant's challenge to SB's privilege claims. There is extensive overlap between these lists.

II. LEGAL STANDARD

A. Choice of Law

*2 Since jurisdiction in this case arises under 28 U.S.C. § 1338, we are bound by the substantive patent law of the Federal Circuit. Paduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1573 (Fed.Cir.1984). "[D]iscovery disputes and other procedural issues unique to patent cases should be decided pursuant to the law of the Federal Circuit, as opposed to the regional circuit." Simmons Inc. v. Bombardier, Inc., 221 F.R.D. 4, 9 n. 5 (D.D.C.2004). However, the Federal Circuit has concluded that regional circuit law "appl[ies] to procedural questions that are not themselves substantive patent law issues so long as they do not ... pertain to patent law." GFI Inc. v. Franklin Corp., 265 F.3d 1268, 1272 (Fed.Cir.2001). Thus, where a motion to compel production of documents is challenged, we rely on regional circuit law. Dorf & Stanton Commc'ns, Inc., v. Hill, Holiday, Connors, Cosmopulous, Inc., 100 F.3d 919, 922 (Fed.Cir.1996); Am. Standard v. Pfizer, Inc., 828 F.2d 734, 739 (Fed.Cir.1987). We will generally apply Third Circuit law, but turn to Federal Circuit precedent when our analysis "clearly implicat[es] substantive patent" issues. In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803-04 (Fed.Cir.2000).

B. Attorney-Client Privilege

The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26, which provides that relevant but privileged matters are not discoverable. Fed.R.Civ.P. 26(b)(1); Martin Marietta Materials, Inc. v. Bedford Reinforced

(Cite as: 2005 WL 3597712 (E.D.Pa.))

Plastics, Inc., 227 F.R.D. 382, 389 (W.D.Pa.2005). As the "oldest of the privileges for confidential communications known to the common law," it serves the purpose of "foster[ing] disclosure and communication between the attorney and the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3d Cir.1979). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn, 449 U.S. at 389.

However, courts have recognized that "the privilege obstructs the search for the truth and because its benefits are, at best 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle .'' ' In re Grand Jury Investigation, 599 F.2d at 1235 (quoting 8 Wigmore on Evidence § 2291, at 545 (1961)). As such, the party claiming that the privilege exists bears the burden of proving that it applies to the communication at issue. In re Grand Jury Empanelled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir.1979) (citing United States v. Landof, 591 F.2d 36, 38 (9th Cir.1978). Whether the privilege applies is a question of law to be decided by the court. Andritz Sprout-Bauer, Inc. v. Beazer E., Inc., 174 F.R.D. 609, 632 (M.D.Pa.1997). The attorney-client privilege will not apply where the party asserting it cannot demonstrate that:

> *3 (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Investigation, 599 F.2d at 1233 (citing United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358-59 (D.Mass.1950)). "The central inquiry is whether the communication was made by a client to an attorney for the purpose of obtaining legal advice." In re Spalding Sports Worldwide, 203 F .3d 800, 805 (Fed.Cir.2000).

There are some exceptions, however, even if these criteria are satisfied.

> The protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories.

Hickman v. Taylor, 329 U.S. 495, 508 (1947).

C. Work-Product Doctrine

The work-product doctrine immunizes from discovery documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed.R.Civ.P. 26(b)(3). This doctrine is "distinct from and broader than the attorney-client privilege." United States v. Nobles, 422 U.S. 225, 238 (1975) (citing Hickman, 329 U.S. at 508).

It is well-established that the party asserting work-product protection has the burden of proving that the materials were prepared in anticipation of litigation. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir.2000). In applying the doctrine, courts consider the nature of the document for which protection is sought, as well as the facts surrounding its creation and distribution. Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir.1993). Based upon these facts, the court determines whether "the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 803 (3d Cir.1979).

In undertaking this analysis, a court must consider the motivating purpose behind the creation of the document. United States v. Rockwell, 897 F.2d 1255, 1266 (3d Cir.1990). "Generally, a reasonable anticipation of litigation requires existence of an identifiable specific claim or impending litigation at the time the materials were prepared." Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., Civ. A. No. 00-CV-3683, 2001 U.S. Dist. LEXIS 7145, at *13 (E.D.Pa. May 31, 2001). However, "[a]dvising a client about matters which may or even likely will ultimately come to litigation does not satisfy the 'in anticipation of' standard. The threat of litigation must be more imminent than that." In re Grand Jury Investigation (Sturgis), 412 F.Supp. 943, 948 (E.D. Pa 1976).

III. DISCUSSION

A. Relevancy of Paroxetine Mesylate Documents

*4 In its Memorandum in Opposition, SB argues that a number of the documents sought by Defendant "relate to paroxetine mesylate and reflect work product created to prepare for anticipated paroxetine mesylate patent

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(Cite as: 2005 WL 3597712 (E.D.Pa.))

litigation against Synthon." (Doc. No. 176 at 29.) SB claims that 220 of these documents are "irrelevant to the paroxetine litigation pending in Philadelphia" and that, as such, their production cannot be compelled. (Id. at 29-30.) In response to this claim, Defendant concedes that the Synthon litigation deals with issues that are neither in contention nor relevant to the present case and Defendant therefore withdraws its request for fifty of these documents. (Doc. No. 180 at 19.)

However, Defendant maintains its request for the remaining approximately 170 documents, arguing that the descriptions in SB's original and revised logs fail to mention that such documents pertain to paroxetine mesylate or the Synthon litigation. (Id.) We are satisfied that SB has remedied this deficiency in the log accompanying its Surreply. (Doc. No. 183 at Ex. 1.) In this second revised log, SB adequately identifies and describes 234 documents which "concern legal advice and legal services in connection with paroxetine mesylate patent applications, paroxetine mesylate patents and paroxetine mesylate regulatory issues." (Id. at 15 n. 11.) Plaintiff explains that these documents were originally included in the "logs because they relate to paroxetine mesylate and were responsive to document requests propounded by Synthon," but are not pertinent to the claims against Torpharm. (Id. (quoting id. at Ex. 10, p. 2).) Since these documents are not relevant to the present case, we will not compel their production. Fed.R.Civ.P. 26(b)(1).

B. Application of Collateral Estoppel

Defendant contends that SB is collaterally estopped from invoking the work-product doctrine with respect to documents created before May 18, 1998, because the court in the Illinois Litigation established that date as the work-product cut-off. (Doc. No. 173 at 4-5; Doc. No. 180 at 2-4.) During the Illinois Litigation, Torpharm filed a motion seeking production of a similar set of documents. SmithKline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 533 (N.D. Ill.2000). Magistrate Judge Edward A. Bobrick determined that because "plaintiffs [SB] became aware of defendants' competing product on May 18, 1998 ... [t]hat would be the earliest date plaintiffs could be said to have anticipated the instant litigation." Id. at 541. As such, only documents created after that date could be deemed work product immune from discovery. Id. Upon review in the District Court, the Honorable Charles P. Korcoras ruled that while Magistrate Judge Bobrick correctly determined a date before which litigation could not have been anticipated, he erred in denying protection to certain documents "prepared in aid of ongoing litigation." SmithKline Beecham Corp. v. Apotex Corp., No. 98-CV-3952, 2000 WL 1310669, at *4-5 (N.D. Ill. Sept. 13, 2000), mandamus denied sub nom. In re SmithKline Beecham Corp., 243 F.3d 565 (Fed.Cir.2000) (table).

**\*5** The doctrine of collateral estoppel "prevents the relitigation of issues that have been decided in a previous action." Hawksbill Sea Turtle v. FEMA, 126 F.3d 461, 474 (3d Cir.1997). The application of collateral estoppel requires that:

> (1) the previous determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was actually decided in a decision that was final, valid and on the merits; and (4) the party being precluded from relitigating the issue was adequately represented in the previous action.

Id. at 475. Even where these factors are present, "equitable concerns [may make] it inappropriate to foreclose relitigation of an issue." Haymond, Napoli Diamond, P.C. v. Haymond, No. Civ.A. 02-721, 2004 WL 2030134, at \*11 (E.D.Pa. Sept. 8, 2004).

Since Judge Korcoras refused to compel production of documents prepared in aid of ongoing litigation, SmithKline, 2000 WL 1310669, at \*4-5, SB argues that collateral estoppel must apply in its favor with respect to those documents. (Doc. No. 183 at 3.) SB also argues that collateral estoppel dictates that we adopt certain favorable findings of Judge Korcoras with respect to attorney-client privilege. SmithKline, 2000 WL 1310669, at \*8. Defendant points to the litigation between SB and the Federal Trade Commission where preclusive effect was given to Judge Korcoras's findings, and that, therefore, "SB should be ordered to produce documents withheld on work product grounds which (1) are dated prior to May 18, 1998 or (2) do not bear evidence that the documents were created on or after May 18, 1998." (Doc. No. 173 at 4 (citing FTC v. GlaxoSmithKline, 202 F.R.D. 8, 11-12 (D.D.C.2001), rev'd, 294 F.3d 141 (D.C.Cir.2002)).)

When analyzing a claim based on the work-product doctrine, the "nature of the document" is an important consideration. FMC Corp., 604 F.2d at 803. Here, Defendant seeks to compel production of a different set of documents. (Doc. No. 176 at 16; Doc. No. 180 at 3.) As such, it is not entirely clear that this "identical issue was previously litigated." Hawksbill, 126 F.3d at 475. In addition, neither party has provided particularly persuasive authority on the use of collateral estoppel under these circumstances. Accordingly, rather than deciding whether the Illinois Litigation should be given preclusive effect, we will "turn instead to the substantive application of the attorney-client privilege and work-product doctrine to the documents in question." See Union Carbide Corp. v.. Dow Chem. Co., 619 F.Supp. 1036, 1046 (D.Del.1985).

C. Attorney-Client Privilege Claims

(Cite as: 2005 WL 3597712 (E.D.Pa.))

1. SB's Failure to Identify Authors, Recipients, and Dates in Privilege Log

Defendant initially identified 125 instances where SB's document descriptions failed to identify an author, recipient, or date. (Doc. No. 173 at 5 n. 5.) At present, only fifty documents remain at issue as to Defendant's challenge on these grounds. [FN5] (Doc. No. 180 at 9 n. 13.) According to Defendant, "[b]y neglecting to provide this basic information, SB has failed to carry its burden of establishing the elements necessary to invoke [attorney-client] privilege with respect to these documents." (Doc. No. 173 at 5.)

   FN5. Among the documents challenged by Defendant, a number are either (1) not listed on Plaintiff's most recent log, or (2) irrelevant in that they relate to paroxetine mesylate. We need not address these documents. In other instances, Defendant challenges the application of attorney-client privilege to documents for which Plaintiff only asserts work-product protection. We address those documents to which Plaintiff alleges work-product protection in Part III.D infra.

*6 We agree that "the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of attorney-client privilege ... have been established. Failing this, the documents must be produced." SmithKline, 193 F.R.D. at 524. However, Defendant is simply incorrect in claiming that the Illinois Court "ruled that SB was required to identify author(s), recipient(s) and date of each document on its privilege log" and that "the failure to supply any of this information vitiates the claim of privilege." (Doc. No. 173 at 5; Doc. No. 180 at 10 (citing SmithKline, 193 F.R.D. at 534).) The ruling of the Illinois Court was significantly more limited. SmithKline, 193 F.R.D. at 538 (SB compelled to produce five documents where it failed to identify author or recipient). Federal Rule 26(b)(5) provides the appropriate standard:

> When a party withholds information ... by claiming that it is privileged ... the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5). "The rule does not attempt to define for each case what information must be provided .... [d]etails concerning time, persons, general subject matter, etc. may be appropriate." Id., advisory committee notes. Where descriptions in the privilege log fail to meet this standard, "then disclosure is an appropriate sanction." SmithKline, 193 F.R.D. at 534.

Based on our review of the most recent document descriptions, we conclude that SB's log entries for eight of these documents contain all the requisite information, including dates, authors, and recipients. [FN6] (Doc. No. 183 at Ex. 1.) Further, there are ten documents that merely lack exact dates in their descriptions. [FN7] Plaintiff explains that these documents were "undated" and their date of creation cannot now be determined. (Doc. No. 176 at 17.) Lack of dates alone, given the other information provided in these eleven descriptions, does not vitiate Plaintiff's attorney-client privilege claim as to these documents. See Scott C. v. Bethlehem Area Sch. Dist., Civ. A. No. 00- 642, 2002 U.S. Dist. LEXIS 18308, at *2-5 (E.D.Pa. Sept. 13, 2002) (extending attorney-client privilege to undated documents).

   FN6. Documents 2064, 2845, 2846, 2847, 2858, 2859, 2864, and 2964.

   FN7. Documents 2048, 2051, 2052, 2819, 2820, 2839, 3041, 3260, and 3269.

Thirty-one of the challenged documents lack "recipients" in the privilege log. We restrict our discussion to only the twenty-seven documents at issue. [FN8] (Doc. No. 183 at Ex. 1.) In its revised logs, Plaintiff clarified the "Recipient/CC" field to indicate that certain documents were not distributed. (Doc. No. 176 at 17.) This fact was not obvious in Plaintiff's original submission. These "undistributed" documents constitute all but one [FN9] of those currently challenged by Defendant. There is no bar to extending the privilege to documents that have not been distributed. See In re Grand Jury Subpoena, 731 F.2d 1032, 1037 (privilege protects undistributed drafts, even where "the final version ... might eventually ... not be privileged"). Plaintiff does not need to produce these documents.

   FN8. See supra note 5.

   FN9. Document 3250.

*7 However, we reach a different conclusion where Plaintiff has failed to identify the author of certain documents. (Doc. No. 183 at Ex. 1.) Plaintiff describes these authors in very general terms: "SB scientist," "member of SB Corporate Communications department" and "member of SB corporate affairs department." (Id. at 55, 157, 162.) In addition, the recipients of one document are only broadly defined as "Members of SB Corporate Intellectual Property Department." (Id. at 175.)

Where the client asserting privilege is a corporation, courts traditionally relied on a "control group" test which limited the number of employees to whom documents could be disclosed and yet remain privileged. UpJohn, 449 U.S. at 392. Even though this test has been rejected,

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(Cite as: 2005 WL 3597712 (E.D.Pa.))

the "scope of an individual's employment is nevertheless highly relevant to the question of maintenance of confidentiality." SmithKline, 193 F.R.D. at 539 (citing UpJohn, 449 U.S. at 403 (Burger, C.J., concurring)). It also remains the case that the "privilege is waived if the communications are disclosed to employees who did not need access to" them. Baxter Travenol Labs., Inc. v. Abbott Labs., No. 84 C 5103, 1987 U.S. Dist. LEXIS 10300, at *14 (N.D. Ill. June 19, 1987) (citing Diversified Indus. v. Meredith, 572 F.2d 596, 609 (8th Cir.1977)). We therefore scrutinize closely any privilege claim where Plaintiff is unable to identify the author or has provided only a general group-wide description for the recipients. See Wilderness Soc'y v. U.S. Dep't of Interior, 344 F.Supp.2d 1, 17 (D.D.C.2004) (denying privilege where "defendants fail to identify the author ... and in some cases do not even identify the recipient); SmithKline, 193 F.R.D. at 538 ("[G]roup-wide descriptions .... appear[ ] to be too broad ... to seriously allow a claim of confidentiality."); Fidelity & Deposit Co. of Md. v. McCulloch, 168 F.R.D. 516, 523 (E.D.Pa.1996) (additional specificity is required to extend privilege to documents where author was unidentified). After reviewing the descriptions and finding insufficient additional information to substantiate Plaintiff's claims, we conclude that documents 2060, 3013, 3050, and 3250 must be produced.

2. Documents Involving Outside Consultants

Defendant also challenges the protection of a series of communications between SB counsel and unidentified third-party consultants. (Doc. No. 173 at 6 & n. 6.) Plaintiff has subsequently identified these consultants, two of whom were testifying experts in the Illinois Litigation. (Doc. No. 180 at 17.) Defendant argues that this communication [FN10] should be produced, since attorney- client privilege does not extend to third parties that are not "necessary intermediaries." (Id. (citing Advanced Tech. Assocs. v. Herley Indus., Inc., Civ. A. No. 96-0132, 1996 U.S. Dist. LEXIS 17931 (E.D.Pa. Dec. 3, 1996).)

   FN10. Only one document, 1730, remains at issue.

Presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses "a commonality of interest with the client." In re Grand Jury Investigation, 918 F.2d 374, 386 n. 20 (3d Cir.1990); see also Am. Standard, Inc. v. Pfizer, Inc., Civ. A. No. 83-834, 1986 U.S. Dist. LEXIS 27389, at *11 (D.Del. Mar. 31, 1986) (extending privilege to "material prepared by outside consultants in response to request by ... counsel"). At times, Plaintiff retained consultants "to assist [it] in obtaining facts and information needed to provide legal advice and assistance." (Doc. No. 176 at Ex. 4 ï 9.) Dr. Bernstein, the recipient of document 1730, was one such consultant. In this circumstance, Plaintiff did not waive the privilege merely by revealing confidential communications to its own consultant. We will not order production of this document based upon the assertion that attorney-client privilege does not extend to third persons.

*8 However, we note that at least a portion of document 1730 also "reflects SB counsel's mental impressions in connection with litigation." (Doc. No. 183 at Ex. 1, p. 26.) Attorney-client privilege does not extend to the "mental impressions, conclusions, opinions or legal theories" of counsel. Hickman, 329 U.S. at 508. Since Plaintiff's work-product claim also fails to protect document 1730 from discovery, see Part III.D infra, that portion reflecting counsel's "mental impressions" must be produced.

3. Documents Lacking Substantive Attorney Involvement

The current privilege log lists fifty-five documents which Defendant alleges "lack any indicia of substantive attorney involvement." (Doc. No. 180 at Rev. Attach. 1.) Thirty-nine of these documents remain at issue with respect to this claim. Defendant argues that "SB has withheld documents that make no mention of a specific attorney being involved at all--an attorney is not listed as an author or recipient of the document, nor is a specific attorney mentioned in the description," and that these documents must be produced. (Id. at 10.)

"A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." Santrade, Ltd. v. Gen. Elec. Co., 150 F.R.D. 539, 545 (E.D.N.C.1993). In the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys. Id. (citing Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 2002-03 (E.D.N.Y.1988)). Moreover, "documents subject to the privilege may be transmitted between non-attorneys ... so that the corporation may be properly informed of legal advice and act appropriately. Id. (citing Eutectic Corp. v. Metco, Inc., 61 F.R.D. 35, 38 (E.D.N.Y.1973)). But see SmithKline, 193 F.R.D. at 538 ("Certain other documents, although described as requesting legal advice, are communications between two or more non-legal advisors, a copy of which may or may not have been forwarded to a ... patent agent. We cannot find such communications meet the requirements for establishing the privilege....").

Plaintiff describes many of these documents as being: (1) authored by SB employees assisting counsel, for the purpose of providing legal advice; (2) authored by SB employees assisting counsel, seeking information to provide to counsel so that counsel could provide legal services; or (3) received by SB employees assisting

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(Cite as: 2005 WL 3597712 (E.D.Pa.))

counsel, providing information so that counsel could provide legal services. (Doc. No. 183 at Ex. 1.) Other documents, while not involving employees assisting counsel, still reflect confidential communications between client and counsel or subordinates of counsel for the purpose of either (1) providing legal services or (2) providing information to counsel to secure legal services. (Id.) In general, privilege will extend to documents that fit these criteria. Cuno, Inc., 121 F.R.D. at 202.

**\*9** In a number of its descriptions, however, Plaintiff does not identify any specific attorney with whom a confidential communication was made. Where such information is absent, we find Plaintiff has failed to "provide sufficient detail to demonstrate fulfillment of the legal requirements for application of the privilege." United States v. Constr. Prod. Research, Inc., 73 F .3d 464, 473 (2d Cir.1996). As such, documents 1749, 1750, 1751, 1757, 1758, 1759, 1760, 1771, 1772, 1773, 1777, 1778, 1782, 1791, 1792, 1796, 1809, 2047, 2825, 2871, 3130, and 3154 must be produced. Plaintiff's attorney-client privilege claim also fails as to documents 2101, 2105, 2108, 2111, 2164, and 3269. However, we must also assess Plaintiff's work-product claims with respect to these documents. See Part III.D infra.

In addition, document 3082 reflects a group-wide distribution ("Members of SB Corporate Management Team") and must also be produced. (Doc. No. 183 at Ex. 1, p. 163; SmithKline, 2000 WL 1310669 at \*7 ("It was not unreasonable for the magistrate judge to have difficulty determining, from a general description like 'management,' whether a document had been too broadly distributed to seriously allow a claim of confidentiality."))

4. Communications Simply Routed Through an Attorney

Defendant identifies sixty-four documents which it alleges "were simply routed through an attorney" and are therefore "not protected from disclosure." (Doc. No. 173 at 11; Doc. No. 176 at Rev. Attach. 1.) Fifty-one of these documents remain at issue with respect to this claim. Defendant contends that "[a]ll SB has shown in its privilege log for these documents is that an individual, who also happens to be in-house counsel, received a copy of the document" and that "SB has failed to include on its log sufficient detail to demonstrate that these documents involve an attorney-client communication, that the in-house counsel included on the 'cc' list was providing legal advice, or that the document reflects legal advice provided by counsel." (Doc. No. 173 at 12.)

In general, attorney-client "privilege does not shield documents merely because they were transferred to or routed through an attorney." Resolution Trust Corp. v. Diamond, 773 F.Supp. 597, 600 (S.D.N.Y.1991). "What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." Andritz Sprout-Bauer, Inc. v. Beazer E., Inc., 174 F.R.D. 609, 633 (M.D.Pa.1997) (citing U.S. Postal Serv. v. Phelps Dodge Refining Corp., 852 F.Supp. 156, 163-64 (E.D.N.Y.1994)). However, communications between counsel and company employees remain privileged "so long as the information is relayed for the purpose of obtaining legal counsel." Id. (citing Upjohn, 449 U.S. at 394-95).

**\*10** Each of the documents cited by Defendant was distributed to multiple recipients, including at least one SB attorney or subordinate of an attorney, as well as other SB employees. (Doc. No. 183 at Ex. 1.) Nowhere is it clear that a communication was primarily between non-attorney employees or that counsel was merely "copied in." (Id.) According to the affidavit of Plaintiff's Counsel Brian Russell, each of these documents "were communications with SB's counsel or their subordinates for the purpose of securing or providing legal services and/or legal advice or were in the furtherance of securing or providing the same." (Doc. No. 176 at Ex. 4 ï 29.) Plaintiff's attorneys were functioning solely as legal advisors and SB maintained a policy of confidentiality with respect to these communications. (Id. ïï 4, 28.) The descriptions accompanying each of these challenged documents support these claims. (Doc. No. 183 at Ex. 1.)

With a few exceptions we find that the descriptions in Plaintiff's log, coupled with Russell's affidavit, are sufficient to protect these documents from discovery. Plaintiff has identified with specificity nearly every person who received each document. Id. Each document purportedly served the purpose of either securing or providing legal advice or legal services--they were not routine business communications. Id. None of these documents was widely distributed. The recipient lists were limited to between five and twenty-five individuals within a 50,000-person organization. (Doc. No. 183 at Ex. 1; Doc. No. 176 at Ex. 4 ï 5.)

Nevertheless, in two instances, documents 1938 and 1987, Plaintiff has failed to adequately identify the documents' authors. (Doc. No. 183 at Ex. 1, pp. 47, 50.) In addition, Plaintiff gives only a "group-wide" description of the recipients of documents 1865 and 2022. (Id. at 51.) We have already determined that such inadequately described documents are not protected. See supra Part III.C.1. Therefore, these four documents must be produced.

5. Communications Not Related to Legal Advice

According to Defendant, a number of documents do "not

(Cite as: 2005 WL 3597712 (E.D.Pa.))

relat[e] to legal advice and are not privileged." (Doc No. 180 at Rev. Attach. 1.) Fourteen of these documents are "notes of meetings where counsel was merely in attendance." (Id. at 14.) Defendant alleges that "[t]here is no way to tell ... what type of 'legal advice and services' were rendered by the attorney[s] at the meeting [s]" and thus Plaintiff has not met its burden to extend protection to these documents. (Id. at 14.) As to the other fourteen documents, Defendant does not develop its claim beyond the bald assertion in the Revised Attachment to its Reply. (Doc. 180 at Rev. Attach. 1.)

An attorney's "mere attendance" at a meeting cannot protect the notes produced from that meeting where they would "otherwise be discoverable ... but for their creation in the presence of a lawyer." Martin Marietta Corp. v. Fuller Co., Misc. No. 86-0151, 1986 U.S. Dist. LEXIS 17390, at *3-4 (E.D.Pa. Nov. 21, 1986). Privilege is restricted to those instances where employees secure legal, not business, advice or services, or where in-house counsel provides legal advice or legal services to corporate personnel. See Kramer v. Raymond Corp., Civ. No. 90-5026, 1992 U .S. Dist. LEXIS 7418, at *4 (E.D.Pa. May 26, 1992) (privilege applies where a "corporation ... clearly demonstrates that the communication in question was made for the express purpose of securing legal not business advice"); see also In re Ford Motor Co., 110 F.3d 954, 956 (3d Cir.1997) ("[M]inutes of the meeting reflect that the recorded communications were for the purpose of obtaining legal advice and hence are protected by the attorney-client privilege."). When deciding this issue in the Illinois Litigation, Magistrate Judge Bobrick observed that "documents described as minutes of meetings with counsel present to provide legal advice would be likely to contain confidential communications and as such are not available to discovery." SmithKline, 193 F.R.D. at 538 (citing Wilstein v. San Tropai Condo. Assoc., 189 F.R.D. 371, 379 (N.D.Ill.1999)).

*11 Plaintiff asserts that it "ha[s] not withheld all communications made at meetings attended by counsel." (Doc. No. 176 at 25.) Rather, where such a document contained both non-legal and legal communications, SB has produced the non-legal communications and redacted only the legal communications. As for the withheld communications, they were either "for the purpose of SB counsel providing legal advice and assistance" or reflect an instance where a subordinate of counsel "was provided information for the purpose of securing legal advice or legal services" from counsel. (Doc. No. 176 at 24-25; Doc. No. 176 at 24-25 at Ex. 4 ï 30.) The descriptions in the latest privilege log are consistent with these claims. (Doc. No. 183 at Ex. 1.) Therefore, production will not be compelled.

Addressing next the remaining documents that Defendant challenges under this heading, we see no reason why privilege should not be extended to documents 1714, 1732, 2064, 2948, and 3266. Documents 1714 and 1732 reflect exchanges between counsel and client for the purposes of securing legal services or providing legal advice, or rendering that advice. (Doc. No. 183 at Ex. 1, pp. 24, 27, 68, 71.) Document 2064 is a communication authored by counsel and received by an outside consultant, seeking information "for the purpose of providing legal advice." (Id. at 55; see In re Grand Jury Investigation, 918 F.2d at 386 n. 20). Documents 2948 and 3266 are drafts authored by counsel for the purpose of securing legal services. (Doc. No. 183 at Ex. 1, p. 176; see In re Grand Jury Subpoena, 731 F.2d at 1037.)

As to the remaining documents, Plaintiff seeks to extend both attorney-client and work-product protection. These documents appear to have been prepared by counsel for their own use in preparation for litigation. Such documents are not protected by attorney-client privilege. See Hickman, 329 U.S. at 508. The attorney-client privilege will not extend to the following documents: 2051 ("reflects work with expert witness ... [and] counsel's mental impressions concerning said trial preparation"); 2053 ("a document created by SB counsel for his own personal use ... for ongoing litigation); 2134 ("communication ... to prepare for litigation"); 2149 ("letter between co-counsel ... with respect to the retention of consultant for anticipated ... litigation); 2818 ("[w]ork product done at the request of SB outside counsel ... prepared for ongoing paroxetine patent litigation"); 2819 (same); 2820 (same); 2822 ("reflecting SB counsel's mental impressions, and legal theories in preparation for ongoing ... litigation"); 3299 ("[l]itigation binder of counsel reflecting mental impressions of counsel in preparation for anticipated and ongoing ... litigation"). (Doc. No. 183 at Ex. 1.)

6. Scientific and Technical Communications

Defendant contends that forty-eight documents are "conveyances of scientific and/or technical information that are not privileged." (Doc. No. 180 at Rev. Attach. 1.) We address thirty-five of these documents here. [FN11] Defendant contends that privilege should not extend to certain documents which reflect an "exchange of technical information between scientists and SB attorneys ... for use in prosecuting patent applications." (Doc. No. 173 at 14.)

FN11. See supra note 5.

*12 The application of attorney-client privilege to patent practice has developed dramatically in the last half-century. Before 1963, most courts considered patent attorneys and their subordinates to serve a "non-legal" function. Zenith Radio Corp. v. Radio Corp. of Am., 121 F.Supp. 792, 793 (D.Del.1954). It was not until 1963 that

(Cite as: 2005 WL 3597712 (E.D.Pa.))

the Supreme Court determined that the "preparation and prosecution of patent applications for others constitutes the practice of law." Sperry v. Florida, 373 U.S. 379, 393 (1963). Courts still conferred attorney-client protection only sparingly in patent-related matters. In re Gabapentin Patent Litig., 214 F.R.D. 178, 181 (D.N.J.2003). Patent attorneys were considered "mere 'conduit[s]' between the inventor and the patent office, and since the distilled product of the inventor's communications were intended to end up in the public domain, there could be no expectation of confidentiality and thus no privilege." Id. (citing Jack Winter Inc. v. Koratron, 50 F.R.D. 225 (N.D.Cal.1970).

In the last twenty-five years, this view has changed considerably. Initially courts began to reject the view "that technical information is presumptively unprivileged," instead finding that under certain circumstances such communications may be privileged. Id. (citing Knogo Corp. v. United States, No. 194-79, 1980 U.S.Ct. Cl. LEXIS 1262 (Ct.Cl. Feb. 16, 1980)). Technical communications were deemed privileged where they were "prepared to provide the patent attorney with the information necessary to assess the invention's patentability, prepare and file a patent application ... and prosecute the patent application through the Patent Office." Knogo, 1980 U.S.Ct. Cl. LEXIS 1262, at *4. More recently, the Federal Circuit determined that an "invention record constitutes a privileged communication, as long as it is provided to an attorney 'for the purpose of securing primarily a legal opinion, or legal services, or assistance in a legal opinion.' " In re Spalding, 203 F.3d at 805 (quoting Knogo, 1980 U.S.Ct. Cl. LEXIS 1262 at *16-17).

Defendant argues that the holding in Spalding applies only to invention records and should not protect the documents at issue here. (Doc. No. 180 at 15.) We disagree. See SmithKline Beecham Corp. v.. Apotex Corp., No. 98-C- 3952, 2000 WL 1310668, at *5 (N.D.Ill. Sept. 13, 2000) (denying similar argument made by Torpharm in Illinois Litigation); In re Gabapentin, 214 F.R.D. at 182 (applying Spalding to technical communications other than invention records). Where client and counsel share technical information, that communication is privileged as long as it was made for the purpose of securing legal advice or legal services, or conveying legal advice.

Plaintiff's descriptions indicate that the documents challenged on these grounds fit this criteria. (Doc. No. 183 at Ex. 1.) Some documents involved an exchange of technical information necessary so that an SB employee could secure legal services or legal advice. (Id.) In other instances, communications from counsel, providing legal advice, included certain technical information. (Id.) All the documents appear to have been exchanged primarily for the purpose of obtaining or providing legal advice, rather than business or technical advice. (Id.; Doc. No. 176 at Ex. 4 ïï 22-23.) As such, we find that these documents are privileged.

7. Inter-Attorney Communications That Do Not Reveal Legal Advice or Client Confidences

**\*13** With respect to sixty-two documents, Defendant argues that "[s]ince SB has asserted nothing more than the fact that these communications are between attorneys, it has failed to carry its burden of establishing privilege." (Doc. No. 173 at 16; Doc. No. 180 at Rev. Attach. 1.) Fifty-six of these documents remain at issue.

There is no bar to extending attorney-client privilege to inter-attorney communications. To the contrary, "privilege also attaches ... to inter-attorney communications ... which include legal advice or confidential information received from the client." In re U.S. Healthcare, Inc. Sec. Litig., Master File No. 88-0559, 1989 U.S. Dist. LEXIS 1043, at *3 (E.D.Pa. Feb. 7, 1989). "[I]nsofar as inter-attorney communications or an attorney's notes contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure." Natta v. Zletz, 418 F.2d 633, 637 n. 3 (7th Cir.1969) (quoted in McCook Metals L.L.C. v. Alcoa, Inc., 192 F.R.D. 242, 252 (N.D.Ill.2000)); see also Cedrone v. Unity Sav. Ass'n, 103 F.R.D. 423, 429 (E.D.Pa.1984) ("[I]t is inconceivable that an internal memorandum between attorneys ... concerning the representation of a client, utilizing confidential information provided by that client, could be anything but protected by the privilege). Limiting attorney-client privilege on these grounds would "merely penalize[ ] those attorneys who write or consult with additional counsel representing the same client for the same purpose. As such it would make a mockery of both the privilege and the realities of current legal assistance." Natta, 418 F.2d at 637.

The majority of the challenged documents meet this criteria and may be protected under attorney-client privilege. They are: confidential communications where an attorney is providing information to co-counsel in order to request or secure legal services or legal advice; confidential communications where counsel is providing or rendering legal advice to co- counsel; confidential communications from an attorney for the purpose of requesting or securing legal advice or legal services from co-counsel; confidential communications from an attorney requesting information for the purpose of providing legal advice or legal services to co-counsel; or confidential communications between co-counsel forwarding information and legal advice for the purpose of formulating further legal advice and providing legal

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(Cite as: 2005 WL 3597712 (E.D.Pa.))

services. These documents need not be produced by Plaintiff.

Five of these documents appear to contain drafts, the final versions of which may have been disclosed at a later time. Documents 1719, 1764, 2155 and 2157 "reflect" or "forward" a "draft complaint." (Doc. No. 183 at Ex. 1, pp. 25, 34, 72.) Document 2133 is a "draft notice of patent infringement action prepared by outside counsel." (Id. at 68.) While the "attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and documents reflecting such information," it is limited "to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons." In re U.S. Healthcare, 1989 U.S. Dist. LEXIS 1043 at *5. Therefore, attorney-client privilege will not protect any portion of these documents that was eventually disclosed to any third party. In addition, document 1765 "reflects attorney thought processes." (Doc. No. 183 at Ex. 1, p. 35.) Attorney-client privilege will not extend to this communication. See Hickman, 329 U.S. at 508.

8. Documents with Vague or General Descriptions

**\*14** There are 667 documents for which Defendant alleges "SB used essentially the same vague cookie-cutter privilege assertion." (Doc. No. 180 at 11, Rev. Attach. 2.) Nearly 250 of these documents are no longer at issue with respect to this claim. Relying primarily on the holding in CSX Transportation, Inc. v. Admiral Insurance Co., Case No. 93-132-Civ-J-10, 1995 U.S. Dist. LEXIS 22359 (M.D.Fl. July 20, 1995), Defendant argues that the descriptions in Plaintiff's log and the Russell affidavit present only a "conclusory and general rationale" in support of Plaintiff's privilege claims. (Doc. No. 176 at 12-13.) Plaintiff argues that its descriptions and Russell's conclusions suffice to shield these documents from discovery. Plaintiff also suggests that this issue may be resolved through a "meet and confer" between the parties. (Doc. 183 at 8-9.)

"A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." Foster v. Berwind Corp., Civ. A. No. 90- 0857, 1990 U.S. Dist. LEXIS 17045, at *5 (E.D.Pa. Dec. 10, 1990). Where, as here, the court relies on privilege logs:

> [T]ypically the logs will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y.1993) (quoted in In re Unisys Corp. Retiree Med. Benefits ERISA Litig., MDL No. 969, 1994 U.S. Dist. LEXIS 1344, at *5-6 (E.D.Pa. Jan. 5, 1994); CSX Transp., 1995 U.S. Dist. LEXIS 22359, at *8-9). Attorney-client privilege, or work-product protection, are "not satisfied by mere conclusive or ipsa dixit assertions." Am. Health Sys., Inc. v. Liberty Health Sys., Civ. A. No. 90-3112, 1991 U.S. Dist. LEXIS 3675, at *13 (E.D.Pa. Mar. 26, 1991).

We note that there is considerable similarity between some of the descriptions challenged by Defendant and those found inadequate in CSX Transportation. See, e.g., 1995 U.S. Dist. LEXIS 22369 at *8 ("confidential attorney-client communication for the purpose of providing legal advice"). In CSX Transportation, however, "nearly all of the documents" were fitted with just one description where the plaintiff sought to invoke attorney-client privilege. Id. at *9-10. The plaintiff in CSX Transportation presented no supplementary evidence in the form of affidavits. Id. at *13. It was impossible for that court to conclude that challenged communications were "made by the client and to the attorney (or subordinate) and that in connection with the communication the attorney was acting in his capacity as an attorney ." Id. at *10. Here, Plaintiff's privilege log does not repeat a single, unaltered description. (Doc. No. 183 at Ex. 1.) Moreover, the Russell affidavit identifies twelve categories of privileged documents described by Plaintiff. (Id. at 8-9; Doc. No. 173 at Ex. 4 ïï 24-27.) Plaintiff makes clear, in almost every case, each document's author and recipient, and that the attorney involved in the communication was acting in his capacity as a legal advisor.

**\*15** Courts have upheld privilege claims supported by descriptions not unlike Plaintiff's. See, e.g., Mergentime Corp. v. Wash. Metro. Area Transp. Auth., Civ. A. No. 89-1055, 1991 U.S. Dist. LEXIS 11080, at *11-12 ("Briefing Chart-Legal Analysis; document contains legal analysis prepared by or requested by COUN[.]") Production has been denied even where a party claiming work-product protection supported its claim "with a relatively skeletal description offered in the privilege log" which the court itself found "somewhat sketchy." Long-Term Capital Holdings v. United States, 3:01-CV- 1290,

(Cite as: 2005 WL 3597712 (E.D.Pa.))

2002 U.S. Dist. LEXIS 23224, at *30 n. 16 (D.Conn. Oct. 30, 2002). Cf. Bowne of N.Y. City, Inc., 150 F.R.D. at 474 ("[n]othing on the log inform[ed them] whether the document contains legal advice or was prepared to elicit legal advice from others" or "whether the document was intended to be kept confidential and whether it was in fact so held").

In this case, Plaintiff has substantiated its privilege claims with respect to the documents in question. (Doc. No. 183 at Ex. 1; Doc. No. 176 at Ex. 4 ï 4 (confidentiality), 22-23 (legal advice).) We have reviewed the approximately four-hundred descriptions challenged by Defendant. With only a few exceptions, Plaintiff has named the author and/or recipient of each document, including their roles at SB. (Doc. No. 183 at Ex. 1.) In addition, Plaintiff has defined the role of attorneys in their organization and the policy of confidentiality that applied to all attorney-employee communications. (Doc. No. 175 at Ex. 4 ï 4, 22-23.) The descriptions provided by Plaintiff demonstrate how, with respect to each communication, legal advice or legal services were being requested, rendered, secured, sought, or provided. (Doc. No. 183 at Ex. 1.) We find that Plaintiff's descriptions are not so vague or general to sustain Defendant's current challenge. Plaintiff has adequately met the standard set forth in Rule 26(b)(5) "[to] describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5).

However, we have identified several documents where Plaintiff's attorney-client privilege claim is not supported. Plaintiff cannot identify the author of documents 2885 and 3016. Document 3302 was distributed on a group-wide basis. These documents must be produced. See supra Part III.C.1. Documents 2052 and 3283 "reflect the mental impressions of counsel." We have established that such personal reflections are not privileged. See Hickman, 329 U.S. at 508. Document 2163 is a communication between counsel regarding retention of a litigation consultant. Attorney-client privilege does not extend to such a communications made between counsel for their own use in preparing for trial. Id. As such, unless work-product protection applies to shield these documents from discovery, they must be produced.

D. Work-Product Doctrine Claims

**\*16** Defendant currently challenges Plaintiff's work-product claims as to approximately ninety documents. (Doc. No. 180 at Rev. Attach. 1.) A number of these have been removed from the most recent privilege log, or relate to paroxetine mesylate and are irrelevant. Of those documents still in dispute, we find more than thirty to be wholly protected by the attorney-client privilege. [FN12] We focus our review on the remaining forty-four documents.

   FN12. Documents 1653, 1658, 1677, 1678, 1679, 1693, 1696, 1707, 1710, 1713, 1714, 1717, 1718, 1725, 1732, 1733, 1745, 1748, 1752, 1756, 1761, 1766, 2965, 2971, 2972, 3048, 3249, 3260, 3281, and 3293 are protected.

The party asserting work-product protection must demonstrate "that the documents at issue 'were prepared in anticipation of litigation.' " In re Gabapentin, 214 F.R.D. at 183 (quoting Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir.1982)). Courts in the Third Circuit have applied a two-part inquiry: (1) determining " 'at what point in time litigation could reasonably have been anticipated' " and (2) ensuring that " 'the material [in question was] produced because of the prospect of litigation and for no other purpose.' " Id. (quoting United States v. Ernstoff, 183 F.R.D. 148, 155 (D.N.J.1998); Harper v. Auto-Owners Inc. Co., 138 F.R.D. 655, 660 (S.D.Ind.1991)).

The first prong of this test requires a showing of "an identifiable specific claim of impending litigation" and is not satisfied by the "mere involvement of, consultation with, or investigation by an attorney." Harper, 138 F.R.D. at 660; In re Gabapentin, 214 F.R.D. at 183. The party must establish more than a "likely chance," "remote prospect," or "inchoate possibility" of litigation. Harper, 138 F.R.D. at 660. With regard to the second prong, documents "routinely prepared in the ordinary course of business" will not be protected. In re Gabapentin, 214 F.R.D. at 184. In addition, the "articulable claim likely to lead to litigation must pertain to this particular party, not the world in general." McCook Metals L.L.C. v. Alcoa, Inc., 192 F.R.D. 242, 259 (N.D.Ill.2000).

Defendant contends that work-product protection cannot apply to any document created before May 18, 1998, the date Torpharm notified SB that it was seeking approval to market generic paroxetine in the United States. (Doc. No. 180 at 8; Doc. No. 176 at Ex. 4 ï 53.) In the Illinois Litigation, this cut-off date was applied to over 250 documents created in anticipation of litigation, which Plaintiff was compelled to produce, yet was not applied to four documents prepared "in connection with both anticipated and ongoing litigation." (SmithKline, 193 F.R.D. at 541; SmithKline, 2000 WL 1310669, at \*5; Doc. No. 183 at 2 (emphasis added).) Defendant was denied access to these four documents. Predictably, Plaintiff's current log describes most of the alleged work-product as having been prepared "for ongoing and anticipated litigations." (Doc. No. 183 at Ex. 1.)

The Russell affidavit presents a number of factual

(Cite as: 2005 WL 3597712 (E.D.Pa.))

assertions aimed at justifying Plaintiff's current work-product claims. (Doc. No. 176 at Ex. 4 ¶¶ 39-54.) Among other things, Russell claims that Plaintiff "begins to anticipate patent litigation as soon as a drug shows commercial promise." (Id. ¶ 39.) Plaintiff contends that paroxetine showed such promise as early as 1990. (Id .) Rather than indicate a "reasonable anticipation of litigation" on the part of Plaintiff, this suggests that these documents were prepared in the ordinary course of Plaintiff's business. We find unpersuasive SB's assertion that they begin to anticipate litigation as soon as a product shows promise. Similarly, Russell's assertions that SB hired investigators to explore litigation options in 1994, that SB retained trial counsel, that SB counsel prepared draft complaints as early as 1996, or that SB secured outside consultants to serve as expert witness fail to persuade. (Id. ¶¶ 41, 46, 48.)

**\*17** We agree with the Illinois Court that no "significant and substantial threat of litigation" existed until May 18, 1998, when Plaintiff was notified of Defendant's plan to market generic paroxetine in the United States. SmithKline, 193 F.R.D. at 541; SmithKline, 2000 WL 1310669, at \*5; see also In re Gabapentin, 214 F.R.D. ("Because Paragraph IV certification [under Hatch-Waxman] would signal the commencement of litigation to any prudent patent holder, this Court holds that any documents created (on or) after [that date] were produced in reasonable anticipation of litigation and are protected by the work product privilege.") As such, work-product protection will not apply to the following documents, which pre-date May 18, 1998 and which Plaintiff asserts were prepared "in anticipation of litigation": 1719, 1730, 1764, 1765, 2133, 2134, 2149, 2155, 2157, and 2163.

As to alleged ongoing litigation, Russell's affidavit states that Plaintiff "initiated paroxetine patent litigation in Spain on April 3, 1995" and "in Canada on December 4, 1996." Here again, we agree with the conclusions of the Court in the Illinois Litigation which extended work-product protection to those documents, created after either or both of these dates, which were prepared as part of these ongoing matters. SmithKline, 2000 WL 1310669, at \* 5. Therefore, Plaintiff is required to produce only document 2939, which was allegedly prepared for ongoing litigation yet pre-dates the commencement of Plaintiff's Spanish and Canadian litigations.

Plaintiff also seeks to extend work-product protection to a number of documents for which it is unable to supply dates. (Doc. No. 183 at Ex. 1.) Each of these documents was allegedly prepared for ongoing paroxetine patent litigation. (Id.) While there is no rule barring undated documents from work-product protection, Softview Computer Prod. Corp. v. Haworth, Inc., 97 Civ. 8815, 2000 U.S. Dist. LEXIS 4254, at \*60 (S.D.N.Y. Mar. 21, 2000), a document's date of creation is an important part of the analysis as to whether it was prepared for anticipated or ongoing litigation. In re Air Crash Near Roselawn, Ind., No. 95 C 4593, 1997 U.S. Dist. LEXIS 5197, at \*13 (N.D.Ill. Feb. 25, 1997). Without a date, we must entirely "focus on the contents of the document to determine the probable time frame in which it was created." Sousa v. U.S. Dep't of Justice, Civ No. 95-375, 1996 U.S. Dist. LEXIS 18627, at \* 20 (D.D.C. Dec. 9, 1996). Accordingly we will not extend protection where Plaintiff's description fails to assure us that the document was specifically created as part of ongoing litigation. Merely alleging that the document was "work product done at the request of SB outside counsel," without more, is not sufficient. (Doc. No. 183 at Ex. 1, pp. 128.) Such a statement gives us no indication as to the documents' contents. Therefore, work-product protection will not extend to documents 2818, 2819, and 2820.

**\*18** Finally, we have independently reviewed the descriptions provided by Plaintiff to support its work-product protection claims. In several cases, Plaintiff has both failed to specifically identify the attorney at whose "instructions" the work-product was created and has simply reiterated the definition of work-product as grounds for extending protection. (Doc. No. 1 at 183.) Where Plaintiff provides only a vague reference to attorney involvement, without identifying a specific attorney, we must conclude that the description lacks sufficient detail. See Part III.C.3 supra. In addition, stating only that a document "report[s] work-product undertaken pursuant to instructions of SB counsel for purpose of preparing for" ongoing and/or anticipated litigation, will not suffice without any other supporting information. See CSX Transp., 1995 U.S. Dist. LEXIS 22359, at \*10-11; A.I.A. Holdings, S.A. v. Lehman Bros., 97-Civ.-4978, 2000 U.S. Dist. LEXIS 15141, at \*8-10 (S.D.N.Y. Oct. 12, 2000) (compelling production where description "merely states the definition of work product with no elaboration whatsoever"). After applying these factors we are compelled to conclude that documents 2101, 2104, 2105, 2108, 2111, 2164, 2643, and 2686 must be produced.

IV. CONCLUSION

The following documents are not protected under the attorney-client privilege, and must be produced in their entirety: 1749, 1750, 1751, 1757, 1758, 1766, 1771, 1772, 1773, 1777, 1778, 1782, 1791, 1796, 1809, 1865, 1938, 1987, 2022, 2047, 2060, 2825, 2871, 2885, 3013, 3016, 3050, 3082, 3130, 3154, and 3302.

Work-product protection will not extend to the following documents, which also must be produced in their entirety: 2101, 2104, 2105, 2108, 2111, 2134, 2149, 2163, 2164, 2643, 2686, 2818, 2819, 2820, and 2939.

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(Cite as: 2005 WL 3597712 (E.D.Pa.))

While, we have rejected Plaintiff's work-product claim as to the following documents, at least a portion of each, however, remains protected by the attorney-client privilege. Therefore, Plaintiff must produce redacted versions of these documents: 1719 (any portion of draft later disclosed), 1730 (any mental impressions), 1764 (any portion of draft later disclosed), 1765 (any attorney thought processes), 2133 (any portion of draft later disclosed), 2155 (any portion of draft later disclosed), and 2157 (any portion of draft later disclosed).

An appropriate Order follows.

### ORDER

AND NOW, this 30th day of December, 2005, upon consideration of Defendants Apotex Corp., Apotex, Inc., And TorPharm, Inc.'s (collectively "TorPharm") Motion To Compel Plaintiffs SmithKline Beecham Corporation, Beecham Group, P.L.C., SmithKline Beecham P.L.C ., and GlaxoSmithKline, P.L.C. (collectively "SB") To Produce Certain Documents From SB's Privilege Log (Doc. No. 173, 99- CV-4304; Doc. No. 129, 00-CV-4888; Doc. No. 125, 01-CV-159; Doc. No. 116, 01- CV-2169), it is ORDERED that the Motion is GRANTED IN PART and DENIED IN PART, consistent with the attached Memorandum.

**\*19** IT IS SO ORDERED.

2005 WL 3597712 (E.D.Pa.)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo