# EXHIBIT 14

26 Employee Benefits Cas. 1828
(Cite as: 2001 WL 605199 (E.D.Pa.))

United States District Court, E.D. Pennsylvania.

SCHMIDT, LONG & ASSOC., INC.,
v.
AETNA U.S. HEALTHCARE, INC.
No. CIV.A. 00-CV-3683.

May 31, 2001.

MEMORANDUM

PADOVA.

**\*1** Before the Court is Defendant's Motion to Compel Discovery. By Order dated May 24, 2001, the Court deferred resolving the portion of Defendant's Motion seeking discovery of documents relating to prior audits conducted by Plaintiff pending an evidentiary hearing scheduled for May 30, 2001. By letter dated May 30, 2001, Plaintiff withdrew its request for a hearing. The Court therefore will decide the Motion based on the papers.

Plaintiff is a corporation retained by employers to conduct independent audits of the claims administration performed by the administrators of their self-funded employee benefit plans for the purpose of uncovering overpayments by the employer to the insurer. Between 1995 and 1998, U.S. Healthcare hired Plaintiff as a litigation expert. In 1999, following U.S. Healthcare's merger with Aetna, Inc., Plaintiff contracted with several employers to conduct audits of their plans administered by Defendant. Citing various grounds including conflict of interest, Defendant refused to permit Plaintiff to conduct these audits causing Plaintiff to lose the contracts. Plaintiff now brings suit alleging tortious interference with contract and libel.

The remaining issue presented in the instant Motion is the applicability of work-product or attorney-client privilege to documents and information relating to Plaintiff's previous audits, including the audit of Defendant on behalf of Caradon, Inc. ("Caradon Audit"). In response to Defendant's request for documents supporting Plaintiff's damages claims, Plaintiff produced a single document summarizing Plaintiff's audit results from 1986 to 1999. (Def. Ex. C.) The document does not identify the clients for whom the audits were conducted or the companies that were audited. (Id.) On March 8 and 9, 2001, Defendant deposed a principal and an employee of Plaintiff. Asserting confidentiality concerns with respect to the information contained in Exhibit C, both witnesses refused to (1) identify by name the clients referenced; (2) describe the audits or their results; and (3) identify the company that was being audited. (See Def. Mot. Ex. D at 69-75, 268; Def. Mot. Ex. E at 26.) The Court has not entered any protective order with respect to this information. Defendant filed the instant Motion to compel discovery of this information.

Specifically included in Defendant's request for discovery are Plaintiff's findings and analysis resulting from the Caradon Audit. Caradon, Inc. ("Caradon") is an employer for whom Plaintiff performed a medical claims discount audit of Defendant. Plaintiff asserts that it was hired by Caradon's lawyers, Beveridge & Diamond, P.C., to audit Defendant's administration of Caradon's medical claims in October of 1997. Plaintiff contests discovery of information related to the Caradon Audit or litigation on the grounds that the information is irrelevant and privileged. [FN1] (See Def. Mot. Ex. D at 53- 58, 98-99; Def. Mot. Ex. E at 21.) Plaintiff also alleges that Defendant is seeking the information in bad faith for use in defending itself during the ongoing Caradon Audit. For the reasons that follow, the Court determines that the information is relevant and not subject to privilege.

  FN1. Plaintiff submitted no written response to the request for information of Plaintiff's prior audits other than the Caradon Audit. Since the requested information is clearly relevant and no valid objections were asserted, the Court will grant Defendant's Motion with respect to the non- Caradon related documents and confine this opinion to the Caradon Audit issue.

A. Relevance

**\*2** Federal Rule of Civil Procedure 26 permits discovery of non- privileged information that is relevant to the claim or defense of any party. [FN2] Fed.R.Civ.P. 26(b)(1). The Court determines that the Caradon Audit is relevant to several of the claims and defenses of this litigation.

  FN2. Plaintiff intimates that the amendments to Rule 26(b)(1) may not apply to this action since it was commenced on July 21, 2000, before the December 1, 2000 effective date of the amendments. The United States Supreme Court, by Order dated April 17, 2000, has stated that the amendments shall govern all civil proceedings pending at the time of the effective date "insofar as [is] just and practicable." Plaintiff presents no reason why application of the amended rule is unjust or impracticable. Furthermore, the amendments narrowed the permissible discovery scope from information relevant to the subject matter of the action to that relevant to the claims or defenses. See Fed.R.Civ.P. 26 Advisory Committee Notes. If the information is relevant under the new narrower standard, it certainly is relevant under the old broader standard.

First, the audit is relevant to allegations in Plaintiff's

26 Employee Benefits Cas. 1828
(Cite as: 2001 WL 605199 (E.D.Pa.))

Complaint of Defendant's motive for refusing permission. The Complaint asserts that Defendant's real purpose for prohibiting Plaintiff from conducting audits is as follows:

> [Plaintiff] had demonstrated a proven ability of recovering 3% to 5% of overpayments resulting from the third-party administrator's failure to credit the plans for the full benefit of all provider discounts when paying claims on behalf of the plans. In an effort to avoid reimbursing [the employers] for overpayments totaling approximately $47 million, [Defendant] engaged in a campaign of tortious conduct to disparage [Plaintiff] and cause the termination of [Plaintiff's] contracts to do the audits."

(Compl. ¶ 26-27.) Caradon is the only audit of Defendant that Plaintiff has undertaken. Thus, the results of that audit are relevant to these allegations.

Second, the Caradon Audit is relevant to Defendant's counterclaim for conversion and breach of fiduciary duties in which Defendant claims that Plaintiff misused its access to confidential business information gained while acting as an expert witness. (Ans. ¶¶ 32, 38.) One way in which Defendant could allege that Plaintiff misused the information is in the Caradon Audit that began after Plaintiff had acted as an expert witness for Defendant. The Caradon Audit is also relevant to Defendant's counterclaim under the Lanham Act that in part alleges that Plaintiff falsely markets itself to Defendant's customers by asserting that it has an extensive prior experience auditing Defendant and recovering overcharges on behalf of Defendant's customers. (Id. ¶ 42.)

Last, the Caradon Audit is potentially relevant to Plaintiff's damages claims since Plaintiff's commissions from the contracts in which Defendant allegedly tortiously interfered derive from the amount of overpayments Plaintiff spots during the audit. (Compl. ¶¶ 16-20.) The Complaint calculates Plaintiff's expected income from the contracts it lost from "historical recovery data." (Id. at ¶¶ 16-20, 27, 29, 30.) Plaintiff argues that the Caradon Audit would not be admissible to support its damage calculations because it is incomplete. However, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Having determined that the Caradon Audit is relevant to the claims and defenses in this case, the Court will proceed to examine whether the information is privileged.

B. Attorney-Client Privilege

Federal Rule of Evidence 501, which applies to discovery, requires the court to apply state law to determine the applicability of any evidentiary privileges in diversity actions where state law provides the rule of decision for a claim or defense. Fed.R.Evid. 501; Fed.R.Evid. 1101(c). Since the case is brought under diversity jurisdiction alleging causes of action under Pennsylvania common law, the Court accordingly applies Pennsylvania law regarding privilege. See Montgomery County v. Microvote Corp., 175 F.3d 296, 301 (3d Cir.1999).

Under Pennsylvania law, the party asserting a privilege has the initial burden of proving that the privilege is properly invoked. George v. Wausau Ins. Co., No. Civ.A. 99-CV-6130, 2000 WL 1728511, at *1 (E.D.Pa. Nov. 21, 2000); Joyner v. Southeastern Pa. Transp. Auth., 736 A.2d 35, 38 n. 3 (Pa.Super.Ct.1999). Once the asserting party meets that burden, then the party seeking discovery must prove that an exception to the privilege applies to allow disclosure. George, 2000 WL 1728511, at *1; Joyner, 736 A.2d at 38 n. 3. Contrary to Plaintiff's contention, the burden does not shift to the party seeking discovery until the party asserting the privilege demonstrates the existence of the privilege. Joyner, 736 A.2d at 38 n. 3.

*3 In construing the attorney-client privilege, Pennsylvania courts have held that only the client or a personal representative thereof has standing to assert the privilege. Burkert v. Equitable Life Assurance Soc., No. Civ.A. 99-1, 2000 WL 419988, at *5 (E.D.Pa. Apr. 18, 2000). Plaintiff has taken the puzzling position that it is not in fact asserting Caradon's privilege with respect to the requested documents, but rather merely is acting to prevent waiver of Caradon's privilege. The Court rejects such reliance on semantics. If Plaintiff seeks to rely on the allegedly privileged nature of the sought documents or testimony, Plaintiff bears the burden of establishing the existence of the privilege.

Pennsylvania codifies the attorney-client privilege as follows:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. Cons.Stat.Ann. § 5928 (West 2001). The privilege does not bar all testimony by counsel concerning communications with a client. Panko v. Alessi, 362 Pa.Super. 384, 524 A.2d 930, 932 (Pa.Super.Ct.1987). The privilege, rather, only bars discovery of confidential communications made by the client during the course of representation. Id.

26 Employee Benefits Cas. 1828
(Cite as: 2001 WL 605199 (E.D.Pa.))

To properly invoke the attorney-client privilege, the party resisting discovery must demonstrate: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client. Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co., 32 F.3d 851, 862 (3d Cir.1994). Plaintiff fails to meet this standard.

Plaintiff submits evidence that Caradon was a client of John Guttman ("Guttman"), an attorney with the law firm of Beveridge and Diamond. (Pl. Ex. B ïï 1, 2.) Caradon asked Guttman to investigate Defendant's performance under a administrative contract. (Id. ï 3.) Guttman hired Plaintiff to conduct an audit of Defendant on Caradon's behalf. (Id. ï 4.) The documents generated by the audits were either maintained internally or sent to Caradon's attorneys. (Pl. Letter Supplement dated 5/30/01 at 4 n. 5.)

*4 Although the evidence may establish that an attorney-client relationship existed between Caradon and Guttman, Plaintiff fails to establish that the documents generated from its audit or information about the audit methodology are subject to an attorney-client privilege. In order for a communication between an attorney to a client to be privileged, the communication must be based upon confidential communications received from the client. Garvey v. Nat'l Grange Mutual Ins. Co., 167 F.R.D. 391, 395 (E.D.Pa.1996). The communication will not be privileged if the attorney is merely conveying information learned from sources other than the client. Id. The client here is Caradon. [FN3] Plaintiff's audit results depend on information provided by Defendant, not on information provided by Caradon. (See Def. Mot. Ex. D at 55; Pl. Letter Supplement dated May 30, 2001, at 4 ("the materials analyzed by [Plaintiff] are [Defendant's] own documents").) Plaintiff uses its own proprietary software programs to analyze the information provided by the entity being audited. [FN4] (Def. Mot. Ex. D. at 55.) Neither Plaintiff's audit results nor proprietary methodology are communications based upon confidential communications received from the client, Caradon. See Garvey, 167 F.R.D. at 395. The situation presented here would be no different if Caradon had directly commissioned an audit by Plaintiff, and then sent the results to its attorney to obtain legal advice about the likelihood of success of litigation to recover overpayments. While the attorney's advice regarding the merits of litigation would clearly be privileged, the underlying facts of the audit results would not be protected.

FN3. The record contains no evidence of an attorney-client relationship between Plaintiff and Beveridge and Diamond, or that Plaintiff was seeking legal advice therefrom.

FN4. At his deposition, Timothy Schmidt, Plaintiff's principal, was asked the following question and gave the following answer: Q. Mr. Schmidt, concerning this purportedly privileged information, where did you learn it and from who? A. Well, we would have obtained claims data from Aetna U.S. Healthcare and we would have run our private proprietary software programs on the data. (Def. Mot. Ex. D at 55 ll. 6-12.)

C. Work Product Privilege

The Court reaches the same conclusion with respect to Plaintiff's indirect assertion of work-product privilege and determines that the privilege does not apply. A party claiming work product privilege bears the initial burden of showing that the materials in question were prepared in anticipation of litigation. [FN5] Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir.2000); Cedrone v. Unity Sav. Ass'n, 103 F.R.D. 423, 426 (E.D.Pa.1984). Documents are prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir.1979). The preparer's anticipation of litigation must be objectively reasonable. Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir.1993). Generally, a reasonable anticipation of litigation requires existence of an identifiable specific claim or impending litigation at the time the materials were prepared. Microvote, 175 F.3d at 305. "Advising a client about matters which may or even likely will ultimately come to litigation does not satisfy the 'in anticipation of' standard. The threat of litigation must be more real and imminent than that." Cedrone, 103 F.R.D. at 426 (quoting In re Grand Jury Investigation (Sturgis), 412 F.Supp. 943, 948 (E.D.Pa.1976)).

FN5. The Court again rejects Plaintiff's "decline to waive the privilege" semantical argument. If it wishes to rely on the work product privilege doctrine to escape discovery, Plaintiff must meet the legal standard.

Plaintiff has failed to show that the audit was conducted in reasonable anticipation of litigation. Plaintiff's submissions merely show that Plaintiff was retained by

26 Employee Benefits Cas. 1828
(Cite as: 2001 WL 605199 (E.D.Pa.))

Caradon's counsel on Caradon's behalf in connection with counsel's investigation into Defendant's performance under an administrator agreement with Caradon. (Pl. Resp. Ex. A; Pl. Resp. Ex. B ïï 3-4.) The prospect for resultant litigation, however, would depend on the results of the audit. This evidence does not support the existence of an objectively reasonable real or imminent threat of litigation, but rather merely invites speculation as to the possibility for litigation to recover overpayments. Furthermore, the litigation that actually ensued arose from a dispute over the extent of Defendant's responsibility to provide materials for the audit. [FN6] (Pl. Resp. Ex. B ïï 5-6.) Under this circumstance, the audit cannot reasonably be said to have been ordered in anticipation of the litigation.

  FN6. During the course of the audit, Caradon, Plaintiff and Defendant clashed over Defendant's responsibility to produce provider contracts for inspection by Plaintiff. (Pl. Letter Supplement Ex. D ïï 2.4, 2.5.) As a result, Caradon sued Defendant to compel production of complete provider contracts. (Id. ï 3.1.)

  D. Conclusion

  *5 For these reasons, the Court grants Defendant's Motion to Compel Discovery of all documents relating to prior audits conducted by Plaintiff as alleged in the Complaint, including the Caradon Audit, and orders Timothy Schmidt and James Mauntler to respond to questions regarding past audits referenced in the Complaint, including the Caradon Audit. The Court further declines Plaintiff's invitation to inspect in camera all of the documents listed in its privilege log. The Court would only examine documents to determine the applicability of privilege due to their content upon presentation of a sufficient foundation. For the reasons discussed above, Plaintiff has established no such foundation. An appropriate Order follows.

  2001 WL 605199 (E.D.Pa.), 26 Employee Benefits Cas. 1828

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo