# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Maryellen Noreika
302 351 9278
302 425 3011 Fax
mnoreika@mnat.com

March 8, 2006

**BY ELECTRONIC FILING**
The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

    Re: Pharmacia & Upjohn Company LLC v. Sicor, Inc. et al.,
       C.A. No. 04-833 (KAJ)

Dear Judge Jordan:

  Sicor has moved to compel Pharmacia "to produce documents concerning oncology drug licenses entered into by Pharmacia." Pharmacia has already produced the documents within the scope of Sicor's prior document requests, as well as other arguably relevant documents. Searching for additional documents requested by Sicor's current motion would by unduly burdensome and lead only to the production of unrequested, irrelevant documents. Sicor's motion should be denied.

## FACTUAL BACKGROUND

  Pharmacia is accusing Sicor of infringing U.S. Patent No. 6,107,285 ("the '285 patent") through its marketing of a ready-to-use solutions of idarubicin hydrochloride. Idarubicin is a member of the anthracycline glycoside family of pharmaceuticals. The '285 patent covers the storage-stable solution of idarubicin hydrochloride as well as two other members of the anthracycline glycoside family, epirubicin hydrochloride and doxorubicin hydrochloride. For that reason, discovery has been focused on anthracycline glycosides.

  Sicor's Rule 34 document request for the production of licenses specified that the request was limited to those covering anthracycline glycosides:

> 13. All documents that constitute, mention or refer to any consideration, negotiation, license, execution, covenant not to sue, settlement of litigation or legal claim or other agreement concerning any invention or subject matter disclosed, described or claimed in the '285 Patent or any of the Related Patents, including all licenses to manufacture, distribute or resell Idarubicin or any of the other Anthracycline Glycosides to any third party including Bedford Laboratories, Inc., Abbott Laboratories, American Pharmaceutical Partners, Inc. or any of their corporate affiliates, and including any royalties received or due under any such license or other agreement.

The Honorable Kent A. Jordan
March 8, 2006
Page 2

Ex. A, p. 11. To the extent that requests for production were not phrased in terms of anthracycline glycosides, many (such as Request Nos. 26 and 29, identified in Sicor's letter to the Court) were phrased in terms of the '285 patent:

> 26.    All documents that mention, refer or evidence to or evidence the royalty rate or rates that would constitute a "reasonable royalty" under 35 U.S.C. § 284, assuming that an infringement of the '285 Patent is found in this case.
>
> 29.    All documents that evidence, discuss, analyze or refer to the amount PNU would have been willing to accept at any time for a license to practice the '285 Patent.

*Id.*, p. 19-21. No document request specifically asked for the production of licenses beyond those for anthracycline glycosides.[1] Accordingly, Pharmacia produced all such license agreements, including licenses related to doxorubicin hydrochloride, as well as other agreements relating to Sicor and those identified by John McBride during his testimony.

Subsequent to Pharmacia's document production, Sicor sought to expand the scope of Request No. 26 to cover other oncology products; however, that expansion did not relate to license agreements. *Compare* Sicor Ex. 2 to Exs. B, C attached. Instead, as detailed in letters from Sicor's counsel and Pharmacia's counsel in September 2005, the expanded scope related *only* to oncology sales documents such as monthly reports, sales representative materials, and strategic plans. Exs. B, C. At no time prior to February 2006 did Sicor suggest that it had requested, or desired, licenses relating to any products other than anthracycline glycosides.

On February 16, 2006, Sicor took the deposition of a former Pharmacia employee, John McBride. Mr. McBride identified two license agreements that Pharmacia entered into during his tenure of global head of oncology licensing between 1999 and 2003: one relating to doxorubicin (which had been produced long before) and a second involved a "very unusual deal" regarding to an unrelated oncology drug. Ex. D, p. 114-15. That testimony, taken months after Sicor's document requests and the submission of expert reports, led Sicor's counsel to demand, for the first time, production of all oncology licenses. Ex. E.

Sicor contends that it took Mr. McBride's deposition when it was "[u]nable to obtain testimony from any Pharmacia witness concerning its licensing practices." Not so. Sicor served a subpoena upon Mr. McBride on October 25, 2005, *before* it deposed Peter Laivins; Sicor had identified Mr. McBride as a potential witness (re: laches and estoppel) in its Rule 26 initial disclosures. Exs. F, G. In short, Mr. McBride's testimony regarding an additional license – which Pharmacia produced in an attempt to avoid Sicor's rush to Court – was merely fortuitous; he was *not* sought or presented as a witness in relation to reasonable royalty issues.

---

[1] In its Third Set of Requests for Production, Sicor requested documents "concerning any and all patents or oncology products sold, licensed, or offered for sale or license at any time by Pharmacia to Sicor . . ." Ex. H, p. 2. Assuming that request extended to licenses, it would not be relevant to Sicor's motion, which seeks licenses with other companies.

The Honorable Kent A. Jordan
March 8, 2006
Page 3

## ARGUMENT

Sicor's motion should be denied: first, Sicor never served a request for production of documents that included licenses unrelated to anthracycline glycosides; second, even if it had, such licenses fall outside the scope of relevance established by Rule 26; and, third, the search for documents responsive to such a request would be inordinately burdensome.

As discussed above, Sicor's document requests do not encompass licenses for products other than anthracycline glycosides. The request directed to licenses is limited to anthracycline glycosides; the other requests Sicor cites are tied to the '285 patent (which relates to anthracycline glycosides). Until mid-February 2006, Sicor did not suggest that it wanted such licenses, and neither party's expert suggested that such licenses would be relevant to the determination of a reasonable royalty. Pharmacia does not intend to rely upon any licenses not produced in this case. Sicor's motion should be denied because it is not based on any cognizable discovery request.

Furthermore, Pharmacia has already produced all licenses that would be relevant to a determination of a reasonable royalty, the only issue raised by Sicor. The determination of a "reasonable royalty" focuses on the period shortly before the infringement began. *See, e.g., Integra Life Sciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003), *vacated and remanded on other grounds*, 125 S.Ct. 2372, 162 L.Ed.2d 160 (2005). Pharmacia produced the relevant licenses it entered into between 1999 and 2003, around the period when Sicor's infringement began. No other time period would be relevant to the determination of a reasonable royalty, meaning that the additional documents that Sicor's motion requests are not likely to lead to the discovery of admissible evidence. They are therefore outside the scope of proper discovery. *See* Rule 26(b)(1).

Finally, because Sicor has not sought to limit its request in any way, it would be extremely burdensome for Pharmacia even to determine whether additional documents exist. Sicor does not limit its request temporally or geographically. That is, Sicor seeks any license agreement, from any date, in any country, pertaining to any oncology product. "Oncology products" themselves consist of unrelated drugs with different chemistry, different markets, and different profitability. According to the definitions set forth in Sicor's First Request for Production, the motion might even stretch to licenses entered into by Pfizer (Pharmacia's parent), rather than Pharmacia itself. Pfizer is composed of more than 700 different companies worldwide, which would make a search for licenses incredibly onerous. Moreover, most such agreements have confidentiality provisions and are considered to be confidential by third parties, including Sicor's competitors, located in various places in the world. In short, it would take a monumental effort to search for the licenses within the scope of Sicor's motion, all for documents that are completely irrelevant to these proceedings. Allowing such discovery is inappropriate under the Federal Rules, particularly at this late stage of proceeding. Fed. R. Civ. P. 26(b)(2)(iii).

Respectfully,

Maryellen Noreika

cc: Peter T. Dalleo, Clerk (By Hand)
John G. Day, Esquire (By Hand)