# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

April 5, 2006

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

BY ELECTRONIC FILING

Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

**REDACTED PUBLIC VERSION**

Re:   Pharmacia & Upjohn Co., LLC v. Sicor Inc., et al., C.A. No. 04-833-KAJ

Dear Judge Jordan:

We respond on behalf of defendants to Pharmacia's March 24 letter regarding Exhibit 106. Before the February 9, 2006 deposition of Lawrence Welch, Sicor believed that Exhibit 106 had been produced during discovery. While this belief was mistaken, Sicor did produce the document *prior* to the close of discovery and *prior* to the deposition of Wesley Fach, the only person Pharmacia has indicated it wants to depose in connection with the document. Since Mr. Fach still has not been deposed, Pharmacia will have ample time to prepare, and has not suffered any prejudice. In addition, Pharmacia has at all times had Exhibit 106 in its possession -- it was included on Pharmacia's privilege log. (Ex. A, nos. 7786, 7787). Under settled Third Circuit precedent, Rule 37(c) sanctions should not be imposed under these circumstances, and Pharmacia's attempt to exclude Exhibit 106 should be denied. Substantively, Pharmacia's privilege assertions are without basis, and should be rejected.

## A.   Sicor's Delayed Production Was Inadvertent, Harmless And Not Deserving Of Rule 37(c) Sanctions

By way of explanation, we note that the two attorneys who oversaw Sicor's document production are no longer with Sicor's New York counsel. The attorneys that continue to defend this case believed that Exhibit 106 had been produced in the ordinary course by those now departed attorneys -- this is demonstrated by counsel's statements during Mr. Welch's deposition. (Ex. B at 28-29). While counsel's belief was erroneous, such an inadvertent error does not warrant Rule 37(c) sanctions, and we respectfully suggest that this Court should not exercise its discretion by imposing them. *See Newman v. GHS Ostheopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (Rule 37(c) sanctions are "within the discretion of the trial court"). Exclusion under Rule 37 is a "severe sanction" and is "often inappropriate unless the failure to disclose or supplement is in bad faith or the resulting prejudice cannot be cured." *Scott v. IBM Corp.*, 196 F.R.D. 233, 247 n.9 (D.N.J. 2000). To that end, in *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000), the Third Circuit set forth four factors to consider in assessing whether evidence should be excluded under Rule 37(c): (1) the prejudice or surprise to the party seeking exclusion; (2) whether such prejudice can be cured; (3) the extent to which allowing

evidence would disrupt the trial; and (4) bad faith or willfulness. None of these factors supports exclusion of Exhibit 106.

The only purported prejudice Pharmacia has identified is that it has allegedly been "robbed . . . of the ability to take discovery as to how Sicor came into possession of the documents and to discredit any possible reliance on the documents." (March 24 Letter at 3). This is not the case. First, Pharmacia's predecessor, Upjohn, is the entity that gave Exhibit 106 to Sicor's predecessor. It did not come from an unknown source. Moreover, Pharmacia concedes that it has been unable to investigate how Sicor obtained Exhibit 106 only because it has not yet deposed Mr. Fach. (*Id.* at 1 n.1). But, Mr. Fach's deposition -- which the parties agreed to hold in abeyance pending the Court's recent discovery decisions -- is likely to go forward in early May.[1] Pharmacia thus has not been harmed by the delayed production. Further, given that the trial date is months away, there can be no claim that allowing Exhibit 106 into evidence would disrupt the trial. And, Sicor's error was neither willful nor done in bad faith -- it was a mistake. In short, none of the *Nicholas* factors support the "extreme sanction" of exclusion. *See GlobespanVirata Inc. v. Texas Instruments, Inc.*, 2005 WL 1638136, at *2 (D.N.J. July 12, 2005) ("The Third Circuit Court of Appeals held that '[t]he exclusion of evidence for violation of a discovery order is an extreme sanction.'") (*quoting In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999)) (attached as Ex. C).

We are aware of this Court's decision in *Philips Elecs. North Am. v. Contec Corp.*, 2004 WL 769371, at *1 (D. Del. 2004) (KAJ) (attached as Ex. D), excluding evidence produced after the discovery cut-off because the proffering party attempted to use its untimely production as a means to avoid having its president deposed about the late-produced documents. As Your Honor noted, the proffering party in that case either did not or could not show that its delay was harmless. We respectfully submit that Sicor's conduct in this case does not approach that of the proffering party in *Philips*. Here, the document was produced before the discovery cutoff, and Pharmacia has suffered no prejudice or harm. Indeed, the depositions of the relevant witnesses have not yet occurred. And, significantly, there is no evidence that Sicor acted willfully or in bad faith, or that Sicor engaged in improper gamesmanship as was apparently true in *Philips*.

Also, Exhibit 106 is highly probative; it is an admission by Pharmacia's predecessor that
                        **REDACTED**
                                        . Further, Pharmacia cannot
claim that it was unaware of Exhibit 106's existence or surprised by its contents -- it is listed in Pharmacia's privilege log. These factors also weigh against exclusion. *See Nicholas*, 277 F.3d at 138 (holding that courts should consider whether the non-proffering party would be surprised by the document's contents); *GlobespanVirata, Inc.*, 2005 WL 1638136, at *2 (considering the importance of the evidence to the proffering party).

---

[1]


**REDACTED**

**B.    Pharmacia Waived Privilege on Exhibit 106**

Pharmacia's predecessor sent Exhibit 106 to Sicor's predecessor, and Pharmacia opted to initiate this lawsuit. The inescapable result of these two decisions was to waive any privilege that may have existed on Exhibit 106. Sicor is not, as Pharmacia suggests, positing that it may waive Pharmacia's privilege. Pharmacia did that on its own long before this discovery dispute ensued.

Pharmacia asserts that Exhibit 106 was subject to a common interest privilege, but provides no evidence that when it was sent to Mr. Fach, the parties had anything other than "merely concurrent legal interests," which is insufficient to invoke the privilege. *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995). Nor has Pharmacia demonstrated that the parties were "cooperat[ing] in a common legal strategy," as required to sustain a common interest privilege claim. *In re Diet Drugs*, MDL No. 1203, 2001 WL 34133955, at *9 (E.D. Pa. April 19, 2001) (attached as Ex. E). "[T]he common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Bank Brussells*, 160 F.R.D. at 447. Yet, this is the factual backdrop

REDACTED

This is not a case like *Hewlitt-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987), in which a privileged document was exchanged in connection with a potential purchase of one company by another, at a time when it was clear that a lawsuit against the company being purchased was forthcoming. Indeed, in *Hewlitt-Packard*, the court found that the defendant "had a duty to disclose" information relating to the patent dispute and the "real possibility" of litigation. No such duty existed here.    **REDACTED**

Pharmacia has not demonstrated that Gensia and Delta West were engaged in a "common legal strategy" when Exhibit 106 was forwarded to Mr. Fach. Its common interest claim thus fails.

Finally, Pharmacia's claim that a suit between parties who once shared a common interest does not waive privilege as to documents they shared, is incorrect. The privilege is waived once parties engage in litigation against each other. *See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 436-37 (S.D.N.Y. Bankr. 1997) ("[T]he few cases and voluminous commentary that do address the issue state that subsequent litigation *inter sese* operates to waive the joint defense privilege in [the allied lawyer or common interest situation]").

Respectfully,

John G. Day

JGD/dmf

cc:    Clerk of the Court (by hand, with exhibits)
        Maryellen Noreika, Esquire (by hand, with exhibits)
        Daniel A. Boehnen, Esquire (by electronic mail, with exhibits)
        Reid L. Ashinoff, Esquire (by electronic mail, with exhibits)

168311.1

# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C



Not Reported in F.Supp.2d                                                                     Page 1
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: 2005 WL 1638136 (D.N.J.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
GLOBESPANVIRATA, INC., Plaintiff,
v.
TEXAS INSTRUMENTS INC., et al., Defendants,
**No. Civ.A. 03-2854(GEB).**

July 12, 2005.

Robert J. Stickles, Klett, Rooney, Lieber & Schorling, PC, William B. McGuire, Brian M. English, Tompkins McGuire Wachenfeld & Barry LLP, Thomas F. Doherty, McCarter & English, LLP, Newark, NJ, for Plaintiff.

Liza M. Walsh, Agnieszka Antonian, Connell Foley, LLP, Roseland, NJ, for Defendants.

MEMORANDUM OPINION
HUGHES, J.

**\*1** This matter comes before the Court on Defendants, Texas Instruments, Inc. ("TI") and the Leland Stanford Junior University's ("Stanford"), ("Defendants"), Application to preclude use of certain documents addressed in the expert witness report of Dirk Hartogs, PhD ("Hartogs Report") and certain documents produced by Plaintiff, GlobespanVirata ("Globespan"), in May 2005. Additionally, Defendants seek to assert an additional claim, Claim 9 of the 447 patent, which is dependent on already-asserted claims 1, 2, 3, and 7. Plaintiff opposes both Applications. The Court has reviewed the written submissions of the parties and conducted oral argument on June 22, 2005. For the reasons that follow, Defendants' Application to preclude certain documents addressed in the Hartogs Report and Defendants' Application to assert an additional claim are both denied.

I. *BACKGROUND AND PROCEDURAL HISTORY*

The underlying matter arises under the antitrust and patent laws of the United States and the laws of the State of New Jersey. Pl.['s] Br. at 2. The Plaintiff, a global provider of circuits, software, and designs for Digital Subscriber Line ("DSL"), alleges that Defendants, who together own numerous patents related to Asymmetric Digital Subscriber Line ("ADSL") technology, engaged in an unlawful conspiracy requiring Plaintiff to license ADSL-related patents by the block rather than individually. As a result, Plaintiff argues it was forced to license many unnecessary patents from Defendant. *Id.*

In May 2005, Plaintiff produced new evidence and documents of prior art addressed within the Hartogs Report. Defendants claim this production, five months after the December 2004 cut-off date for patent document production, violates the Court's Order of August 16, 2004, which "[o]rdered that a party failing to disclose information shall be precluded from using as evidence any witness or information not so disclosed." Docket Entry # 91.

Defendants contend that certain evidence and documents addressed in the Hartogs Report should be precluded from trial based on Federal Rule of Civil Procedure Rule 37(c) because of Plaintiff's failure to timely supplement its discovery. Defs.['s] App. dated June 20, 2005, at 1. However, Plaintiff argues that the exclusion of the documents at issue would result in "reversible error," Pl['s] Reply App. dated June 20, 2005, at 1.

Plaintiff further asserts that Defendants should have known of the documents because they are simply the foreign versions of the U.S. patents at issue. Pl ['s] App. dated June 21, 2005, at 2. Furthermore, Plaintiff argues that exclusion of the foreign patents would be highly prejudicial because of their "early publication dates ... (which) are critical to Globespan's invalidity case." *Id.* Plaintiff contends that Defendants would suffer no prejudice because the foreign counterparts contain "no technical information beyond what was previously disclosed in the U.S. patents. *Id.*

**\*2** Defendants argue that "[a]lthough Globespan produced some of the prior art references prior to the discovery cut-off of December 2004, its failure to notify Defendants that it would rely on this prior art for its defenses is not contemplated by the spirit of the August 16th Order," which instructed parties that they would be precluded from relying on evidence not produced prior to the the discovery cut-off.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: 2005 WL 1638136 (D.N.J.))**

Defs.['s] App. dated June 11, 2005, at 4.

Defendants also request permission to add an additional claim on Patent No. 5,479,447 ("447"), claim 9. Defs.['s] App. dated June 20, 2005, at 8. Plaintiff contends that Defendants should not be permitted to assert the additional claim because the claim had not been the subject of any discovery and was not construed in the *Markman* hearing or by the Court's Markman Order. Pl['s] Reply App. dated June 21, 2005, at 4. In addition, Plaintiff notes that the request to add an additional claim after two years of discovery would be extremely prejudicial. *Id.* Thus, Plaintiff asserts the additional claim should not be permitted.

## II. *DISCUSSION*

A. Federal Rule of Civil Procedure 37(c)--Application for Preclusion by Defendants

Under Rule 26 of the Federal Rules of Civil Procedure, a party is required to supplement the discovery process only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(2). Furthermore, under Rule 37, a court may impose sanctions if a party "without substantial justification fails ... to amend a prior response to discovery as required by Rule 26(e)(2) ... unless failure is harmless." Fed.R.Civ.P. 37(c)(1). In addition, preclusion of such evidence has been used by the Court when parties fail to disclose. Pl['s] App. dated June 16, 2005 at 1. The Third Circuit Court of Appeals held that "[t]he exclusion of evidence for violation of a discovery order is an extreme sanction." *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir.1999) (citations omitted). Before precluding evidence, the Court has considered whether the party: (1) revealed previously undisclosed evidence when the trial was imminent; or (2) acted in bad faith. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-93 (3d. Cir.1994).

In deciding whether to preclude evidence under Rule 37, "the Third Circuit Court of Appeals has identified five factors to consider: (1) the prejudice or surprise to a party against whom the evidence is offered; (2) ability of the injured party to cure the prejudice; (3) likelihood of disruption of trial; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) importance of the evidence to the proffering party." Defs.['s] App. dated June 20, 2005, at 4 (*see In re Mercedes-Benz Anti-Trust Litigation*, 225 F.R.D. 498, 506 (D.N.J.2005)); *see also Quinn v. Consol. Freightways Corp.*, 283 F.3d 572, 577 (3d. Cir.2002).

**\*3** In deciding the issue of prejudice or surprise, this Court has held that it "should not speculate on how [the surprised party] would have used the additional information disclosed;" rather prejudice exists when the surprised party likely would have conducted discovery differently. *In re Mercedes-Benz Anti-Trust Litig.*, 225 F.R.D. 498 at 506. However, the Court did hold that prejudice could be cured by both an additional deposition and permitting plaintiffs to submit a supplemental brief. *In re Mercedes-Benz Anti-Trust Litig.*, 225 F.R.D. at 505-08. As a result, the Court did not exclude supplemental evidence to be admitted. *Id.*

The Third Circuit has held that absent a willful deception or "flagrant disregard" of a Court Order, exclusion of evidence would be extreme. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d. Cir.1977). In addition, it has been held that when a party possesses evidence and fails to disclose it, the evidence can be excluded from trial as was the case in *AstraZeneca AB v. Mutual Pharm. Co.* when the party had the evidence in their possession but failed to produce it because it was yet to be translated from German. *AstraZeneca AB v. Mutual Pharm. Co.* 278 F.Supp.2d 491 at 502 (E.D.Pa.2003).

In considering the bad faith factor, preclusion of evidence under Rule 37 has been held to be appropriate when a party has access to information but did not use such information in the response. *In re Mercedes-Benz Anti-Trust Litig.*, 225 F.R.D. at 507. Also, when the non-disclosing party is specifically asked to provide exact information in its possession and it fails to do so, it can be inferred the party acted in bad faith. *Id.* However, under Rule 26, supplementation is only necessary "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(2).

B. Federal Rule of Civil Procedure 16(b)--Application for Permission to Assert a New Claim 9 on the '447 Patent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: 2005 WL 1638136 (D.N.J.))**

When a party moves to amend the deadlines established in the pretrial scheduling order, the party must first satisfy Rule 16(b) of the Federal Rules of Civil Procedure and demonstrate good cause. *See Eastern Minerals & Chem. Co. v. Mahan,* 225 F.3d 330, 340 (Ed Cir.2000). Specifically, Rule 16 provides that a pretrial Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the District Judge, or, when authorized by local rule, by a Magistrate Judge." Fed.R.Civ.P. 16(b). "A finding of good cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." *Rent-A-Center v. Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y.2003) (citations omitted); *see also* Fed.R.Civ.P. 16 advisory committee's note ("[T]he court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension."). Moreover, "'[t]he lack of prejudice to the nonmovant does not show 'good cause." ' *Deghand v. Wal-Mart Stores, Inc.,* 904 F.Supp. 1218, 1221 (D.Kan.1995) (citations ommitted).

**\*4** The Third Circuit has determined that "scheduling orders are the heart of the case management [and cannot] be flouted." *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 341 n. 4 (3d Cir.)(quoting *Koplove v. Ford Motor Co.,* 795 F.2d 15, 18 (3d Cir.1986)); *U.S. v. Princeton-Gamma-Tech, Inc.,* 817 F.Supp. 488, 497 (D.N.J.1993). "The reason for this is simple--scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed." *Id.* (citing *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339-40 (2d Cir.2000)).

III. *ANALYSIS*

A. Federal Rule of Civil Procedure 37(c)--Application for Preclusion by Defendants

Defendants request that certain evidence addressed in the Hartogs Report and certain documents produced in May of 2005, be precluded from trial based upon Rule 37(c)(1) because of Plaintiff's failure to timely supplement its discovery responses. Defs.['s] App. dated June 20, 2005, at I. Defendants assert Plaintiff relied on new art in the Hartogs Report

and under the *Mercedes* test, this new art should be precluded from trial. However, Defendants cannot claim prejudice as they concede they were aware of "some of the prior art references prior to the discovery cut-off of December 2004." Defs.['s] App. dated June 11, 2005, at 4. Additionally, there is no showing of willful disregard or bad faith on the part of Plaintiff. Therefore, because evidence sought to be precluded is critical to Plaintiff, Defendants Application for preclusion of both evidence addressed in the Hartogs Report and certain documents produced in May 2005 is denied.

Defendants in this case concede factors two and three of the five factor *Mercedes* test which effectively state that the court should consider the: (2) ability of the injured party to cure the prejudice; and (3) likelihood of disruption of trial. In their Application, Defendants state that "[t]he likelihood of disruption at trial is irrelevant, given the current stage of litigation." Defs.['s] App. dated June 20, 2005, at 6. Furthermore, "[D]efendants do not dispute that the newly asserted contentions in the Hartogs Report are important to Globespan." Defs.['s] App. dated June 20, 2005, at 7. Therefore, under the *Mercedes* test, preclusion in this case would only be appropriate if Defendants were prejudiced by the late production of evidence or if Plaintiff acted in bad faith or willfully disregarded a court order on production of evidence.

Similar to *In re Mercedes-Benz Anti-Trust Litig,* any prejudice that might have occurred based on the late production of evidence by Plaintiff here, could be cured for example, by an additional deposition. Additionally, Plaintiff did not act in bad faith because it produced the evidence as soon as it had it in it's possession. Unlike the plaintiff in *AstraZeneca AB v. Mutual Pharm. Co.,* whom had the evidence but failed to translate from German to English, Plaintiff did not have such evidence in its possession. Defendants did however have the American counterpart patent which had been timely produced and Plaintiff did produce supplemental evidence when it came into possession. Pl ['s] App. dated June 21, 2005, at 2. As a result, exclusion based on bad faith would be inappropriate. Also, Plaintiff cannot be found to have acted in willful disregard of a court order. Unlike *MOSAID Technologies, Inc. v. Samsung Elecs. Co.,* in which the Court determined the plaintiff had disregarded

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 4
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: 2005 WL 1638136 (D.N.J.))**

orders of the court to produce evidence it had in it's posses-
sion for more than a year, Plaintiff has produced all evid-
ence in its possession. *MOSAID Technologies, Inc. v. Sam-
sung Elecs. Co. 2004 WL 2550309 at *4 (D.N.J.2004).* The
evidence referenced in the Hartogs Report and provided in
May 2005 only recently came into Plaintiff's possession.
Therefore, preclusion based on willful disregard would be
inappropriate because Plaintiff did not act with disregard to
a Court Order. For these reasons, Defendants' Application
for preclusion of both evidence addressed in the Hartogs Re-
port and documents produced in May 2005 is denied.

B. Federal Rule of Civil Procedure 16(b)--Application for
Permission to Assert Additional Claim 9 on the '447 Patent

*5 In view of the various patents involve and number of
claims to be construed, the parties, with the Court's encour-
agement, discussed the *Markman* procedures and hearings
as far back as the initial scheduling conference on Novem-
ber 13, 2003. Thereafter, the *Markman* practice was dis-
cussed at a conference on March 10, 2004 and the final
*Markman* procedure addressed at a conference on June 24,
2004. The *Markman* hearing was conducted before Judge
Brown, culminating in a seventy-six page opinion filed
April 7, 2005. Now, at the very late date, Defendants seek
permission to assert an additional claim, claim 9 of the '447
patent which necessitates claim construction.

During the *Markman* hearing, Defendants failed to alert the
Court of its intentions to assert such a claim. Pl['s] App.
dated June 21, 2005, at 5. Also, Judge Brown's *Markman*
Opinion and Order did not address claim 9. Under Rule 16,
modifying a Court's scheduling order is only appropriate
when the movant shows that deadlines could not be met des-
pite its diligence. Fed.R.Civ.P. 16. In this case, Defendants
expressly seek permission to assert claim 9 "if Globespan is
allowed to maintain the many new inequitable conduct ...
and written description contentions in the Hartogs Report."
Defs.['s] App. dated June 20, 2005, at 8. Allowing supple-
mentation of evidence by Plaintiff is entirely different to al-
lowing Defendants permission to assert a new claim. De-
fendants had ample time to assert claim 9 and if the Court
were to grant permission to assert an additional claim, it
would in effect render the scheduling order meaningless. By
opening the claim construction phase and allowing new

claims after an elaborate and comprehensive *Markman* opin-
ion, the case will surely be further delayed. No good cause
has been shown for a subsequent *Markman* hearing and De-
fendant had the opportunity previously to assert claim 9.
Therefore, for reasons asserted herein, Defendants' Applica-
tion for permission to assert claim 9 is denied.

IV. *CONCLUSION*

For the reasons set forth herein, Defendants' Rule 37(c) Ap-
plication for preclusion of both evidence addressed in the
Hartogs Report and documents provided in May 2005 is
denied. Preclusion is considered an extreme sanction and
only necessary where a party is prejudiced and the prejudice
cannot be cured or when it can be determined a party acted
in bad faith or in willful disregard of a court order. In this
case, any prejudice to Defendants caused by the late produc-
tion of evidence can be cured by additional depositions. Fur-
thermore, because Plaintiff produced supplemental evidence
when it came into its possession, it cannot be found to have
acted either in bad faith or in willful disregard of a court or-
der.

Additionally, Defendants' Application for permission to as-
sert an additional claim is likewise denied. Defendants had
the opportunity to assert claim 9 of the '447 patent during
the initial *Markman* hearing. Under Rule 16, a pretrial order
can be modified if despite a party's diligence, a deadline
could not be reasonably met. However, Defendants failed to
raise claim 9 until after Plaintiff supplemented evidence.
Therefore, it would be inappropriate for the schedule to be
modified in this case and the *Markman* hearing to begin
anew. Accordingly, Defendants' Application for permission
to assert Claim 9 is denied.

Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3522918 (Trial Motion, Memorandum and Affi-
davit) Plaintiffs Reply Brief in Support of Motion to Pre-
clude Tim Williams, PH.D., from Testifying at Trial on the
Subject of Patent Essentiality (Dec. 01, 2005)

• 2005 WL 3522917 (Trial Motion, Memorandum and Affi-
davit) Memorandum in Support of Defendants' Opposition

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                          Page 5
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
(Cite as: 2005 WL 1638136 (D.N.J.))

to Plaintiff's Motion to Preclude Tim Williams, PH.D., from Testifying at Trial on the Subject of Patent Essentiality (Nov. 29, 2005)

• 2005 WL 3522916 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion to Dismiss with Prejudice counts III, V, VI and VII and the Per Se Tying Claims in Counts I and II of Plaintiff's Second Amended Complaint (Nov. 18, 2005)

• 2005 WL 3522915 (Trial Motion, Memorandum and Affidavit) Plaintiffs Brief in Opposition to Defendants' Motion to Dismiss With Prejudice Counts III, V, VI, and VII And The Per Se Tying Claims in Counts I and II of Plaintiffs Second Amended Complaint (Nov. 07, 2005)

• 2005 WL 3172629 (Trial Motion, Memorandum and Affidavit) Redacted Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment That Defendant Texas Instruments is Not Entitled to Lost-Profits Patent Damages (Oct. 31, 2005)

• 2005 WL 3172635 (Trial Motion, Memorandum and Affidavit) Redacted Version Plaintiff's Reply Brief in Support of Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 31, 2005)

• 2005 WL 3172624 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Opposition to Plaintiff's Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 26, 2005)

• 2005 WL 3172617 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment that Defendant Texas Instruments is not Entitled to Lost Profits Patent Damages (Oct. 24, 2005)

• 2005 WL 3172615 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 18, 2005)

• 2005 WL 3742094 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion to Dismiss with Prejudice Counts III, V, VI and VII and the Per Se Tying Claims in Counts I and II of Plaintiffs' Second

Amended Complaint (Oct. 11, 2005)

• 2005 WL 2898263 (Trial Pleading) Second Amended Complaint And Demand for Jury Trial (Sep. 26, 2005)

• 2005 WL 2511467 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment (Aug. 25, 2005)

• 2005 WL 3742095 (Trial Motion, Memorandum and Affidavit) Defendants' Redacted Reply Memorandum in Further Support of Motion to Dismiss Declaratory Judgment Counts XII-XV as to Non-Counterclaim Patents (Aug. 19, 2005)

• 2005 WL 3742096 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (Aug. 19, 2005)

• 2005 WL 2511460 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Aug. 18, 2005)

• 2005 WL 3742097 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment (Aug. 18, 2005)

• 2005 WL 2511446 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (Aug. 05, 2005)

• 2005 WL 3742098 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiff's Motion to Separate Trial Pursuant to Fed.R.Civ.P. 42 (Aug. 05, 2005)

• 2005 WL 2511441 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion for Partial Summary Judgment Redacted (Aug. 04, 2005)

• 2005 WL 3742099 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Motion for Summary Judgment of Infringement of U.S. Patent Nos. 5,400,322, 5,479,447 and 5,596,604 (Aug. 04,

Westlaw.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: 2005 WL 1638136 (D.N.J.))**

2005)

• 2005 WL 3172608 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion for Partial Summary Judgment That Defendant Texas Instruments is Not Entitled to Lost Profits Patent Damages Redacted (Jan. 01, 2005)

• 2004 WL 3373594 (Trial Pleading) Texas Instruments, Inc., the Leland Stanford Junior University and Its Board of Trustees, and Stanford University OTLl, LLC;'s Reply Claim Construction Brief (Sep. 27, 2004)

• 2004 WL 3373590 (Trial Pleading) Plaintiff Globespan Virata Inc.'s Reply Brief Regarding Claim Construction (Sep. 23, 2004)

• 2004 WL 3373592 (Trial Pleading) Texas Instruments, Inc., the Leland Stanford Junior University and Its Board of Trustees, and Stanford University OTL, LLC,'s Reply Claim Construction Brief (Sep. 23, 2004)

• 2004 WL 3373583 (Trial Pleading) Plaintiff Globespan Virata Inc.'s Opening Brief on Claim Construction (Sep. 02, 2004)

• 2004 WL 3373586 (Trial Pleading) Texas Instruments, Inc., the Leland Stanford Junior University and Its Board of Trustees, and Stanford University OTL, LLC,'s Opening Claim Construction Brief (Sep. 02, 2004)

• 2004 WL 3373581 (Trial Motion, Memorandum and Affidavit) Conexant Systems, Inc.'s Response and Affirmative Defenses to Second Amended Counterclaims of Texas Instruments Incorporated (Aug. 26, 2004)

• 2004 WL 3373578 (Trial Motion, Memorandum and Affidavit) Response and Affirmative Defenses to Second Amended Counterclaims of Texas Instruments Incorporated (Aug. 20, 2004)

• 2004 WL 3373575 (Trial Pleading) Answer and Counterclaim of Texas Instruments Incorporated, the Leland Stanford Junior University, Its Board of Trustees and Stanford University OTL, LLC to Globespanvirata, Inc.'s First Amended Complaint (Jul. 30, 2004)

• 2004 WL 3686652 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiff's Motion to Open Discovery Into Patent Misuse (Feb. 25, 2004)

• 2003 WL 24135475 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (Jan. 01, 2003)

• 2003 WL 24210318 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion for Reconsideration of Part of the Order on Summary Judgment (Jan. 01, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 769371 (D.Del.)
**(Cite as: 2004 WL 769371 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PHILIPS ELECTRONICS NORTH AMERICA CORPOR-
ATION and U.S. Philips Corporation,
Plaintiffs,
v.
CONTEC CORPORATION, Compo Micro Tech, Inc.,
Seoby Electronics Co., Ltd., Remote
Solution Co., Ltd., F/K/A Hango Electronics Co., Ltd.,
Hango Remote Solution,
Inc., Defendants.
**No. Civ.A. 02-123-KAJ.**

April 5, 2004.

Richard L. Horwitz, Potter Anderson & Corroon, LLP,
Wilmington, DE, for Plaintiffs.

Patricia Smink Rogowski, Connolly, Bove, Lodge & Hutz,
Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell,
Kathleen Jennings-Hostetter, Oberly & Jennings, Andre G.
Bouchard, Bouchard, Margules & Friedlander, David L.
Finger, David L. Finger, Esq., Wilmington, DE, for Defend-
ants.

*MEMORANDUM ORDER*

JORDAN, J.

**\*1** On March 29, 2004, I held a pretrial conference with the
parties in anticipation of the trial in this matter scheduled to
commence on April 12, 2004. At that time, I was able to ad-
dress several of the motions in limine filed with the pretrial
order. [FN1] Following are my rulings on the remaining
motions in limine. [FN2]

> FN1. I granted Philips' motion to exclude from the
> jury evidence relevant solely to CMT's equitable
> defenses (Transcript at 29); I granted Philips' mo-
> tion to exclude opinion of counsel letters that were
> prepared for a company that is no longer a party to
> this litigation and which were never seen by any

CMT employee (Transcript at 48); and I granted
CMT's motion to exclude the testimony of Philips'
proposed legal expert (Transcript at 56-57).

> FN2. In light of the rulings contained herein and
> decisions issued on the parties' dispositive motions,
> the parties should confer and contact the court for a
> teleconference to further discuss the trial in this
> case.

Philips' motion to exclude from the jury evidence of pro-
ceedings in foreign patent offices (*see* Pretrial Order, Dock-
et Item ["D.I."] 361, at 56) is hereby GRANTED, although
it is perhaps better viewed simply as moot. CMT has effect-
ively conceded that the contested evidence is relevant solely
to its equitable defenses. (*See id.* at 58.) I have already ruled
that I will hear evidence on those defenses separately from
the evidence presented to the jury. Accordingly, the relief
that Philips seeks is unnecessary. It should be plain to the
parties that evidence regarding proceedings in foreign patent
offices is to be presented solely before me, in connection
with the parties' positions on CMT's inequitable conduct de-
fense.

Philips' motion to exclude untimely produced evidence (*id.*
at 61) is hereby GRANTED. Following the September 2003
discovery cutoff in this case, a cutoff that was twice exten-
ded, CMT came forward with additional documents which it
has failed to persuade me could not have been produced
during the extended discovery period. For example, during
the deposition of its president or chairman, a Mr. Park,
CMT disclosed the existence of relevant information in Mr.
Park's appointment books but refused to schedule a continu-
ation of the deposition to permit Philips to question Mr.
Park following the production of that information. Remark-
ably, CMT asserts that it should be able to rely on those
documents now because Philips didn't seek to compel the
extension of the deposition before. That approach, of course,
would put the onus for late production on the wronged party
and ignores the import of Federal Rule of Civil Procedure
37(c)(1), which provides that "[a] party that without justific-
ation fails to disclose information required [by the rules of
discovery] is not, unless such failure is harmless, permitted
to use as evidence at trial ... information not so disclosed."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 769371 (D.Del.)
(Cite as: 2004 WL 769371 (D.Del.))

Page 2

That provision was added to the Rules to serve as an "auto-matic sanction" intended to provide "a strong inducement for disclosure of material that the disclosing party would ex-pect to use as evidence[.]" Advisory Committee Note to 1993 Amendments to Fed.R.Civ.P. 37. CMT's suggestion that it is permitted to supplement its discovery responses up to the day of trial (see D.I. 373 at 3) does not address the pertinent point: is there any reasonable excuse for its delay in bringing forward the material it wants to rely upon now? I have not heard it, if there is. What I have heard is the claim that delivering documents after the close of discovery, in-cluding the close of expert discovery, should be permitted because "CMT has consistently made its best efforts to com-ply with its discovery obligations." (Id. at 4.) That assertion, of course, is hotly contested by Philips, which claims it has faced repeated difficulty in obtaining CMT's compliance with the rules of discovery. Regardless of who is right on that score, however, an "A" for effort does not excuse CMT's failure to abide by its disclosure obligations. "In every trial there comes a time when discovery must be closed for issues to be resolved through summary judgment and/or trial." Stambler v. RSA Sec., Inc., 21 F.R.D. 470, 472 (D.Del.2003). Since CMT has not shown that its failure to properly and timely produce the evidence in question is harmless, the evidence will not be permitted at trial.

*2 CMT's motion to exclude evidence regarding the doc-trine of equivalents (D.I. 361 at 64) is mooted by my sum-mary judgment ruling in CMT's favor on the '562 patent.

CMT seeks the exclusion of four proposed witnesses for Philips: Messrs. Bovial, Parham, Ingersoll, and Orlando. (Id. at 71.) Its motion is DENIED in part and GRANTED in part, with leave for Philips to provide further evidence from the discovery record to support its contention that information regarding Mr. Parham was adequately disclosed. CMT's contention is that, although the identity of these individuals may have surfaced in pretrial discovery, CMT has been un-fairly surprised to find them listed as witnesses. As to Messrs. Ingersoll and Orlando, that contention simply does not bear serious scrutiny. CMT itself identified these two gentlemen as having knowledge related to CMT's laches and estoppel defenses. (D.I. 381 at 2.) Philips has argued, without a direct rebuttal from CMT, that the testimony of

these men is only relevant because CMT wants to introduce testimony of what they allegedly communicated to CMT's Mr. Park. (Tr. at 36.) It is untenable for CMT to argue that it is surprised to learn that the very individuals it has identified as disclosing relevant information to Mr. Park may have something relevant to say about what they told Mr. Park. CMT's motion to exclude Messrs. Ingersoll and Orlando as witnesses is therefore DENIED.

As to Messrs. Bovial and Parham, however, CMT's protest-ations are more credible, it appears that CMT did ask inter-rogatories that should have elicited their names and that Philips did not identify them in response to those interrog-atories. The interrogatories require the identification of indi-viduals with knowledge of facts supporting Philips' conten-tion that the Philips' patents in suit are valid and that CMT has infringed them. Philips does not argue, apparently be-cause it cannot, that it ever supplemented its interrogatory responses by naming Messrs. Bovial and Parham. Philips contends that it could not have read the interrogatories as re-quiring it to identify those men. On that score it is mistaken. While broadly worded, the interrogatories in question do re-quire the identification of individuals with knowledge of the facts underlying Philips' validity and infringement asser-tions. (See D.I. 381 at Ex. A, Interrogatories No. 2 and No. 3.)

What Philips does say, however, at least as to Mr. Bovial, is persuasive. Philips asserts that CMT learned long ago that Mr. Bovial had relevant knowledge, that he was discussed at length in several depositions, a claim that CMT does not deny, and that certain deponents gave very specific testi-mony about the central role that Mr. Bovial, a former Philips employee, played in providing information given by a current Philips employee at a 30(b)(6) deposition. (D.I. 361 at 76.) Accordingly, CMT was fairly on notice of Mr. Bovial's identity and the type and importance of the inform-ation he possesses. CMT's motion to exclude Mr. Bovial as a witness is therefore DENIED.

*3 Philips has not made a similar case with respect to Mr. Parham. Other than its flat assertion that Mr. Parham's name has come up, Philips has given no indication that Mr. Par-ham was someone that CMT could have and should have fo-cused on in the course of discovery. CMT's motion to ex-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 769371 (D.Del.)
**(Cite as: 2004 WL 769371 (D.Del.))**

clude his testimony is therefore GRANTED; however, given
the potential impact of excluding a witness at this late date, I
will provide one final opportunity for Philips to disclose ex-
actly what it proposes to have Mr. Parham testify to and the
evidence in the discovery record that should have put CMT
on notice that he was a candidate to provide such testimony
at trial. Philips submission in this regard should be delivered
to the Court and served on opposing counsel no later than
the close of business on Tuesday, April 6, 2004. Any re-
sponse that CMT may wish to make should be delivered by
the close of business on Thursday, April 8, 2004.

Not Reported in F.Supp.2d, 2004 WL 769371 (D.Del.)

**Motions, Pleadings and Filings** (Back to top)

• 2005 WL 2385623 (Trial Motion, Memorandum and Affi-
davit) Reply Brief in Support of the Joint Motion for Sum-
mary Judgment of Defendants Remote Solution Co, Ltd.
and Hango Remote Solution, Inc. (Jul. 29, 2005)

• 2005 WL 2385622 (Trial Motion, Memorandum and Affi-
davit) Answering Brief of Defendants Remote Solution Co,
Ltd. and Hango Remote Solution, Inc. in Opposition to
Plaintiffs' Motion for Summary Judgment (Jul. 20, 2005)

• 1:02cv00123 (Docket) (Feb. 12, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
(Cite as: 2001 WL 34133955 (E.D.Pa.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
IN RE: DIET DRUGS
(PHENTERMINE/FENFLURAMINE/DEXFENFLURAMI
NE) PRODUCTS LIABILITY
LITIGATION.
**MDL Docket No. 1203**

April 19, 2001.

Trial Order
Memorandum and Pretrial Order No. 1910
**MEMORANDUM AND PRSTRIAL ORDER NO. 1910**
*1 BECHTLE, J.
April 19, 2001

Presently before the Court is American Home Products Corporation's ("AHP") limited appeal of Special Discovery Master Decision and Recommendation No. 22 ("D&R 22"). Specifically, AHP appeals the decision and recommendation that the attorney-client privilege was waived as to documents shared among AHP, Interneuron Pharmaceuticals, Inc. ("Interneuron") and/or Les Laboratories Servier ("Servier") based upon a finding that the common interest doctrine does not apply to their common effort to convince federal regulatory agencies to remove fenfluramine and dexfenfluramine from lists of controlled substances under the Controlled Substances Act ("descheduling"). [FN1] For the reasons set forth below, the Court will affirm Special Discovery Master Decision and Recommendation No. 22.

>       FN1. AHP also appealed the decision and recommendation that confidential attorney-client communications relating to the attorney's "lobbying services" with government officials in support of AHP'3 legal interests were not protected by the attorney-client privilege. (AHP Appeal at 1-2.) Because this issue has been resolved, it will not be addressed.

**I. BACKGROUND**

**A. Procedural History**

In this Multidistrict Litigation Ho. 1203 ("MDL 1203"), AHP withheld from production approximately 9,500 documents on the basis of privilege. As required under Federal Rule of Civil Procedure 26(b)(5), AHP prepared a privilege log identifying the withheld documents. The Plaintiffs' Management Committee ("PMC") disputes the adequacy of AHP's privilege log and the validity of the privileges asserted. Specifically, the PMC argues that the documents are not privileged, or that any privilege was waived because the documents were exchanged between AHP, Interneuron and Servier,

AHP argues that certain communications exchanged between Interneuron, Servier and AHP are protected from waiver under the common interest doctrine. Specifically, AHP argues that interneuron, Servier and AHP had a collective common interest in descheduling these drugs. As a result, AH? asserts that it can properly withhold documents exchanged between or shared with Interneuron and/or Servier concerning descheduling efforts related to the diet drugs. The PMC contends that the common interest doctrine is inapplicable to these documents.

AHP provided copies of the Interneuron and Servier documents and an Affidavit of Robert A. Dougan, Senior Vice President of Commercial Development for AHP, to the Special Discovery Master. See D&R 22 Ex. A (reflecting Dougan's characterization of relationship between three entities as having "common interests") . The Special Discovery Master announced a preliminary decision during a status conference on May 5, 1999. AHP requested reconsideration of that decision and submitted the affidavit of Frank J. Sasinowski, Esquire, of Hyman, Phelps & McNamara, P.C. ("Hyman Phelps"), describing the firm's representation of AHP, Interneuron and Servier. (D&R 22 Ex. B.) The PMC submitted a response on May 18, 1999.

*2 On June 9, 1999, the Special Discovery Master filed D&R 22, finding that: 1) some of the withheld documents are not privileged and must be produced; 2) some of the documents are privileged; 3) a portion of AHP's otherwise privileged documents that were shared with Servier and/or Interneuron are protected by the common interest doctrine.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
**(Cite as: 2001 WL 34133955 (E.D.Pa.))**

On June 18, 1999, AHP appealed D&R 22. On July 2, 1999, the PMC filed a response and the parties filed additional papers. On January 6, 2000, the court asked AHP to submit a supplemental brief addressing the law on the common interest doctrine in the states that treat the doctrine most favorably. AHP submitted that brief, the PMC responded and AHP filed a reply.

**B. Factual History**

Servier held the international patent rights to both fenfluramine and dexfenfluramine. In 1963, Science Union & Company, a Servier affiliate, entered into a licensing agreement with A.H. Robins Company, Inc. ("Robins"). That licensing agreement granted Robins the right to market fenfluramine in the United States, AHP acquired Robins in 1969. As a result, AHP succeeded to Robins' rights regarding the marketing of fenfluramine. The licensing agreement with Science Union/Servier required AHP to seek FDA approval of fenfluramine. In the event that approval was obtained, it also required AHP to pay royalties to Servier until 1988, In 1973, SmithKline Corporation instituted a patent infringement action against AHP, Servier and Science Union Company regarding fenfluramine.

In February 1990, Servier entered into a licensing agreement with Interneuron, granting Interneuron an exclusive license to market another diet drug, dexfenfluramine, in the United States. This licensing agreement required Interneuron to file a New Drug Application ("NDA"), seeking FDA approval to market dexfenfluramine in the United States. It also required Interneuron to report to Servier on the progress of the NDA. Similar to the Servier-AHP licensing agreement for fenfluramine, if the FDA approved dexfenfluramine for marketing in the United States, Interneuron was required to pay royalties to Servier.

In November 1992, Interneuron and American Cyanamid, AHP's predecessor in interest, entered into a sublicensing agreement for the patent of dexfenfluramine for use in the United States. Pursuant to the sublicensing agreement, AHP had the right to comment on drafts of the dexfenfluramine NDA prior to filing, and Interneuron was responsible for attempting to have dexfenfluramine descheduled, i.e., relieved of the scheduling requirements under the Controlled Substances Act.

In April 1996, the FDA approved dexfenfluramine. Shortly thereafter, in June 1996, Interneuron and AHP entered into another agreement which "allocated responsibility for the reporting of adverse drug events, provided for the parties' cooperation in the defense of any product liability claims and provided for cross-indemnification arrangements relating to certain types of legal claims." (D&R 22 Ex. A ¶ 10.} In September 1997, both fenfluramine and dexfenfluramine were withdrawn from the United States market.

**II. LEGAL STANDARD**

**\*3** Rule 53 of the Federal Rules of Civil Procedure provides for appointment of a Special Discovery Master. The Special Discovery Master's decision is the functional equivalent of a magistrate judge's adjudication of a non-dispositive motion. Katz v. AT&T Corp., 191 F.R.D. 433, 435 (E.D. Pa. 2000). Like the decision of a magistrate judge, a Special Discovery Master's decision is entitled no great deference, and will be affirmed unless it is clearly erroneous or contrary to the law. Local R. Civ. P. 72.1; Katz, 191 F.R.D. at 436. A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Katz, 191 F.R.D. at 435 (citations omitted).

**III. DISCUSSION**

The court will briefly review the privileges at issue, and then address the specific issue of whether the common interest doctrine, under the most favorable reading, applies to this dispute.

**A. The Attorney-Client Privilege**

At the time that D&R 22 was filed, the Federal Rules of Civil Procedure permitted discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1) (amended 2000). [FN2] The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice," Upjohn Co. v. United States, 449 U.S. 383, 389

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
(Cite as: 2001 WL 34133955 (E.D.Pa.))

(1961). However, the privilege "obstructs the truth-finding process," and must be construed narrowly. Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423 (3d Cir. 1991); In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3d Cir. 1979). The party asserting the privilege bears the burden of proof. In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984). Indeed, "[f]ailure of proof as to any element causes the claim of privilege to fail." North Carolina Elec. Membership Cprp. v. Carolina Power & Light Co., 110 F.R.D. 511, 515 (M.D.N.C. 1986).

> FN2. Effective December 1, 2000, the scope of discovery is now limited to "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).

**\*4** Communication is so privileged only when:
(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994). The privilege does not protect business and technical advice. See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that privilege is inapplicable where legal advice is incidental to business advice); Hardy v. New York News. Inc., 114 F.R.D. 633, 643 (S.D.N.Y. 1987) (stating that "[t]he attorney-client privilege is triggered only by a client's request for legal, as contrasted [sic] with business advice ...").

**B, Work Product Privilege**

The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), is a qualified privilege that protec-s materials prepared by an attorney, or an attorney's agent, in an-

ticipation of or for litigation. In re Ford Motor Co. v. Kelly, 110 F.3d 954, 967 (3d Cir. 1997); United States v. Ernstoff, 183 F.R.D. 148, 153 (D.N.J. 1998) (ciring Hickman v. Taylor, 329 U.S. 495 (1947)), Federal Pule of Civil Procedure 26(b)(3) provides that:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3) (emphasis provided). An attorney's mental impressions, conclusions, opinions or legal theories are also protected from discovery. In re Ford Motor Co. v. Kelly, 110 F.3d 954, 967 (3d Cir. 1997). This privilege is also limited in that materials prepared in the regular course of business, even if prepared by an attorney, are not protected. The party asserting the privilege, again, bears the burden of proof, Allendale Mut., 152 F.R.D. at 137; Meil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500, 504- 05 (E.D.N.Y. 1986).

**\*5** The court must inquire "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Ernstoff, 183 F.R.D. at 155; see In re Grand Jury Investigation, 599 F.2d at 1229 (discussing requisite nexus between preparation of material and prospect of litigation). Litigation must be more than a remote possibility and "the anticipation of future litigation must have been the primary motivation whicn led to the creation of the documents." Allendale Mut., 152 F.R.D. at 136 (citing National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992) ); see Coastal Stages Gas Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980) (noting that, at very least, some articulable claim, likely to lead to litigation, must have prompted preparation of materials); Ernstoff, 183 F.R.D. at 155 (stating that "[a] party should demonstrate that there existed 'an identifiable specific claim or impending litigation when the materials were prepared'").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                        Page 4
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
**(Cite as: 2001 WL 34133955 (E.D.Pa.))**

## C. Waiver of Privilege/The Common Interest Privilege Doctrine

The court must determine whether the privileges were waived, or as AHP contends, the "common interest privilege doctrine" protects the documents from waiver.

The common interest doctrine does not apply unless the conditions of privilege are otherwise satisfied, Andritz Sprout- Bager, Inc. v. BeazerEast, Inc., 174 F.R.D. 609, 634 (M.D. Pa. 1997). It is well-settled that a client's voluntary disclosure of attorney-clienz privileged communications to a third party waives the privilege. Westinghouse, 951 F.2d at 1423, 1424, Work product immunity may be waived if disclosure "substantially increases the opportunity for potential adversaries to obtain the information." Griffith, 161 F.R.D. at 699. Again, the party asserting this narrowly applied doctrine has the burden of establishing its elements. United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989).

Generally, the common interest doctrine preserves privilege where two or more persons or companies that share a common interest in a legal issue exchange privileged communications with one another. At its core, it applies when one attorney represents multiple individuals on the same matter. Sank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995). In that instance, it protects confidential communications shared between the clients and their attorney to establish a defense strategy. Id.; In re Regents of Univ. of Cal., 101 F.3d 1386, 1389 (Fed. Cir. 1996). Communications between the clients and their attorney "are not privileged in disputes between the joint clients, but are protected from disclosure to others." Griffith v. Davis, 161 F.R.D. 687, 693 (C.D. Cal. 1995).

*6 In certain circumstances, the common interest doctrine extends to protect information shared between parties with a "community of interest," that is, an "identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." Duplan Corp. v. Deering Hilliken Inc., 397 F. Supp. 1146, 1174 (D.S.C. 1974). However, the subject matter must be of a legal nature - something more than mere concurrent legal interests or concerns - and there may not exist any divergence in the interests, Cheeyes v. Southern Clays, Inc., 128 F.R.D. 128, 131 (K.D. Ga. 1983); fiegearch Inst. Med. & Chemistry v. Wisconsin Alumni Research Fund, 114 F.R.D. 672, 678 (W.D. Wis. 1987); Duplan Corp. 397 F. Supp. at 1172; see Bank Brussels, 160 F.R.D. at 447 (stating that doctrine does not include joint business strategy that happens to include concern about litigation).

## D. The Special Discovery Master Decision

AHP disputes the Special Discovery Master's finding that the shared communications between AHP, Servier and Interneuron concerning descheduling was a business interest, and contends that the shared interest with respect to descheduling was legal in nature. (AHP Appeal at 9.)

### 1. Non-Privileged Documents

The Special Discovery Master determined that certain documents are not privileged. He categorized the documents as follows: Lobbying Services (this category was resolved prior to this opinion and will not be addressed herein); Summaries of Non-Confidential Communications; Business Dealings; Activities of Attorneys; Information about Meetings; and Concurrent Review By Both Legal and Non-Legal Personnel. After review, the court finds that the decision of the Special Discovery Master is not erroneous. Accordingly, AHP may not withhold documents that fit the above descriptions because they are not privileged.

### 2. Privileged Documents and The Common Interest Exception

AHP maintains that some documents do not fall into the above categories. Accordingly, it must be determined whether the documents are protected by the common interest exception. The Court finds that the decision of the Special Discovery Master is not erroneous and indeed concurs with the Special Discovery Master's findings on this issue. Those findings are summarized below.

### a. Protected Communicationsh

(i). FDA Approval

For the reasons set forth in D&R 22, AHP has met its bur-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                  Page 5
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
**(Cite as: 2001 WL 34133955 (E.D.Pa.))**

den of showing that the documents shared with Interneuron and/or Servier which pertain to obtaining and maintaining FDA approval for fenflursmine and dexfenfluramine are protected.

(ii). Patent Infringement

**\*7** In the patent infringement action filed by SmithKline Corporation, AHP and Servier were codefendants attempting to establish a common defense. Accordingly, those communications are protected.

(iii). Withdrawal of the Diet Drugs from the Market

When the diet drugs were withdrawn from the market in 1997, all three entities were facing potential product liability litigation relating to the marketing of the drugs, AHP has met its burden of showing that these communications are protected.

(iv). Exclusivity and Redux Patent Term Extension

AHP has met its burden of showing that communications relating to the patent process are protected.

**b. Communications Not Protected - Descheduling**

AHP has failed to show that the communications relating to descheduling are protected.

(i). Legal Representation

First, AHP has not shown that the representation was joint. The evidence shows that Hyman Phelps represented all three entities for different periods of rime, and that for a period of time, the representation overlapped. (D&R 22 Ex. B.) Concurrent representation is not necessarily joint representation. The court notes that Interneuron and Servier both retained Hyraan Phelps in 1990. In 1991, Interneuron petitioned the DEA and FDA to deschedule fenfluramine. (AHP Appeal at 7.) AHP had not retained Hyman Phelps when Interneuron fitst petitioned the DEA and FDA. Yet, AHP maintains that the representation was joint on this specific issue. The record shows that AHP did not retain Hyman Phelps with respect to descheduling until April 1996, a full five years later. (AKP Reply at 14 n.6.) Although this lapse

alone is not determinative, it is indicative of the lack of a joint representation.

(ii). Legal Interests

AHP has not shown that the interest was legal in nature, and even if the court were to find that it was legal, it was not the requisite identical legal interest. For example, the dexfenfluramine sublicensirig agreement between AHP and Interneuron required Interneuron to seek descheauling. It also provided that Interneuron would receive payments if its efforts were successful. (D&R 22 Ex. A ¶ 3.) Indeed, in 1991, Interneuron petitioned the DEA and FDA to deschedule fenfluramine. (AHP Appeal at 7.) Interneuron alone had that duty. Neither AHP nor Servier shared it. Thus, even if descheduling is considered legal in nature, the parties' interests were not identical. Rather, the only common interest was commercial - if the drug was descheduled, sales would increase. Legal advice on the matter does not bring the communication within the protection of the common interest doctrine. The court finds that the Special Discovery Master did not err in finding that AHP's effort was a business or marketing effort, rather than a legal interest.

**E. Analysis of Most Favorable Law**

Pursuant to the court's request, the parties briefed the state law AHP found most supportive of its assertion of the common interest doctrine. [FN3] AHP submitted an analysis of the laws of New Jersey, Pennsylvania, California, New York, Texas and Massachusetts. [FN4] (AHP Supp, Mem. at 5-24.) AHP has not met its burden under the law of any of these states.

> FN3. AHP urges that the court look to the choice of law provisions in the state in which the court sits, which will then guide the court to the substantive law that it should apply to this dispute. It urges that under Pennsylvania caoice of law analysis, Kew Jersey law applies, (AHP Supp. Mem, at 24.) Because the court finds that under the law of any of the states cited by AHP, it has not met its burden, the court will not address this argument.

> FN4. Although AHP addresses the law of Mas-

Westlaw.

Not Reported in F.Supp.2d                                                          Page 6
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
(Cite as: 2001 WL 34133955 (E.D.Pa.))

sachusetts and Texas, it does not provide precedent and the court will therefore not address the law of these states.

**\*8** First, AHP relies upon In re State Commission of Investigation Subpoena Mo. 5441, 544 A.2d 893, 896 (N.J. Super. Ct. App. Div, 1988). In that case, Special Counsel was retained by the New Jersey School Board Association ("NJSBA") to investigate, render advice and make recommendations regarding alleged improprieties in the investment program of the New Jersey School Board Association Insurance Group (the "Group"). A subpoena duces tecum sought production of a report prepared by Special Counsel that had bfien shared with the Group. The trial court found that the entities were separate, without a community of interest and that the disclosure to the Group waived the privilege. Id. at 895. The appellate court found that NJSBA and the Group were formally interrelated in a manner similar to "sister or parent-subsidiary corporations" because, inter alia, the Group was physically located within the NJSBA, and was formed, pursuant to statute, by the boards of education, and governed by members of the NJSBA. Based on these facts, it found a common identical and legal interest. Id. at 896.

Even under the law of New Jersey, in order to benefit from the common interest doctrine, the interests of the two entities sharing the information must be identical and legal, rather than commercial. Id at 896. A more relaxed standard applies where the entities are formally related corporations, as in the above case. However, that case is distinguishable. AHP, Interneuron and Servier are not formally related - they are three separate entities with a common commercial interest that has not been shown to be identical or legal.

AHP also looks to the law of Pennsylvania, citing Thompson v. Glenmeade Trust Co, Civ. No. 92-5233, 1995 WL 752443 (E.D. Pa. Dec. 19, 1995). In that case, the court found that although disclosure of privileged materials to a third party generally results in waiver of the attorney-client privilege, the disclosure of materials to family members to determine whether they wanted to join a pending law suit did not waive the privilege. Again, the court relied upon a close relationship and identical legal interests,

AHP also looks to California law, citing D.L. Chadbourne, Inc. v. Superior Court, 388 P.2d 700, 708 (Cal. 1964), Benge v. Superior Court, 182 Cal. Rptr. 275, 281-82 (Cal. Ct. App. 1982), and Insurance Co. of North America v. Superior Court, 166 Cal. Rptr. 880, 884-85 (Cal. Ct. App. 1980). These courts rely on the same principles set forth above, and do not support AHF for the reasons already stated.

Additionally, AHP cites a criminal action, People v. Osorio, 549 N.E.2d 1183 (N.Y. 1989), to support its assertion that in New York, the outcome would be similar to the outcome in New Jersey, The court finds North River Ins. Co. v. Columbia Cas. Co., Civ. No. 90-2518, 1995 WL 5792, at \*3 (S.D.K.Y. Jan. 5, 1995), a civil action, more instructive on the relevant law. In North River, the court found that "[w]hat is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." Id. at \*4 (citation omitted) . The court found that the fact that persons would jointly benefit from a particular judgment was net the equivalent of an identical legal interest.

**\*9** In finding a lack of a common interest, the North River court recognized the lack of: any agreement establishing a jcint prosecution; evidence of a coordinated legal strategy; exercised control over the conduct of the action; and shared legal expenses. Id. at \*5. Those same factors are Lacking in the case before this court.

In addition, the New York courts have held that the common interest doctrine does not extend to communications about joint business strategy that also happen to include concern about litigation. New York law, like the law cited above, requires a showing of a common legal, as opposed to commercial interest, and cooperation in a common legal strategy. Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996). Those elements are simply not present in the instant dispute. Thus, AHP has net shown that it is entitled to relief under the comir.cn interest doctrine.

## IV. COHCLUSION

For the reasons set forth above, D&R 22 is affirmed in its entirety. AHP is required to review the documents submit-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
(Cite as: 2001 WL 34133955 (E.D.Pa.))

Page 7

ted, and in accordance with D&R 22 and this opinion; 1) produce the documents that are non-privileged; 2) revise its Privilege Log to reflect the changes; and 3) reevaluate the remaining entries on the privilege log and make any other necessary changes in light of the above guidelines,

An appropriate Pretrial Order follows

### PRETRIAL ORDER NO. 1910

AND NOW, TO WIT, this 19th day of April 2001, upon consideration of American Home Products Corporation's limited appeal of Special Discovery Master Decision and Recommendation No. 22, IT IS ORDERED that Special Discovery Master Decision and Recommendation No. 22 is AFFIRMED.

_____

_____, LOUIS C. BECHTLE, J.

Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)

### Motions, Pleadings and Filings (Back to top)

• 2005 WL 2684623 (Trial Motion, Memorandum and Affidavit) Wyeth's Motion for Summary Judgment and Request for Stay (Aug. 17, 2005)

• 2005 WL 1398411 (Trial Pleading) Plaintiff's Severed and Amended Complaint (May. 10, 2005)

• 2004 WL 2070528 (Trial Motion, Memorandum and Affidavit) Joint Motion of Class Counsel and the Seventh Amendment Liaison Committee to Preliminarily and Permanently Enjoin the Jones Law Firm from Disseminating False and Misleading Information to Class Members and Improperly Soliciting Claimants to Opt-Out o f the 7th Amendment (Sep. 08, 2004)

• 2004 WL 2070529 (Trial Pleading) Class Counsel's Memorandum of Law in Reply to the Memorandum of AHP Settlement Trust in Response to Joint Motion by Wyeth, Class Counsel and the Salc for Preliminary Approval of the Seventh Amendment to the Nationwide Class Action Settlement Agreemen t and for the Entry of Related Orders (Aug. 19, 2004)

• 2004 WL 2070530 (Trial Pleading) Memorandum of AHP

Settlement Trust in Response to Joint Motion by Wyeth, Class Counsel and the Salc for Preliminary Approval of the Seventh Amendment to the Nationwide Class Action Settlement Agreement and for the Entry of Related Orders (Aug. 17, 2004)

• 2004 WL 1576280 (Trial Pleading) Defendant, Celltech Pharmaceuticals Inc.'s Answer and Affirmative Defenses to Plaintiff's First Amended Petition (Apr. 26, 2004)

• 2004 WL 1576281 (Trial Pleading) Defendant, Fisons Corporation's Answer and Affirmative Defenses to Plaintiff's First Amended Petition (Apr. 26, 2004)

• 2004 WL 1576272 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Opposition to Motion to Dismiss (Apr. 13, 2004)

• 2004 WL 1576271 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion of Non-Party Woodlawn Medical Group, Inc. for Protective Order and to Quash Subpoena (Feb. 01, 2004)

• 2004 WL 3122959 (Trial Pleading) Severed and Amended Complaint (Jan. 01, 2004)

• 2003 WL 23653397 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Dismiss (Dec. 03, 2003)

• 2003 WL 23653410 (Trial Motion, Memorandum and Affidavit) The Drug Store's Response to Plaintiffs' Motion to Remand (Dec. 01, 2003)

• 2003 WL 23653415 (Trial Pleading) Original Answer of Defendant Wal-Mart Stores Texas, LP (Oct. 27, 2003)

• 2003 WL 23653412 (Trial Pleading) Answer and Affirmative Defenses of the Drug Store (Oct. 01, 2003)

• 2003 WL 22023325 (Trial Filing) Pretrial Order No. 2704 (Jan. 10, 2003)

• 2003 WL 22023326 (Trial Filing) Pretrial Order No. 2702 (Jan. 06, 2003)

• 2003 WL 23653411 (Trial Motion, Memorandum and Af-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

fidavit) Plaintiff Gloria Cain's Response to Edward E. Bry-
ant, M.D.'s Motion to Dismiss (2003)

• 2003 WL 23653416 (Trial Pleading) Defendant Rugby
Laboratories, Inc.'s Answer to Plaintiff's Original Petition
(2003)

• 2002 WL 32154083 (Trial Filing) Pretrial Order No. 2663
(Dec. 03, 2002)

• 2002 WL 32154085 (Trial Filing) Pretrial Order No. 2662
(Nov. 26, 2002)

• 2002 WL 32154084 (Trial Filing) Pretrial Order No. 2654
(Nov. 25, 2002)

• 2002 WL 32154194 (Trial Motion, Memorandum and Af-
fidavit) Plaintiff%7Ds Opposition to Wyeth%7DS Motion
for Injunctions to Enforce the Nationwide Class Action Set-
tlement Agreement (Oct. 07, 2002)

• 2002 WL 32154082 (Trial Filing) Pretrial Order No. 2603
(Sep. 16, 2002)

• 2002 WL 32154195 (Trial Motion, Memorandum and Af-
fidavit) Fleming & Associates%7D Response in Opposition
to Joint Motion for an Emergency Stay of Processing Matrix
Claims to Tenative and/or Final Determinations (Sep. 07,
2002)

• 2002 WL 32157039 (Trial Motion, Memorandum and Af-
fidavit) Brief in Opposition to Proposition that Joinder of
Multiple Plaintiffs Violates Settlement Agreement (Sep. 01,
2002)

• 2002 WL 32153484 (Trial Motion, Memorandum and Af-
fidavit) AHP Settlement Trust's Motion for Temporary Re-
straining Order and Preliminary Injunction (Jun. 03, 2002)

• 2002 WL 32155302 (Trial Motion, Memorandum and Af-
fidavit) Memorandum of Law in Support of the Joint Peti-
tion for an Award of Attorneys%7D Fees and Reimburse-
ment of Litigation Expenses (Feb. 15, 2002)

• 2002 WL 32155301 (Trial Motion, Memorandum and Af-
fidavit) Fleming Plaintiffs%7D Second Motion for Exemp-

tion from the Plaintiffs%7D Management Committee%7Ds
Common Fund Fee and Expenses (Jan. 30, 2002)

• 2002 WL 32155342 (Trial Filing) Affidavit of Rand P.
Nolen (Jan. 30, 2002)

• 2001 WL 34134825 (Trial Motion, Memorandum and Af-
fidavit) American Home Products Corporation%7Ds Mo-
tion to Enforce Pretrial Order No. 1415 Against Plaintiff Su-
zanne Jortner (Nov. 05, 2001)

• 2001 WL 34134824 (Trial Motion, Memorandum and Af-
fidavit) Motion of American Home Products Corporation
for Order Enforcing Pto 1415 Against Certain Plaintiffs As-
serting Settled Claims Under the Guise of Asserting Claims
Based on Primary Pulmonary Hypertension (Oct. 19, 2001)

• 2001 WL 34133956 (Trial Motion, Memorandum and Af-
fidavit) American Home Products Corporation%7Ds Re-
sponse to Elliot Palay%7Ds Motion to Exercise Initial OPT-
OUT and to Rescind His Accelerated Implementation OPT-
OUT contract (Jun. 14, 2001)

• 2001 WL 34133957 (Trial Motion, Memorandum and Af-
fidavit) Class Counsel%7Ds Response to Claimants%7D
Motion to Exercise an Initial OPT-OUT Right; Motion to
Rescind the Contract (Failure to Comply With an Essential
Condition of the Contract, Breach of a Material Contrctual
Term, Failure of Consideration, Bre ach of Duty of Good
Faith and Fair Dealing) Allowing Claimant to Pursue com-
pensatory as Well as Punitive Damage Claims Against De-
fendant AHP With No Statute of Limitations BAR (May.
18, 2001)

• 2001 WL 34133954 (Trial Motion, Memorandum and Af-
fidavit) Motion (May. 14, 2001)

• 2001 WL 34133950 (Trial Filing) Stipulation for Dis-
missal of Interneuron Pharmaceutical, Inc%7Ds., Cross
Claim and Counter Cross Claim of American Home
Products Corporation, Wyeth-Ayerst Laboratories, Division
of American Home Products Corporation, and Wyeth-Ay-
erst Laboratories Com pany (May. 04, 2001)

• 2001 WL 34129540 (Trial Motion, Memorandum and Af-
fidavit) Motion to Request a Hearing (Mar. 01, 2001)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
**(Cite as: 2001 WL 34133955 (E.D.Pa.))**

• 2001 WL 34129541 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana, Comed Medical Expense Fund and Central States Health and Welfare Benefit Fund's Objections to and Motion to Vacate Court Approved Procedure No.1 (Mar. 01, 2001)

• 2001 WL 34129542 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana, Comed Medical Expense Fund, and Central States Health & Welfare Benefits Fund's Motion to Enjoin the Ahp Settlement Trust from Disbursing any Funds to Individual Claimants and to Stay all Proceedings Regarding the Allocation of Damages Awards from Either Fund a or Fund B (Mar. 01, 2001)

• 2001 WL 34133953 (Trial Motion, Memorandum and Affidavit) Plaintiffs%7D Memorandum of Law in Support of the Joint Motion to Require the Ahp Settlement Trust to Commence Distribution of the Proceeds of Settlement Notwithstanding the %7F%7FPosition%7D%7D Asserted by the United States (Feb. 26, 2001)

• 2001 WL 34129543 (Trial Motion, Memorandum and Affidavit) Motion and Memorandum for Intervention (Feb. 08, 2001)

• 2001 WL 34133940 (Trial Filing) Affidavit of Rand P. Nolen (Feb. 07, 2001)

• 2001 WL 34133951 (Trial Motion, Memorandum and Affidavit) Fleming Plaintiffs%7D Motion for Exemption From the Plaintiffs%7D Management Committee%7Ds Common Fund Fee and Expenses Subject to All Motions to Remand (Feb. 07, 2001)

• 2001 WL 34131304 (Trial Motion, Memorandum and Affidavit) HMO Louisiana's Motion to Stay Local Rule 23.1 Class Certification Briefing (Jan. 11, 2001)

• 2001 WL 34133738 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Reply to Movant's Motion for an Order to Show Cause (Jan. 04, 2001)

• 2000 WL 34016472 (Trial Motion, Memorandum and Affidavit) Dunn Objectors%7D Memorandum in Further Support of Motion to Require Disclosure with Respect to Post-Approval Settlements by Class Counsel (Dec. 01, 2000)

• 2000 WL 34016470 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation%7Ds Opposition to the Dunn Objectors%7D Request for Further Discovery (Nov. 29, 2000)

• 2000 WL 34016445 (Trial Filing) Pretrial Order No. 1516 (Nov. 22, 2000)

• 2000 WL 34016444 (Trial Filing) Pretrial Order No. 1488 (Nov. 06, 2000)

• 2000 WL 34016474 (Trial Motion, Memorandum and Affidavit) Response of Dunn Objectors to Class Counsels%7D Motion to Impose a Supersedeas Bond Requirement for the Filing of an Appeal (Nov. 06, 2000)

• 2000 WL 34016465 (Trial Motion, Memorandum and Affidavit) Memorandum of Vinson Carithers, III in Opposition to Class Counsels%7D Motion to Impose Bond Requirement on Certain Objectors for the Filing of an Appeal (Oct. 30, 2000)

• 2000 WL 34016469 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana%7Ds Motion to Stay Local Rule 23.1 Class Certification Briefing (Oct. 27, 2000)

• 2000 WL 34016475 (Trial Motion, Memorandum and Affidavit) Memorandum of Jane Scuteri, et al., in Opposition to Class Counsels%7D Motion to Impose a Bond Requirement on Objectors for the Filing of an Appeal (Oct. 24, 2000)

• 2000 WL 34016471 (Trial Motion, Memorandum and Affidavit) Memorandum of Vinson Carithers, III in Opposition to Class Counsels%7D Motion to Impose Bond Requirement on Certain Objectors for the Filing of an Appeal (Oct. 23, 2000)

• 2000 WL 34016443 (Trial Filing) Pretrial Order No. 1433 (Sep. 15, 2000)

• 2000 WL 34016467 (Trial Motion, Memorandum and Affidavit) Motion to Intervene and for Rehearing on Pretrial Order No. 1415 (Sep. 09, 2000)

• 2000 WL 34015561 (Trial Motion, Memorandum and Af-

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
(Cite as: 2001 WL 34133955 (E.D.Pa.))

Page 10

fidavit) American Home Products Corporation Defendants' Motion to Strike Class Action Allegations from Complaint (Sep. 07, 2000)

• 2000 WL 34015562 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation's Motion for Protective Order (Sep. 07, 2000)

• 2000 WL 34016466 (Trial Motion, Memorandum and Affidavit) Movant%7Ds Memorandum in Support of Motion to Intervene and for Rehearing (Sep. 06, 2000)

• 2000 WL 34016464 (Trial Motion, Memorandum and Affidavit) The Plaintiffs%7D Management Committee%7Ds Response and Concurrence in Interneuron Pharmaceuticals, Inc.%7Ds Amended Motion for Return of Funds (Aug. 29, 2000)

• 2000 WL 34016463 (Trial Motion, Memorandum and Affidavit) Interneuron Pharmaceuticals, Inc.%7Ds Amended Motion for Return of Funds (Aug. 24, 2000)

• 2000 WL 34016462 (Trial Motion, Memorandum and Affidavit) Joint Motion for Approval of Fourth Amendment to Nationwide Class Action Settlement Agreement (Aug. 10, 2000)

• 2000 WL 34611051 (Expert Deposition) Litigation (May 10, 2000)

• 2000 WL 34016458 (Trial Motion, Memorandum and Affidavit) Class Counsels%7D Memorandum in Support of Final Settlement Approval (Apr. 21, 2000)

• 2000 WL 34019582 (Trial Motion, Memorandum and Affidavit) Fleming Objectors' Bench Brief to the Court for the Fairness Hearing (Apr. 14, 2000)

• 2000 WL 34016455 (Trial Motion, Memorandum and Affidavit) Motion to Strike Improper Sur-Reply Filed by Phentermine Defendants (Apr. 11, 2000)

• 2000 WL 34016456 (Trial Motion, Memorandum and Affidavit) Fleming Objectors%7D memorandum in Support of Objections and Motion to Disapprove the Settlement Agreement (Mar. 30, 2000)

• 2000 WL 34016482 (Trial Pleading) Objection of Vicki Dunn, et al., to Proposed Class Action Settlement (Mar. 30, 2000)

• 2000 WL 34016449 (Trial Motion, Memorandum and Affidavit) Defendant American Home Products Corporation%7Ds Memorandum in Opposition to HMO Louisiana%7Ds Motion to Intervene for the Purpose of Objecting to the Proposed Settlement and Conditional Class Certification (Feb. 14, 2000)

• 2000 WL 34016450 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs Response to the Motion of Paul J. Napoli, Marc Jay Bern, and Napoli, Kaiser & Bern for an Order Striking Plaintiffs%7D Motion for an Order to Show Cause, Etc. (Feb. 01, 2000)

• 2000 WL 34016448 (Trial Motion, Memorandum and Affidavit) Motion of American Home Products Corporation for a Preliminary Injunction Regarding False and Misleading Communications with Absent Class members Through the Internet Addresses (Jan. 19, 2000)

• 2000 WL 34016279 (Trial Motion, Memorandum and Affidavit) Memorandum of Napoli, Kaiser & Bern, LLP, in Opposition to Plaintiffs' Motion for an Order to Show Cause Why an Order to Protect the Class from Unauthorized and Improper Notice Should not Entered, and for "Other Relief" (Jan. 10, 2000)

• 1999 WL 33644485 (Trial Filing) Local Rule 7.4(b)(2) Stipulation of Extension of Time (Dec. 06, 1999)

• 1999 WL 33740591 (Trial Motion, Memorandum and Affidavit) Motion to Intervene by Certain Health Benefit Providers for Purposes of Requesting Clarification of, and Objecting to, the Proposed Interneuron Agreement of Compromise and Settlement (Feb. 28, 1999)

• 1999 WL 33740476 (Trial Motion, Memorandum and Affidavit) Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(b)(1)(B) (Feb. 23, 1999)

• 1999 WL 33740493 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Intervenors' Motion for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 11
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
**(Cite as: 2001 WL 34133955 (E.D.Pa.))**

Summary Judgment Denying Class Certification Under Rule 23(b)(1)(B) (Feb. 23, 1999)

• 1999 WL 33740479 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to State Court Intervenor's Motion for Summary Judgment Denying Class Certification Under Rule 23(a)(4) (Feb. 22, 1999)

• 1999 WL 33740474 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Management Committee's Motion to Strike Objections of Margaret L. Watson to the Proposed Interneuron Limited Fund Class Settlement or in the Alternative to Compel the Deposition of Margaret L. Watson in Philadelphia Prior to February 19, 1999 or Suffer the Sanction of the Objections Being Deemed Stricken (Feb. 16, 1999)

• 1999 WL 33740491 (Trial Motion, Memorandum and Affidavit) American Home Product Corporation's Objections and Responses to the Proposed Findings of Fact Regarding the Motions for Class Certification of the Non-PMC Plaintiffs (Feb. 12, 1999)

• 1999 WL 33740553 (Trial Pleading) American Home Products Corporation's Proposed Findings of Fact on the Motions for Class Certification (Feb. 12, 1999)

• 1999 WL 33740469 (Trial Motion, Memorandum and Affidavit) State Court Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(a)(4) (Feb. 09, 1999)

• 1999 WL 33740477 (Trial Motion, Memorandum and Affidavit) Objections of Smithkline Beecham Corporation to Proposed Settlement and Request for Time to Speak at Hearing (Feb. 08, 1999)

• 1999 WL 33740478 (Trial Motion, Memorandum and Affidavit) Comments, Objections, Suggestions and Request to Speak of the Blue Cross/ Blue Shield Plans as to the Proposed Interneuron Mandatory Limited Fund Class Action Settlement (Feb. 04, 1999)

• 1999 WL 33740573 (Trial Pleading) Rugby Laboratories, Inc.'s Objections Regarding the Proposed Interneuron Limited Fund Settlement (Feb. 03, 1999)

• 1999 WL 33740501 (Trial Motion, Memorandum and Affidavit) Notice of Motion and Motion of Non-Parties Mayo Foundation and Heidi M. Connolly, M.D. for a Protective Order (Jan. 29, 1999)

• 1998 WL 34190437 (Trial Motion, Memorandum and Affidavit) Defendant Les Laboratoires Servier's Motion to Dismiss for Lack of Personal Jurisdiction and for Forum Non Conveniens (Dec. 21, 1998)

• 1998 WL 34190431 (Trial Filing) Response of the American Home Products Corporation Defendants to the Petition of the Plaintiffs' Management Committee Dated October 30, 1998 (Dec. 08, 1998)

• 1998 WL 34190439 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Patti Jo Hellmig's Motion to Intervene (Dec. 04, 1998)

• 1998 WL 34190456 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Patti Jo Hellmig's Motion to Intervene (Dec. 04, 1998)

• 1998 WL 34190442 (Trial Motion, Memorandum and Affidavit) State Court Diet Drug Claimants' Objection to this Court's Jurisdiction to Grant PMC's Petition for an Order to Compel Claimants Either to Forfeit 6% of their Recoveries or Else (A) Forfeit all of Interneuron's Evidence of its Liability, and (B) Forf eit their Access to and Use as Evidence of all MDL Discovery (Nov. 16, 1998)

• 1998 WL 34190449 (Trial Motion, Memorandum and Affidavit) State Court Diet Drug Claimants' Objection to this Court's Jurisdiction to Grant PMC'S Petition for an Order to Compel Claimants Either to Forfeit 6% of their Recoveries or Else (A) Forfeit all of Interneuron's Evidence of its Liability, and (B) Forf eit their Access to and Use as Evidence of all MDL Discovery (Nov. 16, 1998)

• 1998 WL 34190450 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs Carol and Armond Aserinsky's Response to PMC's Petition to Set Aside Money for Counsel Fees and Costs in MDL 1203 and to Remand this Case for Trial (Nov. 12, 1998)

• 1998 WL 34190441 (Trial Motion, Memorandum and Af-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 12
Not Reported in F.Supp.2d, 2001 WL 34133955 (E.D.Pa.)
**(Cite as: 2001 WL 34133955 (E.D.Pa.))**

fidavit) Memorandum of Law in Support of the PMC's Peti-
tion for an Order (1) Securing an Equitable Allocation of
Counsel Fees and Costs for Common Benefit Work; (2) Ap-
proving an Agreement Between the PMC and the California
Pec with Respect to Coordination of Discovery; (3) Estab-
lishing a Procedure for Coordination with State-Court Diet
Drug Litigation; (4) Protecting the PMC's Work Product;
and (5) Appointing John M. Restaino, Esquire to the PMC
(Oct. 30, 1998)

• 1998 WL 34202080 (Trial Motion, Memorandum and Af-
fidavit) Memorandum of Lam in Support of Motion of the
Plaintiffs' Management Committee to Enforce Subpoenas
Served on Third-Parties Monsanto Corporation and Parexel
International Corporation (Oct. 16, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.