# EXHIBIT G

Pharmacy technician specialist/Doxorubicin hydrochloride

12. Coordinates the orientation of trainees and new employees to the technical functions of the assigned area.

14. Keeps all records and log sheets used in assigned area accurate and up-to-date.

*rea of Assignment:*

Pharmacy technician specialists may be assigned to the following divisions .r areas of the Department of Pharmacy.

- Distribution services
- Sterile and nonsterile product formulations
- Packaging, printing and labeling
- Pharmacy service unit
- Purchasing and inventory control
- Quality control
- Systems

Am J Hosp Pharm 36:1536–1538 (Nov) 1979

## Stability of Refrigerated and Frozen Solutions of Doxorubicin Hydrochloride

Dennis M. Hoffman, Dennis D. Grossane, LeeAnne Damin and Thomas M. Woodcock

The stability of refrigerated and frozen solutions of doxorubicin hydrochloride was studied.

Vials of doxorubicin hydrochloride with lactose (Adriamycin) were reconstituted with Sterile Water for Injection, USP, to provide a drug concentration of 2 mg/ml. Samples were refrigerated (4 C) for up to one year and frozen (−20 C) for 30 days then assayed by high-performance liquid chromatography. One sample was assayed then refrozen each test period.

Refrigerated and frozen samples showed no substantial loss of potency after six months and one month of storage, respectively. Filtration through a 0.22-μm filter did not affect potency. Degradation products were not detected, except for an unidentified small peak detected in the sample refrigerated for one year.

Doxorubicin hydrochloride, when reconstituted with sterile water for injection, may be refrigerated for six months or frozen for one month without loss of potency.

*Key words:* Antineoplastic agents; Doxorubicin hydrochloride; Injection; Stability; Temperature

Doxorubicin hydrochloride, an anthracycline antibiotic obtained from *Streptomyces peucetius*, possesses marked antitumor activity. It is thought to act by intercalation between base pairs of the DNA double helix and by inhibition of DNA and RNA synthesis.[1,2]

Doxorubicin, alone or in combination with other antineoplastic agents, has been shown effective for the treatment of a wide range of tumors including adenocarcinoma of the breast, malignant sarcomas, urinary bladder carcinoma, gynecological tumors, Wilm's tumor and neuroblastoma as well as lymphomas and leukemias.[3–5]

Dennis M. Hoffman, Pharm.D., is Director of Pharmacy Services, Memorial Sloan-Kettering Cancer Center, 1275 York Avenue, New York, NY 10021. Dennis D. Grossane is Clinical Oncology Pharmacist; LeeAnne Damin is Research Technician; and Thomas M. Woodcock, M.D., is Assistant Attending Physician, Developmental Chemotherapy Service, Memorial Sloan-Kettering Cancer Center.

The assistance of Dr. Acramune and Dr. Charles W. Young is acknowledged.

This study was supported in part by Public Health Service grants CA-08748 i CA-05826 from the National Cancer Institute, NIH, DHEW.

Copyright © 1979, American Society of Hospital Pharmacists, Inc. All rights reserved.

Because it is effective in a wide range of malignancies, doxorubicin has become one of the most extensively used antineoplastic agents at our institution, a national oncologic referral center with treatment, teaching and research programs.

Last year, in addition to the many inpatients receiving chemotherapy at Memorial Sloan-Kettering Cancer Center, more than 1,400 patients were treated in adult chemotherapy clinics and more than 1,150 children were treated in its Pediatric Day Hospital. The clinical usefulness of doxorubicin, combined with the large number of patients receiving chemotherapy, resulted in an expenditure of almost $290,000 for this drug last year.

Since the pharmacist plays a key role in preparing antineoplastic agents and in monitoring patients who receive them, we thought we could maximize use of the pharmacist's time by including doxorubicin in our reconstitution program and perhaps freezing the drug.[6] Such an undertaking would not be feasible, however, if the manufacturer's expiration time of 48 hours after reconstitution when stored in a refrigerator were accepted.[7] Therefore, we decided to study doxorubicin stability after being refrigerated or frozen. If stability could be demonstrated, not only would there be operational benefits but waste could be reduced, resulting in cost savings.

## Methods

Vials containing 10 mg of lyophilized doxorubicin hydrochloride with 50 mg of lactose (Adriamycin, Adria Laboratories, lot 402) were reconstituted with Sterile Water for Injection, USP, to yield a solution concentration of about 2 mg/ml of doxorubicin hydrochloride. The reconstituted drug was stored under refrigeration (4 C) for up to one year and frozen (−20 C) for as long as one month. Water for injection, a diluent commonly used for this drug in Europe, permits freezing of the solution, which is precluded with sodium chloride injection. The manufacturer of Adriamycin is currently amending its official package insert to include Sterile Water for Injection, USP, as an acceptable diluent.[8]

Solutions were removed from refrigeration or thawed and analyzed by high-performance liquid chromatography.[9] Each sample was analyzed twice: once at 0.10 AUFS (absorbance units full scale) to ascertain peak height and once at 0.02 AUFS to detect any trace of degradation products.

Because many patients receiving doxorubicin are immuno-suppressed, we were concerned about using a nonpreserved diluent for Adriamycin. We decided that filtration through a sterile 0.22-μm filter (Millex filter unit, Millipore

0002-9289/79/1101-1536$01.00

Corp.) prior to dispensing would afford adequate assurance of sterility. To ascertain whether such filtration would result in loss of drug, samples of diluted Adriamycin were assayed and filtered. The filtrate then was assayed.

The chromatograph (model 7000, Micrometrics, Norcross, GA) used a 30-cm × 4-mm reverse-phase column (Micro Bondapak C-18, Waters Associates, Milford, MA) eluted with a solvent of 1:1 methanol:water. One vial of proprietary ion reagent (PIC-B7, Water Associates) was added to each liter of solvent. Aliquots of 10 $\mu$l were injected directly into the chromatographic system. Flow rate was 3 ml/min with a corresponding pressure of 4,000 pounds per sq in. Chart speed was 4 mm/min. Absorbance was measured at 254 nm.

The degradation products of doxorubicin hydrochloride, if any, have not been identified. Takanashi and Bachur[10] identified adriamycinol (13-dihydroadriamycin) and adriamycinone (the aglycone) as metabolites. A solution of adriamycinol (Farmitalia, S.P.A., Italy, lot P1592/57), adriamycinone (Farmitalia, lot CC/187-91) and doxorubicin hydrochloride (Aldrich Chemical Co., Milwaukee, lot E399) was analyzed to verify that the methodology was capable of separating the active drug from known related substances. The separation is shown in Figure 1.

### Results

The stability of refrigerated samples of Adriamycin is shown in Table 1. A typical curve obtained for a refrigerated 2-mg/ml Adriamycin sample at 0.02 A is depicted in Figure 2. We detected no evidence of degradation products except for an unidentified small peak detected in the sample stored for one year.

Frozen samples were thawed and analyzed. The results are shown in Table 2. Comparison of the concentrations measured after up to 30 days of freezing with those obtained before freezing showed no substantial loss of potency. Sample A, which was refrozen, thawed and assayed at each time interval, showed no loss of potency. In comparing concentrations measured on day 17 with those measured on days 4, 7, 10, 24 and 30, it is clear that some error occurred in the analytical procedure. The source of this error was impossible to determine but, in view of all other results, it appears that Adriamycin is stable for at least 30 days when frozen.

The filtered samples showed no loss of potency from the filtration process.

### Conclusions

Reconstituted solutions of Adriamycin were stable for up to six months when refrigerated and for up to 30 days when

**Table 1. Stability of Refrigerated 2-mg/ml Adriamycin Solution**

| Sampling Time | Doxorubicin Hydrochloride | | |
|---|---|---|---|
| | Peak Height (cm) | Conc. (mg/ml)[a] | Potency (%)[b] |
| 0 | 24.4 | 2.13 | 106.5 |
| 1 day | 24.0 | 2.09 | 104.5 |
| 1 mo | 24.2 | 2.11 | 105.0 |
| 6 mo | 22.0 | 1.92 | 96.0 |
| 1 yr | 14.7 | 1.24 | 84.2 |

[a] Based on peak heights.
[b] Expressed as percent of estimated doxorubicin hydrochloride solution—2 mg/ml.



Figure 1. Absorbance spectrum of a solution containing approximately 2.5 $\mu$g of adriamycinone (a), 6 $\mu$g of adriamycinol (b), and 10 $\mu$g of doxorubicin hydrochloride (c); measured at 254 nm with 0.1 AUFS (absorbance units full scale).



Figure 2. Absorbance spectrum of 2-mg/ml solution of Adriamycin after six months of refrigeration; measured at 254 nm with 0.02 AUFS (absorbance units full scale)

Larc rubicle hydrochloride

Table 2. Stability of Frozen 2-mg/ml Adriamycin Solution

| Sampling Time (days) | Adriamycin Samples | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | | B | | C | | D | | E | |
| | Peak Height (cm) | Conc. (mg/ml)* | Peak Height (cm) | Conc. (mg/ml) | Peak Height (cm) | Conc. (mg/ml) | Peak Height (cm) | Conc. (mg/ml) | Peak Height (cm) | Conc. (mg/ml) |
| 0 | 24.1 | 2.40 | 25.5 | 2.22 | 24.9 | 2.17 | 23.3 | 2.03 | 21.1 | 1.85 |
| 4 | 24.8 | 2.18 | | | | | | | | |
| 7 | 22.2 | 1.94 | 22.3 | 2.03 | | | | | | |
| 10 | 24.5 | 2.14 | | | 24.8 | 2.16 | | | | |
| 17 | 20.8 | 1.82 | | | | | 19.5 | 1.70 | | |
| 24 | 23.9 | 2.09 | | | | | | | 23.8 | 2.08 |
| 30 | 23.7 | 2.09 | | | | | | | | |

* Concentrations based on peak heights.

frozen, showing no substantial loss of potency. Although not recommended, frozen solutions probably could be refrozen and remain stable.

Based on the data presented, we believe that the stability of Adriamycin solution is such that advance preparation and refrigeration or freezing is feasible, an important consideration when antineoplastic agents are a sizable portion of the admixture program's workload. Cost savings can be realized by using the larger package size (obtained at a lower unit price) as a multidose vial and storing the remaining drug for later use. Filtration of stored solutions with a sterile 0.22-μm filter just before use will assure sterility without loss of drug.

### References

1. Zunino F, Gambetta R, DiMarco A et al: Interaction of daunomycin and its derivatives with DNA, *Biochim Biophys Acta* 277:489–498 (Sep) 1972.
2. Meriwether WD and Bachur NR: Inhibition of DNA and RNA metabolism by daunorubicin and adriamycin in L-1210 mouse leukemia, *Cancer Res* 32:1137–1142 (Jun) 1972.
3. O'Bryan RM, Luce JK, Talley RW et al: Phase II evaluation of adriamycin in human neoplasia, *Cancer* 32:1–8 (Jul) 1973.
4. Tan C, EtCubanas E, Wollner N et al: Adriamycin—an antitumor antibiotic in the treatment of neoplastic diseases, *Cancer* 32:9–17 (Jul) 1973.
5. Bonadonna G, Monfardini S, DeLena M et al: Clinical trials with adriamycin, results of three year's study. *In* Carter SK, DiMarco A, Ghione M et al (eds): International symposium on adriamycin, Springer-Verlag, New York, 1972, p 139.
6. Hoffman DM and Tozzi W: Automated reconstitution procedure to support a high volume decentralized i.v. admixture program, *Am J IV Ther* 5:21–25 (May) 1978.
7. Anon: Adriamycin (package insert), Adria Laboratories, Inc., Columbus, OH (Oct) 1977.
8. Mancini F (Mount Edison USA, Inc., New York): Personal communication (Jul 11) 1979.
9. Rahn P (Pharmaceutical Applications Laboratories, Waters Associates, Milford, MA): Personal communication (Feb 2) 1979.
10. Takanashi S and Bachur NR: New adriamycin (a) and daunorubicin (d) metabolites in human urine, *Proc Am Assoc Cancer Res* 15:76, 1974.

### Policies Regarding Classified Advertising

Classified advertising is accepted in the following categories: Positions Open; Positions Wanted; Training Programs (such as for pharmacy residents and supportive personnel); and Used Equipment.

Only those employers who will not discriminate on the basis of race, sex, religion, age, color or national origin should submit personnel advertising. Ads should include the statement, "Equal Opportunity Employer."

The deadline for receipt of final copy for insertions and cancellations is the 28th of the month two months before the month of publication. Copy must be typewritten, double-spaced and submitted in duplicate. Telephone orders will not be accepted. Payment or organizational purchase order must accompany orders.

The rate is 65¢ per word. Each word is counted separately, regardless of length. Two consecutive initials, each abbreviation and numerals of up to five digits count as a separate word (e.g., Zip Code counts as one word; telephone number including area code counts as two words). The minimum charge for any advertisement is $10.00. Box service for a blind advertisement is available at an additional charge of $6.50.

The minimum size for display advertisements is a quarter page, available at a rate of $300.00. This size ad is available only for personnel openings and training programs. (No agency or cash discounts are extended for classified advertising or quarter-page ads.)

Insertions, accompanied by payment or organizational purchase order, should be sent to: Editorial Assistant, American Journal of Hospital Pharmacy, 4630 Montgomery Avenue, Washington, DC 20014.

# EXHIBIT H

# Manual of
# PATENT
# EXAMINING
# PROCEDURE

Original Eighth Edition, August 2001
Latest Revision August 2005



## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

Rev. 3, August 2005

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

    Superintendent of Documents         Telephone: 202-512-2267
    Mail List Section
    Washington, DC 20402

Inquiries relating to purchasing the Manual should be directed to:

    Superintendent of Documents         Telephone: 202-512-1800
    United States Government Printing Office
    Washington, DC 20402

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

    Mail Stop Document Services       Telephone: 1-800-972-6382 or 571-272-3150
    Director of the U.S. Patent and Trademark Office
    P.O. Box 1450
    Alexandria, VA 22313-1450

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room.
The Manual is available on CD-ROM and on diskette from:

    U.S. Patent and Trademark Office      Telephone: 571-272-5600
    Office of Electronic Information Products
    MDW 4C18, P.O. Box 1450
    Alexandria, VA 22313-1450

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Office of Patent Training.
                          Telephone: 571-272-7222

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents, or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text. Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

    First Edition, November 1949
    Second Edition, November 1953
    Third Edition, November 1961
    Fourth Edition, June 1979
    Fifth Edition, August 1983
    Sixth Edition, January 1995
    Seventh Edition, July 1998
    Eighth Edition, August 2001
      Revision 1, February 2003
      Revision 2, May 2004
      Revision 3, August 2005

## 201.05    Reissue Application [R-3]

A reissue application is an application for a patent to take the place of an unexpired patent that is defective **>as a result of an error in the patent which was made without deceptive intention.< A detailed treatment of **>reissue applications can< be found in Chapter 1400.

## 201.06    Divisional Application [R-2]

A later application for an independent or distinct invention, carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application, is known as a divisional application or "division." >A divisional application is often filed as a result of a restriction requirement made by the examiner.< The divisional application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 121 or 365(c). *>See MPEP § 201.11 for the conditions for receiving the benefit of the filing date of the prior application. The divisional application should set forth at least the portion of the earlier disclosure that is germane to the invention as claimed in the divisional application.

Divisional applications of utility or plant applications must be filed under 37 CFR 1.53(b). Divisional applications of design applications< may be filed pursuant to 37 CFR 1.53(b) or 1.53(d). 37 CFR 1.60 and 1.62 have been deleted as of December 1, 1997.

**>Effective July 14, 2003, continued prosecution application (CPA) practice set forth in 37 CFR 1.53(d) has been eliminated as to utility and plant applications.< An application claiming the benefits of a provisional application under 35 U.S.C. 119(e) should not be called a "division" of the provisional application since the application will have its patent term calculated from its filing date, whereas an application filed under 35 U.S.C. 120, 121, or 365(c) will have its patent term calculated from the date on which the earliest application was filed, provided a specific reference is made to the earlier filed application(s). 35 U.S.C. 154(a)(2) and (a)(3).

In the interest of expediting the processing of newly filed divisional applications filed as a result of a restriction requirement, applicants are requested to include the appropriate U.S. Patent and Trademark Office classification of the divisional application and the status and *>assigned art unit< of the parent appli-

cation on the papers submitted. The appropriate classification for the divisional application may be found in the Office communication of the parent application wherein the >restriction< requirement was made. It is suggested that this classification designation be placed in the upper right hand corner of the letter of transmittal accompanying these divisional applications or in an application data sheet as set forth in 37 CFR 1.76(b)(3).

Use form paragraph 2.01 to remind applicant of possible divisional status.

**>

¶ 2.01 Definition of Division

This application appears to be a division of Application No. [1], filed [2].  A later application for a distinct or independent invention, carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application, is known as a divisional application or "division." The divisional application should set forth the portion of the earlier disclosure that is germane to the invention as claimed in the divisional application.

Examiner Note:

1.    In bracket 1, insert the Application No.(series code and serial no.) of the parent application.

2.    In bracket 2, insert the filing date of the parent application.

3.    An application claiming the benefits of a provisional application under 35 U.S.C. 119(e) should not be called a "division" of the provisional application since the application will have its patent term calculated from its filing date, whereas an application filed under 35 U.S.C. 120, 121, or 365(c) will have its term calculated from the date on which the earliest application was filed, provided a specific reference is made to the earlier filed application(s), 35 U.S.C. 154(a)(2) and (a)(3).

<

A design application may be considered to be a division of a utility application (but not of a provisional application), and is entitled to the filing date thereof if the drawings of the earlier filed utility application show the same article as that in the design application sufficiently to comply with 35 U.S.C. 112, first paragraph. However, such a divisional design application may only be filed under the procedure set forth in 37 CFR 1.53(b) not under 37 CFR 1.53(d). ** See MPEP § 1504.20.

While a divisional application may depart from the phraseology used in the parent application there may be no departure therefrom in substance or variation in the disclosure that would amount to "new matter" if introduced by amendment into the parent application. Compare MPEP § 201.08 and § 201.11.

For notation to be put *>in< the file *>history< by the examiner in the case of a divisional application, see MPEP § 202.02.

## 201.06(a) Former 37 CFR 1.60 Divisional-Continuation Procedure [R-2]

* 37 CFR 1.60 was deleted effective December 1, 1997. See 1203 O.G. 63, October 21, 1997. A continuation or divisional application filed under 37 CFR 1.60 on or after December 1, 1997, will automatically be treated as an application filed under 37 CFR 1.53(b). All continuation and divisional applications filed under 37 CFR 1.60 prior to December 1, 1997 will continue to be processed and examined under the procedures set forth in former 37 CFR 1.60. **>For more information pertaining to practice and procedure under former 37 CFR 1.60, see MPEP § 201.06(a) in the MPEP 8th Edition, Rev. 1 (February 2003)(available on the USPTO web site at www.uspto.gov/web/offices/pac/mpep/mpep.htm).<

## 201.06(b) Former 37 CFR 1.62 File Wrapper Continuing Procedure [R-2]

*37 CFR 1.62 was deleted effective December 1, 1997. See 1203 O.G. 63, October 21, 1997. A >request for a< continuation or divisional application filed under former 37 CFR 1.62 on or after December 1, 1997, >, in an application that was filed on or after June 8, 1995,< will be treated as ** a request for continued examination (RCE) under 37 CFR *>1.114<, see MPEP 706.07(h), paragraph IV. **>A request< filed on or after December 1, 1997, under former 37 CFR 1.62 *>for< a continuation-in-part (CIP) application, **>, or for a continuation or divisional of an application having a filing date before June 8, 1995,< will be treated as an improper application.

**

All continuation, divisional and CIP applications filed under former 37 CFR 1.62 prior to December 1, 1997, will continue to be processed and examined under the procedures set forth in former 37 CFR 1.62. **>For more information

pertaining to practice and procedure under former 37 CFR 1.62, see MPEP § 201.06(b) in the MPEP 8th Edition, Rev. 1 (February 2003)(available on the USPTO web site at www.uspto.gov/web/offices/pac/mpep/mpep.htm).<

## 201.06(c) 37 CFR 1.53(b) and 37 CFR 1.63(d) Divisional-Continuation Procedure [R-3]

*37 CFR 1.53. Application number, filing date, and completion of application.*

\*\*\*\*\*

(b) *Application filing requirements - Nonprovisional application.* The filing date of an application for patent filed under this section, except for a provisional application under paragraph (c) of this section or a continued prosecution application under paragraph (d) of this section, is the date on which a specification as prescribed by 35 U.S.C. 112 containing a description pursuant to § 1.71 and at least one claim pursuant to § 1.75, and any drawing required by § 1.81(a) are filed in the Patent and Trademark Office. No new matter may be introduced into an application after its filing date. A continuing application, which may be a continuation, divisional, or continuation-in-part application, may be filed under the conditions specified in 35 U.S.C. 120, 121 or 365(c) and § 1.78(a).

(1) A continuation or divisional application that names as inventors the same or fewer than all of the inventors named in the prior application may be filed under this paragraph or paragraph (d) of this section.

(2) A continuation-in-part application (which may disclose and claim subject matter not disclosed in the prior application) or a continuation or divisional application naming an inventor not named in the prior application must be filed under this paragraph.

\*\*\*\*\*

*37 CFR 1.63. Oath or Declaration.*

\*\*\*\*\*

(d)(1) A newly executed oath or declaration is not required under § 1.51(b)(2) and § 1.53(f) in a continuation or divisional application, provided that:

(i) The prior nonprovisional application contained an oath or declaration as prescribed by paragraphs (a) through (c) of this section;

(ii) The continuation or divisional application was filed by all or by fewer than all of the inventors named in the prior application;

(iii) The specification and drawings filed in the continuation or divisional application contain no matter that would have been new matter in the prior application; and

(iv) A copy of the executed oath or declaration filed in the prior application, showing the signature or an indication thereon

Case 1:04-cv-00833-KAJ    Document 236-3    Filed 06/02/2006    Page 9 of 33

Case 1:04-cv-00833-KAJ    Document 236-3    Filed 06/02/2006    Page 10 of 33

that it was signed, is submitted for the continuation or divisional application.

(2) The copy of the executed oath or declaration submitted under this paragraph for a continuation or divisional application must be accompanied by a statement requesting the deletion of the name or names of the person or persons who are not inventors in the continuation or divisional application.

(3). Where the executed oath or declaration of which a copy is submitted for a continuation or divisional application was originally filed in a prior application accorded status under § 1.47, the copy of the executed oath or declaration for such prior application must be accompanied by:

(i) A copy of the decision granting a petition to accord § 1.47 status to the prior application, unless all inventors or legal representatives have filed an oath or declaration to join in an application accorded status under § 1.47 of which the continuation or divisional application claims a benefit under 35 U.S.C. 120, 121, or 365(c); and

(ii) If one or more inventor(s) or legal representative(s) who refused to join in the prior application or could not be found or reached has subsequently joined in the prior application or another application of which the continuation or divisional application claims a benefit under 35 U.S.C. 120, 121, or 365(c), a copy of the subsequently executed oath(s) or declaration(s) filed by the inventor or legal representative to join in the application.

**>

(4) Where the power of attorney or correspondence address was changed during the prosecution of the prior application, the change in power of attorney or correspondence address must be identified in the continuation or divisional application. Otherwise, the Office may not recognize in the continuation or divisional application the change of power of attorney or correspondence address during the prosecution of the prior application.<

(5) A newly executed oath or declaration must be filed in a continuation or divisional application naming an inventor not named in the prior application.

\*\*\*\*\*

## I.   IN GENERAL

37 CFR 1.53(b) is the section under which all applications are filed EXCEPT: (A) an application resulting from entry of an international application into the national stage under 35 U.S.C. 371 and 37 CFR 1.495; (B) a provisional application under 35 U.S.C. 111(a) and 37 CFR 1.53(c); or (C) a continued prosecution application (CPA) of a design application under 37 CFR 1.53(d). Applications submitted under 37 CFR 1.53(b), as well as CPAs submitted under 37 CFR 1.53(d), are applications filed under 35 U.S.C. 111(a). An application filed under 37 CFR 1.53(b) may be an original, a continuation, a divisional, a continuation-in-part, or a substitute. (See MPEP § 201.09 for substitute application.) The appli-

cation may be for a "utility" patent under 35 U.S.C. 101, a design patent under 35 U.S.C. 171, a plant patent under 35 U.S.C. 161, or a reissue under 35 U.S.C. 251.

37 CFR 1.53(b) is the "default" application. An application that is not (A) the result of the entry of an international application into the national stage after compliance with 35 U.S.C. 371 and 37 CFR 1.495, (B) a provisional application under 37 CFR 1.53(c), or (C) a CPA of a design application filed under 37 CFR 1.53(d), is an application filed under 37 CFR 1.53(b). An application will be treated as one filed under 37 CFR 1.53(b) unless otherwise designated.

In order to be complete for filing date purposes, all applications filed under 37 CFR 1.53(b) must include a specification as prescribed by 35 U.S.C. 112 containing a description pursuant to 37 CFR 1.71 and at least one claim pursuant to 37 CFR 1.75, and any drawing required by 37 CFR 1.81(a). The statutory filing fee and an oath or declaration in compliance with 37 CFR 1.63 (and 37 CFR 1.175 (if a reissue) or 37 CFR 1.162 (if for a plant patent)) are also required by 37 CFR 1.51(b) for a complete application, but the filing fee and oath or declaration may be filed after the application filing date upon payment of the surcharge set forth in 37 CFR 1.16(*>f<*). See 37 CFR 1.53(f) >and MPEP § 607<.

Any application filed on or after December 1, 1997, which is identified by the applicant as an application filed under 37 CFR 1.60 will be processed as an application under 37 CFR 1.53(b) (using the copy of the specification, drawings and signed oath/declaration filed in the prior application supplied by the applicant). Any submission of an application including or relying on a copy of an oath or declaration that would have been proper under 37 CFR 1.60 will be a proper filing under 37 CFR 1.53(b).

A new application containing a copy of an oath or declaration under 37 CFR 1.63 referring to an attached specification is indistinguishable from a continuation or divisional application containing a copy of an oath or declaration from a prior application submitted pursuant to 37 CFR 1.63(d). Unless an application is submitted with a statement that the application is a continuation or divisional application, see 37 CFR 1.78(a)(2), the Office will process the application as a new non-continuing application. Applicants are

advised to clearly designate any continuation, divisional, or continuation-in-part application as such >by submitting a reference to the prior-filed application with the appropriate relationship (i.e., continuation, divisional, or, continuation-in-part) in compliance with 37 CFR 1.78(a) in the first sentence(s) of the specification or in an application data sheet< to avoid the need for a petition to accept an unintentionally delayed claim under 37 CFR 1.78(a) and the surcharge set forth in 37 CFR 1.17(t), and the issuance of a filing receipt that does not indicate that the application is a continuation, divisional, or continuation-in-part. >See MPEP § 201.11.<

## II.    OATH/DECLARATION

37 CFR 1.63(d) provides that a newly executed oath or declaration is not required in a continuation or divisional application filed by all or by fewer than all of the inventors named in a prior nonprovisional application containing a signed oath or declaration as required by 37 CFR 1.63, provided that a copy of the signed oath or declaration filed in the prior application is submitted for the continuation or divisional application and the specification and drawings filed in the continuation or divisional application do not contain any subject matter that would have been new matter in the prior application. The copy of the oath or declaration must show the signature of the inventor(s) or contain an indication thereon that the oath or declaration was signed (e.g., the notation "/s/" on the line provided for the signature).

It is not necessary to have the inventor sign a new oath or declaration merely to include a reference to the duty of disclosure if the parent application was filed prior to January 1, 1978, to indicate that the inventor has reviewed and understands the contents of the application if the parent application was filed prior to October 1, 1983, or to indicate the inventor's post office address if the parent application was filed prior to December 1, 1997, and the inventor's mailing or post office address is identified elsewhere in the application.

When a copy of an oath or declaration from a prior application is filed in a continuation or divisional application under 37 CFR 1.53(b), special care should be taken by the applicant to ensure that the copy is matched with the correct application file. Applicant should file the copy of the oath or declaration with a

cover letter explaining that the copy of the oath or declaration is for the attached application or for a previously-filed 37 CFR 1.53(b) application (identified by application number which consists of a two-digit series code, e.g., 08/, and a six-digit serial number, e.g., 123,456). An adhesive label may be attached to the front of the copy of the oath or declaration. The label should clearly state that the copy of the oath or declaration is intended for the attached application submitted therewith or for Application No. XX/YYY,YYY. During initial processing, attachments (e.g., a cover letter) to application papers may be separated. Therefore, applicant should not rely solely upon a cover letter. Note: 37 CFR 1.5(a) states that no correspondence relating to an application should be filed prior to receipt of the application number information from the Patent and Trademark Office.

37 CFR 1.63(d) requires a copy of the signed oath or declaration from the prior application. In instances in which the oath or declaration filed in the prior application is itself a copy of an oath or declaration from a prior application, either a copy of the copy of the oath or declaration in the prior application or a direct copy of the original oath or declaration is acceptable, as both are a copy of the oath or declaration in the prior application, see 37 CFR 1.4(d)(1)(ii).

The patent statute and rules of practice do not require that an oath or declaration include a date of execution, and no objection should be made to an oath or declaration because it lacks either a recent date of execution or any date of execution. The applicant's duty of candor and good faith including compliance with the duty of disclosure requirements of 37 CFR 1.56 is continuous and applies to the continuing application.

A newly executed oath or declaration is required in a continuation or divisional application filed under 37 CFR 1.53(b) naming an inventor not named in the prior application, and in a continuation-in-part application.

## III.    SPECIFICATION AND DRAWINGS

A continuation or divisional application may be filed under 35 U.S.C. 111(a) using the procedures set forth in 37 CFR 1.53(b), by providing: (A) ** a new specification and drawings and a copy of the signed oath or declaration as filed in the prior application provided the new specification and drawings do not

contain any subject matter that would have been new matter in the prior application; or (*>B<) a new specification and drawings and a newly executed oath or declaration provided the new specification and drawings do not contain any subject matter that would have been new matter in the prior application. **>To claim the benefit of a prior application under 35 U.S.C. 120, 121, or 365(c), applicant must include a reference to the prior application in compliance with 37 CFR 1.78(a) in the first sentence(s) of the specification or in an application data sheet. See MPEP § 201.11. The new specification and drawings of a continuation or divisional application filed under 37 CFR 1.53(b) may include changes to the specification and drawings< originally filed in the prior application in the manner that an applicant may file a substitute specification, see 37 CFR 1.125, or amend the drawings of an application so long as it does not result in the introduction of new matter. >Applicant should file a new set of claims as the original claims of the continuing application instead of filing a copy of the claims from the prior application and a preliminary amendment to those claims.< It is the applicant's responsibility to review any new specification or drawings submitted for a continuation or divisional application under 37 CFR 1.53(b) and 37 CFR 1.63(d) to determine that it contains no new matter. An applicant is advised to simply file a continuing application with a newly executed oath or declaration when it is questionable as to whether the continuing application adds material that would have been new matter if presented in the prior application. If one or more claims are allowed in the continuation or divisional application which are directed to matter shown and described in the prior nonprovisional application but not claimed in the prior application, the applicant should be required to file a supplemental oath or declaration under 37 CFR 1.67(b).

>If a continuation or divisional application, filed with a newly executed oath or declaration contains subject matter that would have been new matter in the prior application, the application will have to be amended to indicate that it is a continuation-in-part application rather than a continuation or a divisional application. Form paragraph 2.10.01 may be used to require the applicant to correct the relationship of the applications. See MPEP § 201.11.<

Where a copy of the oath or declaration from a prior application was filed in a continuation or divisional application, if the examiner determines that new matter is present relative to the prior application, the examiner should so notify the applicant in the next Office action (preferably the first Office action). The examiner should require: (A) a new oath or declaration along with the surcharge set forth in 37 CFR 1.16(*>f<); and (B) that the application be redesignated as a continuation-in-part.

Any utility or plant patent application, including any continuing application, that will be published pursuant to 35 U.S.C. 122(b) should be filed under 37 CFR 1.53(b) with a specification (including the claims), and drawings, that the applicant would like to have published. This is important because the Office will generally publish the specification (including the claims) and drawings as filed and, under 35 U.S.C. 154(d), a patentee may obtain provisional rights if the invention claimed in a patent is substantially identical to the invention claimed in the application publication. Filing a continuing application under 37 CFR 1.53(b) with a preliminary amendment (which makes all the desired changes to the specification, including adding, deleting or amending claims) is NOT recommended because the changes made by the preliminary amendment will generally not be reflected in the patent application publication even if the preliminary amendment is referred to in an oath or declaration. As noted above, a continuation or divisional application filed under 37 CFR 1.53(b) may be filed with a new specification and corrected drawings, along with a copy of an oath or declaration from a prior (parent) application, provided the new specification and drawings do not contain any subject matter that would have been new matter in the prior application. Thus, the new specification and corrected drawings may include some or all of the amendments entered during the prosecution of the prior application(s), as well as additional amendments submitted for clarity or contextual purposes, and a new set of claims. In order to have a patent application publication of a continuation or divisional application contain only a desired set of claims, rather than the set of claims in the prior application, it is strongly recommended that the continuation or divisional application be filed under 37 CFR 1.53(b) with a new specification containing only the desired set of claims. If the continuation or divisional

Rev. 3, August 2005

**201.06(c)**            MANUAL OF PATENT EXAMINING PROCEDURE

application is filed with a copy of the specification from the prior application along with a preliminary amendment which cancels, amends and/or adds new claims, publication of the application **>may exclude the< preliminary amendment unless< a copy of the specification (with the amended set of claims) was also submitted through the Office's Electronic Filing System (EFS).

## IV. INCORPORATION BY REFERENCE

**>An applicant may incorporate by reference the prior application by including, in the continuation or divisional application as-filed, an explicit statement that such specifically enumerated prior application or applications are "hereby incorporated by reference." The statement must appear in the specification. See 37 CFR 1.57(b) and MPEP § 608.01(p). The inclusion of this incorporation by reference statement will permit an applicant to amend the continuation or divisional application to include subject matter from the prior application(s), without the need for a petition provided the continuation or divisional application is entitled to a filing date notwithstanding the incorporation by reference. For applications filed prior to September 21, 2004, the incorporation by reference statement may appear in the transmittal letter or in the specification. Note that for applications filed prior to September 21, 2004, if applicants used a former version of the transmittal letter form provided by the USPTO, the incorporation by reference statement could only be relied upon to add inadvertently omitted material to the continuation or divisional application.

For applications filed on or after September 21, 2004, a claim under 35 U.S.C. 120 and 37 CFR 1.78 for benefit of a prior-filed nonprovisional application or international application designating the U.S. that was present on the filing date of the continuation or divisional application is considered an incorporation by reference of the prior-filed application as to inadvertently omitted material, subject to the conditions and requirements of 37 CFR 1.57(a). The purpose of 37 CFR 1.57(a) is to provide a safeguard for applicants when all or a portion of the specification and/or drawing(s) is (are) inadvertently omitted from an application. For applications filed on or after September 21, 2004, applicants are encouraged to provide an explicit incorporation by reference statement to the prior-filed application(s) for which benefit is claimed

under 35 U.S.C. 120 if applicants do not wish the incorporation by reference to be limited to inadvertently omitted material, pursuant to 37 CFR 1.57(a). See 37 CFR 1.57(b) and MPEP § 608.01(p) for discussion regarding explicit incorporation by reference.<

An incorporation by reference statement added after an application's filing date is not effective because no new matter can be added to an application after its filing date (see 35 U.S.C. 132(a)). If an incorporation by reference statement is included in an amendment to the specification to add a benefit claim under 35 U.S.C. 120 after the filing date of the application, the amendment would not be proper. When a benefit claim under 35 U.S.C. 120 is submitted after the filing of an application, the reference to the prior application cannot include an incorporation by reference statement of the prior application. See *Dart Indus. v. Banner*, 636 F.2d 684, 207 USPQ 273 (C.A.D.C. 1980).

Mere reference to another application, patent, or publication is not an incorporation of anything therein into the application containing such reference for the purpose of the disclosure required by 35 U.S.C. 112, first paragraph. *In re de Seversky*, 474 F.2d 671, 177 USPQ 144 (CCPA 1973). See MPEP § 608.01(p). >As noted above, however, for applications filed on or after September 21, 2004, 37 CFR 1.57(a) provides that a claim for the benefit of a prior-filed application under 37 CFR 1.78 is considered an incorporation by reference as to inadvertently omitted material. See MPEP § 201.17.<

### A. *Application NOT Entitled to a Filing Date*

Material needed to accord an application a filing date may not be incorporated by reference **>unless an appropriate petition under 37 CFR 1.57(a)(3) or under 37 CFR 1.182 is granted. Until such a petition has been granted, the application will not be entitled to a filing date.<

For an application filed on or after September 21, 2004, if the material needed for a filing date is completely contained within a prior-filed application to which benefit is claimed, applicant may file a petition under 37 CFR 1.57(a)(3) along with the fee set forth in 37 CFR 1.17(f) and an amendment with the inadvertently omitted material requesting that the amendment be entered and the application be accorded a

filing date as of the original date of deposit of the application papers. See 37 CFR 1.57(a)(3) and MPEP § 201.17.

In an application containing an explicit incorporation by reference statement in the specification or in a transmittal letter (if the transmittal letter was filed prior to September 21, 2004), a petition for the granting of a filing date may be made under 37 CFR 1.182.< A petition under 37 CFR 1.182 and the required petition fee, including an amendment submitting the necessary omitted material, requesting that the necessary omitted material contained in the prior application and submitted in the amendment, be included in the continuation or divisional application based upon the incorporation by reference statement, is required in order to accord the application a filing date as of the date of deposit of the continuation or divisional application. An amendment submitting the omitted material and relying upon the incorporation by reference will not be entered in the continuation or divisional application unless a decision granting the petition states that the application is accorded a filing date and that the amendment will be entered.

### B.  Application Entitled to a Filing Date

If a continuation or divisional application as originally filed >on or after September 21, 2004 does not include an explicit incorporation by reference statement and< is entitled to a filing date despite the >inadvertent< omission of a portion of the prior application(s), applicant *>may< be permitted to add the omitted material by way of an amendment **>under 37 CFR 1.57(a). Such an amendment must be made within any time period set by the Office. See 37 CFR 1.57(a)(1).

If an application as originally filed included a proper explicit incorporation by reference statement (or an explicit incorporation by reference statement that has been made effective under 37 CFR 1.57(g)), the omitted specification page(s) and/or drawing figure(s) may be added by amendment provided the omitted item(s) contains only subject matter in common with a document that has been properly incorporated by reference. If the Office identified the omitted item(s) in a "Notice of Omitted Item(s),"< applicant need not respond to the "Notice of Omitted Item(s)." Applicant should>, however,< submit the amendment adding the omitted material prior to the first Office

action to avoid delays in the prosecution of the application. See MPEP § 601.01(d) and § 601.01(g).

### V.  INVENTORSHIP

**>The< filing of a continuation or divisional application by all or by fewer than all of the inventors named in a prior application without a newly executed oath or declaration **>is permitted. Applicant has the option of filing: (A) a newly executed oath or declaration signed by the inventors for the continuation or divisional application; or (B) a copy of the oath or declaration filed in the prior application< accompanied by a statement from applicant, applicant's representative or other authorized party requesting the deletion of the names of the person or persons who are not inventors in the continuation or divisional application. >See 37 CFR 1.63(d).< Where the continuation or divisional application and a copy of the oath or declaration from the prior application are filed without a statement from an authorized party requesting deletion of the names of any person or persons named in the prior application, the continuation or divisional application will be treated as naming as inventors the person or persons named in the copy of the executed oath or declaration from the prior application. Accordingly, if a petition or request under 37 CFR 1.48(a) or (c) was granted in the prior application, the oath or declaration filed in a continuation or divisional application pursuant to 37 CFR 1.53(b) and 37 CFR 1.63(d) should be a copy of the oath or declaration executed by the added inventor(s) filed in the prior application. The statement requesting the deletion of the names of the person or persons who are not inventors in the continuation or divisional application must be signed by person(s) authorized pursuant to 37 CFR 1.33(b) to sign an amendment in the continuation or divisional application.

A newly signed oath or declaration in compliance with 37 CFR 1.63 is required where an inventor who was not named as an inventor in the signed oath or declaration filed in the prior application is to be named in a continuation or divisional application filed under 37 CFR 1.53(b). The newly signed oath or declaration must be signed by all the inventors.

### VI.  RULE 47 ISSUES

37 CFR 1.63(d)(3) provides for the situation in which the executed oath or declaration, of which a

copy is submitted for a continuation or divisional application, was originally filed in a prior application accorded status under 37 CFR 1.47. 37 CFR 1.63(d)(3)(i) requires a copy of any decision granting a petition to accord 37 CFR 1.47 status to such application, unless all nonsigning inventor(s) or legal representative (pursuant to 37 CFR 1.42 or 1.43) have filed an oath or declaration to join in an application of which the continuation or divisional application claims a benefit under 35 U.S.C. 120, 121 or 365(c). Where one or more, but not all, nonsigning inventor>(s)< or legal representative (pursuant to 37 CFR 1.42 or 1.43) subsequently joins in any application of which the continuation or divisional application claims a benefit under 35 U.S.C. 120, 121 or 365(c), 37 CFR 1.63(d)(3)(ii) also requires a copy of any oath or declaration filed by the inventor or legal representative who subsequently joined in such application.

New continuation or divisional applications filed under 37 CFR 1.53(b) which contain a copy of an oath or declaration that is not signed by one of the inventors and a copy of the decision according 37 CFR 1.47 status in the prior application, should be forwarded by the Office of Initial Patent Examination (OIPE) to the Office of Petitions before being forwarded to the Technology Center (TC). The Office of Petitions will mail applicant a letter stating that "Rule 47" status has been accorded to the continuation or divisional application, but will not repeat the notice to the nonsigning inventor nor the announcement in the *Official Gazette*. See 37 CFR 1.47(c).

## VII. CHANGE OF ATTORNEY/CORRESPON-DENCE ADDRESS

37 CFR 1.63(d)(4) provides that where the power of attorney **\*\*** or correspondence address was changed during the prosecution of the prior application, the change in power of attorney **\*\*** or correspondence address must be identified in the continuation or divisional application. Otherwise, the Office may not recognize in the continuation or divisional application the change of power of attorney **\*\*** or correspondence address which occurred during the prosecution of the prior application.

## VIII. SMALL ENTITY STATUS

If small entity status has been established in a parent application and is still proper and desired in a con-

tinuation or divisional application filed under 37 CFR 1.53(b), a new assertion as to the continued entitlement to small entity status under 37 CFR 1.27 is required. See MPEP § 509.03.

## IX. COPIES OF AFFIDAVITS

Affidavits or declarations, such as those submitted under 37 CFR 1.130, 1.131 and 1.132 filed during the prosecution of the prior nonprovisional application do not automatically become a part of a continuation or divisional application filed under 37 CFR 1.53(b). Where it is desired to rely on an earlier filed affidavit or declaration, the applicant should make such remarks of record in the 37 CFR 1.53(b) application and include a copy of the original affidavit or declaration filed in the prior nonprovisional application.

Use form paragraph 2.03 for instructions to applicant concerning affidavits or declarations filed in the *>prior< application.

**\*\*>**

¶ *2.03 Affidavits or Declarations in Prior Application*

Applicant refers to an affidavit or declaration filed in the prior application. Affidavits or declarations, such as those submitted under 37 CFR 1.130, 1.131 and 1.132, filed during the prosecution of the prior application do not automatically become a part of this application. Where it is desired to rely on an earlier filed affidavit or declaration, the applicant should make the remarks of record in this application and include a copy of the original affidavit or declaration filed in the prior application.

**Examiner Note:**

This form paragraph is to be used in applications filed under 37 CFR 1.53(b). Do not use this form paragraph in applications filed under 37 CFR 1.53(d) since affidavits and/or declarations, such as those submitted under 37 CFR 1.130, 1.131 and 1.132 filed during the prosecution of the parent nonprovisional application automatically become a part of the 37 CFR 1.53(d) application.

**<**

## X. EXTENSIONS OF TIME

If an extension of time is necessary to establish continuity between the prior application and the continuing application filed under 37 CFR 1.53(b), the petition for an extension of time must be filed as a separate paper directed to the prior nonprovisional application. Under 37 CFR 1.136(a)(3), an authorization to charge all required fees, fees under 37 CFR 1.17, or all required extension of time fees will be treated as a constructive petition for an extension of time in any concurrent or future reply requiring a

petition for an extension of time for its timely submission. A continuing application filed under 37 CFR 1.53(b) is a new application which is assigned a new application number and filing date and is maintained separately from the file of the prior application. The filing of a continuing application is not a paper directed or placed in the file of the prior application and is not a "reply" to the last Office action in the prior application. Thus, a petition for an extension of time and the fee set forth in 37 CFR 1.17 are required to be filed as a separate paper in the prior application. Any petition for an extension of time directed to the prior application must be accompanied by its own certificate of mailing under 37 CFR 1.8 (if mailed by first class mail) or under 37 CFR 1.10 (if mailed by Express Mail), if the benefits of those rules are desired.

## XI.  ABANDONMENT OF THE PRIOR NON-PROVISIONAL APPLICATION

Under 37 CFR 1.53(b) and 37 CFR 1.63(d) practice, the prior nonprovisional application is not automatically abandoned upon filing of the continuing application. If the prior nonprovisional application is to be expressly abandoned, such a paper must be signed in accordance with 37 CFR 1.138. A registered attorney or agent not of record acting in a representative capacity under 37 CFR 1.34* may also expressly abandon a prior nonprovisional application as of the filing date granted to a continuing application when filing such a continuing application.

If the prior nonprovisional application which is to be expressly abandoned has a notice of allowance issued therein, the prior nonprovisional application can become abandoned by the nonpayment of the issue fee. However, once an issue fee has been paid in the prior application, even if the payment occurs following the filing of a continuing application under 37 CFR 1.53(b) **, a petition to withdraw the prior nonprovisional application from issue must be filed before the prior nonprovisional application can be abandoned (37 CFR 1.313). >See MPEP § 711.01.<

If the prior nonprovisional application which is to be expressly abandoned is before the Board of Patent Appeals and Interferences, a separate notice should be forwarded by the appellant to the Board, giving them notice thereof.

After a decision by the Court of Appeals for the Federal Circuit (CAFC) in which the rejection of all claims is affirmed, the proceeding is terminated when the mandate is issued by the Court.

## XII.  EXAMINATION

The practice relating to making first action rejections final also applies to continuation and divisional applications filed under 37 CFR 1.53(b) **. See MPEP § 706.07(b).

Any preliminary amendment **>that is present on the filing date of an application filed under 37 CFR 1.53(b) is part of the original disclosure. Amendments must be filed in compliance with the requirements of 37 CFR 1.121 (e.g., the amendment must include a complete claim listing whenever a claim is added, canceled, or amended). See MPEP § 714. Applications should be classified and assigned to the proper Technology Center (TC)< by taking into consideration the claims that will be before the examiner upon entry of such a preliminary amendment.

Where a copy of the oath or declaration from a prior application was filed in a continuation or divisional application, if the examiner determines that new matter is present relative to the prior application, the examiner should so notify the applicant in the next Office action (preferably the first Office action). The examiner should require: (A) a new oath or declaration along with the surcharge set forth in 37 CFR 1.16(*>f<); and (B) that the application be redesignated as a continuation-in-part. See MPEP § 608.04(b) when new matter is contained in a preliminary amendment.

If the examiner finds that pages of the specification or drawings figures described in the specification are missing and the application is a continuation or divisional application filed >prior to September 21, 2004< under 37 CFR 1.53(b) using a copy of the oath or declaration filed in the prior application under 37 CFR 1.63(d), the examiner must check to determine whether the continuation or divisional application, as originally filed, includes a statement incorporating by reference the prior application(s). **>For applications filed prior to September 21, 2004, the statement could appear in the application transmittal letter (or the specification, rather than only in the specification).< The inclusion of this incorporation by reference of the prior application(s) *>was necessary in these applica-

tions to< permit applicant to amend the continuation or divisional application to include subject matter in the prior application(s) without the need for a petition. See also the subsection above regarding "Incorporation by Reference." If the continuation or divisional application filed >prior to September 21, 2004< under 37 CFR 1.53(b) ** does not include the incorporation by reference statement in the application papers (in the specification or in the transmittal letter) as originally filed and applicant has not been informed of the omitted items, the application should be returned to OIPE for mailing of a "Notice of Omitted Item(s)." >For applications filed on or after September 21, 2004, see 37 CFR 1.57(a) and MPEP § 201.17.<

## 201.06(d)  37  CFR  1.53(d)  Continued Prosecution Application (CPA) Practice [R-3]

*37 CFR 1.53.  Application number, filing date, and completion of application.*

\*\*\*\*\*

(d) *Application filing requirements - Continued prosecution (nonprovisional) application.*

(1) A continuation or divisional application (but not a continuation-in-part) of a prior nonprovisional application may be filed as a continued prosecution application under this paragraph, provided that:

(i)  The application is for a design patent;

(ii)  The prior nonprovisional application is a design application that is complete as defined by § 1.51(b); and

(ii) The application under this paragraph is filed before the earliest of:

(A)  Payment of the issue fee on the prior application, unless a petition under § 1.313(c) is granted in the prior application;

(B) Abandonment of the prior application; or

(C)  Termination of proceedings on the prior application.

(2)  The filing date of a continued prosecution application is the date on which a request on a separate paper for an application under this paragraph is filed. An application filed under this paragraph:

(i)  Must identify the prior application;

(ii)  Discloses and claims only subject matter disclosed in the prior application;

(iii) Names as inventors the same inventors named in the prior application on the date the application under this paragraph was filed, except as provided in paragraph (d)(4) of this section;

(iv) Includes the request for an application under this paragraph, will utilize the file jacket and contents of the prior

application, including the specification, drawings and oath or declaration from the prior application, to constitute the new application, and will be assigned the application number of the prior application for identification purposes; and

(v)  Is a request to expressly abandon the prior application as of the filing date of the request for an application under this paragraph.

\*\*>

(3)  The filing fee, search fee, and examination fee for a continued prosecution application filed under this paragraph are the basic filing fee as set forth in § 1.16(b), the search fee as set forth in § 1.16 (l), and the examination fee as set forth in § 1.16(p).<

(4)  An application filed under this paragraph may be filed by fewer than all the inventors named in the prior application, provided that the request for an application under this paragraph when filed is accompanied by a statement requesting deletion of the name or names of the person or persons who are not inventors of the invention being claimed in the new application. No person may be named as an inventor in an application filed under this paragraph who was not named as an inventor in the prior application on the date the application under this paragraph was filed, except by way of correction of inventorship under § 1.48.

(5)  Any new change must be made in the form of an amendment to the prior application as it existed prior to the filing of an application under this paragraph. No amendment in an application under this paragraph (a continued prosecution application) may introduce new matter or matter that would have been new matter in the prior application. Any new specification filed with the request for an application under this paragraph will not be considered part of the original application papers, but will be treated as a substitute specification in accordance with § 1.125.

(6)  The filing of a continued prosecution application under this paragraph will be construed to include a waiver of confidentiality by the applicant under 35 U.S.C. 122 to the extent that any member of the public, who is entitled under the provisions of § 1.14 to access to, copies of, or information concerning either the prior application or any continuing application filed under the provisions of this paragraph, may be given similar access to, copies of, or similar information concerning the other application or applications in the file jacket.

(7)  A request for an application under this paragraph is the specific reference required by 35 U.S.C. 120 to every application assigned the application number identified in such request. No amendment in an application under this paragraph may delete this specific reference to any prior application.

(8)  In addition to identifying the application number of the prior application, applicant should furnish in the request for an application under this paragraph the following information relating to the prior application to the best of his or her ability:

(i)  Title of invention;

(ii)  Name of applicant(s); and

(iii) Correspondence address.

(9)  **See § 1.103(b) for requesting a limited suspension of action in an application filed under this paragraph.

\*\*\*\*\*

TYPES, CROSS-NOTING, AND STATUS OF APPLICATION                    201.06(d)

## I.  CPA PRACTICE HAS BEEN ELIMINATED AS TO UTILITY AND PLANT APPLICATIONS

Effective July 14, 2003, continued prosecution application (CPA) practice has been eliminated as to utility and plant applications. Applicants who wish to continue examination of the same claimed invention after the prosecution of a utility or plant application is closed should consider filing a request for continued examination (RCE) under 37 CFR 1.114. For more information on RCE practice, see MPEP § 706.07(h). Applicants who wish to file a continuation, divisional, or continuation-in-part application should file an application under 37 CFR 1.53(b). See MPEP § 201.06(c). CPAs filed prior to July 14, 2003 will continue to be processed and examined under the procedures set forth in prior 37 CFR 1.53(d). Any request for a CPA filed on or after July 14, 2003 in a utility or plant application is improper, regardless of the filing date of the utility or plant application in which the CPA is filed.

The Office will not convert an improper CPA into an application under 37 CFR 1.53(b) unless the applicant shows that there are extenuating circumstances that warrant the burdensome process of such conversion.

If an examiner discovers that an improper or incomplete CPA has been processed as a proper CPA in error, the examiner should immediately notify a supervisory applications examiner (SAE) or other technical support staff within the Technology Center (TC) who will reprocess the CPA and correct the application records as appropriate.

### A.  *Applications Filed on or After June 8, 1995*

If a utility or plant application has a filing date on or after June 8, 1995, an improper CPA filed on or after July 14, 2003 will be treated as a request for continued examination (RCE) under 37 CFR 1.114. See MPEP § 706.07(h) and form paragraph >7.42.15<. If the improper CPA does not satisfy the requirements of 37 CFR 1.114 (e.g., the request lacks a submission or the fee under 37 CFR 1.17(e), or the prosecution of the application is not closed), the Office will treat the improper CPA as an improper RCE, and the time period set in the last Office action (or notice) will continue to run. The Office will send the applicant a Notice of Improper Request for Continued Examina-

tion (RCE), PTO-2051. If the time period for reply to the last Office action (or notice) has expired, the application is abandoned and the applicant must file a petition under 37 CFR 1.137 and the required petition fee to revive the abandoned application. Unless prosecution in the application was not closed, the petition must be accompanied by a submission as defined by 37 CFR 1.114(c) and the fee set forth in 37 CFR 1.17(e), unless previously filed. If the last Office action is a notice of allowance, the issue fee must also be paid at the time of filing the petition to revive. If prosecution in the application was not closed, the petition must be accompanied by a reply to the non-final Office action.

Applicants cannot, as a matter of right, obtain continued examination on claims that are independent and distinct from the invention previously claimed (i.e., applicants cannot switch inventions when filing an RCE). See 37 CFR 1.145. Therefore, if applicants file a request for a divisional CPA on or after July 14, 2003 and the request satisfies all the requirements in 37 CFR 1.114 (e.g., the request is accompanied by the fee set forth in 37 CFR 1.17(e) and a submission), the Office will treat the improper divisional CPA as a proper RCE. However, any amendment canceling all claims drawn to the elected invention and presenting only claims drawn to the nonelected invention will be treated as nonresponsive. See MPEP § 821.03. Any newly submitted claims that are directed to an invention distinct from and independent of the invention previously claimed will be withdrawn from consideration. Applicants should be notified by using form paragraph 8.26 or 8.27.

### B.  *Applications Filed Before June 8, 1995*

If a utility or plant application has a filing date before June 8, 1995, the Office cannot treat an improper CPA filed on or after July 14, 2003 as an RCE because RCE practice does not apply to applications filed before June 8, 1995. The Office will notify the applicant of the improper CPA by mailing a Notice of Improper CPA (or FWC) Filing For Utility or Plant Applications Filed Before June 8, 1995, PTO-2011 (Rev. 7/03 or later). The time period for reply set in the last Office action (or notice) will continue to run. Applicant may file a continuing application under 37 CFR 1.53(b). If the time period for reply has expired, the application is abandoned. If

Rev. 3, August 2005

the application in which the improper CPA is filed is abandoned when a continuing application is filed, applicant would need to file a petition under 37 CFR 1.137 to revive the prior application to establish copendency with the continuing application under 37 CFR 1.53(b).

## II. FILING AND INITIAL PROCESSING OF CPAs FOR DESIGN APPLICATIONS

### A. In General

In addition to the provisions of 37 CFR 1.53(b), a continuation or divisional (but not a continuation-in-part) application may be filed under 37 CFR 1.53(d) if the prior application is a design application that is complete as defined by 37 CFR 1.51(b). A continuation or divisional application filed under 37 CFR 1.53(d) is called a "Continued Prosecution Application" or "CPA." A CPA has a number of advantages compared to a continuation or divisional application filed under 37 CFR 1.53(b). For example, the papers required to be filed in the U.S. Patent and Trademark Office in order to secure a filing date under 37 CFR 1.53(d) are minimal compared to 37 CFR 1.53(b). In addition, the Office will not normally issue a new filing receipt for a CPA. See 37 CFR 1.54(b). The time delay between the filing date and the first Office action should be less for a CPA than for an application filed under 37 CFR 1.53(b). For examination priority purposes only, the USPTO will treat continuation CPAs as if they were "amended" applications (as of the CPA filing date) and not as "new" applications. This treatment is limited to CPAs in which the prior application has an Office action issued by the examiner. If no Office action has been issued in the prior application, the CPA will be treated, for examination purposes, like a "new" application unless a petition to make special under 37 CFR 1.102 or a request for expedited examination under 37 CFR 1.155 is filed in the CPA. As "amended" applications generally have a shorter time frame for being acted on by examiners than "new" applications, the treatment of a CPA as an "amended" application will result in a first Office action being mailed in the CPA much sooner than if it had been filed as a continuation application under 37 CFR 1.53(b) (or under former 37 CFR 1.60 or 1.62). Therefore, applicants are strongly encouraged to file any preliminary amendment in a CPA at the time the

CPA is filed. See 37 CFR 1.115 and MPEP § 714.03(a).

A request for a CPA expressly abandons the prior application as of the filing date of the request for the CPA. See 37 CFR 1.53(d)(2)(v). Therefore, where the prior application is not to be abandoned, any continuation or divisional application must be filed under 37 CFR 1.53(b). If applicant wants the USPTO to disregard a previously filed request for a CPA filed in a design application (and not recognize its inherent request to expressly abandon the prior application) and to treat the paper as the filing of an application under 37 CFR 1.53(b), the applicant must file a petition under 37 CFR 1.182. A request to expressly abandon an application is not effective until the abandonment is acknowledged, including the express abandonment of the prior application of a CPA that occurs by operation of 37 CFR 1.53(d)(2)(v). The express abandonment of the prior application is acknowledged and becomes effective upon processing and entry of the CPA into the file of the prior application. Thus, such a petition under 37 CFR 1.182 should be filed expeditiously since the petition will not be granted once the request for a CPA has been entered into the prior application (and the inherent request to expressly abandon the prior application has been acknowledged). If the request for a CPA has been entered into the prior application by the time the petition under 37 CFR 1.182 and the application file are before the deciding official for a decision on the petition, the petition will be denied. It is noted, however, that if the applicant intended to file a second application (either a continuation or a divisional) without abandoning the prior application, applicant can still achieve that result without loss of the benefit of the original filing date by: (A) continuing the prosecution of the original application via the CPA; and (B) filing a new continuation/divisional under 37 CFR 1.53(b) claiming benefit of the CPA and its parent applications under 35 U.S.C. 120 during the pendency of the CPA.

Since no new matter may be introduced in a CPA, the procedure set forth in 37 CFR 1.53(d) is not available for filing a continuation-in-part application. All continuation-in-part applications must be filed under 37 CFR 1.53(b) and a newly executed oath or declaration is required.

Under the CPA procedure, the continuation or divisional application will utilize the file wrapper and contents of the prior nonprovisional application, including the specification, drawings and oath or declaration from the prior nonprovisional application, and will be assigned the same application number as the prior nonprovisional application. Any changes to the continuation or divisional application desired when filing the CPA must be made in the form of an amendment to the prior application as it existed prior to filing the CPA. See 37 CFR 1.53(d)(5). Any new specification filed with the CPA request will not be considered part of the original application papers, but will be treated as a substitute specification in accordance with 37 CFR 1.125. However, the applicant must comply with the requirements of 37 CFR 1.125(b) before the substitute specification will be entered into the CPA. Since 37 CFR 1.125(b) requires that a substitute specification be accompanied by, inter alia, a statement that the substitute specification includes no new matter, any substitute specification containing new matter will be denied entry by the examiner. Any preliminary amendment to the written description and claims, other than a substitute specification, filed with a CPA request will ordinarily be entered. Any new matter which is entered, however, will be required to be canceled pursuant to 35 U.S.C. 132 from the descriptive portion of the specification. Further, any claim(s) which relies upon such new matter for support will be rejected under 35 U.S.C. 112, first paragraph. See MPEP § 2163.06. In the event that a substitute specification or preliminary amendment containing new matter was filed with a request for a CPA, applicant may file a petition under 37 CFR 1.182 requesting that the substitute specification or preliminary amendment be removed from the CPA application file, and be accorded the status as a separate application by being placed in a new file wrapper and assigned a new application number, with the new application being accorded a filing date as of the date the request for a CPA and substitute specification/preliminary amendment were filed. Of course, a request for a CPA is not improper simply because the request is accompanied by a substitute specification or preliminary amendment containing new matter. Thus, an applicant will not be entitled to a refund of the filing fee paid in a proper CPA as a result of the granting of a petition under 37 CFR 1.182 requesting that the substitute specification or preliminary amendment be removed from the CPA application file.

A CPA may be based on a prior CPA so long as the prior CPA is complete under 37 CFR 1.51(b) and is a design application. There is no other limit to the number of CPAs that may be filed in a chain of continuing applications. However, only one CPA may be pending at one time based on the same prior nonprovisional application.

Under 37 CFR 1.53(d), the specification, claims and drawings, and any amendments entered in the prior nonprovisional application are used in the CPA. A new >basic< filing fee *>, search fee, and examination fee are< required in accordance with 35 U.S.C. 41 and 37 CFR 1.16. >No search and examination fees are required for a CPA filed before December 8, 2004.< The only other statutory requirement under 35 U.S.C. 111(a) is a signed oath or declaration. Since a CPA cannot contain new matter, the oath or declaration filed in the prior nonprovisional application would supply all the information required under the statute and rules to have a complete application and to obtain a filing date. Accordingly, the previously filed oath or declaration will be considered to be the oath or declaration of the CPA.

The original disclosure of a CPA is the same as the original disclosure of the parent non-continued prosecution application and amendments entered in the parent application(s). However, any subject matter added by amendment in the parent application which is deemed to be new matter in the parent application will also be considered new matter in the CPA. No amendment filed in a CPA, even if filed on the filing date of the CPA, may include new matter.

If application papers for a design application are in any way designated as a CPA filing under 37 CFR 1.53(d) (e.g., contain a reference to 37 CFR 1.53(d), CPA, or continued prosecution application), the application papers will be treated by the Office as a CPA filed under 37 CFR 1.53(d), even if the application papers also contain other inconsistent designations (e.g., if the papers are also designated as an application filed under 37 CFR 1.53(b) or include a reference to a "continuation-in-part CPA"). If application papers for a utility or plant application are in any way designated as a CPA filing under 37 CFR 1.53(d), the application papers will be treated as a request for continued examination (RCE) under 37 CFR 1.114. See I. CPA

**201.06(d)**                     MANUAL OF PATENT EXAMINING PROCEDURE

PRACTICE HAS BEEN ELIMINATED AS TO UTILITY AND PLANT APPLICATIONS, above.

**B.    Conditions for Filing a CPA**

A continuation or divisional application may be filed under 37 CFR 1.53(d), if the prior nonprovisional application is a design application that is complete as defined by 37 CFR 1.51(b). The term "prior nonprovisional application" in 37 CFR 1.53(d)(1) means the nonprovisional application immediately prior to the CPA. A complete application as defined by 37 CFR 1.51(b) must contain, *inter alia*, the appropriate filing fee >(including the basic filing fee, search fee, and examination fee)< and a signed oath or declaration under 37 CFR 1.63.

In addition, a continuation or divisional application filed under 37 CFR 1.53(d) must be filed before the earliest of: (A) payment of the issue fee on the prior application, unless a petition under 37 CFR 1.313(c) is granted in the prior application; (B) abandonment of the prior application; or (C) termination of proceedings on the prior application.

Note that request for continued examination (RCE) practice under 37 CFR 1.114 is not available in design applications. Any improper RCE filed in a design application will not be treated as a CPA. An improper RCE filed in a design application will not toll the running of any time period for reply.

**C.    Initial Processing**

A CPA request will be initially processed by the TC assigned the prior application. The TC will verify that (A) the prior application is a design application, (B) the correct application number of the prior nonprovisional application is identified in the request, (C) the request is properly signed, (D) the prior nonprovisional application was pending on, and that the issue fee has not been paid in the prior nonprovisional application on or prior to, the filing date of the CPA request, (E) the prior nonprovisional application was complete under 37 CFR 1.51(b) (e.g., the filing fee has been paid and a signed oath or declaration under 37 CFR 1.63 has been filed in the prior application), and (F) the proper filing fee has been paid in the CPA. If one or more other conditions for filing a CPA have not been satisfied or the proper >basic< filing fee *>, search fee, and examination fee have< not been paid, the applicant will be so notified and no examination

will be made in the CPA until the filing error has been corrected or the proper **>fees have been< submitted. See 37 CFR 1.53(h). If an examiner discovers that an improper or incomplete CPA has been processed as a proper CPA in error, the examiner should immediately notify a supervisory applications examiner (SAE) or other technical support staff within the TC who will reprocess the CPA and correct the application records.

**D.    Incorrect Patent Application Number Identified**

A request for a CPA must identify the prior nonprovisional application (37 CFR 1.53(d)(2)(i)) by application number (series code and serial number) or by serial number and filing date. Where a paper requesting a CPA is filed which does not properly identify the prior nonprovisional application number, the TC should attempt to identify the proper application number by reference to other identifying information provided in the CPA papers, e.g., name of the inventor, filing date, title of the invention, and attorney's docket number of the prior application. If the TC is able to identify the correct application number of the prior application, the correct application number should be entered in red ink on the paper requesting the CPA and the entry should be dated and initialed. For Image File Wrapper (IFW) processing, see IFW Manual. If the TC is unable to identify the application number of the prior application and the party submitting the CPA papers is a registered practitioner, the practitioner may be requested by telephone to supply a letter signed by the practitioner providing the correct application number. If all attempts to obtain the correct application number are unsuccessful, the paper requesting the CPA should be returned by the TC to the sender where a return address is available. The returned CPA request must be accompanied by a cover letter which will indicate to the sender that if the returned CPA request is resubmitted to the U.S. Patent and Trademark Office with the correct application number within two weeks of the mail date on the cover letter, the original date of receipt of the CPA request will be considered by the U.S. Patent and Trademark Office as the date of receipt of the CPA request. See 37 CFR 1.5(a). A copy of the returned CPA request and a copy of the date-stamped cover letter should be retained by the TC. Applicants may use either the Certificate of

Mailing or Transmission procedure under 37 CFR 1.8 or the "Express Mail" procedure under 37 CFR 1.10 for resubmissions of returned CPA requests if they desire to have the benefit of the date of deposit in the United States Postal Service. If the returned CPA request is not resubmitted within the two-week period with the correct application number, the TC should cancel the original "Office Date" stamp on the CPA request and re-stamp the returned CPA request with the date of receipt of the resubmission or with the date of deposit as "Express Mail" with the United States Postal Service, if the CPA request is resubmitted under 37 CFR 1.10. Where the CPA request is resubmitted later than two weeks after the return mailing by the U.S. Patent and Trademark Office, the later date of receipt or date of deposit as "Express Mail" of the resubmission will be considered to be the filing date of the CPA request. The two-week period to resubmit the returned CPA request is not extendible. See 37 CFR 1.5(a).

In addition to identifying the application number of the prior application, applicant is urged to furnish in the request for a CPA the following information relating to the prior application to the best of his or her ability: (A) title of invention; (B) name of applicant(s); and (C) correspondence address. See 37 CFR 1.53(d)(8).

## E.    Signature Requirement

A CPA is a request to expressly abandon the prior application (37 CFR 1.53(d)(2)(v)) and, therefore, must be properly signed. For a listing of the individuals who may properly sign a CPA request, see 37 CFR 1.33(b). In a joint application with no attorney or agent, all applicants must sign the CPA request in order for the CPA request to be considered properly signed. An unsigned or improperly signed CPA request will be placed in the file of the prior application, and is entitled to an application filing date, but is ineffective to abandon the prior application. A CPA will NOT be examined until the CPA request is properly signed.

A request for a CPA may be signed by a registered practitioner acting in a representative capacity under 37 CFR 1.34*. However, correspondence concerning the CPA will be sent by the Office to the correspondence address as it appears in the prior nonprovisional application until a new power of attorney, or change

of correspondence address signed by an attorney or agent of record in the prior application, is filed in the CPA.

A request for a CPA may also be signed by the assignee or assignees of the entire interest. However, the request must be accompanied by papers establishing the assignee's ownership under 37 CFR 3.73(b), unless such papers were filed in the prior application and ownership has not changed.

## F.    Filing Date

The filing date of a CPA is the date on which a request on a separate paper for a CPA is filed. A request for a CPA cannot be submitted as a part of papers filed for another purpose, see 37 CFR 1.53(d)(2), (e.g., the filing of a request for a CPA within an amendment after final for the prior application is an improper request for a CPA).

A paper requesting a CPA may be sent to the U.S. Patent and Trademark Office by mail (see MPEP § 501), by facsimile transmission (see MPEP § 502.01) or it may be filed directly at the Customer >Service< Window located in **the Randolph Building, 401 Dulany Street, Alexandria, VA 22314<.

The date of receipt accorded to a CPA request sent by facsimile transmission is the date the complete transmission is received by an Office facsimile unit, unless the transmission is completed on a Saturday, Sunday, or Federal holiday within the District of Columbia. Correspondence for which transmission was completed on a Saturday, Sunday, or Federal holiday within the District of Columbia, will be accorded a receipt date of the next succeeding day which is not a Saturday, Sunday, or Federal holiday within the District of Columbia.

Applicants filing a CPA by facsimile transmission may include a "Receipt for Facsimile Transmitted CPA" (PTO/SB/29A) containing a mailing address and identifying information (e.g., the prior application number, filing date, title, first named inventor) with the request for a CPA. The USPTO will: (A) separate the "Receipt for Facsimile Transmitted CPA" from the CPA request papers; (B) date-stamp the "Receipt for Facsimile Transmitted CPA"; (C) verify that the identifying information provided by the applicant on the "Receipt for Facsimile Transmitted CPA" is the same information provided on the accompanying request for a CPA; and (D) mail the "Receipt for Facsimile

**201.06(d)**                    MANUAL OF PATENT EXAMINING PROCEDURE

Transmitted CPA" to the mailing address provided on the "Receipt for Facsimile Transmitted CPA." The "Receipt for Facsimile Transmitted CPA" cannot be used to acknowledge receipt of any paper(s) other than the request for a CPA. A returned "Receipt for Facsimile Transmitted CPA" may be used as *prima facie* evidence that a request for a CPA containing the identifying information provided on the "Receipt for Facsimile Transmitted CPA" was filed by facsimile transmission on the date stamped thereon by the USPTO. As the USPTO will verify only the identifying information contained on the request for a CPA, and will not verify whether the CPA was accompanied by other papers (e.g., a preliminary amendment), the "Receipt for Facsimile Transmitted CPA" cannot be used as evidence that papers other than a CPA were filed by facsimile transmission in the USPTO. Likewise, applicant-created "receipts" for acknowledgment of facsimile transmitted papers (whether created for the acknowledgment of a CPA or other papers) cannot be used as evidence that papers were filed by facsimile in the USPTO. Applicants are cautioned not to include information on a "Receipt for Facsimile Transmitted CPA" that is intended for retention in the application file, as the USPTO does not plan on retaining a copy of such receipts in the file of the application.

*>If an< applicant filing a CPA by facsimile *>does not< include an authorization to charge the basic filing fee>, search fee, and examination fee< to a deposit account or to a credit card using PTO-2038 (See MPEP § 509), * the application will be treated under 37 CFR 1.53(f) as having been filed without the **>appropriate fees< (as fees cannot otherwise be transmitted by facsimile).

37 CFR 1.6(f) provides for the situation in which the Office has no evidence of receipt of a CPA transmitted to the Office by facsimile transmission. 37 CFR 1.6(f) requires that a showing thereunder include, *inter alia*, a copy of the sending unit's report confirming transmission of the application or evidence that came into being after the complete transmission of the application and within one business day of the complete transmission of the application.

The Certificate of Mailing Procedure under 37 CFR 1.8 does not apply to filing a request for a CPA, since the filing of such a request is considered to be a filing of national application papers for the purpose of

obtaining an application filing date (37 CFR 1.8(a)(2)(i)(A)). Thus, if (A) the Patent and Trademark Office mails a final Office action on July 2, 1997 (Wednesday), with a shortened statutory period of 3 months to reply and (B) a petition for a three-month extension of time (and the fee) and a CPA are received in the U.S. Patent and Trademark Office on January 5, 1998 (Monday), accompanied by a certificate of mailing under 37 CFR 1.8 dated January 2, 1998 (Friday), then the prior application was abandoned on January 3, 1998, and the CPA is improper because the CPA was not filed before the abandonment of the prior application. As a further example, if (A) the U.S. Patent and Trademark Office mails a final Office action on July 2, 1997 (Wednesday), with a shortened statutory period of 3 months to reply and (B) applicant submits a petition for a three-month extension of time (and the fee) and a CPA request via facsimile transmission accompanied by a certificate of transmission under 37 CFR 1.8 at 9:00 PM (PST) on January 2, 1998 (Friday), but the U.S. Patent and Trademark Office does not receive the complete transmission until 12:01 AM (EST) on January 3, 1998 (Saturday), then the CPA is improper because the CPA request was not filed until January 5, 1998, see 37 CFR 1.6(a)(3), which is after the abandonment (midnight on Friday, January 2, 1998) of the prior application.

**G    Filing Fee**

The filing **>fees< for a CPA are the basic filing fee as set forth in 37 CFR 1.16(b)(1), the search fee as set forth in 37 CFR 1.16(l), and the examination fee as set forth in 37 CFR 1.16(p)<. See 37 CFR 1.53(d)(3).

A general authorization to charge fees to a deposit account which was filed in the prior application carries over from the prior nonprovisional application to a CPA. Thus, where a general authorization to charge fees to a deposit account was filed in the prior application the TC should charge the necessary filing fee of the CPA to the deposit account.

Where a general authorization to charge fees to a deposit account was filed in the prior application and applicant desires to file a CPA without paying the filing fee on the filing date of the application, applicant may file the CPA with specific instructions revoking the general authorization filed in the prior application.

Where a filing date has been assigned to a CPA, but the basic filing fee *>, search fee, and examination fee are< insufficient or >have< been omitted, applicant will be so notified by the TC and given a period of time in which to file the missing fee(s)< and to pay the surcharge set forth in 37 CFR 1.16(*>f<) in order to prevent abandonment of the application. >For CPAs filed on or after December 8, 2004 but prior to July 1, 2005, which have been accorded a filing date under 37 CFR 1.53(d), if the search and/or examination fees are paid on a date later than the filing date of the application, the surcharge under 37 CFR 1.16(f) is not required. For CPAs filed on or after July 1, 2005, which have been accorded a filing date under 37 CFR 1.53(d), if any of the basic filing fee, search fee, or examination fee are paid on a date later than the filing date of the CPA, the surcharge under 37 CFR 1.16(f) is required.< The time period usually set is 2 months from the date of notification. This time period is subject to the provisions of 37 CFR 1.136(a). A CPA will not be placed upon the files for examination until all of its required parts, including the >basic< filing fee **>, search fee, examination fee, and any necessary surcharge,< are received. See 37 CFR 1.53(h). Thus, it would be inappropriate to conduct an interview or to issue an action on the merits in the CPA until the >basic< filing fee **>, search fee, examination fee, and any necessary surcharge,< are received.

**Small Entity Status**

Small entity status established in the parent application does not automatically carry over to a CPA. Status as a small entity must be specifically established in every application in which the status is available and desired. 37 CFR 1.27(c)(4) provides that the refiling of an application as a continued prosecution application under 37 CFR 1.53(d) requires a new assertion of continued entitlement to small entity status.

Because small entity status does not automatically carry over from the prior application to the CPA, unless the request for a CPA specifically indicates that the filing fee is to be charged in the small entity amount or otherwise includes an assertion of entitlement to small entity status, the large entity filing fee should be charged.

**H.    Extensions of Time**

If an extension of time is necessary to establish continuity between the prior application and the CPA, the petition for extension of time should be filed as a separate paper directed to the prior nonprovisional application. However, a CPA is not improper simply because the request for a CPA is combined in a single paper with a petition for extension of time. The "separate paper" requirement of 37 CFR 1.53(d)(2) is intended to preclude an applicant from burying a request for a CPA in a paper submitted primarily for another purpose, e.g., within an amendment after final for the prior application.

While the filing of a CPA is not strictly a reply to an Office action mailed in a prior application, a request for a CPA is a paper directed to and placed in the file of the prior application, and seeks to take action in (i.e., expressly abandon) the prior application. Thus, it will be considered a "reply" for purposes of 37 CFR 1.136(a)(3). As a result, an authorization in the prior application to charge all required fees, fees under 37 CFR 1.17, or all required extension of time fees to a deposit account or to a credit card (See MPEP § 509) will be treated as a constructive petition for an extension of time in the prior application for the purpose of establishing continuity with the CPA. The correct extension fee to be charged in the prior application would be the extension fee necessary to establish continuity between the prior application and the CPA on the filing date of the CPA.

If an extension of time directed to the prior application is filed as a separate paper, it must be accompanied by its own certificate of mailing under 37 CFR 1.8 (if mailed by first class mail) or under 37 CFR 1.10 (if mailed by Express Mail), if the benefits of those rules are desired.

**I.    Notice of CPA Filing**

Since a "Notice of Abandonment" is not mailed in the prior application as a result of the filing of a CPA nor is a filing receipt normally mailed for a CPA, the examiner should advise the applicant that a request for a CPA has been granted by including form paragraph 2.30 in the first Office action of the CPA.

**201.06(d)**                MANUAL OF PATENT EXAMINING PROCEDURE

**>

¶ *2.30 CPA Status Acceptable (for Design Applications)*

The request filed on [1] for a Continued Prosecution Application (CPA) under 37 CFR 1.53(d) based on parent Application No. [2] is acceptable and a CPA has been established. An action on the CPA follows.

**Examiner Note:**

1. Use this form paragraph in the first Office action of a CPA to advise the applicant that a request for a CPA is acceptable and that a CPA has been established. This notice should be given, since applicant is not notified of the abandonment of the parent nor is a filing receipt normally sent for a CPA. If the request for a CPA in a utility or plant application is improper and the CPA has been treated as an RCE, do not use this form paragraph (use form paragraph 7.42.15 instead). See MPEP § 706.07(h).

2. In bracket 1 insert the filing date of the request for a CPA.

3. In bracket 2 insert the Application Number of the parent application.

<

A "conditional" request for a CPA will not be permitted. Any "conditional" request for a CPA submitted <u>as a separate paper</u> with an amendment after final in an application will be treated as an unconditional request for a CPA of the application. This will result (by operation of 37 CFR 1.53(d)(2)(v)) in the abandonment of the prior application, and (if so instructed in the request for a CPA) the amendment after final in the prior application will be treated as a preliminary amendment in the CPA. The examiner should advise the applicant that a "conditional" request for a CPA has been treated as an unconditional request for a CPA and has been accepted by including form paragraph 2.35 in the first Office action of the CPA.

**>

¶ *2.35 CPA Status Acceptable - Conditional Request (for Design Applications)*

Receipt is acknowledged of the "conditional" request for a Continued Prosecution Application (CPA) filed on 37 CFR 1.53(d) based on prior Application No. [2]. Any "conditional" request for a CPA submitted as a separate paper is treated as an unconditional request for a CPA. Accordingly, the request for a CPA application is acceptable and a CPA has been established. An action on the CPA follows.

**Examiner Note:**

1. Use this form paragraph in the first Office action of a CPA to advise the applicant that a "conditional" request for a CPA is treated as an unconditional request and the CPA is acceptable and that a CPA has been established. This notice should be given, since applicant is not notified of the abandonment of the parent

nor is a filing receipt normally sent for a CPA. If the request for a CPA in a utility or plant application is improper and the CPA has been treated as an RCE, do not use this form paragraph (use form paragraph 7.42.15 instead). See MPEP § 706.07(h).

2. In bracket 1 insert the filing date of the request for a CPA.

3. In bracket 2 insert the Application Number identified in the CPA request.

<

Where the examiner recognizes that a paper filed in the prior application contains a request for a CPA, but the request is not in a separate paper, the examiner should, if possible, contact applicant by telephone to notify applicant that the request for a CPA is ineffective or notify the applicant in the next Office action that the CPA request is ineffective by using form paragraph 2.31.

**>

¶ *2.31 CPA Status Not Acceptable - Request Not on Separate Paper*

Receipt is acknowledged of the request for a Continued Prosecution Application (CPA) filed on [1] under 37 CFR 1.53(d) based on Application No. [2]. However, because the request was not submitted on a separate paper as required by 37 CFR 1.53(d)(2), the request is not acceptable and no CPA has been established.

**Examiner Note:**

1. Use this form paragraph to inform applicant that a request for a CPA in a design application is not in compliance with 37 CFR 1.53(d)(2) and, therefore, no CPA has been established.

2. In bracket 1 insert the filing date of the paper containing the request for a CPA.

3. In bracket 2 insert the Application Number identified in the CPA request.

<

**J.    Inventorship**

The inventive entity set forth in the prior nonprovisional application automatically carries over into the CPA <u>UNLESS</u> the request for a CPA is accompanied by or includes on filing a statement requesting the deletion of the name or names of the person or persons who are not inventors of the invention being claimed in the CPA. 37 CFR 1.53(d)(4). The statement requesting the deletion of the names of the person or persons who are not inventors in the continuation or divisional application must be signed by person(s) authorized pursuant to 37 CFR 1.33(b) to sign an amendment in the continuation or divisional application. The examiner should acknowledge receipt of a statement filed with a CPA requesting the

deletion of the name or names of the person or persons who are not inventors of the invention being claimed in the CPA in the first Office action in the CPA by using form paragraph 2.32.

**¶ 2.32 Request To Delete a Named Inventor**

Receipt is acknowledged of the statement requesting that [1] be deleted as a named inventor which was filed with the Continued Prosecution Application (CPA) on [2]. The inventorship has been corrected as requested.

**Examiner Note:**

1. Use this form paragraph where a Continued Prosecution Application (CPA) is filed accompanied by a statement requesting deletion of the name or names of the person or persons who are not inventors of the invention being claimed in the new application. Any request to delete a named inventor in a CPA filed after the CPA is filed must be accompanied by a request under 37 CFR 1.48.

2. In bracket 1 insert the name or names of the inventor(s) requested to be deleted.

3. In bracket 2 insert the filing date of the CPA.

After the first Office action is mailed, the application file should be sent to OIPE for revision of its records to reflect the change of inventorship. For paper application files, the examiner should note the change of inventorship on the original oath or declaration by writing in red ink in the left column "See Paper No. ___ for inventorship changes." See MPEP § 201.03 and § 605.04(g). For Image File Wrapper (IFW) processing, see the IFW Manual. Any request by applicant for a corrected filing receipt to show the change in inventorship should not be submitted until after the examiner has acknowledged the change in inventorship in an Office action. Otherwise, the "corrected" filing receipt may not show the change in inventorship.

The inventive entity of the CPA will be the same as the inventive entity of the prior application even if the CPA papers include a transmittal letter or a new oath or declaration naming an inventor not named in the prior application. However, the new oath or declaration will be placed in the application file. Upon review of the application, the examiner will notify the applicant in the first Office action using form paragraph 2.33 that the inventive entity of the prior application has been carried over into the CPA. If the inventive entity set forth in the transmittal letter of the new oath or declaration is desired, then a request under 37 CFR 1.48 along with the required fee set forth in 37 CFR 1.17(i) must be filed. No new oath or

declaration need be filed with the later-filed request under 37 CFR 1.48 if such was submitted on filing of the CPA. If a request under 37 CFR 1.48 is not filed, it should be noted that the filing in a CPA of a transmittal letter or a new oath or declaration containing an inventor not named in the prior nonprovisional application may result in the claims in the CPA being rejected under 35 U.S.C. 102(f).

**¶ 2.33 New Inventor Identified**

It is noted that [1] identified as a named inventor in the Continued Prosecution Application (CPA) filed under 37 CFR 1.53(d) on [2], but no request under 37 CFR 1.48, as is required, was filed to correct the inventorship. Any request to add an inventor must be in the form of a request under 37 CFR 1.48. Otherwise, the inventorship in the CPA shall be the same as in the prior application.

**Examiner Note:**

1. Use this form paragraph where a request for a Continued Prosecution Application (CPA) identifies one or more inventors who were not named as inventors in the prior application on the filing date of the CPA.

2. In bracket 1 insert the name or names of the inventor(s) requested to be added followed by either —was— or —were—, as appropriate.

3. In bracket 2 insert the filing date of the CPA.

## III.    EXAMINATION OF CPAs

### A.    Benefit of Earlier Filing Date

A request for a CPA is a specific reference under 35 U.S.C. 120 to every application assigned the application number identified in the request, and 37 CFR 1.78(a)(2) provides that a request for a CPA is the specific reference under 35 U.S.C. 120 to the prior application. That is, the CPA includes the request for an application under 37 CFR 1.53(d) and the recitation of the application number of the prior application in such request is the "specific reference to the earlier filed application" required by 35 U.S.C. 120. No further amendment to the specification of the CPA nor a reference in the CPA's application data sheet is required by 35 U.S.C. 120 or 37 CFR 1.78(a) to identify or reference the prior application, as well as any other application assigned the application number of the prior application (e.g., in instances in which a CPA is the last in a chain of CPAs).

Where an application claims a benefit under 35 U.S.C. 120 of a chain of applications, the application must make a reference to the first (earliest) application and every intermediate application. See

201.06(d)                    MANUAL OF PATENT EXAMINING PROCEDURE

*Sampson v. Ampex Corp.*, 463 F.2d 1042, 1044-45, 174 USPQ 417, 418-19 (2d Cir. 1972); *Sticker Indus. Supply Corp. v. Blaw-Knox Co.*, 405 F.2d 90, 93, 160 USPQ 177, 179 (7th Cir. 1968); *Hovlid v. Asari*, 305 F.2d 747, 751, 134 USPQ 162, 165 (9th Cir. 1962). See also MPEP § 201.11. In addition, every intermediate application must also make a reference to the first (earliest) application and every application after the first application and before such intermediate application.

In the situation in which there is a chain of CPAs, each CPA in the chain will, by operation of 37 CFR 1.53(d)(7), contain the required specific reference to its immediate prior application, as well as every other application assigned the application number identified in such request. Put simply, a specific reference to a CPA by application number and filing date will constitute a specific reference to: (A) the non-continued prosecution application originally assigned such application number (the prior application as to the first CPA in the chain); and (B) every CPA assigned the application number of such non-continued prosecution application.

Where the non-continued prosecution application originally assigned such application number itself claims the benefit of a prior application or applications under 35 USC 119(e), 120, 121, or 365(c), 37 CFR 1.78(a)(2) and (a)(5) continue to require that such application contain a reference to any such prior application(s). The reference(s) can be in an application data sheet (37 CFR 1.76) or in the first sentence(s) of the specification. See 37 CFR 1.78(a)(2) and (a)(5). As a CPA uses the application file of the prior application, a specific reference in the prior application (as to the CPA) will constitute a specific reference in the CPA, as well as every CPA in the event that there is a chain of CPAs.

Where an applicant in an application filed under 37 CFR 1.53(b) seeks to claim the benefit of a CPA under 35 U.S.C. 120 or 121 (as a continuation, divisional, or continuation-in-part), 37 CFR 1.78(a)(2) requires a reference to the CPA by application number in the first sentence(s) of such application unless such reference is made in an application data sheet. 37 CFR 1.78(a)(2) provides that "[t]he identification of an application by application number under this section is the specific reference required by 35 U.S.C. 120 to every application assigned that application

number." Thus, where a referenced CPA is in a chain of CPAs, this reference will constitute a reference under 35 U.S.C. 120 and 37 CFR 1.78(a)(2) to every CPA in the chain as well as the non-continued prosecution application originally assigned such application number.

Therefore, regardless of whether an application is filed under 37 CFR 1.53(b) or (d), a claim under 35 U.S.C. 120 to the benefit of a CPA is, by operation of 37 CFR 1.53(d)(7) and 37 CFR 1.78(a)(2), a claim to every application assigned the application number of such CPA. In addition, applicants will not be permitted to choose to delete such a claim as to certain applications assigned that application number (e.g., for patent term purposes). See 37 CFR 1.53(d)(7).

Further, an applicant in a CPA is not permitted to amend the first sentence(s) of the specification to provide the specific reference to the prior application, or to provide such a reference in an application data sheet. Any such amendment will not be entered. The applicant should be advised in the next Office action that any such amendment to the specification or reference in the application data sheet has not been entered by using form paragraph 2.34 **. See 37 CFR 1.78(a)(2).

**>

¶    2.34   *Reference in CPA to Prior Application (by Amendment to the Specification)*

The amendment filed [1] requesting that the specification be amended to refer to the present Continued Prosecution Application (CPA) as a [2] application of Application No. [3] has not been entered. As set forth in 37 CFR 1.53(d)(7), a request for a CPA is the specific reference required by 35 U.S.C. 120 to every application assigned the application number identified in such request. Thus, there is no need to amend the first sentence(s) of the specification to refer back to the prior application and any such amendment shall be denied entry.

**Examiner Note:**

1.    Use this form paragraph to inform the applicant that an amendment to the first sentence(s) of the specification referring to the CPA as a continuing application of the prior application has not been entered and will not be entered if submitted again.

2.    In bracket 1, insert the filing date of the amendment.

3.    In bracket 2, insert either --continuation-- or --divisional--.

4.    In bracket 3, insert the Application Number of the prior non-provisional application.

<

Claims under 35 U.S.C. 119(a)-(d) and (e) for the benefit of the filing dates of earlier applications in a

parent application will automatically carry over to a CPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**B.    Terminal Disclaimer**

A terminal disclaimer filed in the parent application carries over to a CPA. The terminal disclaimer filed in the parent application carries over because the CPA retains the same application number as the parent application, i.e., the application number to which the previously filed terminal disclaimer is directed. If applicant does not want the terminal disclaimer to carry over to the CPA, applicant must file a petition under 37 CFR 1.182 along with the required petition fee, requesting the terminal disclaimer filed in the parent application not be carried over to the CPA. See MPEP § 1490, "Withdrawing a Terminal Disclaimer," subheading entitled "A. Before Issuance of Patent."

**C.    Prior Election**

An election made in the prior application carries over to the CPA only if all of the following conditions are met: (A) the CPA is designated as a continuation or is not designated at all (i.e., the CPA is NOT designated as a divisional); (B) there was an express election by the applicant in reply to a restriction requirement in the prior application; (C) the CPA presents claim(s) drawn only to invention(s) claimed in the prior application; and (D) the CPA does not contain an indication that a shift in election is desired.

Where all of the conditions are met, the examiner's first action should repeat the restriction requirement made in the prior application to the extent it is still applicable in the CPA and include a statement that prosecution is being continued on the invention elected and prosecuted by applicant in the prior application.

**D.    Information Disclosure Statements and Preliminary Amendments**

All information disclosure statements filed in the prior application that comply with the content requirements of 37 CFR 1.98 will be considered in a CPA by the examiner. No specific request that the previously submitted information be considered in a CPA is required.

In addition, all information disclosure statements that comply with the content requirements of 37 CFR 1.98 and are filed before the mailing of a first Office

action on the merits will be considered by the examiner, regardless of whatever else has occurred in the examination process up to that point in time. The submission of an information disclosure statement after the first Office action is mailed could delay prosecution. Therefore, applicants are encouraged to file any information disclosure statement in a CPA as early >as< possible, preferably at the time of filing the CPA. For further discussion of information disclosure statements, see MPEP § 609.

Applicants are also encouraged to file all preliminary amendments at the time of filing a CPA because the entry of any preliminary amendment filed after the filing date of the CPA could be denied under 37 CFR 1.115 if the preliminary amendment unduly interferes with the preparation of a first Office action. See MPEP § 714.03(a). In a situation where the applicant needs more time to prepare a preliminary amendment or to file an information disclosure statement, applicant can request a three-month suspension of action under 37 CFR 1.103(b). The three-month suspension of action under 37 CFR 1.103(b) must be filed at the time of filing a CPA. See MPEP § 709.

**E.    Copies of Affidavits**

Affidavits and declarations, such as those under 37 CFR 1.130, 1.131 and 1.132 filed during the prosecution of the parent nonprovisional application, automatically become a part of the CPA. Therefore, no copy of the original affidavit or declaration filed in the parent nonprovisional application need be filed in the CPA.

**IV.    PUBLIC ACCESS TO CPAs**

**A.    Waiver of Confidentiality**

A CPA is construed to include a waiver of confidentiality by the applicant under 35 U.S.C. 122 to the extent that any member of the public who is entitled under the provisions of 37 CFR 1.14 to obtain access to, copies of, or information concerning either the prior application or any continuing application filed under the provisions of 37 CFR 1.53(d) may be given similar access, to copies of, or similar information concerning, the other application(s) in the application file. 37 CFR 1.53(d)(6). However, all applications in the file jacket of a pending CPA are treated as pending, rather than abandoned, in determining whether

copies of, and access to, such applications will be granted. ** For Image File Wrapper (IFW) processing, see IFW Manual. See MPEP § 103 for further discussion of access to an abandoned application contained in the file of a pending CPA.

**B.    Certified Copy**

A certified copy of a CPA will be prepared by the Certification Branch upon request. The certified copy will consist of a copy of the most recent non-continued prosecution application in the chain of CPAs. The filing date of the CPA will be shown in the certified copy as the filing date of the most recent non-continued prosecution application in the chain of CPAs.

**V.    FORMS**

Form PTO/SB/29, "For Design Applications Only: Continued Prosecution Application (CPA) Request

Transmittal" and Form PTO/SB/29A, "For Design Applications Only: Receipt For Facsimile Transmitted CPA" may be used by applicant for filing a CPA under 37 CFR 1.53(d). The forms used by the TCs to notify applicants of defects regarding applications filed under 37 CFR 1.53(d) are shown below. "Notice of Improper CPA (or FWC) Filing For Utility or Plant Applications Filed Before June 8, 1995" Form PTO-2011; "Notice of Improper CPA For Design Applications" Form PTO-2012; "Notice To File Missing Parts Of Application (CPA), For Design Applications" Form PTO-2021; "Notice Of Incomplete Reply (CPA) For Design Applications" Form PTO-2018; and "Notice Of Abandonment Under 37 CFR 1.53(f) (CPA) For Design Applications" Form PTO-2019.

## 201.07    Continuation Application [R-3]

A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented. The continuation application may be filed under 37 CFR 1.53(b) (or 1.53(d) if the application is a design application). The applicant in the continuation application must include at least one inventor named in the prior nonprovisional application. The disclosure presented in the continuation must be the same as that of the original application; i.e., the continuation should not include anything which would constitute new matter if inserted in the original application. The continuation application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 120 or 365(c). >For more information on claiming the benefit of a prior nonprovisional application, see MPEP § 201.11.<

An application claiming the benefits of a provisional application under 35 U.S.C. 119(e) should not be called a "continuation" of the provisional application since an application that claims benefit of a provisional application is a nonprovisional application of a provisional application, not a continuation, division, or continuation-in-part of the provisional application.

At any time before the patenting or abandonment of or termination of proceedings on his or her earlier nonprovisional application, an applicant may have recourse to filing a continuation in order to introduce into the application a new set of claims and to establish a right to further examination by the primary examiner. *>A continued prosecution< application >(CPA)< under 37 CFR 1.53(d) >(available only for design applications)<, however, must be filed prior to payment of the issue fee unless a petition under 37 CFR 1.313(c) is granted in the prior application. In addition, a continuation or divisional application may only be filed under 37 CFR 1.53(d) if the prior nonprovisional application is a design application that is complete as defined by 37 CFR 1.51(b).

For notation to be put in the file history by the examiner in the case of a continuation application, see MPEP § 202.02.

Use form paragraph 2.05 to remind applicant of possible continuation status.

¶ 2.05 Possible Status as Continuation

This application discloses and claims only subject matter disclosed in prior application no [1], filed [2], and names an inventor or inventors named in the prior application. Accordingly, this application may constitute a continuation or division. Should applicant desire to obtain the benefit of the filing date of the prior application, attention is directed to 35 U.S.C. 120 and 37 CFR 1.78.

Examiner Note:

1.    This form paragraph should only be used if it appears that the application may be a continuation, but priority has not been properly established.

2.    An application claiming the benefits of a provisional application under 35 U.S.C. 119(e) should not be called a "continuation" of the provisional application since an application that claims benefit of a provisional application is a nonprovisional application of a provisional application, not a continuation, division, or continuation-in-part of the provisional application.

## 201.08    Continuation-in-Part Application [R-3]

A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and *adding matter not disclosed* in the said earlier nonprovisional application. (*In re Klein*, 1930 C.D. 2, 393 O.G. 519 (Comm'r Pat. 1930)). The continuation-in-part application may only be filed under 37 CFR 1.53(b). The continuation-in-part application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 120 or 365(c). >For more information on claiming the benefit of a prior nonprovisional application, see MPEP § 201.11.<

A continuation-in-part application CANNOT be filed as a continued prosecution application (CPA) under 37 CFR 1.53(d).

An application claiming the benefit of a provisional application under 35 U.S.C. 119(e) should not be called a "continuation-in-part" of the provisional application since an application that claims benefit of a provisional application is a nonprovisional application of a provisional application, not a continuation, division, or continuation-in-part of the provisional application.

The mere filing of a continuation-in-part does not itself create a presumption that the applicant acquiesces in any rejections which may be outstanding in the copending national nonprovisional application or

"correlating" step. 370 F.3d at 1362, 71 USPQ2d at 1087. The recitation of the intended use of "detecting" a vitamin deficiency in the preamble rendered the claimed invention a method for "detecting," and, thus, was not limited to detecting "elevated" levels. *Id.*

See also *Catalina Mktg. Int'l v. Coolsavings.com, Inc.,* 289 F.3d at 808-09, 62 USPQ2d at 1785 ("[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention.... Without such reliance, however, a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." Consequently, "preamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant."). In *Poly-America LP v. GSE Lining Tech. Inc.,* 383 F.3d 1303, 1310, 72 USPQ2d 1685, 1689 (Fed. Cir. 2004), the court stated that "a '[r]eview of the entirety of the '047 patent reveals that the preamble language relating to 'blown-film' does not state a purpose or an intended use of the invention, but rather discloses a fundamental characteristic of the claimed invention that is properly construed as a limitation of the claim...." Compare *Intirtool, Ltd. v. Texar Corp.,* 369 F.3d 1289, 1294-96, 70 USPQ2d 1780, 1783-84 (Fed. Cir. 2004) (holding that the preamble of a patent claim directed to a "hand-held punch pliers for simultaneously punching and connecting overlapping sheet metal" was not a limitation of the claim because (i) the body of the claim described a "structurally complete invention" without the preamble, and (ii) statements in prosecution history referring to "punching and connecting" function of invention did not constitute "clear reliance" on the preamble needed to make the preamble a limitation).<

## 2111.03   Transitional Phrases [R-3]

The transitional phrases "comprising", "consisting essentially of" and "consisting of" define the scope of a claim with respect to what unrecited additional components or steps, if any, are excluded from the scope of the claim.

>The transitional term "comprising," which is synonymous with "including," "containing," or "characterized by," is inclusive or open-ended and does not exclude additional, unrecited elements or method steps. See, e.g., >*Mars Inc. v. H.J. Heinz Co.,* 377 F.3d 1369, 1376, 71 USPQ2d 1837, 1843 (Fed. Cir. 2004) ("like the term 'comprising,' the terms 'containing' and 'mixture' are open-ended.").<*Invitrogen Corp. v. Biocrest Mfg., L.P.,* 327 F.3d 1364, 1368, 66 USPQ2d 1631, 1634 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps."); *Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501, 42 USPQ2d 1608, 1613 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 229 USPQ 805 (Fed. Cir. 1986); *In re Baxter,* 656 F.2d 679, 686, 210 USPQ 795, 803 (CCPA 1981); *Ex parte Davis,* 80 USPQ 448, 450 (Bd. App. 1948) ("comprising" leaves "the claim open for the inclusion of unspecified ingredients even in major amounts"). >In *Gillette Co. v. Energizer Holdings Inc.,* 405 F.3d 1367, 1371-73, 74 USPQ2d 1586, 1589-91 (Fed. Cir. 2005), the court held that a claim to "a safety razor blade unit comprising a guard, a cap, and a group of first, second, and third blades" encompasses razors with more than three blades because the transitional phrase "comprising" in the preamble and the phrase "group of" are presumptively open-ended. "The word 'comprising' transitioning from the preamble to the body signals that the entire claim is presumptively open-ended." *Id.* In contrast, the court noted the phrase "group consisting of" is a closed term, which is often used in claim drafting to signal a "Markush group" that is by its nature closed. *Id.* The court also emphasized that reference to "first," "second," and "third" blades in the claim was not used to show a serial or numerical limitation but instead was used to distinguish or identify the various members of the group. *Id.*<

The transitional phrase "consisting of" excludes any element, step, or ingredient not specified in the claim. *In re Gray,* 53 F.2d 520, 11 USPQ 255 (CCPA 1931); *Ex parte Davis,* 80 USPQ 448, 450 (Bd. App. 1948) ("consisting of" defined as "closing the claim to the inclusion of materials other than those recited

Rev. 3, August 2005

except for impurities ordinarily associated therewith."). But see *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331-32, 70 USPQ2d 1508, 1516 (Fed. Cir. 2004) (holding that a bone repair kit "consisting of" claimed chemicals was infringed by a bone repair kit including a spatula in addition to the claimed chemicals because the presence of the spatula was unrelated to the claimed invention). A claim which depends from a claim which "consists of" the recited elements or steps cannot add an element or step. When the phrase "consists of" appears in a clause of the body of a claim, rather than immediately following the preamble, it limits only the element set forth in that clause; other elements are not excluded from the claim as a whole. *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 230 USPQ 45 (Fed. Cir. 1986). >See also *In re Crish*, 393 F.3d 1253, 73 USPQ2d 1364 (Fed. Cir. 2004) (The claims at issue "related to purified DNA molecules having promoter activity for the human involucrin gene (hINV)." *Id.*, 73 USPQ2d at 1365. In determining the scope of applicant's claims directed to "a purified oligonucleotide comprising at least a portion of the nucleotide sequence of SEQ ID NO:1 wherein said portion consists of the nucleotide sequence from ... to 2473 of SEQ ID NO:1, and wherein said portion of the nucleotide sequence of SEQ ID NO:1 has promoter activity," the court stated that the use of "consists" in the body of the claims did not limit the open-ended "comprising" language in the claims (emphases added). *Id.* at 1257, 73 USPQ2d at 1367. The court held that the claimed promoter sequence designated as SEQ ID NO:1 was obtained by sequencing the same prior art plasmid and was therefore anticipated by the prior art plasmid which necessarily possessed the same DNA sequence as the claimed oligonucleotides. *Id.* at 1256 and 1259, 73 USPQ2d at 1366 and 1369. The court affirmed the Board's interpretation that the transition phrase "consists" did not limit the claims to only the recited numbered nucleotide sequences of SEQ ID NO:1 and that "the transition language 'comprising' allowed the claims to cover the entire involucrin gene plus other portions of the plasmid, as long as the gene contained the specific portions of SEQ ID NO:1 recited by the claim[s]". *Id.* at 1256, 73 USPQ2d at 1366.<

The transitional phrase "consisting essentially of" limits the scope of a claim to the specified materials

or steps "and those that do not materially affect the basic and novel characteristic(s)" of the claimed invention. *In re Herz*, 537 F.2d 549, 551-52, 190 USPQ 461, 463 (CCPA 1976) (emphasis in original) (Prior art hydraulic fluid required a dispersant which appellants argued was excluded from claims limited to a functional fluid "consisting essentially of" certain components. In finding the claims did not exclude the prior art dispersant, the court noted that appellants' specification indicated the claimed composition can contain any well-known additive such as a dispersant, and there was no evidence that the presence of a dispersant would materially affect the basic and novel characteristic of the claimed invention. The prior art composition had the same basic and novel characteristic (increased oxidation resistance) as well as additional enhanced detergent and dispersant characteristics.). A "consisting essentially of" claim occupies a middle ground between closed claims that are written in a "consisting of" format and fully open claims that are drafted in a "comprising" format." *PPG Industries v. Guardian Industries*, 156 F.3d 1351, 1354, 48 USPQ2d 1351, 1353-54 (Fed. Cir. 1998). See also *Atlas Powder v. E.I. duPont de Nemours & Co.*, 750 F.2d 1569, 224 USPQ 409 (Fed. Cir. 1984); *In re Janakirama-Rao*, 317 F.2d 951, 137 USPQ 893 (CCPA 1963); *Water Technologies Corp. vs. Calco, Ltd.*, 850 F.2d 660, 7 USPQ2d 1097 (Fed. Cir. 1988). For the purposes of searching for and applying prior art under 35 U.S.C. 102 and 103, absent a clear indication in the specification or claims of what the basic and novel characteristics actually are, "consisting essentially of" will be construed as equivalent to "comprising." See, e.g., *PPG*, 156 F.3d at 1355, 48 USPQ2d at 1355 ("PPG could have defined the scope of the phrase 'consisting essentially of' for purposes of its patent by making clear in its specification what it regarded as constituting a material change in the basic and novel characteristics of the invention."). See also *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1240-41, 68 USPQ2d 1280, 1283-84 (Fed. Cir. 2003) (Applicant's statement in the specification that "silicon contents in the coating metal should not exceed about 0.5% by weight" along with a discussion of the deleterious effects of silicon provided basis to conclude that silicon in excess of 0.5% by weight would materially alter the basic and novel properties of the invention. Thus, "consisting

essentially of" as recited in the preamble was interpreted to permit no more than 0.5% by weight of silicon in the aluminum coating.); *In re Janakirama-Rao*, 317 F.2d 951, 954, 137 USPQ 893, 895-96 (CCPA 1963). If an applicant contends that additional steps or materials in the prior art are excluded by the recitation of "consisting essentially of," applicant has the burden of showing that the introduction of additional steps or components would materially change the characteristics of applicant's invention. *In re De Lajarte*, 337 F.2d 870, 143 USPQ 256 (CCPA 1964). See also *Ex parte Hoffman*, 12 USPQ2d 1061, 1063-64 (Bd. Pat. App. & Inter. 1989) ("Although 'consisting essentially of' is typically used and defined in the context of compositions of matter, we find nothing intrinsically wrong with the use of such language as a modifier of method steps. . . [rendering] the claim open only for the inclusion of steps which do not materially affect the basic and novel characteristics of the claimed method. To determine the steps included versus excluded the claim must be read in light of the specification. . . . [I]t is an applicant's burden to establish that a step practiced in a prior art method is excluded from his claims by 'consisting essentially of' language.").

**OTHER TRANSITIONAL PHRASES**

Transitional phrases such as "having" must be interpreted in light of the specification to determine whether open or closed claim language is intended. See, e.g., *Lampi Corp. v. American Power Products Inc.*, 228 F.3d 1365, 1376, 56 USPQ2d 1445, 1453 (Fed. Cir. 2000) (The term "having" was interpreted as open terminology, allowing the inclusion of other components in addition to those recited); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l Inc.*, 246 F.3d 1336, 1348, 57 USPQ2d 1953, 1959 (Fed. Cir. 2001) (term "having" in transitional phrase "does not create a presumption that the body of the claim is open"); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1573, 43 USPQ2d 1398, 1410 (Fed. Cir. 1997) (In the context of a cDNA having a sequence coding for human PI, the term "having" still permitted inclusion of other moieties.). The transitional phrase "composed of" has been interpreted in the same manner as either "consisting of" or "consisting essentially of," depending on the facts of the particular case. See *AFG Industries, Inc. v. Cardi-*

*nal IG Company*, 239 F.3d 1239, 1245, 57 USPQ2d 1776, 1780-81 (Fed. Cir. 2001) (based on specification and other evidence, "composed of" interpreted in same manner as "consisting essentially of"); *In re Bertsch*, 132 F.2d 1014, 1019-20, 56 USPQ 379, 384 (CCPA 1942) ("Composed of" interpreted in same manner as "consisting of"; however, court further remarked that "the words 'composed of' may under certain circumstances be given, in patent law, a broader meaning than 'consisting of.'").
>

## 2111.04  "Adapted to," "Adapted for," "Wherein," and "Whereby" Clauses [R-3]

Claim scope is not limited by claim language that suggests or makes optional but does not require steps to be performed, or by claim language that does not limit a claim to a particular structure. However, examples of claim language, although not exhaustive, that may raise a question as to the limiting effect of the language in a claim are:

(A) "adapted to" or "adapted for" clauses;

(B) "wherein" clauses; and

(C) "whereby" clauses.

The determination of whether each of these clauses is a limitation in a claim depends on the specific facts of the case. In *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329, 74 USPQ2d 1481, 1483 (Fed. Cir. 2005), the court held that when a "'whereby' clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention." *Id.* However, the court noted (quoting *Minton v. Nat'l Ass'n of Securities Dealers, Inc.*, 336 F.3d 1373, 1381, 67 USPQ2d 1614, 1620 (Fed. Cir. 2003)) that a "'whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited.'" *Id.*<

## 2112  Requirements of Rejection Based on Inherency; Burden of Proof [R-3]

The express, implicit, and inherent disclosures of a prior art reference may be relied upon in the rejection of claims under 35 U.S.C. 102 or 103. "The inherent teaching of a prior art reference, a question of fact,