## MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

June 12, 2006

The Honorable Kent A. Jordan  **BY ELECTRONIC FILING**
United States District Court
844 King Street
Wilmington, DE 19801

Re:   *Pharmacia & Upjohn Company LLC v. Sicor, Inc. et al.* C.A. No. 04-833 (KAJ)

Dear Judge Jordan:

Sicor continues to seek the depositions of Daniel Boehnen and Emily Miao, despite depositions of the inventors of the subject matter of the '285 patent and prior prosecuting attorney showing that they have no information relevant to Sicor's affirmative defenses and counterclaims. Furthermore, Sicor chose to forego means of obtaining more relevant evidence from other sources. In short, Sicor cannot satisfy any of the three prongs of the *Shelton* test and the protective order against the depositions of Mr. Boehnen and Dr. Miao should not be lifted. *See Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987) (depositions of opposing counsel should be permitted only when the requesting party has shown that: (1) there is no other means to obtain the information other than by deposition of opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial for the requesting party's case).

Sicor has taken the depositions of Richard Kelly, the attorney of record for most of the prosecution of the '285 patent, and inventors Roberto De Ponti and Luciano Gambini. It has also taken testimony from inventors Giuseppe Bottoni, Gaetano Gatti, and Diego Oldani. It was unable to take testimony from inventor Carlo Confalonieri, but Dr. Confalonieri's unavailability arose out of Sicor's own delay.[1]

Mr. Boehnen and Dr. Miao Do Not Have Crucial Information

Sicor seeks to have the Court lift its Protective Order because it accuses Mr. Boehnen and Dr. Miao of inequitable conduct. There simply is no basis for Sicor's allegations against Mr. Boehnen and Dr. Miao, as they were not the individuals involved in the actions purported to underlie the alleged inequitable conduct:

---

[1]   It appears that Dr. Confalonieri was fit to testify up until mere weeks before Sicor obtained involuntary inventor testimony. Had Sicor not delayed seeking that testimony for ten months after the filing of this action (and six months after telling the Court it needed it), it would have obtained Dr. Confalonieri's testimony. Pharmacia was available at all times for Dr. Confalonieri's testimony to be taken.

The Honorable Kent A. Jordan
June 12, 2006, Page 2

- Sicor alleges that Mr. Boehnen somehow committed inequitable conduct in relation to declarations by Dr. Carlo Confalonieri. Notably, in its pleadings and interrogatory answers, Sicor has identified only one declaration – submitted twice – that it has argued forms the basis of an inequitable conduct charge.[2] Ex. 1, ¶¶ 23, 43-44; Ex. 2, p. 10-12.  **_But Mr. Boehnen was not involved in the prosecution of the '285 patent at the time that the declaration was drafted and filed, nor did he make any argument based on it._**  Mr. Kelly was the attorney who had been involved in prosecution at the time of the submission of the declarations and made arguments based on them, and was scarcely questioned about them. For the convenience of the Examiner, Mr. Boehnen merely resubmitted all of the declarations in the case, but did not make arguments based upon those declarations. Ex. 3. Furthermore, even in Sicor's "kitchen sink" approach to claims of inequitable conduct, Sicor accused only Dr. Confalonieri and Mr. Kelly of misconduct related to Dr. Confalonieri's declarations. Ex. 2, p. 10-12.

- Sicor alleges that Dr. Confalonieri submitted declarations to the Danish and Norwegian patent offices that conflict with purported arguments made by Mr. Boehnen. Sicor's allegation is remarkable **_because Sicor has never raised it before, and has never identified any arguments with which foreign declarations conflicted._** Sicor accused Dr. Confalonieri of intent related to inequitable conduct in relation to a Swedish declaration, but has never raised either a Danish or Norwegian declaration before. Ex. 1, ¶ 45; Ex. 2, p. 10-11. But there is simply no basis to suggest that Mr. Boehnen had anything to do with foreign declarations, and no allegation that he made any misstatement related to any such declarations.

- Sicor alleges that Mr. Boehnen "made misleading statements about the prior art." **_Again, although Sicor has had the prosecution history of the '285 patent for years, it has never pled such an inequitable conduct charge._** Sicor's allegation is apparently nothing more than a stalking horse for the depositions of Mr. Boehnen and Dr. Miao – Sicor has never identified the allegations with specificity (as required), and only indicated in response to an interrogatory that "the depositions of the named inventors and U.S. prosecuting attorneys Mr. Boehnen and Ms. Miao will shed light on its issue." Ex. 2, p. 17.

- Sicor alleges that Mr. Boehnen "apparently supervised the dumping of hundreds of references on the PTO, years late and only after the Examiner indicated an intention to grant the patent, while continuing to withhold from the PTO unfavorable Australian expert reports in Pharmacia's possession that explained the relevance of these belatedly filed references." First, Pharmacia earlier established that "dumping" is not a basis for a charge of inequitable conduct. *See* D.I. 65. Second, it was Jeremy Noe, not Mr. Boehnen or Dr. Miao, who submitted the information disclosure statement that underlies Sicor's charge. Ex. 4. Third, **_Sicor has never before sought to link its "dumping" charge against Mr. Boehnen and Dr. Miao to Australian expert reports (and never accused Mr. Boehnen of inequitable conduct in relation to any_**

---

[2] Sicor's inequitable conduct arguments are based on a 1991 declaration by Dr. Confalonieri, which was resubmitted in 1992. Ex. 1, ¶¶ 23, 43-44; Ex. 2, p. 10-12. Both times, it was submitted by Mr. Kelly. Ex. 2, p. 11-12.

The Honorable Kent A. Jordan
June 12, 2006, Page 3

*<u>Australian proceedings) because there is nothing in the record to suggest that Mr. Boehnen knew of those reports during the prosecution of the '285 patent</u>*. He has no recollection of even knowing of their existence.

- Sicor alleges that Dr. Miao "appears to have been responsible for the belated submission to the PTO of the prior art from the Australian patent litigation between Pharmacia and Upjohn's Australian subsidiary, Delta West." *<u>Sicor has never before attempted to link its "dumping" charge to the Australian litigation</u>*. Furthermore, Dr. Miao has no recollection of even knowing of the Australian litigation. Thus, Sicor's backdoor attempt to link the two must fail, and the same facts that doom its "dumping" allegations against Mr. Boehnen apply to the allegations against Dr. Miao.

- Finally, Sicor attempts to argue that Mr. Boehnen's testimony would be relevant because documents he signed during the prosecution give rise to claim construction arguments. However, a prosecuting attorney's deposition testimony is irrelevant to claim construction; it is only the objective written record of the patent and prosecution history (read by one of skill in the art), not an attorney's subjective views, that are relevant to claim construction. *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (in banc), *aff'd*, 517 U.S. 370 (1996)) ("the testimony of an attorney 'amounts to no more than legal opinion--it is precisely the process of construction that the court must undertake.'"). Thus, Mr. Boehnen's testimony regarding claim construction would have no relevance.

<u>Mr. Boehnen and Dr. Miao's Information Is Privileged</u>

In addition to the fact that none of the topics of Sicor's desired inquiry would be proper, it is clear that Mr. Boehnen and Dr. Miao would be deposed primarily for Sicor to obtain privileged information. For example, Sicor points out that Mr. Boehnen and Dr. Miao may know why Pharmacia acted when it did, but that information could only have been developed through discussions between the attorneys and their clients. Similarly, Mr. Boehnen and Dr. Miao developed their understanding of references and approach to prosecution through discussions with the client. There is no question that such discussions are protected by the attorney-client privilege – and in some cases, work product doctrine – and generally not discoverable.

<u>Sicor Could Have Gotten Information Elsewhere</u>

Although discovery in this case was open for almost two years, Sicor never made most of the inequitable conduct arguments raised for the first time in its letter. It also did not seek to depose other prosecuting counsel, served no interrogatories related to the information it seeks from Mr. Boehnen and Dr. Miao, and never requested Pharmacia's contentions on inequitable conduct. That is a far cry from being able to show "no other means exist to obtain the information." *Shelton*, 805 F.2d at 1327.

In conclusion, there is no reason for the Court to lift its Protective Order. Sicor has shown none of the *Shelton* factors, and has resorted to vague, unpled allegations in a desperate attempt to abuse opposing counsel. This Court should not condone such conduct.

The Honorable Kent A. Jordan
June 12, 2006, Page 4

                                                      Respectfully,

                                                      */s/ James W. Parrett, Jr.*

                                                      James W. Parrett, Jr.

JWP
Enclosures
cc:    Dr. Peter T. Dalleo, Clerk (By Hand - w/encls.)
        Steven J. Balick, Esquire (By E-Filing and By Hand - w/encls.)
        Reid L. Ashinoff, Esquire (By Fax - w/encls.)
        Jordan Sigale, Esquire (By Fax - w/encls.)
        Daniel A. Boehnen, Esquire (By Fax - w/encls.)