EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY,    )
                               )
                Plaintiff,     )
                               )
        v.                     )        C.A. No. 04-833-KAJ
                               )
SICOR, INC. and SICOR          )
PHARMACEUTICALS, INC.,         )
                               )
                Defendants.    )

**DEFENDANTS' RESPONSES TO
PHARMACIA & UPJOHN'S FOURTH SET OF INTERROGATORIES
(INEQUITABLE CONDUCT CONTENTIONS)**

Defendants Sicor Inc. and SICOR Pharmaceuticals, Inc. (collectively "Defendants" or "Sicor"), by and through their undersigned counsel, for their responses to the Fourth Set of Interrogatories by Plaintiff Pharmacia & Upjohn Company LLC ("Plaintiff" or "Pharmacia"), state as follows:

**GENERAL OBJECTIONS**

The following general objections ("General Objections") apply to all of Plaintiff's Interrogatories in this Fourth Set of Interrogatories and are incorporated by reference into each specific response made herein. The assertion of the same, similar, or additional objections or the provision of partial answers in the individual responses to these Interrogatories does not waive any of Sicor's General Objections as set forth below:

1.    Defendants object generally to the Interrogatories to the extent that they purport to impose burdens or obligations beyond those required by the Federal Rules of Civil Procedure

and the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local Rules").

2.    Defendants object generally to the Interrogatories to the extent they seek privileged information, including, without limitation, information which was developed for or in anticipation of litigation, or which constitutes the work product of counsel or confidential attorney-client communications.

3.    Defendants object generally to the Interrogatories to the extent that: (a) they are overbroad, vague, ambiguous, indefinite, compound, or cumulative, (b) compliance would be oppressive and unduly burdensome, (c) they are harassing, (d) they seek information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence and exceed the bounds of the legitimate purposes of discovery; (e) they seek information not in Defendants' possession; and/or (f) they seek information that is equally available to Defendants and Plaintiff.

4.    These responses are submitted without waiving in any way, and on the contrary reserving:

> (i)    the right to amend or supplement any and all responses or other information provided herein at any time upon receipt of additional information; and
>
> (ii)   the right to object on any grounds to the use in evidence or other use of these Responses or other information provided herein in this or any other proceeding by these parties or any other parties or non-parties.

5.    Defendants object to the Interrogatories to the extent they purport to require the identification of "all" persons or documents relating to broad categories of various subjects on the ground that such requests are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In most cases, it simply is not reasonably possible to search for and identify all such persons and/or documents. Subject to

- 2 -

Local Rule 26.1 and without waiving the foregoing, or their other general or specific objections, Defendants will identify and locate after a reasonable search such persons or documents sufficient to provide the information sought.

6.    Defendants anticipate that Pharmacia and its agents as well as non-parties (including the inventors of the patent-in-suit) may have information and/or documents and things in their possession, custody and control that relate to the issues raised by Pharmacia's contention interrogatories. The responses provided to these contention interrogatories at this stage are preliminary, and Defendants expressly reserve the right to supplement each of their responses to each of Pharmacia's contention interrogatories as discovery proceeds.

7.    These General Objections and any future responses are made for the sole purpose of this action. By providing a response to these Interrogatories, Defendants do not concede that the information provided is discoverable, relevant, or admissible, and reserve the right to challenge further discovery into the subject matter of any of the individual requests. Defendants also reserve the right to challenge the competency, relevance, materiality, privilege, and/or admissibility into evidence of any documents, information, or material produced in response to these Interrogatories in this or any subsequent proceeding, or at the trial of this or any other action.

8.    Responses provided to specific Interrogatories are subject to, and without waiver of, the General Objections and those specific objections raised with respect to particular Interrogatories. Accordingly, the provision of substantive responses to any Interrogatory shall not be construed as an admission or used as the basis for a contention that Plaintiff is entitled to any response more specific than that provided.

-3-

## SPECIFIC RESPONSES AND OBJECTIONS

<u>INTERROGATORY NO. 20</u>

State in detail all factual and legal bases for Sicor's contentions (pled or unpled) that any individual associated with the filing or prosecution of any patent application underlying the '285 patent violated the Duty of Candor including (but not limited to) the identity of each individual whom Sicor contends violated the Duty of Candor; a description of how each such individual violated the Duty of Candor; the identity of every reference, document, or fact allegedly not disclosed to from the PTO; the identity of every reference, document, or fact allegedly misrepresented to the PTO; the identity of every reference, document, or fact allegedly withheld or effectively withheld from the PTO; a description of how such action(s) or omission(s) violated the Duty of Candor; the identity of all documents relating to Sicor's contentions of any violation of the Duty of Candor; and the identity of all individuals with knowledge of any alleged violation of the Duty of Candor.

<u>RESPONSE TO INTERROGATORY NO. 20</u>

Defendants object to this interrogatory as being ambiguous with respect to the amount of "detail" necessary to comply with this request. Defendants have made a good faith attempt to describe all factual bases of which they are aware at this juncture in the proceedings for their contention that the Duty of Candor was violated with respect to the '285 patent. Defendants further object to the extent this interrogatory seeks their contentions of the "law" of inequitable conduct as opposed to the application of the applicable law to the factual bases for Sicor's contention that any individual associated with the filing or prosecution of any patent application underlying the '285 patent violated the Duty of Candor. Additionally, the legal standards that apply to allegations of inequitable conduct are equally available to Pharmacia as to Defendants. Further, as the law on inequitable conduct (and the Duty of Candor) is constantly evolving, Sicor reserves the right to rely on the state of the law as it evolves throughout the litigation, including but not limited to legal developments occurring after the close of discovery.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows:

- 4 -

Defendants' contentions are set forth in their Amended Counterclaim previously filed with the Court. Defendants reaffirm the contentions set forth therein and set forth further explanation of those contentions hereinbelow with the expectation that the following response be read in conjunction with that pleading. Furthermore, to aid in Pharmacia's understanding of Defendants' contentions, Defendants have provided document production numbers for various citations. These document production numbers do not necessarily constitute an exhaustive list of instances of the cited documents. Moreover, other documents that Defendants have not directly cited to in this response may further prove or illustrate the factual contentions made herein.

At all times during the pendency of a patent application, all individuals associated with the filing or prosecution of a patent application have a duty of candor and good faith to meaningfully and truthfully disclose to the U.S. Patent and Trademark Office (hereinafter "U.S. Patent Office") material information of which they are aware (the "Duty of Candor"). Each individual associated with the filing or prosecution of what ultimately became the '285 patent who was aware of material information was required by U.S. Patent Office practice to submit, or cause to submit, such information to the U.S. Patent Office as part of an Information Disclosure Statement ("IDS") as early in prosecution of the '285 patent as it was known. According to 37 C.F.R. Section 1.56(c):

> Individuals associated with the filing or prosecution of a patent application within the meaning of this section are: (1) Each inventor named in the application; (2) Each attorney or agent who prepares or prosecutes the application; and (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

During the course of the prosecution of the '285 patent Sicor contends that the "individuals" with a Duty of Candor included at least the named inventors: Gaetano Gatti, Diego Oldani, Giuseppe Bottoni, Carlo Confalonieri, Luciano Gambini, and Roberto De Ponti; and the

-5-

patent attorneys of record including, but not limited to: Daniel Boehnen, Richard Kelly, and

Emily Miao.  To date, Sicor has only been able to depose Messrs De Ponti and Gambini

regarding their roles in the invention and prosecution of the '285 patent.  Consequently, Sicor's

investigation into these issues is continuing.

Even without all of the depositions, it is still clear that each of the above-mentioned

individuals knew that they had a Duty of Candor to the U.S. Patent Office.  Each named inventor

executed a "Declaration, Power of Attorney and Petition," in which they specifically

acknowledged, under penalty of perjury (18 U.S.C. §1001) "the duty to disclose information

material to the examination of this application in accordance with Section 1.56(a) of Title 37

Code of Federal Regulations."  (PU 0014905 - PU 0014907).  Surely Mr. Boehnen, Mr. Kelly,

and Ms. Miao are well aware of their Duty of Candor.  Mr. Boehnen, Mr. Kelly, and Ms. Miao

are each registered to practice before the U.S. Patent Office and as such their actions in

association with the prosecution of any patent application are governed by the Duty of Candor.

Moreover, as members of the Patent Bar, Mr. Boehnen, Mr. Kelly, and Ms. Miao's actions in

association with the prosecution of any patent application are also governed by the Cannons of

Professional Responsibility, codified at 37 C.F.R. §10.20 *et seq.*, which includes the admonition

that "[a] practitioner should avoid even the appearance of professional impropriety."

Sicor also presently contends that other agents and employees of Pharmacia acted in

connection with the filing and prosecution of the '285 patent and, thus, had a Duty of Candor to

the U.S. Patent Office in association with the '285 patent.  In 1995, notwithstanding the

expiration of the basic drug patents nearly a decade earlier and only two years after Pharmacia

AB acquired Farmitalia's chemotherapy drug franchise (including the '285 patent and the rest of

the Gatti patent family), Adriamycin was still one of Pharmacia AB's top ten products.  Given

the commercial significance of the Gatti patent family and the '285 patent to the highly

-6-

profitable continuation of this chemotherapy drug franchise, Sicor believes that other individuals were actively and substantially involved in the prosecution of the '285 patent (and its siblings, parents and counterparts) as well as the assertions of the Gatti patents throughout the world. Sicor's investigation is still continuing in this regard, but at this time, Sicor contends that other agents and employees having a Duty of Candor with respect to the '285 patent include, but are not limited to: Geoffrey Woods (a European patent lawyer at J.A. Kemp & Co. whom according to Pharmacia's recent discovery letters to Court is responsible for coordinating worldwide patent prosecution related to the '285 patent and the Gatti patent family); Vittorino Ferrario (characterized in Pharmacia's privilege log as an attorney in Pharmacia's Documentation and Patent Department in Milan, Italy); and R. Metelli (characterized in Pharmacia's privilege log as an attorney in Pharmacia's Documentation and Patent Department in Milan, Italy). Sicor believes that the depositions of the named inventors and U.S. prosecuting attorneys Boehnen and Miao will shed light on the specific activities of all of the specifically known individuals as well as the identities of other individuals involved in violating the Duty of Candor to the U.S. Patent Office in association with the '285 patent.

For purposes of the Duty of Candor, information is material "where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. Section 1.56(b)(1991). In some cases, a stricter standard of materiality has been cited wherein information is "material to patentability when it is not cumulative to information already of record or being made of record in the application, and

> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>
> > (i) Opposing an argument of unpatentability relied on by the Office, or

(ii) Asserting an argument of patentability . . . "

37 C.F.R. Section 1.56(b)(1992).

During the course of the prosecution of the '285 patent, U.S. Patent Office practice and the Duty of Candor dictated that the Applicants should avoid the submission of long lists of references in an IDS, and further that if such a long list of references was submitted, the Applicants submitting the IDS should highlight those references which were known to be of significance, particularly those references that might refute, or were inconsistent with, positions taken by the inventors or assignees, or their attorneys or agents, before the U.S. Patent Office.

The Duty of Candor further required, among other things, that each Applicant disclose to the U.S. Patent Office material information arising from related foreign applications and related litigation, and from communications with competitors or other potential infringers. According to Section 2001.06 of the Manual of Patent Examining Procedure (MPEP)(emphasis added):

> Such individuals may be or become aware of material information
> from various sources such as, for example, co-workers, trade
> shows, **communications from or with competitors, potential
> infringers, or other third parties, related foreign applications**
> (see MPEP Section 2001.06(a)), prior or copending United States
> patent applications (see MPEP Section 2001.06(b)), **related
> litigation** (see MPEP Section 2001.06(c)) and preliminary
> examination searches.

The Duty of Candor further required that the Applicants avoid dumping reams of information upon the U.S. Patent Office late in the course of the prosecution of the '285 patent, which belated dumping involved burying key references within long lists of documents in hopes of hiding information from the attention of U.S. Patent Office.

Based on discovery to date, Sicor contends that at least Gaetano Gatti, Diego Oldani, Giuseppe Bottoni, Carlo Confalonieri, Luciano Gambini, Roberto De Ponti, Daniel Boehnen, Dr. Carlo Confalonieri, Vittorino Ferrario , Richard Kelly, R. Metelli, Emily Miao, and Geoffrey

– 8 –

Woods each jointly and severally violated their Duty of Candor to the U.S. Patent Office in association with the '285 patent.

Gaetano Gatti, Diego Oldani, Giuseppe Bottoni, Carlo Confalonieri, Luciano Gambini, and Roberto De Ponti jointly and severally violated their Duty of Candor to the U.S. Patent Office in association with the '285 patent by falsely communicating in the '285 patent application that actual stability tests had been conducted prior to the filing of the priority document for the '285 patent application (i.e. the UK '452 patent application) for analogous solutions containing either doxorubicin hydrochloride at 5 mg/ml concentration, or 4'-epi-doxorubicin, 4'-desoxy-doxorubicin, 4'-desoxy-4'-iodo-doxorubicin, danuorubicin or 4-demethoxy-daunorubicin, as hydrochloride salts, at both 2 mg/ml and 5 mg/ml. (Beijnen Deposition, 3/1/2006, 91:19 - 96:7).  No stability tests were conducted and no data actually existed at the time of filing for any of the molecules (other than doxorubicin hydrochloride at 1 mg/ml, 2 mg/ml and 20 mg/ml).  This is particularly and highly material for idarubicin (i.e. 4-demethoxy-daunorubicin) hydrochloride and epirubicin (i.e. 4'-epi-doxorubicin) hydrochloride, both of which are within the scope of the claims of '285 patent.  Consequently, Sicor contends that Gaetano Gatti, Diego Oldani, Giuseppe Bottoni, Carlo Confalonieri, Luciano Gambini, and Roberto De Ponti violated their Duty of Candor to the U.S. Patent Office by, among other things, knowingly misrepresenting that they had in fact conducted actual stability testing on idarubicin and epirubicin molecules, when in fact at the time of filing of the patent application neither the named inventors nor anyone else at Pharmacia had conducted such stability testing.  As a result, the inventors were not in actual possession of the full scope of the invention claimed in the '285 patent at the time the patent application was filed.  This misrepresentation is highly material to the patentability of the claims of the '285 patent under 35 U.S.C. §112.  Given the high materiality of this misrepresentation, Sicor also believes that one or more patent attorneys knew

or should have known of this knowing misrepresentation and, thus, violated their Duty of Candor to the U.S. Patent Office.

Dr. Carlo Confalonieri further violated his Duty of Candor in association with the '285 patent by submitting knowingly false statements to the U.S. Patent Office regarding the prior art Wassermann reference. (PI 1190 - PI 1194). In particular, in a declaration dated May 27, 1991 (and resubmitted to the U.S. Patent Office as an Exhibit to Dr. Confalonieri's December 9, 1992 Declaration (PU 0016632 - PU 0016785)), Dr. Confalonieri falsely stated that Wasserman provided "no information" that would allow one skilled in the art to produce storage stable doxorubicin solutions. (PU 0016638 - PU 0016639). Dr. Confalonieri also falsely stated in that same declaration that "one skilled in the art would not have been lead by the Wassermann reference to have recognized the unique advantages to be achieved by adjusting Adriamycin [doxorubicin] solutions to a pH of from 2.5 to 5.0 with hydrochloric acid" and that "there is nothing in Wassermann which would suggest that solutions would have long term storage stable characteristics...". (PU 0016640 - PU 0016641)

Contrary to Confalonieri's misrepresentations, using the data disclosed in Wassermann and standard chemical kinetics equations that were known in the prior art, disclosed by Wasserman and well known to the named inventors (including Dr. Confalonieri), Wassermann provides all of the information necessary for determining the estimated shelf-life stability of doxorubicin in acidic solution containing hydrochloric acid. (See Expert Report of Douglas S. Clark PhD, pp. 18-20). Dr. Confalonieri knew (or should have known) that the degradation of doxorubicin in acidic solution was described by the kinetic equations disclosed in Wasserman and that the shelf-life (stability) could be readily estimated from the degradation rate of doxorubicin which, in turn, could be routinely calculated. Dr. Confalonieri's knowledge is evidenced by a declaration he prepared and submitted to the Swedish Patent Office on December

- 10 -

14, 1994 in a foreign application related to the '285 patent. In that Swedish Confalonieri Declaration, Dr. Confalonieri stated that "[i]n practice the Kobs value [observed rate of degradation for doxorubicin at acidic pH] is calculated on a scientific calculator," that "[t]his is a routine procedure for those skilled in the art", and that "once Kobs is known, the t90 [shelf-life] is known" and acknowledged that he had been using these standard techniques since before the foreign priority date of the '285 patent. (PU 0028154). Dr. Confalonieri also stated that "[t]he relationship between reaction rates and temperature is well established" by the Arrhenius equation. (PU 0028155). Thus, contrary to the material statements he made in his May 27, 1991 declaration about Wassermann's alleged failure to suggest to one of ordinary skill that Wassermann's solutions would have long term storage stable characteristics, Dr. Confalonieri actually knew that storage stability could be routinely calculated on a scientific calculator from the rate equations, rate constant values and activation energy disclosed in the Wassermann reference for the disclosed doxorubicin degradation reaction. Dr. Confalonieri also had knowledge of the standard prior art chemical equations for estimating shelf-life of the doxorubicin solution disclosed in Wassermann. Dr. Confalonieri's misrepresentation to the U.S. Patent Office of the teachings of Wassermann was highly material. The U.S. Patent Examiner had rejected the claims over the Wassermann reference, which rejection was only removed because of the arguments supported by Dr. Confalonieri's misrepresentations. Given the high materiality of the misrepresentations, Sicor also believes that one or more patent attorneys knew or should have known of these knowing misrepresentations and, thus, violated their Duty of Candor to the U.S. Patent Office.

Dr. Carlo Confalonieri and Mr. Richard Kelly jointly and severally violated their Duty of Candor to the U.S. Patent Office in association with the '285 patent by submitting knowingly false comparative testing data to the U.S. Patent Office regarding the prior art Wassermann

- 11 -

reference. Based on the submission of false comparative data prepared at the direction of at least Dr. Confalonieri, in an Amendment and Communication signed by Mr. Kelly and submitted to the U.S. Patent Office on January 6, 1993, (PU 0014992 - PU 0015000), Pharmacia further misrepresented that Wassermann's teaching of an aqueous doxorubicin solution adjusted to a pH of 2.13 *with hydrochloric acid* had storage stability inferior to the claimed invention. In particular, Mr. Kelly compared data in Exhibit C of tab 2 of the Confalonieri Declaration (PU 0015197 - PU 0015201) to support the conclusion that doxorubicin hydrochloride solution which has its pH adjusted to 2.5 with hydrochloric acid has superior storage stability to doxorubicin hydrochloride solutions whose pH has been adjusted to 2.0 with hydrochloric acid. (PU 0014997 - PU 0014998). Yet, upon close examination of tab 2 within that Exhibit C the only data set forth for pH 2.0 and 2.5 were for aqueous solutions of doxorubicin *adjusted with glycine-HCl*, a physiologically acceptable buffer, not a physiologically acceptable acid (in particular, HCl (hydrochloric acid)) as argued to the U.S. Patent Office. This false comparative data and the false conclusions resulting therefrom, which allowed Pharmacia to improperly overcome the rejection of the claims over the Wassermann prior art, are highly material, particularly given the distinctions that Pharmacia drew prior to this submission and throughout the patent prosecution between using unpatentable buffers to adjust the pH of the solution and the allegedly unexpected properties provided by the claimed invention of using only acids to adjust the pH of an aqueous doxorubicin solution. Given the high materiality of this violation of the Duty of Candor, Sicor also believes that additional patent attorneys knew or should have known of these prior false testing data and misrepresentations, but violated their Duty of Candor to the U.S. Patent Office by failing to affirmatively bring at least this prior violation of the Duty of Candor to the attention of the U.S. Patent Office.

Daniel Boehnen, Dr. Carlo Confalonieri, Vittorino Ferrario, Richard Kelly, R. Metelli, Emily Miao, and Geoffrey Woods jointly and severally violated their individual Duties of Candor to the U.S. Patent Office in association with the '285 patent by failing to timely disclose material information associated with the related Australian patent infringement accusation and litigation. In August 1991, Farmitalia sought assurances from Upjohn that its dealings with Delta West would not infringe Australian Patent No. 598,197 (the "Australian '197 Patent") to which Upjohn wrote Farmitalia on February 7, 1992, stating that each of the claims of the Australian '197 Patent was invalid based on a non-exhaustive list of sixteen (16) publications and nine (9) patent publications. (PU 0034802 - PU 0034803). (The Australian '197 Patent also claims its priority from the UK '452 Application and, thus, has the same written description as the '285 patent, making it another related foreign application to the '285 patent). Both Farmitalia and Upjohn are predecessors-in-interest to Pharmacia, becoming part of Pharmacia during the prosecution of the '285 patent. Yet no one involved in the prosecution of the '285 patent disclosed this highly material Upjohn invalidity letter to the U.S. Patent Office during the prosecution of the '285 patent.

Mr. Richard Kelly was clearly aware of the existence of this February 1992 Upjohn invalidity letter. During the prosecution of U.S. Patent No. 5,124,317 (the "'317 patent", which is the parent patent of the '285 patent), Mr. Kelly supervised his associate's attempt to submit to the U.S. Patent Office the Upjohn invalidity letter. Because the submission failed to comply with the U.S. Patent Office rules for late submission of information, the U.S. Patent Office never considered the Upjohn invalidity letter before issuing the '317 patent, yet Mr. Kelly did nothing to withdraw the '317 patent from issuance. (Defendant's Exhibit No. 91 at Richard Kelly's 11/29/05 Deposition). Moreover, no one ever (including but not limited to Mr. Kelly, Mr. Boehnen and Ms. Miao) associated with the prosecution of the '285 patent submitted the

- 13 -

February 1992 Upjohn invalidity letter to the U.S. Patent Office in connection with the prosecution of the '285 patent.

Daniel Boehnen, Dr. Carlo Confalonieri, Vittorino Ferrario, Richard Kelly, R. Metelli, Emily Miao, and Geoffrey Woods jointly and severally violated their individual Duties of Candor to the U.S. Patent Office in association with the '285 patent by burying the U.S. Patent Examiner with an exceedingly long list of prior art references -- two hundred and twenty-eight (228) separate references -- on July 1, 1998 ("Ninth Supplemental Information Disclosure Statement")(PU 0015323 - PU 0015339) including many references at issue in the related Australian litigation, which had been settled almost three years earlier. Moreover, this Ninth Supplemental Information Disclosure Statement was filed after the U.S. Patent Examiner had . already given Pharmacia an indication that the claims of the '285 patent application were allowable, knowing full well that at this late stage of the prosecution, and after six years of dealing with the '285 patent application, the U.S. Patent Examiner would give this new information little or no scrutiny. Some of the references cited for the first time that would have been material to the patentability of the claims of the '285 patent, but were buried in the list of two hundred and twenty-eight (228) late-filed references, were: Sv. Aage Schou & V. Gaun Jensen (1959) (PU 0076838 - PU 0076840); J. Windheuser (1963) (SICOR-PNU 006409 - SICOR-PNU 006416); E. Sandell (1967) (PU 0076858 - PU 0076860); K. Ilver (1971) (PU 0076829 - PU 0076834); Lachman (1976 edition) (PU 0011777 - PU 0011809); Mori et al. (1980) (Plaintiff's Exhibit No. 64 at Doug Clark's 11/1/05 deposition). Five of these references (Schou, Windheuser, Sandell, Ilver and Lachman) contradicted Pharmacia's *seriatim* arguments for patentability regarding what one of ordinary skill would have understood regarding, among other things, (a) differences between acids and buffers in solution; (b) prior art solutions not being adjusted with hydrochloric acid (as claimed), but instead adjusted with buffers; and (c)

- 14 -

using a buffer instead of an acid to adjust the pH of a solution above about pH 2. Mori discloses stable solutions of anthracycline glycosides. Hence, in addition to violating their duty to timely submit references and to highlight those references which were known to be of significance, these individuals also violated their duty to correct earlier inconsistent arguments refuted by these late filed references. Contrary to that duty, Mr. Boehnen and Ms. Miao, among others, elected to remain silent about the inconsistencies and buried these five references.

Pharmacia's privilege log produced in this litigation shows that Dr. Confalonieri, Vittorino Ferrario, Richard Kelly and R. Metelli were significantly involved in at least the related Australian litigation. Notwithstanding their knowledge of the related Australian litigation and its significance, and the high materiality of the expert analyses, prior art references and opinions expressed therein, Dr. Confalonieri, Vittorino Ferrario, Richard Kelly and R. Metelli still knowingly failed to disclose to the U.S. Patent Office:

> (1) the analyses of two experts in the pharmaceutical field, Dr. William Neil
> Charman (PU 0011682 - PU 0011717) and Mr. Robert Laurence Weston (PU 0014464 -
> 0014491), that find and explain in detail that the claims of the Australian '197 Patent are
> invalid in view of many of the same references set forth in Upjohn's February 1992
> invalidity letter, and

> (2) at least a half-dozen of the references that were raised during the related
> Australian litigation.

The Charman and Weston expert reports filed during the related Australian litigation were highly material. For example, paragraphs 80-91 of Dr. Charman's report discuss the method by which Dr. Charman graphed the data (see Exhibit WNC10) provided in Wassermann (1983) (PI 1190 - PI 1193) and two other prior art references (Kaniewska (PU 0063154 - PU

- 15 -

0069162) and Benvenuto (PU 0008943 - PU 0008947), which information would have enabled a

person skilled in the art in 1985 to make the anthracycline glycoside solutions of either

doxorubicin or idarubicin in a pH range of approximately **2.5 to 5**. This aspect of Dr. Charman's

withheld report directly contradicts the sworn statements in the Confalonieri Declaration

concerning Wassermann ("It is my opinion that Wassermann provides no information which

would allow one skilled in the art to produce a storage stable Adriamycin solution.") (PU

0015199). Notwithstanding Dr. Charman's April 1995 report which refuted and is inconsistent

with the position statements in the Confalonieri Declaration, Pharmacia's patent lawyers, Daniel

Boehnen and Emily Miao, resubmitted that same Confalonieri Declaration on July 12, 1996 (PU

0015155 - PU 0015168; PU 0015197 - PU 0015201), to oppose the U.S. Patent Examiner's

argument of unpatentability, without ever providing Dr. Charman's report to the U.S. Patent

Examiner.

     Among the half-dozen references that Dr. Confalonieri, Vittorino Ferrario, Richard Kelly

and R. Metelli failed to disclose from the related Australian Litigation to the U.S. Patent Office

was the complete copy of portions of Lachman, The Theory and Practice of Industrial Pharmacy

(2nd Ed. Lea & Febiger 1976) (PU 0011812 - PU 0011860) produced as exhibit WNC5 to Dr.

Charman's expert report (PU 0011695). While Applicants did disclose a number of selected

pages from the 3rd Edition (1986) of Lachman, that third edition was not prior art to the '285

patent and, more importantly, the omitted pages taught, among other things, the potentially

deleterious effect a buffer could have on the stability of a final drug product and the experimental

method whereby one of ordinary skill in the art would identify buffers having such an effect.

Another of the material, non-cumulative references that Dr. Confalonieri, Vittorino Ferrario,

Richard Kelly and R. Metelli failed to disclose from the related Australian Litigation to the U.S.

Patent Office during the prosecution of the '285 patent was U.S. Patent No. 4,310,515. The '515

patent was discussed in Dr. Charman's expert report (PU 0011704). In particular, the '515

patent disclosed an injectable, water-based solution having a pH in the range of 2.3 to 2.7

adjusted and stabilized by the presence of the appropriate amount of hydrochloric acid, not a

buffer.

Sicor believes from their late submission of so many of the prior art references

underlying the related Australian litigation that Mr. Boehnen and Ms. Miao were aware or should

have been aware of the related Australian litigation. Because Sicor has not been allowed to

depose Mr. Boehnen or Ms. Miao it does not know when they became aware of the related

Australian litigation, but given that the withheld Australian references refuted earlier arguments

supported by Mr. Boehnen, these lawyers also violated their duty to correct earlier inconsistent

arguments refuted by these expert reports. Contrary to that duty, Mr. Boehnen and Ms. Miao,

among others, elected to remain silent.

Finally, Sicor's investigation is still continuing on whether Daniel Boehnen and Emily

Miao further violated their individual Duties of Candor to the U.S. Patent Office in association

with the '285 patent by intentionally misrepresenting the true scope and teachings of the Janssen

reference (PU 0013746 - PU 0013756) at page 4 of an Amendment signed by Mr. Boehnen on or

about May 6, 1997 (PU 0015277 - PU 0015281). Sicor believes that the depositions of the

named inventors and U.S. prosecuting attorneys Mr. Boehnen and Ms. Miao will shed light on

this issue.

INTERROGATORY NO. 21

State in detail all factual and legal bases for Sicor's contentions (pled or unpled) that any
individual associated with the filing or prosecution of any patent application underlying the '285
patent intended to violate the Duty of Candor including (but not limited to) the identity of each
individual whom Sicor contends intentionally violated the Duty of Candor; a description of how
each such individual intended to violate the Duty of Candor; the identity of all evidence of an
intent to violate the Duty of Candor; the identity of all documents relating to or concerning any

contention of any intentional violation of the Duty of Candor; and the identity of all individuals with knowledge relating to or concerning any alleged intent to violate the Duty of Candor.

RESPONSE TO INTERROGATORY NO. 21

Defendants object to this interrogatory as being ambiguous with respect to the amount of "detail" necessary to comply with this request. Defendants have made a good faith attempt to describe all factual bases of which they are aware at this juncture in the proceedings for their contention that the Duty of Candor was violated with respect to the '285 patent. Defendants further object to the extent this interrogatory seeks their contentions of the "law" of inequitable conduct as opposed to the application of the applicable law to the factual bases for Sicor's contention that any individual associated with the filing or prosecution of any patent application underlying the '285 patent intentionally violated the Duty of Candor. Additionally, the legal standards that apply to allegations of inequitable conduct are equally available to Pharmacia as to Defendants. Further, as the law on inequitable conduct (and intent to violate the Duty of Candor) is constantly evolving, Sicor reserves the right to rely on the state of the law as it evolves throughout the litigation, including but not limited to legal developments occurring after the close of discovery.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows:

The "intent to deceive" required to prove inequitable conduct need not be proven by direct evidence. It can be established based upon the inference created by the totality of circumstances surrounding an applicant's conduct, and is most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor. So, while intent cannot be simply presumed from materiality, the degree of materiality of a withheld reference or misstatement may lead to an inference of intent in the absence of a credible good faith explanation.

– 18 –

A credible good faith explanation requires more than a mere denial of any intent to mislead. Moreover, affirmative misrepresentations -- which comprise a significant aspect of the violation of the Duty of Candor in this case -- are typically accorded a relatively high degree of materiality, from which intent may easily be inferred.

Each of the violations of the Duty of Candor set forth in Interrogatory No. 21 involved a significant to very high degree of materiality. Some of the violations further involved affirmative misrepresentations of the existence of experimental data, the conduct of experiments and general teachings in the art. An Examiner would be unable to satisfactorily investigate these aspects of a prosecution and frequently relies upon the candor of patent applicants. Yet, as discussed above, various individuals including Daniel Boehnen, Dr. Carlo Confalonieri, Vittorino Ferrario, Richard Kelly, R. Metelli, Emily Miao, and Geoffrey Woods withheld material information, mischaracterized information and delayed the disclosure of other information. None of these improprieties is particularly surprising in view of the value of Pharmacia's highly profitable chemotherapy drug franchise and its stated motivation to keep that franchise running beyond the expiration date of the basic patents. The high materiality of the violations as well as the totality of the circumstances leads to the clear and convincing conclusion that a plurality of the actors identified above each had an intent to deceive the U.S. Patent Office in order to obtain the '285 patent (and the other U.S. patents in the Gatti family).

INTERROGATORY NO. 22

State in detail all factual and legal bases for Sicor's contentions (pled or unpled) that the '285 patent is unenforceable including (but not limited to) the identity of each individual whose acts or omissions Sicor contends render the '285 patent unenforceable; a description of each act or omission that Sicor contends renders the '285 patent unenforceable; the identity of all documents relating to any acts or omissions Sicor contends render the '285 patent unenforceable; and the identity of all individuals with knowledge relating to or concerning any alleged acts or omissions Sicor contends render the '285 patent unenforceable.

RESPONSE TO INTERROGATORY NO. 22

Defendants object to this interrogatory as being ambiguous with respect to the amount of "detail" necessary to comply with this request. Defendants have made a good faith attempt to describe all factual bases of which they are aware at this juncture in the proceedings for their contention that the '285 patent is unenforceable. Defendants further object to the extent this interrogatory seeks their contentions of the "law" of inequitable conduct as opposed to the application of the applicable law to the factual bases for Sicor's contention that the '285 patent is unenforceable. Additionally, the legal standards that apply to allegations of inequitable conduct are equally available to Pharmacia as to Defendants. Further, as the law on inequitable conduct (and unenforceability) is constantly evolving, Sicor reserves the right to rely on the state of the law as it evolves throughout the litigation, including but not limited to legal developments occurring after the close of discovery. Sicor further objects to Interrogatory No. 22 as being duplicative of Interrogatory No. 21.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows:

The '285 patent is unenforceable as a result of any one of the plurality of intentional violations of the Duty of Candor set forth above. The people with knowledge of the acts described herein include, among others: Daniel Boehnen, Dr. Carlo Confalonieri, Vittorino Ferrario, Richard Kelly, R. Metelli, Emily Miao, and Geoffrey Woods. Sicor has not yet had the opportunity to depose any of these individuals due to the Protective Order Pharmacia sought to protect its lawyers, and due to serious discovery deficiencies in Pharmacia's production that delayed the depositions of the remaining named inventors, including Dr. Confalonieri.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. # 3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated:  April 11, 2006

168460.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2006, the attached **DEFENDANTS'**

**RESPONSES TO PHARMACIA & UPJOHN'S FOURTH SET OF INTERROGATORIES**

**(INEQUITABLE CONDUCT CONTENTIONS)** was served upon the below-named counsel

of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Joshua R. Rich, Esquire                                       VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


_Steven J. Balick_
Steven J. Balick

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-833-KAJ |
| | ) | |
| SICOR INC. and SICOR | ) | |
| PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 11th day of April, 2006, **DEFENDANTS'**

**RESPONSES TO PHARMACIA & UPJOHN'S FOURTH SET OF INTERROGATORIES**

**(INEQUITABLE CONDUCT CONTENTIONS)** was served upon the following counsel of

record at the address and in the manner indicated:


Jack B. Blumenfeld, Esquire                          HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899


Joshua R. Rich, Esquire                          VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

ASHBY & GEDDES

/s/ Steven J. Balick

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-gedds.com

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
Michael S. Gugig
David R. Baum
Mirella Moshe Siskindovich
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated:  April 11, 2006

149886.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2006, the attached **NOTICE OF SERVICE**

was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899


Joshua R. Rich, Esquire                                        VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606



/s/ *Steven J. Balick*
_____

Steven J. Balick

## Discovery Documents

1:04-cv-00833-KAJ Pharmacia & Upjohn v. Sicor Inc., et al

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Balick, Steven entered on 4/11/2006 at 11:19 PM EDT and filed on 4/11/2006

| | |
|---|---|
| **Case Name:** | Pharmacia & Upjohn v. Sicor Inc., et al |
| **Case Number:** | 1:04-cv-833 |
| **Filer:** | Sicor Inc. |
| | Sicor Pharmaceuticals Inc. |

**Document Number:** 220

**Docket Text:**
NOTICE OF SERVICE of Defendants' Responses to Pharmacia & Upjohn's Fourth Set of Interrogatories (Inequitable Conduct Contentions) by Sicor Inc., Sicor Pharmaceuticals Inc..(Balick, Steven)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/11/2006] [FileNumber=198784-0]
[49296bf7293373160b3e19b39792e4baec267b067c626a62963ff4db5891f6ecd784
d2340e9ecb4aa7890d7c55430f95ab51f97521aff988f66f4a7a291530f8]]

**1:04-cv-833 Notice will be electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, jday@ashby-geddes.com; mkipp@ashby-geddes.com; dfioravanti@ashby-geddes.com; nlopez@ashby-geddes.com; tlydon@ashby-geddes.com; lmaguire@ashby-geddes.com; dharker@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, sbalick@ashby-geddes.com; mkipp@ashby-geddes.com; dfioravanti@ashby-geddes.com; nlopez@ashby-geddes.com; tlydon@ashby-geddes.com; lmaguire@ashby-geddes.com; dharker@ashby-geddes.com

Maryellen Noreika    menefiling@mnat.com

**1:04-cv-833 Notice will be delivered by other means to:**