# EXHIBIT 4

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   PHARMACIA & UPJOHN COMPANY,        : CIVIL ACTION
                                        :
 5                                      :
              Plaintiff and             :
 6            Counter-defendant,        :
                                        :
 7   v.                                 :
                                        :
 8   SICOR INC., and SICOR              :
     PHARMACEUTICALS INC.,              :
 9                                      :
              Defendants and            : NO. 04-833 (KAJ)
10            Counter-Claimants.
                              - - -
11
                       Wilmington, Delaware
12           Monday, September 19, 2005 at 4:30 p.m.
                       TELEPHONE CONFERENCE
13
                              - - -
14
     BEFORE:    HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                              - - -
16   APPEARANCES:

17
            MORRIS NICHOLS ARSHT & TUNNELL
18          BY: MARYELLEN NORIEKA, ESQ.

19                    and

20          McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
            BY: DANIEL A. BOEHNEN, ESQ., and
21              JOSHUA R. RICH, ESQ.
                (Chicago, Illinois)
22
                    Counsel for Pharmacia & Upjohn Company
23

24
                                    Brian P. Gaffigan
25                                  Registered Merit Reporter
```

**Page 2**

```
1    APPEARANCES: (Continued)
2
3         ASHBY & GEDDES
          BY:  JOHN G. DAY, ESQ.
4
               and
5
          SONNENSCHEIN NATH & ROSENTHAL, LLP
6         BY:  REID L. ASHINOFF, ESQ. and
               BRIAN T. MORIARTY, ESQ.
7              (New York, New York)
8                   Counsel for Sicor Inc. and Sicor
                    Pharmaceuticals Inc.
9
10
11
12
13
14
15
16                       - oOo -
17                  P R O C E E D I N G S
18        (REPORTER'S NOTE: The following telephone
19   conference was held in chambers, beginning at 4:30 p.m.)
20        THE COURT:  Hi, this is Judge Jordan.  Who do I
21   have on the line?
22        MS. NORIEKA:  Your Honor, for the plaintiff,
23   it's Maryellen Noreika at Morris Nichols in Wilmington; and
24   Dan Boehnen and Joshua Rich for the McDonnell Boehnen firm
25   in Chicago.
```

**Page 3**

1   MR. DAY: Good afternoon, Your Honor. For
2 defendants, you have John Day at Ashby & Geddes locally;
3 Reid Ashinoff and Brian Moriarty, my lead counsel from the
4 Sonnenschein firm.
5   THE COURT: All right.
6   MR. MORIARTY: Good afternoon, Your Honor.
7   THE COURT: Good afternoon. This is a discovery
8 dispute conference touched off by a letter originally that
9 came in on the 1st of September from Ms. Noreika. I have
10 the amended or replacement letter of the 15th as well as two
11 letters from the folks at Mr. Day's firm, one dated
12 September 15th and a September 19th response.
13   So why don't we go ahead and begin with, I don't
14 know whether it's Mr. Boehnen or Ms. Noreika. Who is going
15 to be speaking for the plaintiff? But why don't you go
16 ahead and tee up what you think I need to be talking with
17 you folks about first.
18   MR. BOEHNEN: It would be Mr. Boehnen, Your
19 Honor. This is he.
20   So after we filed on September 1st, of course,
21 as you know, we were hoping to have a hearing with you soon
22 after that. But in order for all of the parties to have an
23 opportunity to get their letters in, that didn't happen, it
24 got put off for a couple weeks. And as things continued to
25 develop during the course of those next couple weeks, we

**Page 4**

1 thought it would be best to kind of put a replacement or
2 updated letter before the Court and we advised Sicor we
3 would be doing that.
4   So in Sicor's response dealing first with the
5 question of document production, we noted that they really
6 don't comment at all on our request for manufacturing
7 documents. And we remain concerned that there has not been
8 a full and thorough search for production documents and then
9 a full production of those.
10   THE COURT: Yes. And why don't I pull
11 Mr. Moriarty in here because on that point, I feel like you
12 have some explaining to do.
13   MR. MORIARTY: Yes, Your Honor.
14   THE COURT: Are you there?
15   MR. MORIARTY: I almost cut you off and I
16 stopped myself. I'm there.
17   THE COURT: So what is your response to the
18 assertion I have from Mr. Boehnen and his co-counsel that
19 they're still not getting some basic discovery from you
20 folks, for example, lab notebooks which has come to light
21 after a 30(b)(6) witness?
22   And, Mr. Boehnen, did I understand you to say
23 you think you are still short?
24   MR. BOEHNEN: Yes, Your Honor. I was first
25 addressing the manufacturing documents because their letter

**Page 5**

1 didn't even comment on that. What their letter did comment
2 on were the R&D documents, and they say they produced some
3 before the deposition. We would point out only that they
4 were produced after all of the attorneys had entered the
5 deposition room and about 30 seconds before the witness was
6 produced. They say that they had made a search before but
7 the witness who was a 30(b)(6) witness on this very topic
8 said there hadn't been any search to his knowledge.
9   One of the things that did happen within the two
10 weeks after our letter and today is that one day prior to
11 Sicor's submission of its letter to the Court, they did give
12 us about an additional 400 pages of lab notebooks and they
13 said that now they are not aware of any further R&D pages
14 being produced.
15   We do remain concerned that we've only got about
16 500 pages in total of R&D lab notebooks. It seems to us
17 shy. We don't have a clear representation that they have
18 made a full and thorough search. They said they've done a
19 search.
20   THE COURT: What are they looking for in that
21 regard?
22   MR. BOEHNEN: I think at this point, they have
23 said that they have done a search and they're not aware of
24 anything further. I realize that is a representation then
25 that the Court probably has to accept unless and until

SHEET 3

**6**

1  we can show otherwise. So we're going to need to have a
2  continued deposition. But, you know, if and when we have a
3  further deposition and we're able to establish that there
4  are more R&D documents out there, we're going to be back
5  in front of you again and obviously we're concerned about
6  both the time that this is taking and the cost that this
7  is taking.
8      THE COURT: Yes, I think you are right to be
9  concerned. But let me suggest to both sides if you have me
10 on speakerphone, you need to pick up because there may be
11 occasions where I need to catch you in midstream because I
12 have a question or clarification or I feel like I need to
13 move to another point and I can't cut in just given the
14 technology of speakerphones.
15     So let me back up a little bit, Mr. Boehnen,
16 because you moved past the point I'd like to focus in on.
17 What is it specifically with respect to the documents and
18 the 30(b)(6)? What is the relief you want from me? And
19 then I'll have Mr. Moriarty talk to that.
20     MR. BOEHNEN: There are two aspects of the
21 documents: There are R&D documents that we're concerned
22 we don't have. There are manufacturing documents that we
23 believe we don't have.
24     As to the R&D documents, if Mr. Moriarty is
25 representing that they have made a full, careful and

**7**

1  thorough search and have produced everything, then I
2  realize it's not incumbent upon us to go forward in the
3  deposition and either show that is true or not true.
4      If it turns out to be true, then I guess I
5  would like the Court's admonition to them to make sure it
6  is true. Otherwise, you are going to be awarding us costs
7  and attorney fees and additional time.
8      By way of additional time, we believe that these
9  are documents that are going to be useful for our expert
10 report; and if we find out additional documents later, we
11 will be needing to supplement our report. So that is all
12 the requests on the R&D document side.
13     On the manufacturing documents side, we believe
14 we don't have all of those. Again, if Mr. Moriarty
15 represents they made a careful and thorough search and they
16 have produced everything, then we'll go forward and resume
17 deposition. But we would like to make sure we have this
18 full production before we do our expert report, and we would
19 like to have one week after getting this document in order
20 to submit our expert's report.
21     MR. MORIARTY: Your Honor, this is Brian
22 Moriarty. Would you like me to address these points now?
23     THE COURT: I would.
24     MR. MORIARTY: Let me start with the last topic,
25 the manufacturing record. I believe we've actually resolved

**8**

1  this record in a call before we had before with the Court
2  which I had with Mr. Rich. What they have asked us to do
3  is to supplement our production to produce what is called
4  batch records, and these are the records of the laboratory
5  when they produced batches of pharmaceutical products. They
6  have detailed records that are available for review by the
7  FDA, for example, that are called batch records which detail
8  what kind of products they made and how they made it and
9  just how many are made; and they asked us to supplement
10 that. And they correctly pointed out our batch records end
11 some time in early 2005 when we made our initial production.
12     We told them that we would go back and this week
13 we hope to get the additional batch records to the extent
14 there are any so they can know exactly how many units of
15 allegedly infringing products were made in our factory. So
16 we've already agreed to get that information for them and to
17 supplement our production with the 2005 records.
18     THE COURT: Okay.
19     MR. MORIARTY: As to all the original records,
20 we have given all of our records indicating the production
21 of the alleged infringing products.
22     THE COURT: Then it sounds to me like we're done
23 on that; right, Mr. Boehnen?
24     MR. BOEHNEN: Sorry, Your Honor. I wish I could
25 say we are. Two points:

**9**

1      Number one, there are categories of documents
2  other than batch records. There are the shipping delivery
3  records. They refused to provide those. And even as to the
4  batch records, they refused to commit to any date when we
5  would have these.
6      THE COURT: Well, I'm hearing them say --
7      MR. BOEHNEN: We have to get a witness to
8  follow-up with deposition.
9      THE COURT: I'm hearing them say -- unless I
10 misheard. Didn't you say some time within the next -- well,
11 what did you say about timing? I thought I heard a timing
12 statement.
13     MR. MORIARTY: We want to get them to them this
14 week. It may Friday or Monday. But, Your Honor, what we
15 offered them, which addresses the R&D documents --
16     THE COURT: Don't go to R&D yet. Let's stick
17 with the manufacturing because Mr. Boehnen says, "great,
18 love to get those attorney batch documents but there are
19 shipping and other kind of documents that they haven't told
20 us about." What is your response to that?
21     MR. MORIARTY: Your Honor, those are included.
22 We will obviously get them those, too.
23     THE COURT: All right. Mr. Boehnen, it sounds
24 like we're done. How about by Friday?
25     MR. BOEHNEN: If we have those, let's say we

Monday, September 19, 2005

SHEET 4

10

1  have those in our possession by next Monday, Your Honor, a
2  week from today, and then we would like to have a date for a
3  witness to resume and complete that 30(b)(6) deposition, and
4  then we would like our expert report to be deferred until a
5  week after the deposition is done.
6       MR. MORIARTY: Your Honor, we have already given
7  them a date for the continuation of the 30(b)(6) witness who
8  one of the categories is "what sort of search did you do to
9  find the documents" and he'll have more thorough answers at
10 this time. But we offered them a date of I believe a week
11 from this Thursday, and that is why we're making sure they
12 get the production in advance of that.
13      THE COURT: All right.
14      MR. MORIARTY: I would note we have never been
15 asked about extending expert reports. It's never been
16 mentioned until Mr. Boehnen just spoke, and I don't believe
17 any of these records have anything to do with their expert
18 report on validity which is due this Friday. So I don't
19 want to go off on a tangent, I want to stick to the R&D
20 documents, if Your Honor wants to hear that, but maybe Mr.
21 Ashinoff wants to return to that point.
22      THE COURT: Let's not go to expert reports yet.
23 One side or the other may persuade me this is all related
24 but, right now, I just want to know documents are getting
25 done, discovery depositions are getting done. What I hear

11

1  you telling me is you are going to get them the supplemental
2  document production by Friday and you have offered them a
3  witness by Thursday of next week. Have I got it right?
4       MR. MORIARTY: You have that right. That
5  witness will also -- we've also produced the R&D documents
6  and that witness will be fully prepared to testify about the
7  scope and thoroughness and completeness of the production of
8  the R&D documents.
9       And, Your Honor, one of the points we made in
10 our letter is we made a generic product. We're not similar
11 to Pharmacia. We don't have volumes of R&D documents. That
12 may allay Mr. Boehnen's concerns.
13      THE COURT: I read your paper, and I assume
14 Mr. Boehnen did, too.
15      So, Mr. Boehnen, you are going to have the R&D
16 documents likewise, or they say you've got them and you are
17 going to have a witness to address those additional R&D
18 document. Is there anything else with respect to the R&D
19 documents that you think you don't have or you want to
20 raise with me right now?
21      MR. BOEHNEN: No, Your Honor. I understand
22 we're talking all documents, R&D and manufacturing
23 documents, on Friday and then a witness next Thursday.
24      THE COURT: Is that right, Mr. Moriarty?
25      MR. MORIARTY: Yes, Your Honor.

12

1       THE COURT: Okay. Done.
2       Now, before we start talking about expert
3  reports, let's stay with issues associated with discovery
4  disputes. Have you guys worked out your contention
5  interrogatory kind of issues, or are we finished with
6  interrogatory disputes? Mr. Boehnen.
7       MR. BOEHNEN: Your Honor, in our view, we're not
8  but we are in the following sense. We think that at this
9  point, Your Honor should make it very clear perhaps by an
10 order that the parties are not going to be able to introduce
11 any arguments, theories, positions that have not been set
12 forth to date in either their interrogatory responses or
13 expert witness reports.
14      THE COURT: Well, let me hear Mr. Moriarty.
15 You've got an issue with that?
16      MR. ASHINOFF: Your Honor, this is Mr. Ashinoff.
17 I'll respond to that.
18      THE COURT: All right.
19      MR. ASHINOFF: I do, Your Honor. We have an
20 obligation to supplement interrogatory responses, as do our
21 adversaries.
22      THE COURT: Yes. Well, we're not talking
23 about discovery here. Right now, speak specifically to
24 contentions. All right?
25      MR. ASHINOFF: Your Honor, I don't believe

13

1  Mr. Boehnen is stating now contention interrogatories. We
2  essentially don't think we are deficient in our contention
3  interrogatories at this point. We supplemented a number of
4  times. And Mr. Boehnen's letter, as we point out, simply
5  fails to specify in any way where we're deficient. And we
6  don't believe we are.
7       THE COURT: Here is what I understand him to be
8  saying, and I'm just not going to jump the gun on this.
9  That it's been pulling teeth to get you folks to give them
10 responses. You've got some now. He doesn't want later
11 surprises. That's how I read his letters.
12      MR. ASHINOFF: Your Honor, we have laid out
13 what we know and as we get it -- we have our own issues with
14 Pharmacia's production. Those are not on the table for
15 today and I won't put them there. Suffice it to say, we're
16 awaiting long overdue for a lot of discovery and as we get
17 discovery from them, if that discovery leads us to revise
18 our theories and our contentions, we will file amended
19 interrogatory responses.
20      THE COURT: All right.
21      MR. ASHINOFF: We're current in terms of what we
22 have from them now.
23      THE COURT: So what I hear you saying is unless
24 they give you something that changes your mind, you know
25 what your positions are and you have given them your

Monday, September 19, 2005

SHEET 5

**14**

1  positions; right?
2      MR. ASHINOFF: Yes, Your Honor. With the
3  exception of the subject matter of the second letter which
4  I won't raise yet which is the willfulness contention.
5      THE COURT: Yes. All right. Then we're going
6  to let things just lay where they are right now. If there
7  comes some point later in the case where either side feels
8  like somebody was pulling a rabbit out of the hat and
9  playing a "gotcha" with new legal theories and contentions,
10 we'll just have to address it then. Hopefully, no one will
11 be inclined to try to pull something like that at the last
12 minute. But for right now, I don't think there is any
13 dispute for me to resolve in this regard.
14     MR. BOEHNEN: Your Honor, there is one
15 interrogatory which is not a contention-type interrogatory
16 where we asked for -- it's Interrogatory No. 4 -- where we
17 asked for their identification of prospective witnesses.
18     THE COURT: And your issue with their response
19 is what, Mr. Boehnen?
20     MR. BOEHNEN: And this is their witnesses in
21 relation to the laches and estoppel defense. So again, as
22 long as we don't have anybody new coming up later on that
23 was already known to them, we're okay with that. Our
24 problem with what has happened to date is that even though
25 they keep supplementing, they supplement with respect to

**15**

1  information they have long, long ago.
2      THE COURT: All right. Well, I'm not going to
3  get into whether they believe that or you believe that.
4  Suffice it to say that, Mr. Moriarty or Mr. Ashinoff, with
5  discovery time ticking away and people needing to schedule
6  depositions, is there a problem with the request that you
7  identify witnesses on these topics?
8      MR. MORIARTY: No, Your Honor. We actually
9  responded to these as contention interrogatories. I don't
10 believe we responded to them with witness identifications,
11 but we have previously I think served a list of the people
12 we think have relevant knowledge in the case and they've had
13 that for the better part of a year. So there really
14 shouldn't be surprises here.
15     But we responded to these as contention
16 interrogatories. We didn't view these as an additional
17 identification of witnesses. But the truth, Your Honor,
18 is that they are the counterpart to the discussion and
19 our witnesses, our fact witnesses from our end have been
20 identified for a long time in our initial disclosure of
21 witnesses.
22     THE COURT: Mr. Boehnen, do you have any dispute
23 with their assertion?
24     MR. BOEHNEN: As long as they don't bring in any
25 witnesses who haven't already been identified, Your Honor,

**16**

1  that's fine.
2      THE COURT: I guess we're --
3      MR. MORIARTY: Again, Your Honor, we didn't
4  identify them in the interrogatories. We viewed those as
5  contention interrogatories. I don't want to get into a
6  semantic game with Mr. Boehnen here.
7      THE COURT: I don't want to get into a
8  semantic game either. So what I'm telling you is if you
9  guys have identified your witnesses -- now, if they put an
10 interrogatory to you that says "tell us people who have
11 information on the following topics," are you telling me
12 you don't have to answer that?
13     MR. MORIARTY: No. If they still don't think
14 they have that and Mr. Boehnen off-line tells me the
15 interrogatories as to which he wants, that I'm happy to
16 supplement. I'll do it this week.
17     THE COURT: All right. Get it done.
18     MR. MORIARTY: Okay. Mr. Boehnen, you can call
19 me back.
20     MR. BOEHNEN: I think we made that very clear
21 that we believe we don't have that information. I don't
22 know how many --
23     THE COURT: Yes, whoa. Stop. I'm not getting
24 into it, and I'm not going to let you get into it on this
25 record. If you have something more you think you need, I'm

**17**

1  hearing him say they'll give it to you this week. Done.
2      MR. MORIARTY: Okay. Mr. Boehnen, call me.
3  We'll talk about witnesses. I don't think we identified.
4      MR. BOEHNEN: I'm leaving from here to the
5  airport. I won't have an opportunity to call you.
6      THE COURT: All right. Whoa, whoa, whoa, whoa.
7  Stop, both of you. I'm just not being clear enough with
8  you, I guess.
9      Don't talk to each other. I can't have you do
10 that on this record I've got. I got the court reporter
11 here. You guys have to address your remarks to me. It's as
12 if we're in open court, only we got the teleconference going
13 here.
14     So you guys know how to get in touch with each
15 other or people on your team can get in touch with each
16 over. Take that piece off-line. You don't have to do the
17 logistics part of it right now.
18     MR. MORIARTY: Yes, Your Honor.
19     MR. BOEHNEN: Yes, Your Honor. If I may briefly
20 comment, though. I think it's unfair for Sicor to say if
21 you don't have it let me know. We have been telling them
22 for months. The deposition is no different now than it was
23 a month ago.
24     THE COURT: Okay. Whether that is true or not
25 true, to me, right now is not significant. What is

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

**18**

1  significant is that if you did have a problem, I'm hearing
2  it's a problem that you can now resolve because they're
3  committed to resolve it this week.
4          Now, maybe you will speak to them and they'll
5  say we told you all these people and it's done or maybe
6  they'll say oh, you know, here are the specific names. But
7  either way, what you were looking for I think is now taken
8  care of so we need to move to the next topic. Are there any
9  other additional issues that you wanted to raise before we
10 start dealing with their bifurcation issue, Mr. Boehnen?
11         MR. BOEHNEN: Well, yes, Your Honor. We had our
12 request to depose their witness, Dr. Clark.
13         THE COURT: Right. So that was something
14 that at least in the first letter or so, I didn't see a
15 response to. And then there is an a later letter on that,
16 September 19th letter that has something to do with that.
17 So who wants to bring me up to speed on what the state of
18 play is with respect to Dr. Clark?
19         I'll give you first crack, Mr. Boehnen.
20         MR. ASHINOFF: Your Honor, this is Pharmacia's
21 request.
22         THE COURT: I know. I'm giving Mr. Boehnen the
23 first shot at it.
24         MR. BOEHNEN: Your Honor, Dr. Clark's expert
25 report was served on us by Sicor on August 15th. Shortly

**19**

1  after that, we served Sicor with a notice of deposition.
2  And not too much happened until I was -- and the notice of
3  deposition was set for September 12th, but along with the
4  cover letter, we indicated we would be willing to do it
5  any time that week at the doctor's convenience.
6          On Thursday, September 8th, we heard for the
7  first time that Dr. Clark was not going to be made available
8  at any time during the following week. With some follow-up
9  communications, they advised Mr. Rich that it was Sicor's
10 contention it was inappropriate for us to be deposing
11 Dr. Clark until after all of the expert reports were in and
12 that they would make him available at that point.
13         Our feeling is that we want to make very sure
14 that we fully understand Dr. Clark's position and that we
15 have him locked in and nailed down so that he isn't trying
16 to change them after he has seen our explanation about why
17 he is wrong. We fully realize we're only going to get one
18 bite at the Clark deposition apple but we wish to take that
19 before we have finished preparing our expert report, not
20 afterwards. And there is absolutely nothing in any rule
21 that I know of or any Order of this Court that says we
22 should not be allowed to do that.
23         THE COURT: All right. Mr. Ashinoff, is this
24 yours?
25         MR. ASHINOFF: Yes, it is, Your Honor.

**20**

1          THE COURT: Go ahead.
2          MR. ASHINOFF: Your Honor, very simply put,
3  this scheduling order was essentially worked out on consent.
4  And in no way shape or form did I, in my mind, or on paper,
5  consent, nor frankly, Your Honor, in over 30 years of
6  practice, have ever consented to let an adversary take an
7  expert witness deposition from my expert witness before they
8  put their cards on the table.
9          That it's a very uneven playing field when their
10 witness gets to read our report and then has a deposition
11 and then they can stake out a position, and their witness
12 comes in with the benefit of everything our witness says,
13 and our witness has no information whatsoever about their
14 position.
15         I have never, ever agreed to that. Our local
16 counsel advises me that's not common practice in Delaware.
17 We never would have agreed to that. And I don't think it's
18 fair. I don't think it's a level playing field.
19         They have their report due on the 23rd of
20 September. We gave them a month and-a-quarter to get their
21 response report in, and they know what our witness is saying
22 because it's in his report. But the truth is our expert may
23 well have a reply or rebuttal report to what they say. I
24 do not think that one expert with Pharmacia should have all
25 of this out on the table and know everything about what

**21**

1  our expert says when our witness is being forced to give a
2  deposition before he knows anything about what their expert
3  says.
4          THE COURT: All right. I've got you,
5  Mr. Ashinoff.
6          Mr. Boehnen, this is your chance to reply.
7          MR. BOEHNEN: Their expert report is his
8  position. Presumably, he is the one who knows more about
9  his position than anybody does, and I think we are entitled
10 to find out what his position is before we formulate our
11 position.
12         THE COURT: Okay.
13         MR. BOEHNEN: I fully realize after their expert
14 sees our report, he may well articulate new aspects of his
15 position. He is going to want to explain why he thinks
16 our people are wrong, but he should not at that point be
17 changing his position.
18         THE COURT: Okay. Well, speaking of positions,
19 I've got both your positions.
20         I have to say, Mr. Boehnen, you are on the wrong
21 side of this. I've been working in these kinds of cases for
22 a few years and other kinds of cases for more than that and
23 it is certainly not the custom or practice in this court to
24 require people to give their experts up for discovery until
25 the parties have essentially exchanged their positions.

SHEET 7

**22**

1  That's the way it's typically done and that's the way it's
2  going to be done in this case. So your position is not
3  easily defensible given the practice and what I think the
4  practicalities are of expert testimony and litigation in
5  this day. So you will not get the relief you seek on that
6  point.
7      All right. Mr. Boehnen, is there anything else
8  from your side that we should be talking about before we
9  shift over to the Sicor piece?
10     MR. BOEHNEN: No, Your Honor. Thank you.
11     THE COURT: All right. Mr. Moriarty or
12 Mr. Ashinoff.
13     MR. ASHINOFF: Your Honor, we're not actually
14 seeking relief today. We weren't sure we needed to write
15 this letter before we filed the motion and out of an
16 abundance of caution we wrote it because one element of the
17 motion to bifurcate is to stay discovery, not as to damages
18 and the letter you received in response goes off on damages.
19 We're not asking to stay that. We've got our experts
20 working hard and we've given them a 10-hour deposition on
21 damages.
22     The only aspect of discovery we want to stay is
23 the need to produce attorney-client material, but we don't
24 need relief now. We're content. We will try to file our
25 motion certainly by next Monday at the latest and we will

**23**

1  lay out fully in the motion the considerations we think
2  support the relief we're asking for.
3      THE COURT: All right. Well, you will have your
4  chance to do that. Let me just give you a heads up. It's
5  going to take one whale of a showing for you to get a
6  bifurcation of willfulness out of me. That, speaking of
7  custom and practice, is also not the custom and practice,
8  as your local counsel has likely advised you. That's not to
9  say in an appropriate case, I couldn't be convinced because
10 I might be. But you need to be conscious that you have a
11 real uphill battle on this.
12     So if you feel like you want to spend your time,
13 your client's money to take a crack at it, you are free to
14 go do that and the other side will have to respond. You may
15 not get a fulsome response from me if I think this is a
16 typical case and that it ought to be handled in the typical
17 fashion that we see in this court, certainly in my court and
18 I think typically in the other courtrooms of the judges of
19 this District, which is, as you know, you are going to have
20 to try your case all at once.
21     MR. ASHINOFF: Your Honor, I hear you and I
22 appreciate the advance warning of the Court, without any
23 decision, the Court's general experience with it. We do
24 feel, Your Honor, we need to make this motion.
25     The only question I'd have for the Court is we

**24**

1  contemplate needing to make an in camera submission so that
2  the Court understands the prejudice argument that we're
3  raising about arguably privileged material. And I would ask
4  the Court if there is any way you like that to be done in
5  these contexts because I know the cases we intend to rely on
6  urge and all reflect such an in camera consideration. And I
7  would want to make a submission with an explanation to the
8  Court about that material as part of the motion but in
9  camera and obviously sealed.
10     THE COURT: You can certainly submit your
11 documents in camera and your legal arguments ought to be
12 submitted so that the other side can respond to them. Let
13 me say this: If there is some piece of a document which
14 you need to point out to me with specificity because you
15 are afraid I will not understand the relevance or the
16 significance of it and to say that in a submission handed to
17 the other side would in effect be giving up the privilege,
18 you may submit that to me in camera under seal with the
19 documents. But I expect that sort of thing ought to be
20 very, very limited. In short, you give me the documents,
21 but you give your arguments to the attorney side, too, so
22 they can respond unless it's something genuinely
23 extraordinary that you think will get past me; all right?
24     MR. ASHINOFF: Your Honor, you anticipated
25 me perfectly. I do need to explain some aspects of the

**25**

1  material in camera but we will make the legal arguments
2  obviously available to our adversaries.
3      THE COURT: All right. Is there anything else
4  we need to talk up on this call, Mr. Boehnen?
5      MR. BOEHNEN: No, Your Honor.
6      THE COURT: Mr. Moriarty or Mr. Ashinoff?
7      MR. MORIARTY: No, Your Honor.
8      THE COURT: All right. Thanks for your time.
9  Good-bye.
10     (The attorneys respond, "Thank you, Your
11 Honor.")
12     (Telephone conference ends at 5:05 p.m.)

## 0

**04-833** [1] - 1:9

## 1

**10-hour** [1] - 22:20
**10:30** [2] - 1:12, 2:19
**12th** [1] - 19:3
**15th** [3] - 3:10, 3:12, 18:25
**19th** [2] - 3:12, 18:16
**1st** [2] - 3:9, 3:20

## 2

**2005** [3] - 1:12, 8:11, 8:17
**23rd** [1] - 20:19
**28** [1] - 1:12

## 3

**30** [2] - 5:5, 20:5
**30(b)(6** [5] - 4:21, 5:7, 6:18, 10:3, 10:7

## 4

**4** [1] - 14:16
**400** [1] - 5:12

## 5

**500** [1] - 5:16
**5:05** [1] - 25:12

## 8

**8th** [1] - 19:6

## A

**able** [2] - 6:3, 12:10
**absolutely** [1] - 19:20
**abundance** [1] - 22:16
**accept** [1] - 5:25
**Action** [1] - 1:4
**additional** [8] - 5:12, 7:7, 7:8, 7:10, 8:13, 11:17, 15:16, 18:9
**address** [4] - 7:22, 11:17, 14:10, 17:11
**addresses** [1] - 9:15
**addressing** [1] - 4:25
**admonition** [1] - 7:5
**advance** [2] - 10:12, 23:22
**adversaries** [2] - 12:21, 25:2
**adversary** [1] - 20:6
**advised** [3] - 4:2, 19:9, 23:8
**advises** [1] - 20:16
**afraid** [1] - 24:15
**afternoon** [3] - 3:1, 3:6, 3:7
**afterwards** [1] - 19:20
**ago** [2] - 15:1, 17:23
**agreed** [3] - 8:16, 20:15, 20:17
**ahead** [3] - 3:13, 3:16, 20:1
**airport** [1] - 17:5
**allay** [1] - 11:12
**alleged** [1] - 8:21
**allegedly** [1] - 8:15
**allowed** [1] - 19:22
**almost** [1] - 4:15
**amended** [2] - 3:10, 13:18
**and-a-quarter** [1] - 20:20
**answer** [1] - 16:12
**answers** [1] - 10:9
**anticipated** [1] - 24:24
**Appearances** [2] - 1:16, 2:1
**apple** [1] - 19:18
**appreciate** [1] - 23:22
**appropriate** [1] - 23:9
**arguably** [1] - 24:3
**argument** [1] - 24:2
**arguments** [4] - 12:11, 24:11, 24:21, 25:1
**Arsht** [1] - 1:17
**articulate** [1] - 21:14
**Ashby** [2] - 2:3, 3:2
**Ashinoff** [21] - 2:6, 3:3, 10:21, 12:16, 12:19, 12:25, 13:12, 13:21, 14:2, 15:4, 18:20, 19:23, 19:25, 20:2, 21:5, 22:12, 22:13, 23:21, 24:24, 25:6
**aspect** [1] - 22:22
**aspects** [3] - 6:20, 21:14, 24:25
**assertion** [2] - 4:18, 15:23
**associated** [1] - 12:3
**assume** [1] - 11:13
**attorney** [4] - 7:7, 9:18, 22:23, 24:21
**attorney-client** [1] - 22:23
**attorneys** [2] - 5:4, 25:10

**August** [1] - 18:25
**available** [4] - 8:6, 19:7, 19:12, 25:2
**awaiting** [1] - 13:16
**awarding** [1] - 7:6
**aware** [2] - 5:13, 5:23

## B

**basic** [1] - 4:19
**batch** [7] - 8:4, 8:7, 8:10, 8:13, 9:2, 9:4, 9:18
**batches** [1] - 8:5
**battle** [1] - 23:11
**begin** [1] - 3:13
**beginning** [1] - 2:19
**benefit** [1] - 20:12
**Berghoff** [1] - 1:20
**best** [1] - 4:1
**better** [1] - 15:13
**bifurcate** [1] - 22:17
**bifurcation** [2] - 18:10, 23:6
**bit** [1] - 6:15
**bite** [1] - 19:18
**Boehnen** [51] - 1:20, 1:20, 2:24, 3:14, 3:18, 4:18, 4:22, 4:24, 5:22, 6:15, 6:20, 8:23, 8:24, 9:7, 9:17, 9:23, 9:25, 10:16, 11:14, 11:15, 11:21, 12:6, 12:7, 13:1, 14:14, 14:19, 14:20, 15:22, 15:24, 16:6, 16:14, 16:18, 16:20, 17:2, 17:4, 17:19, 18:10, 18:11, 18:19, 18:22, 18:24, 21:6, 21:7, 21:13, 21:20, 22:7, 22:10, 25:4, 25:5
**Boehnen's** [2] - 11:12, 13:4
**Brian** [4] - 1:24, 2:6, 3:3, 7:21
**briefly** [1] - 17:19
**bring** [2] - 15:24, 18:17
**bye** [1] - 25:9

## C

**camera** [6] - 24:1, 24:6, 24:9, 24:11, 24:18, 25:1
**cards** [1] - 20:8
**care** [1] - 18:8
**careful** [2] - 6:25, 7:15

**case** [6] - 14:7, 15:12, 22:2, 23:9, 23:16, 23:20
**cases** [3] - 21:21, 21:22, 24:5
**catch** [1] - 6:11
**categories** [2] - 9:1, 10:8
**caution** [1] - 22:16
**certainly** [4] - 21:23, 22:25, 23:17, 24:10
**chambers** [1] - 2:19
**chance** [2] - 21:6, 23:4
**change** [1] - 19:16
**changes** [1] - 13:24
**changing** [1] - 21:17
**Chicago** [2] - 1:21, 2:25
**Civil** [1] - 1:4
**claimants** [1] - 1:10
**clarification** [1] - 6:12
**Clark** [5] - 18:12, 18:18, 19:7, 19:11, 19:18
**Clark's** [2] - 18:24, 19:14
**clear** [4] - 5:17, 12:9, 16:20, 17:7
**client** [1] - 22:23
**client's** [1] - 23:13
**co** [1] - 4:18
**co-counsel** [1] - 4:18
**coming** [1] - 14:22
**comment** [4] - 4:6, 5:1, 17:20
**commit** [1] - 9:4
**committed** [1] - 18:3
**common** [1] - 20:16
**communications** [1] - 19:9
**Company** [2] - 1:4, 1:22
**complete** [1] - 10:3
**completeness** [1] - 11:7
**concerned** [5] - 4:7, 5:15, 6:5, 6:9, 6:21
**concerns** [1] - 11:12
**conference** [3] - 2:19, 3:8, 25:12
**Conference** [1] - 1:12
**conscious** [1] - 23:10
**consent** [2] - 20:3, 20:5
**consented** [1] - 20:6
**consideration** [1] - 24:6
**considerations** [1] - 23:1

**contemplate** [1] - 24:1
**content** [1] - 22:24
**contention** [9] - 12:4, 13:1, 13:2, 14:4, 14:15, 15:9, 15:15, 16:5, 19:10
**contention-type** [1] - 14:15
**contentions** [3] - 12:24, 13:18, 14:9
**contexts** [1] - 24:5
**continuation** [1] - 10:7
**continued** [2] - 3:24, 6:2
**Continued** [1] - 2:1
**convenience** [1] - 19:5
**convinced** [1] - 23:9
**correctly** [1] - 8:10
**cost** [1] - 6:6
**costs** [1] - 7:6
**counsel** [4] - 3:3, 4:18, 20:16, 23:8
**Counsel** [2] - 1:22, 2:8
**Counter** [2] - 1:6, 1:10
**Counter-claimants** [1] - 1:10
**Counter-defendant** [1] - 1:6
**counterpart** [1] - 15:18
**couple** [2] - 3:24, 3:25
**course** [2] - 3:20, 3:25
**court** [5] - 17:10, 17:12, 21:23, 23:17
**Court** [60] - 1:1, 2:20, 3:5, 3:7, 4:2, 4:10, 4:14, 4:17, 5:11, 5:20, 5:25, 6:8, 7:23, 8:1, 8:18, 8:22, 9:6, 9:9, 9:16, 9:23, 10:13, 10:22, 11:13, 11:24, 12:1, 12:14, 12:18, 12:22, 13:7, 13:20, 13:23, 14:5, 14:18, 15:2, 15:22, 16:2, 16:7, 16:17, 16:23, 17:6, 17:24, 18:13, 18:22, 19:21, 19:23, 20:1, 21:4, 21:12, 21:18, 22:11, 23:3, 23:22, 23:25, 24:2, 24:4, 24:8, 24:10, 25:3, 25:6, 25:8
**Courts** [2] - 7:5, 23:23
**courtrooms** [1] - 23:18
**cover** [1] - 19:4

crack [2] - 18:19, 23:13
current [1] - 13:21
custom [3] - 21:23, 23:7
cut [2] - 4:15, 6:13

**D**

damages [3] - 22:17, 22:18, 22:21
Dan [1] - 2:24
Daniel [1] - 1:20
date [6] - 9:4, 10:2, 10:7, 10:10, 12:12, 14:24
dated [1] - 3:11
Day's [1] - 3:11
dealing [2] - 4:4, 18:10
decision [1] - 23:23
defendant [1] - 1:6
defendants [1] - 3:2
Defendants [1] - 1:9
defense [1] - 14:21
defensible [1] - 22:3
deferred [1] - 10:4
deficient [2] - 13:2, 13:5
Delaware [3] - 1:2, 1:11, 20:16
delivery [1] - 9:2
depose [1] - 18:12
deposing [1] - 19:10
deposition [17] - 5:3, 5:5, 6:2, 6:3, 7:3, 7:17, 9:8, 10:3, 10:5, 17:22, 19:1, 19:3, 19:18, 20:7, 20:10, 21:2, 22:20
depositions [2] - 10:25, 15:6
detail [1] - 8:7
detailed [1] - 8:6
develop [1] - 3:25
different [1] - 17:22
disclosure [1] - 15:20
discovery [12] - 3:7, 4:19, 10:25, 12:3, 12:23, 13:16, 13:17, 15:5, 21:24, 22:17, 22:22
discussion [1] - 15:18
dispute [3] - 3:8, 14:13, 15:22
disputes [2] - 12:4, 12:6
District [3] - 1:1, 1:2, 23:19

doctor's [1] - 19:5
document [6] - 4:5, 7:12, 7:19, 11:2, 11:18, 24:13
documents [30] - 4:7, 4:8, 4:25, 5:2, 6:4, 6:17, 6:21, 6:22, 6:24, 7:9, 7:10, 7:13, 9:1, 9:15, 9:18, 9:19, 10:9, 10:20, 10:24, 11:5, 11:8, 11:11, 11:16, 11:19, 11:22, 11:23, 24:11, 24:19, 24:20
Done [2] - 12:1, 17:1
done [12] - 5:18, 5:23, 8:22, 9:24, 10:5, 10:25, 16:17, 18:5, 22:1, 22:2, 24:4
down [1] - 19:15
Dr [6] - 18:12, 18:18, 18:24, 19:7, 19:11, 19:14
due [2] - 10:18, 20:19
during [2] - 3:25, 19:8

**E**

early [1] - 8:11
easily [1] - 22:3
effect [1] - 24:17
either [5] - 7:3, 12:12, 14:7, 16:8, 18:7
element [1] - 22:16
end [2] - 8:10, 15:19
ends [1] - 25:12
entered [1] - 5:4
entitled [1] - 21:9
Esq [6] - 1:18, 1:20, 1:21, 2:3, 2:6, 2:6
essentially [3] - 13:2, 20:3, 21:25
establish [1] - 6:3
estoppel [1] - 14:21
exactly [1] - 8:14
example [2] - 4:20, 8:7
exception [1] - 14:3
exchanged [1] - 21:25
expect [1] - 24:19
experience [1] - 23:23
expert [20] - 7:9, 7:18, 10:4, 10:15, 10:17, 10:22, 12:2, 12:13, 18:24, 19:11, 19:19, 20:7, 20:22, 20:24, 21:1, 21:2, 21:7, 21:13, 22:4
expert's [1] - 7:20
experts [2] - 21:24, 22:19

explain [2] - 21:15, 24:25
explaining [1] - 4:12
explanation [2] - 19:16, 24:7
extending [1] - 10:15
extent [1] - 8:13
extraordinary [1] - 24:23

**F**

fact [1] - 15:19
factory [1] - 8:15
fails [1] - 13:5
fair [1] - 20:18
fashion [1] - 23:17
Fda [1] - 8:7
fees [1] - 7:7
few [1] - 21:22
field [2] - 20:9, 20:18
file [2] - 13:18, 22:24
filed [2] - 3:20, 22:15
fine [1] - 16:1
finished [2] - 12:5, 19:19
firm [3] - 2:24, 3:4, 3:11
first [7] - 3:17, 4:4, 4:24, 18:14, 18:19, 18:23, 19:7
focus [1] - 6:16
folks [4] - 3:11, 3:17, 4:20, 13:9
follow [2] - 9:8, 19:8
follow-up [2] - 9:8, 19:8
following [4] - 2:18, 12:8, 16:11, 19:8
forced [1] - 21:1
form [1] - 20:4
formulate [1] - 21:10
forth [1] - 12:12
forward [2] - 7:2, 7:16
frankly [1] - 20:5
free [1] - 23:13
Friday [5] - 9:14, 9:24, 10:18, 11:2, 11:23
front [1] - 6:5
full [5] - 4:8, 4:9, 5:18, 6:25, 7:18
fully [5] - 11:6, 19:14, 19:17, 21:13, 23:1
fulsome [1] - 23:15

**G**

Gaffigan [1] - 1:24
game [2] - 16:6, 16:8

Geddes [2] - 2:3, 3:2
general [1] - 23:23
generic [1] - 11:10
genuinely [1] - 24:22
given [6] - 6:13, 8:20, 10:6, 13:25, 22:3, 22:20
Good-bye [1] - 25:9
gotcha [1] - 14:9
great [1] - 9:17
guess [3] - 7:4, 16:2, 17:8
gun [1] - 13:8
guys [4] - 12:4, 16:9, 17:11, 17:14

**H**

handed [1] - 24:16
handled [1] - 23:16
happy [1] - 16:15
hard [1] - 22:20
hat [1] - 14:8
heads [1] - 23:4
hear [5] - 10:20, 10:25, 12:14, 13:23, 23:21
heard [2] - 9:11, 19:6
hearing [5] - 3:21, 9:6, 9:9, 17:1, 18:1
held [1] - 2:19
Hi [1] - 2:20
Honor [44] - 2:22, 3:1, 3:6, 3:19, 4:13, 4:24, 7:21, 8:24, 9:14, 9:21, 10:1, 10:6, 10:20, 11:9, 11:21, 11:25, 12:7, 12:9, 12:16, 12:19, 12:25, 13:12, 14:2, 14:14, 15:8, 15:17, 15:25, 16:3, 17:18, 17:19, 18:11, 18:20, 18:24, 19:25, 20:2, 20:5, 22:10, 22:13, 23:21, 23:24, 24:24, 25:5, 25:7, 25:11
Honorable [1] - 1:14
hope [1] - 8:13
Hopefully [1] - 14:10
hoping [1] - 3:21
Hulbert [1] - 1:20

**I**

identification [2] - 14:17, 15:17
identifications [1] - 15:10

identified [4] - 15:20, 15:25, 16:9, 17:3
identify [2] - 15:7, 16:4
Illinois [1] - 1:21
inappropriate [1] - 19:10
Inc [4] - 1:8, 1:8, 2:8, 2:8
inclined [1] - 14:11
included [1] - 9:21
incumbent [1] - 7:2
indicated [1] - 19:4
indicating [1] - 8:20
information [5] - 8:16, 15:1, 16:11, 16:21, 20:13
infringing [2] - 8:15, 8:21
initial [2] - 8:11, 15:20
intend [1] - 24:5
interrogatories [7] - 13:1, 13:3, 15:9, 15:16, 16:4, 16:5, 16:15
Interrogatory [1] - 14:16
interrogatory [8] - 12:5, 12:6, 12:12, 12:20, 13:19, 14:15, 16:10
introduce [1] - 12:10
issue [3] - 12:15, 14:18, 18:10
issues [4] - 12:3, 12:5, 13:13, 18:9

**J**

John [2] - 2:3, 3:2
Jordan [2] - 1:14, 2:20
Joshua [2] - 1:21, 2:24
Judge [1] - 2:20
judges [1] - 23:18
July [1] - 1:12
jump [1] - 13:8

**K**

Kaj [1] - 1:9
keep [1] - 14:25
Kent [1] - 1:14
kind [4] - 4:1, 8:8, 9:19, 12:5
kinds [2] - 21:21, 21:22
knowledge [2] - 5:8, 15:12
known [1] - 14:23

knows [2] - 21:2, 21:8

**L**

lab [3] - 4:20, 5:12, 5:16
laboratory [1] - 8:4
laches [1] - 14:21
laid [1] - 13:12
last [2] - 7:24, 14:11
latest [1] - 22:25
lay [2] - 14:6, 23:1
lead [1] - 3:3
leads [1] - 13:17
least [1] - 18:14
leaving [1] - 17:4
legal [3] - 14:9, 24:11, 25:1
letter [16] - 3:8, 3:10, 4:2, 4:25, 5:1, 5:10, 5:11, 11:10, 13:4, 14:3, 18:14, 18:15, 18:16, 19:4, 22:15, 22:18
letters [3] - 3:11, 3:23, 13:11
level [1] - 20:18
light [1] - 4:20
likely [1] - 23:8
likewise [1] - 11:16
limited [1] - 24:20
line [3] - 2:21, 16:14, 17:16
list [1] - 15:11
litigation [1] - 22:4
Llp [2] - 1:20, 2:5
local [2] - 20:15, 23:8
locally [1] - 3:2
locked [1] - 19:15
logistics [1] - 17:17
looking [2] - 5:20, 18:7
love [1] - 9:18

**M**

manufacturing [7] - 4:6, 4:25, 6:22, 7:13, 7:25, 9:17, 11:22
Maryellen [2] - 1:18, 2:23
material [4] - 22:23, 24:3, 24:8, 25:1
matter [1] - 14:3
Mcdonnell [2] - 1:20, 2:24
mentioned [1] - 10:16
Merit [1] - 1:25
midstream [1] - 6:11

might [1] - 23:10
mind [2] - 13:24, 20:4
minute [1] - 14:12
misheard [1] - 9:10
Monday [3] - 9:14, 10:1, 22:25
money [1] - 23:13
month [2] - 17:23, 20:20
months [1] - 17:22
Moriarty [31] - 2:6, 3:3, 3:6, 4:11, 4:13, 4:15, 6:19, 6:24, 7:14, 7:21, 7:22, 7:24, 8:19, 9:13, 9:21, 10:6, 10:14, 11:4, 11:24, 11:25, 12:14, 15:4, 15:8, 16:3, 16:13, 16:18, 17:2, 17:18, 22:11, 25:6, 25:7
Morris [2] - 1:17, 2:23
motion [6] - 22:15, 22:17, 22:25, 23:1, 23:24, 24:8
move [2] - 6:13, 18:8
moved [1] - 6:16

**N**

nailed [1] - 19:15
names [1] - 18:6
Nath [1] - 2:5
need [14] - 3:16, 6:1, 6:10, 6:11, 6:12, 16:25, 18:8, 22:23, 22:24, 23:10, 23:24, 24:14, 24:25, 25:4
needed [1] - 22:14
needing [3] - 7:11, 15:5, 24:1
never [4] - 10:14, 10:15, 20:15, 20:17
New [2] - 2:7
new [3] - 14:9, 14:22, 21:14
next [7] - 3:25, 9:10, 10:1, 11:3, 11:23, 18:8, 22:25
Nichols [2] - 1:17, 2:23
Noreika [3] - 2:23, 3:9, 3:14
Norieka [2] - 1:18, 2:22
note [1] - 10:14
Note [1] - 2:18
notebooks [3] - 4:20, 5:12, 5:16
noted [1] - 4:5

nothing [1] - 19:20
notice [2] - 19:1, 19:2
number [1] - 13:3
Number [1] - 9:1

**O**

obligation [1] - 12:20
obviously [4] - 6:5, 9:22, 24:9, 25:2
occasions [1] - 6:11
off-line [2] - 16:14, 17:16
offered [3] - 9:15, 10:10, 11:2
once [1] - 23:20
One [2] - 5:9, 10:23
one [13] - 3:11, 5:10, 7:19, 9:1, 10:8, 11:9, 14:10, 14:14, 19:17, 20:24, 21:8, 22:16, 23:5
ooo [1] - 2:16
open [1] - 17:12
opportunity [2] - 3:23, 17:5
Order [1] - 19:21
order [4] - 3:22, 7:19, 12:10, 20:3
original [1] - 8:19
originally [1] - 3:8
otherwise [1] - 6:1
Otherwise [1] - 7:6
ought [3] - 23:16, 24:11, 24:19
overdue [1] - 13:16
own [1] - 13:13

**P**

pages [3] - 5:12, 5:13, 5:16
paper [2] - 11:13, 20:4
part [3] - 15:13, 17:17, 24:8
parties [3] - 3:22, 12:10, 21:25
past [2] - 6:16, 24:23
people [7] - 15:5, 15:11, 16:10, 17:15, 18:5, 21:16, 21:24
perfectly [1] - 24:25
perhaps [1] - 12:9
persuade [1] - 10:23
pharmaceutical [1] - 8:5
Pharmaceuticals [2] - 1:8, 2:8
Pharmacia [4] - 1:4,

1:22, 11:11, 20:24
Pharmacia's [2] - 13:14, 18:20
pick [1] - 6:10
piece [3] - 17:16, 22:9, 24:13
plaintiff [2] - 2:22, 3:15
Plaintiff [1] - 1:5
play [1] - 18:18
playing [3] - 14:9, 20:9, 20:18
Pm [1] - 25:12
point [14] - 4:11, 5:3, 5:22, 6:13, 6:16, 10:21, 12:9, 13:3, 13:4, 14:7, 19:12, 21:16, 22:6, 24:14
pointed [1] - 8:10
points [3] - 7:22, 8:25, 11:9
position [10] - 19:14, 20:11, 20:14, 21:8, 21:9, 21:10, 21:11, 21:15, 21:17, 22:2
positions [6] - 12:11, 13:25, 14:1, 21:18, 21:19, 21:25
possession [1] - 10:1
practicalities [1] - 22:4
practice [6] - 20:6, 20:16, 21:23, 22:3, 23:7
prejudice [1] - 24:2
prepared [1] - 11:6
preparing [1] - 19:19
Presumably [1] - 21:8
previously [1] - 15:11
privilege [1] - 24:17
privileged [1] - 24:3
problem [4] - 14:24, 15:6, 18:1, 18:2
produce [2] - 8:3, 22:23
produced [8] - 5:2, 5:4, 5:6, 5:14, 7:1, 7:16, 8:5, 11:5
product [1] - 11:10
production [12] - 4:5, 4:8, 4:9, 7:18, 8:3, 8:11, 8:17, 8:20, 10:12, 11:2, 11:7, 13:14
products [4] - 8:5, 8:8, 8:15, 8:21
prospective [1] - 14:17
provide [1] - 9:3
pull [2] - 4:10, 14:11

pulling [2] - 13:9, 14:8
put [6] - 3:24, 4:1, 13:15, 16:9, 20:2, 20:8

**Q**

quarter [1] - 20:20

**R**

R&d [17] - 5:2, 5:13, 5:16, 6:4, 6:21, 6:24, 7:12, 9:15, 9:16, 10:19, 11:5, 11:8, 11:11, 11:15, 11:17, 11:18, 11:22
rabbit [1] - 14:8
raise [3] - 11:20, 14:4, 18:9
raising [1] - 24:3
read [3] - 11:13, 13:11, 20:10
real [1] - 23:11
realize [4] - 5:24, 7:2, 19:17, 21:13
really [2] - 4:5, 15:13
rebuttal [1] - 20:23
received [1] - 22:18
record [4] - 7:25, 8:1, 16:25, 17:10
records [13] - 8:4, 8:6, 8:7, 8:10, 8:13, 8:17, 8:19, 8:20, 9:2, 9:3, 9:4, 10:17
reflect [1] - 24:6
refused [2] - 9:3, 9:4
regard [2] - 5:21, 14:13
Registered [1] - 1:25
Reld [2] - 2:6, 3:3
related [1] - 10:23
relation [1] - 14:21
relevance [1] - 24:15
relevant [1] - 15:12
relief [5] - 6:18, 22:5, 22:14, 22:24, 23:2
rely [1] - 24:5
remain [2] - 4:7, 5:15
remarks [1] - 17:11
replacement [2] - 3:10, 4:1
reply [2] - 20:23, 21:6
report [15] - 7:10, 7:11, 7:18, 7:20, 10:4, 10:18, 18:25, 19:19, 20:10, 20:19, 20:21, 20:22, 20:23, 21:7, 21:14

Reporter [1] - 1:25
reporter [1] - 17:10
Reporters [1] - 2:18
reports [5] - 10:15, 10:22, 12:3, 12:13, 19:11
representation [2] - 5:17, 5:24
representing [1] - 6:25
represents [1] - 7:15
request [4] - 4:6, 15:6, 18:12, 18:21
requests [1] - 7:12
require [1] - 21:24
resolve [3] - 14:13, 18:2, 18:3
resolved [1] - 7:25
respect [4] - 6:17, 11:18, 14:25, 18:18
respond [5] - 12:17, 23:14, 24:12, 24:22, 25:10
responded [3] - 15:9, 15:10, 15:15
response [9] - 3:12, 4:4, 4:17, 9:20, 14:18, 18:15, 20:21, 22:18, 23:15
responses [4] - 12:12, 12:20, 13:10, 13:19
resume [2] - 7:16, 10:3
return [1] - 10:21
review [1] - 8:6
revise [1] - 13:17
Rich [4] - 1:21, 2:24, 8:2, 19:9
room [1] - 5:5
Rosenthal [1] - 2:5
rule [1] - 19:20

**S**

schedule [1] - 15:5
scheduling [1] - 20:3
scope [1] - 11:7
seal [1] - 24:18
sealed [1] - 24:9
search [9] - 4:8, 5:6, 5:8, 5:18, 5:19, 5:23, 7:1, 7:15, 10:8
second [1] - 14:3
seconds [1] - 5:5
see [2] - 18:14, 23:17
seek [1] - 22:5
seeking [1] - 22:14
sees [1] - 21:14
semantic [2] - 16:6, 16:8
sense [1] - 12:8
September [6] - 3:9, 3:12, 3:20, 18:16, 19:3, 19:6, 20:20
served [3] - 15:11, 18:25, 19:1
set [2] - 12:11, 19:3
shape [1] - 20:4
shift [1] - 22:9
shipping [2] - 9:2, 9:19
short [2] - 4:23, 24:20
Shortly [1] - 18:25
shot [1] - 18:23
show [2] - 6:1, 7:3
showing [1] - 23:5
shy [1] - 5:17
Sicor [9] - 1:8, 2:8, 4:2, 17:20, 18:25, 19:1, 22:9
Sicor's [3] - 4:4, 5:11, 19:9
side [10] - 7:12, 7:13, 10:23, 14:7, 21:21, 22:8, 23:14, 24:12, 24:17, 24:21
sides [1] - 6:9
significance [1] - 24:16
significant [2] - 17:25, 18:1
similar [1] - 11:10
simply [2] - 13:4, 20:2
Sonnenschein [2] - 2:5, 3:4
soon [1] - 3:21
Sorry [1] - 8:24
sort [2] - 10:8, 24:19
sounds [2] - 8:22, 9:23
speakerphone [1] - 6:10
speakerphones [1] - 6:14
speaking [3] - 3:15, 21:18, 23:6
specific [1] - 18:6
specifically [2] - 6:17, 12:23
specificity [1] - 24:14
specify [1] - 13:5
speed [1] - 18:17
spend [1] - 23:12
stake [1] - 20:11
start [3] - 7:24, 12:2, 18:10
state [1] - 18:17
statement [1] - 9:12
States [1] - 1:1
stating [1] - 13:1
stay [4] - 12:3, 22:17, 22:19, 22:22
stick [2] - 9:16, 10:19
still [3] - 4:19, 4:23, 16:13
Stop [2] - 16:23, 17:7
stopped [1] - 4:16
subject [1] - 14:3
submission [4] - 5:11, 24:1, 24:7, 24:16
submit [3] - 7:20, 24:10, 24:18
submitted [1] - 24:12
Suffice [2] - 13:15, 15:4
suggest [1] - 6:9
supplement [7] - 7:11, 8:3, 8:9, 8:17, 12:20, 14:25, 16:16
supplemental [1] - 11:1
supplemented [1] - 13:3
supplementing [1] - 14:25
support [1] - 23:2
surprises [2] - 13:11, 15:14

**T**

table [3] - 13:14, 20:8, 20:25
tangent [1] - 10:19
team [1] - 17:15
technology [1] - 6:14
tee [1] - 3:16
teeth [1] - 13:9
teleconference [1] - 17:12
Telephone [2] - 1:12, 25:12
telephone [1] - 2:18
terms [1] - 13:21
testify [1] - 11:6
testimony [1] - 22:4
theories [3] - 12:11, 13:18, 14:9
they've [2] - 5:18, 15:12
thinks [1] - 21:15
thorough [5] - 4:8, 5:18, 7:1, 7:15, 10:9
thoroughness [1] - 11:7
Thursday [5] - 1:12, 10:11, 11:3, 11:23, 19:6
ticking [1] - 15:5
timing [2] - 9:11
today [4] - 5:10, 10:2, 13:15, 22:14
topic [3] - 5:7, 7:24, 18:8
topics [2] - 15:7, 16:11
total [1] - 5:16
touch [2] - 17:14, 17:15
touched [1] - 3:8
true [6] - 7:3, 7:4, 7:6, 17:24, 17:25
truth [2] - 15:17, 20:22
try [3] - 14:11, 22:24, 23:20
trying [1] - 19:15
Tunnell [1] - 1:17
turns [1] - 7:4
Two [1] - 8:25
two [3] - 3:10, 5:9, 6:20
type [1] - 14:15
typical [2] - 23:16
typically [2] - 22:1, 23:18

**U**

under [1] - 24:18
uneven [1] - 20:9
unfair [1] - 17:20
United [1] - 1:1
units [1] - 8:14
unless [4] - 5:25, 9:9, 13:23, 24:22
up [11] - 3:16, 6:10, 6:15, 9:8, 14:22, 18:17, 19:8, 21:24, 23:4, 24:17, 25:4
updated [1] - 4:2
uphill [1] - 23:11
Upjohn [2] - 1:4, 1:22
urge [1] - 24:6
Usdcj [1] - 1:14
useful [1] - 7:9

**V**

validity [1] - 10:18
view [2] - 12:7, 15:16
viewed [1] - 16:4
volumes [1] - 11:11

**W**

wants [4] - 10:20, 10:21, 16:15, 18:17
warning [1] - 23:22
week [12] - 7:19, 8:12, 9:14, 10:2, 10:5, 10:10, 11:3, 16:16, 17:1, 18:3, 19:5, 19:8
weeks [3] - 3:24, 3:25, 5:10
whale [1] - 23:5
whatsoever [1] - 20:13
whoa [4] - 16:23, 17:6
Whoa [1] - 17:6
willfulness [2] - 14:4, 23:6
willing [1] - 19:4
Wilmington [2] - 1:11, 2:23
wish [2] - 8:24, 19:18
witness [23] - 4:21, 5:5, 5:7, 9:7, 10:3, 10:7, 11:3, 11:5, 11:6, 11:17, 11:23, 12:13, 15:10, 18:12, 20:7, 20:10, 20:11, 20:12, 20:13, 20:21, 21:1
witnesses [10] - 14:17, 14:20, 15:7, 15:17, 15:19, 15:21, 15:25, 16:9, 17:3
write [1] - 22:14
wrote [1] - 22:16

**Y**

year [1] - 15:13
years [2] - 20:5, 21:22
York [2] - 2:7