IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY, LLC

Plaintiff,

v.

SICOR, INC., and
SICOR PHARMACEUTICALS, INC.

Defendants.

Civil Action No. 04-833 KAJ

**PHARMACIA & UPJOHN'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SICOR'S ANTICIPATION AFFIRMATIVE DEFENSE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*Pharmacia & Upjohn Company LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, IL 60606
(312) 913-0001

June 21, 2006

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| INTRODUCTION | 1 |
| NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| SUMMARY OF ARGUMENT | 4 |
| STATEMENT OF FACTS | 4 |
| A. BACKGROUND OF THE INVENTION | 4 |
| B. THE ASSERTED CLAIMS | 6 |
| C. PROSECUTION HISTORY OF THE ‘285 PATENT | 7 |
| D. THE 1985 JANSSEN *ET AL.* ARTICLE | 8 |
| ARGUMENT | 11 |
| I. STANDARD FOR SUMMARY JUDGMENT | 11 |
| II. STANDARD FOR ANTICIPATION | 12 |
| III. NO REFERENCE ANTICIPATES CLAIM 13 | 13 |
| IV. NO REFERENCE ANTICIPATES CLAIM 9 | 13 |
| CONCLUSION | 15 |

TABLE OF CITATIONS

Page(s)

Cases

*Am. Hoist & Derrick C. v. Sowa & Sons, Inc.*,
725 F.2d 1350, 1359 (Fed. Cir. 1984) 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) 11

*Carella v. Starlight Archery & Pro Line Co.*,
804 F.2d 135, 138 (Fed. Cir. 1986) 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) 11

*Central Soya Co. v. Geo. A. Hormel & Co.*,
723 F.2d 1573, 1577 (Fed. Cir. 1983) 12

*Chemical Eng'g Corp. v. Essef Indus., Inc.*,
795 F.2d 1565 (Fed. Cir. 1986) 11

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
909 F.2d 1464, 1467 (Fed. Cir. 1990) 12

*Lear Seigler, Inc. v. Aeroquip Corp.*,
733 F.2d 881, 885 (Fed. Cir. 1984) 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) 11

*Motorola, Inc. v. Interdigital Tech. Corp.*,
121 F.3d 1461 (Fed. Cir. 1997) 13, 14

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983) 12

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987) 11

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*,
204 F.3d 1360, 1367 (Fed. Cir. 2000) 12

*Upjohn Co. v. Syntro Corp.*,
14 USPQ2d 1469 (D. Del. 1990) 11

TABLE OF CITATIONS (cont'd)

Statutes And Other Authorities

35 U.S.C. § 101 5

35 U.S.C. § 102 passim

35 U.S.C. § 103 5

35 U.S.C. § 112 5

35 U.S.C. § 282 16

## INTRODUCTION

Plaintiff Pharmacia & Upjohn Company, LLC ("Pharmacia") moves for summary judgment that the asserted claims of U.S. Patent No. 6,107,285 ("the '285 patent"), i.e. claims 9 and 13, are not anticipated under 35 U.S.C. § 102. Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc. (collectively, "Sicor") affirmatively contend that a reference by Janssen anticipates claim 9, but Sicor has failed to present any argument or evidence that any reference anticipates claim 13. Because the Janssen reference does not have all of the elements of claim 9, and because Sicor has failed to present any argument or evidence as to anticipation of claim 13, Pharmacia is entitled to summary judgment of no anticipation on both claims.

## NATURE AND STAGE OF THE PROCEEDINGS

Pharmacia filed this action on July 8, 2004, alleging that Sicor has infringed the '285 patent. D.I. 1. The '285 patent was issued on August 22, 2000, and covers certain ready-to-use formulations of anthracycline glycosides. Ex. 1. Claims 9 and 13 are asserted in this litigation.

On August 27, 2004, Sicor filed its Answer, Counterclaim and Demand for a Jury Trial. D.I. 9. Among Sicor's affirmative defenses and counterclaim averments were general, notice-pled allegations of invalidity "under the patent laws of the United States, including without limitation 35 U.S.C. §§ 101, 35 U.S.C. § 102, 103, and 112." *Id.*, p. 3. Identical affirmative defenses and counterclaim averments have been included in all of Sicor's subsequent pleadings. D.I. 51, pp. 3, 6; D.I. 212, pp. 3, 5.

To clarify Sicor's allegations, Pharmacia served an interrogatory requesting the factual and legal basis for Sicor's invalidity defenses on November 9, 2004. Ex. 2, p. 9. On January 7, 2005, after obtaining a one-month extension to respond, Sicor responded with nothing

but objections. Ex. 3, pp. 3-4. On February 4, 2005, after negotiations over the insufficiency of the responses, Sicor amended its response and contended that the asserted claims of the ‘285 patent were anticipated and rendered obvious “based on admissions made by the applicants during prosecution of the patent application that matured into the ‘285 patent, the file history of the ‘285 patent, and/or any of the references listed in Attachment I hereto.” Ex. 4, pp. 4-7. Attachment I to Sicor’s interrogatory response was nothing more than a list of 502 references. Ex. 5.

For nearly six months, Sicor refused to clarify which – if any – of the 502 references were relevant, were relied upon, or how such references applied. Finally, on July 29, 2005, one year after it asserted invalidity, Sicor amended its interrogatory answers to identify specific references that it contended render the asserted claims of the ‘285 patent invalid. Ex. 6, pp. 4-9. With regard to anticipation of claim 9,[1] Sicor contended:

> Asserted claims 1-3 and 9 are anticipated and, [*sic*] thus rendered invalid, by the teachingsand disclosure of prior art references identified as M.J.H. Janssen, D.J.A. Crommelin, G. Storm and A. Hulshoff, Doxorubicin decomposition on storage. Effect of pH, type of buffer and liposome encapsulation, 23 *International Journal of Pharmaceutics*, 1-11 (1985).

*Id.*, p. 6. Sicor failed to present any contention that claim 13 was anticipated.

Soon afterward, Sicor also incorporated into its interrogatory answer the expert report of Douglas S. Clark, which relied on many of the same references. Ex. 7, pp. 4-10; Ex. 8, pp. 16-21. Although the language of his report was sometimes vague, Dr. Clark appeared to assert that the Janssen reference anticipated claim 9. Ex. 8, p. 16. He failed to present, however, any argument as to anticipation of claim 13.

---

[1] Claims 1 through 3 are no longer at issue in this case.

A few weeks later, on September 19, 2005, this Court conducted a discovery dispute teleconference. Pharmacia raised several aspects of the insufficiency of these interrogatory responses at that time. Ex. 9, p. 12. Sicor responded by asserting that its interrogatory responses set forth its complete invalidity contentions based on all information available at that time. *Id.*, pp. 12-14. Although Sicor subsequently supplemented its expert report (on October 24, 2005) and its interrogatory responses (on October 26, 2005), neither supplementation raised any additional references or theories about anticipation of claims 9 and 13. Ex. 10, pp. 1-3; Ex. 11, pp. 4-10.

In November 2005, Sicor answered Pharmacia's Second Set of Requests for Admission (Invalidity) and Pharmacia's Third Set of Interrogatories. Exs. 12, 13. In response to the Requests for Admission, Sicor admitted as a matter of law that:

a. With one exception (i.e. the Janssen reference), its cited references failed to disclose each and every element of claim 9 of the '285 patent. Ex. 12, pp. 5, 7, 11, 13-14, 19, 23, 26, 29 and 34 (Admission Nos. 439, 451, 469, 480, 505, 522, 535, 552 and 569).

b. None of the references upon which Sicor relied disclosed idarubicin hydrochloride solutions, the active pharmaceutical ingredient specifically required in claim 13. *Id.*, pp. 3, 6, 9, 12, 17, 21, 24-25, 27-28 and 31 (Admission Nos. 429-431, 444-46, 458-60, 473-75, 495-97, 512-14, 529-30, 542-44 and 559-61).

Furthermore, in its answer to Pharmacia's Third Set of Interrogatories, Sicor did not assert that any of its identified references taught idarubicin. Ex. 13, pp. 8-9, 13, 20-21, 25 and 27-30 (Response to Interrogatory Nos. 11-19).

## SUMMARY OF ARGUMENT

1. As Sicor apparently admits, no reference includes all of the elements of claim 13; and

2. The Janssen reference, relied upon by Sicor as an anticipating reference, does not disclose at least two elements of claim 9.

Legally, Sicor's anticipation contentions are fatally flawed because they fail to raise even a *prima facie* case of anticipation under 35 U.S.C. § 102. As a result, there are no genuine issues of material fact precluding the entry of summary judgment that claims 9 and 13 of the '285 patent are not invalid for anticipation, and Pharmacia's motion should be granted.

## STATEMENT OF FACTS

### A. BACKGROUND OF THE INVENTION

The three drugs described in the '285 patent (doxorubicin, idarubicin, and epirubicin) are powerful weapons for fighting cancer. The patent protection on the basic compounds has expired, such that Sicor is free and clear to sell the drugs in their traditional historic formulation. In that historic formulation, the drugs were sold and shipped in a lyophilized ("powder") form because nobody had been able to find a way to make the drugs in a pharmaceutically acceptable, storage stable formula. The lyophilized drugs had to be reconstituted by pharmacists, nurses, or other medical personnel as part of administering the drugs to the patient.

The present dispute arises out of the fact that the drugs are highly toxic, so much so that the pharmacists, nurses, and other medical personnel desired a formulation that did not need to be reconstituted by them before administration to patients. In this way, the pharmacists, nurses, and other medical personnel could minimize their own exposure to the highly toxic

compounds. Pharmacia scientists succeeded in discovering such a pharmaceutically acceptable, storage stable formulation when many other scientists had failed.

Thus, the issue confronted by the inventors was developing a solution of idarubicin, doxorubicin, and epirubicin that would avoid the health risks to medical professionals that otherwise came with reconstitution. That is, the inventors came up with a solution that was able to overcome the serious stability problems that plagued earlier attempts to prepare stable solutions of these drugs. As noted in the prosecution history of the '285 patent,

> Prior to applicants [sic] invention, aqueous solutions were considered to have short term stability only. No practical method existed which allowed the pharmaceutical manufacturer to offer to the medical community aqueous solutions of anthracyclines which were ready for use until the present invention.

Ex. 14, p. PU 14996.

Specifically, the inventors found that one of the recurring problems with preparing storage stable solutions was that persons skilled in the art primarily used buffer solutions to prepare solutions with specified pH values:

> It is the use of buffers which is the conventional technique for adjusting pH in the medical field. . . . Accordingly, none of the primary references would suggest to anyone skilled in the art that the use of an acid to adjust the pH of aqueous solutions of doxorubicin would offer unexpected results as compared with the use of buffers, the conventional approach.

*Id.*, p. PU 14997. Buffered solutions were used previously because they helped maintain a relatively constant pH, avoiding what was known as "pH drift," which could have negative effects on the stability of injectable formulations. Ex. 15, p. 10. Thus, it was thought that a buffer would maintain a relatively constant pH and improve chemical stability. In hindsight, this turned out to be incorrect for the anthracycline glycosides.

To the extent that anyone had used an acid such as hydrochloric acid to adjust pH of doxorubicin solutions they had done so to very low pHs, at which buffers would be ineffective. *E.g.*, Ex. 16, p. PU13805; Ex. 17, pp. PU 13830-32. As such, they were unable to achieve the claimed storage stable solutions using acid addition to bring the solution within the claimed pH range. With idarubicin, little published work had considered the stability of solutions at all.

**B. THE ASSERTED CLAIMS**

Asserted claims 9 and 13 (rewritten in independent form) read as follows:

> 9. A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride dissolved in a physiologically acceptable aqueous solvent, having a pH adjusted to from 2.5 to 5.0 with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfonic acid, and tartaric acid, the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, wherein said solution is contained in a sealed container, and wherein said solution exhibits storage stability as a result of said pH being adjusted to the said pH range using said acids.
>
> 13. A physiologically acceptable solution of idarubicin hydrochloride dissolved in a physiologically acceptable aqueous solvent, having a pH adjusted to from 2.5 to 5.0 with a physiologically acceptable acid that is hydrochloric acid, the concentration of said idarubicin hydrochloride being about 1 mg/ml, wherein said solution is contained in a sealed container.

Ex. 1, col. 23, line 5 – col. 24, line 23.

Pharmacia has proposed that the claims be interpreted as set forth in its portion of the Joint Claim Construction Chart. Ex. 18. Pharmacia has used the claim terms as it has construed them there for purposes of this Motion. However, other than the terms "physiologically acceptable" and "sealed" container, Sicor has proposed narrower definitions for

each of the contested terms.[2] The distinction between the parties' constructions is important in that Sicor's anticipation-related arguments have been premised upon the Court accepting without modification its definitions of "physiologically acceptable" and "sealed" container. However, Pharmacia believes that summary judgment in its favor on the grounds set forth herein is appropriate even if the Court were to apply the construction urged by Sicor. If the Court accepts Pharmacia's proposed claim constructions, then additional grounds for summary judgment in Pharmacia's favor would exist.

### C. PROSECUTION HISTORY OF THE '285 PATENT

The '285 patent, entitled "Injectable Ready-To-Use Solutions Containing An Antitumor Anthracycline Glycoside," issued on August 22, 2000, based on Application Serial No. 827,742 ("the '742 application"), filed in the United States Patent and Trademark Office on January 29, 1992. Ex. 1. Through a series of prior filings, the '742 application claimed a right of priority to a prior United Kingdom patent application filed August 2, 1985. *Id.*

During the prosecution of the '285 patent, as discussed in more detail below, the Examiner carefully considered almost all of the references cited by Sicor. In this careful review, the Examiner initially rejected various pending claims as obvious over several references, including the Janssen references. The inventors had cited the Janssen reference to the PTO in a November 20, 1992 Information Disclosure Statement ("IDS"). Ex. 19, p. PU 14990. In an Office Action dated December 6, 1996, however, the Examiner ultimately withdrew her rejections based on the Janssen reference and allowed all but two of the claims. Ex. 20, p. PU

---

[2] Sicor has proposed that "physiologically acceptable" be construed to mean "suitable for administration to humans or animals" and "sealed" container be construed to mean "a container that is closed in some fashion such that it does not allow the passage of the solution." Ex. 18, pp. 1, 3.

15265; Ex. 21, pp. PU 15318-19. The inventors responded on September 23, 1998 by deleting the two rejected claims, and accepting the allowance of the remaining claims. Ex. 22, p. PU 15359. The Examiner then issued a Notice of Allowability on May 26, 1999. Ex. 23.

### D. THE 1985 JANSSEN *ET AL*. ARTICLE

Janssen compared the stability of liposome-encapsulated doxorubicin to the stability of non-encapsulated doxorubicin in aqueous Tris buffer and phosphate buffer solutions at two pH levels, 4.0 and 7.4. Ex. 24, p. PU 13746. Janssen sought to evaluate prior researchers' claims that encapsulating doxorubicin in liposomes (water-insoluble lipid systems) increased its therapeutic index by reducing doxorubicin decomposition rates in aqueous media. *Id.*, pp. PU 13746-47. However, Janssen was quite critical of those earlier experiments, which included some of the references that Sicor cites:

> Many studies on the stability of DXR on storage have been published, but only a few investigators used techniques that provide a combination of good selectivity and precision like HPLC (Hoffman ***et al.***, 1979; Benvenuto ***et al.***, 1981; Poochikian ***et al.***, 1981; Williamson ***et al.***, 1983; Karlsen ***et al.***, 1983). Systematic work to gain insight into the mechanism of degradation is rare (Wassermann and Bundgaard, 1983). *It is therefore impossible to make exact predictions on DXR decomposition rates in aqueous systems to be used in pharmaceutical practice.*

*Id.*, p. PU 13747 (emphasis added).

Because the earlier reported research was so poor, Janssen worked from first principles with *unpurified* reagents and *analytical grade* buffers and other chemicals, not constituents that were purified, sterile, pyrogen-free, or otherwise suitable for administration to humans or animals. *Id.* ("Doxorubicin-HCl and doxorubicinone-HCl were provided by Farmitalia (Milan) and Lab. Roger Bellon (Neuilly sur Seine, Paris) and used without purification. Phosphatidylcholine from egg yolk type V-E (PC), phosphatidylserine (PS) and

cholesterol were supplied by Sigma Chemicals (St. Louis, MO). All other chemicals were of analytical grade.”). In adjusting solution pH, Janssen used Tris buffer or phosphate buffer, not the physiologically acceptable acids claimed in the ‘285 patent. That is, as the Materials and Methods section of Janssen states:

> The following media were used.
>
> (1) Tris buffers with pH 7.4 or 4.0: 0.01 mol/l Tris and 0.8% sodium chloride. The pH was adjusted with 2 mol/l hydrochloric acid.
>
> (2) Phosphate buffers with pH 4.0 or 7.4: 0.01 mol/l sodium dihydrogen phosphate and 0.8% sodium chloride. The pH was adjusted with 2 mol/l hydrochloric acid or 2 mol/l sodium hydroxide.
>
> * * *
>
> The liposome dispersions were diluted with either the Tris or phosphate buffers or the cell culture medium to obtain the required DXR concentration. DXR solutions were prepared in a similar way.

*Id*., p. PU 13749.

Thus, in preparing doxorubicin solutions, Janssen adjusted the pH of the buffers to 7.4 or 4.0 and then added the pH-adjusted buffers to the doxorubicin solutions. As acknowledged by Dr. Clark, the addition of an acid to adjust the pH of the solution by adding it as the last step “is admittedly not discussed.” Ex. 10, p. 3. The final solutions were kept in polypropylene tubes or glass vials, but no means of closure was indicated. Ex. 24, p. PU 13750.

In Table 3, the Janssen authors indicated that they found that higher concentrations of doxorubicin resulted in faster doxorubicin decomposition in the more concentrated solutions. *Id*., p. PU 13753. Janssen concluded that “[t]he concentration of DXR was found to be a critical parameter for its stability,” suggesting that higher concentrations

would not be stable. *Id.* Thus, Janssen also taught away from using doxorubicin at concentrations comparable to those claimed in either of the asserted claims based on stability.

Janssen acknowledged that two previous studies (one by Tavoloni *et al.* and the other by Poochikian *et al.*) had concluded that the rate of doxorubicin decomposition was independent of concentration. *Id.* However, Janssen criticized those earlier studies by noting the "poor specificity of the fluorescence technique" utilized in the Tavoloni *et al.* paper and noting Poochikian *et al.*'s failure to supply any data to support such a conclusion. *Id.*

In short, Janssen is lacking at least each of the following claimed elements of claim 9: (i) "physiologically acceptable," (ii) "acid," (iii) "sealed container," and (iv) "storage stability." Its selection of a buffer, rather than an acid, for modulating pH of the doxorubicin solution taught away from the use of an acid. Janssen also does not suggest that the same results could be obtained by pH adjustment using a physiologically acceptable acid such as those claimed in the '285 patent.

With respect to claim 13, Janssen does not teach or suggest anything about idarubicin at all, including whether the same results could be obtained for idarubicin. Furthermore, all of Janssen's reported research was performed at doxorubicin concentrations of 50 µg/ml to 500 µg/ml (*id.*, pp. PU 13750-54), below the claimed concentration of idarubicin hydrochloride (in claim 13) of 1 mg/ml. Ex. 1, col. 24. The authors used such low concentrations because precipitation occurred at higher concentrations. Ex. 15, p. 32; Ex. 24, p. PU 13755. Thus, Janssen teaches away from using idarubicin at a concentration comparable to that claimed in claim 13.

Finally, Janssen does not teach or suggest a solution being contained in a sealed container. Janssen is completely silent on that point.

## ARGUMENT

As discussed more fully below, Sicor has failed to present sufficient evidence to establish even a *prima facie* case of invalidity under 35 U.S.C. § 102. Relying solely on a reference carefully considered by the PTO, Sicor is unable to show that any reference teaches all of the elements of either of the asserted claims. As a matter of law, Sicor's anticipation defense does not meet the required threshold to defeat summary judgment.

### I.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment as a matter of law is appropriate "against a non-moving party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial." *Upjohn Co. v. Syntro Corp.*, 14 USPQ2d 1469, 1470 (D. Del. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "In such a situation, there is 'no genuine issue as to any material fact' since a failure of proof on an essential element renders other facts immaterial." *Id.* (citing *Celotex*, 477 U.S. at 23).

The mere existence of some evidence in support of the non-moving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere denials or conclusory statements are not sufficient. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1564 (Fed. Cir. 1987); *Chemical Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed. Cir. 1986). The non-moving party must show more than a mere "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II. STANDARD FOR ANTICIPATION

Analysis of invalidity assertions begins from the premise that every issued U.S. patent is presumed valid. 35 U.S.C. § 282. Decision-making begins by accepting the proposition that the patent is valid and then looking to the challenger for evidence to the contrary. *Lear Seigler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984). A patent challenger thus must first overcome the procedural burden of establishing a *prima facie* case of invalidity under § 102. *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed. Cir. 1983). Furthermore, the challenger must establish by clear and convincing evidence, based on all the evidence, that the patent is invalid. *Id.*; *see also Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986).

This burden is "most formidable" where, as here, the party asserting invalidity relies upon prior art already considered by the patent examiner. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983). If the Patent Office has considered a particular prior art reference, then the challenger has the "added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job." *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *see also Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000). Thus, "the burden of showing, by clear and convincing evidence, the invalidity of the [patent] claims . . . is especially difficult when the prior art was before the PTO examiner during prosecution of the application." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990).

To prove anticipation under 35 U.S.C. § 102, Sicor has the burden of showing by clear and convincing evidence that a ***single*** prior art reference identically discloses each and every element of each asserted claim of the '285 patent, with sufficient clarity to prove its

existence in the prior art. *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997).

## III. NO REFERENCE ANTICIPATES CLAIM 13

At no point in this case has Sicor presented any evidence that claim 13 is anticipated by any single reference. In its interrogatory responses, it has conspicuously failed to mention claim 13 in the sections on § 102. *See* Exs. 4, 6, 7, 8.

Even if Sicor had raised an argument on anticipation of claim 13, it would fail because that claim is limited solely to solutions of idarubicin hydrochloride. Although Sicor and Dr. Clark identified a number of references in support of their invalidity allegations, ***none of those references even mention a solution of idarubicin hydrochloride***. Dr. Clark, Sicor's proffered expert, admitted as much at deposition. Ex. 25, pp. 254-55. Sicor also admitted that none of its cited references (raised in relation to obviousness) disclose idarubicin hydrochloride solutions. *See* Ex. 12, pp. 3, 6, 9, 12, 17, 21, 24-25, 27-28 and 31 (Admission Nos. 429-31, 444-46, 458-60, 473-75, 495-97, 512-14, 529-30, 542-44, 559-61). Because that key element is missing from each of the references, Claim 13 cannot be anticipated, and this Court should enter summary judgment of no anticipation of claim 13. *See Motorola*, 121 F.3d at 1473.

## IV. NO REFERENCE ANTICIPATES CLAIM 9

Unlike with claim 13, Sicor affirmatively argues that Claim 9 is anticipated. In doing so, Sicor limited its anticipation contentions to the Janssen reference. Exs. 6, 7, 8. However, as discussed above, the Janssen reference fails to disclose several elements of claim 9. Thus, as a matter of law, it does not anticipate claim 9.

For example, claim 9 of the '285 patent requires that the solutions be contained in a sealed container. Ex. 1, col. 23, lines 14-15. However, Janssen does not disclose a "sealed

container"; instead it discusses only polypropylene tubes and glass vials. Ex. 24, p. PU 13750 ("Storage of the DXR solutions in Tris buffer in polypropylene tubes or glass vials at pH 4.0 gave similar results."). Dr. Clark has submitted that those tubes or vials would have been closed as a matter of common sense as good laboratory practice. Ex. 25, pp. 206-08. But that is not the standard for anticipation. *See Motorola*, 121 F.3d at 1473. As a result, Sicor's contention of anticipation of claim 9 must fail.

Claim 9 of the '285 patent also requires adjusting the anthracycline glycoside aqueous solution pH to a recited range using a physiologically acceptable acid selected from a member of a recited genus. Ex. 1, col. 23 lines 9-14. Janssen provides no indication of using an acid to the recited pH range of 2.5 – 5.0, however. Instead, Janssen adjusted pH through addition of buffers that had in turn been pre-adjusted with acid to pH 4.0. Ex. 24, p. PU 13749. Sicor's expert Dr. Clark has acknowledged that "[w]hether the authors of Janssen (1985) would have [adjusted pH by adding acid as a last step after buffer addition] is admittedly not discussed." Ex. 10, p. 3. That admission is also fatal to Sicor's anticipation contentions.

**CONCLUSION**

For at least the foregoing reasons, this Court should find that no genuine issues of material fact exist that preclude a determination that claims 9 and 13 of the '285 patent are not invalid for anticipation. Therefore, summary judgment is appropriate, and Pharmacia's motion should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith*
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*Pharmacia & Upjohn Company LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, IL 60606
(312) 913-0001

June 21, 2006

**CERTIFICATE OF SERVICE**

I, Rodger D. Smith II, hereby certify that on June 21, 2006, I caused to be electronically filed Pharmacia & Upjohn's Opening Brief in Support of its Motion for Summary Judgment on Sicor's Anticipation Affirmative Defense with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Steven J. Balick
John G. Day
ASHBY & GEDDES

and that I also caused copies to be served upon the following in the manner indicated:

**BY HAND**

Steven J. Balick
John G. Day
ASHBY & GEDDES
222 Delaware Avenue
Wilmington, DE 19801

**BY FEDERAL EXPRESS**

Reid L. Ashinoff
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, NY 10020

Jordan Sigale
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, IL 60606

*/s/ Rodger D. Smith*
Rodger D. Smith (#3778)
rsmith@mnat.com