# EXHIBIT E

# REDACTED

# EXHIBIT F

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|

07/827,742    01/29/92    GATTI                              G    7698-049-0-PI

EXAMINER

OBLON, SPIVAK, MC CLELLAND, MAIER A ISN1          PESELEV
NEUSTADT
FOURTH FLOOR                                 ART UNIT    PAPER NUMBER
1755 JEFFERSON DAVIS HWY.
ARLINGTON, VA 22202                          1803          3

DATE MAILED:    04/09/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined   ☒ Responsive to communication filed on  1-6-93   ☒ This action is made final.

A shortened statutory period for response to this action is set to expire _____ 3 _____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.           4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474. 6. ☐ _____

Part II    SUMMARY OF ACTION

1. ☒ Claims  31-38, 40 and 42-44                                              are pending in the application.

   Of the above, claims _____                                              are withdrawn from consideration.

2. ☐ Claims _____                                              have been cancelled.

3. ☐ Claims _____                                              are allowed.

4. ☒ Claims  31-38, 40 and 42-44                                              are rejected.

5. ☐ Claims _____                                              are objected to.

6. ☐ Claims _____                                              are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PU 0015023

PTOL-326 (Rev. 9-80)                    EXAMINER'S ACTION

Serial No. 827742                           -2-

Art Unit   1803


Claims 31-38, 40 and 42-44 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-6 of U.S. Patent No. 4,946,831. Although the conflicting claims are not identical, they are not patentably distinct from each other because the compositions claimed in the U.S. patent 4,946,831 are encompassed by the instant claims.

The obviousness-type double patenting rejection is a judicially established doctrine based upon public policy and is primarily intended to prevent prolongation of the patent term by prohibiting claims in a second patent not patentably distinct from claims in a first patent. *In re Vogel*, 164 USPQ 619 (CCPA 1970). A timely filed terminal disclaimer in compliance with 37 C.F.R. § 1.321(b) would overcome an actual or provisional rejection on this ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 C.F.R. § 1.78(d).

Applicant's arguments filed January 6, 1993 have been fully considered but they are not deemed to be persuasive.

The terminal disclaimer filed on January 6, 1993 has been noted, however, same has not been found acceptable because there is no statement specifying that the evidentiary documents have been reviewed and certifying that, to the best of the assignee's knowledge and belief, title is in the assignee seeking to take action, 37 CFR 3.73(b).

Claims 31 and 43 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

PU 0015024

Serial No. 827742                                    -3-

Art Unit   1803

    A comma is missing between the terms "idarubicin

hydrochloride" and "doxorubicin hydrochloride" in claim 31 and in

claim 43, a comma should replace the term "and" between the said

terms.

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.
>
> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

    This application currently names joint inventors.  In
considering patentability of the claims under 35 U.S.C. § 103,
the examiner presumes that the subject matter of the various
claims was commonly owned at the time any inventions covered
therein were made absent any evidence to the contrary.  Applicant
is advised of the obligation under 37 C.F.R. § 1.56 to point out
the inventor and invention dates of each claim that was not
commonly owned at the time a later invention was made in order
for the examiner to consider the applicability of potential 35
U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

    Claims 31-38, 40 and 42-44 are rejected under 35 U.S.C.

§ 103 as being unpatentable over Bejnen et al, Arcamone et al.

Bosaquent in combination with Benvenuto et al, Arcamone et al.

'519, Wassermann et al, Patelli et al. or Mori et al.

PU 0015025

Serial No. 827742                              -4-

Art Unit    1803

    Bejnen et al. disclose a solution of doxorubicin having the pH in the range of 0-3.5.

    Arcamone et al. disclose a solution of doxorubicin having the pH in the range of 3-6.

    Bosaquent discloses a solution of doxorubicin having the pH in the range of 3-6.

    Bosaquent discloses doxorubicin solution having the pH of 2.6 and 3.0-6.5 and also teach doxorubicin in a glass container. Benvenuto et al. disclose doxorubicin in a glass container. Arcamone et al. '519 disclose sterile solution of anthracycline glycoside.

    Wassermann et al disclose a solution containing doxuribicin having a pH of 2.1 adjusted with hydrochloric acid.

    Patelli et al. disclose idarubicin.

    Mori et al. disclose doxorubicin in combination with a tonicity adjustment agent such as polyethylene glycol.

    Therefore, to prepare a physiologically acceptable solution of doxorubicin or any other anthracycline glycoside and to adjust the pH of the same within known range with a known acid would have been obvious to a person having ordinary skill in the art at the time the instant invention was made because the results obtained thereby would have been expected.  Further, it would have been obvious to a person having ordinary skill in the art at the time the instant invention was made to add to the said solutions

PU 0015026

Serial No. 827742                                    -5-

Art Unit   1803

conventional solvents and toxicity adjustment agents as disclosed

by the art of record.

*Applicant's arguments filed 11-93 have not been found persuasive.*

    Applicants contend that none of the references which have

been cited disclose any aqueous solutions of anthracyclines which

are storage stable to the degree achieved by applicants.

                                                  Applicants

have further submitted a Declaration stating that the storage

stability of anthracyclines is not unique to hydrochloric acid

but is also conferred by other physiologically acceptable acids at

pHs between 2.5 and 5.  The data presented by applicants presents

comparison of stabilities of the doxorubicin-containing

compositions having pH of 2.5, 3, 3.5, 4.0, 4.5 and 5 adjusted

with hydrochloric acids, sulfuric acid, phosphoric acid,

methanesulfonic acid and tartaric acid and doxorubicin containing

compositions disclosed by Bejnen et al and Aramone et al.  Same

data has been considered,  however same has not been found

persuasive because the instant claims have not been limited to

the acids tested and the stability of the claimed composition

wherein the pH has been adjusted *with other acids cannot be ascertained*.  Applicant's statement in the

declaration that the composition can be adjusted with any

physiologically acceptable acid is in the form of an opinion and

is not supported by verified evidence.  Further, note that the

Arcamone formulation at pH 2.5 after four weeks possess stability

PU 0015027

Serial No. 827742                              -6-

Art Unit   1803

of 81.2% while the claimed composition, wherein the pH was

adjusted to 2.5 with tartaric acid possess the stability 83.3%.

Since applicants do not present a standard deviation, it cannot

be ascertained if the difference between 81.2% and 83.3% is due

to an experimental error or represents a statistically

significant difference. Therefore, the claimed composition at pH

of 2.5 is not seen to be significantly more stable than the

composition disclosed by Arcamone et al.

Therefore, the claimed compositions are still deemed to be prima

facie obvious over the art of record.

    THIS ACTION IS MADE FINAL.  Applicant is reminded of the

extension of time policy as set forth in 37 C.F.R. § 1.136(a).

    A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

PU 0015028

Serial No. 827742                              -7-

Art Unit   1803


        Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Elli
Peselev whose telephone number is (703) 308-4616.

        Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0196.


                                        *Johnnie R. Brown*
                                        JOHNNIE R. BROWN
                                    SUPERVISORY PATENT EXAMINER
                                           ART UNIT 183

wg
Peselev/tf
April 02, 1993


PU 0015029

# EXHIBIT G

Court File No. T-421-97

## IN THE FEDERAL COURT OF CANADA
### TRIAL DIVISION

BETWEEN:

FAULDING (CANADA) INC.

**Plaintiff**

- and -

PHARMACIA S.p.A.

**Defendant**

### CONDENSED TRANSCRIPT WITH INDEX

\*\*\*\*\*

### EXAMINATION FOR DISCOVERY OF CARLO CONFALONIERI
Held at the offices of Andrew Paton, 65 Via Mario Pagano,
Milan, Italy on Wednesday, February 17, 1999
at the hour of 11:14 a.m. local time

\*\*\*\*\*

**Appearances:**

| | |
|---|---|
| Ms Susan Beaubien | for the Plaintiff |
| Ms Judith Paine | Faulding (Canada) Inc. |
| | |
| Mr. Gunars Gaikis | for the Defendant |
| Mr. Steven B. Arnold | Pharmacia S.p.A. |
| | |
| Mr. Andrew Paton | Commissioner |
| | |
| Ms Manuela Casa | Interpreter |

### ASAP Reporting Services Inc.

275 Slater Street, Suite 900          633 Bay Street, Suite 1913
Ottawa, Ontario K1P 5H9               Toronto, Ontario M5G 2G4
(613) 564-2727                        (416) 564-2727

PU 0017579

Confidential

EXAMINATION OF CARLO CONFALONIERI                      Wednesday, February 17, 1999

Page 61

1   with a sample solution with a pH of 3 and a
2   concentration of about two milligrams per
3   millilitre. Is that correct?
4              A. Yes.
5   160        Q. At the bottom of the page,
6   there is the Arrhenius equation results.
7              A. Yes.
8   161        Q. The t90 which is given at
9   four degrees celsius is 3,970 days.
10             A. Yes.
11  162        Q. Was the conclusion that you
12  drew at the time that that was an acceptable result
13  in terms of indicating --
14             A. You know that the Arrhenius
15  forecasts are forecasts.
16  163        Q. Yes.
17             A. If I get in this situation
18  600 days, it would not be positive, but getting
19  5,000 days is very positive. Three thousand is
20  very positive.
21             So the proposal of the Arrhenius
22  equation, just to clarify the matter, it is to
23  compare experiments and to verify which are the
24  results in order to detect the best situation. In
25  this case, it was very positive.

Page 62

1   164        Q. You would regard that result
2   as a very positive one?
3              A. Yes.
4   165        Q. Could I ask you to look at
5   Table 5 which is on page 23. Here there is a
6   summary of experiments done at pH 2.96. The
7   initial concentration is identified as 19.32
8   milligrams per millilitre. In this table, the
9   Arrhenius number at four degrees celsius is 1,310
10  days.
11             Did you regard that at the time as
12  a successful outcome?
13             A. It is positive even if it is
14  less positive if you compare with Experiment 2, if
15  I remember well, which are the same concentrations.
16  I hope so. If you go to Table 2, you have the same
17  concentration, 20 milligrams per ml, if I remember,
18  and you have an extended shelf life in comparison
19  with the one reported here. In any case, this is
20  better than nothing.
21  166        Q. So it is positive, but it is
22  less positive than the first one.
23             A. Yes. This I liked very
24  clearly.
25             What is the purpose of the

Page 63

1   Arrhenius? It is to compare different formulations
2   in the same way and then get which could be the
3   best one. In this case, if I were in a situation
4   to prepare a solution of 20 milligrams per ml, I
5   would strongly prefer the one described in Table 2
6   to the one described in Table 5, even both should
7   have been interesting.
8   167        Q. Could I ask you to look at
9   Table 7 which you will find at page 27.
10             A. Yes.
11  168        Q. Again, this is a
12  concentration of approximately 20 milligrams per
13  ml. It is 20.07 at a pH of 2.99, so a pH of around
14  3. Here the Arrhenius number --
15             A. Is less favourable.
16  169        Q. Is less favourable. It is
17  846.
18             A. Yes.
19  170        Q. Would you regard that 846
20  days as possibly feasible although less --
21             A. Possibly feasible, but,
22  again, the comparison is teaching that the first
23  one was the better one. The second one containing
24  one or two co-solvents only is a bit worse. This
25  one would contain three types of solvents and is

Page 64

1   even worser.
2              MR. GAIKIS: He is pointing to
3   Example 7.
4              MS BEAUBIEN:
5   171        Q. Of the three, you would
6   regard Example 7 as --
7              A. As the worst one.
8   172        Q. -- the worst one. All right.
9              At the time, was the conclusion
10  drawn that Example 7 was nonetheless a potential or
11  a possible formulation because 846 was more than 18
12  months long?
13             A. Yes.
14  173        Q. I am going to show you
15  another table, sir, and I am going to ask you
16  whether you recognize -- actually, it is two pages.
17  It is marked as pages 14 and 15 and they come from
18  the original U.K. priority document.
19             Can I ask you whether you
20  recognize that data, whether you have seen it
21  before?
22             MR. GAIKIS: Wait a minute. Why
23  don't we first ask him whether he --
24             MS BEAUBIEN: Whether he
25  recognizes them.

ASAP Reporting Services Inc.                                      Page 61 - Page 64
Toronto (416) 861-8720 / Ottawa (613) 564-2727    PU 0017596              Confidential