IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


PHARMACIA & UPJOHN COMPANY,  )    **REDACTED PUBLIC VERSION**
LLC,  )
  )
       Plaintiff,  )
  )
     v.  )    C.A. No. 04-833-KAJ
  )
SICOR INC. and SICOR  )
PHARMACEUTICALS, INC.,  )
  )
      Defendants.  )


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON ANTICIPATION**


ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. # 3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
*Of Counsel:*             (302) 654-1888
                                 *Attorneys for Defendants*

Reid L. Ashinoff
Michael S. Gugig
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Jordan A. Sigale
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, Illinois 60606
(312) 876-8000


Dated: June 27, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT ............................................................................... 1

STATEMENT OF FACTS.................................................................................... 2

    A.    The State of the Art.......................................................................... 2

    B.    The '285 patent ............................................................................. 2

ARGUMENT................................................................................................. 3

    There Is No Material Of Disputed Fact That the Asserted
    Claims of '285 Are Invalid As Anticipated ............................................... 3

    A.    The Legal Standard for Summary Judgment ..................................... 3

    B.    Claims 1-4 and 9 of the '285 Patent Are Invalid
        Under 35 U.S.C. § 102 As Anticipated....................................... 3

      1. Claim 1................................................................................. 5

          a)    Janssen Anticipates Claim 1 ....................................... 5

          b)    Benvenuto Anticpates Claim 1 ................................... 9

          c)    Reconstituted Adriamycin Anticipates Claim 1 ....................... 12

      2. Claim 2................................................................................. 14

      3. Claim 3................................................................................. 14

      4. Claim 4................................................................................. 14

      5. Claim 9................................................................................. 15

CONCLUSION.............................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Baxter Pharm. Products*, 334 F.3d 1274 (Fed. Cir. 2003) .............5

*Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342 (Fed. Cir. 1999)...............................3-4, 5

*EMI Group North America, Inc. v. Cypress Semiconductor Corp.*,
268 F.3d 1342 (Fed. Cir. 2001).......................................................................3

*Microstrategy Inc. v. Bus. Objects America*, 410 F. Supp. 2d 348 (D. Del. 2006) .............3

*Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644 (Fed.Cir. 1994)..............................3

*Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003) ...........................4

*SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005), *cert.*
*denied*, 2006 WL 1667007 (June 19, 2006)...........................................................10, 11

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001)...............3

*In re Thorpe*, 777 F.2d 695 (Fed. Cir. 1985) ......................................................11

*Titanium Metals Corp. of America v. Banner*, 778 F.2d 775 (Fed. Cir. 1985)................4, 5

## FEDERAL STATUTES

35 U.S.C. § 102(b) ...............................................................................5, 7, 9, 12

35 U.S.C. § 288 ...........................................................................................2

## TREATISES AND ARTICLES

3 Donald S. Chisum, *Chisum on Patents* § 8.06(2) ................................................5

J. A. Benvenuto et al., *Stability & Compatibility of Antitumor Agenst in Glass &*
*Plastic Containers*, 38 Am. J. Hosp. Pharm. 1914 - 1918 (1981) ..................................1

Kotz, Treichel, Weaver, *Chemistry and Chemical Reactivity* (6th Ed. 2006), at p.
810-812 ..................................................................................................12

M.J.H. Janssen et al., *Doxorubicin Decomposition on Storage. Effect of pH., Type*
*of Buffer and Liposome Encapsulation*, 23.............................................................1, 7

Lawrence A. Trissel, *Doxorubicin HCL, in Handbook On Injectable Drugs*, 171
(3d ed. 1983), at p. 171 ................................................................................13

Defendants Sicor Inc. and SICOR Pharmaceuticals, Inc. ("Sicor") submit this

Memorandum of Law in support of their motion for summary judgment on the grounds that

Claims 1 through 4 and 9 of the patent-in-suit, U.S. Patent No. 6,107,285 ("the '285 patent"), are

anticipated. The complaint of Plaintiff Pharmacia & Upjohn Company LLC ("Pharmacia")

therefore should be dismissed with prejudice.

## NATURE AND STAGE OF THE PROCEEDINGS

As set forth more fully below, Pharmacia alleges that Sicor infringed the '285 patent,

which covers a ready-to-use idarubicin hydrochloride injection. Aside from an isolated

discovery-related issue before the Court (which has no bearing on the present motion), discovery

is complete. The parties recently filed their opening and responsive claim construction briefs.

Trial is scheduled for November 2006.

## SUMMARY OF ARGUMENT

Claims 1 through 4 and 9 of the '285 patent are each anticipated by the article M.J.H.

Janssen et al., *Doxorubicin Decomposition on Storage, Effect of pH., Type of Buffer and*

*Liposome Encapsulation*, 23 Int'l J. of Pharm., 1-11 (1985) ("Janssen") (Ex. A). In addition, if

the Court finds that the invention covers both lyophilized and non-lyophilized forms of

anthracycline glycoside, Claims 1 through 4 would also be anticipated both by the article J. A.

Benvenuto et al., *Stability & Compatibility of Antitumor Agent in Glass & Plastic Containers*,

38 Am. J. Hosp. Pharm. 1914 - 1918 (1981) ("Benvenuto") (Ex. B), and Pharmacia's own

Adriamycin® (doxorubicin hydrochloride) for Injection product. (*See* Ex. C). Accordingly,

Claims 1 through 4 and 9 of the '285 patent are invalid.[1]

---

[1]    Although Pharmacia no longer asserts Claims 1 through 4 of the '285 patent against Sicor
in this case -- an implicit concession that they are invalid -- this motion is important because,
among other things, Pharmacia's failure to disclaim these claims precludes it from recovering

### STATEMENT OF FACTS

**A.    The State of the Art**

Anthracycline glycosides are a group of pharmaceutical compounds that have long been used for treating certain types of human and animal tumors. (Ex. D, '285 Patent, 4:25-28). Although idarubicin hydrochloride is the anthracycline glycoside at issue in this case, doxorubicin hydrochloride is the most widely used form of this type of compound. (*Id.* at 1:12-15). At the time of the claimed invention, dosage forms of doxorubicin hydrochloride were made commercially available as a chemically stable, lyophilized preparation in commercial-grade, sealed containers. (*Id.* at 1:22-24).[2]

**B.    The '285 patent**

The '285 patent, entitled "Injectable ready-to-use solutions containing an antitumor anthracycline glycoside," was filed on January 29, 1992, and issued on August 22, 2000 following a series of divisional and continuation patent applications ultimately claiming foreign priority from United Kingdom patent application UK 8519452 (filed August 2, 1985). (D.I. 232 at 2). The '285 patent relates to "a stable intravenously injectable ready-to-use solution of an antitumor anthracycline glycoside." (Ex. D, '285 patent, 1:7-9).

In particular, the claims of the '285 patent are directed to ready-to-use solutions of three anthracycline glycoside antibiotics in their hydrochloride salt forms:  doxorubicin hydrochloride,

---

costs in this action. *See* 35 U.S.C. § 288 (assertion of patent without disclaiming invalid claims precludes recovery of costs).

[2]    "Lyophilized" means freeze-dried. (*See, generally*, Ex. E, Expert Report of Douglas S. Clark, at pp. 14-15; Ex. F, Expert Report of Jacob H. Beijnen, at p. 7). The process of lyophilization involves "dissolving the drug (and, generally, a bulking agent) in a suitable solvent" and then freezing a liquid solution and removing the water under pressure. (*Id.*) This process is used in making freeze-dried (or lyophilized) instant coffees and other products.

epirubicin hydrochloride, and idarubicin hydrochloride. (*Id.* at 1:61-65). According to the '285 patent, the ready-to-use solution of the formulations comprises a physiologically acceptable salt of an anthracycline glycoside dissolved in a physiologically acceptable solvent, which has not been reconstituted from a lyophilizate. (*Id.* at 1:54-58, 3:25-30). The '285 patent applicants stated that a particular feature of the invention, namely that it does not require either lyophilization or reconstitution, significantly reduces the health risks associated with the manufacture and reconstitution of lyophilized preparations of the toxic drug compound. (*Id.* at 1:47-53).

## ARGUMENT

### THERE IS NO MATERIAL ISSUE OF DISPUTED FACT THAT THE ASSERTED CLAIMS OF '285 ARE INVALID AS ANTICIPATED

#### A.    The Legal Standard for Summary Judgment

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir. 1994) (citations omitted). "Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1327 (Fed. Cir. 2001); *see also Microstrategy Inc. v. Bus. Objects Am.,* 410 F. Supp. 2d 348, 364-65 (D. Del. 2006) (KAJ) (granting summary judgment on anticipation).

#### B.    Claims 1 through 4 and 9 of the '285 Patent Are Invalid Under 35 U.S.C. § 102 As Anticipated

A patent claim is anticipated, and therefore invalid, if a prior art reference "discloses, either expressly or inherently, all of the limitations of the claim." *EMI Group North America, Inc. v. Cypress Semiconductor Corp.,* 268 F.3d 1342, 1350 (Fed. Cir. 2001); *see also Atlas*

*Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999) (while a prior art reference, to anticipate a claim, must disclose every element of the claim, a "reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it."). In other words, "a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharm., Inc.* 339 F.3d 1373, 1377 (Fed. Cir. 2003). Inherency may operate to provide a single missing limitation that is not expressly disclosed in the prior art or may supply the "entire anticipatory subject matter" where the prior art does not expressly disclose any of the claimed elements. *Id.* at 1379.

Under the law of inherency, anticipation does not require that those of ordinary skill in the art contemporaneously recognize the inherent property in the prior art reference. Rather, if a reference sets forth sufficient information -- whether or not it was actually recognized -- the reference will be anticipatory. *Atlas Powder Co.*, 190 F.3d at 1347 ("Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art. . . . However, the discovery of a previously unappreciated property of a prior art composition, or of a scientific explanation for the prior art's functioning, does not render the old composition patentably new to the discoverer."). *See also Schering Corp.*, 339 F.3d at 1378 ("Thus, in *Continental Can*, this court did not require past recognition of the inherent feature, but only allowed recourse to opinions of skilled artisans to determine the scope of the prior art reference."). "Anticipation does not require the actual creation or reduction to practice of the prior art subject matter; anticipation requires only an enabling disclosure." *Id.* at 1380.

When a claim covers a range of compositions, the claim is "anticipated if *one* of [the compositions within the range] is in the prior art." *Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985) (emphasis added). In other words, a prior art reference disclosing

- 4 -

compositions that fall within a claimed range anticipates that claim. *Atlas Powder Co.,* 190 F.3d.

at 1350 (holding that patents were invalid as anticipated where prior art disclosed ingredients that

overlapped with claimed range). In addition, a claim may contain a "listing of specified

alternatives of a group [] typically expressed in the form: a member selected from the group

consisting of A, B, and C," also known as a Markush group. *Abbott Labs v. Baxter Pharm.*

*Products*, 334 F.3d 1274, 1280 (Fed. Cir. 2003). Such a claim is anticipated if even one member

of the group is disclosed in the prior art. *See Titanium Metals*, 778 F.2d at 782; *see also* 3

Donald S. Chisum, *Chisum on Patents* § 8.06(2)(f) (2005) ("If an applicant claims an invention

with an element defined as a Markush group of A, B, C, and D, and the prior art discloses the

combination with element D, then the claim is invalid."). This is precisely the case here.

### 1.    Claim 1

Claim 1 of the '285 patent reads as follows:

> A physiologically acceptable solution of anthracycline glycoside
> selected from the group consisting of idarubicin hydrochloride,
> **doxorubicin** hydrochloride and epirubicin hydrochloride dissolved
> **in a physiologically acceptable aqueous solvent, having a pH
> adjusted to from 2.5 to 5.0 with** a physiologically acceptable acid
> selected from the group consisting of **hydrochloric acid,** sulfuric
> acid, phosphoric acid, methane sulfuric acid, and tartaric acid, **the
> concentration of said anthracycline glycoside being from 0.1 to
> 100 mg/ml, wherein said solution is contained in a sealed
> container.**

(Emphasis added).

### a)    Janssen Anticipates Claim 1

Claim 1 is anticipated by Janssen (Ex. A). Janssen is prior art under 35 U.S.C. § 102(b),

because it was published more than one year before to the effective filing date of the '285 patent.

(Ex. A; *see also* Ex. L). Pharmacia's Response to Defendants' First Request No. 83 at p. 40-41).

It is undisputed that Janssen, in general, discloses a physiologically acceptable solution. (*See*

*generally* Ex. A, Janssen). The Janssen solution contains doxorubicin hydrochloride dissolved in

- 5 -

water, which is a physiologically acceptable aqueous solvent. (*See* Ex. A, Janssen at Summary,

lines 2-3). In one of Janssen's examples, the solution is adjusted to a pH of 4.0 (within the

range of 2.5 to 5.0 claimed in the '285 patent) with hydrochloric acid, which is the predominant

constituent of the TRIS buffer. (*Id.*, p. 4, lines 9-10). In particular,

**REDACTED**

The doxorubicin hydrochloride concentration of the pH 4.0 solution in this Janssen

example is 0.1 mg/ml -- within the '285 patent's claimed range. (*Id.*, p. 4 lines 20-21).[3] Finally,

the Janssen's solution was stored in sealed 1 ml glass vials or polypropylene tubes. (Ex. A,

Janssen, at p.4, lines 21 and 23). Although Pharmacia may (wrongly) contend that Janssen's

containers were not "sealed,"

**REDACTED**

---

[3]     During the prosecution that led to the issuance of the '285 patent, Pharmacia argued that
Janssen did not disclose a concentration of doxorubicin hydrochloride within the claimed range.
(*See* Ex. H, Response to Office Action, dated May 6, 1997, at p. 4, lines 11-14).

**REDACTED**

closed containers (i.e., vials and tubes) disclosed in Janssen were so sealed to avoid evaporation

and dangerous exposure of the researchers to the toxicity of doxorubicin.  (Ex. E, Clark Report at

p. 18; Ex. K, Clark Tr. at 206:24-208:19).

Accordingly, Janssen anticipates Claim 1 of the patent, as summarized in the following

chart:

## JANSSEN DISCLOSURE CHART

| '285 Patent Claim Language | Disclosure from Janssen (Ex.A) |
| --- | --- |
| 1. A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride | Discloses doxorubicin hydrochloride.  (*See* Janssen at Summary, line 1-2 and at p.2 ("Doxorubicin-HCl and doxorubicinone-HCl were provided by Farmitalia (Milan) and Lab. Roger Bellon (Neuilly sur Seine, Paris) and used without purification.") |
| dissolved in a physiologically acceptable aqueous solvent, | Discloses doxorubicin hydrochloride dissolved in water. (*Id.*, p. 2) ("The medium for hydration (pH 4) consisted of 0.8% sodium chloride and 0.01 mol/l Tris-(hydroxymethyl) aminomethane hydrochloride (Tris) in water.") |
| having a pH adjusted to from 2.5 to 5.0 | Discloses doxorubicin hydrochloride solutions with a pH of 4.0.  (*Id.*, p. 4, lines 9-10)  This pH is within the claimed 2.5 to 5.0 range. |
| with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfuric acid, and tartaric acid, | Discloses that "the pH was adjusted with 2 mol/l hydrochloric acid." (*Id.*, p. 4, lines 9-10; Ex. J, Arcamone Tr. at 189:21-190:3; Ex. I, Beijnen Tr. at 177:12-22).  The specification of the '285 patent specifically states that "[t]he acid may be any physiologically acceptable acid, e.g., an inorganic mineral acid such as hydrochloric, sulfuric, phosphoric, nitric and the like . . . ." (Ex. D '285 patent at 2:51-54). |
| the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, | Discloses doxorubicin hydrochloride solutions with a doxorubicin hydrochloride concentration of  0.05 mg/ml, 0.1 mg/ml and 0.5 mg/ml. (Ex. A, Janssen, p. 4, lines 20-21). |

| | |
|---|---|
| Wherein said solution is contained in a sealed container. | Discloses doxorubicin hydrochloride solutions in sealed polypropylene tubes, glass vials and other sealed containers. (*Id.*, p.4, lines 21 and 23; Ex. E, Clark Report at p. 18; Ex. K, Clark Tr. at 206:24-208:19; Ex. I, Beijnen Tr. at 194:3-25.<br><br>**REDACTED** |

Thus, in view of the foregoing, Sicor submits that Janssen anticipates Claim 1 of the '285 patent.

   **b)**  **Benvenuto Anticipates Claim 1**

  If the Court finds that the invention covers both lyophilized and non-lyophilized forms of

anthracycline glycoside, Claim 1 is, in addition to Janssen, anticipated Benvenuto (Ex. B).

Benvenuto is prior art under 35 U.S.C. § 102(b) because it was published more than one year

before to the effective filing date of the '285 patent. (Ex. L, Pharmacia's Response to

Defendant's First Request For Admissions, Admission No. 46 at p. 21-22).

  Benvenuto discloses reconstitution of lyophilized doxorubicin hydrochloride using a

water solution containing salt and diluted with a 5% dextrose solution. (Ex. B, Benvenuto, at

p.1914, lines 7-11). The reconstitution process produced a final doxorubicin chloride

concentration of 0.18 mg/ml with a pH level of 4.20 in a sealed viaflex polyvinyl chloride plastic

bag and pH 4.75 in a glass container. (*Id.* at p.1915 Table 1). These levels are all within the

ranges claimed by the '285 patent.

  In addition, hydrochloric acid is necessarily responsible for adjusting the pH in the

Benvenuto aqueous solution to 4.2 and 4.75. Although Benvenuto does not explicitly state that

there is hydrochloric acid in the doxorubicin hydrochloride solutions, there can be no dispute that

it is necessarily present because as set forth below: (1) doxorubicin hydrochloride naturally

disassociates (*i.e.*, undergoes the general chemical process where salts separate into smaller

molecules or ions) in water into doxorubicin and *hydrochloric acid*; and (2) in the manufacture

of bulk doxorubicin hydrochloride, traces of hydrochloric acid remain unreacted (*i.e.*, do not

bond with the doxorubicin).

  First, Sicor and Pharmacia agree that, as used in the '285 patent, the chemical definition

of doxorubicin hydrochloric is depicted as follows:

- 9 -

(D.I. 231, Joint Claim Construction Chart). Thus, the parties agree that doxorubicin

hydrochloride is the monohydrochloride salt form of an anthracycline glycoside compound. In

accordance with well-known scientific principles of salts, doxorubicin hydrochloride will

disassociate in aqueous solution into doxorubicin and hydrochloric acid (and even further into

the ionic components of hydrochloric acid: H+ and Cl-) in equilibrium. (See Ex. N, Kotz,

Treichel, Weaver, *Chemistry and Chemical Reactivity* (6th Ed. 2006), at p. 810-812). As a result

of this disassociation, the H+ (hydrogen ions) will act as the pH adjusting agent for the solution.

(*Id.* at p. 798-99).

      Second,

**REDACTED**

              Trace amounts of a chemical

that occurs naturally is sufficient for a finding of anticipation as a matter of law. *See SmithKline

Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1344-45 (Fed. Cir. 2005), *cert. denied*, 2006

WL 1667007 (June 19, 2006). Thus, the solution of Benvenuto has a "pH within the specified

range due to the use of a pH adjusting agent." (D.I. 231, Joint Claim Construction Chart at p. 3).

      In any event, Claim 1 is anticipated by Benvenuto because it discloses a solutions with a

pH of 4.2 and 4.75; how the solution reached these pH levels is irrelevant. The claim at issue is

a "product-by-process" claim (*i.e.*, a "physiologically acceptable solution" as opposed to a

"*method* of making a physiologically acceptable solution"). Product-by-process claims may be

- 10 -

rendered invalid if the claimed product produced by the process is the same as (or obvious from) a product in the prior art, even if the product in the prior art was obtained by a different process. *See Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1317-19 (Fed. Cir. 2006) (holding that patent was invalid because "it has long been established that one cannot avoid anticipation by an earlier product disclosure by [] claiming the product as produced by a particular process."). Therefore, regardless of whether claims are limited and defined by the process recited, determination of patentability is based on the product itself. *See In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985). Here, Claim 1 of the '285 patent is limited and defined by the process of adjusting the pH level with an acid, but prior art may anticipate the claim whether or not the acid in the ultimate product was the actual agent that adjusted the pH level.

Accordingly, if the Court holds that lyophilized doxorubicin hydrochloride is within the scope of the claims, Benvenuto anticipates Claim 1 of the '285 patent, as summarized in the following chart:

## BENVENUTO DISCLOSURE CHART

| '285 Patent Claim Language | Disclosure from Benvenuto (Ex. B) |
|---|---|
| 1. A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride | Discloses doxorubicin hydrochloride reconstituted from lyophilizate. (Ex. B, Benvenuto, p.1914, lines 7-11). |
| dissolved in a physiologically acceptable aqueous solvent, | Discloses physiologically acceptable aqueous solvent of water, salt and dextrose. (*See* Benvenuto, p.1914, lines 7-11 ("Drugs were reconstituted according to manufacturers' instructions and added 5% dextrose injection 50 ml in both polyvinyl chloride bags and glass partial-filled bottles"; p.1914 and 1915, Table 1). |
| Having a pH adjusted to from 2.5 to 5.0 | Discloses doxorubicin hydrochloride solutions with a pH of 4.20 (in plastic bag) and 4.75 (in |

- 11 -

| | glass container). (*Id.*, p.1915, Table 1). |
|---|---|
| with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfuric acid, and tartaric acid, | Hydrochloric acid necessarily included in solution as a result of disassociation (*See* Ex. N, Kotz, Treichel, Weaver, *Chemistry and Chemical Reactivity* (6th Ed. 2006), at p. 810-812) and residual traces of unreacted hydrochloric acid in the manufacturing process. (Ex. M, Gatti Tr. at 39:13-40:22). |
| the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, | Discloses doxorubicin hydrochloride solutions with a doxorubicin hydrochloride concentration of 0.18 mg/ml. (Ex. B, Benvenuto, p.1915, Table 1). |
| Wherein said solution is contained in a sealed container. | Discloses doxorubicin hydrochloride solutions in viaflex polyvinyl chloride bags (*Id.*, p. 1914 ("Drugs were reconstituted according to manufacturers' instructions and added 5% dextrose injection 50 ml in both polyvinyl chloride bags and glass partial-filled bottles"); 1915 Table 1. |

Thus, in view of the foregoing, Sicor submits that Benvenuto anticipates Claim 1 of the

'285 patent, if lyophilized forms are found to be within the scope of the claim.

        c)      **Reconstituted Adriamycin Anticipates Claim 1**

Similarly, if the Court finds that the claim term " anthracycline glycoside" covers

lyophilized forms (in addition to non-lyophilized forms), Claim 1 is also anticipated by

Pharmacia's own Adriamycin® (doxorubicin hydrochloride) for Injection product, which is the

product used in Benvenuto. Like the Benvenuto article that used it, Pharmacia's product

constitutes prior art under 35 U.S.C. § 102(b) because it was introduced more than one year prior

to the effective filing of the '285 patent. (Ex. L, Pharmacia's Response to Defendant's First

Request For Admissions, Admission No. 35 at p. 17).

According to Lawrence A. Trissel, *Doxorubicin HCL, in Handbook on Injectable Drugs,* (3d ed. 1983), at p. 171 (Ex. C), Adriamycin® for Injection was reconstituted with water or saline for injection with a drug concentration of 0.5-0.67 mg/ml.  During the reconstitution process, Trissel teaches the vial containing the solution is shaken *(id.)*, necessarily meaning that the solution is in a sealed container so as to minimize exposure and maintain sterility.  Further, the Trissel Handbook states that the reconstituted doxorubicin hydrochloride had a pH of 3.8-6.5 *(id.)*, which overlaps with the pH range claimed in the '285 patent.  As noted above, Sicor and Pharmacia agree that the definition of chemical compound doxorubicin already includes hydrochloric acid as part of its structure, and it is not significant that the acid was not the agent that adjusted the pH level of the solution.  *(See infra* at 8-10).

Accordingly, Claim 1 of the '285 patent is anticipated by Adriamycin® for Injection as summarized in the following chart:

### ADRIAMYCIN FOR INJECTION DISCLOSURE CHART

| '285 Patent Claim Language | Disclosure from Adriamycin for Injection (Ex. C) |
|---|---|
| 1. A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride | Discloses doxorubicin hydrochloride reconstituted from lyophilizate *(See* Ex. C, Trissel at p.171). |
| dissolved in a physiologically acceptable aqueous solvent, | Discloses physiologically acceptable aqueous solvent of water, salt and dextrose. *(Id.)* |
| Having a pH adjusted to from 2.5 to 5.0 | Discloses doxorubicin hydrochloride solutions with a pH of 3.8-6.5. *(Id.)* |
| with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfuric acid, and tartaric acid, | Discloses hydrochloric acid because: (a) the parties agree that hydrochloric acid is necessarily a part of the doxorubicin chemical compound; and (b) **REDACTED** |

| | |
|---|---|
| | **REDACTED**  (Ex. M, Gatti Tr. at 39:13-40:2). |
| the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, | Discloses doxorubicin hydrochloride solutions with a doxorubicin hydrochloride concentration of 0.5-0.67 mg/ml (*See* Ex. C, Trissel at p.171). |
| Wherein said solution is contained in a sealed container. | Discloses doxorubicin hydrochloride solutions in sealed container suitable for shaking (*See Id.*, p.171; D.I. 232. |

### 2.     Claim 2

Claim 2 of the '285 patent depends from Claim 1 and requires the additional limitation that "said physiologically acceptable aqueous solvent is selected from the group consisting of water, ethanol, polyethylene glycol, dimethylacetamide, and mixtures thereof." As discussed above, Janssen, Benvenuto and Adriamycin® for Injection disclosed the use of water as an acceptable aqueous solvent. Accordingly, Claim 2 of the '285 patent is anticipated.

### 3.     Claim 3

Claim 3 of the '285 patent depends from Claim 1 and requires the additional limitation that the "physiologically acceptable aqueous solvent is water." As discussed above, Janssen, Benvenuto and Adriamycin® For Injection disclosed the use of water as an acceptable aqueous solvent. Accordingly, Claim 3 of the '285 patent is anticipated.

### 4.     Claim 4

Claim 4 of the '285 patent depends from Claim 1 and requires the additional limitation that the "concentration of the doxorubicin is from 0.1 to 50 mg/ml." As discussed above, Janssen, Benvenuto and Adriamycin® For Injection discloses a concentration of doxorubicin of within that range. Accordingly, Claim 4 of the '285 patent is anticipated.

### 5.     Claim 9

Claim 9 of the '285 patent depends from Claim 1 and requires the additional limitation that the "solution exhibits storage stability as a result of said pH being adjusted to the said pH range using said acids." Janssen discloses that "the results of this study indicate that pH 4 and 4 [degrees] C provide optimum shelf-life" and that "a pH of 4.0 is the pH preferred for an optimum shelf-life." (Ex. A, Janssen, at pp.1, 9-10). Similarly, Benvenuto discloses that, under the conditions of its study, doxorubicin exhibited storage stability, finding that "[t]here was no apparent decrease of doxorubicin in plastic [bags] even by 48 hours." (Ex B, Benvenuto, at p. 1917, lines 6-7). It is also apparent from its availability for sale that Pharmacia's own product Adriamycin for Injection exhibited storage stability. Accordingly, Claim 9 of the '285 patent is anticipated.

## CONCLUSION

For the reasons set forth above, there is no material issue of disputed fact that Claims 1-4

and 9 of the '285 patent are anticipated.  Sicor is therefore entitled to summary judgment.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Jordan A. Sigale
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois 60606
(312) 876-8000

Dated:     June 21, 2006
170674.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 27th day of June, 2006, the attached **REDACTED PUBLIC**

**VERSION OF MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT ON ANTICIPATION** was served upon the

below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19801

Joshua R. Rich, Esquire                                    VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


                                                   */s/ Tiffany Geyer Lydon*
                                                   _____
                                                   Tiffany Geyer Lydon