# EXHIBIT H

CERTIFICATE OF MAILING

I hereby certify that this paper and every paper referred to therein as being enclosed is being deposited with the U.S. Postal Service as first class mail, postage prepaid, in an envelope addressed to: Commissioner of Patents & Trademarks, Washington, DC 20231, on May 06, 1997 (Date of Deposit)

5/06/97  Daniel A. Boehnen
/Date/   Name

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
(Case No. 96,926)

| | |
|---|---|
| In re Application of: | |
| Gaetano Gatti et al. | |
| Serial No.: 07/827,742 | Examiner: E. Peselev |
| Filed: January 29, 1992 | Art Unit: 1211 |
| For: INJECTABLE READY-TO-USE SOLUTIONS CONTAINING AN ANTITUMOR ANTHRACYCLINE GLYCOSIDE | |

AMENDMENT

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

This is in response to the Office Action mailed December 6, 1996. A Petition for an extension of time (two months) and requisite fee are attached herewith. Please amend this application as shown below.

IN THE CLAIMS

Please add the following new dependent claims as shown below. A clean copy of the entire set of pending claims, after amendment, is attached as Appendix A.

PU 0015277

~~37~~ 6. (Amended) The solution of claim ~~37~~ 1 wherein the concentration of doxorubicin is about 2 mg/ml.

~~38~~ 7. (Amended) The solution of claim ~~37~~ 1 wherein the concentration of doxorubicin is about 5 mg/ml.

~~48~~ 11. The solution of claim ~~37~~ 1 wherein the concentration of anthracycline glycoside is about 1 mg/ml.

~~49~~ 12. The solution of claim ~~48~~ 11 wherein the physiologically acceptable acid is hydrochloric acid.

~~50~~ 13. The solution of claim ~~49~~ 12 wherein the anthracycline glycoside is idarubicin hydrochloride.

51. The solution of claim 44 wherein the concentration of anthracycline glycoside is about 1 mg/ml.

52. The solution of claim 51 wherein the physiologically acceptable acid is hydrochloric acid.

53. The solution of claim 52 wherein the anthracycline glycoside is idarubicin hydrochloride. --

2

PU 0015278

**REMARKS**

Reconsideration of this application, as amended, is respectfully requested.

Claims 31, 33-38, 40, 42 and 44-47 were pending in this application. New dependent claims 48-53 were added to further specify other embodiments of the invention. Claims 31, 33-38, 40, 42, and 44-53 are now pending in this application.

Support for the new dependent claims can be found in the application as originally filed. For instance, the subject matter of new claims 49 and 52 can be found on page 3, lines 23 and 24; new claims 48 and 51 can be found on page 6, lines 17 and 18; and new claims 47 and 53 can be found on page 3, line 13. Support for the amendment of claims 37 and 38 can be found on page 6, lines 14-24, in the specification. Accordingly, no new matter has been introduced into the application as a result of the above amendment.

Turning to the Office Action, claims 31, 33-38, 40 and 42 stand rejected under 35 U.S.C. 103 as being unpatentable over Janssen et al., International J. Pharmaceutics, Vol. 23 (1985), pp. 1-11 ("Janssen"). These claims also stand rejected under 35 U.S.C. 103 as being unpatentable over Kaniewska (Chem. Abstracts, Vol. 88, 1978, Abst. No. 197526x) ("Kaniewska I") or Kaniewska (Pharmacia Polska, Vol. 9, pp. 539-542) ("Kaniewska II") in combination with Janssen. Applicants respectfully traverse these rejections.

The Federal Circuit has reiterated the manner in which obviousness rejections are to be reviewed. Where claimed subject matter has been rejected as obvious in view of a combination of prior art references, "a proper analysis under § 103 requires, inter alia, consideration of two factors: (1) whether the prior art would have suggested to those of ordinary skill in the art that they should make the claimed composition or device, or carry out the claimed process; and (2) whether the prior art would also have revealed that in so making or carrying out, those of ordinary skill would have a reasonable expectation of success." In re Vaeck, 947 F.2d 488, 493, 20 U.S.P.Q.2d 1438, 1442 (Fed. Cir. 1991), cited In re Dow Chemical Co., 837 F.2d 469, 473, 5 U.S.P.Q.2d 1529, 1531 (Fed. Cir. 1988). As the Federal Circuit emphasized by succinctly summarizing: "Both the suggestion and the reasonable expectation of success must be founded in the prior art, not in the Applicants' disclosure." Id. In the present case, neither Janssen, Kanieswska I, nor Kaniewska II provide any suggestion for the combination of references. Moreover, neither Janssen, Kaniewska I nor Kaniewska II, alone or in combination with each other, teach an expectation of success for doing what the Applicants have done, i.e. achieving a storage stable solution of anthracycline glycosides in a pharmaceutically accepted solution.

3

Janssen merely relates to a doxorubicin-HCl salt dissolved in Tris or phosphate buffer or cell culture medium for determination of decomposition kinetics in the presence or absence of liposomes. While Janssen teaches that doxorubicin decomposition rates can be modulated by buffer choice and temperature, Jannsen does not teach or suggest that any of the disclosed buffers are "pharmaceutically acceptable solutions" as recited in the present claims. Moreover, Janssen does not suggest that its result can be achieved irrespective of the manner of adjusting the pH, i.e., irrespective of using buffer. The reader knows only that the buffer used therein achieved the results disclosed. There is nothing in Janssen that implies the need for a storage stable physiologically acceptable solution of anthracycline glycoside. There is also nothing in Janssen that suggest the same result could be obtained by pH adjustment of a physiologically acceptable aqueous solvent medium with the use of a physiologically acceptable acid. Moreover, as the Examiner had acknowledged on page 2 of the prior Office Action, Janssen does not teach or suggest a concentration of anthracycline glycoside ranging from 0.1 to 100 mg/ml in pharmaceutically acceptable solution or otherwise.

Like Janssen, Kaniewska I is mainly concerned with decomposition kinetics, and merely states that adriamycin-HCl in buffered solutions followed first order kinetics at increasing pH of the medium. While Kaniewska describes measurement of a decomposition rate constant at pH 2.6, Kaniewska does not teach or suggest any "pharmaceutically acceptable solution." Indeed, Kaniewska I is completely silent with respect to the chemical identity of the solution, other than the fact that it is buffered. Like Janssen, Kaniewska I fails to suggest that the results are achieved without use of a buffer, i.e., irrespective of how pH is adjusted. While Kaniewska I does disclose determination of a rate constant at pH 2.6 as the Examiner noted on page 2 of the Action, this determination is not a disclosure of a pharmaceutically acceptable solution having the recited pH range as presently claimed.

Finally, Kaniewska II merely concerns decomposition kinetics of adriamycin hydrochloride in solid form and in a 2% solution of "Britton-Robinson" buffer at various pH values. As shown in the attached article by Britton and Robinson (J. Chem. Soc., 458, 1456 (1931)), the Britton-Robinson buffer merely refers to an aqueous solution of sodium hydroxide, acetic acid, phosphoric acid and boric acid. Acetic acid is replaceable with phenylacetic acid and in one version, a barbituric drug substance, veronal, was also included. Britton-Robinson buffers are not considered pharmaceutically acceptable and cannot be used for pharmaceutical preparations due to the presence of physiologically unacceptable substances such as boric acid.

Accordingly, a person of ordinary skill in the art would not be motivated by Janssen's teachings concerning non-physiologically acceptable phosphate or TRIS buffer or cell growth

4

medium containing doxorubicin, or Kaniewska I's teachings concerning unknown buffered solutions for decomposition kinetic studies, or Kaniewska's adriamycin solutions in Britton-Robinson buffers for decomposition kinetic studies to make and use the presently claimed physiologically acceptable solution with any reasonable expectation of success. There is no teaching in the cited references that the results are achieved irrespective of what is used to adjust the pH level, and the teaching of the cited references was not achieved in a physiologically accepted solution. As a threshold matter, obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination. In re Geiger, 815 F.2d 686 (Fed. Cir. 1987); In re Fine, 837 F.2d 1071 (Fed. Cir. 1988). Withdrawal of the § 103 rejection based on Janssen, Kaniewska I and II, alone or in combination with each other, is in order and is respectfully requested.

These references merely illustrate that, prior to the present invention, scientists were searching for an answer to a long-term storage stable solution of anthracycline glycosides in a pharmaceutically acceptable solution. These references do not teach the solution. Rather, they confirm the long-standing need of the problem. Indeed, Janssen et al. expressly acknowledged that they had not solved the problem: "In our laboratory, work is in progress to address the problem related to the chemical stability of DXR [i.e., doxorubicin] in a systematic way." Janssen et al., p. 10.

In view of the above amendment and discussion, Applicants respectfully submit that claims 31, 33-38, 40, 42, and 44-53 are allowable and that a Notice of Allowance should be issued in this case. The Applicants urge the Examiner to contact the Applicants' undersigned representative if the Examiner believes that this would expedite prosecution of this application.

Respectfully submitted,

Dated: May 6, 1997

Daniel A. Boehnen
Registration No. 28,399

McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Chicago, Illinois 60606
Phone: (312) 913-0001
Facsimile: (312) 913-0002

5

PU 0015281

## APPENDIX A

31. A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride dissolved in a physiologically acceptable aqueous solvent, having a pH adjusted to from 2.5 to 5.0 with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfonic acid, and tartaric acid, the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, wherein said solution is contained in a sealed container.

33. The solution of Claim 31 wherein said physiologically acceptable aqueous solvent is selected from the group consisting of water, ethanol, polyethylene glycol, N.N.-dimethylacetamide, and mixtures thereof.

34. The solution of Claim 31 wherein the physiologically acceptable aqueous solvent is water.

35. The solution of Claim 31 wherein the concentration of the doxorubicin is from 0.1 to 50 mg/ml.

36. The solution of Claim 35 wherein the concentration of doxorubicin is from 1 to 20 mg/ml.

37. The solution of Claim 31 wherein the concentration of doxorubicin is about 2 mg/ml.

38. The solution of Claim 31 wherein the concentration of doxorubicin is about 5 mg/ml.

40. The solution of Claim 31 further comprising a tonicity adjusting agent.

PU 0015282

42. A sealed container containing a stable, intravenously injectable, sterile, pyrogen-free doxorubicin solution which consists essentially of doxorubicin hydrochloride dissolved in a physiologically acceptable solvent therefor, wherein said solution has a pH adjusted to 2.5 to 5.0 with a physiologically acceptable acid and has a concentration of doxorubicin of from 0.1 to 100 mg/ml.

44. A physiologically acceptable aqueous solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride dissolved in a physiologically acceptable solvent, having a pH adjusted from 2.5 to 5.0 with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methanesulfonic acid, and tartaric acid, the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml.

45. The anthracycline glycoside solution of Claim 31, wherein said solution exhibits storage stability as a result of said pH being adjusted to the said pH range using said acids.

46. The container of Claim 42, wherein said doxorubicin solution exhibits storage stability as a result of said pH being adjusted to the said pH range using said acids.

47. The anthracycline glycoside solution of Claim 44, wherein said solution exhibits storage stability as a result of said pH being adjusted to the said pH range using said acids.

48. The solution of claim 31 wherein the concentration of anthracycline glycoside is about 1 mg/ml.

49. The solution of claim 48 wherein the physiologically acceptable acid is hydrochloric acid.

PU 0015283

50. The solution of claim 49 wherein the anthracycline glycoside is idarubicin hydrochloride.

51. The solution of claim 44 wherein the concentration of anthracycline glycoside is about 1 mg/ml.

52. The solution of claim 51 wherein the physiologically acceptable acid is hydrochloric acid.

53. The solution of claim 52 wherein the anthracycline glycoside is idarubicin hydrochloride.

8

PU 0015284