## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY,   )
LLC,                                 )
                                     )
           Plaintiff,        )
                                   )
          v.                     )
                                   )
SICOR INC. and SICOR        )
PHARMACEUTICALS, INC.,     )
                                   )
         Defendants.      )

**REDACTED PUBLIC VERSION**

C.A. No. 04-833-KAJ

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT, OR IN THE ALTERNATIVE, INVALIDITY FOR LACK OF WRITTEN DESCRIPTION

ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. # 3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Jordan A. Sigale
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, Illinois 60606
(312) 876-8000

Dated:  June 28, 2006

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................1

STATEMENT OF FACTS ...................................................................................... ......4

    A.    The '285 Patent......................................................................................4

    B.    The Meaning Of The Term "Anthracycline Glycoside" Is *Sub Judice*................4

    C.    Sicor's Idarubicin Hydrochloride Injection Product ........................... ......5

ARGUMENT ...................................................................................................6

    I.    SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE IS NO
        GENUINE ISSUE AS TO ANY MATERIAL FACT............................ ....6

    II.    UNDER SICOR'S SUGGESTED CONSTRUCTION OF "ANTHRACYCLINE
        GLYCOSIDE," SICOR'S PRODUCT DOES NOT INFRINGE THE '285
        PATENT ............................................................................ ...7

        A.    There Is No Infringement Here...................................... ...7

        B.    Sicor's Product Is Manufactured With A Lyophilized
            Preparate And Thus Does Not Infringe The '285 Patent,
            Which Covers Only Non-Lyophilized Formulations.................... ..8

    III.    IF THE COURT ACCEPTS PHARMACIA'S CONSTRUCTION
        OF "ANTHRACYCLINE GLYCOSIDE," THE '285 PATENT IS
        INVALID FOR LACK OF WRITTEN DESCRIPTION ........................ 10

        A.    Under 35 U.S.C. § 112(1), A Patentee Must Provide A Written
            Description Of The Invention When The Application Is Filed
            And May Not Expand The Later Drafter Claims Beyond The
            Written Description.............................................. 1

        B.    The '285 Patent Is Invalid For Lack Of Written Description........... 2

CONCLUSION....................................................................................

## TABLE OF AUTHORITIES

### CASES

*Abbott Laboratoriess v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003) .......................9

*Amhil Enterprises Ltd. v. Wawa*, Inc., 81 F.3d 1554 (Fed. Cir. 1996) ..............................8

*Chiron Corp. v. Genentech Inc.*, 363 F.3d 1247 (Fed. Cir. 2004) ...................................12

*Cooper Cameron Corp. v. Kvaerner Oilfield Products*, Inc., 291 F.3d 1317
    (Fed. Cir. 2002) .......................................................................................................11

*Fiers v. Revel*, 984 F.2d 1164 (Fed. Cir. 1993) ...............................................................12

*Gentry Gallery Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998)................... *passim*

*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533 (Fed. Cir. 1991) .......................................7

*Lantech Inc. v. Keip Machine Co.*, 32 F.3d 542 (Fed. Cir. 1994)........................................7

*Lockwood v. Amer. Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997)..................................12

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ..............................7

*Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644 (Fed. Cir. 1994)..............................6

*PIN/NIP, Inc. v. Platte Chemical Co.*, 304 F.3d 1235 (Fed. Cir. 2002) ...........................11

*Tronzo v. Biomet Inc.*, 156 F.3d 1154 (Fed. Cir. 1998) ................................................16, 17

*USA Video Tech. Corp. v. Movielink LLC*, 354 F. Supp. 2d 507 (D. Del. 2005) ...............6

*University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916
    (Fed. Cir. 2004).................................................................................................7, 12

*Vas-Cath, Inc. v. Mohurkar*, 935 F.2d 1555 (Fed. Cir. 1991) .....................................11, 12

*Wahpeton Canvas Co. v. Frontier Inc.*, 870 F.2d 1546 (Fed. Cir. 1989) ...........................8

*Waldemar Link GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556 (Fed. Cir. 1994).............11

*Warner-Jenkinson Co. Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) ................7

### STATUTES

35 U.S.C. § 112.................................................................................................... *passim*

## NATURE AND STAGE OF PROCEEDINGS

Pharmacia & Upjohn Company LLC ("Pharmacia") alleges in this lawsuit that defendants Sicor Inc. and SICOR Pharmaceuticals, Inc. (collectively, "Sicor") infringed U.S. Patent No. 6,107,285 ("the '285 patent"), which covers a ready-to-use idarubicin hydrochloride injection. Except for an isolated discovery-related issue that is before the Court (and which will have no bearing on the present motion), discovery has been completed. The parties recently filed their opening and responsive claim construction briefs, which are now *sub judice*. Trial is scheduled to commence in November 2006.

By this motion, Sicor respectfully requests that the Court enter an order dismissing this case on summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Simply put, if the Court construes the claim term "anthracycline glycoside" in the manner suggested by Sicor, there can be no finding of infringement as a matter of law; if the Court construes that term in accordance with Pharmacia's view, the '285 patent will be invalid for lack of written description pursuant to 35 U.S.C. § 112(1). In either event, there is no genuine issue of material fact in dispute, and judgment as a matter of law should thus be entered in Sicor's favor.

## SUMMARY OF ARGUMENT

Sicor and Pharmacia recently completed briefing several claim construction issues with respect to the '285 patent. A key disputed term is "anthracycline glycoside," and specifically, whether that term covers both non-lyophilized and lyophilized (i.e., freeze-dried) formulations, or only those that are non-lyophilized. As set forth in its claim construction briefs, Sicor strongly believes that one of ordinary skill in the art at the time of the invention, upon reading the '285 patent, would have understood the term as limited to only non-lyophilized preparates. However, Sicor is entitled to summary judgment whether or not the Court agrees with Sicor's proposed construction.

It is axiomatic that to succeed in this lawsuit, Pharmacia must prove that Sicor infringed each and every element of the patent claim at issue. If the Court finds that the '285 patent only covers non-lyophilized formulations of anthracycline glycosides, Sicor could not under any set of facts have infringed the '285 patent because Sicor's idarubicin hydrochloride injection product is manufactured from a lyophilizate and thus would not be covered by the '285 patent – summary judgment would thus be warranted on Pharmacia's infringement claim.

On the other hand, if the Court finds that the term "anthracycline glycoside" as used in the claims covers lyophilized formulations, the patent would be invalid as a matter of law for lack of written description under 35 U.S.C. § 112(1), and Sicor would be entitled to summary judgment on that basis. The U.S. Court of Appeals for the Federal Circuit has repeatedly held that, under Section 112(1), a broad claim is invalid when the entirety of the patent's specification indicates that the invention is of a materially narrower scope. Where claims are deemed to cover material that was not included in the *original written description of the patent*, the law demands that such claims be declared invalid for lack of written description. This doctrine prevents applicants from accomplishing the very manipulation Pharmacia is attempting in this case: amending its claims late into the eighth year of the prosecution process to reach beyond the material contained in its original disclosures.

As set forth in detail below and in Sicor's claim construction briefs, the '285 patent's abstract and specification (and the abstract and specification of the earlier patents from which Pharmacia claims a priority) repeat over and over again that the covered invention *does not* include formulations derived from a lyophilizate. In fact, the '285 patent's specification expressly describes the covered invention based on the lyophilized/non-lyophilized distinction and touts the invention's benefits by attacking the safety and efficacy of lyophilized forms of the drug. One skilled in the art, reading the *original disclosure*, could not "immediately discern"

2

that the later-written claims would cover lyophilized anthracycline glycoside formulations. Thus the patent would be invalid for lack of written description.

While Sicor respectfully submits that its suggested construction of "anthracycline glycoside" is correct, neither construction can alter the fact that the '285 patent, including its specification, does not encompass solutions of these drugs that contain a lyophilized preparate. Pharmacia's proposed construction simply stretches the claims of the '285 patent to a distance that is unsustainable in light of the scope of its specification. The written description requirement ensures that where a patentee creates such a disconnect between the claims and its supporting original disclosures, the patent collapses under its own weight and is rendered invalid. Under Sicor's construction, the claims are appropriately confined to covering only solutions that do not involve a lyophilized preparate, and Sicor thus could not be found to have infringed.

## STATEMENT OF FACTS

### A.    The '285 Patent

The '285 patent is entitled "Injectable ready-to-use solutions containing an antitumor anthracycline glycoside." (Ex. A).  It was filed on January 29, 1992, and issued on August 22, 2000, following a series of divisional and continuation patent applications all of which claimed priority from United Kingdom patent application UK 8519452 (filed August 2, 1985) (the "UK Application").  (Ex. B; *see also* D.I. 232 at 2 (claiming priority based upon the UK Application).

The '285 patent states that it covers "a stable intravenously injectable ready-to-use solution of an antitumor anthracycline glycoside." (Ex. A, the '285 patent, 1:7-9).  In particular, the claims of the '285 patent are directed to ready-to-use solutions of three anthracycline glycoside antibiotics in their hydrochloride salt forms, including idarubicin hydrochloride, the drug at issue in this lawsuit.  (Ex. A, the '285 patent, 1:61-65).[1]

### B.    The Meaning Of The Term "Anthracycline Glycoside" Is *Sub Judice*

Sicor and Pharmacia disagree as to whether the term "anthracycline glycoside," as used in the '285 patent, should be construed to cover idarubicin hydrochloride in its lyophilized form.  Based on the '285 patent, its specification and prosecution history, Sicor maintains that the proper meaning of the term "anthracycline glycoside" is "a non-lyophilized preparate of the class of chemical compounds having the following generic structure:"



---

[1]    The other two anthracycline glycosides discussed in the '285 patent are doxorubicin hydrochloride and epirubicin hydrochloride. (*Id.* at 23:5-8).

In other words, Sicor avers that the thirteen claims of the '285 patent cover only anthracycline glycoside solutions that are **not** made with a lyophilized preparate. As set forth in detail in its claim construction briefs, Sicor's position is based upon, and consistent with, the intrinsic record evidence (i.e., the patent, its specification and its prosecution history), including among other things, the following facts:

- the '285 patent does not disclose a single embodiment of the drug that uses a lyophilized preparate (*See generally* Ex. A);

- the '285 patent repeatedly describes the benefits of a non-lyophilized formulation over those of a lyophilized solution (*id.* at 1:22-58);

- the '285 patent repeatedly emphasizes the disadvantages of lyophilized anthracycline glycoside formulations (*id.*);

- the '285 patent's abstract describes the invention as covering solutions that have "not been reconstituted from a lyophilizate" (*id.* at 1); and

- the statements made by Pharmacia to the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the '285 patent demonstrate that the patent is intended to cover non-lyophilized solutions (*See, e.g.,* Ex. C at p. 5 (PI 879) ("[T]he step of preparing the solution from a lyophilized powder is no longer necessary."); Ex. D at p. 2 (PU 15068) (distinguishing prior art "which involve[s] lyophilizates"); Ex. E at p. 3 (PU 15077) (distinguishing prior art that is "directed to anthracycline solutions which form a lyophilizate.")).[2]

**C.     Sicor's Idarubicin Hydrochloride Injection Product**

Sicor's idarubicin hydrochloride injection product is created using a "lyophilized preparation" of idarubicin hydrochloride. (Ex. F, "Idarubicin Hydrochloride 3.2.S.2 Manufacture," at p. 9 (SICOR-PNU 047267); Ex. G, "Sicor, Idarubicin Hydrochloride, US DMF," at p. 3 (SICOR-PNU 047222) ("Idarubicin Hydrochloride is isolated at [S]icor by lyophilization, therefore an amorphous modification is predominantly obtained.")). The process begins with the synthesis of the idarubicin hydrochloride molecule, essentially the raw form of

---

[2]     For a full discussion of why this Court should construe the term "anthracycline glycoside" in the manner Sicor's suggests – i.e., to cover only non-lyophilized formulations – Sicor respectfully refers the Court to its opening and reply claim construction briefs, (D.I. 232 at 25-28; D.I. 244 at 10-19), which are incorporated herein by reference.

the active drug ingredient. (Ex. G at p. 5 (SICOR-PNU 047224), first three steps of the synthesis illustrated therein; *id.* at p. 6-7 (SICOR-PNU 047225-26)). Sicor then creates a lyophilized preparation of idarubicin hydrochloride by dissolving the raw molecule into a solvent and freeze-drying the resulting mixture. (Ex. G at p. 7 (SICOR-PNU 047226)). This freeze-dried form of the drug is referred to as a lyophilizate. To create its injectable liquid product, Sicor then "reconstitutes" the lyophilized preparate by adding water and the other components (as listed in Ex. H, "Compounding Procedure for Idarubicin Hydrochloride Injection 10 mg/vial Bulk Solution," at p. 2 (SICOR-PNU 000162)), yielding a stable solution. (Ex. H at p. 4-7 (SICOR-PNU 000164-000167)).

## ARGUMENT

## I.     SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994) (citations omitted). Specifically, summary judgment is "appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury." *USA Video Tech. Corp. v. Movielink LLC,* 354 F. Supp. 2d 507, 515 (D. Del. 2005) (KAJ).

The same standard applies when a patentee fails, pursuant to 35 U.S.C. § 112(1), to provide an adequate written description of the patent-in-suit. Specifically, where the Court determines that no reasonable juror could find that the patentee's written disclosure in its original application would place a person of ordinary skill in the art on notice of what the later-written claims will cover, the written description requirement of Section 112(1) will be left unsatisfied

6

and summary judgment is warranted. *See Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358

F.3d 916, 927, 930 (Fed. Cir. 2004).

Sicor is entitled to summary judgment because, depending on the Court's resolution of

the claim construction issue, it either does not infringe the '285 patent because its product is

manufactured from a lyophilized preparate, or because the '285 patent's written description is

insufficient as a matter of law.

## II.     UNDER SICOR'S SUGGESTED CONSTRUCTION OF "ANTHRACYCLINE GLYCOSIDE," SICOR'S PRODUCT DOES NOT INFRINGE THE '285 PATENT

### A.     There Is No Infringement Here

It is well settled that to prevail in this case Pharmacia must prove every essential element

of its infringement claim by a preponderance of the evidence. *See Laitram Corp. v. Rexnord,*

*Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991). The infringement question requires the Court to

engage in a two-step analysis. The meaning of the patent claims at issue must first be

interpreted, and then those interpreted claims are applied to the accused device to determine

whether infringement has occurred. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976

(Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996). Literal infringement requires that "each limitation

of the claim must be met by the accused device exactly, any deviation from the claim precluding

a finding of infringement." *Lantech Inc. v. Keip Machine Co.,* 32 F.3d 542, 547 (Fed. Cir.

1994).[3]

Thus, Pharmacia's infringement claim cannot survive unless it can demonstrate with

admissible evidence that each and every element of the claims at issue is found in Sicor's

product. *See Warner-Jenkinson Co. Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 29 (1997);

---

[3]     Pharmacia has not alleged infringement by Sicor based upon the "doctrine of equivalents."

*Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996).  Pharmacia cannot

make such a showing, and summary judgment in favor of Sicor is thus warranted.

### B.   Sicor's Product Is Manufactured With A <u>Lyophilized Preparate</u> And Thus Does Not Infringe The '285 Patent, Which Covers Only Non-Lyophilized Formulations.

If the Court adopts Sicor's construction of "anthracycline glycoside" to include only

non-lyophilized formulations, Sicor's product cannot infringe the '285 patent as a matter of law.

Pharmacia alleges that Sicor's product infringes Claims 9 and 13 of the '285 patent.  (Ex. I; *see*

*also* D.I. 232 at 1).  Both of these Claims depend from Claim 1.[4]   Dependent claims contain all

the limitations of the independent claims from which they depend.  *Wahpeton Canvas Co. v.*

*Frontier Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989).  Therefore, Claims 9 and 13 of the '285

patent contain all limitations included in Claim 1, which states:

> 1.     A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride dissolved in a physiologically acceptable aqueous solvent, having a pH adjusted to from 2.5 to 5.0 with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfonic acid, and tartaric acid, the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, wherein said solution is contained in a sealed container.

(Ex. A, the '285 Patent, 23:5-15).

Applying Sicor's construction of "anthracycline glycoside," Claim 1, and thus Claims 9

and 13, are limited to "a non-lyophilized preparate of the class of chemical compounds [having

the generic structure diagrammed above]."  (Ex. J).  Put differently, if the Court adopts Sicor's

construction, an element of each of the Claims that Pharmacia alleges Sicor infringed requires

that the solution **not** be made from a lyophilized preparate.

---

[4]     Claim 9 depends directly from Claim 1, while Claim 13 depends from Claim 12, which in turn depends from Claim 11, which in turn depends from Claim 1.  (Ex. A, '285 Patent, 24: 12-14, 18-23).

Sicor's idarubicin hydrochloride injection product **is** manufactured using a lyophilized preparate. (*See* Statement of Facts § C, *supra*). Sicor's evidence in this regard is both uncontested and incontestable. (*Id.*) Accordingly, there is no genuine issue of material fact bearing on infringement. Rather, the evidence plainly demonstrates that Sicor's product lacks an element of each of the asserted Claims. Thus, as a matter of law, Sicor's product does not infringe the '285 patent.

This is precisely what the U.S. Court of Appeals for the Federal Circuit held in a similar case, *Abbott Labs v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003), where – like here – a branded pharmaceutical manufacturer alleged that a generic pharmaceutical maker infringed its patent.[5] In that case, the district court first construed the claim at issue to require "co-micronization of a mixture consisting essentially of *only* fenofibrate and solid surfactant." *Id.* at 1330. The Federal Circuit affirmed that construction and also affirmed the grant of summary judgment in favor of the generic pharmaceutical manufacturer on the following grounds – which are virtually identical to the lyophilizate/non-lyophilizate issue here:

> Because it is undisputed that fenofibrate and a solid surfactant are not mixed in Novopharm's process without other significant ingredients, *viz.*, excipients and water, being present, we conclude that there is no genuine issue of material fact as to literal infringement in this case.

*Id.*

Precisely the same result is warranted here. If the Court finds that "anthracycline glycoside," as used in the '285 patent means a non-lyophilized formulation of the drug, Sicor could not have infringed the patent – Sicor's product is manufactured from a lyophilized preparate and summary judgment on non-infringement would be warranted.

---

[5]    The defendant in the *Novopharm* case is now an affiliate of Sicor.

9

III.   **IF THE COURT ACCEPTS PHARMACIA'S CONSTRUCTION OF "ANTHRACYCLINE GLYCOSIDE," THE '285 PATENT IS INVALID FOR LACK OF WRITTEN DESCRIPTION**

Pharmacia cannot escape the fundamental incongruence between the scope of the asserted Claims as they appear on the face of the '285 patent and scope of the patent's specification. As argued by Sicor in its claim construction briefs, one of ordinary skill in the art would conclude, based on the language of the '285 patent and its prosecution history, that the claims at issue are limited to solutions created with non-lyophilized preparates. This construction harmonizes the intrinsic evidence, including the various components of the patent and its prosecution history.

In contrast, Pharmacia's construction of "anthracycline glycoside" crystallizes the internal conflict in the '285 patent. If accepted by the Court, Pharmacia's construction fixes as a matter of fact the striking inconsistency between the scope of the claims – which would cover lyophilized preparates – and the scope of the specifications, which are directed exclusively toward only non-lyophilized preparates. Such a construction renders the Claims at issue far broader than Pharmacia's original disclosures.

However, this is the very result the written description requirement is designed to prevent. As set forth fully below, under Pharmacia's construction of the term "anthracycline glycoside," all thirteen claims of the '285 patent are invalid for lack of written description under 35 U.S.C. § 112, paragraph 1 because Pharmacia has attempted to seek protection well beyond its initial invention. *See Gentry Gallery Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

**A.    Under 35 U.S.C. § 112(1), A Patentee Must Provide A Written Description Of The Invention When The Application Is Filed And May Not Expand The Later Drafted Claims Beyond The Written Description**

The law requires that a patent's specification contain a "written description of the invention." 35 U.S.C. § 112. This prevents inventors from overreaching during the course of patent prosecution, and ensures that the monopoly a patentee receives is co-extensive with the patentee's *original* written disclosures (i.e., its original description of the invention sought to be patented). Indeed, it has long been the law that an inventor's "original disclosure serves to limit the permissible breadth of his later-drafted claims." *Gentry Gallery*, 134 F.3d at 1479.

By limiting an applicant to the description of the invention as originally filed, the written description requirement "guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Vas-Cath, Inc. v. Mohurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991). "[C]laims may be no broader than the supporting disclosure, and therefore [] a narrow disclosure will limit claim breadth." *Gentry Gallery*, 134 F.3d at 1480; *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1248 (Fed. Cir. 2002) ("In *Gentry* we applied [] the unremarkable proposition that a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope.") (quoting *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002)).

Specifically, applicants are required to "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession *of the invention*." *Vas-Cath*, 935 F.2d at 1563-64. In other words, one skilled in the art, reading the original disclosure must "immediately discern the limitation at issue" in the claims. *Waldemar Link GmbH & Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1994). Compliance with the written description requirement focuses on what the specification discloses, not on what would have been

one of ordinary skill in the art. *Lockwood v. Amer. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose.")

In determining whether a written description is sufficient, the Court looks to the original description of the invention. Where the patent claims priority to an earlier application, the Court should assess whether that earlier application contains a sufficient written description for the current invention. *See Vas-Cath*, 935 F.2d at 1560; *Fiers v. Revel*, 984 F.2d 1164, 1169-71 (Fed. Cir. 1993). This is to prevent the patentee from receiving the benefit of the filing date for inventions that were not adequately disclosed at that time. As the Federal Circuit held in *Chiron Corp. v. Genentech Inc.*, 363 F.3d 1247, 1255 (Fed. Cir. 2004):

> The written description requirement prevents applicants from using the amendment process to update their disclosures (claims or specifications) during their pendency before the patent office. Otherwise applicants could add new matter to their disclosures and date them back to the original filing date, thus defeating an accurate accounting of the priority of invention.

Where a patent's specifications fail to support its claims, summary judgment on invalidity for lack of written description is warranted, "based solely on the language of the patent specification." *Univ. of Rochester*, 358 F.3d at 927.

## B. The '285 Patent is Invalid for Lack of Written Description

The '285 patent claims a 1985 priority based on the 1985 UK Application, which contains the original written description for the current claims. (Ex. B). As required to obtain such priority, the written description in the '742 application, filed in 1992, and which ultimately matured into the '285 patent, is substantially identical to the U.K application. (Ex. K). Similarly, the specification of the issued '285 patent is identical in all relevant parts to the

specification in the '742 application. Therefore, the '285 patent's specification is substantially identical to the written descriptions filed in 1985 and in 1992.

*Gentry Gallery*, a seminal Federal Circuit case on the written description requirement provides a clear and straight-forward application of the law and is highly analogous to the case at hand. The issue in *Gentry Gallery* was whether the specification, which described a specific location of a control console on a reclining sofa, adequately supported broad claims that did not expressly limit the location of the controls. 134 F.3d at 1479. In reversing the district court, the Federal Circuit held that the inventor could not maintain claims in which the recliner controls were not located on the console because the *specification* unambiguously limited the location of the controls to the console. *Id.* Accordingly, the claims were not supported by the specification as originally filed, and were invalid under 35 U.S.C. §112, first paragraph. *Id.*

As in *Gentry Gallery*, the broadest original claims in the 1985 U.K. application as well as in U.S. application '742, which ultimately matured into the '285 patent, all contained the limitation at issue; specifically, each contained an express limitation requiring that the invention could not be "reconstituted from a lyophilizate." (Ex. B at p. 40 (Claim 1); Ex. K at p. 42 (Claim 1)). Only in 1996, four years after the '742 patent application was filed, and eleven years after the U.K. Application was filed, did Pharmacia drop the "not reconstituted from a lyophilizate" language from its Claims, thereby improperly expanding the scope of its original claims during the prosecution of the patent-in-suit. (Ex. L, June 28, 1996 Response to Office Action, at p. 3 (PU 15157)). The instant case therefore presents a classic application of the written description requirement. When claims – like Pharmacia's here – are expanded by amendment during the pendency of an application to embrace matter that is not encompassed by the written description, those claims violate the law. *See Gentry Gallery*, 134 F.3d at 1479 (holding claims to be invalid under § 112(1) because, among other things, the expanded claim urged by the inventors was

"outside the stated purpose of the invention" as set forth in the original disclosures to the USPTO).

Pharmacia's expanded claims reach well beyond written description of the '285 patent. From 1985 until present, the written description contained in the applications and in the patent itself unabashedly describe the invention as limited to solutions not made with a lyophilized preparate. (Exs. A, B, K). This limitation is recited throughout the original written description and is satisfied by every example provided in the specifications. (*Id.*). Moreover, Pharmacia affirmatively relied on this limitation in touting the virtues of its invention and its superiority to the prior art.

For example, the very first description of the invention in the '742 patent application appears in the application's Abstract, which states:

> According to the invention there is provided a sterile, pyrogen-free, ready-to-use solution of an anthracycline glycoside, especially doxorubicin, which consists essentially of a physiologically acceptable salt of an anthracycline glycoside dissolved in a physiologically acceptable solvent therefor, **which has not been reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5.

(Ex. K, U.S. Patent Application, SN 07/827,742, dated 1/29/1992, cover page) (emphasis added).[6] Given that this summary of the invention contains such a limitation, it is unsurprising that the specification identifies only solutions that have not been reconstituted from a lyophilizate. Indeed, the specification fails to disclose a single embodiment of the invention that uses a lyophilized preparate. Instead, it repeatedly characterizes the invention as covering solutions "which ha[ve] not been reconstituted from a lyophilizate:"

> According to the present invention, there is provided a sterile, pyrogen-free, anthracycline glycoside solution which consists essentially of a physiologically acceptable salt of an anthracycline

---

[6]    The '285 patent contains identical language in its Abstract. (Ex. A, 285 patent, p. 1).

glycoside dissolved in a physiologically acceptable solvent therefor, **which has not be reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5.

*          *          *

According to a particularly preferred feature of the invention, there is provided a sterile, pyrogen-free, doxorubicin solution which consists essentially of a physiologically acceptable salt of doxorubicin dissolved in a physiologically acceptable solvent therefor, **which has not been reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5.

*          *          *

The invention also provides a process for producing a sterile, pyrogen-free anthracycline glycoside solution with a pH of from 2.5 to 6.5, which process comprises **dissolving a physiologically acceptable salt of the anthracycline glycoside, which salt is not in the form of a lyophilizate**, in a physiologically acceptable solvent therefor; optionally adding a physiologically acceptable acid or buffer to adjust the pH within the said range as desired; and passing the resulting solution through a sterilising [sic] filter.

(Exhibit B, U.K. application, p. 3: 1-6; p. 7: 9-15; p. 8:20-9: 4) (emphasis added).[7]

Moreover, in describing the purpose of the invention, the applicants emphasized that solutions produced without a lyophilized preparate are superior to those that were.  Pharmacia repeatedly relies on the "not lyophilized" limitation to distinguish its invention from prior art and to tout its advantages:

Both the **manufacturing** and the **reconstitution** of such preparations expose the involved personnel (workers, pharmacists, medical personnel, nurses) to risks of contamination which are particularly serious due to the toxicity of the antitumor substances.

*          *          *

As the **risks connected with the manufacturing and the reconstitution of a lyophilized preparate would be highly reduced if a ready-to-use solution of the drug were available**,

---

[7]     *See also* Exhibit A: '285 patent, p. 1:53-58; p. 3:25-30; p. 3:59-67 (emphasis added); Exhibit K, '742 application, p. 3:1-6; p. 7:9-14; p. 8:20-9:4) containing identical language.

we have developed a stable, therapeutically acceptable intravenously injectable solution of an anthracycline glycoside drug, e.g. doxorubicin, **whose preparation and administration does not require either lyophilization or reconstitution.**

*          *          *

[I]t is possible to obtain compositions having a very high concentration of the anthracycline glycoside active substance even at 50 mg/ml and more. **This constitutes a great advantage over the presently available lyophilized preparates** wherein high concentrations of anthracycline glycoside can only be obtained with difficulty because of solubilization problems encountered in reconstitution, mainly with saline. The presence of the excipient, e.g. lactose, in the lyophilized cake . . . has a negative effect on solubilization so that difficulties may arise in obtaining dissolution of the lyophilized cake, especially for concentrations of anthracycline glycoside higher than 2 mg/ml.

(Ex. B, U.K. application, p. 1:24-28; p. 2:19-25; p. 9:10-22-10:2) (emphasis added).[8]

Thus, not only is the specification limited to solutions made with non-lyophilized preparates, but Pharmacia, both as applicant and litigant, actually boasts of this limitation and emphasizes it to distinguish the invention covered by the '285 patent from the prior art.[9] Indeed, according to the written description, Pharmacia's invention signals a departure from the prior art precisely because it avoids lyophilized forms of anthracycline glycosides. (Ex B, U.K. application, p. 1:24-28; p.2:19-25; p.9:10-22 to p.10:2).

In this regard, the Federal Circuit's holding in *Tronzo v. Biomet Inc.*, 156 F.3d 1154 (Fed. Cir. 1998) is instructive. In *Tronzo*, the Court considered a patent containing numerous generic claims relating to the shape of cup implants. The specification in the parent application, however, described only a conical shape. Finding the written description insufficient to support such broad claims, the Court took particular note of the fact that "the specification specifically

---

[8]     *See also* Ex. A, '285 patent, 1:25-29; 1:47-53; 4: 5-19); Exhibit K, '742 application, p. 1:24-28; p. 2:19-25; p. 9:10-22-10:2.

[9]     Pharmacia most recently echoed this theme in its Opening Brief on Claim Construction. (D.I. 232 at 5-6).

distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589

cup." *Id.* at 1159 (citations omitted, emphasis in original). In similar fashion, Pharmacia's

exegesis on the proclaimed benefits of solutions that are not manufactured or reconstituted from

a lyophilizate undermines any argument it may try to muster that the specification encompasses

solutions that are made from lyophilized formulations.

Pharmacia is in an unenviable bind – but one of its own choosing. In an attempt to

inappropriately broaden its monopoly to cover material that was plainly not contemplated in

developing and filing its invention, Pharmacia finds itself stuck between two doctrines of law

designed to prevent a party from doing just that. If, as Sicor submits, the Court determines that

the term "anthracycline glycoside" refers to a non-lyophilized preparate, there is no question of

fact that Sicor's product does not infringe. If, on the other hand, the court accepts Pharmacia's

broad definition of the term, the patent plainly runs afoul of the written description requirement,

and should be held to be invalid on that basis.

## CONCLUSION

For the reasons set forth above, there are no material issues of disputed fact precluding this court from granting Sicor's motion for summary judgment on non-infringement, or in the alternative, invalidity.  Sicor is therefore entitled to summary judgment.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. # 3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Michael S. Gugig
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Jordan A. Sigale
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, Illinois 60606
(312) 876-8000

Dated:  June 21, 2006
170659.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2006, the attached **REDACTED PUBLIC VERSION OF MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT, OR IN THE ALTERNATIVE, INVALIDITY FOR LACK OF WRITTEN DESCRIPTION** was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19801

Joshua R. Rich, Esquire                                    VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


/s/ Tiffany Geyer Lydon
_____

Tiffany Geyer Lydon