IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC | |
| Plaintiff, | |
| v. | Civil Action No. 04-833 KAJ |
| SICOR, INC., and | **REDACTED VERSION** |
| SICOR PHARMACEUTICALS, INC. | |
| Defendants. | |

### PHARMACIA & UPJOHN'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SICOR'S LACHES AND EQUITABLE ESTOPPEL AFFIRMATIVE DEFENSES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  *Attorneys for Plaintiff*
  *Pharmacia & Upjohn Company LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, IL 60606
(312) 913-0001

Original Filing Date: June 21, 2006

Redacted Filing Date: June 29, 2006

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| TABLE OF CITATIONS | | iii |
| INTRODUCTION | | 1 |
| NATURE AND STAGE OF THE PROCEEDINGS | | 1 |
| SUMMARY OF ARGUMENT | | 5 |
| STATEMENT OF FACTS | | 6 |
| | A.   The '285 Patent | 6 |
| | B.   Sicor's Abbreviated New Drug Application For Idarubicin Hydrochloride | 7 |
| | C.   Pharmacia's Communications With Sicor | 9 |
| | D.   Sicor's Attempts To Negotiate With Pharmacia | 12 |
| | E.   Sicor's Lack Of Reliance | 14 |
| ARGUMENT | | 15 |
| I. | SUMMARY JUDGMENT | 16 |
| II. | LACHES | 16 |
| | A.   There Was No Unreasonable Delay By Pharmacia | 17 |
| | B.   Sicor Suffered No Prejudice | 20 |
| | C.   Sicor Should Not Be Permitted To Add Other Factual Bases | 21 |
| III. | ESTOPPEL | 21 |
| | A.   There Were No Commercial Negotiations That Conveyed That Pharmacia Would Forego Enforcing The '285 Patent | 22 |
| | B.   Sicor Did Not Rely On Anything Pharmacia Said In Negotiations | 23 |
| | C.   Sicor Suffered No Prejudice | 24 |

<u>TABLE OF CONTENTS</u> (continued)

<u>Page</u>

D.     Sicor Should Not Be Permitted To Add Other Factual
       Bases                                                             24

CONCLUSION                                                              25

iii.

TABLE OF CITATIONS

Page(s)

Cases

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
    960 F.2d 1020 (Fed. Cir. 1992) ........... passim

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970) ........... 7

*Allergan, Inc. v. Crawford,*
    398 F. Supp. 2d 13 (D.D.C. 2005) ........... 13

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........... 21

*Gargoyles, Inc. v. United States,*
    113 F.3d 1572 (Fed. Cir. 1997) ........... 22

*Gayler v. Wilder,*
    51 U.S. (10 How.) 477 (1850) ........... 22

*Glaxo Group Ltd. v. Apotex, Inc.,*
    272 F. Supp. 2d 772 (N.D. Ill. 2003), *aff'd on other grounds,*
    376 F.3d 1339 (Fed. Cir. 2004) ........... 23

*Glaxo, Inc. v. Novopharm, Ltd.,*
    110 F.3d 1562 (Fed. Cir. 1997) ........... 23

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ........... 21

*Owners Ins. Co. v. James,*
    295 F. Supp. 1354 (N.D. Ga. 2003) ........... 7

Statutes And Other Authorities

Fed. R. Civ. P. 33(b)(1) ........... 7

Fed. R. Civ. P. 56(c) ........... 21

35 U.S.C. § 271(a) ........... 22, 23

35 U.S.C. § 271(b) ........... 22

35 U.S.C. § 271(e)(1) ........... 23

## TABLE OF CITATIONS (cont'd)

35 U.S.C. § 271(e)(2)                                                 23, 24

21 C.F.R. § 314.430(b)                                                   13

21 C.F.R. § 314.430(c)                                                   13

## INTRODUCTION

Plaintiff Pharmacia & Upjohn Company, LLC ("Pharmacia") has moved for summary judgment of no laches or equitable estoppel.    Defendants Sicor Inc. and Sicor Pharmaceuticals, Inc. (collectively, "Sicor") have provided simply no evidence to support either defense.    Under these circumstances, the Court should enter summary judgment and bar Sicor from seeking to introduce evidence at trial related to either defense.

## NATURE AND STAGE OF THE PROCEEDINGS

Pharmacia filed this action on July 8, 2004, alleging that Sicor has infringed U.S. Patent No. 6,107,285 ("the '285 patent") by making, using, offering for sale, and selling a ready-to-use idarubicin hydrochloride solution.    D.I. 1.    The '285 patent was issued on August 22, 2000, and covers certain ready-to-use formulations of anthracycline glycosides.    Specifically, claim 1 (on which the asserted claims depend)[1] covers:

> A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride dissolved in a physiologically acceptable aqueous solvent, having a pH adjusted to from 2.5 to 5.0 with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfonic acid, and tartaric acid, the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, wherein said solution is contained in a sealed container.

Ex. 1.

On August 27, 2004, after obtaining a stipulated 30-day extension of time, Sicor filed its Answer, Counterclaim and Demand for a Jury Trial.    D.I. 9.    Among Sicor's affirmative

---

[1]    Pharmacia asserts that Sicor has infringed claims 9 and 13 of the '285 patent.

defenses and counterclaim averments were notice-pled allegations of laches and equitable estoppel. *Id.*, pp. 5-6. Sicor included the same laches and equitable estoppel allegations in its June 3, 2005 Amended Answer to First Amended Complaint, Counterclaim and Demand for a Jury Trial, as well as its March 17, 2006 Second Amended Answer to First Amended Complaint, Counterclaim and Demand for a Jury Trial. D.I. 51, pp. 4, 6; D.I. 212, p. 4.[2]

In its November 9, 2004 initial disclosures, Sicor identified four potential witnesses in relation to the laches and estoppel issues, but *all four* were former Pharmacia officers and employees. Ex. 2, p. 3. Among the four individuals identified as potential witnesses was John McBride, the former head of Pharmacia's oncology licensing. *Id.*

Sicor then made only the briefest contentions of fact in responding to Pharmacia's First Set of Interrogatories in relation to its laches and equitable estoppel arguments.[3] In support of its laches defense, it stated as follows:

> Pharmacia is barred in whole or in part from maintaining this action and from recovering any damages or equitable relief thereunder under the doctrine of laches because its delay in filing this action is [sic] an unreasonable and inexcusable length of time after it knew or reasonably should have known of its claims, and the delay has materially prejudiced Sicor. Pharmacia was aware that Sicor filed an ANDA well before it was approved and could

---

[2]    Sicor's Second Amended Answer to First Amended Complaint, Counterclaim and Demand for a Jury Trial retains the notice-pled affirmative defenses of laches and equitable estoppel, but eliminates the counterclaim counts related to those defenses. D.I. 212.

[3]    Notably, Sicor's answers to interrogatories were not answered under oath, as required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(b)(1). Thus, they are not available as to defend against Pharmacia's Motion for Summary Judgment. *Owners Ins. Co. v. James*, 295 F. Supp. 1354, 1362 (N.D. Ga. 2003) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970)) ("Unsworn statements 'do not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion.").

have asserted its purported claim for patent infringement at that time.

Ex. 3, p. 18.  In support of its equitable estoppel defense, it stated as follows:

> Pharmacia is barred in whole or in part from maintaining this action and from recovering any damages or equitable relief thereunder under the doctrine of equitable estoppel because, during its delay in commencing this action, Pharmacia engaged in commercial negotiations and transactions with Sicor that conveyed to Sicor that Pharmacia did not intend to enforce its alleged patent against Sicor.  Sicor relied upon Pharmacia's conduct, and, as a consequence, Sicor will suffer material prejudice if Pharmacia is permitted to proceed with this action.

*Id.*, p. 19.  Importantly, although Pharmacia expressly requested Sicor to identify "all corroborating witnesses or others having knowledge of any facts that relate to such affirmative defenses," Sicor only ever identified Marvin Samson, its Chief Executive Officer, as a potential Sicor witness. Ex. 4.

Pharmacia twice moved to compel more complete laches and equitable estoppel contentions from Sicor.  D.I. 43, 90.  In response to the first motion to compel, Sicor argued that it needed additional written discovery to provide a more complete response.  D.I. 44.  However, Sicor never amended its laches and equitable estoppel contentions.  After the passage of six months, Pharmacia moved to compel again.  Pharmacia's second motion to compel led to the following colloquy with the Court:

> THE COURT:  . . . Have you guys worked out your contention interrogatory kind of issues, or are we finished with interrogatory disputes?  Mr. Boehnen.
>
> MR. BOEHNEN (Pharmacia counsel):  Your honor, in our view, we're not but we are in the following sense.  We think that at this point, Your Honor should make it very clear perhaps by an order that the parties are not going to be able to introduce any arguments, theories, positions that have not been set forth to date in either their interrogatory responses or expert witness reports.

THE COURT:  Well, let me hear [Sicor counsel].  You've got an issue with that?

\* \* \*

MR. ASHINOFF (Sicor counsel):  . . . We essentially don't think we are deficient in our contention interrogatories at this point.  We supplemented a number of times.  And Mr. Boehnen's letter, as we point out, simply fails to specify in any way where we're deficient.  And we don't believe we are.

THE COURT:  Here is what I understand [Mr. Boehnen] to be saying, and I'm just not going to jump the gun on this.  That it's been pulling teeth to get you folks to give them responses.  You've got some now.  He doesn't want later surprises.  That's how I read his letters.

MR. ASHINOFF:  Your honor, we have laid out what we know . . . . [W]e're awaiting long overdue for a lot of discovery and as we get discovery from them, if that discovery leads us to revise our theories and our contentions, we will file amended interrogatory responses.

THE COURT:  All right.

MR. ASHINOFF:  We're current in terms of what we have from them now.

THE COURT:  So what I hear you saying is unless they give you something that changes your mind, you know what your positions are and you have given them your positions, right?

MR. ASHINOFF:  Yes, Your Honor . . . .

THE COURT:  Yes, All right.  Then we're going to let things just lay where they are right now.  If there comes some point later in the case where either side feels like somebody was pulling a rabbit out of the hat and playing a "gotcha" with new legal theories and contentions, we'll just have to address it then.  Hopefully, no one will be inclined to try and pull something like that at the last minute. . . .

Ex. 5, pp. 12-14.  Sicor provided no subsequent response beyond identifying Mr. Samson as a witness with knowledge underlying its laches and equitable estoppel contentions. Ex. 4.

## SUMMARY OF ARGUMENT

1.    Sicor cannot show the two elements of laches, unreasonable delay by Pharmacia or prejudice to Sicor from that allegedly unreasonable delay.

A.    Pharmacia did not delay unreasonably.  It had no cause of action against Sicor until September 2002, when Sicor began commercially marketing its accused product.  Upon Sicor's launch of generic idarubicin hydrochloride, Pharmacia investigated and sought to negotiate an agreement with Sicor to withdraw the accused product.  Sicor never responded directly to Pharmacia's entreaties, despite indications that it would do so, and instead covertly sought a license from Pharmacia.  Pharmacia refused to license Sicor and, therefore, promptly filed suit in July 2004.

B.    Sicor was not harmed in any way by any time between September 2002 and July 2004 attributable to Pharmacia.  Sicor did nothing to change its position during that time.  It did not build a factory, did not change its idarubicin hydrochloride budget substantially, and did nothing different during that period with regard to the accused product.

C.    Sicor identified only one factual basis for its laches defense, Pharmacia's alleged knowledge that Sicor filed an ANDA for its accused product.  This fact does not give rise to a cognizable laches defense, and Sicor should not be permitted to amend its position now to supplement its deficient interrogatory responses and substitute a new factual basis for its laches defense.

2.    Sicor cannot show the three elements of equitable estoppel: an allegedly misleading communication by Pharmacia; reliance on the allegedly misleading communication by Sicor; and prejudice to Sicor from reliance on the allegedly misleading communication.

A.    Pharmacia never said anything that would have led Sicor to believe that it would not enforce the '285 patent against Sicor.  Instead, in the face of Sicor's attempts to

obtain a license for idarubicin hydrochloride from Pharmacia during 2003, Pharmacia consistently indicated that it would not negotiate such a license.

       B.    Sicor never believed that Pharmacia would not enforce the '285 patent.

       C.    Sicor was not harmed in any way by anything that Pharmacia said or did in relation to Sicor's failed attempts to secure a license in 2003. Sicor did nothing to change its position from that time until Pharmacia filed suit. It did not build a factory, did not change its idarubicin hydrochloride budget substantially, and did nothing different during that period with regard to the accused product.

       D.    Sicor identified only one factual basis for its equitable estoppel defense, purported negotiations that conveyed to Sicor that Pharmacia did not intend to enforce its patent against Sicor. Sicor's allegation has no support whatsoever in the sworn testimony, and Sicor should not be permitted to amend its position now to supplement its deficient interrogatory responses and substitute a new factual basis – if it could find one – for its equitable estoppel defense.

## STATEMENT OF FACTS

### A.    The '285 Patent

Farmitalia Carlo Erba (Pharmacia's predecessor-in-interest) filed the UK priority application underlying its ready-to-use anthracycline glycoside patents on August 2, 1985. Ex. 1. On June 26, 1986, Farmitalia filed the initial U.S. application that, through continuations and divisionals, ripened into the '285 patent. *Id.* Prosecution continued through the issuance of several patents, including U.S. Patent Nos. 4,946,831 and 5,124,317. Ex. 6. Those patents have

the same specification as the '285 patent but claim only doxorubicin hydrochloride formulations that have not been reconstituted from a lyophilizate. Exs. 1, 7, 8.

The '285 patent ultimately issued on August 22, 2000. Ex. 1. However, the claims were in final form for issuance by September 1998, before Sicor began seeking approval to market its accused product. Ex. 9. Specifically, asserted claims 9 and 13 (rewritten in independent form) cover:

> 9.    A physiologically acceptable solution of anthracycline glycoside selected from the group consisting of idarubicin hydrochloride, doxorubicin hydrochloride and epirubicin hydrochloride dissolved in a physiologically acceptable aqueous solvent, having a pH adjusted to from 2.5 to 5.0 with a physiologically acceptable acid selected from the group consisting of hydrochloric acid, sulfuric acid, phosphoric acid, methane sulfonic acid, and tartaric acid, the concentration of said anthracycline glycoside being from 0.1 to 100 mg/ml, wherein said solution is contained in a sealed container, and wherein said solution exhibits storage stability as a result of said pH being adjusted to the said pH range using said acids.

> 13.    A physiologically acceptable solution of idarubicin hydrochloride dissolved in a physiologically acceptable aqueous solvent, having a pH adjusted to from 2.5 to 5.0 with a physiologically acceptable acid that is hydrochloric acid, the concentration of said idarubicin hydrochloride being about 1 mg/ml, wherein said solution is contained in a sealed container.

Ex. 1, 9.

**B.    Sicor's Abbreviated New Drug Application For Idarubicin Hydrochloride**

On December 23, 1998, well after Pharmacia filed its original patent application but well before the '285 patent issued, Sicor submitted an Abbreviated New Drug Application ("ANDA") to the U.S. Food and Drug Administration ("FDA"), seeking approval to market a

ready-to-use idarubicin hydrochloride solution.[4] Ex. 10. The ANDA was based on Pharmacia's

Abbreviated Antibiotic Drug Application ("AADA") for Idamycin PFS®, which had been

approved on February 17, 1997. *Id.* at SICOR-PNU 000022. Sicor continued to pursue its

ANDA until May 1, 2002, when the FDA approved Sicor's ready-to-use idarubicin

hydrochloride solution for marketing under labeling for idarubicin hydrochloride injection.

Ex. 11.

Like all ANDAs, Sicor's ready-to-use idarubicin hydrochloride solution ANDA

was held in confidence by the FDA until the FDA granted marketing approval. 21 C.F.R.

§ 314.430(b) & (c). Until then, there was no publicly available information regarding whether

the ANDA was filed, still pending, or withdrawn.[5]

REDACTED

---

[4]    At the same time it filed its ANDA for a ready-to-use idarubicin hydrochloride solution,
Sicor filed an ANDA for a lyophilized (or freeze-dried) idarubicin hydrochloride powder,
which requires reconstitution prior to administration to patients and would not be ready-
to-use. As with its ready-to-use idarubicin hydrochloride solution, Sicor received
marketing approval for that ANDA on May 1, 2002. Ex. 13.

REDACTED

[5]    Idarubicin hydrochloride, while used primarily as a chemotherapy agent, is classified by
the FDA as an antibiotic. Ex. 15. When the Hatch-Waxman Act was enacted, it
excluded antibiotics from several of its provisions including the requirement that relevant
patents be listed in the Orange Book. *See Allergan, Inc. v. Crawford*, 398 F. Supp. 2d 13,
16-17 (D.D.C. 2005). In November 1997, when the exclusion of antibiotics from the
Hatch-Waxman Act was corrected by the Food and Drug Modernization Act of 1997,
antibiotics with existing licenses were not included in the correction. *Id.* at 17-18.
Because idarubicin hydrochloride was approved before November 1997, it is not subject
to the Orange Book listing requirement, Paragraph III or IV certification requirement, or
other terms of the Hatch-Waxman Act. *Id.* at 18.

9.

Sicor did not immediately launch its ready-to-use idarubicin hydrochloride solution upon receiving FDA approval.              REDACTED

Then, no earlier than September 2002, Sicor began to sell its ready-to-use idarubicin hydrochloride solution (called idarubicin hydrochloride injection). Ex. 12, p. 172; Ex. 16.      REDACTED

C.      **Pharmacia's Communications With Sicor**

REDACTED

REDACTED

11.

REDACTED

12.

REDACTED

    D.      **<u>Sicor's Attempts To Negotiate With Pharmacia</u>**

REDACTED

13.

REDACTED

_____

REDACTED

14.

REDACTED

E.    **Sicor's Lack Of Reliance**

REDACTED

REDACTED

## **ARGUMENT**

Although Sicor attempted to invoke laches and equitable estoppel as affirmative defenses to limit its liability for its infringement of the '285 patent, it cannot show _any_ of the elements of either defense as a matter of law.  To support a laches defense, an accused infringer must establish two factors: (i) the patent owner delayed filing suit for an unreasonable and inexcusable period from the time it knew or reasonably should have known of its claim against the accused infringer; and (ii) the patent owner's delay materially prejudiced or injured the accused infringer.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33 (Fed. Cir. 1992) (*en banc*).  To support an equitable estoppel defense, an accused infringer must establish three factors: (i) the patent owner, generally with knowledge of the true facts, communicates something misleading, whether by words, conduct, or silence; (ii) the accused

---

[8]    Mr. Fach admitted that he reviewed Mr. Samson's deposition transcript before he testified.  Ex. 14, pp. 10, 265.

infringer relies upon the patent owner's communication; and (iii) allowing the patent owner to assert a claim inconsistent with its communication would materially prejudice or injure the accused infringer. *Id.*, p. 1041. Because discovery has shown that there is no genuine issue of material fact with regard to those elements and Pharmacia is entitled to judgment as a matter of law, this Court should enter summary judgment of no laches or equitable estoppel.

## I.    SUMMARY JUDGMENT

Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). Issues of material fact are genuine only if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## II.    LACHES

Pharmacia is not responsible for any delay in filing suit, let alone an unreasonable delay; rather, to the extent any party is responsible for a delay, it is Sicor. Importantly, the fundamental assumption of the defense as Sicor has asserted it – that Pharmacia could have sued for infringement before Sicor entered the market with its ready-to-use idarubicin hydrochloride solution – is untrue as a matter of law, and Sicor knew it. Thus, the short time lapse between Sicor's first marketing and Pharmacia's filing suit was not only reasonable, but justified on Pharmacia's part because of Sicor's silence. Furthermore, Sicor has never identified, and cannot identify, any material prejudice that came to it due to any delay. Thus, Sicor cannot establish either of the factors required to support a laches defense.

### A.      There Was No Unreasonable Delay By Pharmacia

As a matter of law, contrary to Sicor's arguments, Pharmacia did not have a cause

of action for infringement of the '285 patent until Sicor began offering its accused product for

sale.  Indeed, as discussed below, Sicor itself believed Pharmacia could not sue at the time of the

issuance of the '285 patent.  Because Pharmacia could not have brought an action against Sicor

until late 2002, then diligently sought a negotiated solution to the dispute (rebuffed by Sicor in

silence) before filing suit, it is not responsible for any delay.

Although Sicor has never clearly explained the basis for its argument that

Pharmacia unreasonably delayed, it now apparently believes that Pharmacia could have filed an

action for patent infringement as soon as the '285 patent issued; that is not true.  Of course,

unquestionably, Pharmacia could not have asserted a claim against Sicor under the '285 patent

until the patent issued on August 22, 2000.

> The period of delay is measured from the time the plaintiff knew or
> reasonably should have known of the defendant's alleged
> infringing activities to the date of the suit.  *__However, the period__*
> *__does not begin prior to issuance of the patent__*, *Bott,* 807 F.2d at
> 1575, 1 USPQ2d at 1216; *Studiengesellschaft Kohle,* 616 F.2d at
> 1326, 206 USPQ at 587.

*A.C. Aukerman,* 960 F.2d at 1032 (emphasis added); *see also Gayler v. Wilder,* 51 U.S. (10

How.) 477, 493 (1850) ("no suit can be maintained by the inventor against any one for using [the

invention] before the patent is issued"); *Gargoyles, Inc. v. United States,* 113 F.3d 1572, 1581

(Fed. Cir. 1997).  As of that time – and until late 2002 – Sicor was not marketing its idarubicin

hydrochloride injection product in the United States because it had not yet received FDA

marketing approval.  That is, Sicor did not engage in the commercial behavior described in 35

U.S.C. §§ 271(a) & (b) until late 2002.  To the extent it engaged in non-commercial behavior

that would otherwise fall under § 271(a), its actions until it received FDA approval were shielded by the safe harbor provision of the Hatch-Waxman Act:

> It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

35 U.S.C. § 271(e)(1). Thus, any actions by Sicor prior to receiving FDA marketing approval on May 1, 2002 that might otherwise constitute infringement would not actually give rise to a cause of action because of the safe harbor.

There is a single potential act of infringement relating to seeking FDA marketing approval, also established by the Hatch-Waxman Act; that act of infringement is not relevant here. Under 35 U.S.C. § 271(e)(2):

> It shall be an act of infringement ***to submit***—
>
> (A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent . . . if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug or veterinary biological product claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

(emphasis added). The case law interpreting § 271(e)(2) makes it clear that the "paper" act of infringement occurs when an ANDA is initially filed, not any other time or action in the prosecution of the ANDA. *See, e.g., Glaxo Group Ltd. v. Apotex, Inc.*, 272 F. Supp. 2d 772, 775-79 (N.D. Ill. 2003), *aff'd on other grounds*, 376 F.3d 1339 (Fed. Cir. 2004) (submission of ANDA, not any subsequent Paragraph IV certification, is act of infringement under § 271(e)(2)); *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1569 (Fed. Cir. 1997) ("Thus, § 271(e)(2) provided patentees with a defined act of infringement sufficient to create case or controversy

jurisdiction to enable a court to promptly resolve any dispute concerning infringement and validity."). At the time Sicor's ANDA was filed, the '285 patent was almost two years away from issuance. As a result, as discussed above, no cause of action could have existed at that time because the patent had not issued. Thus, the submission of Sicor's ANDA did not constitute an act of infringement of the '285 patent as an "application under section 505(j) . . . to engage in the commercial manufacture, use, or sale of a drug or veterinary biological product claimed in a patent" because the '285 patent did not exist yet. Thus, the "laches clock" could not start under § 271(e)(2) based on Sicor's submission of its ANDA.

REDACTED

Upon Sicor's launch, Pharmacia quickly took reasonable steps to attempt to resolve the problem of Sicor's infringement. Those steps are relevant to Sicor's laches defense because the "laches clock" is stopped during such settlement negotiations. *A.C. Aukerman*, 960 F.2d at 1033.

REDACTED

REDACTED

However, Pharmacia eventually came to understand that it had been misled by Mr. Samson's representation and therefore filed suit against Sicor on July 8, 2004. D.I. 1. That is, contrary to Sicor's allegations of delaying unreasonably, Pharmacia rapidly went to court when it determined that Sicor would not be responding to Pharmacia's negotiation attempts. As a result, there is no genuine issue of material fact that Pharmacia did not delay unreasonably and inexcusably as a matter of law and this Court should grant Pharmacia summary judgment on Sicor's laches defense.

### B.    Sicor Suffered No Prejudice

A showing of laches also requires material prejudice resulting from delay, which Sicor has not alleged factually and cannot show. *A.C. Aukerman*, 960 F.2d at 1033. Indeed, other than the bare conclusory assertion that it has been materially prejudiced, Sicor has made no attempt whatsoever to suggest that anything happened between its September 2002 launch and Pharmacia's 2004 filing suit that could constitute prejudice.

REDACTED

As a result, there is no genuine issue

of material fact that Sicor was not prejudiced as a matter of law, and this Court should grant Pharmacia summary judgment on Sicor's laches defense.

### C. Sicor Should Not Be Permitted To Add Other Factual Bases

As discussed above, Sicor had ample opportunity and warning that its laches contentions were insufficient. Pharmacia moved twice to compel more complete responses to contention interrogatories; Sicor never amended its contentions. It should not be allowed to do so now; that would be the very type of new theories that the Court decried when Sicor stated that its contentions were complete. Accordingly, Sicor's laches contentions should stand or fall as is; under the governing law, they must fall.

### III. ESTOPPEL

Sicor's equitable estoppel defense is simply confounding. Sicor identified only Marvin Samson as a Sicor officer or employee having knowledge relevant to the defense, but he clearly and unequivocally contradicted everything set forth in Sicor's (unverified) interrogatory response.

REDACTED

In short, Mr. Samson's testimony demonstrated that there is no basis whatsoever for Sicor's equitable estoppel defense.

In support of its equitable estoppel defense, Sicor has only ever alluded cryptically to some "commercial negotiations and transactions . . . that conveyed to Sicor that Pharmacia did not intend to enforce its alleged patent against Sicor"; the sworn testimony shows that neither party believed that to be true. Sicor's and Pharmacia's witnesses testified consistently to the exact opposite – that the parties never substantively discussed Pharmacia

allowing Sicor to sell a ready-to-use idarubicin hydrochloride solution.

REDACTED

Finally, Sicor was not prejudiced in any way by anything Pharmacia said or did. In short, Sicor's equitable estoppel defense should be stricken as a matter of law.

### A.    There Were No Commercial Negotiations That Conveyed That Pharmacia Would Forego Enforcing The '285 Patent

There is simply no evidence that commercial negotiations led Sicor to believe that Pharmacia would not enforce the '285 patent against it.

REDACTED

In short, the testimony clearly establishes that there were no commercial negotiations and transactions that could have led Sicor to believe that Pharmacia would not enforce the '285

patent.  This Court should therefore enter summary judgment against Sicor on its equitable estoppel defense.

### B.  Sicor Did Not Rely On Anything Pharmacia Said In Negotiations

Just as the testimony unequivocally establishes that Pharmacia did not do or say anything that would have led Sicor to rely on Pharmacia not enforcing the '285 patent, so too is it clear that Sicor did not rely on any such representations.

REDACTED

REDACTED

Thus, there is simply no question that Sicor did not rely on any representations from Pharmacia "that conveyed to Sicor that Pharmacia did not intend to enforce its alleged patent against Sicor." Without any reliance, Sicor's equitable estoppel defense must fail and this Court should grant summary judgment to Pharmacia.

### C.    Sicor Suffered No Prejudice

As with laches, a showing of equitable estoppel also requires material prejudice resulting from Pharmacia's conduct, which Sicor has not alleged factually and cannot show. *A.C. Aukerman*, 960 F.2d at 1041. Indeed, other than the bare conclusory assertion that it has been materially prejudiced, Sicor has made no attempt whatsoever to suggest that anything happened between its 2000-03 negotiations with Pharmacia and Pharmacia's 2004 filing suit that could constitute prejudice.

REDACTED

As a result, there is no genuine issue of material fact that Sicor was not prejudiced as a matter of law, and this Court should grant Pharmacia summary judgment on Sicor's equitable estoppel defense.

### D.    Sicor Should Not Be Permitted To Add Other Factual Bases

As discussed above, Sicor had ample opportunity and warning that its equitable estoppel contentions were insufficient. Pharmacia moved twice to compel more complete responses to contention interrogatories; Sicor never amended its contentions. It should not be allowed to do so now; that would be the very type of new theories that the Court decried when

Sicor stated that its contentions were complete. Accordingly, Sicor's equitable estoppel contentions should stand or fall as is; under the governing law, they must fall.

## CONCLUSION

For the foregoing reasons, this Court should grant Pharmacia's Motion for Summary Judgment on Sicor's Laches and Equitable Estoppel Defenses.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Rodger D. Smith II*
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*Pharmacia & Upjohn Company LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, IL  60606
(312) 913-0001


June 29, 2006

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on June 29, 2006, I caused to be electronically filed the redacted version of Pharmacia & Upjohn's Opening Brief in Support of its Motion for Summary Judgment on Sicor's Laches and Equitable Estoppel Affirmative Defenses with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Steven J. Balick
> John G. Day
> ASHBY & GEDDES

and that I also caused copies to be served upon the following in the manner indicated:

### BY HAND

> Steven J. Balick
> John G. Day
> ASHBY & GEDDES
> 222 Delaware Avenue
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> Reid L. Ashinoff
> David R. Baum
> SONNENSCHEIN NATH & ROSENTHAL LLP
> 1221 Avenue of the Americas
> New York, NY 10020
>
> Jordan Sigale
> SONNENSCHEIN NATH & ROSENTHAL LLP
> 8000 Sears Tower
> Chicago, IL 60606

> /s/ Maryellen Noreika
> Maryellen Noreika (#3208)
> mnoreika@mnat.com