IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY,  )
)
Plaintiff,  )      **REDACTED PUBLIC VERSION**
)
v.  )
)      C.A. No. 04-833-KAJ
SICOR INC. and SICOR  )
PHARMACEUTICALS, INC.,  )
)
Defendants.  )

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT, OR
IN THE ALTERNATIVE, INVALIDITY FOR LACK OF WRITTEN DESCRIPTION**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
Michael S. Gugig
A. Leah Vickers
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Jordan A. Sigale
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
Chicago, Illinois 60606
(312) 876-8000

Dated: July 20, 2006

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ............................................................................ 1

STATEMENT OF FACTS ............................................................................... 3

ARGUMENT ................................................................................................ 4

I.   UNDER SICOR'S PROPOSED CONSTRUCTION OF "ANTHRACYCLINE
     GLYCOSIDE," SICOR DOES NOT INFRINGE UPON THE '285 PATENT ................ 4

     A. Sicor's Construction Of Anthracycline Glycoside Is Correct ........................ 4

     B. Under Sicor's Construction of "Anthracycline Glycoside," Sicor Does Not Infringe . 6

          1.  Pharmacia admitted that an anthracycline glycoside prepared in the
              manner that Sicor uses would not infringe on Gatti Family patents. ....................... 7

          2.  Pharmacia's proposed definition of the term "lyophilized preparate" is
              an after-the-fact, lawyer-created fiction. .................................................. 8

          3.  "[D]esigning of inventions around patents to make new inventions is
              encouraged." ........................................................................................ 10

          4.  Sicor's idarubicin hydrochloride injection does not infringe the
              '285 patent. ........................................................................................... 11

II.  IF THE COURT ACCEPTS PHARMACIA'S INTERPRETATION OF
     "ANTHRACYCLINE GLYCOSIDE," THE '285 PATENT WOULD BE
     INVALID FOR LACK OF WRITTEN DESCRIPTION ................................................. 11

     A. Sicor Has Submitted Ample Evidence That The '285 Patent Is Invalid
        For Lack Of Written Description ................................................................. 11

     B. Pharmacia Cannot Demonstrate That The Claims Of The '285 Patent,
        Under Pharmacia's Construction Of The Term "Anthracycline Glycoside,"
        Are Supported By The Original Disclosure .................................................. 13

          1.  The original disclosure language governs the written description
              analysis. ............................................................................................... 13

          2.  Written description law focuses on what the original disclosure
              communicates, not what an inventor meant, but did not communicate. ............... 16

          3.  The non-lyophilized limitation appears throughout the original disclosure. ... 17

CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratoriess, Inc. v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003) ........................10

*Chiron Corp. v. Genentech*, 363 F.3d 1247 (Fed. Cir. 2004) ........................................15

*Fiers v. Revel*, 984 F.2d 1164 (Fed. Cir. 1993) ...............................................14

*Gentry Gallery Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998)...................14, 15

*Innova/Pure Water, Inc. v. Safari Water Filtration System, Inc.*, 381 F.3d 1111
    (Fed. Cir. 2004).......................................................................13

*Lantech Inc. v. Keip Machine Co.*, 32 F.3d 542 (Fed. Cir. 1994)...........................11

*Lockwood v. Amer. Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997)........................14, 16

*PIN/NIP, Inc. v. Platte Chemical Co.*, 304 F.3d 1235 (Fed. Cir. 2002) .......................15

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................................5, 13

*Sherif v. AstraZeneca*, No. Civ.A. 00-3285, 2002 WL 32350023 (E.D. Pa. May 9, 2002)............8

*Tracinda Corp. v. Daimlerchrysler, AG*, 362 F. Supp. 2d 487 (D. Del. 2005) .............................7

*University of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004) ................12, 13, 14

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ...............................13, 16

*Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556 (Fed. Cir. 1994).........................16

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) ...................11

*Westvaco Corp. v. International Paper Co.*, 991 F.2d 735 (Fed. Cir. 1993)............................10, 11

## STATUTES

35 U.S.C. §103.................................................................................5

35 U.S.C. § 112.................................................................................15

## INTRODUCTION

Defendants Sicor Inc. and SICOR Pharmaceuticals, Inc. ("Sicor") respectfully submit this reply Memorandum of Law in further support of their motion for summary judgment on the grounds that Sicor does not infringe the '285 patent, or in the alternative, that the '285 patent is invalid for lack of written description. The opposition papers of plaintiff Pharmacia & Upjohn Company, LLC ("Pharmacia") did not and could not identify the existence of a disputed issue of material fact with respect to the present motion. In short, if this Court construes the claim term "anthracycline glycoside" to include only non-lyophilized forms, Sicor could not have infringed the '285 patent because Sicor indisputably manufactures its idarubicin hydrochloride injection

**REDACTED**          Alternatively, if the Court construes the claim term to cover lyophilized formulations, the '285 patent would be invalid for lack of written description. Under either scenario, summary judgment in Sicor's favor is warranted.

## SUMMARY OF ARGUMENT

Pharmacia cannot avoid the '285 patent's fundamental internal inconsistency. In attempting to improperly expand its monopoly, Pharmacia placed itself into an inescapable dilemma that should result in the dismissal of this lawsuit. Either the patent's claims do not cover lyophilized preparates – thus precluding a finding of infringement because Sicor's product is manufactured from a lyophilized preparate – or they do, and thus are invalid for lack of written description because the original disclosure does not and cannot support such a broad scope of patent protection. Pharmacia's attempt to maneuver out of this position fails in the face of the evidentiary record in this case.

After devoting a substantial portion of its brief to re-arguing claim construction (which is irrelevant to the present motion), Pharmacia attempts to avoid a non-infringement finding by urging an unreasonably narrow definition of the phrase "lyophilized preparate" or "lyophilizate,"

1

which would require the presence of a bulking agent.  Pharmacia's proposed definition, however, is inconsistent with the plain language of the '285 patent and the opinions of each party's expert. The record evidence demonstrates that there is no "bulking agent" requirement.

Pharmacia's infringement position is further belied by the document that the parties and the Court have referred to as Exhibit 106 (attached as Ex. 1 hereto), which was prepared by Pharmacia's predecessor ("Upjohn") and provided to Sicor's predecessor ("Gensia").  In Exhibit 106, Upjohn

**REDACTED**

issued from the same specifications as support the '285 patent (i.e., the Gatti patent family).  Indeed, Exhibit 106

**REDACTED**

(Ex. 1, at 3) (emphasis added).

Pharmacia's written description argument is also fatally flawed.  First, Pharmacia wrongly asserts that Sicor has provided insufficient evidence to support its written description arguments.  In so doing, Pharmacia entirely ignores the significant evidentiary value of the words of the '285 patent itself, as well as its original specification, which are discussed at length in Sicor's moving papers.  Pharmacia also disregards the opinion of Sicor's expert as to how a person of reasonable skill in the art would understand the original disclosure of the '285 patent. Having ignored this evidence, Pharmacia then tries to twist the law of written description into a mind-reading exercise, insisting that although the patent's original disclosures could be read to limit the invention to non-lyophilized preparates, the inventors did not actually intend that result. It is well settled that an inventor's intent has no bearing on the written description inquiry.  The relevant question is what the original patent specification (disclosure) communicated to those of

2

reasonable skill in the art (not what the inventors allegedly intended, but demonstrably and indisputably failed to communicate).

Pharmacia also improperly conflates the law of claim construction with that of written description, suggesting that the original disclosure should be construed so as to "harmonize" it with the language of the claims that ultimately issued. This turns the written description requirement upside-down and, if accepted, would vitiate it altogether. The written description analysis looks to the language of the applicant's original disclosure, and compares it to the construed patent claims that ultimately issue, in order to determine whether the original disclosure supports the issued claims. There is no "harmonizing" function in this analysis.

Finally, Pharmacia's accusation that Sicor "cherry-picked" sections of the original disclosure in order to make out a lack of written description argument is flatly wrong. The fact that the solution covered by the '285 patent cannot be manufactured from a lyophilized preparate is supported by every example set forth in the original and issued specification, is stated or referenced in no fewer than six discrete places in the original disclosure and issued specification, and is included in the abstract contained in the initial disclosure of the U.S. patent application (the '742 application) and the '285 patent as issued.

There is, in short, no genuine issue of material fact in dispute and Sicor's summary judgment motion should be granted.

## STATEMENT OF FACTS

In light of the Court's July 7, 2006 ruling that Pharmacia waived privilege with respect to Exhibit 106, the statement of facts contained in Sicor's opening brief requires minor supplementation. During the 1990's, an Australian generic drug company called Delta West manufactured and sold doxorubicin to Sicor's predecessor, Gensia, pursuant to an exclusive distribution agreement. (Ex. 2). Delta West was a subsidiary of Upjohn, the entity that survived

the merger between Pharmacia and Upjohn (Ex. 3 at 4, § 1.01), and the predecessor in interest to

the plaintiff in this case.  At the time Exhibit 106 was prepared, Delta West was engaged in an

Australian patent infringement suit brought by Pharmacia's predecessor, Farmitalia Carlo Erba

S.r.L. ("FCE"), which accused Delta West of infringing FCE's Australian doxorubicin patent (a

foreign counterpart to the patent-in-suit, which thus contains a nearly-identical specification).[1]

(Ex. 1 at 1).  At about that same time, Wesley Fach, Gensia's then in-house counsel (and Sicor's

current general counsel), expressed concern to Delta West about whether the Australian patent

dispute would affect Delta West's ability to supply doxorubicin to Gensia.  In response, Delta

West forwarded Exhibit 106 to Mr. Fach.  (*Id.*)

Exhibit 106 is a May 25, 1993 memo authored by Larry T. Welch when he was in-house

patent counsel and director of worldwide patents for Upjohn, before Upjohn merged with

Pharmacia.  (*Id.*)

**REDACTED**

In addition, Mr. Welch

forwarded to Mr. Fach, as part of Exhibit 106, a legal opinion by Australian patent counsel that

supported Mr. Welch's non-infringement view and representations to Mr. Fach.  (*Id.* at 4-8).

**ARGUMENT**

I. **UNDER SICOR'S PROPOSED CONSTRUCTION OF "ANTHRACYCLINE GLYCOSIDE," SICOR DOES NOT INFRINGE UPON THE '285 PATENT**

A. **Sicor's Construction Of Anthracycline Glycoside Is Correct**

Pharmacia devotes a substantial portion of its opposition brief to arguing that Sicor's

construction of the term "anthracycline glycoside" is incorrect.  The parties have fully briefed

---

[1]    This family of patents is often referred to as the "Gatti patent family" – a reference to one of the named inventors.

4

their claim construction positions, and Sicor remains confident that its proposed construction of "anthracycline glycoside" is proper based on the entire intrinsic record of the '285 patent.

In re-hashing its claim construction argument here, Pharmacia primarily seeks refuge in the fact that its amendment of Claim 1 during prosecution, to delete the limitation "not been reconstituted from a lyophilizate," came as a result of communications with the patent examiner.[2] Sicor addressed this argument in its claim construction brief, but it bears repeating here. As an initial matter, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). Here, where the patent's specification so clearly limits the claimed invention to the non-lyophilized form of the drug, the prosecution history would be of marginal additional value in construing this claim.

Nonetheless, the prosecution history in this case only supports Sicor's construction. That history is replete with Pharmacia's representations that its invention is not reconstituted from a lyophilizate, thus distinguishing it from the prior art and the alleged problems and disadvantages of the then-existing lyophilized preparations. (*See, e.g.,* Ex. 4, at PI 879; Ex. 5, at SICOR-PNU 84160, 62, 64-65; Ex. 6, at PU 16225; *see also* D.I. 234 at 14-18; D.I. 256 at 10-18: Sicor's claim construction briefs and the exhibits attached thereto). The only portion of the prosecution history on which Pharmacia relies reflects its withdrawal of the words "not reconstituted from a lyophilizate" from the language of Claim 1. However, removing those words did not at all mean

---

[2]     Pharmacia overstates the patent examiner's position in claiming that "the Examiner pointed out that whether or not the solution was reconstituted from a lyophilizate was *not relevant to patentability*." (D.I. 262, at 8 (emphasis added)). It is clear from the context of the examiner's statement that her language merely addressed the question of whether lyophilization was sufficient distinguish the claims over prior art under 35 U.S.C. § 103. (Ex. 7, at PU 15077).

that Pharmacia was modifying its invention, as steadfastly described in the original patent application. Pharmacia did no such thing. Nor could it.

Pharmacia stood firm throughout the prosecution regarding the importance of non-lyophilization to its invention. In the very submission in which it deleted the express limitation from Claim 1 (indeed, in the paragraph immediately following its statement to the Examiner that the "reconstituted from a lyophilizate" claim language was being deleted), Pharmacia stated:

> As explained more fully herein . . . the present invention permits [the solution] to be pre-packaged and sold as a ready-to-use solution product, *rather than to be reconstituted from lyophilizate* in vials by medical personnel in conventional manner. *This novel property of the present invention* was completely unrecognized by the prior art . . .

(Ex. 8, at PU 15157) (emphasis added).

Sicor's proposed construction of the term "anthracycline glycoside" to be limited to non-lyophilized preparates is supported by virtually every relevant sentence in the prosecution history, and most significantly, by the specification of the '285 patent.

### B. Under Sicor's Construction of "Anthracycline Glycoside," Sicor Does Not Infringe

In an attempt to find some way out of the bind it has created, Pharmacia suggests an overly narrow definition of the term "lyophilized preparate" that is contrary to the plain meaning of the term, conflicts with the opinions of Pharmacia's and Sicor's respective experts, and appears recently designed to exclude Sicor's manufacturing method from the definition of "lyophilized preparate" or "lyophilizate." The record evidence, however, demonstrates that a proper construction of these terms must include the preparate used by Sicor in its manufacturing process.

    **1.**    **Pharmacia admitted that an anthracycline glycoside prepared in the manner that Sicor uses would not infringe on Gatti Family patents.**

Exhibit 106 addresses the worldwide "Gatti patent family," which includes the Australian '197 patent and the later-issued '285 patent (which is why these patents have nearly identical specifications).  (Ex. 9 at PU 11730-11740).  In Exhibit 106, Upjohn

**REDACTED**

(Ex. 1, at 1) (emphasis added).[3]  Indeed, Upjohn could not have been more clear on this point, stating:

**REDACTED**

(Ex. 1, at 2) (emphasis added).  Moreover, Upjohn explicitly informed Sicor's predecessor that its non-infringement view would be even stronger in the United States:

**REDACTED**

(Ex. 1, at 2) (emphasis added).

It is undisputed that Upjohn was the predecessor in interest to Pharmacia.  Indeed, the Pharmacia/Upjohn merger was accomplished by merging Pharmacia into Upjohn, with Upjohn being the surviving corporate entity (which was later renamed Pharmacia & Upjohn Co. LLC, the plaintiff in this lawsuit).  (Ex. 3 at 4, § 1.01)).  Upjohn's statements are, as a matter of law, admissions of the plaintiff in this lawsuit and are binding on Pharmacia here.  *See Tracinda Corp. v. Daimlerchrysler, AG*, 362 F. Supp. 2d 487, 501 (D. Del. 2005) ("[S]tatements of

---

[3]    Doxorubicin hydrochloride is one of the compounds covered by the '285 patent.

7

employees/agents of predecessor company that were merged into defendant corporation prior to the merger were admissible as non-hearsay party admissions of defendant corporation.") (construing and citing *Sherif v. AstraZeneca*, No. Civ.A. 00-3285, 2002 WL 32350023, at *2-3 (E.D. Pa. May 9, 2002)) (attached as Ex. 10); *see also* Ex. 11: July 7, 2006 Hearing Tr., at 4:15-16 (where this Court held in the context of Upjohn's waiver of privilege with respect to Exhibit 106, "what Upjohn chose to do, [Upjohn's] successor will have to live with.").[4]

Pharmacia should not be allowed to avoid the representations made by Upjohn merely because it now suits Pharmacia's post-merger litigation position.

> ### 2.   Pharmacia's proposed definition of the term "lyophilized preparate" is an after-the-fact, lawyer-created fiction.

Sicor has at all times maintained that the plain language meaning of the term "lyophilized preparate" or "lyophilizate" – one that is supported by both sides' experts – is a preparate of an anthracycline glycoside that has been created by dissolving the raw drug molecule into a solvent and freeze-drying the resulting mixture. Having recently realized that this plain reading of the term cripples its infringement case, Pharmacia now claims that "lyophilized preparate" should be defined to include only freeze-dried compounds that contain a bulking agent (or excipient) because, purportedly, the "specification repeatedly describes the prior art as lyophilizate cake preparations containing bulking excipients such as lactose." (D.I. 262, at 5, 10).

However, the specification does not ever state, let alone "repeatedly describe," that a "lyophilized preparate" *must* contain an excipient (or bulking agent). Indeed, the '285 patent's specification contains only one indication that a "lyophilized preparate" *could* contain an

---

[4]     The '197 Australian patent's claims are explicitly limited to a composition that "has not been reconstituted from a lyophilizate." However, Upjohn's statement in Exhibit 106 that

**REDACTED**

excipient, and this is the only reference cited by Pharmacia that even remotely addresses the bulking agent/excipient issue. (D.I. 262, at 5, 10). The '285 patent's specification does, however, repeatedly employ the phrases "lyophilized preparate" and "lyophilizate" without even hinting that those terms require the presence of an excipient. (*See* infra, pp. 16-19).

Pharmacia's reliance on a statement in the expert report of Dr. Beijnen to support its proposed construction of "lyophilized preparate," or "lyophilizate," to require the presence of a bulking agent, is misplaced. (D.I. 262, at 10). In fact, Pharmacia chose not to direct this Court to the statement in the very same paragraph of Dr. Beijnen's report, which confirms that although a lyophilizate may often contain a bulking agent, it is not required: "A lyophilized product is made by first dissolving the drug (and, *generally*, a bulking agent) in a suitable solvent." (Ex. 12, at 7) (emphasis added). Thus, even Pharmacia's own carefully drafted expert report states that there is no bulking agent/excipient requirement in a "lyophilizate" or "lyophilized product."

Sicor's expert, Dr. Clark, agrees. He testified during his deposition in this case that the commonly understood definition of a lyophilizate is a freeze-dried form of the compound:

> Q.    And what's a lyophilizate?
>
> A.    Lyophilizate is material that has been generated through lyophilization, which is a process also known as freeze drying.

(Ex. 13, at 147: 11-14).

Pharmacia's assertion that Dr. Clark opined in his expert report that lyophilization requires use of a bulking agent (D.I. 262, at 10-11), is incorrect. His report says nothing of the sort. In fact, Dr. Clark's report explicitly defines "lyophilization" without remotely suggesting the existence of a requirement or even general practice of including a bulking agent. Curiously,

although Pharmacia attached Dr. Clark's report to its opposition brief, Pharmacia did not include

the "Glossary of Terms," which forms part of the report and defines "lyophilization," as follows:

> Lyophilization (a/k/a Freeze Drying) A dehydration process for
> separating water from organic or biological materials. The
> material is first frozen and then placed in a high vacuum so that the
> water (ice) vaporizes in the vacuum (i.e. sublimes) without
> melting, and the non-water components are left behind in an
> undamaged state.

(Ex. 14, attachment B at 25).[5]  Pharmacia has cited no evidence supporting the notion that a

"lyophilized preparate" or "lyophilizate" requires the presence of a bulking agent or excipient.

The record evidence here demonstrates that there is, in fact, no such requirement.

### 3.    "[D]esigning of inventions around patents to make new inventions is encouraged."

Pharmacia posits that parties should be faulted for developing methods of manufacturing

with the explicit intention of avoiding patent infringement.  (D.I. 262, at 6-7) ("However, Sicor's

Chief Executive Officer indicated that the *only* reason for that freeze-drying step is to attempt to

avoid the claims of the '285 patent").  This suggestion is contrary to United States patent law:

> [D]esigning of inventions around patents to make new inventions
> is encouraged.[] Keeping track of a competitor's products and
> designing new and possibly better or cheaper functional
> equivalents is the stuff of which competition is made and is
> supposed to benefit the consumer.  One of the benefits of a patent
> system is its so-called "negative incentive" to "design around" a
> competitor's products, even when they are patented, thus bringing
> a steady flow of innovations to the marketplace.

---

[5]      Pharmacia mischaracterizes the import of Sicor's citation to *Abbott Labs., Inc. v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003).  (D.I. 262, at 11-12).  Sicor does not rely on the claim construction analysis in *Abbott Labs* (the patent there included an express definition of the term at issue).  Rather, *Abbott Labs* speaks directly to Sicor's non-infringement argument: the court determined that the claim at issue required the "co-micronization of a mixture consisting essentially of only" two ingredients, and based on that construction found that the generic manufacturer could not have infringed because it never mixed these two ingredients without the presence of other significant ingredients.  *Id.* at 1330.  Likewise, if this Court finds that "anthracycline glycoside," as used in the '285 patent, means a non-lyophilized formulation of the drug, Sicor could not have infringed the '285 patent because it utilizes a lyophilized preparate.

*Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993) (citations omitted).

### 4.    Sicor's idarubicin hydrochloride injection does not infringe the '285 patent.

Under Sicor's suggested construction of "anthracycline glycoside," Claims 9 and 13 in the '285 patent would be limited to solutions that are not manufactured using a lyophilized preparate. If the Court adopts Sicor's proposed construction, Pharmacia could not demonstrate with admissible evidence that each and every element of the claims at issue is found in Sicor's product, and Pharmacia thus could not prove that Sicor infringed the '285 patent. *See Lantech Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) (literal infringement requires that "each limitation of the claim must be met by the accused device exactly, any deviation from the claim precluding a finding of infringement."); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

Pharmacia does not dispute that Sicor's idarubicin hydrochloride injection is lyophilized during the manufacturing process – as discussed above,

**REDACTED**                Because

Sicor's idarubicin hydrochloride injection product **is** manufactured using a lyophilized preparate, as a matter of law, Sicor's product does not infringe the '285 patent.[6]

## II.    IF THE COURT ACCEPTS PHARMACIA'S INTERPRETATION OF "ANTHRACYCLINE GLYCOSIDE," THE '285 PATENT WOULD BE INVALID FOR LACK OF WRITTEN DESCRIPTION

### A.    Sicor Has Submitted Ample Evidence That The '285 Patent Is Invalid For Lack Of Written Description

Pharmacia's claim that Sicor submitted no evidence in support of its written description argument is wrong. Sicor submitted abundant evidence in support of its position, including the language of the '285 patent itself and the original disclosures filed with the UK Application to

---

[6]    Sicor respectfully refers the Court to pages 5-6 of its opening brief (D.I. 258) for a complete description of the manufacturing process for Sicor's idarubicin hydrochloride injection.

which the '285 patent claims priority. Of course, the language of the original disclosure is dispositive of the written description argument and thus carries extraordinary evidentiary weight.

In *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004), the United States Court of Appeals for the Federal Circuit affirmed an invalidity finding on summary judgment based on lack of written description, where the patentee alleged that the infringer had not provided evidence of invalidity apart from the patent in suit. The Court rejected the patentee's argument, holding:

> Rochester's argument that a patent may not be held invalid on its face is contrary to our case law. [W]e [have] held that a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification.
>
> \*            \*            \*
>
> Although [] the Patent Act places the burden of proof on the party seeking to invalidate a patent, it does not foreclose the possibility of that party demonstrating that the patent in suit proves its own invalidity.

*Id.* at 927, 930 (citations omitted).[7]

In addition to the '285 patent itself, the record evidence includes the expert report and deposition testimony of its Sicor's expert, Dr. Douglas S. Clark, regarding how a person of ordinary skill in the art would have understood the original disclosures in the UK Application and the application that ultimately issued as the '285 patent. In his expert report, Dr. Clark catalogs at least nine instances where the '285 patent either criticizes, or distinguishes the covered invention from, products made from lyophilized forms of anthracycline glycosides. (Ex. 14, at 12-13). Dr. Clark also points to the fact that none of the examples in the '285 patent employ a lyophilizate. (*Id.* at 13). Accordingly, he correctly concludes that: "Given the patent's criticism of lyophilized product, it is my opinion that the '285 patent would be understood by

---

[7]     Pfizer – Pharmacia's current parent company – was the defendant in *Univ. of Rochester* who successfully argued this point. Pharmacia was also a named defendant in the case.

'those of ordinary skill in the art' to describe an invention in which avoiding a lyophilizate in manufacturing or administering anthracycline glycoside is an essential feature of the invention." (*Id.*) Dr. Clark reiterated this understanding of the patent during his deposition, stating: "It's the body of the patent and the abstract of the patent that stresses prohibition of a lyophilizate." (Ex. 13, at 157:21-23). Pharmacia's claim that "Sicor has offered no evidence whatsoever as to how one of ordinary skill in the art would construe any of the passages it has cited," is bereft of merit.

> **B.     Pharmacia Cannot Demonstrate That The Claims Of The '285 Patent, Under Pharmacia's Construction Of The Term "Anthracycline Glycoside," Are Supported By The Original Disclosure**
>
> **1.     The original disclosure language governs the written description analysis.**

Pharmacia improperly conflates the legal analyses for claim construction and written description. They are separate and distinct principles. When construing claims, the analysis should focus on the **claims** of the **issued** patent in view of the intrinsic evidence. *See Phillips*, 415 F.3d at 1312-17; *Innova/Pure Water, Inc. v. Safari Water Filtration System, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("[A] claim construction analysis must begin and remain centered on the claim language itself.").

In contrast, the written description analysis looks back in time, exclusively to the original disclosures – here the UK application to which the '285 patent claims priority. *See Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (Fed. Cir. 1991); *Fiers v. Revel*, 984 F.2d 1164, 1169-71 (Fed. Cir. 1993). Under the law of written description, the only relevant language is that set forth in the original disclosure. *See Lockwood v. Amer. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997) (the district court was correct to look "solely at the applications themselves" because "[i]t is the disclosures of the applications that count.").

Pharmacia's attempt to avoid the distinction between the claim construction and written description analyses fails as a matter of law. The Court should not, as Pharmacia suggests,

assess the scope of the written description by looking first to the scope of the issued claims, and then assume that the written description supports the scope of the issued claims unless the description "clearly disavows or excludes from [sic] claim scope a stable ready-to-use solution that originates from lyophilized anthracycline glycosides." (D.I. 262, at 16). This is not the law. Indeed, Pharmacia twists the notion that patents carry a presumption of validity to suggest, incorrectly, that the written description analysis should begin with the imposition of the scope of the issued claims (i.e., claim construction) upon the written description.

To the contrary, the § 112 inquiry must start and end with the original written description of the invention. The question is not how one may contort the written description to match the construed claims, but rather, what one skilled in the art reading the original disclosure would deem to be the scope of the invention. *See Gentry Gallery Inc. v. Berkline Corp.,* 134 F.3d 1473, 1479 (Fed. Cir. 1998); *Univ. of Rochester,* 358 F.3d at 923 ("The disclosure must allow one skilled in the art to visualize or recognize the identity of the subject matter purportedly described.") (citation omitted). The dispositive factor is whether that description supports the later-issued form of the claims.

While a goal of claim construction may be to interpret claims in a manner that harmonizes them with the patent's specification and prosecution history, were the court to apply this same "harmonizing" function to the written description analysis, the entire body of written description law would disappear into claim construction. The Federal Circuit has repeatedly confirmed the contrary approach: that courts may find, after claim construction, that there is a fundamental disconnect between the scope of the issued claims (as construed) and the scope of the original written description, and invalidate a patent on that basis (i.e., for lack of written

description). *See, e.g. Gentry Gallery Inc.*, 134 F.3d 1473; *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235 (Fed. Cir. 2002).[8]

Here, the original disclosure – the UK patent application – repeats over and over again that the covered invention *does not* include formulations derived from a lyophilizate, describes the covered invention based on the lyophilized/non-lyophilized distinction, and touts the invention's benefits by emphasizing that the use of a lyophilized preparate during both the manufacturing and reconstitution phases creates problems with safety and efficacy. (*See* infra pp. 17-19). Moreover, the broadest claims contained in the original description (as well as in U.S. application '742, which ultimately matured into the '285 patent), all contained the limitation at issue; specifically, each contained an express limitation requiring that the invention could not be "reconstituted from a lyophilizate." (Ex. B to D.I. 255 (Sicor's Opening Brief), U.K. Application at 40 (Claim 1); Ex. K to D.I. 255, U.S. Application '742 at 42 (Claim 1)). Accordingly, Pharmacia's expanded claims reach well beyond written description of the '285 patent, and thus fail for lack of written description pursuant to 35 U.S.C. § 112(1).[9]

_____

[8]    In discussing the original disclosures, courts often refer to the specification of an issued patent. This is because the specification must remain constant throughout the prosecution or run afoul of the written description requirement. *Chiron Corp. v. Genentech*, 363 F.3d 1247,1255 (Fed. Cir. 2004) ("the written description requirement prevents applicants from using the amendment process to update their disclosures (claims or specifications) during their pendency before the patent office"). Thus, a logical place for courts to find the original disclosure is in the patent specification.

[9]    Pharmacia's last-ditch argument, that its invention is novel (D.I. 262 at 15), is utterly irrelevant to the written description question. Novelty and written description are two entirely different analyses, and one must question why Pharmacia even raises novelty here. To the extent that Pharmacia is attempting to pull at this Court's heartstrings, by claiming that it would be somehow unfair for the inventors to be denied some reward for their efforts, it bears noting that Pharmacia attached to its Opening Brief on Claim Construction two other United States Patents covering injectable ready to use solutions of anthracycline glycosides, both of which also claim priority to the 1985 U.K. application. (D.I. 232, Exs. 11 ('831 patent), and 16 ('317 patent). The claims of these patents are expressly limited to solutions that "ha[ve] not been reconstituted from a lyophilizate." (*Id.*)

2.    **Written description law focuses on what the original disclosure communicates, not what an inventor meant, but did not communicate.**

Pharmacia's claim that Sicor misinterpreted the inventors' intentions in employing in the original disclosure the phrase "which has not been reconstituted from a lyophilizate," is both incorrect and irrelevant. (D.I. 262, at 16-18). Pharmacia concedes in its brief (as it must) that the inventors' intent in choosing the original disclosure's language has no bearing on the written description issue, stating (at page 13 of its brief) that the relevant question is whether one skilled in the art, reading the original disclosure (i.e., someone other than the inventor), would "immediately discern the limitation at issue" in the claims. *See also Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1994). The relevant inquiry is thus what one *reading* the description would understand it to cover, not what one *writing* the description actually meant to convey. *See Lockwood*, 107 F.3d at 1572 ("It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose."); *Vas-Cath Inc.*, 935 F.2d, at 1563 ("The test for sufficiency of support…is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.") (citations and quotations omitted).

In any event, the original disclosure in this case does not, as Pharmacia argues, distinguish the invention from then-existing use of lyophilized preparates solely by reference to avoiding reconstitution immediately prior to administration. Rather, throughout the original disclosure, and the patent's specification, and even in the very language Pharmacia quotes in its brief, the inventors distinguish the ready-to-use solution described in the '285 patent from any use of lyophilized preparates. In particular, the inventors overtly criticize any manufacturing method for a ready-to-use formulation that requires a lyophilized preparate:

> Both the **manufacturing** and the **reconstitution** of such preparations expose the involved personnel (workers, pharmacists, medical personnel, nurses) to risks of contamination which are particularly serious due to the toxicity of the antitumor substances. [Ex. B to D.I. 255, U.K. application, at 1:24-28; (emphasis added); *see also* Ex. K to D.I. 255, '742 application, at 1:24-28; Ex. A to D.I. 255, '285 patent, at 1:25-29)].

*          *          *

> As the risks connected with the **manufacturing and the reconstitution of a lyophilized preparate would be highly reduced** if a ready-to-use solution of the drug were available, we have developed a stable, therapeutically acceptable intravenously injectable solution of an anthracycline glycoside drug, e.g. doxorubicin, whose **preparation and administration** does not require either lyophilization or reconstitution. [Ex. B to D.I. 255, at 2:19-25 (emphasis added); *see also* Ex. K to D.I. 255, at 2:19-25; Ex. A to D.I. 255, at 1:47-53)].

In other words, the written description advises that the invention does not cover solutions that incorporate any use of lyophilized preparates either at the manufacturing or administration stage.

Pharmacia's argument that the written description only allowed, but did not require, the use of non-lyophilized preparates is untenable. In the words of the disclosure, the invention reduces "the risks connected with the **manufacturing** and reconstitution of a lyophilized preparate" by providing an "injectable solution of an anthracycline glycoside drug [] whose preparations and administration **does not require either lyophilization or reconstitution**." (Ex. B to D.I. 255, at 2:19-25) (emphasis added). It is implausible for Pharmacia to claim that an invention designed in part to protect workers during the manufacturing process – by taking the lyophilization and the lyophilized material out of the manufacturing equation – could cover a product that utilizes lyophilization and lyophilized material during the manufacturing process.

    **3.**     **The non-lyophilized limitation appears throughout the original disclosure.**

The only argument Pharmacia makes that directly addresses the written description requirement is that Sicor purportedly "cherry-picked citations" from the '285 patent and/or

17

focused only on a preferred embodiment of the patent. (D.I. 262, at 17-18). This is simply

untrue. The original disclosure contained in the UK Application (which remained virtually

unchanged to and including the specification of the issued '285 patent) was replete with

reference to the non-lyophilized nature of the invention:

> According to the present invention, there is provided a sterile, pyrogen-free, anthracycline glycoside solution which consists essentially of a physiologically acceptable salt of an anthracycline glycoside dissolved in a physiologically acceptable solvent therefor, **which has not be reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5. [Ex. B to D.I. 255, U.K. application, at 3:1-6 (emphasis added); *see also* Ex. K to D.I. 255, '742 application, at 3:1-6; Ex. A to D.I. 255, '285 patent, at 1:54-59].

> \*          \*          \*

> According to a particularly preferred feature of the invention, there is provided a sterile, pyrogen-free, doxorubicin solution which consists essentially of a physiologically acceptable salt of doxorubicin dissolved in a physiologically acceptable solvent therefor, **which has not been reconstituted from a lyophilizate** and which has a pH of from 2.5 to 6.5. [Ex. B to D.I. 255, at 7:9-15 (emphasis added); *see also* Ex. K to D.I. 255, at 7:9-15; Ex. A to D.I. 255, at 3:25-30.].

> \*          \*          \*

> The invention also provides a process for producing a sterile, pyrogen-free anthracycline glycoside solution with a pH of from 2.5 to 6.5, which process comprises **dissolving a physiologically acceptable salt of the anthracycline glycoside, which salt is not in the form of a lyophilizate**, in a physiologically acceptable solvent therefor; optionally adding a physiologically acceptable acid or buffer to adjust the pH within the said range as desired; and passing the resulting solution through a sterilising [sic] filter. [Ex. B to D.I. 255, at 8:20-25 to 9:1-4 (emphasis added); *see also* Ex. K to D.I. 255, at 8:20-24 to 9:1-4; Ex. A to D.I. 255, at 3:59-67].

> \*          \*          \*

> Both the **manufacturing** and the **reconstitution** of such preparations expose the involved personnel (workers, pharmacists, medical personnel, nurses) to risks of contamination which are particularly serious due to the toxicity of the antitumor substances. [Ex. B to D.I. 255, at 1:24-28 (emphasis added); *see also* Ex. K to D.I. 255, at 1:24-28; Ex. A to D.I. 255, at 1:25 - 29.].

> \*          \*          \*

As the **risks connected with the manufacturing and the reconstitution of a lyophilized preparate would be highly reduced if a ready-to-use solution of the drug were available**, we have developed a stable, therapeutically acceptable intravenously injectable solution of an anthracycline glycoside drug, e.g. doxorubicin, **whose preparation and administration does not require either lyophilization or reconstitution.** [Ex. B to D.I. 255, at 2:19-25 (emphasis added); *see also* Ex. K to D.I. 255, at 2:19-25 to 9:1-4; Ex. A to D.I. 255, at 1:47-53.].

*       *       *

[I]t is possible to obtain compositions having a very high concentration of the anthracycline glycoside active substance even at 50 mg/ml and more. **This constitutes a great advantage over the presently available lyophilized preparates** wherein high concentrations of anthracycline glycoside can only be obtained with difficulty because of solubilization problems encountered in reconstitution, mainly with saline. The presence of the excipient, e.g. lactose, in the lyophilized cake . . . has a negative effect on solubilization so that difficulties may arise in obtaining dissolution of the lyophilized cake, especially for concentrations of anthracycline glycoside higher than 2 mg/ml. [Ex. B to D.I. 255, at 9:10-22 and 10:1-2 (emphasis added); *see also* Ex. K to D.I. 255, at 9:10-22 and 10:1-2; Ex. A to D.I. 255, at 4:6-13 and 4:16-19.].

Pharmacia cannot avoid these dispositive passages from its original disclosure by falsely accusing Sicor of "cherry picking" the disclosure's language. Sicor did no such thing.

## CONCLUSION

For the reasons set forth above and in Sicor's opening papers, there are no genuine issues of material fact in dispute, and summary judgment should be entered in Sicor's favor either because Sicor does not infringe the '285 patent or because that patent is invalid for lack of written description.

ASHBY & GEDDES

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
Michael S. Gugig
A. Leah Vickers
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Jordan A. Sigale
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
Chicago, Illinois 60606
(312) 876-8000

Dated: July 13, 2006

171249.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of July, 2006, the attached **REDACTED PUBLIC VERSION OF REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT, OR IN THE ALTERNATIVE, INVALIDITY FOR LACK OF WRITTEN DESCRIPTION** was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                      HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19801

Joshua R. Rich, Esquire                          VIA FEDERAL EXPRESS
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

/s/ *Tiffany Geyer Lydon*
_____

Tiffany Geyer Lydon