# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY, LLC,  )
                                           )
           Plaintiff,  )
                                           )
         v.  )     Civil Action No. 04-833-KAJ
                                           )
SICOR INC. and SICOR  )
PHARMACEUTICALS, INC.,  )
                                           )
          Defendants.  )

## RESPONSE TO WRITTEN QUESTIONS OF DANIEL BOEHNEN

Pursuant to the Court's Order of July 13, 2006, as amended by the Court's Order of July

20, 2006, Daniel A. Boehnen provides the following responses and Plaintiff Pharmacia &

Upjohn Company, LLC ("Pharmacia") provides the following objections to the written questions

propounded by Defendants SICOR Inc. and Sicor Pharmaceuticals, Inc. (collectively, "Sicor").

**Written Question No. 1:**

    Are you licensed to practice before the United States Patent and Trademark Office?

**Response to Written Question No. 1:**

    Yes.

**Written Question No. 2:**

    If the answer to the immediately prior question was affirmative, state the date of
registration and your United States Patent Office registration number?

**Response to Written Question No. 2:**

    To the best of my recollection, I was registered in 1977; although I do not recall the

month or day, the U.S. Patent and Trademark Office website indicates that I was registered on

May 19, 1977. I have no reason to believe that date is incorrect. My registration number is

28399.

## Written Question No. 3:

On or about what date did you first provide legal services in connection with U.S. Patent Application Serial No. 07/827,742?

## Pharmacia's Objections to Written Question No. 3:

Pharmacia objects to Written Question No. 3 on the basis of the work product doctrine to the extent that it requests identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v Pharmachemie*. Pharmacia also objects to Written Question No. 3 in that the term "legal services in connection with" is vague and undefined.

## Response to Written Question No. 3:

I do not recall the date on which I first provided legal services in connection with U.S. Patent Application Serial No. 07/827,742. However, given the documents that have been identified by Sicor in these written questions, I believe that I first provided legal services to Pharmacia in connection with either U.S. Patent Application Serial No. 07/827,742 or related applications and patents no later than 1996.

## Written Question No. 4:

Was prosecution of U.S. Patent Application Serial No. 07/827,742 the first project you worked on for the Plaintiff?

## Response to Written Question No. 4:

No, I provided legal services to Pharmacia's predecessors-in-interest on a variety of projects for many years (starting in the late 1980s) before I did any work in relation to U.S. Patent Application Serial No. 07/827,742.

## Written Question No. 5:

If the answer to the immediately prior question was negative, please identify and describe all prior work for the Plaintiff that involved or related in any way to anthracycline glycoside?

2

**Pharmacia's Objections to Written Question No. 5:**

Pharmacia objects to Written Question No. 5 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 5:**

I do not believe that I can recall "all prior work" that I performed for Pharmacia's predecessors-in-interest that involved or related in any way to anthracycline glycosides. However, my recollection is that the earliest work I did in that regard involved patent infringement lawsuits brought by Pharmacia's predecessors-in-interest against Pharmachemie and Gensia, as well as other potential litigation issues.

**Written Question No. 6:**

On or about what date did you first read the patent specification that forms the basis of U.S. Patent Application Serial No. 07/827,742 in any form, such as U.K. Patent Application No. 8519452, U.S. Patent Application Serial No. 06/878,784 or U.S. Patent Application Serial No. 07/385,999?

**Response to Written Question No 6:**

I do not recall the date on which I first read the patent specification that forms the basis of U.S. Patent Application Serial No. 07/827,742. However, I believe that I would have read the specification of related patents in connection with providing legal services in patent infringement lawsuits brought by Pharmacia's predecessors-in-interest against Pharmachemie and Gensia, as well as other potential litigation issues.

3

### Written Question No. 7:

If the dates provided in responses to Questions 3 and 6 differ by more than three months, explain why?

### Pharmacia's Objections to Written Question No. 7:

Pharmacia objects to Written Question No. 7 on the basis of the work product doctrine to the extent that it requests identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

### Response to Written Question No. 7:

Although I do not recall the specific dates, I believe that my legal services in (at least) the patent infringement lawsuit brought against Pharmachemie preceded my involvement in the '742 application by more than three months. The reason "why" it was more than three months was merely a result of circumstances.

### Written Question No. 8:

Did you approve the contents of the documents of Defendants' Exhibit 164?

### Pharmacia's Objections to Written Question No. 8:

Pharmacia objects to Written Question No. 8 in that the term "approve the contents" is vague, undefined, and susceptible to multiple meanings.

### Response to Written Question No. 8:

Although I do not specifically recall the two documents in Defendants' Exhibit 164, they include my signature, thus reflecting that I did approve the contents.

### Written Question No. 9:

If your answer to the immediately prior question was affirmative, identify each step you took prior to approving the documents of Defendants' Exhibit 164, to comply with 37 C.F.R. §§ 1.56, 10.18 and 10.23? To the extent any of these steps included a review of the prosecution history please indicate by listing the range of production numbers what portions, if any, of the prosecution history you had reviewed.

4

**Pharmacia's Objections to Written Question No. 9:**

Pharmacia objects to Written Question No. 9 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 9:**

I do not recall the documents and I have no recollection of specific steps that I took at that time, but I was familiar with the general family of applications and the general area of technology from my litigation work for Pharmacia. I also had discussions with other attorneys and client representatives about the technology and various issues being raised in then-pending litigation. All this led me to believe that I had a good working knowledge of the area and that I would be able to judge the veracity of statements about the technology and prior art. Most likely, I also would have reviewed the prior office action to which this amendment responds. I may possibly have read portions of the prior art references cited in Defendants' Exhibit 164, and portions of the Confalonieri and other declaration materials cited in Defendants' Exhibit 164, but it is also possible that I relied on another attorney for such review and analysis.

**Written Question No. 10:**

If your answer to the immediately prior question included reviewing the prosecution history of any or all of U.S. Patent Application Serial No. 07/827,742, 06/878,784 and/or 07/385,999, where did you obtain copies of those prosecution histories from? What form did those prosecution histories take?

5

## Pharmacia's Objections to Written Question No. 10:

Pharmacia objects to Written Question No. 10 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

## Response to Written Question No. 10:

I do not recall, but I believe that we would have had those items in our files for the above-discussed litigation. During the litigation, it is most likely that we would have collected those files from the Oblon Spivak firm, from Pharmacia's predecessor-in-interest, and/or from the U.S. Patent and Trademark Office.

## Written Question No. 11:

Where did you obtain copies of the declarations included in Defendants' Exhibit 165?

## Response to Written Question No. 11:

I do not recall. As identified in my response to Written Question No. 10, I believe that we would have had those declarations in the prosecution histories for the above-discussed litigation. During the litigation, it is most likely that we would have collected those materials as part of the prosecution histories from the Oblon Spivak firm, from Pharmacia's predecessor-in-interest, and/or from the U.S. Patent and Trademark Office.

## Written Question No. 12:

Did you approve the contents of the document of Defendants' Exhibit 165?

## Pharmacia's Objections to Written Question No. 12:

Pharmacia objects to Written Question No. 12 in that the term "approve the contents" is vague, undefined, and susceptible to multiple meanings.

## Response to Written Question No. 12:

I do not specifically recall the documents, but the Submission of Declarations in Support of Amendment under 37 CFR §1.116 includes my signature, thus reflecting that I approved the contents of that document.

## Written Question No. 13:

If your answer to the immediately prior question was affirmative, identify each step you took prior to approving the documents of Defendants' Exhibit 165, to comply with 37 C.F.R. §§ 1.56, 10.18 and 10.23? To the extent any of these steps included a review of the prosecution history please indicate by listing the range of production numbers what portions, if any, of the prosecution history you had reviewed.

## Pharmacia's Objections to Written Question No. 13:

Pharmacia objects to Written Question No. 13 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

## Response to Written Question No. 13:

I do not recall the documents and I have no recollection of specific steps that I took at that time, but I was familiar with the general family of applications and the general area of technology from my litigation work for Pharmacia. I also had discussions with other attorneys and client representatives about the technology and various issues being raised in then-pending litigation. All this led me to believe that I had a good working knowledge of the area and that I

7

would be able to judge the veracity of statements about the technology and the prior art. I

believe I reviewed the submitted declarations and did not see anything that seemed inaccurate or

unreliable.

**Written Question No. 14:**

If your answer to Question 12 was negative, what was your basis for executing Defendants' Exhibit 165 at PU 0015170?

**Response to Written Question No. 14:**

Not Applicable.

**Written Question No. 15:**

Identify specifically which Declaration(s) of Carlo Confalonieri you were referring the patent examiner to at PU 0015164-65 of Defendants' Exhibit 164?

**Response to Written Question No. 15:**

I do not now recall which declaration is being discussed in Defendants' Exhibit 164. I

understand that a declaration dated January 12, 1996 and bearing Bates numbers PU 0073577-83

(on one copies) indicates that tests were conducted "[i]n order to demonstrate that Kyowa's

Japanese patent 60-92212 does not suggest or render obvious the claims of the above-identified

application." Although the application number in the caption of that declaration is different, the

Japanese patent number is the same as the one addressed at PU 0015164-65 of Defendants'

Exhibit 164. I have no independent recollection whether that declaration is the one being

referred to in Defendants' Exhibit 164, but it seems likely that is the case.

**Written Question No. 16:**

Is any argument set forth at PU 0015164-65 based upon the Declaration(s) of Carlo Confalonieri identified in Question 15?

8

**Response to Written Question No. 16:**

I have no recollection independent from what the document says itself. Reviewing the document today, I note that the discussion set forth in PU 0015164-65 says that it is discussing the results of experiments reported in a Declaration of Carlo Confalonieri in relation to Japanese patent 60-92212, and that the Confalonieri declaration dated January 12, 1996 and bearing Bates numbers PU 0073577-83 (on one copies) indicates that tests were conducted "[i]n order to demonstrate that Kyowa's Japanese patent 60-92212 does not suggest or render obvious the claims of the above-identified application." However, any further answer would be a guess or an attempt to interpret the document now. I have no recollection of the document that would help me do so.

**Written Question No. 17:**

What did you do to confirm that the Declaration(s) of Carlo Confalonieri referred to at PU 0015164-65 still reflected the opinions presently held by Carlo Confalonieri at or about the mailing date of Defendants' Exhibit 164?

**Pharmacia's Objections to Written Question No. 17:**

Pharmacia objects to Written Question No. 17 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 17:**

I do not recall the documents, and I have no recollection of specific steps that I took at that time, but I was familiar with the general family of applications and the general area of technology from my litigation work for Pharmacia. I also had discussions with other attorneys

9

Aug-14-06 18:45    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +131291300002    T-407  P.11/61  F-763

and client representatives about the technology and various issues being raised in then-pending litigation. All this led me to believe that I had a good working knowledge of the area and that I would be able to judge the veracity of statements about the technology and the prior art. I believe I reviewed the submitted declarations and did not see anything that seemed inaccurate or unreliable. Moreover, the declaration was submitted only six months after it was signed, and to my recollection, no events had occurred in this period that would suggest any change in position on the part of any of the inventors.

**Written Question No. 18:**

If your answer to the immediately prior question was that you did not do anything, explain why?

**Response to Written Question No. 18:**

Not applicable.

**Written Question No. 19:**

What did you do to confirm that the Declaration(s) of Carlo Confalonieri referred to at PU 0015164-65 were factually correct at the mailing date of Defendants' Exhibit 164?

**Pharmacia's Objections to Written Question No. 19:**

Pharmacia objects to Written Question No. 19 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 19:**

I do not recall the documents, and I have no recollection of specific steps that I took at that time, but I was familiar with the general family of applications and the general area of

10

technology from my litigation work for Pharmacia. I also had discussions with other attorneys and client representatives about the technology and various issues being raised in then-pending litigation. All this led me to believe that I had a good working knowledge of the area and that I would be able to judge the veracity of statements about the technology and the prior art. I believe I reviewed the submitted declarations and did not see anything that seemed inaccurate or unreliable. Moreover, the declaration dated January 12, 1996 (if that is the proper declaration) was submitted only six months after it was signed, and to my recollection no events had occurred in this period that would suggest any change in position on the part of any of the inventors.

**Written Question No. 20:**

If your answer to the immediately prior question was that you did not do anything, explain why?

**Response to Written Question No. 20:**

Not applicable.

**Written Question No. 21:**

Identify the specific pages, if any, from the declarations in Defendants' Exhibit 165 that present information on "scientific testing that establishes differences between the prior art and the subject matter of the present invention." (PU 0015169 of Defendants' Exhibit 165)

**Response to Written Question No. 21:**

I do not recall what the document was referring to when it suggested that declarations included "scientific testing that establishes differences between the prior art and the subject matter of the present invention." Given the instruction that the question is limited to the time period on and before May 21, 2002, any further answer would be a guess or an attempt to interpret the document now. I have no prior recollection of the document that would help me do so.

11

**Written Question No. 22:**

On PU 0015198 there are references to "Table 1" and "Table 2," identify the page(s) in Defendants' Exhibit 165 at which these "Table 1" and "Table 2" appear.

**Response to Written Question No. 22:**

I do not now know. Given the instruction that the question is limited to the time period

on and before May 21, 2002, any further answer would be a guess or an attempt to interpret the

document now. I have no recollection of the document that would help me do so.

**Written Question No. 23:**

On PU 0015199 there is reference to "Table 2," identify the page(s) in Defendants' Exhibit 165 at which this "Table 2" appears.

**Response to Written Question No. 23:**

I do not now know. Given the instruction that the question is limited to the time period

on and before May 21, 2002, any further answer would be a guess or an attempt to interpret the

document now. I have no recollection of the document that would help me do so.

**Written Question No. 24:**

Did you review the Wassermann reference referred to in paragraph 5 on PU 0015198 of Defendants' Exhibit 165 on or before June 28, 1996?

**Response to Written Question No. 24:**

I do not recall. I may have reviewed the reference or parts of the reference as part of my

overall work in relation to anthracycline glycosides, or I may have relied upon another attorney

to do so.

**Written Question No. 25:**

If your answer to the immediately prior question was negative, did you ever review the Wassermann reference prior to August 22, 2000?

12

**Response to Written Question No. 25:**

I do not recall.  I may have reviewed the reference or parts of the reference as part of my overall work in relation to anthracycline glycosides, or I may have relied upon another attorney to do so.

**Written Question No. 26:**

If your answer to the immediately prior question was affirmative, state each context(s) in which you reviewed the Wassermann reference prior to August 22, 2000?

**Pharmacia's Objections to Written Question No. 26:**

Pharmacia objects to Written Question No. 26 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 26:**

I do not recall.  I may have reviewed the reference or parts of the reference as part of my overall work in relation to anthracycline glycosides, or I may have relied upon another attorney to do so.

**Written Question No. 27:**

Identify all persons with whom you have communicated regarding the subject matter of the Wassermann reference and the date(s) of any such communication.

**Pharmacia's Objections to Written Question No. 27:**

Pharmacia objects to Written Question No. 27 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of

13

legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 27:**

I do not recall whether I communicated with anyone regarding the subject matter of the Wassermann reference prior to May 21, 2002, much less with whom such communications may have taken place. If I did so, it would most likely have been with other attorneys working with me on various Pharmacia matters.

**Written Question No. 28:**

Did you understand, on or about June 28, 1996, the chemical experiments set forth in both "Table 2" and the Wassermann reference?

**Response to Written Question No. 28:**

I do not recall. As discussed above, I am not certain whether I reviewed those materials before June 28, 1996, let alone what was my level of understanding them was at that time. Any further answer would be a guess or an attempt to interpret the document now. I have no recollection of the document or my review of the document that would help me do so.

**Written Question No. 29:**

If your answer to the immediately prior question was negative, how did you satisfy your obligations under 37 C.F.R. §§ 1.56, 10.18 and 10.23 with respect to Paragraph 6 on PU 0015199 of Defendants' Exhibit 165 before signing Defendants' Exhibit 165?

**Pharmacia's Objections to Written Question No. 29:**

Pharmacia objects to Written Question No. 29 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

14

**Response to Written Question No. 29:**

I do not recall any of the declarations included in Defendants' Exhibit 165, including but not limited to Paragraph 6 on PU 0015199, and I have no recollection of specific steps that I took at that time, but I was familiar with the general family of applications and the general area of technology from my litigation work for Pharmacia. I also had discussions with other attorneys and client representatives about the technology and various issues being raised in then-pending litigation. All this led me to believe that I had a good working knowledge of the area and that I would be able to judge the veracity of statements about the technology and the prior art. To the extent I became aware of any information that would lead me to believe that the information in any of the declarations was in any way inaccurate, I would have checked, or had the client check, with the declarants. I do not recall having had any basis for questioning the continuing accuracy of the conclusions or the information contained therein.

**Written Question No. 30:**

Did you understand on or before August 22, 2000, that the experiments reported on PU 0015241 at pH 2.0 were conducted with glycine-HCl?

**Response to Written Question No. 30:**

I do not recall. As discussed above, I am not certain whether I reviewed those materials before August 22, 2000, let alone what was my level of understanding them at that time. Any further answer would be a guess or an attempt to interpret the document now. I have no recollection of the document that would help me do so.

**Written Question No. 31:**

Did you understand on or before August 22, 2000, that glycine-HCl is different from hydrochloric acid?

**Response to Written Question No. 31:**

I do not recall having any understanding as to the differences between glycine-HCl and hydrochloric acid on or before August 22, 2000.  If I had been asked about any such differences at that time, I believe I would have recognized that glycine-HCl and hydrochloric acid generally had some difference or differences.  However, I do not recall having made any association between glycine-HCl and hydrochloric acid in the context of the prosecution history on or before August 22, 2000.

**Written Question No. 32:**

If your answer to each of Questions 30 and 31 was affirmative, did you believe on or before August 22, 2000 that the experiment of Table 2 (PU 0015241) was an accurate reflection of the Wassermann reference?  If so, what was the basis for your belief?

**Response to Written Question No. 32:**

I do not recall.  I do know that, to the extent that I had read and was aware of the contents of the declaration, I believed that everything set forth in the declaration was accurate.  I would not have submitted the declaration to the U.S. Patent and Trademark Office if I believed or suspected that anything in it was inaccurate or misleading.

**Written Question No. 33:**

Did you know or otherwise understand on or before August 22, 2000, that the experiments reported on PU 0015241 at pH 2.0 were conducted in 5% dextrose solution?

**Response to Written Question No. 33:**

I do not recall.  As discussed above, I am not certain whether I reviewed those materials before August 22, 2000, let alone what was my level of understanding them was at that time.  Any further answer would be a guess or an attempt to interpret the document now.  I have no recollection of the document that would help me do so.

16

## Written Question No. 34:

Did you understand on or before August 22, 2000 that the aqueous solution used in the Wassermann reference is different from a 5% dextrose solution?

## Response to Written Question No. 34:

I do not know. I do not recall knowing on or before August 22, 2000 what solution was used in the Wassermann reference, let alone if such solution was the same as or different from a 5% dextrose solution. Any further answer would be a guess or an attempt to interpret the document now. I have no recollection of the document that would help me do so.

## Written Question No. 35:

If your answer to each of Questions 33, and 34 was affirmative, did you believe on or before August 22, 2000 that the experiment of Table 2 (PU 0015241) was an accurate reflection of the Wassermann reference? If so, what was the basis for your belief?

## Response to Written Question No. 35:

I do not recall. I do know that, to the extent that I had read and was aware of the contents of the declaration, I believed that everything set forth in the declaration was accurate. I would not have submitted the declaration to the U.S. Patent and Trademark Office if I believed or suspected that anything in it was inaccurate or misleading.

## Written Question No. 36:

If your answer to any of Questions 30, 31, 33 and 34 was negative, how did you satisfy your obligations under 37 C.F.R. §§ 1.56, 10.18 and 10.23 with respect to your resubmission and reliance on this comparative testing data?

## Pharmacia's Objections to Written Question No. 36:

Pharmacia objects to Written Question No. 36 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of

17

Aug-14-06  18:46    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF        +13129130002        T-407  P.19/61  F-763

legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

### Response to Written Question No. 36:

I do not recall any of the declarations included in Defendants' Exhibit 165, including but not limited to Table 2 on PU 0015241, and I have no recollection of specific steps that I took at that time, but I was familiar with the general family of applications and the general area of technology from my litigation work for Pharmacia. I also had discussions with other attorneys and client representatives about the technology and various issues being raised in then-pending litigation. All this led me to believe that I had a good working knowledge of the area and that I would be able to judge the veracity of statements about the technology and the prior art. To the extent I became aware of any information that would lead me to believe that any of the information in any of the declarations was in any way inaccurate, I would have checked, or had the client check, with the declarants. I do not recall having had any basis for questioning the continuing accuracy of the conclusions or the information contained therein.

### Written Question No. 37:

If your answer to the immediately prior question was affirmative, do you still have the same belief today?

### Pharmacia's Objections to Written Question No. 37:

Pharmacia objects to Written Question No. 37 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to the ongoing litigation.

18

**Response to Written Question No. 37:**

Written Question No. 36 does not ask for an affirmative or negative response, and thus Written Question No. 37 cannot be answered as posed. Moreover, I cannot discuss my belief today without revealing the content of attorney-client communications and attorney work product. My belief today is based on discussions with Pharmacia and other attorneys and investigation that I have done in relation to the pending litigation.

**Written Question No. 38:**

Had you read Janssen (Defendants' Exhibit 18) prior to May 6, 1997?

**Response to Written Question No. 38:**

I do not recall. I may have reviewed the reference or parts of the reference, or I may have relied upon another attorney to do so.

**Written Question No. 39:**

Prior to May 6, 1997 did you believe that the doxorubicin taught by Janssen (Defendants' Exhibit 18) was an anthracycline glycoside?

**Response to Written Question No. 39:**

I do not recall with respect to Janssen in particular. However, I believed generally as of May 6, 1997 that doxorubicin was an anthracycline glycoside, as identified in the specification of U.S. Patent Application Serial No. 07/827,742.

**Written Question No. 40:**

Prior to May 6, 1997 did you believe that the concentration of doxorubicin taught by Janssen (Defendants' Exhibit 18) was outside the range of 0.1 to 100 mg/ml?

PAGE 20/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHI2KRF01/22 * DNIS:4777 * CSID:+131291300002 * DURATION (mm-ss):07-58

PAGE 21/61 · RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] · SVR:CHIZRXRF01/22 · DNIS:4777 · CSID:+13129130002 · DURATION (mm-ss):07-58

### Response to Written Question No. 40:

I do not recall now. Based on the statement by the Examiner in the December 6, 1996

Office Action and given the statement in the May 6, 1997 Amendment to that same effect, I

believe that I did.

### Written Question No. 41:

Prior to May 6, 1997 did you believe that a concentration of doxorubicin 100 µg/ml
taught by Janssen (Defendants' Exhibit 18) was not within the range of 0.1 to 100 mg/ml?

### Response to Written Question No. 41:

I do not recall now what I believed at the time. In particular, I do not recall whether I

believed prior to May 6, 1997 that Janssen taught a concentration of 100 µg/ml. I also do not

recall whether I believed based on the case law that a reference using a concentration of 100

µg/ml taught a claimed solutions having a concentration range of 0.1 to 100 mg/ml.

### Written Question No. 42:

Did the beliefs that formed the basis for any of your answers to Questions 39, 40, or 41
change between May 7, 1997 and August 22, 2000?

### Response to Written Question No. 42:

Because I do not recall my beliefs at those times, I have no way of determining whether

those beliefs changed between May 7, 1997 and August 22, 2000. However, I do know that if I

had recognized or come to believe during the prosecution process that anything in the

prosecution history had been inaccurate or misleading in any way, I would have sought to correct

it. I do not recall my beliefs changing at any time during the prosecution.

### Written Question No. 43:

If your answer to the immediately prior question was affirmative, explain which belief(s)
changed and how the change came about?

PAGE 22/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRKF01/22 * DNIS:4777 * CSID:+13129181300002 * DURATION (mm-ss):07-58

**Response to Written Question No. 43:**

Not Applicable.

**Written Question No. 44:**

If your answer to Question 42 was affirmative, did you review the argument you presented to the United States Patent and Trademark Office on May 6, 1997 (Defendants' Exhibit 184) to ensure that it contained factually correct statements in this regard?

**Response to Written Question No. 44:**

Not Applicable. However, given my signature on the Amendment and Transmittal Letter, my practice would have been to review Defendants' Exhibit 184 and its contents, and my signature on the document indicates that I believed that all factual statements and arguments were correct. Further, I do know that if I came to believe during the prosecution process that anything in the prosecution history had been inaccurate or misleading in any way, I would have sought to correct it. I do not recall my beliefs changing at any time during the prosecution.

**Written Question No. 45:**

If your answer to the immediately prior question was affirmative, did you believe even after your changed beliefs about Janssen that the May 7, 1997 statements were correct?

**Response to Written Question No. 45:**

Not Applicable. However, if I came to believe during the prosecution process that anything in the prosecution history had been inaccurate or misleading in any way, I would have sought to correct it. I do not recall my beliefs changing at any time during the prosecution.

**Written Question No. 46:**

Were you aware on or before August 22, 2000 that Related Foreign Patents were prosecuted by Plaintiff?

Aug-14-06  18:47      From-MCDONNELL BOEHNEN HULBERT & BERGHOFF      +13129181300002      T-407   P.22/61   F-763

**Response to Written Question No. 46:**

I was aware that some foreign applications and patents were or had been prosecuted by Plaintiff's predecessors-in-interest as of that date.

**Written Question No. 47:**

If your answer to Question 46 was affirmative, what did you do, if anything, to ensure that all prior art related to the foreign patent applications was provided to you to determine whether or not such materials should be submitted to the U.S. Patent and Trademark Office?

**Pharmacia's Objections to Written Question No. 47:**

Pharmacia objects to Written Question No. 47 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 47:**

Without revealing the content of any communication with client representatives or fellow counsel, I can say that I communicated, directly or indirectly through other attorneys at my respective firms, with client representatives and other counsel for Pharmacia's predecessors-in-interest to request all information relevant to the prosecution of the patent.

**Written Question No. 48:**

If your answer to Question 46 was affirmative, what did you do, if anything, to ensure that all information -- other than prior art -- related to the Related Foreign Patents was provided to you to determine whether or not such materials should be submitted to the U.S. Patent and Trademark Office?

**Pharmacia's Objections to Written Question No. 48:**

Pharmacia objects to Written Question No. 48 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between

PAGE 24/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRF0/122 * DNIS:4777 * CSID:+13129130000 2 * DURATION (mm-ss):07-58

Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

### Response to Written Question No. 48:

Without revealing the content of any communication with client representatives or fellow counsel, I can say that I communicated, directly or indirectly through other attorneys at my respective firms, with client representatives and other counsel for Pharmacia's predecessors-in-interest to request all information relevant to the prosecution of the patent.

### Written Question No. 49:

Explain the decision not to submit the German Opposition Papers referenced in Defendants' Exhibit 169 to the US Patent and Trademark Office.

### Pharmacia's Objections to Written Question No. 49:

Pharmacia objects to Written Question No. 49 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

### Response to Written Question No. 49:

I am not aware of any such decision having been made as suggested by this question, and this question misconstrues the record to my understanding. To my knowledge, the references cited in the German opposition (as referenced in Defendants' Exhibit 169) were submitted to the PTO, as reflected in the file history of the '742 application and on the face of the patent. Furthermore, the file history of the '742 application confirms that the German Opposition Decision was submitted to the USPTO in the Second Supplemental Information Disclosure

Aug-14-06 18:47    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129130000 2    T-407   P.24/61   F-783

PAGE 25/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRF01/22 * DNIS:4777 * CSID:+13129130000Z * DURATION (mm-ss):07-58

Statement submitted on March 18, 1997. *See, e.g.*, PU 014944. I further do not recall having possession of any other "German Opposition Papers" during the prosecution of the patent, or whether they were submitted during the prosecution.

### Written Question No. 50:

Explain the decision not to submit the Canadian opposition documents referenced in Defendants' Exhibit 171 to the US Patent and Trademark Office.

### Pharmacia's Objections to Written Question No. 50:

Pharmacia objects to Written Question No. 50 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

### Response to Written Question No. 50:

I am not aware of any such decision having been made as suggested by this question, and this question misconstrues the record to my understanding. To my knowledge, the references cited in the Canadian opposition (as referenced in Defendants' Exhibit 171) were submitted to the PTO, as reflected in the file history of the '742 application and on the face of the patent. I further do not recall having possession of any other "Canadian opposition documents" during the prosecution of the patent, or whether they were submitted during the prosecution.

### Written Question No. 51:

State what involvement you had, if any, in the preparation and submission of the IDSs filed in U.S. Application Serial No. 07/827,742.

24

PAGE 26/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRFC01/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

**Pharmacia's Objections to Written Question No. 51:**

Pharmacia objects to Written Question No. 51 on the basis of the attorney-client privilege to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice.

**Response to Written Question No. 51:**

To the best of my recollection, my involvement with regard to the IDS documents was simply corresponding with Pharmacia or its agents and directing other attorneys in my firm to make sure that they had collected and submitted all material factual information, including prior art references, that was (1) presented in challenges against related foreign counterparts around the world, or (2) otherwise known to the client as potentially material. To the best of my recollection, I did not personally prepare or review any of the information disclosure statements.

**Written Question No. 52:**

Did you approve the contents of the Ninth Information Disclosure Statement (Defendants' Exhibit 176) before it was submitted to the United States Patent and Trademark Office?

**Pharmacia's Objections to Written Question No. 52:**

Pharmacia objects to Written Question No. 52 on the basis of the attorney-client privilege to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice.

**Response to Written Question No. 52:**

To the best of my recollection, I did not personally prepare or review any of the information disclosure statements.

**Written Question No. 53:**

If your answer to the immediately prior question was affirmative, identify each step you took prior to approving the documents of Defendants' Exhibit 176 to comply with 37 C.F.R. §§

25

PAGE 27/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRF01/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

1.56, 10.18 and 10.23? To the extent any of these steps included a review of the prosecution history please indicate by listing the range of production numbers what portions, if any, of the prosecution history you had reviewed.

**Response to Written Question No. 53:**

Not Applicable.

**Written Question No. 54:**

If your answer to Question 52 was negative, did you consider the contents of the Ninth Information Disclosure Statement (Defendants' Exhibit 176) before August 22, 2000?

**Pharmacia's Objections to Written Question No. 54:**

Pharmacia objects to Written Question No. 54 on the basis of the attorney-client privilege to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice. Pharmacia also objects to Written Question No. 54 in that the term "consider the contents" is vague, undefined, and susceptible to multiple meanings.

**Response to Written Question No. 54:**

To the best of my recollection, I did not personally prepare or review any of the information disclosure statements. I do not recall having seen the Ninth Information Disclosure Statement prior to August 22, 2000, and I believe that it is unlikely I did so. The only "consideration" that I recall giving in relation to any information disclosure statement was my direction to other attorneys to collect and submit all material factual information, including prior art references, that was (1) presented in challenges against related foreign counterparts around the world, or (2) otherwise known to the client as potentially material.

**Written Question No. 55:**

Why did you choose not to highlight the references that were being submitted for the first time in the Ninth Supplemental Information Disclosure Statement (Defendants' Exhibit 176)?

Aug-14-06  18:47    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129130002    T-407    P.27/61    F-763

PAGE 28/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZRXKF01/22 * DNIS:4777 * CSID:+13129130000002 * DURATION (mm-ss):07-58

**Pharmacia's Objections to Written Question No. 55:**

Pharmacia objects to Written Question No. 55 on the basis of the attorney-client privilege to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice. Pharmacia also objects to Written Question No. 55 in that the term "highlight" is vague, undefined, and susceptible to multiple meanings.

**Response to Written Question No. 55:**

I do not recall making any choice one way or the other with respect to the Ninth Supplemental Information Disclosure Statement, and particularly with respect to whether to "highlight" any references. Nor do I recall anyone else in my firm making such a choice one way or the other. Furthermore, I am not aware of any obligation to "highlight" any particular references then or now. The only "choice," *i.e.*, decision, that I recall making in relation to any information disclosure statement was my direction to other attorneys to collect and submit all material factual information, including prior art references, that was (1) presented in challenges against related foreign counterparts around the world, or (2) otherwise known to the client as potentially material.

**Written Question No. 56:**

Why did you choose not to highlight the references that were known to be of significance that were listed in the Ninth Supplemental Information Disclosure Statement (Defendants' Exhibit 176)?

**Pharmacia's Objections to Written Question No. 56:**

Pharmacia objects to Written Question No. 56 on the basis of the attorney-client privilege to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice. Pharmacia

Aug-14-06  18:48      From-MCDONNELL BOEHNEN HULBERT & BERGHOFF      +13129130000002      T-407    P.28/61    F-763

PAGE 29/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRKR01/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

also objects to Written Question No. 56 in that the terms "highlight" and "known to be of significance" are vague, undefined, and susceptible to multiple meanings.

## Response to Written Question No. 56:

I do not recall making any choice one way or the other with respect to the Ninth Supplemental Information Disclosure Statement, and particularly with respect to whether to "highlight" any references. Nor do I recall anyone else in my firm making such a choice one way or the other. Furthermore, I am not aware of any obligation to "highlight" any particular references then or now. Nor do I know whether any particular references were "known to be of significance," apart from those relied upon by the Examiner. The only "choice," *i.e.*, decision, that I recall making in relation to any information disclosure statement was my direction to other attorneys to collect and submit all material factual information, including prior art references, that was (1) presented in challenges against related foreign counterparts around the world, or (2) otherwise known to the client as potentially material.

## Written Question No. 57:

Were you aware on or before August 22, 2000 that any of the Sv. Aage Schou & V. Gaun Jensen (1959) (PU 0076838-40); J. Windheuser (1963) (SICOR-PNU 006409-16); E. Sandell (1967) (PU 0076858-60); K. Ilver (1971) (PU 0076829-34); Lachman (PU 0011777-809); contradicted one or more arguments made in favor of the patentability of the claims of the '742 application?

## Pharmacia's Objections to Written Question No. 57:

Pharmacia objects to Written Question No. 57 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

Aug-14-06  18:48     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129130002     T-407  P.29/61  F-763

PAGE 30/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRF0/122 * DNIS:4777 * CSID:+13129130000Z * DURATION (mm-ss):07-58

**Response to Written Question No. 57:**

No.  To the best of my recollection, I did not believe at any time during the prosecution that any reference contradicted any argument made in favor of the patentability of the claims of the '742 application.   Moreover, as to the references specifically identified above, I do not recall being aware of the contents of these references on or before August 22, 2000.

Aug-14-06  18:48        From-MCDONNELL BOEHNEN HULBERT & BERGHOFF        +13129130000Z        T-407   P.30/61   F-763

PAGE 31/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRKF-01/22 * DNIS:4777 * CSID:+13129613000002 * DURATION (mm-ss):07-58

**Written Question No. 58:**

If your answer to the immediately prior question was negative, why were you not aware that Schou & Jensen, Windheuser, Sandell, Ilver and Lachman contradicted one or more arguments made in favor of the patentability of the claims of the '742 application?

**Response to Written Question No. 58:**

To the best of my recollection, I did not believe at any time during the prosecution that any reference contradicted any argument made in favor of the patentability of the claims of the '742 application. Moreover, as to the references specifically identified above, I do not recall being aware of the contents of these references on or before August 22, 2000.

**Written Question No. 59:**

If your answer to Question 57 was affirmative, then why did you fail to disclose the contradiction(s) to United States Patent and Trademark Office?

**Response to Written Question No. 59:**

Not applicable. However, if I had been aware of a reference that contradicted any argument made in favor of the patentability of the claims of the '742 application, I would have ensured that the reference was cited to the U.S. Patent and Trademark Office and the situation corrected. I do not recall believing during the prosecution that I knew of any reference that contradicted any argument made in favor of the patentability of the claims of the '742 application.

**Written Question No. 60:**

Were you aware on or before August 22, 2000 that Carlo Confalonieri had submitted one or more declarations to foreign patent offices during the prosecution of the Related Foreign Patents?

**Pharmacia's Objections to Written Question No. 60:**

Pharmacia objects to Written Question No. 60 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between

Aug-14-06 18:48    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129613000002    T-407    P.31/61    F-763