PAGE 32/61 ' RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] ' SVR:CHIZRXFX0122 ' DNIS:4777 ' CSID:+13129130002 ' DURATION (mm-ss):07-58

Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 60:**

I have no significant recollection of such a situation. I have a vague recollection of hearing somewhere (I do not recall where) that a Confalonieri declaration may have been submitted in a foreign proceeding, but I do not have confidence in this recollection; this same vague recollection recalls that any such declaration was also submitted to the U.S. Patent and Trademark Office in the prosecution of the '285 patent. But as I note, this is all a very vague recollection.

**Written Question No. 61:**

If your answer to the immediately prior question was negative, why not?

**Response to Written Question No. 61:**

Not Applicable.

**Written Question No. 62:**

If your answer to Question 60 was affirmative, did you review any of the declarations that Carlo Confalonieri submitted to other patent offices prior to August 22, 2000?

**Response to Written Question No. 62:**

I do not recall seeing any Confalonieri declaration that I knew had been submitted to other patent offices, except insofar as such declaration was also being submitted to the U.S. Patent and Trademark Office.

**Written Question No. 63:**

If your answer to the immediately prior question was negative, why not?

Aug-14-06  18:48     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129130002     T-407  P.32/61  F-763

PAGE 33/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZRKRF01/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

### Response to Written Question No. 63:

I do not recall seeing any Confalonieri declaration that I knew had been submitted to other patent offices, except insofar as such declaration was also being submitted to the U.S. Patent and Trademark Office.

### Written Question No. 64:

If your answer to Question 62 was affirmative, identify all such declarations reviewed prior to August 22, 2000.

### Pharmacia's Objections to Written Question No. 64

Pharmacia objects to Written Question No. 64 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

### Response to Written Question No. 64:

I do not recall seeing any Confalonieri declaration that I knew had been submitted to other patent offices, except insofar as such declaration was also being submitted to the U.S. Patent and Trademark Office.

### Written Question No. 65:

Were you aware on or before August 22, 2000 that Carlo Confalonieri had been deposed regarding any of the Related Foreign Patents?

### Pharmacia's Objections to Written Question No. 65

Pharmacia objects to Written Question No. 65 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of

Aug-14-06  18:48     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129130002     T-407   P.33/61   F-783

PAGE 34/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRXRF01/22 * DNIS:4777 * CSID:+13122913000002 * DURATION (mm-ss):07-58

legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 65:**

I recall being aware Dr. Confalonieri had been deposed in connection with litigation in Canada, but I do not recall when I heard this or whether I was aware of that fact by August 22, 2000.

**Written Question No. 66:**

If your answer to the immediately prior question was negative, with reference to Defendants' Exhibits 178, 179 and 180, please describe your knowledge of <u>Faulding Canada v. Pharmacia S.p.A</u> (Court File No. T-421-97) "Action Seeking Declaration of Invalidity of '037 Patent – Doxorubicin."

**Pharmacia's Objections to Written Question No. 66:**

Pharmacia objects to Written Question No. 66 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 66:**

I was aware that some patent litigation was occuring in Canada, and that MBHB had obtained some references from Pharmacia's predecessor-in-interest's Canadian associates in that litigation. To the best of my vague recollection, the *Faulding* litigation started after the *Pharmachemie* litigation. I did not know much about the *Faulding* litigation, or whether the *Faulding* litigation involved a patent application within the same patent family as the '285 patent. I recall the product at issue being a doxorubicin RTU product. I also recall being aware at some later point in time that some of the inventors, including Dr. Confalonieri, had been

33

PAGE 35/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRCKFR0/22 * DNIS:4777 * CSID:+13129130000* * DURATION (mm-ss):07-58

deposed in connection with patent litigation in Canada, but I do not recall whether I was aware of that fact by August 22, 2000.

That is everything I recall about the *Faulding* litigation.

**Written Question No. 67:**

If your answer to Question 65 was affirmative, did you review any of the deposition testimony given by Carlo Confalonieri prior to August 22, 2000?

**Pharmacia's Objections to Written Question No. 67**

Pharmacia objects to Written Question No. 67 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 67:**

Not applicable. I do not recall having reviewed any deposition testimony given by Dr. Confalonieri in any litigation prior to August 22, 2000.

**Written Question No. 68:**

If your answer to the immediately prior question was negative, why didn't you review any of the deposition testimony given by Carlo Confalonieri prior to August 22, 2000.

**Response to Written Question No. 68:**

I do not recall whether I was aware prior to August 22, 2000 whether Dr. Confalonieri had been deposed, nor do I recall whether I had a copy of his deposition transcript by that date.

**Written Question No. 69:**

If your answer to Question 67 was affirmative, identify all such depositions reviewed prior to August 22, 2000.

**Pharmacia's Objections to Written Question No. 69**

Aug-14-06 18:48     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13128130000*     T-407     P.35/61     F-763

PAGE 36/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZRXFO1/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

Pharmacia objects to Written Question No. 69 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v Pharmachemie*.

**Response to Written Question No. 69:**

Not Applicable.

**Written Question No. 70:**

For each individual listed in Pharmacia's Response to Interrogatory No. 8 of Sicor's Second Set of Interrogatories (Defendants' Exhibit 166) -- aside from yourself, Ms. Miao, Mr. Noe, and Mr. John J. McDonnell -- identify separately, for each subpart of this question, each individual you communicated with regarding the subject matter of U.S. Patent Application Serial No. 07/827,742:

a. on or before June 28, 1996 (the mailing date of the Amendment Under 37 C.F.R. § 1.116);

b. between June 29, 1996 and December 6, 1996 (the date of the office action citing Janssen);

c. between December 7, 1996 and May 6, 1997 (the date of another Amendment);

d. between May 7, 1997 and June 15, 1998

e. Between June 23, 1998 (office action indicating allowability) and July 1, 1998 (the mailing date of the ninth supplemental IDS);

f. Between July 2, 1998 and August 17, 1998 (the date of the 10th supplemental IDS); and

g. between August 18, 1998 and August 22, 2000 (the issue date of the '285 patent).

35

PAGE 37/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRXFR01/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

**Pharmacia's Objections to Written Question No. 70:**

Pharmacia objects to Written Question No. 70 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 70:**

I know that I communicated with Carlo Confalonieri during a trip to Milan which occurred at some point between 1995 and 1999 regarding the *Pharmachemie* litigation; I do not believe that I ever communicated with Dr. Confalonieri regarding patent prosecution. Other than that trip to Milan, I do not recall any other communications with Dr. Confalonieri relating to anthracycline glycosides.

I believe that I communicated with Rafaella Metelli in writing and by telephone throughout many if not all of these periods. Many of these communications related to the *Pharmachemie* litigation, but they may have also covered aspects of prosecution of the '742 patent application. I also met with R. Metelli during the trip to Milan in which I met with Dr. Confalonieri to discuss the *Pharmachemie* litigation. I have no recollection of any details or specifics of any such communication with R. Metelli.

I believe that I communicated with Geoff Woods throughout many of these periods. Most such communications were probably by telephone, and likely related to the *Pharmachemie* litigation, but they may have also covered aspects of prosecution of the '742 patent application. I also recall meeting with G. Woods on at least one occasion in connection with the *Pharmachemie* litigation.

Aug-14-06 18:49     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129130002     T-407     P.37/61     F-763

I had less frequent communications with Richard Kelly, by both telephone and writing, and these likely occurred during at least some of the time periods noted in the question. At least some of these communication likely pertained to the Pharmachemie litigation, but at least some of them likely pertained to prosecution of the '742 patent.

To the extent that I had any written communications with any of these persons – and to the extent that such documents still exist – I believe that those written communications would be either produced or identified on Pharmacia's withheld document log. I do not recall have communications during the referenced time periods with any other persons identified by the question.

### Written Question No. 71:

For each individual listed in Pharmacia's Response to Interrogatory No. 8 of Sicor's Second Set of Interrogatories (Defendants' Exhibit 166) – aside from yourself, Ms. Miao, Mr. Noe, and Mr. John J. McDonnell – identify separately, for each subpart of this question, each individual you communicated with regarding the subject matter of U.S. Patent Application Serial No. 06/878,784.

    a.   on or before June 28, 1996 (the mailing date of the Amendment Under 37 C.F.R. § 1.116);

    b.   between June 29, 1996 and December 6, 1996 (the date of the office action citing Janssen);

    c.   between December 7, 1996 and May 6, 1997 (the date of another Amendment);

    d.   between May 7, 1997 and June 15, 1998

    e.   Between June 23, 1998 (office action indicating allowability) and July 1, 1998 (the mailing date of the ninth supplemental IDS);

    f.   Between July 2, 1998 and August 17, 1998 (the date of the 10th supplemental IDS); and

    g.   between August 18, 1998 and August 22, 2000 (the issue date of the '285 patent).

PAGE 39/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRXFR01/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

**Pharmacia's Objections to Written Question No. 71:**

Pharmacia objects to Written Question No. 71 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 71:**

See Response to Written Question No. 70, incorporated here by reference. I do not and cannot distinguish the subject matter of U.S. Patent Application Serial No. 06/878,784 from the subject matter of related applications in the same patent family. Although different patents in this patent family have different patent claims, all of the patents in this patent family share a common specification and describe a common "subject matter of the application."

**Written Question No. 72:**

For each individual listed in Pharmacia's Response to Interrogatory No. 8 of Sicor's Second Set of Interrogatories (Defendants' Exhibit 166) -- aside from yourself, Ms. Miao, Mr. Noe, and Mr. John J. McDonnell -- identify separately, for each subpart of this question, each individual you communicated with regarding the subject matter of U.S. Patent Application Serial No. 07/385,999:

    a.  on or before June 28, 1996 (the mailing date of the Amendment Under 37 C.F.R. § 1.116);

    b  between June 29, 1996 and December 6, 1996 (the date of the office action citing Janssen);

    c.  between December 7, 1996 and May 6, 1997 (the date of another Amendment);

    d.  between May 7, 1997 and June 15, 1998

    e.  Between June 23, 1998 (office action indicating allowability) and July 1, 1998 (the mailing date of the ninth supplemental IDS);

Aug-14-06 18:48     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129130002     T-407  P.39/61  F-763

PAGE 40/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZRXFR-01/22 * DNIS:4777 * CSID:+13129313000002 * DURATION (mm-ss):07-58

    f.  Between July 2, 1998 and August 17, 1998 (the date of the 10th supplemental IDS), and

    g.  between August 18, 1998 and August 22, 2000 (the issue date of the '285 patent).

### Pharmacia's Objections to Written Question No. 72:

Pharmacia objects to Written Question No. 72 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

### Response to Written Question No. 72:

See Response to Written Question No. 70, incorporated here by reference. I do not and cannot distinguish the subject matter of U.S. Patent Application Serial No. 06/878,784 from the subject matter of related applications in the same patent family. Although different patents in this patent family have different patent claims, all of the patents in this patent family share a common specification and describe a common "subject matter of the application."

### Written Question No. 73:

For each individual listed in Pharmacia's Response to Interrogatory No. 8 of Sicor's Second Set of Interrogatories (Defendants' Exhibit 166) – aside from yourself, Ms. Miao, Mr. Noe, and Mr. John J. McDonnell -- identify separately for each subpart of this question, each individual you communicated with regarding the subject matter of any of the Related Foreign Patents:

    a.  on or before June 28, 1996 (the mailing date of the Amendment Under 37 C.F.R. § 1.116);

    b.  between June 29, 1996 and December 6, 1996 (the date of the office action citing Janssen);

    c.  between December 7, 1996 and May 6, 1997 (the date of another Amendment);

Aug-14-06  18:48     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129313000002     T-407  P.40/61  F-763

PAGE 41/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZXRKF01/22 * DNIS:4777 * CSID:+13129213000002 * DURATION (mm-ss):07-58

    d.  between May 7, 1997 and June 15, 1998

    e.  Between June 23, 1998 (office action indicating allowability) and July 1, 1998 (the mailing date of the ninth supplemental IDS);

    f.  Between July 2, 1998 and August 17, 1998 (the date of the 10th supplemental IDS); and

    g.  between August 18, 1998 and August 22, 2000 (the issue date of the '285 patent).

**Pharmacia's Objections to Written Question No. 73:**

Pharmacia objects to Written Question No. 73 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 73:**

See Response to Written Question No. 70, incorporated here by reference. I do not and cannot distinguish the subject matter of foreign patents from the subject matter of related applications in the same patent family. Although different patents in this patent family have different patent claims, all of the patents in this patent family share a common specification and describe a common "subject matter of the application."

**Written Question No. 74:**

For each individual listed in Pharmacia's Response to Interrogatory No. 8 of Sicor's Second Set of Interrogatories (Defendants' Exhibit 166) -- aside from yourself, Ms. Miao, Mr. Noe, and Mr. John J. McDonnell -- identify separately for each subpart of this question, each individual you communicated with regarding the subject matter of the litigation between Farmitalia Carlo Erba and Delta West in Australia:

    a.  on or before June 28, 1996 (the mailing date of the Amendment Under 37 C.F.R. § 1.116);

Aug-14-06  18:48     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129213000002     T-407   P.41/61   F-763

PAGE 42/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKMZKR01/22 * DNIS:4777 * CSID:+13129130002 * DURATION (mm-ss):07-58

b.  between June 29, 1996 and December 6, 1996 (the date of the office action citing Janssen);

c.  between December 7, 1996 and May 6, 1997 (the date of another Amendment);

d.  between May 7, 1997 and June 15, 1998

e.  Between June 23, 1998 (office action indicating allowability) and July 1, 1998 (the mailing date of the ninth supplemental IDS);

f.  Between July 2, 1998 and August 17, 1998 (the date of the 10th supplemental IDS); and

g.  between August 18, 1998 and August 22, 2000 (the issue date of the '285 patent).

**Pharmacia's Objections to Written Question No. 74:**

Pharmacia objects to Written Question No. 74 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 74:**

See Response to Written Question No. 70, incorporated here by reference. I do not and cannot distinguish the subject matter of U.S. Patent Application Serial No. 06/878,784 from the subject matter of related applications in the same patent family. Although different patents in this patent family have different patent claims, all of the patents in this patent family share a common specification and describe a common "subject matter of the application."

**Written Question No. 75:**

Did you communicate with V. Ferrario at any time prior to August 22, 2000?

Aug-14-06  18:49    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129130002    T-407    P.42/61    F-763

PAGE 43/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZRKGF0172 * DNIS:4777 * CSID:+13129130000002 * DURATION (mm-ss):07-58

**Response to Written Question No. 75:**

     Yes.

**Written Question No. 76:**

     If your answer to the immediately prior question was affirmative. did you discuss the subject matter of any work related to anthracycline glycosides with V. Ferrario?

**Pharmacia's Objections to Written Question No. 76:**

     Pharmacia objects to Written Question No. 76 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 76:**

     Yes, related to litigation.

**Written Question No. 77:**

     If your answer to the immediately prior question was affirmative, did you discuss the subject matter of any Related U.S. Patents with V. Ferrario?

**Pharmacia's Objections to Written Question No. 77:**

     Pharmacia objects to Written Question No. 77 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 77:**

     Yes, related to litigation.

Aug-14-06 18:49    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129130000002    T-407    P.43/61    F-763

PAGE 44/61 · RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] · SVR:CHIZKRFP01/22 · DNIS:4777 · CSID:+13129130000002 · DURATION (mm-ss):07-58

**Written Question No. 78:**

If your answer to the immediately prior question was affirmative, did you discuss the subject matter of any Related Foreign Patents with V. Ferrario?

**Pharmacia's Objections to Written Question No. 78:**

Pharmacia objects to Written Question No. 78 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 78:**

No, to the best of my recollection.

**Written Question No. 79:**

If your answer was affirmative to any of Questions 76, 77, and 78, state of the subject matter, date and nature of each such communication.

**Pharmacia's Objections to Written Question No. 79:**

Pharmacia objects to Written Question No. 79 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 79:**

I recall one meeting at the outset of the *Pharmachemie* litigation where we discussed the general subject matter of the patents in suit in that litigation and litigation strategy. I do not recall any other communications with Mr. Ferrario. To the extent that I had any written

43

PAGE 45/61 ' RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] ' SVR:CHIZKRJF01/22 ' DNIS:4777 ' CSID:+13129130000002 ' DURATION (mm-ss):07-58

communications with Mr. Ferrario – and to the extent that such documents still exist – I believe

that those written communications would be either produced or identified on Pharmacia's

withheld document log.

**Written Question No. 80:**

Did you communicate with Lawrence T. Welch at any time prior to August 22, 2000?

**Response to Written Question No. 80:**

Yes.

**Written Question No. 81:**

If your answer to the immediately prior question was affirmative, did you discuss the
subject matter of any work related to anthracycline glycosides with Lawrence T. Welch?

**Pharmacia's Objections to Written Question No. 81:**

Pharmacia objects to Written Question No. 81 on the basis of the attorney-client privilege

and work product doctrine to the extent that it requests the content of communications between

Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of

legal advice or the identification of legal services related to then ongoing or anticipated

litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 81:**

Yes, related to litigation.

**Written Question No. 82:**

If your answer to the immediately prior question was affirmative, did you discuss the
subject matter of any Related U.S. Patents with Lawrence T. Welch?

**Pharmacia's Objections to Written Question No. 82:**

Pharmacia objects to Written Question No. 82 on the basis of the attorney-client privilege

and work product doctrine to the extent that it requests the content of communications between

Aug-14-06  18:50     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129130000002     T-407  P.45/61  F-763

PAGE 46/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZRXFP01/22 * DNIS:4777 * CSID:+13129130000Z * DURATION (mm-ss):07-58

Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 82:**

Not that I recall.

**Written Question No. 83:**

If your answer to the immediately prior question was affirmative, did you discuss the subject matter of any Related Foreign Patents with Lawrence T. Welch?

**Pharmacia's Objections to Written Question No. 83:**

Pharmacia objects to Written Question No. 83 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 83:**

Not Applicable.

**Written Question No. 84:**

If your answer was affirmative to any of Questions 81, 82, and 83, state of the subject matter, date and nature of each such communication.

**Pharmacia's Objections to Written Question No. 84:**

Pharmacia objects to Written Question No. 84 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of

Aug-14-06  18:50    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129130000Z    T-407    P.46/61    F-763

PAGE 47/61 ' RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] ' SVR:CHIZKZRGF01/22 ' DNIS:4777 ' CSID:+13129213000002 ' DURATION (mm-ss):07-58

legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

### Response to Written Question No. 84:

I have only a vague recollection of such communications. I remember discussing with Mr. Welch the process for collecting documents from the files of the former Upjohn Company for the *Pharmachemie* litigation. I have no clear recollection of the dates or subject matter of the communications, although I understand that some may be listed on withheld document logs.

### Written Question No. 85:

If your answer to either of Questions 80 or 81 was affirmative, did you have any discussions with Mr. Welch regarding the subject matter of Defendants' Exhibit 106 at any time prior to August 22, 2000?

### Pharmacia's Objections to Written Question No. 85:

Pharmacia objects to Written Question No. 85 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

### Response to Written Question No. 85:

To the best of my recollection, no, I did not.

### Written Question No. 86:

If your answer to the immediately prior question was affirmative, did you have any discussions with Mr. Welch regarding the subject matter of Defendants' Exhibit 106 at any time prior to June 28, 1996?

Aug-14-06 18:50    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129213000002    T-407  P.47/61  F-763

PAGE 48/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRFAX01/22 * DNIS:4777 * CSID:+13128213300002 * DURATION (mm-ss):07-58

**Pharmacia's Objections to Written Question No. 86:**

Pharmacia objects to Written Question No. 86 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 86:**

Not Applicable.

**Written Question No. 87:**

Were you aware prior to August 22, 2000 of the invalidity and non-infringement arguments adopted by the Upjohn Company set forth in the memo marked as Defendants' Exhibit 106?

**Pharmacia's Objections to Written Question No. 87:**

Pharmacia objects to Written Question No. 87 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.* Pharmacia further objects to the characterization of Defendants' Exhibit 106 as containing "invalidity" arguments.

**Response to Written Question No. 87:**

I do not believe I was aware of the contents of Defendants' Exhibit 106 prior to August 22, 2000. I was aware that one of Pharmacia's predecessors-in-interest had brought a patent infringement case in Australia against an Australian company affiliated with the Upjohn Company, but was not aware of the specific arguments that had been raised in that litigation.

Aug-14-06  18:50    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13128213300002    T-407    P.48/61    F-763

PAGE 49/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIXRKRF01/22 * DNIS:4777 * CSID:+13121300002 * DURATION (mm-ss):07-58

**Written Question No. 88:**

If your answer to the immediately prior question was affirmative, how and when did you become aware of those arguments adopted by the Upjohn Company set forth in the memo marked as Defendants' Exhibit 106?

**Pharmacia's Objections to Written Question No. 88:**

Pharmacia objects to Written Question No. 88 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 88:**

Not Applicable.

**Written Question No. 89:**

Were you aware prior to June 28, 1996 of the non-infringement arguments based on "not reconstituted from a lyophilizate" such as the argument adopted by the Upjohn Company as set forth in the memo marked as Exhibit 106?

**Pharmacia's Objections to Written Question No. 89:**

Pharmacia objects to Written Question No. 89 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 89:**

I do not recall having ever reading Defendants' Exhibit 106, and I was not aware of the specific arguments that Delta West raised in the Australian litigation. I do not know whether the

Aug-14-06  18:50     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13121300002     T-407   P.49/61   F-763

PAGE 50/61 ' RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] ' SVR:CHIZKRXFR/0122 ' DNIS:4777 ' CSID:+13129313000002 ' DURATION (mm-ss):07-58

arguments in Defendants' Exhibit 106 were adopted by Delta West or the Upjohn Company in relation to the Australian patent involved in the Delta West litigation.

I was aware, however, that Pharmachemie had raised a non-infringement defense in the U.S. litigation that rested upon the phrase "not reconstituted from lyophilizate" in relation to claims of U.S. patents that have not been asserted in this litigation.

### Written Question No. 90:

If your answer to the immediately prior question was affirmative, how did you become aware of that non-infringement argument?

### Pharmacia's Objections to Written Question No. 90:

Pharmacia objects to Written Question No. 90 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

### Response to Written Question No. 90:

Not applicable as to the Australian litigation. I became aware of Pharmachemie's arguments through serving as counsel of record in the *Pharmacia v. Pharmachemie* case.

### Written Question No. 91:

Identify Mary Padbury mentioned in Defendants' Exhibit 93 at Document Number 6020?

### Response to Written Question No. 91:

She was an Australian attorney who represented Pharmacia in the Australian litigation.

### Written Question No. 92:

Identify Mr. Emanuele Barie mentioned in Defendants' Exhibit 93 at Document Number 6020?

Aug-14-06 18:50     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13129313000002     T-407     P.50/61     F-763

PAGE 51/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRF01/22 * DNIS:4777 * CSID:+13121293300002 * DURATION (mm-ss):07-58

**Response to Written Question No. 92:**

He was an Italian attorney who represented Pharmacia's predecessors-in-interest

(including Farmitalia Carlo Erba)

**Written Question No. 93:**

Identify Dr. Geoff Levy mentioned in Defendants' Exhibit 93 at Document Number
6020?

**Response to Written Question No. 93:**

I do not recall this person.

**Written Question No. 94:**

Did you ever discuss with Ms. Padbury prior to August 22, 2000 the subject matter of
Defendants' Exhibit 106?

**Pharmacia's Objections to Written Question No. 94:**

Pharmacia objects to Written Question No. 94 on the basis of the attorney-client privilege

and work product doctrine to the extent that it requests the content of communications between

Mr. Bochnen and other attorneys or client representatives for the purposes of the provision of

legal advice or the identification of legal services related to then ongoing or anticipated

litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 94:**

I do not recall, but I do not believe so.

**Written Question No. 95:**

Did you ever discuss with Ms. Padbury prior to August 22, 2000 the subject matter of the
invalidity defenses presented by Delta West in the Australian litigation?

**Pharmacia's Objections to Written Question No. 95:**

Pharmacia objects to Written Question No. 95 on the basis of the attorney-client privilege

and work product doctrine to the extent that it requests the content of communications between

Aug-14-06  18:50     From-MCDONNELL BOEHNEN HULBERT & BERGHOFF     +13121293300002     T-407  P.51/61  F-763

Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 95:**

I do not recall, but I do not believe so.

**Written Question No. 96:**

Did you ever discuss the subject matter of U.S. Patent Application Serial No. 07/827,742 with Ms. Padbury prior to August 22, 2000?

**Pharmacia's Objections to Written Question No. 95:**

Pharmacia objects to Written Question No. 95 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 96:**

I do not recall, but I do not believe so.

**Written Question No. 97:**

Did you ever communicate with anyone regarding the subject matter of Ms. Padbury's facsimile letter of July 13, 1995, regarding Delta West action including opinions as to claim scope and discoverability of evidence? If so, identify each and every person you communicated with regarding the subject matter of Ms. Padbury's facsimile of July 13, 1995, the subject matter, date and manner of each such communication.

**Pharmacia's Objections to Written Question No. 97:**

Pharmacia objects to Written Question No. 97 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of

51

legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 97:**

I do not recall the letter specifically. Nor do I recall who, if anyone, I would have spoken to about the subject matter of the letter. To the extent that it related to evidentiary matters, such as document discovery, I would likely have spoken to one or more other attorneys in my firm involved in the *Pharmachemie* litigation, if anyone. To the extent that it identified prior art, or other factual information material to the claims, I would likely have spoken to other attorneys at the firm involved in the prosecution who were responsible for preparing and submitting information disclosure statements to the U.S. Patent and Trademark Office, if anyone.

**Written Question No. 98:**

Were you aware of the litigation between Farmitalia Carlo Erba and Delta West in Australia prior to August 22, 2000?

**Response to Written Question No. 98:**

Yes.

**Written Question No. 99:**

If your answer to the immediately prior question was affirmative, describe the knowledge you had prior to August 22, 2000 regarding the litigation between Farmitalia Carlo Erba and Delta West in Australia, provide date(s) when you gained this knowledge?

**Pharmacia's Objections to Written Question No. 99:**

Pharmacia objects to Written Question No. 99 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

PAGE 54/61 · RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] · SVR:CHIZRKRF01/22 · DNIS:4777 · CSID:+13129130000002 · DURATION (mm-ss):07-58

**Response to Written Question No. 99:**

I was aware that one of Pharmacia's predecessors-in-interest had brought a patent infringement case in Australia against an Australian company affiliated with the Upjohn Company, but was not aware of the specific arguments that had been raised. To the extent that any specific information was provided from the Australian attorneys, I would have had attorneys working on the *Pharmachemie* litigation team review that information. I do not recall the dates of any particular communications.

**Written Question No. 100:**

Were you aware prior to August 22, 2000, that Oblon Spivak submitted a letter dated February 7, 1992, (PU 0034802-803) setting forth a list of sixteen publications and nine patent publications that invalidated the Australian '197 patent?

**Pharmacia's Objections to Written Question No. 100:**

Pharmacia objects to Written Question No. 100 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 100:**

I do not recall having ever seen the letter identified in Written Question No. 100. I understand that such a letter appears in the prosecution history of an application from which the '285 patent claims priority, but I do not recall having seen it. Furthermore, I believe that the question mischaracterizes the record in that, to my knowledge and understanding, Pharmacia's Australian patent has recently been upheld as valid and infringed.

Aug-14-06  18:51    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13128138000002    T-407  P.54/61  F-763

PAGE 55/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRFAX01/22 * DNIS:4777 * CSID:+13129130000002 * DURATION (mm-ss):07-58

**Written Question No. 101:**

If your answer to the immediately prior question was affirmative, were you aware prior to August 22, 2000, that the February 7, 1992 letter (PU 0034802-803) was never properly submitted to the United States Patent and Trademark Office?

**Response to Written Question No. 101:**

Not Applicable.

**Written Question No. 102:**

If your answer to the immediately prior question was affirmative, did you believe prior to August 22, 2000, that submission of the letter dated February 7, 1992, (PU 0034802-803) setting forth a list of sixteen publications and nine patent publications that invalidated the Australian '197 patent was immaterial?

**Response to Written Question No. 102:**

Not Applicable. Any further answer would be a guess or an attempt to interpret the document now. I have no recollection of the document that would assist my interpretation of the document.

**Written Question No. 103:**

If your answer to the immediately prior question was affirmative, what facts supported that belief?

**Response to Written Question No. 103:**

Not Applicable. Any further answer would be a guess or an attempt to interpret the document now. I have no recollection of the document that would assist my interpretation of the document.

**Written Question No. 104:**

If your answer to Question 102 was affirmative, did you believe prior to August 22, 2000, that notwithstanding the improper submission of the letter dated February 7, 1992, (PU 0034802-803) setting forth a list of sixteen publications and nine patent publications that invalidated the Australian '197 patent was considered by the Examiner?

Aug-14-06  18:51    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129130000002    T-407  P.55/61  F-763

PAGE 56/61 · RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] · SVR:CHIZKRGRF-01/22 · DNIS:4777 · CSID:+13129130002 · DURATION (mm-ss):07-58

**Response to Written Question No. 104:**

Not Applicable.  Any further answer would be a guess or an attempt to interpret the document now.  I have no prior recollection of the document that would assist my interpretation of the document.

**Written Question No. 105:**

If your answer to the immediately prior question was affirmative, what facts supported that belief?

**Response to Written Question No. 105:**

Not Applicable.

**Written Question No. 106:**

What, if anything, did you do to ensure that material information from the litigation between Farmitalia Carlo Erba and Delta West in Australia was properly submitted to the U.S. Patent and Trademark Office?

**Pharmacia's Objections to Written Question No. 106:**

Pharmacia objects to Written Question No. 106 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie*.

**Response to Written Question No. 106:**

I communicated, directly or indirectly through other attorneys at my respective firms, with counsel for Pharmacia's predecessors-in-interest to request that all factual information relevant to the prosecution of the patent be provided to my firm.

Aug-14-06 18:51    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129130002    T-407  P.56/61  F-763

PAGE 57/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZKRF01/22 * DNIS:4777 * CSID:+13129813000002 * DURATION (mm-ss):07-58

**Written Question No. 107:**

Were you aware of the Affidavit of Robert Laurence Weston, April 19, 1995 (Defendants' Exhibit 95) prior to August 22, 2000?

**Response to Written Question No. 107:**

Not that I recall, and I believe I was not.

**Written Question No. 108:**

If your answer to the immediately prior question was affirmative, what, if anything, did you do to ensure that Defendants' Exhibit 95 was considered by the United States Patent and Trademark Office?

**Response to Written Question No. 108:**

Not Applicable.

**Written Question No. 109:**

If your answer to the immediately prior question was nothing, explain why you did nothing to ensure that Defendants' Exhibit 95 was considered by the United States Patent and Trademark Office? If it is your position that it was the solely responsibility of a third party to ensure that Defendants' Exhibit 95 was considered by the United States Patent and Trademark Office, include in your answer the identity of that person and the basis for your position.

**Response to Written Question No. 109:**

Not Applicable.

**Written Question No. 110:**

Were you aware of the Affidavit of William Neil Charman, April 24, 1995 (Defendants' Exhibit 96) prior to August 22, 2000?

**Response to Written Question No. 110:**

Not that I recall, and I believe I was not.

**Written Question No. 111:**

If your answer to the immediately prior question was affirmative, what, if anything, did you do to ensure that Defendants' Exhibit 96 was considered by the United States Patent and Trademark Office?

56

Aug-14-06 18:51    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129813000002    T-407    P.57/61    F-763

PAGE 58/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIZRXRFO1/22 * DNIS:4777 * CSID:+13129613000002 * DURATION (mm-ss):07-58

**Response to Written Question No. 111:**

Not Applicable.

**Written Question No. 112:**

If your answer to the immediately prior question was nothing, explain why you did nothing to ensure that Defendants' Exhibit 96 was considered by the United States Patent and Trademark Office? If it is your position that it was the solely responsibility of a third party to ensure that Defendants' Exhibit 96 was considered by the United States Patent and Trademark Office, include in your answer the identity of that person and the basis for your position.

**Response to Written Question No. 112:**

Not Applicable.

**Written Question No. 113:**

Were you involved in drafting, editing or approving the letter to Magistrate Judge Mark R. Abel dated April 17, 1996 (PU 0058969-70)?

**Pharmacia's Objections to Written Question No. 113:**

Pharmacia objects to Written Question No. 113 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 113:**

I have a vague recollection of the document. I believe that I would have given my approval to the document.

**Written Question No. 114:**

If your answer to the immediately prior question was affirmative, what knowledge did you have regarding terms and circumstances surrounding the "restructured Alliance Agreement between Upjohn and Gensia?"

Aug-14-06 18:51    From-MCDONNELL BOEHNEN HULBERT & BERGHOFF    +13129613000002    T-407    P.58/61    F-763

PAGE 59/61 ∗ RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] ∗ SVR:CHIZKRXFR01/22 ∗ DNIS:4777 ∗ CSID:+13129130002 ∗ DURATION (mm-ss):07-58

**Pharmacia's Objections to Written Question No. 114:**

Pharmacia objects to Written Question No. 114 on the basis of the attorney-client privilege and work product doctrine to the extent that it requests the content of communications between Mr. Boehnen and other attorneys or client representatives for the purposes of the provision of legal advice or the identification of legal services related to then ongoing or anticipated litigation, including *Pharmacia & Upjohn v. Pharmachemie.*

**Response to Written Question No. 114:**

The answer to this question calls for information that is subject to the attorney-client privilege and work product doctrine.

**Written Question No. 115:**

Were you aware before July 1, 1998 of the Office Action mailed June 28, 1998?

**Response to Written Question No. 115:**

I do not recall being aware, prior to July 1, 1998, of any Office Action mailed in June 1998. Moreover, the attorney of record listed on the only June 1998 Office Action is the Oblon Spivak firm. Thus, we would not have been aware of the Office Action until the Oblon Spivak firm forwarded it to us.

According to our correspondence file, the Oblon Spivak firm did not forward the document until July 6, 1998. Plaintiffs' Cross-Exhibit Miao 1, PU0096753, a letter from Richard Kelly of Oblon Spivak to Emily Miao, indicates that Mr. Kelly forwarded a June 23, 1998 Office Action to my firm on that date. The date is further confirmed by the fax legend at the top of the page, which states July 6, 1996.

I do not recall having any oral communications with anyone from the Oblon Spivak firm about this Office Action either before or after July 1, 1998. If I had such communications before

58

PAGE 60/61 * RCVD AT 8/14/2006 6:42:13 PM [Central Daylight Time] * SVR:CHIXRXRF01/22 * DNIS:4777 * CSID:+13129130000002 * DURATION (mm-ss):07-58

July 1, 1998, I would have asked that a copy of the Office Action be faxed to us immediately.

Thus, I do not believe that I or anyone else at my firm would have been aware of the Office

Action prior to July 6, 1998.

Respectfully Submitted,

Dated: August 14, 2006

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 S. Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

Attorneys for Plaintiff
Pharmacia & Upjohn Company LLC

59

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of August 2006, the above

RESPONSE TO WRITTEN QUESTIONS OF DANIEL BOEHNEN was served upon the

following counsel of record at the address and in the manner indicated:


Steven J. Balick                   VIA ELECTRONIC MAIL AND FACSIMILE
John G. Day
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899

Reid L. Ashinoff                   VIA ELECTRONIC MAIL AND FACSIMILE
Michael Gugig
SONNENSCHIEN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020

Jordan A. Sigale                   VIA ELECTRONIC MAIL AND FACSIMILE
SONNENSCHIEN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, Illinois 60606

60