# EXHIBIT B

```
 1                   IN THE UNITED STATES DISTRICT COURT

 2                   IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   PHARMACIA & UPJOHN COMPANY,        :   CIVIL ACTION
                                        :
 5                                      :
                 Plaintiff and          :
 6               Counter-defendant,     :
                                        :
 7   v.                                 :
                                        :
 8   SICOR INC., and SICOR              :
     PHARMACEUTICALS INC.,              :
 9                                      :
                 Defendants and        :   NO. 04-833 (KAJ)
10               Counter-Claimants.          - - -

11
                         Wilmington, Delaware
12              Thursday, March 30, 2006 at 10:30 a.m.
                         TELEPHONE CONFERENCE
13                              - - -

14   BEFORE:          HONORABLE KENT A. JORDAN, U.S.D.C.J.

15                              - - -

16   APPEARANCES:

17
                 MORRIS NICHOLS ARSHT & TUNNELL
18               BY:  JAMES W. PARRETT, ESQ.

19                    and

20               McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
                 BY:  JOSHUA R. RICH, ESQ., and
21                    JEFFREY A. STECK, ESQ.
                      (Chicago, Illinois)
22
                           Counsel for Pharmacia & Upjohn
23                         Company

24
                                Brian P. Gaffigan
25                              Registered Merit Reporter
```

```
1    APPEARANCES: (Continued)

2

3              ASHBY & GEDDES
               BY:  JOHN G. DAY, ESQ.
4
                   and
5
               SONNENSCHEIN NATH & ROSENTHAL, LLP
6              BY:  REID L. ASHINOFF, ESQ., and
                    MICHAEL S. GUGIG, ESQ.
7                   (New York, New York)

8                        Counsel for SICOR Inc. and SICOR
                         Pharmaceuticals Inc.
9

10

11

12

13

14

15                       - oOo -

16              P R O C E E D I N G S

17              (REPORTER'S NOTE:  The following telephone

18    conference was held in chambers, beginning at 10:30 a.m.)

19              THE COURT:  Hi, this is Judge Jordan.  Who do I

20    have on the line?

21              MR. PARRETT:  Good morning.  It's James Parrett

22    and I have on the line with me Joshua Rich and Jeff Steck.

23              MR. RICH:  On behalf of Pharmacia, Your Honor.

24              MR. PARRETT:  Yes.  Thank you.

25              THE COURT:  All right.
```

1          MR. DAY:  Good morning, Your Honor.  On behalf

2     of the defendants, you have John Day from Ashby & Geddes,

3     locally; Reid Ashinoff and Mike Gugig at the Sonnenschein

4     firm in New York.

5          MR. ASHINOFF:  Good morning, Your Honor.

6          THE COURT:  Good morning.

7          We've got several things to take up here today.

8     I'm going to deal with your two motions to compel.  We're

9     going to deal with the letters that I received over the last

10    couple weeks with respect to the contested Exhibit 106 the

11    defense wants to rely on.  I'm also going to talk to you

12    about the motion to bifurcate.  And we're going to start

13    with the motions to compel.  I'm sorry.  There is one other

14    thing on the agenda we need to deal with and that is the

15    scheduling of the Markman hearing.

16         So Pharmacia was the first to the table with the

17    motion to compel.  I'll give the floor to you.  Mr. Rich,

18    are you the one speaking on behalf of Pharmacia?

19         MR. RICH:  Yes, I am, Your Honor.  And thank you

20    very much.

21         Your Honor, this is a pretty straightforward

22    situation.  What has occurred generally is that SICOR has

23    argued that Marvin Samson, its Chief Executive Officer,

24    relied only upon the executive summary of the opinion of

25    counsel; that they received an oral advice, a very brief

4

1    oral advice from Wesley Fach, SICOR's general counsel.  And

2    they're perfectly entitled to make that argument but by the

3    same token, Your Honor, we're entitled to make the argument

4    that the other information in his possession that he

5    contends he didn't rely upon and the other information

6    that was available to him, the information that informed

7    Mr. Fach's conversations with him, that would undermine his

8    opinions, his reliance, are important, are relevant and,

9    as part of the totality of the circumstances, render his

10   reliance, if any, inappropriate.

11           THE COURT:  Well, let me ask Mr. Ashinoff a

12   question or two on this front.

13           And I assume you are speaking on this point for

14   SICOR; am I right, Mr. Ashinoff?

15           MR. ASHINOFF:  Yes, Your Honor.

16           THE COURT:  If I understand the argument you are

17   making, it's that you get to decide what the scope of the

18   privilege is by saying what Mr. Samson considered.  That's

19   your view of the appropriate contours of what you can keep

20   and what you have to reveal; is that correct?

21           MR. ASHINOFF:  Not exactly, Your Honor.

22           THE COURT:  Then straighten me out.

23           MR. ASHINOFF:  We make a distinction between

24   attorney-client privilege and attorney work product.

25           THE COURT:  Well, let's just deal with privilege

1    here, attorney-client privilege.  Am I right about your

2    position with respect to attorney-client privilege?

3                MR. ASHINOFF:  No.  With privilege, Your Honor,

4    we have waived of the privilege.  And we've produced what

5    Mr. Samson received.

6                THE COURT:  Okay.  And that's my question to

7    you.  When you say you produced what Mr. Samson received,

8    your view of the world is that Mr. Samson is the one who

9    decided to launch a product and so it's what he saw and only

10   what he saw that gets revealed; is that it?

11               MR. ASHINOFF:  It's what was provided to him and

12   to the company.  It's a little broader than the way you just

13   said it, Your Honor.  But I mean, for example, if they got

14   the opinion letter that we produced, and let's say they also

15   got another letter that said, by the way, everything in that

16   opinion letter is wrong, and he didn't see that, I wouldn't

17   be holding that back.  It seems to me once I have waived

18   privilege, I have to waive it with respect to everything

19   the company got from their outside patent opinion counsel

20   Brobeck.  So, no, I'm not making quite the delineation that

21   you're suggesting, Your Honor.

22               THE COURT:  Well, let me ask you then to

23   expressly rebut what I read in the opening brief from

24   Pharmacia.  They say that your position with them has been

25   that you've refused to produce documents based on the

1    assertion that if they were provided to SICOR officers and

2    employees other than Mr. Samson, they're not matters that

3    you have to reveal as within the scope of the waiver.  Is

4    that just an inaccurate statement by them?

5            MR. ASHINOFF:  Yes.  We produced whatever

6    Brobeck gave to the company that's relevant.  So, yes, that

7    is an inaccurate statement of our position.

8            THE COURT:  And that you have taken the position

9    that if it wasn't produced to Mr. Samson during the summer

10   2002, it wasn't within the scope of waiver.  Is that also

11   inaccurate or is that an accurate statement of your

12   position?

13           MR. ASHINOFF:  I'm sorry?

14           THE COURT:  They also assert that you have

15   refused to produce documents that were provided to

16   Mr. Samson at times other than the summer of 2002.  Is that

17   also an inaccurate statement of your position?

18           MR. ASHINOFF:  No, that's not inaccurate, but it

19   is happenstance because what was produced to the company and

20   provided by Brobeck and what was given to Mr. Samson we have

21   produced.  What was produced by Brobeck and provided to the

22   company generally about the validity of the patent we

23   produced.  We're not withholding that.

24               The distinction that we've made is fundamentally

25   a work product distinction in terms of a dialogue that the

7

1  in-house counsel had with in-house people about his work

2  product impressions and about litigation issues.

3          THE COURT:  So when you say --

4          MR. ASHINOFF:  That's the line we're drawing.

5          THE COURT:  And the line you are drawing is if

6  the person is in-house, that is, this is a fellow employee

7  of SICOR along with Mr. Samson but he had it not with

8  Mr. Samson, that that is work product and therefore not

9  reviewable; is that right?

10         MR. ASHINOFF:  No, Your Honor.  I don't believe

11 we withheld any communications from the Brobeck firm to the

12 company.

13         THE COURT:  You're missing my point.

14         MR. ASHINOFF:  I'm sorry.

15         THE COURT:  Your position is if it's not

16 Brobeck, it's work product.  In other words --

17         MR. ASHINOFF:  No.

18         THE COURT:  -- any discussions within SICOR

19 that SICOR employees might have had with their own in-house

20 lawyers, that that is work product?

21         MR. ASHINOFF:  No, sir.

22         THE COURT:  Okay.

23         MR. ASHINOFF:  No.  And we're prepared to offer

24 Mr. Fach as the deponent and have waived privilege with

25 respect to the advice he gave in-house to Mr. Samson about

1    the validity or invalidity of the patent.  We are not

2    withholding that at all.

3            THE COURT:  Well, maybe we're not on the same

4    page because I'm not limiting this to discussions with

5    Mr. Samson.  I'm talking about in-house lawyers at SICOR

6    talking to other SICOR employees about the validity or

7    invalidity of the patent or anything else remotely related

8    to the opinions of counsel.

9            MR. ASHINOFF:  We've waived with respect to

10   that, Your Honor.  We're not planning to withhold or limit

11   that questioning.  Anything that Mr. Samson said to people

12   in-house about the validity of the patent we have waived on,

13   that is of the attorney-client privilege waiver, as distinct

14   from what Mr. Fach may have said to people about the

15   likelihood of what may happen in the litigation.

16           THE COURT:  Okay.  Might have said to who?  Mr.

17   Fach might have said to who, sir?

18           MR. ASHINOFF:  Well, I think what they'll find

19   when they take Mr. Fach's deposition is he really didn't

20   have many conversations with many people about this.  And if

21   he had them, they can hear it.

22           THE COURT:  Yes.  Well --

23           MR. ASHINOFF:  We never asserted that that

24   is privileged.  That we have waived with respect to the

25   subject matter of the validity of the patent, including any

1    conversations Mr. Fach has with anybody in-house about the
2    validity of the patent.  I don't have any intention of
3    withholding that from them, and that's not the position
4    we took in our papers.
5              THE COURT:  All right.  Well, Mr. Rich,
6    Mr. Ashinoff is just telling you guys are dead wrong in
7    characterizing the arguments they've made in withholding
8    information.  So do you want to take that up?
9              MR. RICH:  Absolutely, Your Honor.  I wish I
10   could square his arguments with the information provided in
11   the privilege log.  And I think, first of all, this is a
12   newly announced position to us.  Second of all, I think if
13   you look at the documents that SICOR provided to Your Honor
14   in relation to the waiver of privilege issue, way back in
15   2005, they provided three exhibits, Exhibits A, B and C,
16   that they continue to withhold that were authored by Wes
17   Fach, who is in-house counsel.  And they're communications,
18   two of the three are communications to Marvin Samson, the
19   person who allegedly relied upon the opinion of counsel.
20   The third is to someone else at SICOR, Frank Becker.  It's
21   just not anything that can be squared with their privilege
22   log or their descriptions of documents.
23             THE COURT:  Let's ask Mr. Ashinoff about that.
24             MR. ASHINOFF:  Your Honor, those documents
25   are exactly what I was thinking about.  And Your Honor has

1    seen them.  Those documents go beyond any issue about the

2    validity of the patent and talk about -- and I don't want

3    to waive my privilege as to what they talk about.  My work

4    product privilege, that is.  Those documents contain

5    protected work product, and that's why we --

6            THE COURT:  How do you think that a

7    communication from Mr. Fach to Mr. Samson is not outside the

8    scope or how is it you think that is outside the scope?

9    You have really got me puzzled, Mr. Ashinoff.  And I'm not

10   trying to be obtuse.  Do your best to explain to me how,

11   when you've got a lawyer telling Mr. Samson this is what we

12   think about the position we've got with respect to that

13   patent, that that is not waived as a result of your wanting

14   to rely on advice of counsel in this matter?

15           MR. ASHINOFF:  I can do that.  And, Your Honor,

16   I would refer to our papers and I will do it now very

17   simply.  If Mr. Fach says to Mr. Samson we've got an

18   invalidity opinion from Brobeck and the opinion is -- and

19   let's do it hypothetically so this conversation isn't a

20   waiver.  Let's say hypothetically he says this opinion is

21   strong or this opinion is weak here and strong there.  All

22   of that is waived.

23           Let's say hypothetically Mr. Fach goes on and

24   says to him, you know, it's nice you have the opinion but in

25   a litigation, anything could happen and this or that, and

1  this is my view of what might happen in the litigation, and

2  this is my view of what a judge might think or a jury might

3  think.   That is protected work product, and that is our

4  position.   And that is the delineation we've made in our

5  papers.

6            MR. RICH:   Your Honor, this is Joshua Rich

7  again.   If I might take this from the hypothetical to the

8  practical to show that is not the line that has been drawn,

9  in terms of the redaction of documents at least.

10           If I could refer Your Honor to the page five of

11  the opening brief.   I'm not going to quote the language

12  because it certainly is confidential and we have been

13  accused of misconduct by merely citing the language that was

14  produced to us in this motion, but clearly at least part of

15  what has been redacted have been comments on the opinion

16  itself, not merely comments relating to validity but the

17  import of the opinion itself which would undermine reliance

18  upon the opinion.

19           THE COURT:   All right.

20           MR. ASHINOFF:   Your Honor, I think the best way

21  to do this; and as Your Honor said, this is best done on the

22  written record because of the importance and complexity; is

23  the Court looks at the in camera submissions we made, which

24  I know the Court at some point has -- although this stuff

25  gets old fast, but the reality is Your Honor has the key

1    documents that we believe are work product and we submitted

2    them with this short piece to the Court and the Court has

3    reviewed.  So I believe that the distinction we're making is

4    both legitimate, recognized in the law and reality based.

5         THE COURT:  And I have read them, Mr. Ashinoff.

6    If you're assuming we're having this discussion without my

7    having reviewed them, you're inaccurate in that assumption.

8         MR. ASHINOFF:  No, I'm not, sir.

9         THE COURT:  Okay.

10        MR. ASHINOFF:  It's just it's hard for me to

11   encapsulate where Mr. Rich talks about the documents and

12   this without having a specific document in front of us.  I

13   worry about the generalities of his assertion.

14        THE COURT:  Well, here is the bottom line on

15   this.  You've drawn it too narrowly, and indeed your effort

16   to withhold these documents that are attached is overruled.

17        I disagree with you, Mr. Ashinoff.  And, in

18   fact, I don't think anything that I said previously could

19   fairly be read in the manner that you folks have attempted

20   to read it, and it appears to be from your papers, which are

21   somewhat at odds with what you are saying on the phone here

22   today, that it's really only what the Brobeck people may

23   have said that is within the waiver.  There are things in

24   these memoranda which are explicitly, and in some instances

25   implicitly, in a way that cannot be mistaken, commenting

1    on opinions of counsel related to the positions that your

2    client intends to take.  And if you want to waive privilege

3    and say, oh, we are, in good faith reliance on these

4    opinions, you are waiving all of this, and you can't keep

5    this in your back pocket, and you've got to give it up.

6    You have to.  Now, that's after looking at it and

7    considering what it says, you've got to give it up.

8           Now, I'm not going to go through your document

9    and look and see if there is anything else in here that

10   might possibly be of a character that is redactable for some

11   reason.  But I can tell you the stuff you highlighted for me

12   I view as going to and affecting directly the quality of the

13   reliance on the opinion of counsel.

14          So I'm granting the motion to compel to the

15   extent you were reading it in any fashion that made a

16   distinction between outside or inside counsel in regards to

17   whether one could or couldn't rely on the opinions that were

18   being given.  You know, that just doesn't wash.  You want a

19   jury to hear and believe that your client was not willful in

20   the steps that it took because it relied in good faith on

21   information provided by counsel.  And you can sure do that.

22   The law allows you to do that.  What it doesn't allow you to

23   do is say that all this other stuff that the client knew

24   about, because its lawyers, whether inside or outside, were

25   telling them about things affecting the quality of that

14

1    advice, are things that you don't have to give up.  You do.

2            Now, looking at the language in these exhibits,

3    it's pretty obvious to me why you've made the motion you've

4    made to bifurcate.  And we might as well take that up right

5    now, too.

6            I'm granting the relief that SICOR has asked

7    for on bifurcation as to the presentation of this at trial.

8    And this is a first for me and is complicating how we're

9    going to have to handle this trial because I agree with the

10   defendants here that the language in these memos is of an

11   extraordinarily prejudicial nature and may result in a jury

12   making unfounded steps towards liability if it's presented

13   to them prematurely.

14           But I am not, I reiterate, bifurcating

15   discovery.  If you want to move forward on a willfulness

16   defense in this case, you will give them this stuff and

17   you've give it to them now.  Are we all squared away on

18   bifurcation?

19           MR. ASHINOFF:  Your Honor, I have a lingering

20   issue here, if I may for a moment.

21           THE COURT:  Sure.

22           MR. ASHINOFF:  To the extent Mr. Rich has

23   characterized what I was trying to do is separate the

24   outside advice from the inside advice, I again state that

25   was not what I was attempting to do.  Nor was I planning

1    not to have the in-house counsel testify about the patent

2    opinion or what he thought about the patent opinion.  And

3    I was not going to withhold that.  And that is a

4    mischaracterization of our position.

5              However, I do believe, Your Honor, that some

6    of what the in-house counsel had to say when it relates to

7    litigation as opposed to the validity of the opinion.  Let

8    me give a hypothetical, just to make my point.

9              Hypothetically, if the in-house counsel said,

10   you know, I think this is a very strong invalidity opinion

11   and I think Brobeck are the brightest lawyers in the world

12   and I think that they're right, but even so I think you have

13   only a 40 percent chance of winning the litigation because

14   the jury is never going to believe this, that latter part of

15   that is protected work product.  And as the memo has both

16   pieces, I believe we should be entitled to redact the

17   protected work product.

18             THE COURT:  Well, let's stop because I

19   understand your hypothetical and I'm just telling you I

20   disagree with you.  If it's communicated to the client, it's

21   an attorney-client issue.  It's no longer a work product

22   issue, somehow separated.  It is now a communication to the

23   client, which goes to the question of the wisdom or the

24   propriety or the strength of the opinion that is being

25   rendered.

1              Now, your hypothetical is, on the one hand, the

2    guy says "this is a brilliant opinion;" on the other hand,

3    he says "but I wouldn't rely on it" or "I think you've got

4    problems with it" or "this is your risk."  Look, that is too

5    fine a distinction to make.  You are trying to slice the

6    salami so thin, it's just absolutely transparent and it

7    won't work.

8              So I have read your submissions.  I heard

9    your arguments.  I looked at what you have submitted.  I

10   understand why it's troubling to you.  I'm telling you my

11   reading of it is this is information communicated to the

12   client that bears on the reliability, the wisdom, the sense

13   of going forward in the face of the opinion you got.  And

14   if you want to do that, you can do it.  But you are waiving

15   it.

16             Now, that's the decision.  It's informed.  It's

17   my best effort.  If it's wrong, you guys don't have a lot

18   of relief here except seeking mandamus, I guess, but I don't

19   think you are going to get anywhere with that.  So you ought

20   to just say, okay, we gave it our best shot.  Let's move on.

21             MR. ASHINOFF:  I understand, Your Honor.  And

22   in fact, the bifurcation relief obviously deals with the

23   greatest part of the practical problem that it presented

24   for us.

25             THE COURT:  And I'm agreeing with you.  You do

1    have a practical problem, and I'm helping you resolve it.

2    Now you guys are going to have to help me resolve how do we

3    address the practical realities of that when it comes to

4    dealing with the jury, but that's a discussion for another

5    day.  And I expect you folks to be talking about that in

6    good faith and with a higher degree of cooperation than has

7    been evidenced in this case to date.

8             You know, it could be that there has been a

9    great deal of cooperation that I don't see because the only

10   thing that bubbles up, of course, are the problems.  So I

11   don't mean to imply it's been nothing but nails and biting

12   the whole time because you guys could have been getting

13   along better than the numerous disputes would indicate.

14   But this is a point on which I really do need solid,

15   professional, thoughtful attorneys thinking with me about

16   how we're going to manage it at trial.  And we'll deal

17   with that another day.  But you all need to start thinking

18   about it and talking about it now, please.

19             MR. ASHINOFF:  Yes, sir.

20             THE COURT:  That handles Pharmacia's motion to

21   compel, or gives you guidance which ought to resolve it.  Am

22   I right about that, Mr. Rich?

23             MR. RICH:  I hope so.

24             THE COURT:  I hope so, too.

25             Mr. Ashinoff, I trust it does; correct?

1          MR. ASHINOFF:  We will accept the rulings and

2     we will go through all the documents and put them in piles

3     based on the rulings.  And I suspect most of them are going

4     over, if not all of them.

5          THE COURT:  Now let's turn to SICOR's motion

6     against Pharmacia.

7          And, Mr. Ashinoff, I'll give you the first crack

8     at this one.  This is yours.

9          MR. ASHINOFF:  Your Honor, I'm going to allow

10    my partner, Mr. Michael Gugig to address this.

11         THE COURT:  That's fine.  How do you say your

12    name?

13         MR. GUGIG:  It's Gugig, Your Honor.  G-U-G-I-G.

14    Mike is the first name.

15         THE COURT:  All right.  Go ahead, Mr. Gugig.

16         MR. GUGIG:  Thank you, Your Honor.  Very

17    briefly, I know you have been through the papers and seen

18    what happened here.  We had an extraordinarily difficult

19    time in terms of the privilege log that we received in the

20    first instance, receiving it piecemeal and ultimately having

21    it end up with 14,000 or so entries.  We cut those down as

22    best we could.

23         And I won't go through all the history except

24    to say that during the briefing process of this motion, we

25    continued to talk with the other side, we continued to try

1    to narrow the issues and, in fact, were successful in doing

2    that, bringing this to some 1,600 or 1,800 documents in

3    total down from an initial, I think it was 6,000.

4              The problem is that Pharmacia's privilege log

5    has really been a moving target since Day One. During the

6    course of the briefing, Pharmacia revised its privilege

7    log to such an extent as to make wholesale changes that

8    are impossible to square with what was originally on the

9    privilege log. And I point Your Honor to page four of our

10   reply brief which just gives three short examples of three

11   documents where the descriptions of the documents, the

12   dates of the documents, the authors, the recipients, the

13   bases of the privilege, everything has changed entirely,

14   100 percent. We did the best that we could to cut down

15   and make cuts based on sort of overarching categories. The

16   problem with this kind of moving target privilege log is

17   that we can't pin it down ultimately and figure out what

18   it is that needs to be challenged. And I do think that is

19   terribly prejudicial to us.

20             Having said that, on the specific issues that

21   we challenged, there was back and forth. If you note on

22   their privilege log, they designate both attorneys and

23   patent agents with the denomination of ATTY, presumably

24   standing for attorney. We asked Pharmacia on several

25   occasions to identify who are the attorneys and who are the

1    patent agents.

2            A November 2005 letter is the only time they

3    attempted to distinguish between those two categories of

4    individuals.  And we took them at their word.  Whatever it

5    said on that letter, we just accepted that these folks were

6    attorneys.  So the problem is continuing on their log, on

7    the contested documents that are still at issue, there are

8    thousands, I think 1,600-or-so log entries that do not have

9    anybody on that list as either an author or a recipient.

10   And we have been refused in our attempts to distinguish

11   between patent agent and attorneys.

12           Now, Pharmacia says in its opposition brief that

13   British counsel was supervising all of the patent agents

14   worldwide in their patent prosecution efforts but there is

15   no affidavit saying that.

16           THE COURT:  Yes.  Well, why don't we just get

17   that handled right now.

18           Mr. Rich.

19           MR. RICH:  Yes, Your Honor.

20           THE COURT:  I did notice that there on page two

21   of the reply brief from SICOR, they throw that charge at you

22   and Mr. Gugig has just repeated it here now.  What is your

23   response to that, that you are asking the Court, on attorney

24   argument, without a basis in fact, to uphold attorney-client

25   privilege?

1      MR. RICH:  Your Honor, it's interesting because

2   that sort of argument would undermine any privilege log

3   whatsoever.  I can tell you as an Officer of the Court, as

4   someone who has been through these documents, as someone who

5   has talked to the client and talked to Jeffrey Wood.  I

6   can name the specific individual at JA Kemp & Co. who was

7   supervising worldwide prosecution, that that was his role.

8      THE COURT:  All right.  Now, let me ask this

9   question of Mr. Gugig.  Is it purely a formality at this

10   point to get an affidavit from Mr. Wood?  Because if that is

11   your point that, gee, they weren't really supervising, if I

12   have Mr. Rich saying they were, Mr. Wood said he was, does

13   that resolve it?

14      MR. GUGIG:  I don't think it does, Your Honor.

15   I do think there are issues with the extent of Mr. Wood's

16   purported supervision of these folks.  If we had an

17   affidavit from Mr. Wood, presumably we would be entitled

18   to take his deposition to delve further into those

19   relationships.

20      With respect with Mr. Rich, it has never been my

21   understanding that a lawyer can say I promise as an Officer

22   of the Court that these factual assertions in this case are

23   true and have the Court take them with the source of

24   evidence.  So I think the answer to the question, Your

25   Honor, is no.

1          THE COURT:  And you think that if Mr. Wood

2   were to step forward with an affidavit saying it was my

3   responsibility to take the point worldwide for the

4   prosecution of intellectual property rights, acquisition of

5   patent rights, and I had folks working under my direction

6   in several countries to do that, that then you would need a

7   deposition of this guy?

8          MR. GUGIG:  It's possible we would.  We

9   might not need it.  But I have to say, Your Honor, it is

10  significant to us that in opposition to our motion,

11  Pharmacia was able to submit affidavits from attorneys in,

12  I think, eight or nine or ten foreign countries; but with

13  respect to the one lawyer who they say was supervising

14  worldwide patent prosecution and using that as the basis to

15  assert a privilege over people that they have not identified

16  in terms of status, whether patent agent or attorney or not,

17  I think speaks volumes, and it is suspicious, and I suspect

18  that I would ultimately want to take a deposition.

19          THE COURT:  And did it --

20          MR. GUGIG:  I am not taking that position now.

21          MR. ASHINOFF:  Your Honor?

22          THE COURT:  And did anybody have a problem with

23  the notion that the discovery was cut off in this case?  Did

24  we extend it or am I correct that it has passed?

25          MR. ASHINOFF:  Your Honor, with respect to the

1    discovery cutoff, the problem we have is there were a number

2    of depositions on both sides that could not be taken until

3    these rulings are made and additional documents, if any, are

4    exchanged.  So there are about seven or eight depositions,

5    including a number in Italy, that could not occur until

6    these rulings and, ultimately, any further exchange of

7    material.  So while the discovery cutoff has come and

8    gone, both sides have been in agreement and under the

9    understanding that obviously none of those depositions

10   could go forward.

11              THE COURT:  Well, we'll talk about that in a

12   minute.

13              Mr. Rich.

14              MR. RICH:  Your Honor, if I could disabuse some

15   of the suspicion that Mr. Gugig has.  I think this is a

16   "fool me once, shame on you; fool me twice, shame on me"

17   situation in two ways.

18              First, we clearly expressed to them.  And I

19   can say I discussed it at some length with Mr. Gugig and

20   Mr. Ashinoff's partner, Jordan Sigale about what the papers

21   would include.  And there was no complaining, no concern,

22   nothing expressed in terms of need to show that -- he was

23   very accepting that Mr. Wood would be someone who was

24   directing this.  That was not hidden at all during this

25   process.  At no point did SICOR complain or suggest that

1    they didn't believe that.

2              However, in discussing a briefing schedule, it

3    was discussed expressly that the parties would be submitting

4    declarations to prove foreign law.  And that arose in part

5    out of something that SICOR filed with regard to the letters

6    rogatory, in the reply memorandum on the letters rogatory.

7    SICOR argued that Pharmacia's submissions in opposition was

8    insufficient because there weren't declarations to establish

9    foreign law.  And so we had both talked about timing needed

10   to obtain these declarations.

11             THE COURT:  Well, here is the short of it.  You

12   know what?  If they think that they need something in the

13   way of an affidavit from Mr. Wood, produce it.  And then if

14   they have something they want to tact on it, maybe I'll hear

15   them.

16             I will say this.  Most of this feels like a

17   sideshow to me.  The vast majority of this particular

18   dispute we're talking about sounds like lawyers just kind of

19   picking at each other on stuff that could easily be resolved

20   and indeed most of it sounds like it has been resolved.

21             To the extent I need to go through here and make

22   rulings, I guess I will.  I'll say that the assertion that

23   there is no attorney listed as an author or recipient looks

24   like it's coming down to, in some instances, a dispute about

25   whether people were identified in the privilege log had also

1    been formerly or previously identified by Pharmacia.  And

2    the answer to that is I don't care whether they figured it

3    out early or they figured it out late.  If these are people

4    who are attorneys and they're on the log, it's good enough.

5           If it comes down to a question of whether

6    somebody has to identify the litigation, I hear Pharmacia

7    saying they did it.  Now, Mr. Gugig, did they not do it?  I

8    mean they may not have done it when you wanted them to, but

9    is it done now?

10           MR. GUGIG:  Not in all cases, Your Honor, and

11   one of the exhibits to our reply brief lists it.  And I will

12   find that for you in a moment.

13           THE COURT:  Okay.  While you are looking for it,

14   Mr. Rich, you say you did it, they say you didn't.  I mean

15   this is not a complicated issue.  Either you did or you

16   didn't.

17           MR. RICH:  Your Honor, I think again this is one

18   of those form over substance issues.  I think I can allay

19   some of the concerns they stated as not being work product

20   documents that talk about the drafting of a license

21   agreement.  Well, the drafting of a license agreement was

22   in settlement of litigation.

23           THE COURT:  Well, hold on.  I don't want to

24   get taken off the point here.  You say there is no law out

25   there that says we have to identify the litigation it was in

1  anticipation of; and you also make a point, a pretty telling

2  one, that they didn't do it either until the day before they

3  submitted their motion in this regard.  And I guess I'd have

4  to agree with you, that that makes their complaining sound a

5  little hollow.

6        But if there is a challenge and you want to

7  challenge them on the point and you want to challenge them

8  on the point, I guess you guys have made this bed together

9  and I'll have you lie in it.  I won't have you saying that

10  is attorney work product without saying what it was with

11  regard to.  You will need to say.  I mean if you really

12  were settling litigation, you can say there was anticipated

13  litigation, it never materialized but it was between these

14  parties.  Just tell them.  Get it done.

15        MR. RICH:  Fair enough, Your Honor.  I actually

16  was assuming my first argument wouldn't succeed.  I truly

17  believe that you don't need to identify specific litigation

18  and we did not argue that SICOR was required to.  We did

19  tell them that they were arguing something in their motion

20  that was inconsistent with their privilege log.

21        THE COURT:  Yes.

22        MR. RICH:  But I think this is one of those

23  things where the parties sitting down and talking, I think

24  if we go through on a document-by-document basis, there is

25  no question, given our brief review of all the documents

1    after we received their motion.

2          THE COURT:  Now, there is a question also about

3    whether documents were filed in a public forum.  Obviously,

4    if that really happened, I'd read your papers as agreeing,

5    yes, of course, we can't claim privilege for something we

6    filed but that you are saying the premise is wrong.

7          So, Mr. Gugig, what is the foundation for your

8    assertion that, oh, yes, they're claiming privilege as to

9    stuff they actually filed with public bodies in the face of

10   they're saying that is just not so?

11         MR. GUGIG:  The only thing I can say, Your

12   Honor, is that the descriptions we are challenging make it

13   reasonable for us to believe that this was a publicly filed

14   document.  There are documents included in, and I believe

15   we're only talking about 28-or-27 documents at this point,

16   that are of concern on this point.  One of them was just

17   described as form, and the recipient, the Patent Office

18   indicates to me it was filed.  Other things are verbatim

19   translations of Office Actions.  It seems to me that is

20   public domain.  That is not privilege material.

21         THE COURT:  All right.  Well, Mr. Rich, maybe

22   you've got some work to do on your privilege log.  If the

23   aim of SICOR here was to say their privilege log was poorly

24   done, therefore, strip them of all privileges, I'm just not

25   going there.  We got enough to do in this case without

1    having this turn into a fight over the quality of privilege

2    logs.

3           So I hope I have given enough guidance and

4    input here for you folks to work this out without having

5    to deal with your issues again on your privilege logs.  If

6    we do have to deal with them, I guess we do.  But I would

7    really, really strongly suggest that nobody bring me any-

8    thing in this regard unless you have gone to the Nth degree

9    to get things worked out.  Because we're at the end of

10   the game now and it's time to be getting ready for case

11   dispositive motions and for a trial after that if the case

12   doesn't go away on case dispositive motions.

13           MR. GUGIG:  Your Honor, it's Mike Gugig.  May I

14   just interject one comment?  And I just want to clarify

15   something that you said early on in making these rulings.

16           I am not clear whether you have instructed

17   Pharmacia to distinguish between patent agent and patent

18   attorneys.  On their privilege log now they do use the

19   designation "attorney" to signify or to denominate both

20   statuses.  The one request I would make is that they

21   distinguish between those statuses and tell us if somebody

22   is actually an attorney or if somebody is a patent agent.

23           THE COURT:  Mr. Rich?

24           MR. RICH:  Your Honor, like sitting down and

25   speaking with Mr. Gugig about all the other concerns he has,

1  I have no problem with that. I'll ruin the next week-or-so

2  for Mr. Steck sitting here with me and he can go through the

3  log and identify who is an attorney and who is an agent; and

4  I think if that is what resolves the concern, I don't think

5  that is a problem at all.

6          THE COURT: All right. It sounds like you are

7  on the same page.

8          MR. RICH: With the one caveat, of course, there

9  are countries where there are not -- they don't fall within

10  these strict distinctions and attorneys don't prosecute and

11  agents -- you know, there are different terms for roles and

12  they're not one or the other.

13          THE COURT: Well, give them the best that you

14  can. And then I'm in earnest about saying there is enough

15  to fight about here so that mounting discovery disputes and

16  thinking that if you can only get your hands on that one

17  obscure document the whole case will shift, I just don't

18  think that is really productive at this point. So fight

19  your fights, get it done, but I'd prefer not to hear from

20  you with discovery disputes since we're at a stage of the

21  case where we're all supposed to be focusing on other

22  things.

23          Now, I said we would speak in a moment about

24  how you are going to deal with other matters. If you've

25  got some production to do or some revising to do of

1    privilege logs on both sides and remaining depositions,

2    what was your plan for getting that done?  Recognizing,

3    as Mr. Ashinoff has already put on the record, that there

4    was a limited amount that you could do until we spoke,

5    all of us, together, had you thought about how you would

6    proceed to get these things done now?

7              MR. ASHINOFF:  Your Honor, speaking from our

8    point of view and contemplating this, I would like to think

9    that will not take more thank a couple of weeks for Mr. Rich

10   and Mr. Gugig to either work everything out or ask to tee up

11   a brief phone call if they can't on whatever remains there.

12             We then need to get the Italian depositions

13   scheduled with the Special Referee.  I think realistically

14   that April 28th date for dispositive motions and claim

15   construction briefs needs to have some relief because of

16   this and because frankly both on claim construction we need

17   the inventors and on the inequitable conduct counterclaim,

18   which the Court recently amended and allowed in, we need the

19   inventors.  And we talked about having to take the inventors

20   before you let us take the prosecuting attorneys.

21             THE COURT:  All right.

22             MR. ASHINOFF:  We need, at the minimum, I think,

23   in all honesty, a month to six weeks relief from the claim

24   construction filing dates and summary judgments filing

25   dates to get the privilege documents issues worked out, the

1    documents reviewed, the depositions scheduled and taken and

2    the briefs and claim construction positions written.

3              THE COURT:  Mr. Rich.

4              MR. RICH:  Your Honor, I would suggest that the

5    issues are severable in that the Federal Circuit has made it

6    quite clear that inventor testimony is irrelevant to the

7    question of claim construction.  And I think all the other

8    issues that really would be potentially resolved on summary

9    judgment can be resolved according to the current schedule,

10   other than, of course, inequitable conduct.  I think there

11   is a strong likelihood that inequitable conduct would be

12   narrowed, if not disappear entirely by summary judgment.

13   But, of course, filing a summary judgment motion before

14   SICOR has any opportunity to take discovery relevant to it

15   would be unfair.

16             THE COURT:  Well --

17             MR. RICH:  I would suggest two separate tracks,

18   maintaining essentially the same track for Markman and other

19   summary judgment issues.

20             THE COURT:  No.  Let me just cut you off.  That

21   is not happening.

22             MR. RICH:  Okay, Your Honor.

23             THE COURT:  I'm going to give four weeks of an

24   extension.  That's it.  And I would not suggest you folks

25   wait around to start scheduling.  I heard Mr. Ashinoff's

1    run-down include, well, we'll let these guys work stuff out

2    and then we'll schedule this.  No, you start your scheduling

3    now and start working stuff out now.

4              MR. ASHINOFF:  That was our intention, Your

5    Honor.  If I was heard to say we're going to wait to start

6    scheduling, that I misspoke.  Certainly, that wasn't my

7    thought.  We've got to schedule these things way in advance.

8              THE COURT:  Right.  And with all due respect to

9    the other things you guys have to do, no doubt everybody is

10   very busy, that should begin immediately.  So why don't you

11   folks go ahead and start working that angle.

12             I will ask you to provide to me a stipulation

13   and order that moves the case dispositive date four weeks.

14   Let me give you a date certain here.

15             (Pause.)

16             THE COURT:  May 30th is the date.  Tuesday,

17   May 30th is the date that I'll expect your case dispositives

18   and Markman brief, opening briefs to come in.  And then you

19   need to be aware that the briefing on this is going to --

20   you know, there are just not going to be any extensions

21   on briefing; okay?  Get your material in because now

22   we're cutting into my decision time and I want to give your

23   motions the due consideration that I know you folks want

24   me to give them.  So I'll look forward to getting that

25   stip from you folks; all right?

1          MR. RICH:  Your Honor?

2          THE COURT:  Yes.

3          MR. RICH:  If I could just ask a practical

4  question.  How long would you like between the filing and

5  the reply in support of the motions for summary judgment

6  and the Markman hearing and summary judgment argument?

7          THE COURT:  Well, we're going to have to come up

8  with that date for you.  Having moved these things back, I

9  think it's fair to say that I'm going to want to have the

10 hearing with you guys some time in the very end of June or

11 in early July.  I'm not going to want more than about

12 four weeks to elapse.  And I'll have to have you folks

13 communicate with Ms. Stein in my office so that we can peg

14 that date.  But don't let that hold up your coming up with

15 a stip -- okay? -- on the other dates.

16         MR. ASHINOFF:  Okay, Your Honor.  And we'll

17 communicate with Ms. Stein what you said about dates that

18 work for everybody?

19         THE COURT:  Yes.

20         MR. ASHINOFF:  And for the Court?

21         THE COURT:  Yes, for the summary judgment

22 argument and Markman discussion.

23         MR. ASHINOFF:  Yes, sir.

24         THE COURT:  And you should be planning and

25 pegging.  I'm giving you sort of the very end of May here.

1    You should be thinking about a month off of that.

2          Let's talk about this letter regarding

3    Defendant's Exhibit 106.  And we can make this pretty quick,

4    I think.

5          The defense has not had a chance to respond to

6    this yet.  And I'm going to give you a chance to respond to

7    it.  I want you to respond; and I'll give you a letter of

8    comparable length, three single-spaced pages to make your

9    rebuttal; and I would like to have that no later than

10   Wednesday of next week.  And then you can expect a ruling

11   from me.  If I have to get you on the phone to do it, we

12   will, or I might just give you a short order.

13          I will say this.  You should pay particular

14   attention to the Rule 37 argument that is made because

15   I'm taking it seriously.  So you shouldn't focus on your

16   attorney-client issues to the exclusion of dealing with

17   the sanction issue considering when this thing surfaced.

18          Now, that dealt with the Markman scheduling,

19   too, and I think that covered the matters that you needed

20   to hear from me about.

21          Is there anything about what we've talked about

22   today that you still need some clarification on or are

23   there other issues that you would like to surface now that

24   we could profitably discuss?  Mr. Rich?

25          MR. RICH:  Off the top of my head, I can't think

1    of anything, Your Honor.

2                    THE COURT:  Mr. Ashinoff?

3                    MR. ASHINOFF:  Your Honor, I think you've been

4    very clear in the guidance.  The only issue that I can even

5    foresee down the road is not anything you addressed today

6    but the fact that we have asked to take the depositions of

7    the prosecuting attorneys.  You told us on the inequitable

8    conduct claims, I think that is warranted.  You said we have

9    to take the inventors first.  We will do that.  But the

10   question is, can we assume that having, with the new amended

11   counterclaim plus the need to take the inventors, that we

12   can proceed to also anticipate and schedule the two

13   prosecuting attorneys for their depositions toward the end

14   of the discovery schedule here to make sure we have it in

15   time?

16                   THE COURT:  Well, here is the short answer.

17   It's probably prudent to have people ready to do it.  That

18   says nothing, I emphasize strongly, about whether you are

19   going to get to do that or not.  Because I think, if I'm

20   recalling our conversation correctly on this point, that I

21   tried to convey to you before that I expect everybody to

22   be looking to see if there isn't a way to address this

23   without dealing with deposing prosecuting attorneys.  And

24   I reemphasize that.  So nobody, hearing me say yes, it's

25   prudent to schedule, should think I'm favoring allowing

1    those things to happen.  I'm making no further statement on

2    that than what I have already put on the record.  But from a

3    pure matter of scheduling, you ought to be scheduling so

4    that we're not dealing with a fight down the road.

5              MR. ASHINOFF:  Okay.

6              THE COURT:  All right.  Thanks for your time

7    today.

8              (The attorneys respond, "Thank you, Your

9    Honor.")

10             (Telephone conference ends at 11:27 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**0**

**04-833** [1] - 1:9

**1**

**1,600** [1] - 19:2
**1,600-or-so** [1] - 20:8
**1,800** [1] - 19:2
**100** [1] - 19:14
**106** [2] - 3:10, 34:3
**10:30** [1] - 1:12, 2:18
**11:27** [1] - 36:10
**14,000** [1] - 18:21

**2**

**2002** [2] - 6:10, 6:16
**2005** [2] - 9:15, 20:2
**2006** [1] - 1:12
**28-or-27** [1] - 27:15
**28th** [1] - 30:14

**3**

**30** [1] - 1:12
**30th** [2] - 32:16, 32:17
**37** [1] - 34:14

**4**

**40** [1] - 15:13

**6**

**6,000** [1] - 19:3

**A**

**a.m** [3] - 1:12, 2:18, 36:10
**able** [1] - 22:11
**Absolutely** [1] - 9:9
**absolutely** [1] - 16:6
**accept** [1] - 18:1
**accepted** [1] - 20:5
**accepting** [1] - 23:23
**according** [1] - 31:9
**accurate** [1] - 6:11
**accused** [1] - 11:13
**acquisition** [1] - 22:4
**ACTION** [1] - 1:4
**Actions** [1] - 27:19
**additional** [1] - 23:3
**address** [3] - 17:3, 18:10, 35:22
**addressed** [1] - 35:5
**advance** [1] - 32:7
**advice** [7] - 3:25, 4:1,

7:25, 10:14, 14:1, 14:24
**affecting** [2] - 13:12, 13:25
**affidavit** [5] - 20:15, 21:10, 21:17, 22:2, 24:13
**affidavits** [1] - 22:11
**agenda** [1] - 3:14
**agent** [5] - 20:11, 22:16, 28:17, 28:22, 29:3
**agents** [4] - 19:23, 20:1, 20:13, 29:11
**agree** [2] - 14:9, 26:4
**agreeing** [2] - 16:25, 27:4
**agreement** [3] - 23:8, 25:21
**ahead** [2] - 18:15, 32:11
**aim** [1] - 27:23
**allay** [1] - 25:18
**allegedly** [1] - 9:19
**allow** [2] - 13:22, 18:9
**allowed** [1] - 30:18
**allowing** [1] - 35:25
**allows** [1] - 13:22
**amended** [2] - 30:18, 35:10
**amount** [1] - 30:4
**AND** [1] - 1:2
**angle** [1] - 32:11
**announced** [1] - 9:12
**answer** [3] - 21:24, 25:2, 35:16
**anticipate** [1] - 35:12
**anticipated** [1] - 26:12
**anticipation** [1] - 26:1
**APPEARANCES** [2] - 1:16, 2:1
**appropriate** [1] - 4:19
**April** [1] - 30:14
**argue** [1] - 26:18
**argued** [2] - 3:23, 24:7
**arguing** [1] - 26:19
**argument** [9] - 4:2, 4:3, 4:16, 20:24, 21:2, 26:16, 33:6, 33:22, 34:14
**arguments** [3] - 9:7, 9:10, 16:9
**arose** [1] - 24:4
**ARSHT** [1] - 1:17
**ASHBY** [1] - 2:3
**Ashby** [1] - 3:2
**ASHINOFF** [40] - 2:6, 3:5, 4:15, 4:21, 4:23, 5:3, 5:11, 6:5, 6:13, 6:18, 7:4, 7:10, 7:14,

7:17, 7:21, 7:23, 8:9, 8:18, 8:23, 9:24, 10:15, 11:20, 12:8, 12:10, 14:19, 14:22, 16:21, 17:19, 18:1, 18:9, 22:21, 22:25, 30:7, 30:22, 32:4, 33:16, 33:20, 33:23, 35:3, 36:5
**Ashinoff** [12] - 3:3, 4:11, 4:14, 9:6, 9:23, 10:9, 12:5, 12:17, 17:25, 18:7, 30:3, 35:2
**Ashinoff's** [2] - 23:20, 31:25
**assert** [2] - 6:14, 22:15
**asserted** [1] - 8:23
**assertion** [4] - 6:1, 12:13, 14:22, 27:8
**assertions** [1] - 21:22
**assume** [2] - 4:13, 35:10
**assuming** [2] - 12:6, 26:16
**assumption** [1] - 12:7
**attached** [1] - 12:16
**attempted** [2] - 12:19, 20:3
**attempting** [1] - 14:25
**attempts** [1] - 20:10
**attention** [1] - 34:14
**attorney** [16] - 4:24, 5:1, 5:2, 8:13, 15:21, 19:24, 20:23, 20:24, 22:16, 24:23, 26:10, 28:19, 28:22, 29:3, 34:16
**attorney-client** [7] - 4:24, 5:1, 5:2, 8:13, 15:21, 20:24, 34:16
**attorneys** [14] - 17:15, 19:22, 19:25, 20:6, 20:11, 22:11, 25:4, 28:18, 29:10, 30:20, 35:7, 35:13, 35:23, 36:8
**ATTY** [1] - 19:23
**author** [2] - 20:9, 24:23
**authored** [1] - 9:16
**authors** [1] - 19:12
**available** [1] - 4:6
**aware** [1] - 32:19

**B**

**based** [4] - 5:25, 12:4, 18:3, 19:15
**bases** [1] - 19:13

**basis** [3] - 20:24, 22:14, 26:24
**bears** [1] - 16:12
**Becker** [1] - 9:20
**bed** [1] - 26:8
**BEFORE** [1] - 1:14
**begin** [1] - 32:10
**beginning** [1] - 2:18
**behalf** [3] - 2:23, 3:1, 3:18
**BERGHOFF** [1] - 1:20
**best** [8] - 10:10, 11:20, 11:21, 16:17, 16:20, 18:22, 19:14, 29:13
**better** [1] - 17:13
**between** [8] - 4:23, 13:16, 20:3, 20:11, 26:13, 28:17, 28:21, 33:4
**beyond** [1] - 10:1
**bifurcate** [2] - 3:12, 14:4
**bifurcating** [1] - 14:14
**bifurcation** [3] - 14:7, 14:18, 16:22
**biting** [1] - 17:11
**bodies** [1] - 27:9
**BOEHNEN** [1] - 1:20
**bottom** [1] - 12:14
**Brian** [1] - 1:24
**brief** [10] - 3:25, 5:23, 11:11, 19:10, 20:12, 20:21, 25:11, 26:25, 30:11, 32:18
**briefing** [5] - 18:24, 19:6, 24:2, 32:19, 32:21
**briefly** [1] - 18:17
**briefs** [3] - 30:15, 31:2, 32:18
**brightest** [1] - 15:11
**brilliant** [1] - 16:2
**bring** [1] - 28:7
**bringing** [1] - 19:2
**British** [1] - 20:13
**broader** [1] - 5:12
**Brobeck** [9] - 5:20, 6:6, 6:20, 6:21, 7:11, 7:16, 10:18, 12:22, 15:11
**bubbles** [1] - 17:10
**busy** [1] - 32:10
**BY** [4] - 1:18, 1:20, 2:3, 2:6

**C**

**camera** [1] - 11:23
**cannot** [1] - 12:25

**care** [1] - 25:2
**case** [12] - 14:16, 17:7, 21:22, 22:23, 27:25, 28:10, 28:11, 28:12, 29:17, 29:21, 32:13, 32:17
**cases** [1] - 25:10
**categories** [2] - 19:15, 20:3
**caveat** [1] - 29:8
**certain** [1] - 32:14
**certainly** [1] - 11:12
**Certainly** [1] - 32:6
**challenge** [3] - 26:6, 26:7
**challenged** [2] - 19:18, 19:21
**challenging** [1] - 27:12
**chambers** [1] - 2:18
**chance** [3] - 15:13, 34:5, 34:6
**changed** [1] - 19:13
**changes** [1] - 19:7
**character** [1] - 13:10
**characterized** [1] - 14:23
**characterizing** [1] - 9:7
**charge** [1] - 20:21
**Chicago** [1] - 1:21
**Chief** [1] - 3:23
**Circuit** [1] - 31:5
**circumstances** [1] - 4:9
**citing** [1] - 11:13
**CIVIL** [1] - 1:4
**claim** [6] - 27:5, 30:14, 30:16, 30:23, 31:2, 31:7
**Claimants** [1] - 1:10
**claiming** [1] - 27:8
**claims** [1] - 35:8
**clarification** [1] - 34:22
**clarify** [1] - 28:14
**clear** [3] - 28:16, 31:6, 35:4
**clearly** [2] - 11:14, 23:18
**client** [14] - 4:24, 5:1, 5:2, 8:13, 13:2, 13:19, 13:23, 15:20, 15:21, 15:23, 16:12, 20:24, 21:5, 34:16
**Co** [1] - 21:6
**coming** [2] - 24:24, 33:14
**comment** [1] - 28:14
**commenting** [1] -

12:25
comments [2] - 11:15, 11:16
communicate [2] - 33:13, 33:17
communicated [2] - 15:20, 16:11
communication [2] - 10:7, 15:22
communications [3] - 7:11, 9:17, 9:18
Company [1] - 1:23
COMPANY [1] - 1:4
company [6] - 5:12, 5:19, 6:6, 6:19, 6:22, 7:12
comparable [1] - 34:8
compel [5] - 3:8, 3:13, 3:17, 13:14, 17:21
complain [1] - 23:25
complaining [2] - 23:21, 26:4
complexity [1] - 11:22
complicated [1] - 25:15
complicating [1] - 14:8
concern [3] - 23:21, 27:16, 29:4
concerns [2] - 25:19, 28:25
conduct [4] - 30:17, 31:10, 31:11, 35:8
conference [2] - 2:18, 36:10
CONFERENCE [1] - 1:12
confidential [1] - 11:12
consideration [1] - 32:23
considered [1] - 4:18
considering [2] - 13:7, 34:17
construction [5] - 30:15, 30:16, 30:24, 31:2, 31:7
contain [1] - 10:4
contemplating [1] - 30:8
contends [1] - 4:5
contested [2] - 3:10, 20:7
continue [1] - 9:16
continued [2] - 18:25
Continued [1] - 2:1
continuing [1] - 20:6
contours [1] - 4:19
conversation [2] - 10:19, 35:20

conversations [3] - 4:7, 8:20, 9:1
convey [1] - 35:21
cooperation [2] - 17:6, 17:9
correct [3] - 4:20, 17:25, 22:24
correctly [1] - 35:20
counsel [16] - 3:25, 4:1, 5:19, 7:1, 8:8, 9:17, 9:19, 10:14, 13:1, 13:13, 13:16, 13:21, 15:1, 15:6, 15:9, 20:13
Counsel [2] - 1:22, 2:8
Counter [2] - 1:6, 1:10
Counter-Claimants [1] - 1:10
Counter-defendant [1] - 1:6
counterclaim [2] - 30:17, 35:11
countries [3] - 22:6, 22:12, 29:9
couple [2] - 3:10, 30:9
course [6] - 17:10, 19:6, 27:5, 29:8, 31:10, 31:13
COURT [67] - 1:1, 2:19, 2:25, 3:6, 4:11, 4:16, 4:22, 4:25, 5:6, 5:22, 6:8, 6:14, 7:3, 7:5, 7:13, 7:15, 7:18, 7:22, 8:3, 8:16, 8:22, 9:5, 9:23, 10:6, 11:19, 12:5, 12:9, 12:14, 14:21, 15:18, 16:25, 17:20, 17:24, 18:5, 18:11, 18:15, 20:16, 20:20, 21:8, 22:1, 22:19, 22:22, 23:11, 24:11, 25:13, 25:23, 26:21, 27:2, 27:21, 28:23, 29:6, 29:13, 30:21, 31:3, 31:16, 31:20, 31:23, 32:8, 32:16, 33:2, 33:7, 33:19, 33:21, 33:24, 35:2, 35:16, 36:6
Court [10] - 11:23, 11:24, 12:2, 20:23, 21:3, 21:22, 21:23, 30:18, 33:20
covered [1] - 34:19
crack [1] - 18:7
current [1] - 31:9
cut [4] - 18:21, 19:14, 22:23, 31:20
cutoff [2] - 23:1, 23:7

cuts [1] - 19:15
cutting [1] - 32:22

D

date [8] - 17:7, 30:14, 32:13, 32:14, 32:16, 32:17, 33:8, 33:14
dates [5] - 19:12, 30:24, 30:25, 33:15, 33:17
DAY [2] - 2:3, 3:1
dead [1] - 9:6
deal [9] - 3:8, 3:9, 3:14, 4:25, 17:9, 17:16, 28:5, 28:6, 29:24
dealing [4] - 17:4, 34:16, 35:23, 36:4
deals [1] - 16:22
dealt [1] - 34:18
decide [1] - 4:17
decided [1] - 5:9
decision [2] - 16:16, 32:22
declarations [3] - 24:4, 24:8, 24:10
defendant [1] - 1:6
Defendant's [1] - 34:3
Defendants [1] - 1:9
defendants [2] - 3:2, 14:10
defense [3] - 3:11, 14:16, 34:5
degree [2] - 17:6, 28:8
DELAWARE [1] - 1:2
Delaware [1] - 1:11
delineation [2] - 5:20, 11:4
delve [1] - 21:18
denominate [1] - 28:19
denomination [1] - 19:23
deponent [1] - 7:24
deposing [1] - 35:23
deposition [4] - 8:19, 21:18, 22:7, 22:18
depositions [8] - 23:2, 23:4, 23:9, 30:1, 30:12, 31:1, 35:6, 35:13
described [1] - 27:17
descriptions [3] - 9:22, 19:11, 27:12
designate [1] - 19:22
designation [1] - 28:19
dialogue [1] - 6:25

different [1] - 29:11
difficult [1] - 18:18
directing [1] - 23:24
direction [1] - 22:5
directly [1] - 13:12
disabuse [1] - 23:14
disagree [2] - 12:17, 15:20
disappear [1] - 31:12
discovery [8] - 14:15, 22:23, 23:1, 23:7, 29:15, 29:20, 31:14, 35:14
discuss [1] - 34:24
discussed [2] - 23:19, 24:3
discussing [1] - 24:2
discussion [3] - 12:6, 17:4, 33:22
discussions [2] - 7:18, 8:4
dispositive [4] - 28:11, 28:12, 30:14, 32:13
dispositives [1] - 32:17
dispute [2] - 24:18, 24:24
disputes [3] - 17:13, 29:15, 29:20
distinct [1] - 8:13
distinction [6] - 4:23, 6:24, 6:25, 12:3, 13:16, 16:5
distinctions [1] - 29:10
distinguish [4] - 20:3, 20:10, 28:17, 28:21
DISTRICT [2] - 1:1, 1:2
document [6] - 12:12, 13:8, 26:24, 27:14, 29:17
document-by-document [1] - 26:24
documents [26] - 5:25, 6:15, 9:13, 9:22, 9:24, 10:1, 10:4, 11:9, 12:1, 12:11, 12:16, 18:2, 19:2, 19:11, 19:12, 20:7, 21:4, 23:3, 25:20, 26:25, 27:3, 27:14, 27:15, 30:25, 31:1
domain [1] - 27:20
done [8] - 11:21, 25:8, 25:9, 26:14, 27:24, 29:19, 30:2, 30:6
doubt [1] - 32:9
down [11] - 18:21,

19:3, 19:14, 19:17, 24:24, 25:5, 26:23, 28:24, 32:1, 35:5, 36:4
drafting [2] - 25:20, 25:21
drawing [2] - 7:4, 7:5
drawn [2] - 11:8, 12:15
due [2] - 32:8, 32:23
during [3] - 6:9, 18:24, 23:24
During [1] - 19:5

E

early [3] - 25:3, 28:15, 33:11
earnest [1] - 29:14
easily [1] - 24:19
effort [2] - 12:15, 16:17
efforts [1] - 20:14
eight [2] - 22:12, 23:4
Either [1] - 25:15
either [3] - 20:9, 26:2, 30:10
elapse [1] - 33:12
emphasize [1] - 35:18
employee [1] - 7:6
employees [3] - 6:2, 7:19, 8:6
encapsulate [1] - 12:11
end [5] - 18:21, 28:9, 33:10, 33:25, 35:13
ends [1] - 36:10
entirely [2] - 19:13, 31:12
entitled [4] - 4:2, 4:3, 15:16, 21:17
entries [2] - 18:21, 20:8
ESQ [6] - 1:18, 1:20, 1:21, 2:3, 2:6, 2:6
essentially [1] - 31:18
establish [1] - 24:8
evidence [1] - 21:24
evidenced [1] - 17:7
exactly [4] - 4:21, 9:25
example [1] - 5:13
examples [1] - 19:10
except [2] - 16:18, 18:23
exchange [1] - 23:6
exchanged [1] - 23:4
exclusion [1] - 34:16
Executive [1] - 3:23
executive [1] - 3:24

**Exhibit** [2] - 3:10, 34:3
**exhibits** [3] - 9:15, 14:2, 25:11
**Exhibits** [1] - 9:15
**expect** [4] - 17:5, 32:17, 34:10, 35:21
**explain** [1] - 10:10
**explicitly** [1] - 12:24
**expressed** [2] - 23:18, 23:22
**expressly** [2] - 5:23, 24:3
**extend** [1] - 22:24
**extension** [1] - 31:24
**extensions** [1] - 32:20
**extent** [5] - 13:15, 14:22, 19:7, 21:15, 24:21
**extraordinarily** [2] - 14:11, 18:18

**F**

**face** [2] - 16:13, 27:9
**Fach** [9] - 4:1, 7:24, 8:14, 8:17, 9:1, 9:17, 10:7, 10:17, 10:23
**Fach's** [2] - 4:7, 8:19
**fact** [5] - 12:18, 16:22, 19:1, 20:24, 35:6
**factual** [1] - 21:22
**Fair** [1] - 26:15
**fair** [1] - 33:9
**fairly** [1] - 12:19
**faith** [3] - 13:3, 13:20, 17:6
**fall** [1] - 29:9
**fashion** [1] - 13:15
**fast** [1] - 11:25
**favoring** [1] - 35:25
**Federal** [1] - 31:5
**fellow** [1] - 7:6
**fight** [4] - 28:1, 29:15, 29:18, 36:4
**fights** [1] - 29:19
**figure** [1] - 19:17
**figured** [2] - 25:2, 25:3
**filed** [6] - 24:5, 27:3, 27:6, 27:9, 27:13, 27:18
**filing** [4] - 30:24, 31:13, 33:4
**fine** [2] - 16:5, 18:11
**firm** [2] - 3:4, 7:11
**First** [1] - 23:18
**first** [8] - 3:16, 9:11, 14:8, 18:7, 18:14, 18:20, 26:16, 35:9
**five** [1] - 11:10

**floor** [1] - 3:17
**focus** [1] - 34:15
**focusing** [1] - 29:21
**folks** [1] - 12:19, 17:5, 20:5, 21:16, 22:5, 28:4, 31:24, 32:11, 32:23, 32:25, 33:12
**following** [1] - 2:17
**fool** [2] - 23:16
**FOR** [1] - 1:2
**foreign** [3] - 22:12, 24:4, 24:9
**foresee** [1] - 35:5
**form** [2] - 25:18, 27:17
**formality** [1] - 21:9
**formerly** [1] - 25:1
**forth** [1] - 19:21
**forum** [1] - 27:3
**forward** [5] - 14:15, 16:13, 22:2, 23:10, 32:24
**foundation** [1] - 27:7
**four** [4] - 19:9, 31:23, 32:13, 33:12
**Frank** [1] - 9:20
**frankly** [1] - 30:16
**front** [2] - 4:12, 12:12
**fundamentally** [1] - 6:24

**G**

**G-U-G-I-G** [1] - 18:13
**Gaffigan** [1] - 1:24
**game** [1] - 28:10
**GEDDES** [1] - 2:3
**Geddes** [1] - 3:2
**gee** [1] - 9:4
**general** [1] - 4:1
**generalities** [1] - 12:13
**generally** [2] - 3:22, 6:22
**given** [4] - 6:20, 13:18, 26:25, 28:3
**granting** [2] - 13:14, 14:6
**great** [1] - 17:9
**greatest** [1] - 16:23
**guess** [5] - 16:18, 24:22, 26:3, 26:8, 28:6
**GUGIG** [2] - 2:6, 18:13, 18:16, 21:14, 22:8, 22:20, 25:10, 27:11, 28:13
**Gugig** [13] - 3:3, 18:10, 18:13, 18:15,

20:22, 21:9, 23:15, 23:19, 25:7, 27:7, 28:13, 28:25, 30:10
**guidance** [3] - 17:21, 28:3, 35:4
**guy** [2] - 16:2, 22:7
**guys** [8] - 9:6, 16:17, 17:2, 17:12, 26:8, 32:1, 32:9, 33:10

**H**

**hand** [2] - 16:1, 16:2
**handle** [1] - 14:9
**handled** [1] - 20:17
**handles** [1] - 17:20
**hands** [1] - 29:16
**happenstance** [1] - 6:19
**hard** [1] - 12:10
**head** [1] - 34:25
**hear** [6] - 8:21, 13:19, 24:14, 25:6, 29:19, 34:20
**heard** [3] - 16:8, 31:25, 32:5
**hearing** [4] - 3:15, 33:6, 33:10, 35:24
**held** [1] - 2:18
**help** [1] - 17:2
**helping** [1] - 17:1
**Hi** [1] - 2:19
**hidden** [1] - 23:24
**higher** [1] - 17:6
**highlighted** [1] - 13:11
**history** [1] - 18:23
**hold** [2] - 25:23, 33:14
**holding** [1] - 5:17
**hollow** [1] - 26:5
**honesty** [1] - 30:23
**Honor** [53] - 2:23, 3:1, 3:5, 3:19, 3:21, 4:3, 4:15, 4:21, 5:3, 5:13, 5:21, 7:10, 8:10, 9:9, 9:13, 9:24, 9:25, 10:15, 11:6, 11:10, 11:20, 11:21, 11:25, 14:19, 15:5, 16:21, 18:9, 18:13, 18:16, 19:9, 20:19, 21:1, 21:14, 21:25, 22:9, 22:21, 22:25, 23:14, 25:10, 25:17, 26:15, 27:12, 28:13, 28:24, 30:7, 31:4, 31:22, 32:5, 33:1, 33:16, 35:1, 35:3, 36:9
**HONORABLE** [1] - 1:14
**hope** [3] - 17:23,

17:24, 28:3
**house** [12] - 7:1, 7:6, 7:19, 7:25, 8:5, 8:12, 9:1, 9:17, 15:1, 15:6, 15:9
**HULBERT** [1] - 1:20
**hypothetical** [4] - 11:7, 15:8, 15:19, 16:1
**Hypothetically** [1] - 15:9
**hypothetically** [3] - 10:19, 10:20, 10:23

**I**

**identified** [3] - 22:15, 24:25, 25:1
**identify** [5] - 19:25, 25:6, 25:25, 26:17, 29:3
**Illinois** [1] - 1:21
**immediately** [1] - 32:10
**implicitly** [1] - 12:25
**imply** [1] - 17:11
**import** [1] - 11:17
**importance** [1] - 11:22
**important** [1] - 4:8
**impossible** [1] - 19:8
**impressions** [1] - 7:2
**IN** [2] - 1:1, 1:2
**in-house** [12] - 7:1, 7:6, 7:19, 7:25, 8:5, 8:12, 9:1, 9:17, 15:1, 15:6, 15:9
**inaccurate** [6] - 6:4, 6:7, 6:11, 6:17, 6:18, 12:7
**inappropriate** [1] - 4:10
**INC** [2] - 1:8, 1:8
**Inc** [2] - 2:8, 2:8
**include** [2] - 23:21, 32:1
**included** [1] - 27:14
**including** [2] - 8:25, 23:5
**inconsistent** [1] - 26:20
**indeed** [2] - 12:15, 24:20
**indicate** [1] - 17:13
**indicates** [1] - 27:18
**individual** [1] - 21:6
**individuals** [1] - 20:4
**inequitable** [4] - 30:17, 31:10, 31:11, 35:7
**information** [7] - 4:4,

4:5, 4:6, 9:8, 9:10, 13:21, 16:11
**informed** [2] - 4:6, 16:16
**initial** [1] - 19:3
**input** [1] - 28:4
**inside** [3] - 13:16, 13:24, 14:24
**instance** [1] - 18:20
**instances** [2] - 12:24, 24:24
**instructed** [1] - 28:16
**insufficient** [1] - 24:8
**intellectual** [1] - 22:4
**intends** [1] - 13:2
**intention** [2] - 9:2, 32:4
**interesting** [1] - 21:1
**interject** [1] - 28:14
**invalidity** [4] - 8:1, 8:7, 10:18, 15:10
**inventor** [1] - 31:6
**inventors** [5] - 30:17, 30:19, 35:9, 35:11
**irrelevant** [1] - 31:6
**issue** [9] - 9:14, 10:1, 14:20, 15:21, 15:22, 20:7, 25:15, 34:17, 35:4
**issues** [12] - 7:2, 19:1, 19:20, 21:15, 25:18, 28:5, 30:25, 31:5, 31:8, 31:19, 34:16, 34:23
**Italian** [1] - 30:12
**Italy** [1] - 23:5
**itself** [2] - 11:16, 11:17

**J**

**JA** [1] - 21:6
**JAMES** [1] - 1:18
**James** [1] - 2:21
**Jeff** [1] - 2:22
**Jeffrey** [1] - 21:5
**JEFFREY** [1] - 1:21
**JOHN** [1] - 2:3
**John** [1] - 3:2
**JORDAN** [1] - 1:14
**Jordan** [2] - 2:19, 23:20
**JOSHUA** [1] - 1:20
**Joshua** [2] - 2:22, 11:6
**judge** [1] - 11:2
**Judge** [2] - 2:19
**judgment** [7] - 31:9, 31:12, 31:13, 31:19, 33:5, 33:6, 33:21

judgments [1] - 30:24
July [1] - 33:11
June [1] - 33:10
jury [5] - 11:2, 13:19, 14:11, 15:14, 17:4

**K**

KAJ [1] - 1:9
keep [2] - 4:19, 13:4
Kemp [1] - 21:6
KENT [1] - 1:14
key [1] - 11:25
kind [2] - 19:16, 24:18

**L**

language [4] - 11:11, 11:13, 14:2, 14:10
last [1] - 3:9
late [1] - 25:3
latter [1] - 15:14
launch [1] - 5:9
law [5] - 12:4, 13:22, 24:4, 24:9, 25:24
lawyer [3] - 10:11, 21:21, 22:13
lawyers [5] - 7:20, 8:5, 13:24, 15:11, 24:18
least [2] - 11:9, 11:14
legitimate [1] - 12:4
length [2] - 23:19, 34:8
letter [7] - 5:14, 5:15, 5:16, 20:2, 20:5, 34:2, 34:7
letters [3] - 3:9, 24:5, 24:6
liability [1] - 14:12
license [2] - 25:20, 25:21
lie [1] - 26:9
likelihood [2] - 8:15, 31:11
limit [1] - 8:10
limited [1] - 30:4
limiting [1] - 8:4
line [6] - 2:20, 2:22, 7:4, 7:5, 11:8, 12:14
lingering [1] - 14:19
list [1] - 20:9
listed [1] - 24:23
lists [1] - 25:11
litigation [12] - 7:2, 8:15, 10:25, 11:1, 15:7, 15:13, 25:6, 25:22, 25:25, 26:12, 26:13, 26:17
LLP [2] - 1:20, 2:5

locally [1] - 3:3
log [18] - 9:11, 9:22, 18:19, 19:4, 19:7, 19:9, 19:16, 19:22, 20:6, 20:8, 21:2, 24:25, 25:4, 26:20, 27:22, 27:23, 28:18, 29:3
logs [3] - 28:2, 28:5, 30:1
Look [1] - 16:4
look [3] - 9:13, 13:9, 32:24
looked [1] - 16:9
looking [4] - 13:6, 14:2, 25:13, 35:22
looks [2] - 11:23, 24:23

**M**

maintaining [1] - 31:18
majority [1] - 24:17
manage [1] - 17:16
mandamus [1] - 16:18
manner [1] - 12:19
March [1] - 1:12
Markman [5] - 11:15, 31:18, 32:18, 33:6, 33:22, 34:18
Marvin [2] - 3:23, 9:18
material [3] - 23:7, 27:20, 32:21
materialized [1] - 26:13
matter [3] - 8:25, 10:14, 36:3
matters [3] - 6:2, 29:24, 34:19
McDONNELL [1] - 1:20
mean [5] - 5:13, 17:11, 25:8, 25:14, 26:11
memo [1] - 15:15
memoranda [1] - 12:24
memorandum [1] - 24:6
memos [1] - 14:10
merely [2] - 11:13, 11:16
Merit [1] - 1:25
Michael [1] - 18:10
MICHAEL [1] - 2:6
might [10] - 7:19, 8:17, 11:1, 11:2, 11:7, 13:10, 14:4, 22:9, 34:12
Might [1] - 8:16

Mike [2] - 3:3, 18:14, 28:13
minimum [1] - 30:22
minute [1] - 23:12
mischaracterization [1] - 15:4
misconduct [1] - 11:13
missing [1] - 7:13
misspoke [1] - 32:6
mistaken [1] - 12:25
moment [3] - 14:20, 25:12, 29:23
month [2] - 30:23, 34:1
morning [4] - 2:21, 3:1, 3:5, 3:6
MORRIS [1] - 1:17
Most [1] - 24:16
most [2] - 18:3, 24:20
motion [3] - 3:12, 3:17, 11:14, 13:14, 14:3, 17:20, 18:5, 18:24, 22:10, 26:3, 26:19, 27:1, 31:13
motions [7] - 3:8, 8:13, 28:11, 28:12, 30:14, 32:23, 33:5
mounting [1] - 29:15
move [2] - 14:15, 16:20
moved [1] - 33:8
moves [1] - 32:13
moving [2] - 19:5, 19:16
MR [69] - 2:21, 2:23, 2:24, 3:1, 3:5, 3:19, 4:15, 4:21, 4:23, 5:3, 5:11, 6:5, 6:13, 6:18, 7:4, 7:10, 7:14, 7:17, 7:21, 7:23, 8:9, 8:18, 8:23, 9:9, 9:24, 10:15, 11:6, 11:20, 12:8, 12:10, 14:19, 14:22, 16:21, 17:19, 17:23, 18:1, 18:9, 18:13, 18:16, 20:19, 21:1, 21:14, 22:8, 22:20, 22:21, 22:25, 23:14, 25:10, 25:17, 26:15, 26:22, 27:11, 28:13, 28:24, 29:8, 30:7, 30:22, 31:4, 31:17, 31:22, 32:4, 33:1, 33:3, 33:16, 33:20, 33:23, 34:25, 35:3, 36:5

**N**

nails [1] - 17:11
name [3] - 18:12, 18:14, 21:6
narrow [1] - 19:1
narrowed [1] - 31:12
narrowly [1] - 12:15
NATH [1] - 2:5
nature [1] - 14:11
need [7] - 3:14, 17:14, 17:17, 22:6, 22:9, 23:22, 24:12, 24:21, 26:11, 26:17, 30:12, 30:16, 30:18, 30:22, 32:19, 34:22, 35:11
needed [2] - 24:9, 34:19
needs [2] - 19:18, 30:15
never [8] - 8:23, 15:14, 21:20, 26:13
new [1] - 35:10
New [3] - 2:7, 3:4
newly [1] - 9:12
next [2] - 29:1, 34:10
nice [1] - 10:24
NICHOLS [1] - 1:17
nine [1] - 22:12
NO [1] - 1:9
nobody [2] - 28:7, 35:24
none [1] - 23:9
note [1] - 19:21
NOTE [1] - 2:17
nothing [3] - 17:11, 23:22, 35:18
notice [1] - 20:20
notion [1] - 22:23
November [1] - 20:2
Nth [1] - 28:8
number [2] - 23:1, 23:5
numerous [1] - 17:13

**O**

obscure [1] - 29:17
obtain [1] - 24:10
obtuse [1] - 10:10
obvious [1] - 14:3
Obviously [1] - 27:3
obviously [2] - 16:22, 23:9
occasions [1] - 19:25
occur [1] - 23:5
occurred [1] - 3:22
odds [1] - 12:21

OF [1] - 1:2
offer [1] - 7:23
office [1] - 33:13
Office [2] - 27:17, 27:19
Officer [3] - 3:23, 21:3, 21:21
officers [1] - 6:1
old [1] - 11:25
once [2] - 5:17, 23:16
one [6] - 3:13, 3:18, 5:8, 13:17, 16:1, 18:8, 22:13, 25:11, 25:17, 26:2, 26:22, 28:14, 28:20, 29:8, 29:12, 29:16
One [2] - 19:5, 27:16
oOo [1] - 2:15
opening [3] - 5:23, 11:11, 32:18
opinion [21] - 3:22, 5:14, 5:16, 5:19, 9:19, 10:18, 10:20, 10:21, 10:24, 11:15, 11:17, 11:18, 13:13, 15:2, 15:7, 15:10, 15:24, 16:2, 16:13
opinions [5] - 4:8, 8:8, 13:1, 13:4, 13:17
opportunity [1] - 31:14
opposed [1] - 15:7
opposition [3] - 20:12, 22:10, 24:7
oral [3] - 3:25, 4:1
order [2] - 32:13, 34:12
originally [1] - 19:8
ought [5] - 16:19, 17:21, 36:3
outside [6] - 5:19, 10:7, 10:8, 13:16, 13:24, 14:24
overarching [1] - 19:15
overruled [1] - 12:16
own [1] - 7:19

**P**

page [5] - 8:4, 11:10, 19:9, 20:20, 29:7
pages [1] - 34:8
papers [7] - 9:4, 10:16, 11:5, 12:20, 18:17, 23:20, 27:4
Parrett [1] - 2:21
PARRETT [3] - 1:18, 2:21, 2:24
part [5] - 4:9, 11:14,

15:14, 16:23, 24:4
**particular** [2] - 24:17, 34:13
**parties** [3] - 24:3, 26:14, 26:23
**partner** [1] - 18:10, 23:20
**passed** [1] - 22:24
**patent** [22] - 5:19, 6:22, 8:1, 8:7, 8:12, 8:25, 9:2, 10:2, 10:13, 15:1, 15:2, 19:23, 20:1, 20:11, 20:13, 20:14, 22:5, 22:14, 22:16, 28:17, 28:22
**Patent** [1] - 27:17
**Pause** [1] - 32:15
**pay** [1] - 34:13
**peg** [1] - 33:13
**pegging** [1] - 33:25
**people** [9] - 7:1, 8:11, 8:14, 8:20, 12:22, 22:15, 24:25, 25:3, 35:17
**percent** [2] - 15:13, 19:14
**perfectly** [1] - 4:2
**person** [2] - 7:6, 9:19
**Pharmaceuticals** [1] - 2:8
**PHARMACEUTICAL S** [1] - 1:8
**Pharmacia** [13] - 1:22, 2:23, 3:16, 3:18, 5:24, 18:6, 19:6, 19:24, 20:12, 22:11, 25:1, 25:6, 28:17
**PHARMACIA** [1] - 1:4
**Pharmacia's** [3] - 17:20, 19:4, 24:7
**phone** [3] - 12:21, 30:11, 34:11
**picking** [1] - 24:19
**piece** [1] - 12:2
**piecemeal** [1] - 18:20
**pieces** [1] - 15:16
**piles** [1] - 18:2
**pin** [1] - 19:17
**Plaintiff** [1] - 1:5
**plan** [1] - 30:2
**planning** [3] - 8:10, 14:25, 33:24
**plus** [1] - 35:11
**pocket** [1] - 13:5
**point** [19] - 4:13, 7:13, 11:24, 15:8, 17:14, 19:9, 21:10, 21:11, 22:3, 23:25, 25:24, 26:1, 26:7, 26:8,

27:15, 27:16, 29:18, 30:8, 35:20
**poorly** [1] - 27:23
**position** [13] - 5:2, 5:24, 6:7, 6:8, 6:12, 6:17, 7:15, 9:3, 9:12, 10:12, 11:4, 15:4, 22:20
**positions** [2] - 13:1, 31:2
**possession** [1] - 4:4
**possible** [1] - 22:8
**possibly** [1] - 13:10
**potentially** [1] - 31:8
**practical** [5] - 11:8, 16:23, 17:1, 17:3, 33:3
**prefer** [1] - 29:19
**prejudicial** [2] - 14:11, 19:19
**prematurely** [1] - 14:13
**premise** [1] - 27:6
**prepared** [1] - 7:23
**presentation** [1] - 14:7
**presented** [2] - 14:12, 16:23
**presumably** [2] - 19:23, 21:17
**pretty** [4] - 3:21, 14:3, 26:1, 34:3
**previously** [2] - 12:18, 25:1
**privilege** [38] - 4:18, 4:24, 4:25, 5:1, 5:2, 5:3, 5:4, 5:18, 7:24, 8:13, 9:11, 9:14, 9:21, 10:3, 10:4, 13:2, 18:19, 19:4, 19:6, 19:9, 19:13, 19:16, 19:22, 20:25, 21:2, 22:15, 24:25, 26:20, 27:5, 27:8, 27:20, 27:22, 27:23, 28:1, 28:5, 28:18, 30:1, 30:25
**privileged** [1] - 8:24
**privileges** [1] - 27:24
**problem** [9] - 16:23, 17:1, 19:4, 19:16, 20:6, 22:22, 23:1, 29:1, 29:5
**problems** [2] - 16:4, 17:10
**proceed** [2] - 30:6, 35:12
**process** [2] - 18:24, 23:25
**produce** [3] - 5:25,

6:15, 24:13
**produced** [10] - 5:4, 5:7, 5:14, 6:5, 6:9, 6:19, 6:21, 6:23, 11:14
**product** [16] - 4:24, 5:9, 6:25, 7:2, 7:8, 7:16, 7:20, 10:4, 10:5, 11:3, 12:1, 15:15, 15:17, 15:21, 25:19, 26:10
**production** [1] - 29:25
**productive** [1] - 29:18
**professional** [1] - 17:15
**profitably** [1] - 34:24
**promise** [1] - 21:21
**property** [1] - 22:4
**propriety** [1] - 15:24
**prosecute** [1] - 29:10
**prosecuting** [4] - 30:20, 35:7, 35:13, 35:23
**prosecution** [4] - 20:14, 21:7, 22:4, 22:14
**protected** [4] - 10:5, 11:3, 15:15, 15:17
**prove** [1] - 24:4
**provide** [1] - 32:12
**provided** [9] - 5:11, 6:1, 6:15, 6:20, 6:21, 9:10, 9:13, 9:15, 13:21
**prudent** [2] - 35:17, 35:25
**public** [3] - 27:3, 27:9, 27:20
**publicly** [1] - 27:13
**pure** [1] - 36:3
**purely** [1] - 21:9
**purported** [1] - 21:16
**put** [3] - 18:2, 30:3, 36:2
**puzzled** [1] - 10:9

### Q

**quality** [3] - 13:12, 13:25, 28:1
**questioning** [1] - 8:11
**quick** [1] - 34:3
**quite** [2] - 5:20, 31:6
**quote** [1] - 11:11

### R

**read** [6] - 5:23, 12:5, 12:19, 12:20, 16:8, 27:4

**reading** [2] - 13:15, 16:11
**ready** [2] - 28:10, 35:17
**realistically** [1] - 30:13
**realities** [1] - 17:3
**reality** [2] - 11:25, 12:4
**really** [12] - 8:19, 10:9, 12:22, 17:14, 19:5, 21:11, 26:11, 27:4, 28:7, 29:18, 31:8
**reason** [1] - 13:11
**reasonable** [1] - 27:13
**rebut** [1] - 5:23
**rebuttal** [1] - 34:9
**recalling** [1] - 35:20
**received** [6] - 3:9, 3:25, 5:5, 5:7, 18:19, 27:1
**receiving** [1] - 18:20
**recently** [1] - 30:18
**recipient** [3] - 20:9, 24:23, 27:17
**recipients** [1] - 19:12
**recognized** [1] - 12:4
**Recognizing** [1] - 30:2
**record** [3] - 11:22, 30:3, 36:2
**redact** [1] - 15:16
**redactable** [1] - 13:10
**redacted** [1] - 11:15
**redaction** [1] - 11:9
**reemphasize** [1] - 35:24
**refer** [2] - 10:16, 11:10
**Referee** [1] - 30:13
**refused** [3] - 5:25, 6:15, 20:10
**regard** [4] - 24:5, 26:3, 26:11, 28:8
**regarding** [1] - 34:2
**regards** [1] - 13:16
**Registered** [1] - 1:25
**REID** [1] - 2:6
**Reid** [1] - 3:3
**reiterate** [1] - 14:14
**related** [2] - 8:7, 13:1
**relates** [1] - 15:6
**relating** [1] - 11:16
**relation** [1] - 9:14
**relationships** [1] - 21:19
**relevant** [4] - 4:8, 6:6, 31:14
**reliability** [1] - 16:12
**reliance** [5] - 4:8, 4:10, 11:17, 13:3, 13:13
**relied** [3] - 3:24, 9:19,

13:20
**relief** [5] - 14:6, 16:18, 16:22, 30:15, 30:23
**rely** [5] - 3:11, 4:5, 10:14, 13:17, 16:3
**remaining** [1] - 30:1
**remains** [1] - 30:11
**remotely** [1] - 8:7
**render** [1] - 4:9
**rendered** [1] - 15:25
**repeated** [1] - 20:22
**reply** [5] - 19:10, 20:21, 24:6, 25:11, 33:5
**Reporter** [1] - 1:25
**REPORTER'S** [1] - 2:17
**request** [1] - 28:20
**required** [1] - 26:18
**resolve** [4] - 17:1, 17:2, 17:21, 21:13
**resolved** [4] - 24:19, 24:20, 31:8, 31:9
**resolves** [1] - 29:4
**respect** [11] - 3:10, 5:2, 5:18, 7:25, 8:9, 8:24, 10:12, 21:20, 22:13, 22:25, 32:8
**respond** [4] - 34:5, 34:6, 34:7, 36:8
**response** [1] - 20:23
**responsibility** [1] - 22:3
**result** [2] - 10:13, 14:11
**reveal** [2] - 4:20, 6:3
**revealed** [1] - 5:10
**review** [1] - 26:25
**reviewable** [1] - 7:9
**reviewed** [2] - 12:3, 12:7, 31:1
**revised** [1] - 19:6
**revising** [1] - 29:25
**RICH** [20] - 1:20, 2:23, 3:19, 9:9, 11:6, 17:23, 20:19, 21:1, 23:14, 25:17, 26:15, 26:22, 28:24, 29:8, 31:4, 31:17, 31:22, 33:1, 33:3, 34:25
**Rich** [17] - 2:22, 3:17, 9:5, 11:6, 12:11, 14:22, 17:22, 20:18, 21:12, 21:20, 23:13, 25:14, 27:21, 28:23, 30:9, 31:3, 34:24
**rights** [2] - 22:4, 22:5
**risk** [1] - 16:4
**road** [2] - 35:5, 36:4
**rogatory** [2] - 24:6

role [1] - 21:7
roles [1] - 29:11
ROSENTHAL [1] - 2:5
ruin [1] - 29:1
Rule [1] - 34:14
ruling [1] - 34:10
rulings [6] - 18:1, 18:3, 23:3, 23:6, 24:22, 28:15
run [1] - 32:1
run-down [1] - 32:1

**S**

salami [1] - 16:6
Samson [18] - 3:23, 4:18, 5:5, 5:7, 5:8, 6:2, 6:9, 6:16, 6:20, 7:7, 7:8, 7:25, 8:5, 8:11, 9:18, 10:7, 10:11, 10:17
sanction [1] - 34:17
saw [2] - 5:9, 5:10
schedule [7] - 24:2, 31:9, 32:2, 32:7, 35:12, 35:14, 35:25
scheduled [2] - 30:13, 31:1
scheduling [7] - 3:15, 31:25, 32:2, 32:6, 34:18, 36:3
scope [5] - 4:17, 6:3, 6:10, 10:8
Second [1] - 9:12
see [4] - 5:16, 13:9, 17:9, 35:22
seeking [1] - 16:18
sense [1] - 16:12
separate [2] - 14:23, 31:17
separated [1] - 15:22
seriously [1] - 34:15
settlement [1] - 25:22
settling [1] - 26:12
seven [1] - 23:4
severable [1] - 31:5
several [3] - 3:7, 19:24, 22:6
shame [2] - 23:16
shift [1] - 29:17
short [5] - 12:2, 19:10, 24:11, 34:12, 35:16
shot [1] - 16:20
show [2] - 11:8, 23:22
SICOR [22] - 1:8, 2:8, 3:22, 4:14, 6:1, 7:7, 7:18, 7:19, 8:5, 8:6, 9:13, 9:20, 14:6, 20:21, 23:25, 24:5, 24:7, 26:18, 27:23,

31:14
SICOR's [2] - 4:1, 18:5
side [1] - 18:25
sides [3] - 23:2, 23:8, 30:1
sideshow [1] - 24:17
Sigale [1] - 23:20
significant [1] - 22:10
signify [1] - 28:19
simply [1] - 10:17
single [1] - 34:8
single-spaced [1] - 34:8
sitting [3] - 26:23, 28:24, 29:2
situation [2] - 3:22, 23:17
six [1] - 30:23
slice [1] - 16:5
solid [1] - 17:14
someone [4] - 9:20, 21:4, 23:23
somewhat [1] - 12:21
SONNENSCHEIN [1] - 2:5
Sonnenschein [1] - 3:3
sorry [3] - 3:13, 6:13, 7:14
sort [3] - 19:15, 21:2, 23:25
sound [1] - 26:4
sounds [3] - 24:18, 24:20, 29:6
source [1] - 21:23
spaced [1] - 34:8
speaking [4] - 3:18, 4:13, 28:25, 30:7
speaks [1] - 22:17
Special [1] - 30:13
specific [4] - 12:12, 19:20, 21:6, 26:17
square [2] - 9:10, 19:8
squared [2] - 9:21, 14:17
stage [1] - 29:20
standing [1] - 19:24
start [7] - 3:12, 17:17, 31:25, 32:2, 32:3, 32:5, 32:11
state [1] - 14:24
statement [5] - 6:4, 6:7, 6:11, 6:17, 36:1
STATES [1] - 1:1
status [1] - 22:16
statuses [2] - 28:20, 28:21
Steck [2] - 2:22, 29:2
STECK [1] - 1:21

Stein [2] - 33:13, 33:17
step [1] - 22:2
steps [2] - 13:20, 14:12
still [2] - 20:7, 34:22
stip [2] - 32:25, 33:15
stipulation [2] - 32:12
stop [1] - 15:18
straighten [1] - 4:22
straightforward [1] - 3:21
strength [1] - 15:24
strict [1] - 29:10
strip [1] - 27:24
strong [4] - 10:21, 15:10, 31:11
strongly [2] - 28:7, 35:18
stuff [8] - 11:24, 13:11, 13:23, 14:16, 24:19, 27:9, 32:1, 32:3
subject [1] - 8:25
submissions [3] - 11:23, 16:8, 24:7
submit [1] - 22:11
submitted [3] - 12:1, 16:9, 26:3
submitting [1] - 24:3
substance [1] - 25:18
succeed [1] - 26:16
successful [1] - 19:1
suggest [5] - 23:25, 28:7, 31:4, 31:17, 31:24
suggesting [1] - 5:21
summary [9] - 3:24, 30:24, 31:8, 31:12, 31:13, 31:19, 33:5, 33:6, 33:21
summer [2] - 6:9, 6:16
supervising [4] - 20:13, 21:7, 21:11, 22:13
supervision [1] - 21:16
support [1] - 33:5
supposed [1] - 29:21
surface [1] - 34:23
surfaced [1] - 34:17
suspect [2] - 18:3, 22:17
suspicion [1] - 23:15
suspicious [1] - 22:17

**T**

table [1] - 3:16

tact [1] - 24:14
talks [1] - 12:11
target [2] - 19:5, 19:16
tee [1] - 30:10
TELEPHONE [1] - 1:12
telephone [1] - 2:17
Telephone [1] - 36:10
ten [1] - 22:12
terms [6] - 6:25, 11:9, 18:19, 22:16, 23:22, 29:11
terribly [1] - 19:19
testify [1] - 15:1
testimony [1] - 31:6
THE [68] - 1:1, 1:2, 2:19, 2:25, 3:6, 4:11, 4:16, 4:22, 4:25, 5:6, 5:22, 6:8, 6:14, 7:3, 7:5, 7:13, 7:15, 7:18, 7:22, 8:3, 8:16, 8:22, 9:5, 9:23, 10:6, 11:19, 12:5, 12:9, 12:14, 14:21, 15:18, 16:25, 17:20, 17:24, 18:5, 18:11, 18:15, 20:16, 20:20, 21:8, 22:1, 22:19, 22:22, 23:11, 24:11, 25:13, 25:23, 26:21, 27:2, 27:21, 28:23, 29:6, 29:13, 30:21, 31:3, 31:16, 31:20, 31:23, 32:8, 32:16, 33:2, 33:7, 33:19, 33:21, 33:24, 35:2, 35:16, 36:6
therefore [2] - 7:8, 27:24
they've [1] - 9:7
thin [1] - 16:6
thinking [5] - 9:25, 17:15, 17:17, 29:16, 34:1
third [1] - 9:20
thoughtful [1] - 17:15
thousands [1] - 20:8
three [5] - 9:15, 9:18, 19:10, 34:8
throw [1] - 20:21
Thursday [1] - 1:12
timing [1] - 24:9
today [5] - 3:7, 12:22, 34:22, 35:5, 36:7
together [2] - 26:8, 30:5
token [1] - 4:3
took [3] - 9:4, 13:20, 20:4
top [1] - 34:25

total [1] - 19:3
totality [1] - 4:9
toward [1] - 35:13
towards [1] - 14:12
track [1] - 31:18
tracks [1] - 31:17
translations [1] - 27:19
transparent [1] - 16:6
trial [4] - 14:7, 14:9, 17:16, 28:11
tried [1] - 35:21
troubling [1] - 16:10
true [1] - 21:23
truly [1] - 26:16
trust [1] - 17:25
try [1] - 18:25
trying [3] - 10:10, 14:23, 16:5
Tuesday [1] - 32:16
TUNNELL [1] - 1:17
turn [2] - 18:5, 28:11
twice [1] - 23:16
two [6] - 3:8, 4:12, 9:18, 20:3, 20:20, 23:17, 31:17, 35:12

**U**

U.S.D.C.J [1] - 1:14
ultimately [4] - 18:20, 19:17, 22:18, 23:6
under [2] - 22:5, 23:8
undermine [4] - 4:7, 11:17, 21:2
unfair [1] - 31:15
unfounded [1] - 14:12
UNITED [1] - 1:1
unless [1] - 28:8
up [12] - 3:7, 9:8, 13:5, 13:7, 14:1, 14:4, 17:10, 18:21, 30:10, 33:7, 33:14
uphold [1] - 20:24
Upjohn [1] - 1:22
UPJOHN [1] - 1:4

**V**

validity [9] - 6:22, 8:1, 8:6, 8:12, 8:25, 9:2, 10:2, 11:16, 15:7
vast [1] - 24:17
verbatim [1] - 27:18
view [6] - 4:19, 5:8, 11:1, 11:2, 13:12, 30:8
volumes [1] - 22:17

## W

**wait** [2] - 31:25, 32:5
**waive** [3] - 5:18, 10:3, 13:2
**waived** [8] - 5:4, 5:17, 7:24, 8:9, 8:12, 8:24, 10:13, 10:22
**waiver** [6] - 6:3, 6:10, 8:13, 9:14, 10:20, 12:23
**waiving** [2] - 13:4, 16:14
**wants** [1] - 3:11
**warranted** [1] - 35:8
**wash** [1] - 13:18
**ways** [1] - 23:17
**weak** [1] - 10:21
**Wednesday** [1] - 34:10
**week** [2] - 29:1, 34:10
**week-or-so** [1] - 29:1
**weeks** [6] - 3:10, 30:9, 30:23, 31:23, 32:13, 33:12
**Wes** [1] - 9:16
**Wesley** [1] - 4:1
**whatsoever** [1] - 21:3
**whole** [2] - 17:12, 29:17
**wholesale** [1] - 19:7
**willful** [1] - 13:19
**willfulness** [1] - 14:15
**Wilmington** [1] - 1:11
**winning** [1] - 15:13
**wisdom** [2] - 15:23, 16:12
**wish** [1] - 9:9
**withheld** [1] - 7:11
**withhold** [4] - 8:10, 9:16, 12:16, 15:3
**withholding** [4] - 6:23, 8:2, 9:3, 9:7
**Wood** [7] - 21:5, 21:10, 21:12, 21:17, 22:1, 23:23, 24:13
**Wood's** [1] - 21:15
**word** [1] - 20:4
**words** [1] - 7:16
**world** [2] - 5:8, 15:11
**worldwide** [4] - 20:14, 21:7, 22:3, 22:14
**worry** [1] - 12:13
**written** [2] - 11:22, 31:2

## Y

**York** [3] - 2:7, 3:4