INTERROGATORY NO. 8 SUBPART NO. 1

Describe in detail the circumstances in which Sicor first became aware of the '285 patent, including without limitation, identifying each and every document or thing that refers or relates to Sicor's first awareness of the '285 patent; and identifying all persons knowledgeable about the circumstances of Sicor's first awareness of the '285 patent.

RESPONSE TO INTERROGATORY NO. 8 SUBPART NO. 1

Defendants object to this interrogatory on the grounds that it vague, ambiguous, overly broad, unduly burdensome, seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: Defendants became aware of the '285 patent on or shortly after it issued. Pursuant to Federal Rule of Civil Procedure 33(d), Defendants intend to produce documents in response to Pharmacia's First Request for the Production of Documents which are sufficient for Plaintiff to derive or ascertain additional information in response to this interrogatory.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 8 SUBPART NO. 2

Identifying the date on which Sicor first became aware of the '285 patent.

RESPONSE TO INTERROGATORY NO. 8 SUBPART NO. 2

Defendants object to this interrogatory on the grounds that it vague, ambiguous, overly broad, unduly burdensome, seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: Defendants first became aware of the '285 patent on or shortly after its issuance date, August 22, 2000.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 8 SUBPART NO. 3

Identifying the individual affiliated with Sicor who first became aware of the '285 patent.

RESPONSE TO INTERROGATORY NO. 8 SUBPART NO. 3

Defendants object to this interrogatory on the grounds that it vague, ambiguous, overly broad, unduly burdensome, seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: Craig Lea is one of the individuals affiliated with Sicor who became aware of the '285 patent on or shortly after the date of its issuance.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 8 SUBPART NO. 4

Identifying how Sicor first became aware of the '285 patent.

RESPONSE TO INTERROGATORY NO. 8 SUBPART NO. 4

Defendants object to this interrogatory on the grounds that it vague, ambiguous, overly broad, unduly burdensome, seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: Sicor first became aware of the '285 patent through its publication by the U.S. Patent and Trademark Office.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 8 SUBPART NO. 5

Identifying from whom or where Sicor first became aware of the '285 patent.

RESPONSE TO INTERROGATORY NO. 8 SUBPART NO. 5

Defendants object to this interrogatory on the grounds that it vague, ambiguous, overly broad, unduly burdensome, seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: Sicor first became aware of the '285 patent from the U.S. Patent and Trademark Office.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 9:

Identify each opinion, written and/or oral and formal or informal, that Sicor has requested or received regarding validity, infringement, enforceability, or liability in relation to the '285 patent, including without limitation, by identifying whether the opinion was written or oral and formal or informal; identifying the dates on which the opinion was requested, begun, completed, and delivered; identifying each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); identifying each person who has received, reviewed, or otherwise been informed of the substance of the opinion; identifying each and every document or thing that refers or relates to each opinion; and identifying which opinion or opinions, if any, you will rely upon in this case.

- 43 -

## RESPONSE TO INTERROGATORY NO. 9:

Defendants object to this interrogatory on the ground that it is compound and includes discrete subparts. Defendants will respond to this interrogatory based on its separate subparts.

## INTERROGATORY NO. 9 SUBPART NO. 1

Identify each opinion, written and/or oral and formal or informal, that Sicor has requested or received regarding **validity** in relation to the '285 patent, including without limitation, by identifying whether the opinion was written or oral and formal or informal; identifying the dates on which the opinion was requested, begun, completed, and delivered; identifying each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); identifying each person who has received, reviewed, or otherwise been informed of the substance of the opinion; identifying each and every document or thing that refers or relates to each opinion.

## RESPONSE TO INTERROGATORY NO. 9 SUBPART NO. 1

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information and material protected from disclosure by the attorney client privilege and the work product doctrine. Defendants further object on the grounds that, by this interrogatory, Pharmacia is demanding that Defendants prematurely provide information and material relevant to an advice-of-counsel defense prior to Defendants' election to assert that defense, if any. Defendants expressly reserve the right to elect an advice-of-counsel defense as this case proceeds, and will provide reasonable notice of that election, if any, on a mutually acceptable date, after which Defendants will provide the appropriate discovery relevant to that defense.

Defendants further reserve the right to move, if necessary, at any time for a protective order concerning attorney-client communications or work product information or material that concerns the advice-of-counsel defense or a bifurcation order to separate liability, damages and willfulness issues for trial.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 9 SUBPART NO. 2

Identify each opinion, written and/or oral and formal or informal, that Sicor has requested or received regarding **infringement** in relation to the '285 patent, including without limitation, by identifying whether the opinion was written or oral and formal or informal; identifying the dates on which the opinion was requested, begun, completed, and delivered; identifying each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); identifying each person who has received, reviewed, or otherwise been informed of the substance of the opinion; identifying each and every document or thing that refers or relates to each opinion.

## RESPONSE TO INTERROGATORY NO. 9 SUBPART NO. 2

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information and material protected from disclosure by the attorney client privilege and the work product doctrine. Defendants further object on the grounds that, by this interrogatory, Pharmacia is demanding that Defendants prematurely provide information and material relevant to an advice-of-counsel defense prior to Defendants' election to assert that defense, if any. Defendants expressly reserve the right to elect an advice-of-counsel defense as this case proceeds, and will provide reasonable notice of that election, if any, on a mutually acceptable date, after which Defendants will provide the appropriate discovery relevant to that defense.

Defendants further reserve the right to move, if necessary, at any time for a protective order concerning attorney-client communications or work product information or material that concerns the advice-of-counsel defense or a bifurcation order to separate liability, damages and willfulness issues for trial.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 9 SUBPART NO. 3

Identify each opinion, written and/or oral and formal or informal, that Sicor has requested or received regarding **enforceability** in relation to the '285 patent, including without limitation, by identifying whether the opinion was written or oral and formal or informal; identifying the dates on which the opinion was requested, begun, completed, and delivered; identifying each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); identifying each person who has received, reviewed, or otherwise been informed of the substance of the opinion; identifying each and every document or thing that refers or relates to each opinion.

RESPONSE TO INTERROGATORY NO. 9 SUBPART NO. 3

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information and material protected from disclosure by the attorney client privilege and the work product doctrine. Defendants further object on the grounds that, by this interrogatory, Pharmacia is demanding that Defendants prematurely provide information and material relevant to an advice-of-counsel defense prior to Defendants' election to assert that defense, if any. Defendants expressly reserve the right to elect an advice-of-counsel defense as this case proceeds, and will provide reasonable notice of that election, if any, on a mutually acceptable date, after which Defendants will provide the appropriate discovery relevant to that defense.

Defendants further reserve the right to move, if necessary, at any time for a protective order concerning attorney-client communications or work product information or material that concerns the advice-of-counsel defense or a bifurcation order to separate liability, damages and willfulness issues for trial.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 9 SUBPART NO. 4

Identify each opinion, written and/or oral and formal or informal, that Sicor has requested or received regarding liability in relation to the '285 patent, including without limitation, by identifying whether the opinion was written or oral and formal or informal; identifying the dates on which the opinion was requested, begun, completed, and delivered; identifying each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); identifying each person who has received, reviewed, or otherwise been informed of the substance of the opinion; identifying each and every document or thing that refers or relates to each opinion.

## RESPONSE TO INTERROGATORY NO. 9 SUBPART NO. 4

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information and material protected from disclosure by the attorney client privilege and the work product doctrine. Defendants further object on the grounds that, by this interrogatory, Pharmacia is demanding that Defendants prematurely provide information and material relevant to an advice-of-counsel defense prior to Defendants' election to assert that defense, if any. Defendants expressly reserve the right to elect an advice-of-counsel defense as this case proceeds, and will provide reasonable notice of that election, if any, on a mutually acceptable date, after which Defendants will provide the appropriate discovery relevant to that defense.

Defendants further reserve the right to move, if necessary, at any time for a protective order concerning attorney-client communications or work product information or material that concerns the advice-of-counsel defense or a bifurcation order to separate liability, damages and willfulness issues for trial.

# EXHIBIT 8

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

<u>INTERROGATORY NO. 9 SUBPART NO. 5</u>

Identifying which opinion or opinions, if any, you will rely upon in this case.

<u>RESPONSE TO INTERROGATORY NO. 9 SUBPART NO. 5</u>

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information and material protected from disclosure by the attorney client privilege and the work product doctrine. Defendants further object on the grounds that, by this interrogatory, Pharmacia is demanding that Defendants prematurely provide information and material relevant to an advice-of-counsel defense prior to Defendants' election to assert that defense, if any. Defendants expressly reserve the right to elect an advice-of-counsel defense as this case proceeds, and will provide reasonable notice of that election, if any, on a mutually acceptable date, after which Defendants will provide the appropriate discovery relevant to that defense.

Defendants further reserve the right to move, if necessary, at any time for a protective order concerning attorney-client communications or work product information or material that concerns the advice-of-counsel defense or a bifurcation order to separate liability, damages and willfulness issues for trial.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

ASHBY & GEDDES

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendants*

*Of Counsel:*

Reid L. Ashinoff
Brian T. Moriarty
Michael S. Gugig
Justin N. Kattan
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated: July 29, 2005
159939.1

- 49 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2005, the attached **DEFENDANTS'**

**SECOND SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES**

**BY PLAINTIFF** was served upon the below-named counsel of record at the address and in the

manner indicated:

Maryellen Noreika, Esquire                          <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Joshua R. Rich, Esquire                             <u>VIA ELECTRONIC MAIL</u>
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

John G. Day

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY, )
                                             )
                 Plaintiff,                  )
                                             )
        v.                                   )
                                             )    C.A. No. 04-833-KAJ
SICOR INC. and SICOR                         )
PHARMACEUTICALS, INC.,                       )
                                             )
                 Defendants.                 )

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 29th day of July, 2005, **DEFENDANTS'**

**SECOND SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES**

**BY PLAINTIFF** was served upon the following counsel of record at the address and in the manner

indicated:

Jack B. Blumenfeld, Esquire                          <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899


Joshua R. Rich, Esquire                          <u>VIA FEDERAL EXPRESS</u>
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
Brian T. Moriarty
David R. Baum
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Francis C. Lynch
Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA  02199
(617) 239-0100

Dated:  July 29, 2005
149886.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2005, the attached **NOTICE OF SERVICE**

was served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                           HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Joshua R. Rich, Esquire                               VIA FEDERAL EXPRESS
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

/s/ *John G. Day*
_____
John G. Day

149886.1

6

REDACTED

7

SHEET 1

1

1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                                 - - -

4     PHARMACIA & UPJOHN COMPANY,        :   CIVIL ACTION
                                         :
5                                        :
              Plaintiff and              :
6             Counter-defendant,         :
                                         :
7     v.                                 :
                                         :
8     SICOR INC., and SICOR              :
      PHARMACEUTICALS INC.,              :
9                                        :
              Defendants and            :   NO. 04-833 (KAJ)
10            Counter-Claimants.
                                    - - -
11
                         Wilmington, Delaware
12           Monday, September 19, 2005 at 4:30 p.m.
                       TELEPHONE CONFERENCE
13
                                 - - -
14
      BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                                 - - -
16    APPEARANCES:

17
                    MORRIS NICHOLS ARSHT & TUNNELL
18                  BY:  MARYELLEN NORIEKA, ESQ.

19                       and

20    McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
                    BY:  DANIEL A. BOEHNEN, ESQ., and
21                       JOSHUA R. RICH, ESQ.
                         (Chicago, Illinois)
22
                         Counsel for Pharmacia & Upjohn Company
23

24
                              Brian P. Gaffigan
25                            Registered Merit Reporter

SHEET 2

**2**

1 APPEARANCES: (Continued)
2
3         ASHBY & GEDDES
          BY:  JOHN G. DAY, ESQ.
4              and
5         SONNENSCHEIN NATH & ROSENTHAL, LLP
6         BY:  REID L. ASHINOFF, ESQ. and
               BRIAN T. MORIARTY, ESQ.
7              (New York, New York)
8                   Counsel for Sicor Inc. and Sicor
                    Pharmaceuticals Inc.
9
10
11
12
13
14
15
16                  - oOo -
17           P R O C E E D I N G S
18         (REPORTER'S NOTE:  The following telephone
19  conference was held in chambers, beginning at 4:30 p.m.)
20         THE COURT:  Hi, this is Judge Jordan.  Who do I
21  have on the line?
22         MS. NOREIKA:  Your Honor, for the plaintiff,
23  it's Maryellen Noreika at Morris Nichols in Wilmington; and
24  Dan Boehnen and Joshua Rich for the McDonnell Boehnen firm
25  in Chicago.

**3**

1         MR. DAY:  Good afternoon, Your Honor.  For
2  defendants, you have John Day at Ashby & Geddes locally;
3  Reid Ashinoff and Brian Moriarty, my lead counsel from the
4  Sonnenschein firm.
5         THE COURT:  All right.
6         MR. MORIARTY:  Good afternoon, Your Honor.
7         THE COURT:  Good afternoon.  This is a discovery
8  dispute conference touched off by a letter originally that
9  came in on the 1st of September from Ms. Noreika.  I have
10  the amended or replacement letter of the 15th as well as two
11  letters from the folks at Mr. Day's firm, one dated
12  September 15th and a September 19th response.
13         So why don't we go ahead and begin with, I don't
14  know whether it's Mr. Boehnen or Ms. Noreika.  Who is going
15  to be speaking for the plaintiff?  But why don't you go
16  ahead and tee up what you think I need to be talking with
17  you folks about first.
18         MR. BOEHNEN:  It would be Mr. Boehnen, Your
19  Honor.  This is he.
20         So after we filed on September 1st, of course,
21  as you know, we were hoping to have a hearing with you soon
22  after that.  But in order for all of the parties to have an
23  opportunity to get their letters in, that didn't happen, it
24  got put off for a couple weeks.  And as things continued to
25  develop during the course of those next couple weeks, we

**4**

1  thought it would be best to kind of put a replacement or
2  updated letter before the Court and we advised Sicor we
3  would be doing that.
4         So in Sicor's response dealing first with the
5  question of document production, we noted that they really
6  don't comment at all on our request for manufacturing
7  documents.  And we remain concerned that there has not been
8  a full and thorough search for production documents and then
9  a full production of those.
10         THE COURT:  Yes.  And why don't I pull
11  Mr. Moriarty in here because on that point, I feel like you
12  have some explaining to do.
13         MR. MORIARTY:  Yes, Your Honor.
14         THE COURT:  Are you there?
15         MR. MORIARTY:  I almost cut you off and I
16  stopped myself.  I'm there.
17         THE COURT:  So what is your response to the
18  assertion I have from Mr. Boehnen and his co-counsel that
19  they're still not getting some basic discovery from you
20  folks, for example, lab notebooks which has come to light
21  after a 30(b)(6) witness?
22         And, Mr. Boehnen, did I understand you to say
23  you think you are still short?
24         MR. BOEHNEN:  Yes, Your Honor.  I was first
25  addressing the manufacturing documents because their letter

**5**

1  didn't even comment on that.  What their letter did comment
2  on were the R&D documents, and they say they produced some
3  before the deposition.  We would point out only that they
4  were produced after all of the attorneys had entered the
5  deposition room and about 30 seconds before the witness was
6  produced.  They say that they had made a search before but
7  the witness who was a 30(b)(6) witness on this very topic
8  said there hadn't been any search to his knowledge.
9         One of the things that did happen within the two
10  weeks after our letter and today is that one day prior to
11  Sicor's submission of its letter to the Court, they did give
12  us about an additional 400 pages of lab notebooks and they
13  said that now they are not aware of any further R&D pages
14  being produced.
15         We do remain concerned that we've only got about
16  500 pages in total of R&D lab notebooks.  It seems to us
17  shy.  We don't have a clear representation that they have
18  made a full and thorough search.  They said they've done a
19  search.
20         THE COURT:  What are they looking for in that
21  regard?
22         MR. BOEHNEN:  I think at this point, they have
23  said that they have done a search and they're not aware of
24  anything further.  I realize that is a representation then
25  that the Court probably has to accept unless and until

SHEET 3

**6**

1  we can show otherwise. So we're going to need to have a
2  continued deposition. But, you know, if and when we have a
3  further deposition and we're able to establish that there
4  are more R&D documents out there, we're going to be back
5  in front of you again and obviously we're concerned about
6  both the time that this is taking and the cost that this
7  is taking.
8      THE COURT: Yes, I think you are right to be
9  concerned. But let me suggest to both sides if you have me
10  on speakerphone, you need to pick up because there may be
11  occasions where I need to catch you in midstream because I
12  have a question or clarification or I feel like I need to
13  move to another point and I can't cut in just given the
14  technology of speakerphones.
15      So let me back up a little bit, Mr. Boehnen,
16  because you moved past the point I'd like to focus in on.
17  What is it specifically with respect to the documents and
18  the 30(b)(6)? What is the relief you want from me? And
19  then I'll have Mr. Moriarty talk to that.
20      MR. BOEHNEN: There are two aspects of the
21  documents: There are R&D documents that we're concerned
22  we don't have. There are manufacturing documents that we
23  believe we don't have.
24      As to the R&D documents, if Mr. Moriarty is
25  representing that they have made a full, careful and

**7**

1  thorough search and have produced everything, then I
2  realize it's not incumbent upon us to go forward in the
3  deposition and either show that is true or not true.
4      If it turns out to be true, then I guess I
5  would like the Court's admonition to them to make sure it
6  is true. Otherwise, you are going to be awarding us costs
7  and attorney fees and additional time.
8      By way of additional time, we believe that these
9  are documents that are going to be useful for our expert
10  report; and if we find out additional documents later, we
11  will be needing to supplement our report. So that is all
12  the requests on the R&D document side.
13      On the manufacturing documents side, we believe
14  we don't have all of those. Again, if Mr. Moriarty
15  represents they made a careful and thorough search and they
16  have produced everything, then we'll go forward and resume
17  deposition. But we would like to make sure we have this
18  full production before we do our expert report, and we would
19  like to have one week after getting this document in order
20  to submit our expert's report.
21      MR. MORIARTY: Your Honor, this is Brian
22  Moriarty. Would you like me to address these points now?
23      THE COURT: I would.
24      MR. MORIARTY: Let me start with the last topic,
25  the manufacturing record. I believe we've actually resolved

**8**

1  this record in a call before we had before with the Court
2  which I had with Mr. Rich. What they have asked us to do
3  is to supplement our production to produce what is called
4  batch records, and these are the records of the laboratory
5  when they produced batches of pharmaceutical products. They
6  have detailed records that are available for review by the
7  FDA, for example, that are called batch records which detail
8  what kind of products they made and how they made it and
9  just how many are made; and they asked us to supplement
10  that. And they correctly pointed out our batch records end
11  some time in early 2005 when we made our initial production.
12      We told them that we would go back and this week
13  we hope to get the additional batch records to the extent
14  there are any so they can know exactly how many units of
15  allegedly infringing products were made in our factory. So
16  we've already agreed to get that information for them and to
17  supplement our production with the 2005 records.
18      THE COURT: Okay.
19      MR. MORIARTY: As to all the original records,
20  we have given all of our records indicating the production
21  of the alleged infringing products.
22      THE COURT: Then it sounds to me like we're done
23  on that; right, Mr. Boehnen?
24      MR. BOEHNEN: Sorry, Your Honor. I wish I could
25  say we are. Two points:

**9**

1      Number one, there are categories of documents
2  other than batch records. There are the shipping delivery
3  records. They refused to provide those. And even as to the
4  batch records, they refused to commit to any date when we
5  would have these.
6      THE COURT: Well, I'm hearing them say –
7      MR. BOEHNEN: We have to get a witness to
8  follow-up with deposition.
9      THE COURT: I'm hearing them say – unless I
10  misheard. Didn't you say some time within the next – well,
11  what did you say about timing? I thought I heard a timing
12  statement.
13      MR. MORIARTY: We want to get them to them this
14  week. It may Friday or Monday. But, Your Honor, what we
15  offered them, which addresses the R&D documents –
16      THE COURT: Don't go to R&D yet. Let's stick
17  with the manufacturing because Mr. Boehnen says, "great,
18  love to get those attorney batch documents but there are
19  shipping and other kind of documents that they haven't told
20  us about." What is your response to that?
21      MR. MORIARTY: Your Honor, those are included.
22  We will obviously get them those, too.
23      THE COURT: All right. Mr. Boehnen, it sounds
24  like we're done. How about by Friday?
25      MR. BOEHNEN: If we have those, let's say we

SHEET 4

**10**

1  have those in our possession by next Monday, Your Honor, a
2  week from today, and then we would like to have a date for a
3  witness to resume and complete that 30(b)(6) deposition, and
4  then we would like our expert report to be deferred until a
5  week after the deposition is done.
6      MR. MORIARTY:  Your Honor, we have already given
7  them a date for the continuation of the 30(b)(6) witness who
8  one of the categories is "what sort of search did you do to
9  find the documents" and he'll have more thorough answers at
10  this time.  But we offered them a date of I believe a week
11  from this Thursday, and that is why we're making sure they
12  get the production in advance of that.
13      THE COURT:  All right.
14      MR. MORIARTY:  I would note we have never been
15  asked about extending expert reports.  It's never been
16  mentioned until Mr. Boehnen just spoke, and I don't believe
17  any of these records have anything to do with their expert
18  report on validity which is due this Friday.  So I don't
19  want to go off on a tangent, I want to stick to the R&D
20  documents, if Your Honor wants to hear that, but maybe Mr.
21  Ashinoff wants to return to that point.
22      THE COURT:  Let's not go to expert reports yet.
23  One side or the other may persuade me this is all related
24  but, right now, I just want to know documents are getting
25  done, discovery depositions are getting done.  What I hear

**11**

1  you telling me is you are going to get them the supplemental
2  document production by Friday and you have offered them a
3  witness by Thursday of next week.  Have I got it right?
4      MR. MORIARTY:  You have that right.  That
5  witness will also -- we've also produced the R&D documents
6  and that witness will be fully prepared to testify about the
7  scope and thoroughness and completeness of the production of
8  the R&D documents.
9      And, Your Honor, one of the points we made in
10  our letter is we made a generic product.  We're not similar
11  to Pharmacia.  We don't have volumes of R&D documents.  That
12  may allay Mr. Boehnen's concerns.
13      THE COURT:  I read your paper, and I assume
14  Mr. Boehnen did, too.
15      So, Mr. Boehnen, you are going to have the R&D
16  documents likewise, or they say you've got them and you are
17  going to have a witness to address those additional R&D
18  document.  Is there anything else with respect to the R&D
19  documents that you think you don't have or you want to
20  raise with me right now?
21      MR. BOEHNEN:  No, Your Honor.  I understand
22  we're talking all documents, R&D and manufacturing
23  documents, on Friday and then a witness next Thursday.
24      THE COURT:  Is that right, Mr. Moriarty?
25      MR. MORIARTY:  Yes, Your Honor.

**12**

1      THE COURT:  Okay.  Done.
2      Now, before we start talking about expert
3  reports, let's stay with issues associated with discovery
4  disputes.  Have you guys worked out your contention
5  interrogatory kind of issues, or are we finished with
6  interrogatory disputes?  Mr. Boehnen.
7      MR. BOEHNEN:  Your Honor, in our view, we're not
8  but we are in the following sense.  We think that at this
9  point, Your Honor should make it very clear perhaps by an
10  order that the parties are not going to be able to introduce
11  any arguments, theories, positions that have not been set
12  forth to date in either their interrogatory responses or
13  expert witness reports.
14      THE COURT:  Well, let me hear Mr. Moriarty.
15  You've got an issue with that?
16      MR. ASHINOFF:  Your Honor, this is Mr. Ashinoff.
17  I'll respond to that.
18      THE COURT:  All right.
19      MR. ASHINOFF:  I do, Your Honor.  We have an
20  obligation to supplement interrogatory responses, as do our
21  adversaries.
22      THE COURT:  Yes.  Well, we're not talking
23  about discovery here.  Right now, speak specifically to
24  contentions.  All right?
25      MR. ASHINOFF:  Your Honor, I don't believe

**13**

1  Mr. Boehnen is stating now contention interrogatories.  We
2  essentially don't think we are deficient in our contention
3  interrogatories at this point.  We supplemented a number of
4  times.  And Mr. Boehnen's letter, as we point out, simply
5  fails to specify in any way where we're deficient.  And we
6  don't believe we are.
7      THE COURT:  Here is what I understand him to be
8  saying, and I'm just not going to jump the gun on this.
9  That it's been pulling teeth to get you folks to give them
10  responses.  You've got some now.  He doesn't want later
11  surprises.  That's how I read his letters.
12      MR. ASHINOFF:  Your Honor, we have laid out
13  what we know and as we get it -- we have our own issues with
14  Pharmacia's production.  Those are not on the table for
15  today and I won't put them there.  Suffice it to say, we're
16  awaiting long overdue for a lot of discovery and as we get
17  discovery from them, if that discovery leads us to revise
18  our theories and our contentions, we will file amended
19  interrogatory responses.
20      THE COURT:  All right.
21      MR. ASHINOFF:  We're current in terms of what we
22  have from them now.
23      THE COURT:  So what I hear you saying is unless
24  they give you something that changes your mind, you know
25  what your positions are and you have given them your

14

1  positions; right?
2      MR. ASHINOFF: Yes, Your Honor. With the
3  exception of the subject matter of the second letter which
4  I won't raise yet which is the willfulness contention.
5      THE COURT: Yes. All right. Then we're going
6  to let things just lay where they are right now. If there
7  comes some point later in the case where either side feels
8  like somebody was pulling a rabbit out of the hat and
9  playing a "gotcha" with new legal theories and contentions,
10  we'll just have to address it then. Hopefully, no one will
11  be inclined to try to pull something like that at the last
12  minute. But for right now, I don't think there is any
13  dispute for me to resolve in this regard.
14      MR. BOEHNEN: Your Honor, there is one
15  interrogatory which is not a contention-type interrogatory
16  where we asked for -- it's Interrogatory No. 4 -- where we
17  asked for their identification of prospective witnesses.
18      THE COURT: And your issue with their response
19  is what, Mr. Boehnen?
20      MR. BOEHNEN: And this is their witnesses in
21  relation to the laches and estoppel defense. So again, as
22  long as we don't have anybody new coming up later on that
23  was already known to them, we're okay with that. Our
24  problem with what has happened to date is that even though
25  they keep supplementing, they supplement with respect to

15

1  information they have long, long ago.
2      THE COURT: All right. Well, I'm not going to
3  get into whether they believe that or you believe that.
4  Suffice it to say that, Mr. Moriarty or Mr. Ashinoff, with
5  discovery time ticking away and people needing to schedule
6  depositions, is there a problem with the request that you
7  identify witnesses on these topics?
8      MR. MORIARTY: No, Your Honor. We actually
9  responded to these as contention interrogatories. I don't
10  believe we responded to them with witness identifications,
11  but we have previously I think served a list of the people
12  we think have relevant knowledge in the case and they've had
13  that for the better part of a year. So there really
14  shouldn't be surprises here.
15      But we responded to these as contention
16  interrogatories. We didn't view these as an additional
17  identification of witnesses. But the truth, Your Honor,
18  is that they are the counterpart to the discussion and
19  our witnesses, our fact witnesses from our end have been
20  identified for a long time in our initial disclosure of
21  witnesses.
22      THE COURT: Mr. Boehnen, do you have any dispute
23  with their assertion?
24      MR. BOEHNEN: As long as they don't bring in any
25  witnesses who haven't already been identified, Your Honor,

16

1  that's fine.
2      THE COURT: I guess we're --
3      MR. MORIARTY: Again, Your Honor, we didn't
4  identify them in the interrogatories. We viewed those as
5  contention interrogatories. I don't want to get into a
6  semantic game with Mr. Boehnen here.
7      THE COURT: I don't want to get into a
8  semantic game either. So what I'm telling you is if you
9  guys have identified your witnesses -- now, if they put an
10  interrogatory to you that says "tell us people who have
11  information on the following topics," are you telling me
12  you don't have to answer that?
13      MR. MORIARTY: No. If they still don't think
14  they have that and Mr. Boehnen off-line tells me the
15  interrogatories as to which he wants, that I'm happy to
16  supplement. I'll do it this week.
17      THE COURT: All right. Get it done.
18      MR. MORIARTY: Okay. Mr. Boehnen, you can call
19  me back.
20      MR. BOEHNEN: I think we made that very clear
21  that we believe we don't have that information. I don't
22  know how many --
23      THE COURT: Yes, whoa. Stop. I'm not getting
24  into it, and I'm not going to let you get into it on this
25  record. If you have something more you think you need, I'm

17

1  hearing him say they'll give it to you this week. Done.
2      MR. MORIARTY: Okay. Mr. Boehnen, call me.
3  We'll talk about witnesses. I don't think we identified.
4      MR. BOEHNEN: I'm leaving from here to the
5  airport. I won't have an opportunity to call you.
6      THE COURT: All right. Whoa, whoa, whoa, whoa.
7  Stop, both of you. I'm just not being clear enough with
8  you, I guess.
9      Don't talk to each other. I can't have you do
10  that on this record I've got. I got the court reporter
11  here. You guys have to address your remarks to me. It's as
12  if we're in open court, only we got the teleconference going
13  here.
14      So you guys know how to get in touch with each
15  other or people on your team can get in touch with each
16  over. Take that piece off-line. You don't have to do the
17  logistics part of it right now.
18      MR. MORIARTY: Yes, Your Honor.
19      MR. BOEHNEN: Yes, Your Honor. If I may briefly
20  comment, though. I think it's unfair for Sicor to say if
21  you don't have it let me know. We have been telling them
22  for months. The deposition is no different now than it was
23  a month ago.
24      THE COURT: Okay. Whether that is true or not
25  true, to me, right now is not significant. What is

18

1  significant is that if you did have a problem, I'm hearing
2  it's a problem that you can now resolve because they're
3  committed to resolve it this week.
4      Now, maybe you will speak to them and they'll
5  say we told you all these people and it's done or maybe
6  they'll say oh, you know, here are the specific names. But
7  either way, what you were looking for I think is now taken
8  care of so we need to move to the next topic. Are there any
9  other additional issues that you wanted to raise before we
10  start dealing with their bifurcation issue, Mr. Boehnen?
11      MR. BOEHNEN: Well, yes, Your Honor. We had our
12  request to depose their witness, Dr. Clark.
13      THE COURT: Right. So that was something
14  that at least in the first letter or so, I didn't see a
15  response to. And then there is an a later letter on that,
16  September 19th letter that has something to do with that.
17  So who wants to bring me up to speed on what the state of
18  play is with respect to Dr. Clark?
19      I'll give you first crack, Mr. Boehnen.
20      MR. ASHINOFF: Your Honor, this is Pharmacia's
21  request.
22      THE COURT: I know. I'm giving Mr. Boehnen the
23  first shot at it.
24      MR. BOEHNEN: Your Honor, Dr. Clark's expert
25  report was served on us by Sicor on August 15th. Shortly

19

1  after that, we served Sicor with a notice of deposition.
2  And not too much happened until I was -- and the notice of
3  deposition was set for September 12th, but along with the
4  cover letter, we indicated we would be willing to do it
5  any time that week at the doctor's convenience.
6      On Thursday, September 8th, we heard for the
7  first time that Dr. Clark was not going to be made available
8  at any time during the following week. With some follow-up
9  communications, they advised Mr. Rich that it was Sicor's
10  contention it was inappropriate for us to be deposing
11  Dr. Clark until after all of the expert reports were in and
12  that they would make him available at that point.
13      Our feeling is that we want to make very sure
14  that we fully understand Dr. Clark's position and that we
15  have him locked in and nailed down so that he isn't trying
16  to change them after he has seen our explanation about why
17  he is wrong. We fully realize we're only going to get one
18  bite at the Clark deposition apple but we wish to take that
19  before we have finished preparing our expert report, not
20  afterwards. And there is absolutely nothing in any rule
21  that I know of or any Order of this Court that says we
22  should not be allowed to do that.
23      THE COURT: All right. Mr. Ashinoff, is this
24  yours?
25      MR. ASHINOFF: Yes, it is, Your Honor.

20

1      THE COURT: Go ahead.
2      MR. ASHINOFF: Your Honor, very simply put,
3  this scheduling order was essentially worked out on consent.
4  And in no way shape or form did I, in my mind, or on paper,
5  consent, nor frankly, Your Honor, in over 30 years of
6  practice, have ever consented to let an adversary take an
7  expert witness deposition from my expert witness before they
8  put their cards on the table.
9      That it's a very uneven playing field when their
10  witness gets to read our report and then has a deposition
11  and then they can stake out a position, and their witness
12  comes in with the benefit of everything our witness says,
13  and our witness has no information whatsoever about their
14  position.
15      I have never, ever agreed to that. Our local
16  counsel advises me that's not common practice in Delaware.
17  We never would have agreed to that. And I don't think it's
18  fair. I don't think it's a level playing field.
19      They have their report due on the 23rd of
20  September. We gave them a month and-a-quarter to get their
21  response report in, and they know what our witness is saying
22  because it's in his report. But the truth is our expert may
23  well have a reply or rebuttal report to what they say. I
24  do not think that one expert with Pharmacia should have all
25  of this out on the table and know everything about what

21

1  our expert says when our witness is being forced to give a
2  deposition before he knows anything about what their expert
3  says.
4      THE COURT: All right. I've got you,
5  Mr. Ashinoff.
6      Mr. Boehnen, this is your chance to reply.
7      MR. BOEHNEN: Their expert report is his
8  position. Presumably, he is the one who knows more about
9  his position than anybody does, and I think we are entitled
10  to find out what his position is before we formulate our
11  position.
12      THE COURT: Okay.
13      MR. BOEHNEN: I fully realize after their expert
14  sees our report, he may well articulate new aspects of his
15  position. He is going to want to explain why he thinks
16  our people are wrong, but he should not at that point be
17  changing his position.
18      THE COURT: Okay. Well, speaking of positions,
19  I've got both your positions.
20      I have to say, Mr. Boehnen, you are on the wrong
21  side of this. I've been working in these kinds of cases for
22  a few years and other kinds of cases for more than that and
23  it is certainly not the custom or practice in this court to
24  require people to give their experts up for discovery until
25  the parties have essentially exchanged their positions.

22

1  That's the way it's typically done and that's the way it's
2  going to be done in this case. So your position is not
3  easily defensible given the practice and what I think the
4  practicalities are of expert testimony and litigation in
5  this day. So you will not get the relief you seek on that
6  point.
7       All right. Mr. Boehnen, is there anything else
8  from your side that we should be talking about before we
9  shift over to the Sicor piece?
10      MR. BOEHNEN: No, Your Honor. Thank you.
11      THE COURT: All right. Mr. Moriarty or
12 Mr. Ashinoff.
13      MR. ASHINOFF: Your Honor, we're not actually
14 seeking relief today. We weren't sure we needed to write
15 this letter before we filed the motion and out of an
16 abundance of caution we wrote it because one element of the
17 motion to bifurcate is to stay discovery, not as to damages
18 and the letter you received in response goes off on damages.
19 We're not asking to stay that. We've got our experts
20 working hard and we've given them a 10-hour deposition on
21 damages.
22      The only aspect of discovery we want to stay is
23 the need to produce attorney-client material, but we don't
24 need relief now. We're content. We will try to file our
25 motion certainly by next Monday at the latest and we will

23

1  lay out fully in the motion the considerations we think
2  support the relief we're asking for.
3       THE COURT: All right. Well, you will have your
4  chance to do that. Let me just give you a heads up. It's
5  going to take one whale of a showing for you to get a
6  bifurcation of willfulness out of me. That, speaking of
7  custom and practice, is also not the custom and practice,
8  as your local counsel has likely advised you. That's not to
9  say in an appropriate case, I couldn't be convinced because
10 I might be. But you need to be conscious that you have a
11 real uphill battle on this.
12      So if you feel like you want to spend your time,
13 your client's money to take a crack at it, you are free to
14 go do that and the other side will have to respond. You may
15 not get a fulsome response from me if I think this is a
16 typical case and that it ought to be handled in the typical
17 fashion that we see in this court, certainly in my court and
18 I think typically in the other courtrooms of the judges of
19 this District, which is, as you know, you are going to have
20 to try your case all at once.
21      MR. ASHINOFF: Your Honor, I hear you and I
22 appreciate the advance warning of the Court, without any
23 decision, the Court's general experience with it. We do
24 feel, Your Honor, we need to make this motion.
25      The only question I'd have for the Court is we

24

1  contemplate needing to make an in camera submission so that
2  the Court understands the prejudice argument that we're
3  raising about arguably privileged material. And I would ask
4  the Court if there is any way you like that to be done in
5  these contexts because I know the cases we intend to rely on
6  urge and all reflect such an in camera consideration. And I
7  would want to make a submission with an explanation to the
8  Court about that material as part of the motion but in
9  camera and obviously sealed.
10      THE COURT: You can certainly submit your
11 documents in camera and your legal arguments ought to be
12 submitted so that the other side can respond to them. Let
13 me say this: If there is some piece of a document which
14 you need to point out to me with specificity because you
15 are afraid I will not understand the relevance or the
16 significance of it and to say that in a submission handed to
17 the other side would in effect be giving up the privilege,
18 you may submit that to me in camera under seal with the
19 documents. But I expect that sort of thing ought to be
20 very, very limited. In short, you give me the documents,
21 but you give your arguments to the attorney side, too, so
22 they can respond unless it's something genuinely
23 extraordinary that you think will get past me; all right?
24      MR. ASHINOFF: Your Honor, you anticipated
25 me perfectly. I do need to explain some aspects of the

25

1  material in camera but we will make the legal arguments
2  obviously available to our adversaries.
3       THE COURT: All right. Is there anything else
4  we need to talk up on this call, Mr. Boehnen?
5       MR. BOEHNEN: No, Your Honor.
6       THE COURT: Mr. Moriarty or Mr. Ashinoff?
7       MR. MORIARTY: No, Your Honor.
8       THE COURT: All right. Thanks for your time.
9  Good-bye.
10      (The attorneys respond, "Thank you, Your
11 Honor.")
12      (Telephone conference ends at 5:05 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

**0**

04-833 [1] - 1:9

**1**

10-hour [1] - 22:20
10:30 [2] - 1:12, 2:19
12th [1] - 19:3
15th [3] - 3:10, 3:12, 18:25
19th [2] - 3:12, 18:16
1st [2] - 3:9, 3:20

**2**

2005 [3] - 1:12, 8:11, 8:17
23rd [1] - 20:19
28 [1] - 1:12

**3**

30 [2] - 5:5, 20:5
30(b)(6 [5] - 4:21, 5:7, 6:18, 10:3, 10:7

**4**

4 [1] - 14:16
400 [1] - 5:12

**5**

500 [1] - 5:16
5:05 [1] - 25:12

**8**

8th [1] - 19:6

**A**

able [2] - 6:3, 12:10
absolutely [1] - 19:20
abundance [1] - 22:16
accept [1] - 5:25
Action [1] - 1:4
additional [8] - 5:12, 7:7, 7:8, 7:10, 8:13, 11:17, 15:16, 18:9
address [4] - 7:22, 11:17, 14:10, 17:11
addresses [1] - 9:15
addressing [1] - 4:25
admonition [1] - 7:5
advance [2] - 10:12, 23:22
adversaries [2] -

12:21, 25:2
adversary [1] - 20:6
advised [3] - 4:2, 19:9, 23:8
advises [1] - 20:16
afraid [1] - 24:15
afternoon [3] - 3:1, 3:6, 3:7
afterwards [1] - 19:20
ago [2] - 15:1, 17:23
agreed [3] - 8:16, 20:15, 20:17
ahead [3] - 3:13, 3:16, 20:1
airport [1] - 17:5
allay [1] - 11:12
alleged [1] - 8:21
allegedly [1] - 8:15
allowed [1] - 19:22
almost [1] - 4:15
amended [2] - 3:10, 13:18
and-a-quarter [1] - 20:20
answer [1] - 16:12
answers [1] - 10:9
anticipated [1] - 24:24
Appearances [2] - 1:16, 2:1
apple [1] - 19:18
appreciate [1] - 23:22
appropriate [1] - 23:9
arguably [1] - 24:3
argument [1] - 24:2
arguments [4] - 12:11, 24:11, 24:21, 25:1
Arsht [1] - 1:17
articulate [1] - 21:14
Ashby [2] - 2:3, 3:2
Ashinoff [21] - 2:6, 3:3, 10:21, 12:16, 12:19, 12:25, 13:12, 13:21, 14:2, 15:4, 18:20, 19:23, 19:25, 20:2, 21:5, 22:12, 22:13, 23:21, 24:24, 25:6
aspect [1] - 22:22
aspects [3] - 6:20, 21:14, 24:25
assertion [2] - 4:18, 15:23
associated [1] - 12:3
assume [1] - 11:13
attorney [4] - 7:7, 9:18, 22:23, 24:21
attorney-client [1] - 22:23
attorneys [2] - 5:4, 25:10

August [1] - 18:25
available [4] - 8:6, 19:7, 19:12, 25:2
awaiting [1] - 13:16
awarding [1] - 7:6
aware [2] - 5:13, 5:23

**B**

basic [1] - 4:19
batch [7] - 8:4, 8:7, 8:10, 8:13, 9:2, 9:4, 9:18
batches [1] - 8:5
battle [1] - 23:11
begin [1] - 3:13
beginning [1] - 2:19
benefit [1] - 20:12
Berghoff [1] - 1:20
best [1] - 4:1
better [1] - 15:13
bifurcate [1] - 22:17
bifurcation [2] - 18:10, 23:6
bit [1] - 6:15
bite [1] - 19:18
Boehnen [51] - 1:20, 1:20, 2:24, 3:14, 3:18, 4:18, 4:22, 4:24, 5:22, 6:15, 6:20, 8:23, 8:24, 9:7, 9:17, 9:23, 9:25, 10:16, 11:14, 11:15, 11:21, 12:6, 12:7, 13:1, 14:14, 14:19, 14:20, 15:22, 15:24, 16:6, 16:14, 16:18, 16:20, 17:2, 17:4, 17:19, 18:10, 18:11, 18:19, 18:22, 18:24, 21:6, 21:7, 21:13, 21:20, 22:7, 22:10, 25:4, 25:5
Boehnen's [2] - 11:12, 13:4
Brian [4] - 1:24, 2:6, 3:3, 7:21
briefly [1] - 17:19
bring [1] - 15:24, 18:17
bye [1] - 25:9

**C**

camera [6] - 24:1, 24:6, 24:9, 24:11, 24:18, 25:1
cards [1] - 20:8
care [1] - 18:8
careful [2] - 6:25, 7:15

case [6] - 14:7, 15:12, 22:2, 23:9, 23:16, 23:20
cases [3] - 21:21, 21:22, 24:5
catch [1] - 6:11
categories [2] - 9:1, 10:8
caution [1] - 22:16
certainly [4] - 21:23, 22:25, 23:17, 24:10
chambers [1] - 2:19
chance [2] - 21:6, 23:4
change [1] - 19:16
changes [1] - 13:24
changing [1] - 21:17
Chicago [2] - 1:21, 2:25
Civil [1] - 1:4
claimants [1] - 1:10
clarification [1] - 6:12
Clark [5] - 18:12, 18:18, 19:7, 19:11, 19:18
Clark's [2] - 18:24, 19:14
clear [4] - 5:17, 12:9, 16:20, 17:7
client [1] - 22:23
client's [1] - 23:13
co [1] - 4:18
co-counsel [1] - 4:18
coming [1] - 14:22
comment [4] - 4:6, 5:1, 17:20
commit [1] - 9:4
committed [1] - 18:3
common [1] - 20:16
communications [1] - 19:9
Company [2] - 1:4, 1:22
complete [1] - 10:3
completeness [1] - 11:7
concerned [5] - 4:7, 5:15, 6:5, 6:9, 6:21
concerns [1] - 11:12
conference [3] - 2:19, 3:8, 25:12
Conference [1] - 1:12
conscious [2] - 23:10, 20:5
consent [2] - 20:3, 20:5
consented [1] - 20:6
consideration [1] - 24:6
considerations [1] - 23:1

contemplate [1] - 24:1
content [1] - 22:24
contention [9] - 12:4, 13:1, 13:2, 14:4, 14:15, 15:9, 15:15, 16:5, 19:10
contention-type [1] - 14:15
contentions [3] - 12:24, 13:18, 14:9
contexts [1] - 24:5
continuation [1] - 10:7
continued [2] - 3:24, 6:2
Continued [1] - 2:1
convenience [1] - 19:5
convinced [1] - 23:9
correctly [1] - 8:10
cost [1] - 6:6
costs [1] - 7:6
counsel [4] - 3:3, 4:18, 20:16, 23:8
Counsel [2] - 1:22, 2:8
Counter [2] - 1:6, 1:10
Counter-claimants [1] - 1:10
Counter-defendant [1] - 1:6
counterpart [1] - 15:18
couple [2] - 3:24, 3:25
course [2] - 3:20, 3:25
court [5] - 17:10, 17:12, 21:23, 23:17
Court [50] - 1:1, 2:20, 3:5, 3:7, 4:2, 4:10, 4:14, 4:17, 5:11, 5:20, 5:25, 6:8, 7:23, 8:1, 8:18, 8:22, 9:6, 9:9, 9:16, 9:23, 10:13, 10:22, 11:13, 11:24, 12:1, 12:14, 12:18, 12:22, 13:7, 13:20, 13:23, 14:5, 14:18, 15:2, 15:22, 16:2, 16:7, 16:17, 16:23, 17:6, 17:24, 18:13, 18:22, 19:21, 19:23, 20:1, 21:4, 21:12, 21:18, 22:11, 23:3, 23:22, 23:25, 24:2, 24:4, 24:8, 24:10, 25:3, 25:6, 25:8
Courts [2] - 7:5, 23:23
courtrooms [1] - 23:18
cover [1] - 19:4

crack [2] - 18:19, 23:13
current [1] - 13:21
custom [3] - 21:23, 23:7
cut [2] - 4:15, 6:13

**D**

damages [3] - 22:17, 22:18, 22:21
Dan [1] - 2:24
Daniel [1] - 1:20
date [6] - 9:4, 10:2, 10:7, 10:10, 12:12, 14:24
dated [1] - 3:11
Day's [1] - 3:11
dealing [2] - 4:4, 18:10
decision [1] - 23:23
defendant [1] - 1:6
defendants [1] - 3:2
Defendants [1] - 1:9
defense [1] - 14:21
defensible [1] - 22:3
deferred [1] - 10:4
deficient [2] - 13:2, 13:5
Delaware [3] - 1:2, 1:11, 20:16
delivery [1] - 9:2
depose [1] - 18:12
deposing [1] - 19:10
deposition [17] - 5:3, 5:5, 6:2, 6:3, 7:3, 7:17, 9:8, 10:3, 10:5, 17:22, 19:1, 19:3, 19:18, 20:7, 20:10, 21:2, 22:20
depositions [2] - 10:25, 15:6
detail [1] - 8:7
detailed [1] - 8:6
develop [1] - 3:25
different [1] - 17:22
disclosure [1] - 15:20
discovery [12] - 3:7, 4:19, 10:25, 12:3, 12:23, 13:16, 13:17, 15:5, 21:24, 22:17, 22:22
discussion [1] - 15:18
dispute [3] - 3:8, 14:13, 15:22
disputes [2] - 12:4, 12:6
District [3] - 1:1, 1:2, 23:19

doctor's [1] - 19:5
document [6] - 4:5, 7:12, 7:19, 11:2, 11:18, 24:13
documents [30] - 4:7, 4:8, 4:25, 5:2, 6:4, 6:17, 6:21, 6:22, 6:24, 7:9, 7:10, 7:13, 9:1, 9:15, 9:18, 9:19, 10:9, 10:20, 10:24, 11:5, 11:8, 11:11, 11:16, 11:19, 11:22, 11:23, 24:11, 24:19, 24:20
Done [2] - 12:1, 17:1
done [12] - 5:18, 5:23, 8:22, 9:24, 10:5, 10:25, 16:17, 18:5, 22:1, 22:2, 24:4
down [1] - 19:15
Dr [6] - 18:12, 18:18, 18:24, 19:7, 19:11, 19:14
due [2] - 10:18, 20:19
during [3] - 3:25, 19:8

**E**

early [1] - 8:11
easily [1] - 22:3
effect [1] - 24:17
either [5] - 7:3, 12:12, 14:7, 16:8, 18:7
element [1] - 22:16
end [2] - 8:10, 15:19
ends [1] - 25:12
entered [1] - 5:4
entitled [1] - 21:9
Esq [6] - 1:18, 1:20, 1:21, 2:3, 2:6, 2:6
essentially [3] - 13:2, 20:3, 21:25
establish [1] - 6:3
estoppel [1] - 14:21
exactly [1] - 8:14
example [2] - 4:20, 8:7
exception [1] - 14:3
exchanged [1] - 21:25
expect [1] - 24:19
experience [1] - 23:23
expert [20] - 7:9, 7:18, 10:4, 10:15, 10:17, 10:22, 12:2, 12:13, 18:24, 19:11, 19:19, 20:7, 20:22, 20:24, 21:1, 21:2, 21:7, 21:13, 22:4
expert's [1] - 7:20
experts [2] - 21:24, 22:19

explain [2] - 21:15, 24:25
explaining [1] - 4:12
explanation [2] - 19:16, 24:7
extending [1] - 10:15
extent [1] - 8:13
extraordinary [1] - 24:23

**F**

fact [1] - 15:19
factory [1] - 8:15
fails [1] - 13:5
fair [1] - 20:18
fashion [1] - 23:17
Fda [1] - 8:7
fees [1] - 7:7
few [1] - 21:22
field [2] - 20:9, 20:18
file [2] - 13:18, 22:24
filed [2] - 3:20, 22:15
fine [1] - 16:1
finished [2] - 12:5, 19:19
firm [3] - 2:24, 3:4, 3:11
first [7] - 3:17, 4:4, 4:24, 18:14, 18:19, 18:23, 19:7
focus [1] - 6:16
folks [3] - 3:11, 3:17, 4:20, 13:9
follow [2] - 9:8, 19:8
follow-up [2] - 9:8, 19:8
following [4] - 2:18, 12:8, 16:11, 19:8
forced [1] - 21:1
form [1] - 20:4
formulate [1] - 21:10
forth [1] - 12:12
forward [2] - 7:2, 7:16
frankly [1] - 20:5
free [1] - 23:13
Friday [5] - 9:14, 9:24, 10:18, 11:2, 11:23
front [1] - 6:5
full [5] - 4:8, 4:9, 5:18, 6:25, 7:18
fully [5] - 11:6, 19:14, 19:17, 21:13, 23:1
fulsome [1] - 23:15

**G**

Gaffigan [1] - 1:24
game [2] - 16:6, 16:8

Geddes [2] - 2:3, 3:2
general [1] - 23:23
generic [1] - 11:10
genuinely [1] - 24:22
given [6] - 6:13, 8:20, 10:6, 13:25, 22:3, 22:20
Good-bye [1] - 25:9
gotcha [1] - 14:9
great [1] - 9:17
guess [5] - 7:4, 16:2, 17:8
gun [1] - 13:8
guys [4] - 12:4, 16:9, 17:11, 17:14

**H**

handed [1] - 24:16
handled [1] - 23:16
happy [1] - 16:15
hard [1] - 22:20
hat [1] - 14:8
heads [1] - 23:4
hear [5] - 10:20, 10:25, 12:14, 13:23, 23:21
heard [2] - 9:11, 19:6
hearing [5] - 3:21, 9:6, 9:9, 17:1, 18:1
held [1] - 2:19
Hi [1] - 2:20
Honor [44] - 2:22, 3:1, 3:6, 3:19, 4:13, 4:24, 7:21, 8:24, 9:14, 9:21, 10:1, 10:6, 10:20, 11:9, 11:21, 11:25, 12:7, 12:9, 12:16, 12:19, 12:25, 13:12, 14:2, 14:14, 15:8, 15:17, 15:25, 16:3, 17:18, 17:19, 18:11, 18:20, 18:24, 19:25, 20:2, 20:5, 22:10, 22:13, 23:21, 23:24, 24:24, 25:5, 25:7, 25:11
Honorable [1] - 1:14
hope [1] - 8:13
Hopefully [1] - 14:10
hoping [1] - 3:21
Hulbert [1] - 1:20

**I**

identification [2] - 14:17, 15:17
identifications [1] - 15:10

identified [4] - 15:20, 15:25, 16:9, 17:3
identify [1] - 15:7, 16:4
Illinois [1] - 1:21
inappropriate [1] - 19:10
Inc [4] - 1:8, 1:8, 2:8, 2:8
inclined [1] - 14:11
included [1] - 9:21
incumbent [1] - 7:2
indicated [1] - 19:4
indicating [1] - 8:20
information [5] - 8:16, 15:1, 16:11, 16:21, 20:13
infringing [2] - 8:15, 8:21
initial [2] - 8:11, 15:20
intend [1] - 24:5
interrogatories [7] - 13:1, 13:3, 15:9, 15:16, 16:4, 16:5, 16:15
Interrogatory [1] - 14:16
interrogatory [8] - 12:5, 12:6, 12:12, 12:20, 13:19, 14:15, 16:10
introduce [1] - 12:10
issue [2] - 12:15, 14:18, 18:10
issues [4] - 12:3, 12:5, 13:13, 18:9

**J**

John [2] - 2:3, 3:2
Jordan [2] - 1:14, 2:20
Joshua [2] - 1:21, 2:24
Judge [1] - 2:20
judges [2] - 23:18
July [1] - 1:12
jump [1] - 13:8

**K**

Kaj [1] - 1:9
keep [1] - 14:25
Kent [1] - 1:14
kind [4] - 4:1, 8:8, 9:19, 12:5
kinds [2] - 21:21, 21:22
knowledge [2] - 5:8, 15:12
known [1] - 14:23

knows [2] - 21:2, 21:8

**L**

lab [3] - 4:20, 5:12, 5:16
laboratory [1] - 8:4
laches [1] - 14:21
laid [1] - 13:12
last [2] - 7:24, 14:11
latest [1] - 22:25
lay [2] - 14:6, 23:1
lead [1] - 3:3
leads [1] - 13:17
least [1] - 18:14
leaving [1] - 17:4
legal [3] - 14:9, 24:11, 25:1
letter [16] - 3:8, 3:10, 4:2, 4:25, 5:1, 5:10, 5:11, 11:10, 13:4, 14:3, 18:14, 18:15, 18:16, 19:4, 22:15, 22:18
letters [3] - 3:11, 3:23, 13:11
level [1] - 20:18
light [1] - 4:20
likely [1] - 23:8
likewise [1] - 11:16
limited [1] - 24:20
line [3] - 2:21, 16:14, 17:16
list [1] - 15:11
litigation [1] - 22:4
Lip [2] - 1:20, 2:5
local [2] - 15:10, 23:8
locally [1] - 3:2
locked [1] - 19:15
logistics [1] - 17:17
looking [2] - 5:20, 18:7
love [1] - 9:18

**M**

manufacturing [7] - 4:6, 4:25, 6:22, 7:13, 7:25, 9:17, 11:22
Maryellen [2] - 1:18, 2:23
material [4] - 22:23, 24:3, 24:8, 25:1
matter [1] - 14:3
Mcdonnell [2] - 1:20, 2:24
mentioned [1] - 10:16
Merit [1] - 1:25
midstream [1] - 6:11

might [1] - 23:10
mind [2] - 13:24, 20:4
minute [1] - 14:12
misheard [1] - 9:10
Monday [3] - 9:14, 10:1, 22:25
money [1] - 23:13
month [2] - 17:23, 20:20
months [1] - 17:22
Moriarty [31] - 2:6, 3:3, 3:6, 4:11, 4:13, 4:15, 6:19, 6:24, 7:14, 7:21, 7:22, 7:24, 8:19, 9:13, 9:21, 10:6, 10:14, 11:4, 11:24, 11:25, 12:14, 15:4, 15:8, 16:3, 16:13, 16:18, 17:2, 17:18, 22:11, 25:6, 25:7
Morris [2] - 1:17, 2:23
motion [6] - 22:15, 22:17, 22:25, 23:1, 23:24, 24:8
move [2] - 6:13, 18:8
moved [1] - 6:16

**N**

nailed [1] - 19:15
names [1] - 18:6
Nath [1] - 2:5
need [14] - 3:16, 6:1, 6:10, 6:11, 6:12, 16:25, 18:8, 22:23, 22:24, 23:10, 23:24, 24:14, 24:25, 25:4
needed [1] - 22:14
needing [3] - 7:11, 15:5, 24:1
never [4] - 10:14, 10:15, 20:15, 20:17
New [2] - 2:7
new [3] - 14:9, 14:22, 21:14
next [7] - 3:25, 9:10, 10:1, 11:3, 11:23, 18:8, 22:25
Nichols [2] - 1:17, 2:23
Noreika [3] - 2:23, 3:9, 3:14
Norieka [2] - 1:18, 2:22
note [1] - 10:14
Note [1] - 2:18
notebooks [3] - 4:20, 5:12, 5:16
noted [1] - 4:5

nothing [1] - 19:20
notice [2] - 19:1, 19:2
number [1] - 13:3
Number [1] - 9:1

**O**

obligation [1] - 12:20
obviously [4] - 6:5, 9:22, 24:9, 25:2
occasions [1] - 6:11
off-line [2] - 16:14, 17:16
offered [3] - 9:15, 10:10, 11:2
once [1] - 23:20
One [2] - 5:9, 10:23
one [3] - 3:11, 5:10, 7:19, 9:1, 10:8, 11:9, 14:10, 14:14, 19:17, 20:24, 21:8, 22:16, 23:5
ooo [1] - 2:16
open [1] - 17:12
opportunity [2] - 3:23, 17:5
Order [1] - 19:21
order [4] - 3:22, 7:19, 12:10, 20:3
original [1] - 8:19
originally [1] - 3:8
otherwise [1] - 6:1
Otherwise [1] - 7:6
ought [3] - 23:16, 24:11, 24:19
overdue [1] - 13:16
own [1] - 13:13

**P**

pages [3] - 5:12, 5:13, 5:16
paper [2] - 11:13, 20:4
part [3] - 15:13, 17:17, 24:8
parties [3] - 3:22, 12:10, 21:25
past [2] - 6:16, 24:23
people [7] - 15:5, 15:11, 16:10, 17:15, 18:5, 21:16, 21:24
perfectly [1] - 24:25
perhaps [1] - 12:9
persuade [1] - 10:23
pharmaceutical [1] - 8:5
Pharmaceuticals [2] - 1:8, 2:8
Pharmacia [1] - 1:4,

1:22, 11:11, 20:24
Pharmacia's [2] - 13:14, 18:20
pick [1] - 6:10
piece [3] - 17:16, 22:9, 24:13
plaintiff [2] - 2:22, 3:15
Plaintiff [1] - 1:5
play [1] - 18:18
playing [3] - 14:9, 20:9, 20:18
Pm [1] - 25:12
point [14] - 4:11, 5:3, 5:22, 6:13, 6:16, 10:21, 12:9, 13:3, 13:4, 14:7, 19:12, 21:16, 22:6, 24:14
pointed [1] - 8:10
points [3] - 7:22, 8:25, 11:9
position [10] - 19:14, 20:11, 20:14, 21:8, 21:9, 21:10, 21:11, 21:15, 21:17, 22:2
positions [6] - 12:11, 13:25, 14:1, 21:18, 21:19, 21:25
possession [1] - 10:1
practicalities [1] - 22:4
practice [3] - 20:6, 20:16, 21:23, 22:3, 23:7
prejudice [1] - 24:2
prepared [1] - 11:5
preparing [1] - 19:19
Presumably [1] - 21:8
previously [1] - 15:11
privilege [1] - 24:17
privileged [1] - 24:3
problem [4] - 14:24, 15:6, 18:1, 18:2
produce [2] - 8:3, 22:23
produced [6] - 5:2, 5:4, 5:6, 5:14, 7:1, 7:16, 8:5, 11:5
product [1] - 11:10
production [12] - 4:5, 4:8, 4:9, 7:18, 8:3, 8:11, 8:17, 8:20, 10:12, 11:2, 11:7, 13:14
products [4] - 8:5, 8:8, 8:15, 8:21
prospective [1] - 14:17
provide [1] - 9:3
pull [2] - 4:10, 14:11

pulling [2] - 13:9, 14:8
put [6] - 3:24, 4:1, 13:15, 16:9, 20:2, 20:8

**Q**

quarter [1] - 20:20

**R**

R&d [17] - 5:2, 5:13, 5:16, 6:4, 6:21, 6:24, 7:12, 9:15, 9:16, 10:19, 11:5, 11:8, 11:11, 11:15, 11:17, 11:18, 11:22
rabbit [1] - 14:8
raise [3] - 11:20, 14:4, 18:9
raising [1] - 24:3
read [3] - 11:13, 13:11, 20:10
real [1] - 23:11
realize [4] - 5:24, 7:2, 19:17, 21:13
really [4] - 4:5, 15:13
rebuttal [1] - 20:23
received [1] - 22:18
record [4] - 7:25, 8:1, 16:25, 17:10
records [13] - 8:4, 8:6, 8:7, 8:10, 8:13, 8:17, 8:19, 8:20, 9:2, 9:3, 9:4, 10:17
reflect [1] - 24:6
refused [2] - 9:3, 9:4
regard [2] - 5:21, 14:13
Registered [1] - 1:25
Reid [2] - 2:6, 3:3
related [1] - 10:23
relation [1] - 14:21
relevance [1] - 24:15
relevant [1] - 15:12
relief [6] - 6:18, 22:5, 22:14, 22:24, 23:2
rely [1] - 24:5
remain [2] - 4:7, 5:15
remarks [1] - 17:11
replacement [2] - 3:10, 4:1
reply [2] - 20:23, 21:6
report [15] - 7:10, 7:11, 7:18, 7:20, 10:4, 10:18, 18:25, 19:19, 20:10, 20:19, 20:21, 20:22, 20:23, 21:7, 21:14

Reporter [1] - 1:25
reporter [1] - 17:10
Reporteis [1] - 2:18
reports [5] - 10:15, 10:22, 12:3, 12:13, 19:11
representation [2] - 5:17, 5:24
representing [1] - 6:25
represents [1] - 7:15
request [4] - 4:6, 15:6, 18:12, 18:21
requests [1] - 7:12
require [1] - 21:24
resolve [3] - 14:13, 18:2, 18:3
resolved [1] - 7:25
respect [4] - 6:17, 11:18, 14:25, 18:18
respond [5] - 12:17, 23:14, 24:12, 24:22, 25:10
responded [3] - 15:9, 15:10, 15:15
response [9] - 3:12, 4:4, 4:17, 9:20, 14:18, 18:15, 20:21, 22:18, 23:15
responses [4] - 12:12, 12:20, 13:10, 13:19
resume [2] - 7:16, 10:3
return [1] - 10:21
review [1] - 8:6
revise [1] - 13:17
Rich [4] - 1:21, 2:24, 8:2, 19:9
room [1] - 5:5
Rosenthal [1] - 2:5
rule [1] - 19:20

**S**

schedule [1] - 15:5
scheduling [1] - 20:3
scope [1] - 11:7
seal [1] - 24:18
sealed [1] - 24:9
search [9] - 4:8, 5:6, 5:8, 5:18, 5:19, 5:23, 7:1, 7:15, 10:8
second [1] - 14:3
seconds [1] - 5:5
see [2] - 18:14, 23:17
seek [1] - 22:5
seeking [1] - 22:14
sees [1] - 21:14
semantic [2] - 16:6,

16:8
sense [1] - 12:8
September [6] - 3:9, 3:12, 3:20, 18:16, 19:3, 19:6, 20:20
served [3] - 15:11, 18:25, 19:1
set [2] - 12:11, 19:3
shape [1] - 20:4
shift [1] - 22:9
shipping [2] - 9:2, 9:19
short [2] - 4:23, 24:20
Shortly [1] - 18:25
shot [1] - 18:23
show [2] - 6:1, 7:3
showing [1] - 23:5
shy [1] - 5:17
Sicor [9] - 1:8, 2:8, 4:2, 17:20, 18:25, 19:1, 22:9
Sicor's [3] - 4:4, 5:11, 19:9
side [10] - 7:12, 7:13, 10:23, 14:7, 21:21, 22:8, 23:14, 24:12, 24:17, 24:21
sides [1] - 6:9
significance [1] - 24:16
significant [2] - 17:25, 18:1
similar [1] - 11:10
simply [2] - 13:4, 20:2
Sonnenschein [2] - 2:5, 3:4
soon [1] - 3:21
Sorry [1] - 8:24
sort [2] - 10:8, 24:19
sounds [2] - 8:22, 9:23
speakerphone [1] - 6:10
speakerphones [1] - 6:14
speaking [3] - 3:15, 21:18, 23:6
specific [1] - 18:6
specifically [2] - 6:17, 12:23
specificity [1] - 24:14
specify [1] - 13:5
speed [1] - 18:17
spend [1] - 23:12
stake [1] - 20:11
start [3] - 7:24, 12:2, 18:10
state [1] - 18:17
statement [1] - 9:12
States [1] - 1:1

stating [1] - 13:1
stay [4] - 12:3, 22:17, 22:19, 22:22
stick [2] - 9:16, 10:19
still [3] - 4:19, 4:23, 16:13
Stop [2] - 16:23, 17:7
stopped [1] - 4:16
subject [1] - 14:3
submission [4] - 5:11, 24:1, 24:7, 24:16
submit [3] - 7:20, 24:10, 24:18
submitted [1] - 24:12
Suffice [2] - 13:15, 15:4
suggest [1] - 6:9
supplement [7] - 7:11, 8:3, 8:9, 8:17, 12:20, 14:25, 16:16
supplemental [1] - 11:1
supplemented [1] - 13:3
supplementing [1] - 14:25
support [1] - 23:2
surprises [2] - 13:11, 15:14

**T**

table [3] - 13:14, 20:8, 20:25
tangent [1] - 10:19
team [1] - 17:15
technology [1] - 6:14
tee [1] - 3:16
teeth [1] - 13:9
teleconference [1] - 17:12
Telephone [2] - 1:12, 25:12
telephone [1] - 2:18
terms [1] - 13:21
testify [1] - 11:6
testimony [1] - 22:4
theories [3] - 12:11, 13:18, 14:9
they've [2] - 5:18, 15:12
thinks [1] - 21:15
thorough [5] - 4:8, 5:18, 7:1, 7:15, 10:9
thoroughness [1] - 11:7
Thursday [5] - 1:12, 10:11, 11:3, 11:23, 19:6

ticking [1] - 15:5
timing [2] - 9:11
today [4] - 5:10, 10:2, 13:15, 22:14
topic [3] - 5:7, 7:24, 18:8
topics [2] - 15:7, 16:11
total [1] - 5:16
touch [2] - 17:14, 17:15
touched [1] - 3:8
true [6] - 7:3, 7:4, 7:6, 17:24, 17:25
truth [2] - 15:17, 20:22
try [3] - 14:11, 12:24, 23:20
trying [1] - 19:15
Tunnel [1] - 1:17
turns [1] - 7:4
Two [1] - 8:25
two [3] - 3:10, 5:9, 6:20
type [1] - 14:15
typical [2] - 23:16
typically [2] - 22:1, 23:18

**U**

under [1] - 24:18
uneven [1] - 20:9
unfair [1] - 17:20
United [1] - 1:1
units [1] - 8:14
unless [4] - 5:25, 9:9, 13:23, 24:22
up [11] - 3:16, 6:10, 6:15, 9:8, 14:22, 18:17, 19:8, 21:24, 23:4, 24:17, 25:4
updated [1] - 4:2
uphill [1] - 23:11
Upjohn [2] - 1:4, 1:22
urge [1] - 24:6
Usdc [1] - 1:14
useful [1] - 7:9

**V**

validity [1] - 10:18
view [2] - 12:7, 15:16
viewed [1] - 16:4
volumes [1] - 11:11

**W**

wants [4] - 10:20, 10:21, 16:15, 18:17

warning [1] - 23:22
week [12] - 7:19, 8:12, 9:14, 10:2, 10:5, 10:10, 11:3, 16:16, 17:1, 18:3, 19:5, 19:8
weeks [3] - 3:24, 3:25, 5:10
whale [1] - 23:5
whatsoever [1] - 20:13
whoa [1] - 16:23, 17:6
Whoa [1] - 17:6
willfulness [1] - 14:4, 23:6
willing [1] - 19:4
Wilmington [2] - 1:11, 2:23
wish [2] - 8:24, 19:18
witness [23] - 4:21, 5:5, 5:7, 9:7, 10:3, 10:7, 11:3, 11:5, 11:6, 11:17, 11:23, 12:13, 15:10, 18:12, 20:7, 20:10, 20:11, 20:12, 20:13, 20:21, 21:1
witnesses [10] - 14:17, 14:20, 15:7, 15:17, 15:19, 15:21, 15:25, 16:9, 17:3
write [1] - 22:14
wrote [1] - 22:16

**Y**

year [1] - 15:13
years [2] - 20:5, 21:22
York [2] - 2:7

8

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

October 24, 2005

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

VIA ELECTRONIC FILING

Re:     *Pharmacia & Upjohn Company v. Sicor Inc. and Sicor Pharmaceuticals Inc.*
        C.A. No. 04-833-KAJ

Dear Judge Jordan:

We, along with Sonnenschein Nath & Rosenthal LLP, represent defendants Sicor Inc. and Sicor Pharmaceuticals, Inc. (collectively, "Sicor") in the above-referenced patent dispute. In accordance with Your Honor's instruction during the October 11, 2005 telephonic hearing (the "October 11 Hearing"), we write to advise the Court that Sicor has decided to assert an advice of counsel defense to Pharmacia & Upjohn LLC's willful infringement allegation. Having made that decision, Sicor recognizes that it must waive the attorney-client privilege with respect to the legal opinion upon which it relied in deciding to launch its idarubicin hydrochloride injection in the Summer of 2002. Thus, Sicor will produce to Pharmacia today the February 28, 2001 opinion of the Brobeck Phleger & Harrison firm and the supporting declaration of Dr. Waldemar Priebe, which was obtained by the Brobeck firm during its opinion work, and the other exhibits attached thereto (collectively, the "Brobeck Opinion"). The Brobeck Opinion states that "we have reached the firm conclusion that all of the claims of the '285 patent are invalid."

Sicor understands the scope of its privilege waiver to be limited to the actual advice provided to its CEO at the time, Mr. Marvin Samson, and considered by Mr. Samson in making the product launch decision in the Summer of 2002. Mr. Samson became the CEO of Sicor in September 2001. Mr. Samson is prepared to testify at deposition and at trial that in deciding to launch the idarubicin hydrochloride injection in 2002, the only information he recalls receiving or reviewing with respect to patent issues were: (1) conversations with Sicor's general counsel, Mr. Wesley N. Fach, sometime in 2002 prior to the September 2002 product launch, to the effect that the company had received an invalidity opinion from outside counsel; and (2) portions of the Brobeck Opinion itself.

During the October 11 Hearing, the Court stated that the privilege waiver would extend only to communications with the decision maker with respect to the patent at issue:

> I also typically do not view attorney work product as being within
> that scope of waiver.

Honorable Kent A. Jordan
October 24, 2005
Page 2

***

> *I'm not telling you that everything you sent over to me is going to
> the other side.* What I'm telling you is you need to make an
> election about whether you want to invoke the [advice of counsel
> defense]. If you do, you are going to have to give up *information
> that was communicated to the client* associated with the opinion
> that you want to rely on.

(Ex. A: October 11 Hearing Transcript at 14:7 – 15:2) (emphasis added).

Both Mr. Samson and Mr. Fach, Sicor's general counsel, are prepared to testify that no privileged documents other than the Brobeck Opinion itself were presented to or reviewed by Mr. Samson in connection with the 2002 launch decision. The three documents that were attached as Exhibits A through C to Sicor's *in camera* submission (Bates Nos. SICOR-PNU 026342-43, 026347 and 029305-07) – which were dated between August 2000 and March 2001 – were created well before Mr. Samson became Sicor's CEO, and well over a year before Mr. Samson made the product launch decision. They are thus irrelevant – the decision maker did not read or rely on them in making his launch decision. For that reason alone, they should not have to be produced by Sicor. In addition, this Court has recognized that those documents "raise[] some significant issues in terms of potential prejudice. . . ." (Ex. A at 8:16-18). This too militates against their disclosure.

Moreover, the documents constitute attorney work product – they set forth the mental impressions of Mr. Fach with respect to anticipated litigation. Indeed, by the time Mr. Fach prepared these documents, Pharmacia had already threatened to commence litigation if Sicor launched its idarubicin hydrochloride injection. This is classic work product that, as this Court observed during the October 11 Hearing, is not within the scope of Sicor's waiver of the attorney-client privilege based upon its assertion of an advice of counsel defense. The documents thus should not be produced for this reason as well.

The potential prejudice resulting from the waiver of privilege and the presentation to both plaintiff's counsel and the jury of the documents attached as Exhibits A through C to Sicor's *in camera* submission formed the primary basis for Sicor's bifurcation motion. For the reasons set forth in Sicor's *in camera* submission and herein, Sicor believes that these documents should not be produced to plaintiff's counsel, as their prejudicial effect far outweighs their probative value. To the extent this Court believes it appropriate for Sicor to make a formal record of the matters set forth in this letter, Sicor is prepared to do so. Mr. Samson and Mr. Fach are prepared to sit for deposition, and Mr. Samson's deposition has already been scheduled with plaintiff's counsel.

Honorable Kent A. Jordan
October 24, 2005
Page 3


We appreciate the time and attention that the Court has devoted to this issue.


Respectfully,

*/s/ Steven J. Balick*

Steven J. Balick


SJB/dmf


cc:    Maryellen Noreika, Esquire (by hand)
       Daniel A. Boehnen, Esquire (via electronic mail)
       Reid L. Ashinoff, Esquire (via electronic mail)

# EXHIBIT A

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                             -  -  -

 4   PHARMACIA & UPJOHN COMPANY,          :   CIVIL ACTION
                                          :
 5                                        :
                     Plaintiff and        :
 6                   Counter-defendant,   :
                                          :
 7   v.                                   :
                                          :
 8   SICOR INC., and SICOR                :
     PHARMACEUTICALS INC.,                :
 9                                        :
                     Defendants and       :   NO. 04-833 (KAJ)
10                   Counter-Claimants.   :
                                 -  -  -

11
                            Wilmington, Delaware
12                   Tuesday, October 11, 2005 at 3:00 p.m.
                            TELEPHONE CONFERENCE
13                             -  -  -

14
     BEFORE:       HONORABLE KENT A. JORDAN, U.S.D.C.J.
15                             -  -  -

16   APPEARANCES:

17
                   MORRIS NICHOLS ARSHT & TUNNELL
18                 BY:  MARYELLEN NORIEKA, ESQ.

19                     and

20                 McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
                   BY:  DANIEL A. BOEHNEN, ESQ.,
21                      JOSHUA R. RICH, ESQ., and
                       GRANTLAND G. DRUTCHAS, ESQ.
22                     (Chicago, Illinois)

23                          Counsel for Pharmacia & Upjohn
                            Company
24

25                                Brian P. Gaffigan
                                  Registered Merit Reporter
```

1    APPEARANCES: (Continued)

2

3                    ASHBY & GEDDES
                     BY:  JOHN G. DAY, ESQ.
4
                          and
5
                     SONNENSCHEIN NATH & ROSENTHAL, LLP
6                    BY:  REID L. ASHINOFF, ESQ. and
                          DAVID R. BAUM, ESQ.
7                         (New York, New York)

8                         and

9                    SONNENSCHEIN NATH & ROSENTHAL, LLP
                     BY:  JORDAN A. SIGALE, ESQ.
10                        (Chicago, Illinois)

11                        Counsel for Sicor Inc. and Sicor
                          Pharmaceuticals Inc.
12

13

14                        - oOo -

15               P R O C E E D I N G S

16             (REPORTER'S NOTE:  The following telephone

17    conference was held in chambers, beginning at 3:00 p.m.)

18             THE COURT:  Hi, this is Judge Jordan.  Who do I

19    have on the line?

20             MS. NOREIKA:  Good afternoon, Your Honor.  It's

21    Maryellen Noreika from Morris Nichols for plaintiff

22    Pharmacia; and I have with me, Dan Boehnen and Joshua Rich

23    of the McDonnell Boehnen firm in Chicago.

24             MR. BOEHNEN:  Also with us in Chicago is Grant

25    Drutchas.

1              MS. NOREIKA:  Oh.  I apologize, Grant.

2              THE COURT:  All right.  Who do I have on for

3     Sicor?

4              MR. DAY:  Good afternoon, Your Honor.  On behalf

5     of Sicor, you have John Day from Ashby & Geddes as local

6     counsel; and from the Sonnenschein firm in New York, Reid

7     Ashinoff and David Baum; and from Sonnenschein's office in

8     Chicago, Jordan Sigale.

9              THE COURT:  All right.

10              MR. ASHINOFF:  Good afternoon, Your Honor.

11              THE COURT:  Good afternoon.  Well, by my count,

12     this is the fifth time we're getting together in this case

13     because we have discovery issues.  So this is not a good

14     record, ladies and gentlemen, but we're going to plow

15     through what we've got here.

16              Before we start, however, I have a question

17     for the folks at Sicor, and that is, I got the in camera

18     submission that you sent over.  Did you send a version,

19     redacted, if you thought necessary, of your legal argument

20     to the opposing counsel?

21              MR. ASHINOFF:  Your Honor, what we served on

22     the opposing counsel is a motion that we filed and a

23     privilege log that listed the privilege material that the

24     Court got.  What we served in camera on the Court was the

25     short discussion of the substance of the privileged material

4

1    and the actual privileged material.  We did not serve copies

2    of the discussion and description of the privilege material

3    or the actual material on our adversary.

4              THE COURT:  All right.  I need to have you

5    identify yourself for the record.

6              MR. ASHINOFF:  It's Reid Ashinoff.  I'm sorry,

7    Your Honor.

8              THE COURT:  All right.  Mr. Ashinoff, that's not

9    going to cut it.  I'm going to quote to you what I said in

10   our last teleconference on the 19th of September.  Page 24

11   of the transcript:

12             "You can certainly submit your documents in

13   camera and your legal arguments ought to be submitted so

14   that the other side can respond to them."

15             Later on the same page:

16             "In short, you give me the documents but you

17   give your arguments to the attorney side, too, so they can

18   respond unless it's something genuinely extraordinary that

19   you think will get past me; all right?"

20             And what I was trying to communicate there and

21   what I will reemphasize is I'm not going to let you give me

22   legal argument without an opportunity for them to respond to

23   legal argument.

24             MR. ASHINOFF:  Your Honor, I don't think we cite

25   any law at all in the material we submitted in camera.  What

5

1    we submitted in camera basically highlights certain lines

2    in the privileged text and points those out to the Court,

3    amongst the entirety of the text, points those lines out and

4    makes the factual points that we think those would prejudice

5    us.  All the legal argument is in the publicly filed motion

6    and the cases are in the publicly filed motion, as the Court

7    directed.

8           THE COURT:  All right.  On the other side, do

9    you have the documents with legal argument in it?

10          MR. BOEHNEN:  Your Honor, we have the document

11   that was titled their memorandum in law in support of the

12   motion.  Of course, we have nothing that contains any kind

13   of description even generic or otherwise of the documents

14   that are submitted in camera.

15          THE COURT:  Well --

16          MR. ASHINOFF:  Your Honor, they have a privilege

17   log that identifies each of the in camera documents.

18          THE COURT:  Yes.  Here is the problem I'm

19   having.  Well, let me ask you.  Again, I know I'm picking

20   this out instead of dealing in the first instance with the

21   stuff you guys teed up but this is important to get taken

22   care of so I'm taking the time while we're on the phone to

23   do it.

24          What did you have in mind, Mr. Ashinoff?  Say

25   you had the result you wanted, which was a bifurcation of

6

1  willfulness and, you know, that I agreed with you and to

2  throw my own language back at myself, I said "you'd need a

3  whale of a showing" and you've done it.  What did you have

4  in mind for how this was to be bifurcated?

5         MR. ASHINOFF:  Your Honor, what we had in

6  mind and what we suggested in the legal memo was that the

7  documents and the issue of willfulness would not be produced

8  now so we wouldn't have to produce privileged material and

9  we'll go to trial on the underlying liability issues, to the

10  extent that Sicor is successful at the end of the case.

11         To the extent it's Pharmacia is successful

12  and it does not resolve, what we contemplated was there is

13  only going to be about a very small handful of privileged

14  documents, as Your Honor can now see, and only two or three

15  witnesses at most who would really talk to them and we

16  contemplated bringing those witnesses to Delaware after the

17  first stage of the trial, have the same jury take a week

18  off or even four days for the expedited discovery of the

19  willfulness evidence.  We would then have -- obviously, we'd

20  be forced to waive.  If we were going to waive, we would put

21  the witnesses up in Delaware on an expedited basis for the

22  plaintiff and you would rebring the jury back four or five

23  days later and try willfulness.  That is the procedure we

24  contemplated.  We didn't contemplate a need to have a second

25  separate jury and we didn't contemplate any inordinate

1    delay; and obviously recognizing the Court's desire for

2    efficiency, we contemplated bringing the witnesses to be

3    deposed in Delaware for the convenience of plaintiff and

4    the Court.

5            THE COURT:  All right.  Based on what you have

6    been able to read, who on the Pharmacia side, if anybody,

7    wants to speak up and respond to that?

8            MR. BOEHNEN:  Your Honor, this is Dan Boehnen.

9            I would note that, first of all, the idea of

10   three or four days or a week I think would not be at all

11   fair, would put us at a great disadvantage.  We're envision-

12   ing the situation where the jury has found that the patents

13   are valid and infringed and we're now going into a damage

14   phase and one of the issues is going to be whether the

15   infringement is willful.  Well, I not only need time to take

16   discovery of the information that has been withheld based on

17   grounds of privilege but I need time to now go back over not

18   only the prior trial transcripts but all of the previous

19   discovery so as to connect the dots back up to the broader

20   picture.  That isn't going to be done in a matter of two or

21   three or four days.

22           THE COURT:  All right.

23           MR. BOEHNEN:  Second of all, we have lots of

24   document requests, interrogatories, depositions that we

25   wanted to take now that do not go to privileged subject

1    matter but do go to the willfulness issue.  And at this

2    point, Sicor has refused to provide those, too, until this

3    whole issue was resolved.

4            THE COURT:  Well, we're going to resolve it

5    in part right now, and here is how.  And I say that in

6    part for this reason:  We're not bifurcating discovery here

7    so anything that has to do with willfulness and isn't

8    privileged you give up right now, Mr. Ashinoff, and do it

9    post haste.  Get moving on it.

10           Second, I agree with the plaintiff here that

11   saying "well, I've give you three four days in between"

12   doesn't cut it.  If you want to rely on an advice of counsel

13   defense, you are going to waive your privilege and you are

14   going to do that now, although it does not mean that it's

15   going to be tried with the liability phase.

16           I've taken a look at what you sent over.  I

17   agree it raises some significant issues in terms of potent-

18   ial prejudice and so I am not deciding the bifurcation issue

19   today.  And that, all by itself, is I think a step forward

20   for the folks on the Sicor side because it is out of our

21   custom and practice or at least mine to think about doing

22   this, but you have raised enough of an issue that I'm

23   prepared to hear what the other side says, but it's going

24   to be something that the other side says based on an

25   understanding of exactly the character of the information

1   you believe so prejudicial that it must be kept from the

2   jury in the liability phase.

3          So you make your decision in your election.  If

4   you want to rely on this advice of counsel defense, you've

5   waived your privilege and you start producing even the

6   privilege material now, because I want to hear from the

7   other side what their response is to your argument that

8   there are aspects of this privilege material which are

9   of such prejudicial effect that it would taint a jury in

10  considering liability.

11         Now, Mr. Ashinoff, having heard that ruling, do

12  you want or need additional time to decide whether to rely

13  on an advice of counsel defense?

14         MR. ASHINOFF:  Absolutely, Your Honor.  I need

15  to be able to advise the senior decision makers at my client

16  and sit down with them at some point and get them obviously

17  in the near term to make a decision.

18         There is one aspect of what the Court is

19  suggesting that I just heard that maybe I should have heard

20  in the prior comments but didn't.  To the extent the Court

21  is suggesting that we need to make a decision on waiver and

22  produce privileged materials before the Court makes a

23  decision on bifurcation, that procedure is not something

24  we're familiar with.

25         We tried to follow the Federal Circuit authority

1    with the in camera submission and the Circuit authorities

2    and the other decisions that have found that bifurcation has

3    been appropriate, having not ordered the production of the

4    privileged material at this phase.  And if that is what the

5    Court is suggesting, respectfully, that is quite a departure

6    from the standard practice in the various Circuits on this

7    issue, if we haven't in fact been able to raise.  And we

8    greatly respect the Court's attention to the issue but in

9    fact we're prejudiced, the very handing over that material

10   to the other side is a manifestation of that prejudice and

11   harm.

12           THE COURT:  I understand I think pretty clearly

13   the arguments on both sides, and what I'm telling you is if

14   you want the benefit of a bifurcation here, it's going to be

15   a benefit you get in the context of appropriate respect for

16   what I deem to be the plaintiff's needs and the imposition

17   which it is on a jury to have to deal with this in a

18   bifurcated fashion.

19           So there is no prejudice in front of a jury if

20   you produce now and I say there is bifurcation.  The

21   prejudice, which is real and it don't think insignificant,

22   I grant you; that turning over attorney-client privileged

23   material is, in and of itself, a significant step; but you

24   can't have it the way you want it is what I'm telling you.

25   You can't say, okay, we think we're going to rely on advice

1    of counsel but we're keeping all of the information in our

2    hip pocket and we'll give you three-four days to figure out

3    how it fits in.  And, by the way, do your depositions and

4    review the documents in that time and we'll have the jury

5    on ice while that is happening and then we'll bring them

6    back and then we'll talk to them about it.  That will not

7    do.

8          So since it will not do, what I'm telling you

9    is you need to go back, talk to your clients, think about

10   whether you want to rely on this advice of counsel defense.

11   If you do and you are successful in persuading me that this

12   information shouldn't go in front of the jury because it's

13   so important, it won't.  And the jury will never hear a word

14   about it.  The only people that will know about it are going

15   to be your opponents.  And that is not an insignificant

16   thing but it doesn't mean the jury is going to hear about

17   it in the liability phase.

18          So you will suffer some effect from your

19   decision, but you don't get to put the other side and the

20   jury, as I said, in the kind of box that the proposal you're

21   making contemplates.  It's I don't think practical or fair,

22   given the demands of the litigation in this court and the

23   lawful and appropriate concerns that the plaintiff has.

24          So that's the procedure I'm telling you that I

25   want you to follow here.  Decide what you want to do.  In

1    effect, I'm giving you an opportunity to still make the case

2    that there is bifurcation.  And I'm suggesting to you that I

3    think you've made a decent argument based on what I've seen,

4    but I'm not going to allow you to have the procedure you're

5    looking for.

6              MR. ASHINOFF:  Your Honor, in light of what the

7    Court is saying, what I would like to do is basically get to

8    sit down with the senior decision makers at my client.  I

9    will tell the Court that this decision is going to be made

10   at the highest levels of the company, both legal and

11   business, so I'm going to need to gather them together.

12             I guess I would have a transcript of the Court's

13   comments within the next day or so.  There is a Jewish

14   holiday coming up.  I'd like to see if I can get them

15   together with me next week and get back to the Court, if I

16   can, later next week, subject to the holidays which I know

17   many of these clients observe, and we also do, this week.

18             THE COURT:  Yes, that's fine.  When do you think

19   I might hear from you next week, Mr. Ashinoff?

20             MR. ASHINOFF:  I would like to aim at advising

21   the Court and our adversaries by the end of next week.  And

22   the only condition, and I can't speak to it, I literally

23   don't know where the senior people of the company are in the

24   next week and, obviously, the first call I make after this

25   one will be to my client.  I just don't know the schedule of

1    the general counsel and the senior executives who will have

2    to make the decision.

3                   THE COURT:  All right.  I will look for some

4    word from you.  We'll set this for a week from Friday at

5    the outside, okay?  That gives you a week and-a-half to

6    coordinate with people; and if you think you need more time,

7    let me know.  I understand it's a big decision.

8                   MR. ASHINOFF:  Your Honor, could I have just a

9    week from Monday, just knowing what the ensuing week looks

10   like?

11                  THE COURT:  Yes, done.

12                  MR. ASHINOFF:  Thank you.

13                  THE COURT:  And if you would be so good as

14   to make sure that this decision, without going into the

15   obviously any attorney-client discussions, is couched in a

16   way that you can advise me on the record, not in camera,

17   with a copy to the other side of your decision, I'd

18   appreciate that.

19                  MR. ASHINOFF:  I understand that, Your Honor.

20   And just to pick up on your last point.  I would understand

21   that if we do waive privilege with respect to the decision

22   to launch the product, that waiver does not extend to

23   current litigation discussions between counsel and business

24   people making this judgments now about waiver.  I mean that

25   is a separate event.

1          THE COURT:  It is.  And let me dilate for

2     just a moment on that because to the extent it's helpful to

3     you in talking with your clients, I do not typically view

4     post-litigation decision making as within the scope of

5     waiver, so things that are being done now, decisions that

6     are being done now are not within that scope of waiver.  And

7     I also typically do not view attorney work product as being

8     within that scope of waiver.  If it hasn't been communicated

9     to between the attorney and the client, I typically do not

10    view that as within the scope of waiver.  I don't know if

11    that is of assistance to you or not, but to the extent it

12    is, there you go.

13          MR. ASHINOFF:  Your Honor, I appreciate that.  I

14    guess -- and I don't want to prolong this because there are

15    other matters that we need the Court's help on, but to the

16    extent that some of what is in the privilege materials is

17    in fact work product and we end up making a waiver decision

18    now, do we have the ability to redact the aspects of these

19    documents that we view as work product as opposed to advice,

20    per se?

21          THE COURT:  Yes, that is what I'm telling you.

22    I'm not telling you that everything you sent over to me is

23    going to the other side.  What I'm telling you is you need

24    to make an election about whether you want to invoke the

25    privilege.  If you do, you are going to have to give up

1    information that was communicated to the client associated

2    with the opinion that you want to rely on.   Okay?

3                MR. ASHINOFF:  That's fine for now, Your Honor.

4    And when we get back to you, if there is further issues,

5    we'll try to ask for help then.

6                THE COURT:  All right.

7                MR. ASHINOFF:  Thank you.

8                THE COURT:  Thanks.  Now, again, sorry for

9    taking that at the top of the hour but it's important to me

10   that this stuff get resolved and get resolved timely because

11   one of the issues that you want to deal with and you want

12   to deal with as part of this teleconference and that I will

13   again take out of the order you gave me is the discovery

14   cutoff.  I mean I'm acutely aware that we're within less

15   than a month of the discovery cutoff in this case and you

16   guys are still, you've got some cat-and-dog fighting going

17   on here.  So that's why I said, and I'll reemphasize, we

18   don't have a bifurcation of discovery going on here.  If you

19   are going to rely -- whether you are going to rely on advice

20   of counsel or not, your nonprivileged information associated

21   with willfulness, give it up.  That needs to happen.

22               Now, let's talk for a minute about the discovery

23   cutoff.  And I understand this is going to be informed by

24   the discussion we're going to have on some of these issues.

25   But I just want to get this clear up front.  Are both sides