# EXHIBIT 8

INTERROGATORY NO. 9 SUBPART NO. 4

Identify each opinion, written and/or oral and formal or informal, that Sicor has requested or received regarding **liability** in relation to the '285 patent, including without limitation, by identifying whether the opinion was written or oral and formal or informal; identifying the dates on which the opinion was requested, begun, completed, and delivered; identifying each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); identifying each person who has received, reviewed, or otherwise been informed of the substance of the opinion; identifying each and every document or thing that refers or relates to each opinion.

RESPONSE TO INTERROGATORY NO. 9 SUBPART NO. 4

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information and material protected from disclosure by the attorney client privilege and the work product doctrine. Defendants further object on the grounds that, by this interrogatory, Pharmacia is demanding that Defendants prematurely provide information and material relevant to an advice-of-counsel defense prior to Defendants' election to assert that defense, if any. Defendants expressly reserve the right to elect an advice-of-counsel defense as this case proceeds, and will provide reasonable notice of that election, if any, on a mutually acceptable date, after which Defendants will provide the appropriate discovery relevant to that defense.

Defendants further reserve the right to move, if necessary, at any time for a protective order concerning attorney-client communications or work product information or material that concerns the advice-of-counsel defense or a bifurcation order to separate liability, damages and willfulness issues for trial.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

INTERROGATORY NO. 9 SUBPART NO. 5

Identifying which opinion or opinions, if any, you will rely upon in this case.

- 42 -

RESPONSE TO INTERROGATORY NO. 9 SUBPART NO. 5

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information and material protected from disclosure by the attorney client privilege and the work product doctrine. Defendants further object on the grounds that, by this interrogatory, Pharmacia is demanding that Defendants prematurely provide information and material relevant to an advice-of-counsel defense prior to Defendants' election to assert that defense, if any. Defendants expressly reserve the right to elect an advice-of-counsel defense as this case proceeds, and will provide reasonable notice of that election, if any, on a mutually acceptable date, after which Defendants will provide the appropriate discovery relevant to that defense.

Defendants further reserve the right to move, if necessary, at any time for a protective order concerning attorney-client communications or work product information or material that concerns the advice-of-counsel defense or a bifurcation order to separate liability, damages and willfulness issues for trial.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888

*Attorneys for Defendants*

- 43 -

*Of Counsel:*

Reid Ashinoff
Brian T. Moriarty
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated: February 4, 2005
153142.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of February, 2005, the attached **DEFENDANTS'**

**SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES BY**

**PLAINTIFF** was served upon the below-named counsel of record at the address and in the

manner indicated:


Jack B. Blumenfeld, Esquire                                 HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899


Joshua R. Rich, Esquire                                 VIA FEDERAL EXPRESS
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


149886.1                                 _____
                                         John G. Day

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 04-833-KAJ |
| SICOR INC. and SICOR | ) | |
| PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 4th day of February, 2005, **DEFENDANTS'**

**SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES BY**

**PLAINTIFF** was served upon the following counsel of record at the address and in the manner

indicated:

Jack B. Blumenfeld, Esquire                          HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899


Joshua R. Rich, Esquire                          VIA FEDERAL EXPRESS
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888

*Attorneys for Defendants*

*Of Counsel:*

Reid Ashinoff
Brian T. Moriarty
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated:  February 4, 2005
149886.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of February, 2005, the attached **NOTICE OF**

**SERVICE** was served upon the below-named counsel of record at the address and in the manner

indicated:


Jack B. Blumenfeld, Esquire                                          HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899


Joshua R. Rich, Esquire                                          VIA FEDERAL EXPRESS
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606


John G. Day

149886.1

2

# REDACTED

3

REDACTED

4

# REDACTED

5

SHEET 1

1

1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                           - - -

4    PHARMACIA & UPJOHN COMPANY,          :   CIVIL ACTION
                                          :
5                                         :
             Plaintiff and               :
6            Counter-defendant,           :
                                          :
7    v.                                   :
                                          :
8    SICOR INC., and SICOR                :
     PHARMACEUTICALS INC.,                :
9                                         :
             Defendants and              :   NO. 04-833 (KAJ)
10           Counter-Claimants.           :
                                    - - -

11
                      Wilmington, Delaware
12          Monday, September 19, 2005 at 4:30 p.m.
                     TELEPHONE CONFERENCE

13                          - - -

14
     BEFORE:       HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                            - - -
16   APPEARANCES:

17
             MORRIS NICHOLS ARSHT & TUNNELL
18           BY:  MARYELLEN NORIEKA, ESQ.

19               and

20           McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
             BY:  DANIEL A. BOEHNEN, ESQ., and
21                JOSHUA R. RICH, ESQ.
                  (Chicago, Illinois)
22                     Counsel for Pharmacia & Upjohn Company

23

24
                          Brian P. Gaffigan
25                        Registered Merit Reporter

SHEET 2

**2**

```
1  APPEARANCES: (Continued)
2
3         ASHBY & GEDDES
          BY:  JOHN G. DAY, ESQ.
4
              and
5
          SONNENSCHEIN NATH & ROSENTHAL, LLP
6         BY:  REID L. ASHINOFF, ESQ. and
               BRIAN T. MORIARTY, ESQ.
7         (New York, New York)
8              Counsel for Sicor Inc. and Sicor
               Pharmaceuticals Inc.
9
10
11
12
13
14
15
16            - oOo -
17       P R O C E E D I N G S
18       (REPORTER'S NOTE:  The following telephone
19  conference was held in chambers, beginning at 4:30 p.m.)
20       THE COURT:  Hi, this is Judge Jordan.  Who do I
21  have on the line?
22       MS. NORIEKA:  Your Honor, for the plaintiff,
23  it's Maryellen Noreika at Morris Nichols in Wilmington; and
24  Dan Boehnen and Joshua Rich for the McDonnell Boehnen firm
25  in Chicago.
```

**3**

1    MR. DAY: Good afternoon, Your Honor. For
2  defendants, you have John Day at Ashby & Geddes locally;
3  Reid Ashinoff and Brian Moriarty, my lead counsel from the
4  Sonnenschein firm.
5    THE COURT: All right.
6    MR. MORIARTY: Good afternoon, Your Honor.
7    THE COURT: Good afternoon. This is a discovery
8  dispute conference touched off by a letter originally that
9  came in on the 1st of September from Ms. Noreika. I have
10  the amended or replacement letter of the 15th as well as two
11  letters from the folks at Mr. Day's firm, one dated
12  September 15th and a September 19th response.
13    So why don't we go ahead and begin with, I don't
14  know whether it's Mr. Boehnen or Ms. Noreika. Who is going
15  to be speaking for the plaintiff? But why don't you go
16  ahead and tee up what you think I need to be talking with
17  you folks about first.
18    MR. BOEHNEN: It would be Mr. Boehnen, Your
19  Honor. This is he.
20    So after we filed on September 1st, of course,
21  as you know, we were hoping to have a hearing with you soon
22  after that. But in order for all of the parties to have an
23  opportunity to get their letters in, that didn't happen, it
24  got put off for a couple weeks. And as things continued to
25  develop during the course of those next couple weeks, we

**4**

1  thought it would be best to kind of put a replacement or
2  updated letter before the Court and we advised Sicor we
3  would be doing that.
4    So in Sicor's response dealing first with the
5  question of document production, we noted that they really
6  don't comment at all on our request for manufacturing
7  documents. And we remain concerned that there has not been
8  a full and thorough search for production documents and then
9  a full production of those.
10    THE COURT: Yes. And why don't I pull
11  Mr. Moriarty in here because on that point, I feel like you
12  have some explaining to do.
13    MR. MORIARTY: Yes, Your Honor.
14    THE COURT: Are you there?
15    MR. MORIARTY: I almost cut you off and I
16  stopped myself. I'm there.
17    THE COURT: So what is your response to the
18  assertion I have from Mr. Boehnen and his co-counsel that
19  they're still not getting some basic discovery from you
20  folks, for example, lab notebooks which has come to light
21  after a 30(b)(6) witness?
22    And, Mr. Boehnen, did I understand you to say
23  you think you are still short?
24    MR. BOEHNEN: Yes, Your Honor. I was first
25  addressing the manufacturing documents because their letter

**5**

1  didn't even comment on that. What their letter did comment
2  on were the R&D documents, and they say they produced some
3  before the deposition. We would point out only that they
4  were produced after all of the attorneys had entered the
5  deposition room and about 30 seconds before the witness was
6  produced. They say that they had made a search before but
7  the witness who was a 30(b)(6) witness on this very topic
8  said there hadn't been any search to his knowledge.
9    One of the things that did happen within the two
10  weeks after our letter and today is that one day prior to
11  Sicor's submission of its letter to the Court, they did give
12  us about an additional 400 pages of lab notebooks and they
13  said that now they are not aware of any further R&D pages
14  being produced.
15    We do remain concerned that we've only got about
16  500 pages in total of R&D lab notebooks. It seems to us
17  shy. We don't have a clear representation that they have
18  made a full and thorough search. They said they've done a
19  search.
20    THE COURT: What are they looking for in that
21  regard?
22    MR. BOEHNEN: I think at this point, they have
23  said that they have done a search and they're not aware of
24  anything further. I realize that is a representation then
25  that the Court probably has to accept unless and until

SHEET 3

**6**

1  we can show otherwise. So we're going to need to have a
2  continued deposition. But, you know, if and when we have a
3  further deposition and we're able to establish that there
4  are more R&D documents out there, we're going to be back
5  in front of you again and obviously we're concerned about
6  both the time that this is taking and the cost that this
7  is taking.
8       THE COURT: Yes, I think you are right to be
9  concerned. But let me suggest to both sides if you have me
10 on speakerphone, you need to pick up because there may be
11 occasions where I need to catch you in midstream because I
12 have a question or clarification or I feel like I need to
13 move to another point and I can't cut in just given the
14 technology of speakerphones.
15      So let me back up a little bit, Mr. Boehnen,
16 because you moved past the point I'd like to focus in on.
17 What is it specifically with respect to the documents and
18 the 30(b)(6)? What is the relief you want from me? And
19 then I'll have Mr. Moriarty talk to that.
20      MR. BOEHNEN: There are two aspects of the
21 documents: There are R&D documents that we're concerned
22 we don't have. There are manufacturing documents that we
23 believe we don't have.
24      As to the R&D documents, if Mr. Moriarty is
25 representing that they have made a full, careful and

**7**

1  thorough search and have produced everything, then I
2  realize it's not incumbent upon us to go forward in the
3  deposition and either show that is true or not true.
4       If it turns out to be true, then I guess I
5  would like the Court's admonition to them to make sure it
6  is true. Otherwise, you are going to be awarding us costs
7  and attorney fees and additional time.
8       By way of additional time, we believe that these
9  are documents that are going to be useful for our expert
10 report; and if we find out additional documents later, we
11 will be needing to supplement our report. So that is all
12 the requests on the R&D document side.
13      On the manufacturing documents side, we believe
14 we don't have all of those. Again, if Mr. Moriarty
15 represents they made a careful and thorough search and they
16 have produced everything, then we'll go forward and resume
17 deposition. But we would like to make sure we have this
18 full production before we do our expert report, and we would
19 like to have one week after getting this document in order
20 to submit our expert's report.
21      MR. MORIARTY: Your Honor, this is Brian
22 Moriarty. Would you like me to address these points now?
23      THE COURT: I would.
24      MR. MORIARTY: Let me start with the last topic,
25 the manufacturing record. I believe we've actually resolved

**8**

1  this record in a call before we had before with the Court
2  which I had with Mr. Rich. What they have asked us to do
3  is to supplement our production to produce what is called
4  batch records, and these are the records of the laboratory
5  when they produced batches of pharmaceutical products. They
6  have detailed records that are available for review by the
7  FDA, for example, that are called batch records which detail
8  what kind of products they made and how they made it and
9  just how many are made; and they asked us to supplement
10 that. And they correctly pointed out our batch records end
11 some time in early 2005 when we made our initial production.
12      We told them that we would go back and this week
13 we hope to get the additional batch records to the extent
14 there are any so they can know exactly how many units are
15 allegedly infringing products were made in our factory. So
16 we've already agreed to get that information for them and to
17 supplement our production with the 2005 records.
18      THE COURT: Okay.
19      MR. MORIARTY: As to all the original records,
20 we have given all of our records indicating the production
21 of the alleged infringing products.
22      THE COURT: Then it sounds to me like we're done
23 on that; right, Mr. Boehnen?
24      MR. BOEHNEN: Sorry, Your Honor. I wish I could
25 say we are. Two points:

**9**

1       Number one, there are categories of documents
2  other than batch records. There are the shipping delivery
3  records. They refused to provide those. And even as to the
4  batch records, they refused to commit to any date when we
5  would have these.
6       THE COURT: Well, I'm hearing them say --
7       MR. BOEHNEN: We have to get a witness to
8  follow-up with deposition.
9       THE COURT: I'm hearing them say -- unless I
10 misheard. Didn't you say some time within the next -- well,
11 what did you say about timing? I thought I heard a timing
12 statement.
13      MR. MORIARTY: We want to get them to them this
14 week. It may Friday or Monday. But, Your Honor, what we
15 offered them, which addresses the R&D documents --
16      THE COURT: Don't go to R&D yet. Let's stick
17 with the manufacturing because Mr. Boehnen says, "great,
18 love to get those attorney batch documents but there are
19 shipping and other kind of documents that they haven't told
20 us about." What is your response to that?
21      MR. MORIARTY: Your Honor, those are included.
22 We will obviously get them those, too.
23      THE COURT: All right. Mr. Boehnen, it sounds
24 like we're done. How about by Friday?
25      MR. BOEHNEN: If we have those, let's say we

**10**

1  have those in our possession by next Monday, Your Honor, a
2  week from today, and then we would like to have a date for a
3  witness to resume and complete that 30(b)(6) deposition, and
4  then we would like our expert report to be deferred until a
5  week after the deposition is done.
6      MR. MORIARTY: Your Honor, we have already given
7  them a date for the continuation of the 30(b)(6) witness who
8  one of the categories is "what sort of search did you do to
9  find the documents" and he'll have more thorough answers at
10 this time. But we offered them a date of I believe a week
11 from this Thursday, and that is why we're making sure they
12 get the production in advance of that.
13     THE COURT: All right.
14     MR. MORIARTY: I would note we have never been
15 asked about extending expert reports. It's never been
16 mentioned until Mr. Boehnen just spoke, and I don't believe
17 any of these records have anything to do with their expert
18 report on validity which is due this Friday. So I don't
19 want to go off on a tangent, I want to stick to the R&D
20 documents, if Your Honor wants to hear that, but maybe Mr.
21 Ashinoff wants to return to that point.
22     THE COURT: Let's not go to expert reports yet.
23 One side or the other may persuade me this is all related
24 but, right now, I just want to know documents are getting
25 done, discovery depositions are getting done. What I hear

**11**

1  you telling me is you are going to get them the supplemental
2  document production by Friday and you have offered them a
3  witness by Thursday of next week. Have I got it right?
4      MR. MORIARTY: You have that right. That
5  witness will also -- we've also produced the R&D documents
6  and that witness will be fully prepared to testify about the
7  scope and thoroughness and completeness of the production of
8  the R&D documents.
9      And, Your Honor, one of the points we made in
10 our letter is we made a generic product. We're not similar
11 to Pharmacia. We don't have volumes of R&D documents. That
12 may allay Mr. Boehnen's concerns.
13     THE COURT: I read your paper, and I assume
14 Mr. Boehnen did, too.
15     So, Mr. Boehnen, you are going to have the R&D
16 documents likewise, or they say you've got them and you are
17 going to have a witness to address those additional R&D
18 document. Is there anything else with respect to the R&D
19 documents that you think you don't have or you want to
20 raise with me right now?
21     MR. BOEHNEN: No, Your Honor. I understand
22 we're talking all documents, R&D and manufacturing
23 documents, on Friday and then a witness next Thursday.
24     THE COURT: Is that right, Mr. Moriarty?
25     MR. MORIARTY: Yes, Your Honor.

**12**

1      THE COURT: Okay. Done.
2      Now, before we start talking about expert
3  reports, let's stay with issues associated with discovery
4  disputes. Have you guys worked out your contention
5  interrogatory kind of issues, or are we finished with
6  interrogatory disputes? Mr. Boehnen.
7      MR. BOEHNEN: Your Honor, in our view, we're not
8  but we are in the following sense. We think that at this
9  point, Your Honor should make it very clear perhaps by an
10 order that the parties are not going to be able to introduce
11 any arguments, theories, positions that have not been set
12 forth to date in either their interrogatory responses or
13 expert witness reports.
14     THE COURT: Well, let me hear Mr. Moriarty.
15 You've got an issue with that?
16     MR. ASHINOFF: Your Honor, this is Mr. Ashinoff.
17 I'll respond to that.
18     THE COURT: All right.
19     MR. ASHINOFF: I do, Your Honor. We have an
20 obligation to supplement interrogatory responses, as do our
21 adversaries.
22     THE COURT: Yes. Well, we're not talking
23 about discovery here. Right now, speak specifically to
24 contentions. All right?
25     MR. ASHINOFF: Your Honor, I don't believe

**13**

1  Mr. Boehnen is stating now contention interrogatories. We
2  essentially don't think we are deficient in our contention
3  interrogatories at this point. We supplemented a number of
4  times. And Mr. Boehnen's letter, as we point out, simply
5  fails to specify in any way where we're deficient. And we
6  don't believe we are.
7      THE COURT: Here is what I understand him to be
8  saying, and I'm just not going to jump the gun on this.
9  That it's been pulling teeth to get you folks to give them
10 responses. You've got some now. He doesn't want later
11 surprises. That's how I read his letters.
12     MR. ASHINOFF: Your Honor, we have laid out
13 what we know and as we get it -- we have our own issues with
14 Pharmacia's production. Those are not on the table for
15 today and I won't put them there. Suffice it to say, we're
16 awaiting long overdue for a lot of discovery and as we get
17 discovery from them, if that discovery leads us to revise
18 our theories and our contentions, we will file amended
19 interrogatory responses.
20     THE COURT: All right.
21     MR. ASHINOFF: We're current in terms of what we
22 have from them now.
23     THE COURT: So what I hear you saying is unless
24 they give you something that changes your mind, you know
25 what your positions are and you have given them your

SHEET 5

14

1  positions; right?
2      MR. ASHINOFF: Yes, Your Honor. With the
3  exception of the subject matter of the second letter which
4  I won't raise yet which is the willfulness contention.
5      THE COURT: Yes. All right. Then we're going
6  to let things just lay where they are right now. If there
7  comes some point later in the case where either side feels
8  like somebody was pulling a rabbit out of the hat and
9  playing a "gotcha" with new legal theories and contentions,
10 we'll just have to address it then. Hopefully, no one will
11 be inclined to try to pull something like that at the last
12 minute. But for right now, I don't think there is any
13 dispute for me to resolve in this regard.
14     MR. BOEHNEN: Your Honor, there is one
15 interrogatory which is not a contention-type interrogatory
16 where we asked for -- it's Interrogatory No. 4 -- where we
17 asked for their identification of prospective witnesses.
18     THE COURT: And your issue with their response
19 is what, Mr. Boehnen?
20     MR. BOEHNEN: And this is their witnesses in
21 relation to the laches and estoppel defense. So again, as
22 long as we don't have anybody new coming up later on that
23 was already known to them, we're okay with that. Our
24 problem with what has happened to date is that even though
25 they keep supplementing, they supplement with respect to

16

1  that's fine.
2      THE COURT: I guess we're --
3      MR. MORIARTY: Again, Your Honor, we didn't
4  identify them in the interrogatories. We viewed those as
5  contention interrogatories. I don't want to get into a
6  semantic game with Mr. Boehnen here.
7      THE COURT: I don't want to get into a
8  semantic game either. So what I'm telling you is if you
9  guys have identified your witnesses -- now, if they put an
10 interrogatory to you that says "tell us people who have
11 information on the following topics," are you telling me
12 you don't have to answer that?
13     MR. MORIARTY: No. If they still don't think
14 they have that and Mr. Boehnen off-line tells me the
15 interrogatories as to which he wants, that I'm happy to
16 supplement. I'll do it this week.
17     THE COURT: All right. Get it done.
18     MR. MORIARTY: Okay. Mr. Boehnen, you can call
19 me back.
20     MR. BOEHNEN: I think we made that very clear
21 that we believe we don't have that information. I don't
22 know how many --
23     THE COURT: Yes, whoa. Stop. I'm not getting
24 into it, and I'm not going to let you get into it on this
25 record. If you have something more you think you need, I'm

15

1  information they have long, long ago.
2      THE COURT: All right. Well, I'm not going to
3  get into whether they believe that or you believe that.
4  Suffice it to say that, Mr. Moriarty or Mr. Ashinoff, with
5  discovery time ticking away and people needing to schedule
6  depositions, is there a problem with the request that you
7  identify witnesses on these topics?
8      MR. MORIARTY: No, Your Honor. We actually
9  responded to these as contention interrogatories. I don't
10 believe we responded to them with witness identifications,
11 but we have previously I think served a list of the people
12 we think have relevant knowledge in the case and they've had
13 that for the better part of a year. So there really
14 shouldn't be surprises here.
15     But we responded to these as contention
16 interrogatories. We didn't view these as an additional
17 identification of witnesses. But the truth, Your Honor,
18 is that they are the counterpart to the discussion and
19 our witnesses, our fact witnesses from our end have been
20 identified for a long time in our initial disclosure of
21 witnesses.
22     THE COURT: Mr. Boehnen, do you have any dispute
23 with their assertion?
24     MR. BOEHNEN: As long as they don't bring in any
25 witnesses who haven't already been identified, Your Honor,

17

1  hearing him say they'll give it to you this week. Done.
2      MR. MORIARTY: Okay. Mr. Boehnen, call me.
3  We'll talk about witnesses. I don't think we identified.
4      MR. BOEHNEN: I'm leaving from here to the
5  airport. I won't have an opportunity to call you.
6      THE COURT: All right. Whoa, whoa, whoa, whoa.
7  Stop, both of you. I'm just not being clear enough with
8  you, I guess.
9      Don't talk to each other. I can't have you do
10 that on this record I've got. I got the court reporter
11 here. You guys have to address your remarks to me. It's as
12 if we're in open court, only we got the teleconference going
13 here.
14     So you guys know how to get in touch with each
15 other or people on your team can get in touch with each
16 over. Take that piece off-line. You don't have to do the
17 logistics part of it right now.
18     MR. MORIARTY: Yes, Your Honor.
19     MR. BOEHNEN: Yes, Your Honor. If I may briefly
20 comment, though. I think it's unfair for Sicor to say if
21 you don't have it let me know. We have been telling them
22 for months. The deposition is no different now than it was
23 a month ago.
24     THE COURT: Okay. Whether that is true or not
25 true, to me, right now is not significant. What is

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

— SHEET 6 —

**18**

1  significant is that if you did have a problem, I'm hearing
2  it's a problem that you can now resolve because they're
3  committed to resolve it this week.
4      Now, maybe you will speak to them and they'll
5  say we told you all these people and it's done or maybe
6  they'll say oh, you know, here are the specific names. But
7  either way, what you were looking for I think is now taken
8  care of so we need to move to the next topic. Are there any
9  other additional issues that you wanted to raise before we
10  start dealing with their bifurcation issue, Mr. Boehnen?
11      MR. BOEHNEN: Well, yes, Your Honor. We had our
12  request to depose their witness, Dr. Clark.
13      THE COURT: Right. So that was something
14  that at least in the first letter or so, I didn't see a
15  response to. And then there is an a later letter on that,
16  September 19th letter that has something to do with that.
17  So who wants to bring me up to speed on what the state of
18  play is with respect to Dr. Clark?
19      I'll give you first crack, Mr. Boehnen.
20      MR. ASHINOFF: Your Honor, this is Pharmacia's
21  request.
22      THE COURT: I know. I'm giving Mr. Boehnen the
23  first shot at it.
24      MR. BOEHNEN: Your Honor, Dr. Clark's expert
25  report was served on us by Sicor on August 15th. Shortly

**20**

1      THE COURT: Go ahead.
2      MR. ASHINOFF: Your Honor, very simply put,
3  this scheduling order was essentially worked out on consent.
4  And in no way shape or form did I, in my mind, or on paper,
5  consent, nor frankly, Your Honor, in over 30 years of
6  practice, have ever consented to let an adversary take an
7  expert witness deposition from my expert witness before they
8  put their cards on the table.
9      That it's a very uneven playing field when their
10  witness gets to read our report and then has a deposition
11  and then they can stake out a position, and their witness
12  comes in with the benefit of everything our witness says,
13  and our witness has no information whatsoever about their
14  position.
15      I have never, ever agreed to that. Our local
16  counsel advises me that's not common practice in Delaware.
17  We never would have agreed to that. And I don't think it's
18  fair. I don't think it's a level playing field.
19      They have their report due on the 23rd of
20  September. We gave them a month and-a-quarter to get their
21  response report in, and they know what our witness is saying
22  because it's in his report. But the truth is our expert may
23  well have a reply or rebuttal report to what they say. I
24  do not think that one expert with Pharmacia should have all
25  of this out on the table and know everything about what

**19**

1  after that, we served Sicor with a notice of deposition.
2  And not too much happened until I was -- and the notice of
3  deposition was set for September 12th, but along with the
4  cover letter, we indicated we would be willing to do it
5  any time that week at the doctor's convenience.
6      On Thursday, September 8th, we heard for the
7  first time that Dr. Clark was not going to be made available
8  at any time during the following week. With some follow-up
9  communications, they advised Mr. Rich that it was Sicor's
10  contention it was inappropriate for us to be deposing
11  Dr. Clark until after all of the expert reports were in and
12  that they would make him available at that point.
13      Our feeling is that we want to make very sure
14  that we fully understand Dr. Clark's position and that we
15  have him locked in and nailed down so that he isn't trying
16  to change them after he has seen our explanation about why
17  he is wrong. We fully realize we're only going to get one
18  bite at the Clark deposition apple but we wish to take that
19  before we have finished preparing our expert report, not
20  afterwards. And there is absolutely nothing in any rule
21  that I know of or any Order of this Court that says we
22  should not be allowed to do that.
23      THE COURT: All right. Mr. Ashinoff, is this
24  yours?
25      MR. ASHINOFF: Yes, it is, Your Honor.

**21**

1  our expert says when our witness is being forced to give a
2  deposition before he knows anything about what their expert
3  says.
4      THE COURT: All right. I've got you,
5  Mr. Ashinoff.
6      Mr. Boehnen, this is your chance to reply.
7      MR. BOEHNEN: Their expert report is his
8  position. Presumably, he is the one who knows more about
9  his position than anybody does, and I think we are entitled
10  to find out what his position is before we formulate our
11  position.
12      THE COURT: Okay.
13      MR. BOEHNEN: I fully realize after their expert
14  sees our report, he may well articulate new aspects of his
15  position. He is going to want to explain why he thinks
16  our people are wrong, but he should not at that point be
17  changing his position.
18      THE COURT: Okay. Well, speaking of positions,
19  I've got both your positions.
20      I have to say, Mr. Boehnen, you are on the wrong
21  side of this. I've been working in these kinds of cases for
22  a few years and other kinds of cases for more than that and
23  it is certainly not the custom or practice in this court to
24  require people to give their experts up for discovery until
25  the parties have essentially exchanged their positions.

SHEET 7

22

1  That's the way it's typically done and that's the way it's
2  going to be done in this case. So your position is not
3  easily defensible given the practice and what I think the
4  practicalities are of expert testimony and litigation in
5  this day. So you will not get the relief you seek on that
6  point.
7      All right. Mr. Boehnen, is there anything else
8  from your side that we should be talking about before we
9  shift over to the Sicor piece?
10     MR. BOEHNEN: No, Your Honor. Thank you.
11     THE COURT: All right. Mr. Moriarty or
12 Mr. Ashinoff.
13     MR. ASHINOFF: Your Honor, we're not actually
14 seeking relief today. We weren't sure we needed to write
15 this letter before we filed the motion and out of an
16 abundance of caution we wrote it because one element of the
17 motion to bifurcate is to stay discovery, not as to damages
18 and the letter you received in response goes off on damages.
19 We're not asking to stay that. We've got our experts
20 working hard and we've given them a 10-hour deposition on
21 damages.
22     The only aspect of discovery we want to stay is
23 the need to produce attorney-client material, but we don't
24 need relief now. We're content. We will try to file our
25 motion certainly by next Monday at the latest and we will

23

1  lay out fully in the motion the considerations we think
2  support the relief we're asking for.
3      THE COURT: All right. Well, you will have your
4  chance to do that. Let me just give you a heads up. It's
5  going to take one whale of a showing for you to get a
6  bifurcation of willfulness out of me. That, speaking of
7  custom and practice, is also not the custom and practice,
8  as your local counsel has likely advised you. That's not to
9  say in an appropriate case, I couldn't be convinced because
10 I might be. But you need to be conscious that you have a
11 real uphill battle on this.
12     So if you feel like you want to spend your time,
13 your client's money to take a crack at it, you are free to
14 go do that and the other side will have to respond. You may
15 not get a fulsome response from me if I think this is a
16 typical case and that it ought to be handled in the typical
17 fashion that we see in this court, certainly in my court and
18 I think typically in the other courtrooms of the judges of
19 this District, which is, as you know, you are going to have
20 to try your case all at once.
21     MR. ASHINOFF: Your Honor, I hear you and I
22 appreciate the advance warning of the Court, without any
23 decision, the Court's general experience with it. We do
24 feel, Your Honor, we need to make this motion.
25     The only question I'd have for the Court is we

24

1  contemplate needing to make an in camera submission so that
2  the Court understands the prejudice argument that we're
3  raising about arguably privileged material. And I would ask
4  the Court if there is any way you like that to be done in
5  these contexts because I know the cases we intend to rely on
6  urge and all reflect such an in camera consideration. And I
7  would want to make a submission with an explanation to the
8  Court about that material as part of the motion but in
9  camera and obviously sealed.
10     THE COURT: You can certainly submit your
11 documents in camera and your legal arguments ought to be
12 submitted so that the other side can respond to them. Let
13 me say this: If there is some piece of a document which
14 you need to point out to me with specificity because you
15 are afraid I will not understand the relevance or the
16 significance of it and to say that in a submission handed to
17 the other side would in effect be giving up the privilege,
18 you may submit that to me in camera under seal with the
19 documents. But I expect that sort of thing ought to be
20 very, very limited. In short, you give me the documents,
21 but you give your arguments to the attorney side, too, so
22 they can respond unless it's something genuinely
23 extraordinary that you think will get past me; all right?
24     MR. ASHINOFF: Your Honor, you anticipated
25 me perfectly. I do need to explain some aspects of the

25

1  material in camera but we will make the legal arguments
2  obviously available to our adversaries.
3      THE COURT: All right. Is there anything else
4  we need to talk up on this call, Mr. Boehnen?
5      MR. BOEHNEN: No, Your Honor.
6      THE COURT: Mr. Moriarty or Mr. Ashinoff?
7      MR. MORIARTY: No, Your Honor.
8      THE COURT: All right. Thanks for your time.
9  Good-bye.
10     (The attorneys respond, "Thank you, Your
11 Honor.")
12     (Telephone conference ends at 5:05 p.m.)

**0**

04-833 [1] - 1:9

**1**

10-hour [1] - 22:20
10:30 [2] - 1:12, 2:19
12th [1] - 19:3
15th [3] - 3:10, 3:12, 18:25
19th [2] - 3:12, 18:16
1st [2] - 3:9, 3:20

**2**

2005 [3] - 1:12, 8:11, 8:17
23rd [1] - 20:19
28 [1] - 1:12

**3**

30 [2] - 5:5, 20:5
30(b)(6 [5] - 4:21, 5:7, 6:18, 10:3, 10:7

**4**

4 [1] - 14:16
400 [1] - 5:12

**5**

500 [1] - 5:16
5:05 [1] - 25:12

**8**

8th [1] - 19:6

**A**

able [2] - 6:3, 12:10
absolutely [1] - 19:20
abundance [1] - 22:16
accept [1] - 5:25
Action [1] - 1:4
additional [8] - 5:12, 7:7, 7:8, 7:10, 8:13, 11:17, 15:16, 18:9
address [4] - 7:22, 11:17, 14:10, 17:11
addresses [1] - 9:15
addressing [1] - 4:25
admonition [1] - 7:5
advance [2] - 10:12, 23:22
adversaries [2] -

12:21, 25:2
adversary [1] - 20:6
advised [3] - 4:2, 19:9, 23:8
advises [1] - 20:16
afraid [1] - 24:15
afternoon [3] - 3:1, 3:6, 3:7
afterwards [1] - 19:20
ago [2] - 15:1, 17:23
agreed [3] - 8:16, 20:15, 20:17
ahead [3] - 3:13, 3:16, 20:1
airport [1] - 17:5
allay [1] - 11:12
alleged [1] - 8:21
allegedly [1] - 8:15
allowed [1] - 19:22
almost [1] - 4:15
amended [2] - 3:10, 13:18
and-a-quarter [1] - 20:20
answer [1] - 16:12
answers [1] - 10:9
anticipated [1] - 24:24
Appearances [2] - 1:16, 2:1
apple [1] - 19:18
appreciate [1] - 23:22
appropriate [1] - 23:9
arguably [1] - 24:3
argument [1] - 24:2
arguments [4] - 12:11, 24:11, 24:21, 25:1
Arsht [1] - 1:17
articulate [1] - 21:14
Ashby [2] - 2:3, 3:2
Ashinoff [21] - 2:6, 3:3, 10:21, 12:16, 12:19, 12:25, 13:12, 13:21, 14:2, 15:4, 18:20, 19:23, 19:25, 20:2, 21:5, 22:12, 22:13, 23:21, 24:24, 25:6
aspect [1] - 22:22
aspects [3] - 6:20, 21:14, 24:25
assertion [2] - 4:18, 15:23
associated [1] - 12:3
assume [1] - 11:13
attorney [4] - 7:7, 9:18, 22:23, 24:21
attorney-client [1] - 22:23
attorneys [2] - 5:4, 25:10

August [1] - 18:25
available [4] - 8:6, 19:7, 19:12, 25:2
awaiting [1] - 13:16
awarding [1] - 7:6
aware [2] - 5:13, 5:23

**B**

basic [1] - 4:19
batch [7] - 8:4, 8:7, 8:10, 8:13, 9:2, 9:4, 9:18
batches [1] - 8:5
battle [1] - 23:11
begin [1] - 3:13
beginning [1] - 2:19
benefit [1] - 20:12
Berghoff [1] - 1:20
best [1] - 4:1
better [1] - 15:13
bifurcate [1] - 22:17
bifurcation [2] - 18:10, 23:6
bit [1] - 6:15
bite [1] - 19:18
Boehnen [51] - 1:20, 1:20, 2:24, 3:14, 3:18, 4:18, 4:22, 4:24, 5:22, 6:15, 6:20, 8:23, 8:24, 9:7, 9:17, 9:23, 9:25, 10:16, 11:14, 11:15, 11:21, 12:6, 12:7, 13:1, 14:14, 14:19, 14:20, 15:22, 15:24, 16:6, 16:14, 16:18, 16:20, 17:2, 17:4, 17:19, 18:10, 18:11, 18:19, 18:22, 18:24, 21:6, 21:7, 21:13, 21:20, 22:7, 22:10, 25:4, 25:5
Boehnen's [2] - 11:12, 13:4
Brian [4] - 1:24, 2:6, 3:3, 7:21
briefly [1] - 17:19
bring [1] - 15:24, 18:17
bye [1] - 25:9

**C**

camera [6] - 24:1, 24:6, 24:9, 24:11, 24:18, 25:1
cards [1] - 20:8
care [1] - 18:8
careful [2] - 6:25, 7:15

case [6] - 14:7, 15:12, 22:2, 23:9, 23:16, 23:20
cases [3] - 21:21, 21:22, 24:5
catch [1] - 6:11
categories [2] - 9:1, 10:8
caution [1] - 22:16
certainly [4] - 21:23, 22:25, 23:17, 24:10
chambers [1] - 2:19
chance [2] - 21:6, 23:4
change [1] - 8:5
changes [1] - 13:24
changing [1] - 21:17
Chicago [2] - 1:21, 2:25
Civil [1] - 1:4
claimants [1] - 1:10
clarification [1] - 6:12
Clark [5] - 18:12, 18:18, 19:7, 19:11, 19:18
Clark's [2] - 18:24, 19:14
clear [4] - 5:17, 12:9, 16:20, 17:7
client [1] - 22:23
client's [1] - 23:13
co [1] - 4:18
co-counsel [1] - 4:18
coming [1] - 14:22
comment [4] - 4:6, 5:1, 17:20
commit [1] - 9:4
committed [1] - 18:3
common [1] - 20:16
communications [1] - 19:9
Company [2] - 1:4, 1:22
complete [1] - 10:3
completeness [1] - 11:7
concerned [5] - 4:7, 5:15, 6:5, 6:9, 6:21
concerns [1] - 11:12
conference [3] - 2:19, 3:8, 25:12
Conference [1] - 1:12
conscious [2] - 23:10
consent [2] - 20:3, 20:5
consented [1] - 20:6
consideration [1] - 24:6
considerations [1] - 23:1

contemplate [1] - 24:1
content [1] - 22:24
contention [9] - 12:4, 13:1, 13:2, 14:4, 14:15, 15:9, 15:15, 16:5, 19:10
contention-type [1] - 14:15
contentions [3] - 12:24, 13:18, 14:9
contexts [1] - 24:5
continuation [1] - 10:7
continued [2] - 3:24, 6:2
Continued [1] - 2:1
convenience [1] - 19:5
convinced [1] - 23:9
correctly [1] - 8:10
cost [1] - 6:6
costs [1] - 7:6
counsel [4] - 3:3, 4:18, 20:16, 23:8
Counsel [2] - 1:22, 2:8
Counter [2] - 1:6, 1:10
Counter-claimants [1] - 1:10
Counter-defendant [1] - 1:6
counterpart [1] - 15:18
couple [2] - 3:24, 3:25
course [2] - 3:20, 3:25
court [5] - 17:10, 17:12, 21:23, 23:17
Court [60] - 1:1, 2:20, 3:5, 3:7, 4:2, 4:10, 4:14, 4:17, 5:11, 5:20, 5:25, 6:8, 7:23, 8:1, 8:18, 8:22, 9:6, 9:9, 9:16, 9:23, 10:13, 10:22, 11:13, 11:24, 12:1, 12:14, 12:18, 12:22, 13:7, 13:20, 13:23, 14:5, 14:18, 15:2, 15:22, 16:2, 16:7, 16:17, 16:23, 17:6, 17:24, 18:13, 18:22, 19:21, 19:23, 20:1, 21:4, 21:12, 21:18, 22:11, 23:3, 23:22, 23:25, 24:2, 24:4, 24:8, 24:10, 25:3, 25:6, 25:8
Courts [2] - 7:5, 23:23
courtrooms [1] - 23:18
cover [1] - 19:4

crack [2] - 18:19, 23:13
current [1] - 13:21
custom [3] - 21:23, 23:7
cut [2] - 4:15, 6:13

**D**

damages [3] - 22:17, 22:18, 22:21
Dan [1] - 2:24
Daniel [1] - 1:20
date [6] - 9:4, 10:2, 10:7, 10:10, 12:12, 14:24
dated [1] - 3:11
Day's [1] - 3:11
dealing [2] - 4:4, 18:10
decision [1] - 23:23
defendant [1] - 1:6
defendants [1] - 3:2
Defendants [1] - 1:9
defense [1] - 14:21
defensible [1] - 22:3
deferred [1] - 10:4
deficient [2] - 13:2, 13:5
Delaware [3] - 1:2, 1:11, 20:16
delivery [1] - 9:2
depose [1] - 18:12
deposing [1] - 19:10
deposition [17] - 5:3, 5:5, 6:2, 6:3, 7:3, 7:17, 9:8, 10:3, 10:5, 17:22, 19:1, 19:3, 19:18, 20:7, 20:10, 21:2, 22:20
depositions [2] - 10:25, 15:6
detail [1] - 8:7
detailed [1] - 8:6
develop [1] - 3:25
different [1] - 17:22
disclosure [1] - 15:20
discovery [12] - 3:7, 4:19, 10:25, 12:3, 12:23, 13:16, 13:17, 15:5, 21:24, 22:17, 22:22
discussion [1] - 15:18
dispute [3] - 3:8, 14:13, 15:22
disputes [2] - 12:4, 12:6
District [3] - 1:1, 1:2, 23:19

doctor's [1] - 19:5
document [6] - 4:5, 7:12, 7:19, 11:2, 11:18, 24:13
documents [30] - 4:7, 4:8, 4:25, 5:2, 6:4, 6:17, 6:21, 6:22, 6:24, 7:9, 7:10, 7:13, 9:1, 9:15, 9:18, 9:19, 10:9, 10:20, 10:24, 11:5, 11:8, 11:11, 11:16, 11:19, 11:22, 11:23, 24:11, 24:19, 24:20
Done [2] - 12:1, 17:1
done [12] - 5:18, 5:23, 8:22, 9:24, 10:5, 10:25, 16:17, 18:5, 22:1, 22:2, 24:4
down [1] - 19:15
Dr [6] - 18:12, 18:18, 18:24, 19:7, 19:11, 19:14
due [2] - 10:18, 20:19
during [2] - 3:25, 19:8

**E**

early [1] - 8:11
easily [1] - 22:3
effect [1] - 24:17
either [5] - 7:3, 12:12, 14:7, 16:8, 18:7
element [1] - 22:16
end [2] - 8:10, 15:19
ends [1] - 25:12
entered [1] - 5:4
entitled [1] - 21:9
Esq [6] - 1:18, 1:20, 1:21, 2:3, 2:6, 2:6
essentially [3] - 13:2, 20:3, 21:25
establish [1] - 6:3
estoppel [1] - 14:21
exactly [1] - 8:14
example [2] - 4:20, 8:7
exception [1] - 14:3
exchanged [1] - 21:25
expect [1] - 24:19
experience [1] - 23:23
expert [20] - 7:9, 7:18, 10:4, 10:15, 10:17, 10:22, 12:2, 12:13, 18:24, 19:11, 19:19, 20:7, 20:22, 20:24, 21:1, 21:2, 21:7, 21:13, 22:4
expert's [1] - 7:20
experts [2] - 21:24, 22:19

**G**

Gaffigan [1] - 1:24
game [2] - 16:6, 16:8

explain [2] - 21:15, 24:25
explaining [1] - 4:12
explanation [2] - 24:10, 24:7
extending [1] - 10:15
extent [1] - 8:13
extraordinary [1] - 24:23

**F**

fact [1] - 15:19
factory [1] - 8:15
fails [1] - 13:5
fair [1] - 20:18
fashion [1] - 23:17
Fda [1] - 8:7
fees [1] - 7:7
few [1] - 21:22
field [2] - 20:9, 20:18
file [2] - 13:18, 22:24
filed [2] - 3:20, 22:15
fine [1] - 16:1
finished [2] - 12:5, 19:19
firm [3] - 2:24, 3:4, 3:11
first [7] - 3:17, 4:4, 4:24, 18:14, 18:19, 18:23, 19:7
focus [1] - 6:16
folks [4] - 3:11, 3:17, 4:20, 13:9
follow [2] - 9:8, 19:8
follow-up [2] - 9:8, 19:8
following [4] - 2:18, 12:8, 16:11, 19:8
forced [1] - 21:1
form [1] - 20:4
formulate [1] - 21:10
forth [1] - 12:12
forward [2] - 7:2, 7:16
frankly [1] - 20:5
free [1] - 23:13
Friday [5] - 9:14, 9:24, 10:18, 11:2, 11:23
front [1] - 6:5
full [3] - 4:8, 4:9, 5:18, 6:25, 7:18
fully [5] - 11:6, 19:14, 19:17, 21:13, 23:1
fulsome [1] - 23:15

**G**

Geddes [2] - 2:3, 3:2
general [1] - 23:23
generic [1] - 11:10
genuinely [1] - 24:22
given [6] - 6:13, 8:20, 10:6, 13:25, 22:3, 22:20
Good-bye [1] - 25:9
gotcha [1] - 14:9
great [1] - 9:17
guess [3] - 7:4, 16:2, 17:8
gun [1] - 13:8
guys [4] - 12:4, 16:9, 17:11, 17:14

**H**

handed [1] - 24:16
handled [1] - 23:16
happy [1] - 16:15
hard [1] - 22:20
hat [1] - 14:8
heads [1] - 23:4
hear [5] - 10:20, 10:25, 12:14, 13:23, 23:21
heard [2] - 9:11, 19:6
hearing [5] - 3:21, 9:6, 9:9, 17:1, 18:1
held [1] - 2:19
Hi [1] - 2:20
Honor [44] - 2:22, 3:1, 3:6, 3:19, 4:13, 4:24, 7:21, 8:24, 9:14, 9:21, 10:1, 10:6, 10:20, 11:9, 11:21, 11:25, 12:7, 12:9, 12:16, 12:19, 12:25, 13:12, 14:2, 14:14, 15:8, 15:17, 15:25, 16:3, 17:18, 17:19, 18:11, 18:20, 18:24, 19:25, 20:2, 20:5, 22:10, 22:13, 23:21, 23:24, 24:24, 25:5, 25:7, 25:11
Honorable [1] - 1:14
hope [1] - 8:13
Hopefully [1] - 14:10
hoping [1] - 3:21
Hulbert [1] - 1:20

**I**

identification [2] - 14:17, 15:17
identifications [1] - 15:10

identified [4] - 15:20, 15:25, 16:9, 17:3
identify [2] - 15:7, 16:4
Illinois [1] - 1:21
inappropriate [1] - 19:10
Inc [4] - 1:8, 1:8, 2:8, 2:8
inclined [1] - 14:11
included [1] - 9:21
incumbent [1] - 7:2
indicated [1] - 19:4
Indicating [1] - 8:20
information [5] - 8:16, 15:1, 16:11, 16:21, 20:13
infringing [2] - 8:15, 8:21
initial [2] - 8:11, 15:20
intend [1] - 24:5
interrogatories [7] - 13:1, 13:3, 15:9, 15:16, 16:4, 16:5, 16:15
Interrogatory [1] - 14:16
interrogatory [8] - 12:5, 12:6, 12:12, 12:20, 13:19, 14:15, 16:10
introduce [1] - 12:10
issue [2] - 12:15, 14:18, 18:10
issues [2] - 12:3, 12:5, 13:13, 18:9

**J**

John [2] - 2:3, 3:2
Jordan [2] - 1:14, 2:20
Joshua [2] - 1:21, 2:24
Judge [1] - 2:20
judges [1] - 23:18
July [1] - 1:12
jump [1] - 13:8

**K**

Kaj [1] - 1:9
keep [1] - 14:25
Kent [1] - 1:14
kind [4] - 4:1, 8:8, 9:19, 12:5
kinds [2] - 21:21, 21:22
knowledge [2] - 5:8, 15:12
known [1] - 14:23

knows [2] - 21:2, 21:8

## L

lab [3] - 4:20, 5:12, 5:16
laboratory [1] - 8:4
laches [1] - 14:21
laid [1] - 13:12
last [2] - 7:24, 14:11
latest [1] - 22:25
lay [2] - 14:6, 23:1
lead [1] - 3:3
leads [1] - 13:17
least [1] - 18:14
leaving [1] - 17:4
legal [3] - 14:9, 24:11, 25:1
letter [16] - 3:8, 3:10, 4:2, 4:25, 5:1, 5:10, 5:11, 11:10, 13:4, 14:3, 18:14, 18:15, 18:16, 19:4, 22:15, 22:18
letters [3] - 3:11, 3:23, 13:11
level [1] - 20:18
light [1] - 4:20
likely [1] - 23:8
likewise [1] - 11:16
limited [1] - 24:20
line [3] - 2:21, 16:14, 17:16
list [1] - 15:11
litigation [1] - 22:4
Llp [2] - 1:20, 2:5
local [2] - 20:15, 23:8
locally [1] - 3:2
locked [1] - 19:15
logistics [1] - 17:17
looking [2] - 5:20, 18:7
love [1] - 9:18

## M

manufacturing [7] - 4:6, 4:25, 6:22, 7:13, 7:25, 9:17, 11:22
Maryellen [2] - 1:18, 2:23
material [4] - 22:23, 24:3, 24:8, 25:1
matter [1] - 14:3
Mcdonnell [2] - 1:20, 2:24
mentioned [1] - 10:16
Merit [1] - 1:25
midstream [1] - 6:11

might [1] - 23:10
mind [2] - 13:24, 20:4
minute [1] - 14:12
misheard [1] - 9:10
Monday [3] - 9:14, 10:1, 22:25
money [1] - 23:13
month [2] - 17:23, 20:20
months [1] - 17:22
Moriarty [31] - 2:6, 3:3, 3:6, 4:11, 4:13, 4:15, 6:19, 6:24, 7:14, 7:21, 7:22, 7:24, 8:19, 9:13, 9:21, 10:6, 10:14, 11:4, 11:24, 11:25, 12:14, 15:4, 15:8, 16:3, 16:13, 16:18, 17:2, 17:18, 22:11, 25:6, 25:7
Morris [2] - 1:17, 2:23
motion [6] - 22:15, 22:17, 22:25, 23:1, 23:24, 24:8
move [2] - 6:13, 18:8
moved [1] - 6:16

## N

nailed [1] - 19:15
names [1] - 18:6
Nath [1] - 2:5
need [14] - 3:16, 6:1, 6:10, 6:11, 6:12, 16:25, 18:8, 22:23, 22:24, 23:10, 23:24, 24:14, 24:25, 25:4
needed [1] - 22:14
needing [3] - 7:11, 15:5, 24:1
never [4] - 10:14, 10:15, 20:15, 20:17
New [2] - 2:7
new [3] - 14:9, 14:22, 21:14
next [7] - 3:25, 9:10, 10:1, 11:3, 11:23, 18:8, 22:25
Nichols [2] - 1:17, 2:23
Noreika [3] - 2:23, 3:9, 3:14
Noreika [2] - 1:18, 2:22
note [1] - 10:14
Note [1] - 2:18
notebooks [3] - 4:20, 5:12, 5:16
noted [1] - 4:5

nothing [1] - 19:20
notice [2] - 19:1, 19:2
number [1] - 13:3
Number [1] - 9:1

## O

obligation [1] - 12:20
obviously [4] - 6:5, 9:22, 24:9, 25:2
occasions [1] - 6:11
off-line [2] - 16:14, 17:16
offered [3] - 9:15, 10:10, 11:2
once [1] - 23:20
One [2] - 5:9, 10:23
one [13] - 3:11, 5:10, 7:19, 9:1, 10:8, 11:9, 14:10, 14:14, 19:17, 20:24, 21:8, 22:16, 23:5
ooo [1] - 2:16
open [1] - 17:12
opportunity [2] - 3:23, 17:5
Order [1] - 19:21
order [4] - 3:22, 7:19, 12:10, 20:3
original [1] - 8:19
originally [1] - 3:8
otherwise [1] - 6:1
Otherwise [1] - 7:6
ought [3] - 23:16, 24:11, 24:19
overdue [1] - 13:16
own [1] - 13:13

## P

pages [3] - 5:12, 5:13, 5:16
paper [2] - 11:13, 20:4
part [3] - 15:13, 17:17, 24:8
parties [3] - 3:22, 12:10, 21:25
past [2] - 6:16, 24:23
people [7] - 15:5, 15:11, 16:10, 17:15, 18:5, 21:16, 21:24
perfectly [1] - 24:25
perhaps [1] - 12:9
persuade [1] - 10:23
pharmaceutical [1] - 8:5
Pharmaceuticals [2] - 1:8, 2:8
Pharmacia [1] - 1:4,

1:22, 11:11, 20:24
Pharmacia's [2] - 13:14, 18:20
pick [1] - 6:10
piece [3] - 17:16, 22:9, 24:13
plaintiff [2] - 2:22, 3:15
Plaintiff [1] - 1:5
play [1] - 18:18
playing [3] - 14:9, 20:9, 20:18
Pm [1] - 25:12
point [14] - 4:11, 5:3, 5:22, 6:13, 6:16, 10:21, 12:9, 13:3, 13:4, 14:7, 19:12, 21:16, 22:6, 24:14
pointed [1] - 8:10
points [3] - 7:22, 8:25, 11:9
position [10] - 19:14, 20:11, 20:14, 21:8, 21:9, 21:10, 21:11, 21:15, 21:17, 22:2
positions [6] - 12:11, 13:25, 14:1, 21:18, 21:19, 21:25
possession [1] - 10:1
practicalities [1] - 22:4
practice [2] - 20:6, 20:16, 21:23, 22:3, 23:7
prejudice [1] - 24:2
prepared [1] - 11:6
preparing [1] - 19:19
Presumably [1] - 21:8
previously [1] - 15:11
privilege [1] - 24:17
privileged [1] - 24:3
problem [4] - 14:24, 15:6, 18:1, 18:2
produce [2] - 8:3, 22:23
produced [6] - 5:2, 5:4, 5:6, 5:14, 7:1, 7:16, 8:5, 11:5
product [1] - 11:10
production [12] - 4:5, 4:8, 4:9, 7:18, 8:3, 8:11, 8:17, 8:20, 10:12, 11:2, 11:7, 13:14
products [4] - 8:5, 8:8, 8:15, 8:21
prospective [1] - 14:17
provide [1] - 9:3
pull [2] - 4:10, 14:11

pulling [2] - 13:9, 14:8
put [6] - 3:24, 4:1, 13:15, 16:9, 20:2, 20:8

## Q

quarter [1] - 20:20

## R

R&d [17] - 5:2, 5:13, 5:16, 6:4, 6:21, 6:24, 7:12, 9:15, 9:16, 10:19, 11:5, 11:8, 11:11, 11:15, 11:17, 11:18, 11:22
rabbit [1] - 14:8
raise [3] - 11:20, 14:4, 18:9
raising [1] - 24:3
read [3] - 11:13, 13:11, 20:10
real [1] - 23:11
realize [4] - 5:24, 7:2, 19:17, 21:13
really [4] - 4:5, 15:13
rebuttal [1] - 20:23
received [4] - 22:18
record [4] - 7:25, 8:1, 16:25, 17:10
records [13] - 8:4, 8:6, 8:7, 8:10, 8:13, 8:17, 8:19, 8:20, 9:2, 9:3, 9:4, 10:17
reflect [1] - 24:6
refused [2] - 9:3, 9:4
regard [2] - 5:21, 14:13
Registered [1] - 1:25
Reid [2] - 2:6, 3:3
related [1] - 10:23
relation [1] - 14:21
relevance [2] - 24:15
relevant [1] - 15:12
relief [5] - 6:18, 22:5, 22:14, 22:24, 23:2
rely [1] - 24:5
remain [2] - 4:7, 5:15
remarks [1] - 17:11
replacement [2] - 3:10, 4:1
reply [2] - 20:23, 21:6
report [15] - 7:10, 7:11, 7:18, 7:20, 10:4, 10:18, 18:25, 19:19, 20:10, 20:19, 20:21, 20:22, 20:23, 21:7, 21:14

Reporter [1] - 1:25
reporter [1] - 17:10
Reporters [1] - 2:18
reports [5] - 10:15,
   10:22, 12:3, 12:13,
   19:11
representation [2] -
   5:17, 5:24
representing [1] -
   6:25
represents [1] - 7:15
request [4] - 4:6, 15:6,
   18:12, 18:21
requests [1] - 7:12
require [1] - 21:24
resolve [3] - 14:13,
   18:2, 18:3
resolved [1] - 7:25
respect [4] - 6:17,
   11:18, 14:25, 18:18
respond [5] - 12:17,
   23:14, 24:12, 24:22,
   25:10
responded [3] - 15:9,
   15:10, 15:15
response [9] - 3:12,
   4:4, 4:17, 9:20,
   14:18, 18:15, 20:21,
   22:18, 23:15
responses [4] - 12:12,
   12:20, 13:10, 13:19
resume [2] - 7:16,
   10:3
return [1] - 10:21
review [1] - 8:6
revise [1] - 13:17
Rich [4] - 1:21, 2:24,
   8:2, 19:9
room [1] - 5:5
Rosenthal [1] - 2:5
rule [1] - 19:20

**S**

schedule [1] - 15:5
scheduling [1] - 20:3
scope [1] - 11:7
seal [1] - 24:18
sealed [1] - 24:9
search [9] - 4:8, 5:6,
   5:8, 5:18, 5:19, 5:23,
   7:1, 7:15, 10:8
second [1] - 14:3
seconds [1] - 5:5
see [2] - 18:14, 23:17
seek [1] - 22:5
seeking [1] - 22:14
sees [1] - 21:14
semantic [2] - 16:6,

16:8
sense [1] - 12:8
September [8] - 3:9,
   3:12, 3:20, 18:16,
   19:3, 19:6, 20:20
served [3] - 15:11,
   18:25, 19:1
set [2] - 12:11, 19:3
shape [1] - 20:4
shift [1] - 22:9
shipping [2] - 9:2,
   9:19
short [2] - 4:23, 24:20
Shortly [1] - 18:25
shot [1] - 18:23
show [2] - 6:1, 7:3
showing [1] - 23:5
shy [1] - 5:17
Sicor [9] - 1:8, 2:8,
   4:2, 17:20, 18:25,
   19:1, 22:9
Sicor's [3] - 4:4, 5:11,
   19:9
side [10] - 7:12, 7:13,
   10:23, 14:7, 21:21,
   22:8, 23:14, 24:12,
   24:17, 24:21
sides [1] - 6:9
significance [1] -
   24:16
significant [2] - 17:25,
   18:1
similar [1] - 11:10
simply [2] - 13:4, 20:2
Sonnenschein [2] -
   2:5, 3:4
soon [1] - 3:21
Sorry [1] - 8:24
sort [2] - 10:8, 24:19
sounds [2] - 8:22,
   9:23
speakerphone [1] -
   6:10
speakerphones [1] -
   6:14
speaking [3] - 3:15,
   21:18, 23:6
specific [1] - 18:6
specifically [2] - 6:17,
   12:23
specificity [1] - 24:14
specify [1] - 13:5
speed [1] - 18:17
spend [1] - 23:12
stake [1] - 20:11
start [3] - 7:24, 12:2,
   18:10
state [1] - 18:17
statement [1] - 9:12
States [1] - 1:1

stating [1] - 13:1
stay [4] - 12:3, 22:17,
   22:19, 22:22
stick [2] - 9:16, 10:19
still [4] - 4:19, 4:23,
   16:13
Stop [2] - 16:23, 17:7
stopped [1] - 4:16
subject [1] - 14:3
submission [4] - 5:11,
   24:1, 24:7, 24:16
submit [3] - 7:20,
   24:10, 24:18
submitted [1] - 24:12
Suffice [2] - 13:15,
   15:4
suggest [1] - 6:9
supplement [7] - 7:11,
   8:3, 8:9, 8:17, 12:20,
   14:25, 16:16
supplemental [1] -
   11:1
supplemented [1] -
   13:3
supplementing [1] -
   14:25
support [1] - 23:2
surprises [2] - 13:11,
   15:14

**T**

table [3] - 13:14, 20:8,
   20:25
tangent [1] - 10:19
team [1] - 17:15
technology [1] - 6:14
tee [1] - 3:16
teeth [1] - 13:9
teleconference [1] -
   17:12
Telephone [2] - 1:12,
   25:12
telephone [1] - 2:18
terms [1] - 13:21
testify [1] - 11:6
testimony [1] - 22:4
theories [3] - 12:11,
   13:18, 14:9
they've [2] - 5:18,
   15:12
thinks [1] - 21:15
thorough [5] - 4:8,
   5:18, 7:1, 7:15, 10:9
thoroughness [1] -
   11:7
Thursday [5] - 1:12,
   10:11, 11:3, 11:23,
   19:6

ticking [1] - 15:5
timing [1] - 9:11
today [4] - 5:10, 10:2,
   13:15, 22:14
topic [3] - 5:7, 7:24,
   18:8
topics [2] - 15:7,
   16:11
total [1] - 5:16
touch [2] - 17:14,
   17:15
touched [1] - 3:8
true [6] - 7:3, 7:4, 7:6,
   17:24, 17:25
truth [2] - 15:17, 20:22
try [3] - 14:11, 22:24,
   23:20
trying [1] - 19:15
Tunnell [1] - 1:17
turns [1] - 7:4
Two [1] - 8:25
two [3] - 3:10, 5:9,
   6:20
type [1] - 14:15
typical [2] - 23:16
typically [2] - 22:1,
   23:18

**U**

under [1] - 24:18
uneven [1] - 20:9
unfair [1] - 17:20
United [1] - 1:1
units [1] - 8:14
unless [4] - 5:25, 9:9,
   13:23, 24:22
up [11] - 3:16, 6:10,
   6:15, 9:8, 14:22,
   18:17, 19:8, 21:24,
   23:4, 24:17, 25:4
updated [1] - 4:2
uphill [1] - 23:11
Upjohn [2] - 1:4, 1:22
urge [1] - 24:6
Usdcj [1] - 1:14
useful [1] - 7:9

**V**

validity [1] - 10:18
view [2] - 12:7, 15:16
viewed [1] - 16:4
volumes [1] - 11:11

**W**

wants [4] - 10:20,
   10:21, 16:15, 18:17

warning [1] - 23:22
week [7] - 7:19, 8:12,
   9:14, 10:2, 10:5,
   10:10, 11:3, 16:16,
   17:1, 18:3, 19:5,
   19:8
weeks [3] - 3:24, 3:25,
   5:10
whale [1] - 23:5
whatsoever [1] -
   20:13
whoa [4] - 16:23, 17:6
Whoa [1] - 17:6
willfulness [2] - 14:4,
   23:6
willing [1] - 19:4
Wilmington [2] - 1:11,
   2:23
wish [2] - 8:24, 19:18
witness [23] - 4:21,
   5:5, 5:7, 9:7, 10:3,
   10:7, 11:3, 11:5,
   11:6, 11:17, 11:23,
   12:13, 15:10, 18:12,
   20:7, 20:10, 20:11,
   20:12, 20:13, 20:21,
   21:1
witnesses [10] -
   14:17, 14:20, 15:7,
   15:17, 15:19, 15:21,
   15:25, 16:9, 17:3
write [1] - 22:14
wrote [1] - 22:16

**Y**

year [1] - 15:13
years [2] - 20:5, 21:22
York [2] - 2:7

EXHIBIT C

## PHARMACIA & UPJOHN'S MOTION IN LIMINE # 3:
## TO PRECLUDE USE OF EVIDENCE AND ARGUMENT
## THAT POWDERED IDARUBICIN IS AN ACCEPTABLE
## SUBSTITUTE FOR THE CLAIMED INVENTION

In relation to the damages phase of this case, the parties' experts have agreed that Pharmacia lost domestic sales of idarubicin hydrochloride to Sicor – an inescapable conclusion because, before Sicor's infringement began, Pharmacia was the only party selling idarubicin hydrochloride in the United States. Pharmacia has thus established a *prima facie* case of entitlement to lost profits. Sicor's expert countered by arguing that lyophilized idarubicin hydrochloride powder is an acceptable non-infringing substitute for the claimed invention. Because there is no evidentiary basis for his argument, Pharmacia moves the Court for an order *in limine* excluding Sicor from presenting argument or evidence that lyophilized idarubcin hydrochloride powder is an acceptable non-infringing substitute for the claimed invention for purposes of calculating Pharmacia's lost profits.

### FACTUAL BACKGROUND

Prior to Sicor's commencement of infringement, Pharmacia was the only party selling idarubicin hydrochloride in finished dosage form in the United States. Ex. 1, schedule 11; Ex. 2, appendix 4. At the time Sicor began infringing                    , those sales were almost entirely – on the way to being entirely – of the solution formulation claimed in the '285 patent.[1] *See* Ex. 1, ¶ 9; Ex. 2, appendix 4. Indeed, even though the F.D.A. granted Sicor approval to sell lyophilized idarubicin hydrochloride powder at the same time it granted Sicor approval to sell the claimed solution formulation,                    REDACTED                    Ex. 3; Ex. 4, p. 1, 258-59.

---

[1]

REDACTED

*See* Ex. 2, appendix 4.

1

REDACTED

. Ex. 5, p. 131; *see also* Ex. 2, p. 45.

Indeed, such a conclusion is inescapable: Pharmacia and Sicor are the only suppliers of

idarubicin hydrochloride in the United States,

REDACTED

*See, e.g.*, Ex. 1, schedule 11.1 (illustrating that the rise in Sicor's sales

equates to the fall in Pharmacia's sales).

## ARGUMENT

In a two-supplier market, like this one, it is presumed that the patentee would have made

the sales made by the infringer but for the infringement. *See Lam, Inc. v. Johns-Manville Corp.*,

718 F.2d 1056, 1065 (Fed. Cir. 1983). To shift the burden to the defendant, the patentee need

not conclusively prove that it lost sales, but rather "need only show that there was a reasonable

probability that the sales would have been made 'but for' the infringement." *Rite-Hite Corp. v.*

*Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). Once the patentee establishes a reasonable

probability of lost sales, "[T]he burden then shifts to the infringer to show that the inference is

unreasonable for some or all of the lost sales." *Id.* This burden on the infringer includes the

burden of showing that an acceptable substitute for the patented invention was available. *Micro*

*Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1125 (Fed. Cir. 2003).

Similarly, the accused infringer bears the burden of showing that a product is an

acceptable non-infringing alternative when that product is not on the market during the period of

infringement. "When an alleged alternative is not on the market during the accounting period, a

trial court may reasonably infer that it was not available as a non-infringing substitute at that

time. The accused infringer then has the burden to overcome this inference by showing that the

2

substitute was available during the accounting period." *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (citations omitted).

REDACTED

As a result, Sicor bears the burden of demonstrating that lyophilized idarubicin hydrochloride powder is an acceptable non-infringing alternative for the claimed formulation.

Sicor has provided in discovery nothing that could support a finding that lyophilized idarubicin hydrochloride powder is an acceptable non-infringing alternative for the claimed formulation. To the contrary,

REDACTED

Ex. 2, p. 15-16.

REDACTED

Ex. 5, p. 156-57.

The Federal Circuit strictly circumscribes the scope of acceptable alternatives for a lost-profits calculation. "[T]he mere existence of a competing device does not necessarily make that device an acceptable substitute." *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953

F.2d 1360, 1373 (Fed. Cir. 1991). "A product on the market which lacks the advantages of the patented product can hardly be termed a substitute acceptable to the customer who wants those advantages." *Id.* A product with "characteristics significantly different from the patented product" is not an "acceptable alternative." *See Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed.Cir.1991); s*ee also Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (substitute is "acceptable" when it compromises speed and quality). Sicor has admitted that lyophilized Idarubicin lacks several advantages of the patented invention. Accordingly, it cannot show – and has not attempted to show – that lyophilized idarubicin hydrochloride is an acceptable substitute.

Sicor has not come forward with evidence that lyophilized Idarubicin was economically available as a substitute for the patented invention. To show availability, the Federal Circuit requires "proper economic proof of availability," of the proposed substitute. *See Grain Processing Corp.*, 185 F.3d at 1356. That is, Sicor must show that it would have made financial sense to re-introduce lyophilized Idarubicin beginning in 2002: otherwise, if Sicor had chosen not to infringe, it likely would not have sold Idarubicin at all. *See id.* at 1354 (holding that a substitute was "available" only after proof that the infringer had "the economic incentive" to produce the alternative). .

REDACTED

· Ex. 5, p. 155.

*Id.* at

157.

REDACTED

*Id.* at 162.

4

REDACTED

1

REDACTED

2

REDACTED

3

> **New!  As of May 1, 2004, New and Generic Drug Approvals 1998-2004, will not be updated.
> Please use Drugs@FDA for all drug approval information, which includes the content of this
> page.**

| Product Name | Company | Application # | Approval Date | Letter Posted | Label Posted | Review Posted |
|---|---|---|---|---|---|---|
| **IBU (Ibuprofen) Tablets, 400, 600 & 800 mg, Rx** | BASF Corporation | ANDA 75-682 | 11/14/01 | | | |
| **Ibuprofen Capsules, 200 mg** | Banner Pharmacaps, Inc. | NDA 21-472/S1 | 1/22/02 | 2/2/04 | 2/2/04 | |
| **Ibuprofen Capsules, 200 mg** | Banner Pharmacaps, Inc. | NDA 21-472 | 10/18/02 | 10/28/02 | | |
| **Ibuprofen Capsules, 200 mg, OTC** | Pharmaceutical Formulations | ANDA 74-782 | 7/6/98 | 7/6/98 | | 3/30/99 |
| **Ibuprofen Oral Suspension USP, 100 mg/5 mL, OTC** | Alpharma | ANDA 74-916 | 1/9/98 | 3/15/99 | | |
| **Ibuprofen Oral Suspension USP, 100 mg/5 mL.** | L. Perrigo Company | ANDA 74-937 | 12/22/98 | 12/22/98 | 1/10/02 | 1/10/02 |
| **Ibuprofen Oral Suspension USP, 100 mg/5 mL, Rx** | Alpharma | ANDA 74-978 | 1/30/98 | 3/25/98 | | 3/19/99 |
| **Ibuprofen Oral Suspension USP, 40 mg/mL.** | L. Perrigo Company | ANDA 75-217 | 12/16/98 | 12/18/98 | 12/28/01 | 12/28/01 |
| **Ibuprofen Tablets, 200 mg, OTC** | Neil Laboratories | ANDA 76-460 | 11/26/03 | | | |
| **Ibuprofen and Pseudoephedrine Hydrochloride Oral Suspension, OTC** | Perrigo Co. | ANDA 76-478 | 11/5/03 | | | |
| **Ibuprofen and Pseudoephedrine** | Pharmaceutical Formulations, Inc. | ANDA 75-588 | 4/8/02 | | | 12/24/03 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Hydrochloride Tablets USP**, 200 mg & 30 mg, OTC | | | | | | |
| **Ibuprofen and Pseudoephedrine Hydrochloride Tablets USP**, 200 mg & 30 mg, OTC *Tentatively Approved* | Pharmaceutical Formulations, Inc. | ANDA 75-588 | 4/17/01 | 4/24/01 | | |
| **Ibuprofen and Pseudoephedrine Hydrochloride Tablets USP**, 200 mg/30 mg, OTC | Ohm Laboratories, Inc. | ANDA 74-567 | 4/17/01 | 4/24/01 | | |
| **Ibuprofen Tablets (round and capsule shaped tablets) USP**, 200mg | Novopharm N.C. Inc. | ANDA 74-931 | 7/20/98 | 7/20/98 | | 8/6/03 |
| **Ibuprofen Tablets (round and capsule shaped tablets) USP**, 200mg | LNK International | ANDA 75-139 | 3/1/99 | 3/4/99 | | |
| **Ibuprofen Chewable Tablets**, 50 & 100 mg, OTC | L. Perrigo Co. | ANDA 76-359 | 1/16/04 | 1/22/04 | | |
| **Ibuprofen Tablets USP**, 200 mg, OTC | Dr. Reddy's Laboratories Ltd. | ANDA 76-117 | 11/20/01 | | | |
| **Ibuprofen Tablets USP**, 400, 600 & 800 mg, Rx | Dr. Reddy's Laboratories Ltd. | ANDA 76-112 | 10/31/01 | 1/17/02 | | 1/17/02 |
| **Ibuprofen Tablets USP**, 200mg, OTC | L. Perrigo Company | ANDA 75-995 | 3/14/02 | | | |
| **Ibuprofen Tablets USP**, 200mg, OTC | BASF Corp. | ANDA 75-661 | 12/12/01 | | | 12/24/03 |

| Ibuprofen Tablets USP, 200mg | LNK International | ANDA 75-010 | 3/1/99 | 3/4/99 | | | |
|---|---|---|---|---|---|---|---|
| **Idamycin PFS (idarubicin hydrochloride) Injection USP,** | Pharmacia & Upjohn | NDA 50-734/S5 | 5/1/03 | 7/9/03 | 7/9/03 | | |
| **Idamycin (idarubicin hydrochloride) Injection USP,** | Pharmacia & Upjohn Company | NDA 50-661/S-008 | 10/11/02 | 10/21/02 | | | |
| **Idamycin (idarubicin hydrochloride) Injection USP,** | Pharmacia & Upjohn Company | NDA 50-661/S-007 | 9/30/02 | 10/2/02 | | | |
| **Idarubicin Hydrochloride Injection**, 5 mg/Vial, 10 mg/vial & 20 mg/vial (Single Dose Vials), Rx | Gensia Sicor Pharmaceuticals, Inc. | ANDA 65-037 | 5/1/02 | | | | |
| **Idarubicin Hydrochloride Injection**, 1 mg/mL Packaged in 5 mg/5 mL, 10 mg/10 mL, 20 mg/20 mL single dose vials, Rx | Gensia Sicor Pharmaceuticals, Inc. | ANDA 65-036 | 5/1/02 | | | | |
| **IDkit:Hp Oridion BreathID Breath Test System**, containing C-Urea (13C-urea tablet for oral solution) 75 mg, and Citrica (citric acid powder for oral solution) 4.0 g, | Oridion BreathID Inc. | NDA 21-314 | 12/17/02 | 1/29/03 | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ifosfamide Injection, Rx | Sicor Pharmaceuticals | ANDA 76-657 | 3/17/04 | | | | |
| Ifosfamide Injection, Rx | American Pharmaceutical Partners, Inc. | ANDA 76-078 | 5/28/02 | | | | |
| **Ifosfamide Injection/Mesna Injection Kit,** Rx | Gensia Sicor Pharmaceuticals, Inc. | ANDA 75-874 | 2/26/02 | | | | |
| **Iletin I Insulin, Lente Iletin I Insulin, and NPH Iletin I Insulin, respectively.** | Eli Lilly and Company | NDA 17-931/S-025, 17-933/S-026 & 17-936/S-027 | 2/11/02 | 3/5/02 | | | |
| **Imagent (Perflexane Lipid Microspheres),** | IMCOR Pharmaceutical | NDA 21-191/S1 | 4/21/04 | | | | |
| **Imagent,** | Alliance Pharmaceuticals, Inc. | NDA 21-191 | 5/31/02 | 6/3/02 | 5/31/02 | 9/23/02 | |
| **IMDUR (isosorbide mononitrate) Extended Release Tablets,** 30, 60 and 120 mg, Rx | Schering Corporation | NDA 20-225/S-008 | 1/22/03 | 1/27/03 | | | |
| **Imitrex (sumatriptan) Tablets, Spray, Injection,** | GlaxoSmithKline | NDA 20-132/S14, 20-626/S7 & 20-080/S30 | 7/28/03 | 8/15/03 | | | |
| **Imitrex (sumatriptan succinate) Injection,** | Glaxo Wellcome | NDA 20-080/S29 | 1/3/03 | 1/23/03 | | | |
| **Imitrex (sumatriptan succinate) Injection,** | Glaxo Wellcome | NDA 20-626/S-006 | 5/10/02 | 5/21/02 | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Imitrex (sumatriptan succinate) Tablets,** | GlaxoSmithKline | NDA 20-132/S15 | 6/30/03 | | | |
| **Imodium Advanced (Loperamide HCl and Simethicone) Caplet,** | McNeil Consumer Healthcare | NDA 21-140/S2 | 1/27/03 | 1/29/03 | 1/27/03 | |
| **Imodium Advanced (Loperamide HCl and Simethicone) Caplet** | McNeil Consumer Healthcare | NDA 21-140 | 11/29/00 | 12/12/01 | 12/12/01 | 12/12/01 |
| **Imuran (azathioprine) Injection and Tablets, Rx** | Prometheus Laboratories Inc. | NDA 16-324/S-026 & 17-391/S-011 | 12/19/02 | 1/29/03 | | |
| **Indapamide Tablets USP, 1.25 mg and 2.5 mg, RX** | Trigen Laboratories, Inc. | ANDA 75-201 | 12/4/98 | 12/4/98 | | |
| **Indapamide Tablets, 1.25 mg and 2.5 mg, RX** | Alphapharm Pty. | ANDA 75-105 | 7/23/98 | 7/23/98 | 1/4/02 | 1/4/02 |
| **INDIUM In 111 Oxyquinoline Solution,** | Amersham Health | NDA 19-044/S-018 | 9/19/02 | 9/24/02 | | |
| **Indocin I.V. (Indomethacin),** | Merck & Company | NDA 18-878/S18 & S19 | 5/6/03 | 7/9/03 | | |
| **Indomethacin Capsules USP, 25 & 50 mg, Rx** | Able Labs | ANDA 76-666 | 12/17/03 | | | |
| **Indomethacin Extended-release Capsules USP, 75 mg, Rx** | Able Labs | ANDA 76-114 | 2/6/02 | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Indomethacin Extended-release Capsules USP**, 75 mg | Eon Labs Manufacturing | ANDA 74-464 | 5/28/98 | 5/29/98 | | 3/15/99 |
| **Infant's Motrin (ibuprofen oral suspension) Concentrated Drops**, 50 mg/1.25 mL | McNeil Consumer Healthcare | NDA 20-603/S-003 | 4/15/99 | | | 4/30/02 |
| **Infant's Motrin (50 mg/1.25 mL ibuprofen oral suspension).** | McNeil Consumer & Specialty Pharmaceuticals | NDA 20-603/S-005 | 1/16/02 | 2/7/02 | 2/7/02 | |
| **Infants' Advil (ibuprofen oral suspension) Concentrated Drops,** 50 mg/1.25 mL. | Whitehall-Robins Healthcare | NDA 21-812/SE5-003 | 1/12/00 | 1/21/00 | 1/21/00 | |
| | **Infants' Advil Indications:** For use in children 6 months - 23 months | | | | | |
| **Infasurf (calfactant) Intratracheal Suspension,** Rx, | ONY, Inc. | NDA 20-521/S8 | 12/12/02 | 1/29/03 | | |
| **Infasurf (calfactant) Intratracheal Suspension,** Rx, | ONY | NDA 20-521 | 7/1/1998 | 7/2/98 | 7/2/98 | 4/11/02 |
| | **Infasurf Indication:** for the prevention and treatment of Respiratory Distress Syndrome (RDS) in neonates. | | | | | |
| **INFeD (iron dextran injection, USP)**, 50 mg/mL | Schein Pharmaceuticals, Inc. | NDA 17-441/S-161 | 4/18/01 | 5/3/01 | | |
| **Infuvite Adult (Multiple Vitamins for Infusion) IV,** | Sabex 2002 Inc. | NDA 21-559 | 6/16/03 | 7/8/03 | 7/8/03 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Infuvite Adult (Multiple Vitamins for Infusion) IV,** | Sabex 2002 Inc. | NDA 21-163/S5 | 2/12/03 | 2/25/03 | | | |
| **Infuvite Pediatric (Multiple Vitamins for Infusion),** | Sabex 2002 Inc. | NDA 21-646 | 1/29/04 | 1/3/04 | | | |
| **Infuvite Pediatric (Multiple Vitamins for Infusion),** | Sabex 2002 Inc. | NDA 21-265/S5 | 2/12/03 | 2/25/03 | | | |
| **Infuvite Pediatric (Multiple Vitamins for Infusion) IV,** | Sabex Inc. | NDA 21-265 | 2/21/01 | 6/19/02 | 6/19/02 | 6/19/02 | |
| | **Infulvite Indications:** Maintenance of multivitamins in infants and children up to 11 years of age receiving parenteral nutrition. | | | | | | |
| **Innofem Tablets (Estradiol Tablets, USP), 0.5 mg, 1 mg, and 2 mg.** | Novo Nordisk Pharmaceuticals, Inc. | ANDA 40-312 | 11/19/99 | 12/30/99 | | 7/11/01 | |
| **Innohep (tinzaparin sodium) Injection, Rx** | Pharmion Corporation | NDA 20-484/S-003 | 2/4/03 | 2/12/03 | | | |
| **Innohep (tinzaparin sodium) Injection, Rx** | Bristol-Myers Squibb Pharma Company | NDA 20-484/S-002 | 2/5/02 | 4/17/02 | | | |
| **Innohep (tinzaparin sodium) Injection, Rx** | Dupont Pharmaceutical Company | NDA 20-484 | 7/14/00 | 7/24/00 | 7/24/00 | 4/9/02 | |
| | **Innohep Indications:** for the treatment of acute symptomatic deep vein thrombosis with or without pulmonary embolism when administered in | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | conjunction with warfarin sodium. | | | | | |
| **InnoPran XL (propranolol hydrochloride) Extended Release Capsules, 80 and 120 mg, Rx** | Reliant Pharmaceuticals, LLC | NDA 21-438 | 3/12/03 | | | <u>7/8/03</u> |
| **INOmax (nitric oxide), 100 and 800 ppm, Rx** | INO Therapeutics Inc. | NDA 20-845 | 12/23/99 | <u>1/3/00</u> | <u>1/3/00</u> | <u>5/31/01</u> |
| | **INOmax Indication:** INOmax in conjunction with ventilatory support and other appropriate agents, is indicated for the treatment of term and near-term (>34 weeks) neonates with hypoxic respiratory failure associated with clinical or echocardiographic evidence of pulmonary hypertension, where it improves oxygenation and reduces the need for extracorporeal membrane oxygenation. | | | | | |
| **Inspra (eplerenone) Tablets, 25, 50, & 100 mg, Rx** | G.D. Searle LLC | NDA 21-437/S2 | 10/7/03 | <u>10/10/03</u> | <u>10/10/03</u> | |
| **Inspra (eplerenone) Tablets, 25, 50, & 100 mg, Rx** | G.D. Searle LLC | NDA 21-437 | 9/27/02 | <u>10/2/02</u> | <u>10/1/02</u> | 1/30/03 |
| **Intal (cromolyn sodium) Inhaler,** | Aventis Pharmaceuticals | NDA 18-887/S20 | 2/11/04 | <u>3/3/04</u> | <u>4/5/04</u> | |
| **Intal (cromolyn sodium) Nebulizer,** | Aventis Pharmaceuticals | NDA 18-596/S30 | 2/11/04 | <u>3/3/04</u> | <u>4/5/04</u> | |
| **Integrilin (eptifibatide) Injection, Rx** | Millennium Pharmaceuticals, Inc. | NDA 20-718/S17 | 6/16/03 | <u>7/18/03</u> | <u>7/18/03</u> | |
| **Integrilin (eptifibatide) Injection, 20 mg/10 ml and 75 mg/ 100 ml, Injection, Rx** | COR Therapeutics | NDA 20-718 | 5/18 | <u>5/28/98</u> | <u>5/28/98</u> | <u>1/2/02</u> |
| | **Integrilin Indications:** 1. For the treatment of patients with acute coronary syndrome (UA/NQMI), including patients who are to be managed medically and those undergoing percutaneous coronary intervention (PCI). In this | | | | | |

setting, INTEGRILIN has been shown to decrease the rate of a combined endpoint of death or new myocardial infarction. 2. For the treatment of patients undergoing PCI. In this setting, INTEGRILIN has been shown to decrease the rate of a combined endpont of death, new myocardial infarction, or need for urgent intervention.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Integrilin (eptifibatide) Injection**, Rx | COR Therapeutics, Inc. | NDA 20-718/S-002 | 9/20/99 | 9/24/99 | 9/24/99 | 7/5/01 |
| | **Integrilin Indication:** For the treatment of patients with acute coronary syndrome (UA/NQMI), including patients who are to be managed medically and those undergoing percutaneous coronary intervention (PCI). In this setting, Integrilin has been shown to decrease the rate of a combined endpoint of death or new myocardial infarction.<br><br>For the treatment of patients undergoing PCI. In this setting, Integrilin has been shown to decrease the rate of a combined endpoint of death, new myocardial infarction, or need for urgent intervention. | | | | | |
| **Integrilin (eptifibatide) Injection**, Rx | COR Therapeutics, Inc. | NDA 20-718/S-010 & S-13 | 6/8/01 | 11/6/01 | 11/6/01 | 1/14/02 |
| Interferon alfa-2a | Hoffman-LaRoche | BLA 103145/5026 | 9/10/03 | 10/29/03 | | |
| **Intralipid I.V. Fat Emulsion**, 10, 20 & 30% | Fresenius Kabi | NDA 17-643/S70, 18-449/S37 & 19-942/S10 | 4/16/04 | | | |
| **Intron (interferon alfa 2b) (REBETRON COMBINATION THERAPY),** | Schering Corporation | NDA 20-903/S-025 | 11/13/02 | | 11/14/02 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Intron (interferon alfa 2b) (REBETRON COMBINATION THERAPY),** | Schering Corporation | NDA 20-903/S-024 | 11/13/02 | | | | |
| **Intron (interferon alfa 2b) (REBETRON COMBINATION THERAPY),** | Schering Corporation | NDA 20-903/S-023 | 9/3/02 | 9/11/02 | | | |
| **Invanz (Ertapenem Sodium)** | Merck & Co. | NDA 21-337 | 11/9/01 | 1/28/02 | 1/28/02 | 1/29/02 |
| **Inversine (mecamylamine hydrochloride) Tablets, 2.5 mg,** | Targacept, Inc. | NDA 10-251 / S-024 | 10/18/02 | 10/28/02 | | | |
| **INVIRASE (saquinavir mesylate) Capsules, 200 mg, Rx** | Hoffman-La Roche, Inc | NDA 20-628/S20 | 12/24/03 | 1/14/04 | 1/15/04 | | |
| **INVIRASE (saquinavir mesylate) Capsules,** | Hoffman-La Roche, Inc | NDA 20-628/S-016 | 6/24/02 | 7/2/02 | 6/25/02 | | |
| **Ionamin (Phentermine resin) Capsules,** | Celltech Pharmaceuticals | NDA 11-613/S-026 | 10/8/03 | 10/16/03 | | | |
| **Iopamidol-250/-300/-370 (Iopamidol Injection USP, 51 %, 61%, 76%)** | Abbott Laboratories | ANDA 75-005 | 2/24/98 | | | 3/19/99 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Iopamidol-250/-300/-370 (Iopamidol Injection USP, 51 %, 61%, 76%),Rx** | Cook Imaging Corporation | ANDA 74-881 | 7/28/00 | <u>10/31/00</u> | | | |
| **Iopidine (apraclonidine ophthalmic solution), 5%,** | Alcon Laboratories, Inc. | NDA 20-258/S-019 | 5/9/03 | <u>7/9/03</u> | <u>7/9/03</u> | | |
| **Iopidine (apraclonidine ophthalmic solution), 1%,** | Alcon Laboratories, Inc. | NDA 19-779/S-015 | 5/15/03 | | | | |
| **Iopidine (apraclonidine ophthalmic solution), 1%,** | Alcon Laboratories, Inc. | NDA 19-779/S-014 | 3/22/02 | <u>3/29/02</u> | <u>3/22/02</u> | | |
| **Ipratropium Bromide Inhalation Solution, 0.02%, Rx** | Roxane Laboratories, Inc. | ANDA 75-867 | 7/22/02 | | | | |
| **Ipratropium Bromide Inhalation Solution, 0.02%, Rx** | Bausch & Lomb Pharmaceuticals, Inc. | ANDA 75-835 | 10/15/01 | | | | |
| **Ipratropium Bromide Inhalation Solution, 0.02%, Rx** | Aslung Pharmaceutical, L.P. | ANDA 75-693 | 1/26/01 | <u>3/5/01</u> | | | |
| **Ipratropium Bromide Inhalation Solution, 0.02%, Rx** | Nephron Pharmaceuticals Corporation | ANDA 75-562 | 9/27/01 | | | | |
| **Ipratropium Bromide Inhalation Solution,** | Warrick Pharmaceuticals | ANDA 75-507 | 1/19/01 | <u>3/5/01</u> | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 0.02%, Rx | | | | | | |
| **Ipratropium Bromide Inhalation Solution,** 0.02% (packaged in 2.5 mL plastic ampules), Rx | Novex Pharma | ANDA 75-441 | 3/28/01 | 3/30/01 | | 6/11/02 |
| **Ipratropium Bromide Inhalation Solution,** 0.02% (packaged in 0.5 mg/2.5 mL unit-dose vials) Rx | Steripak Limited | ANDA 75-313 | 2/7/00 | | | 8/6/03 |
| **Ipratropium Bromide Inhalation Solution,** 0.02%, Rx | Alpharma | ANDA 75-111 | 4/23/99 | 4/28/99 | 1/4/02 | 1/4/02 |
| **Ipratropium Bromide Nasal Solution,** 0.03%, Rx | Novex Pharma | ANDA 76-156 | 4/18/03 | | | |
| **Ipratropium Bromide Nasal Solution,** 0.06%, Rx | Novex Pharma | ANDA 76-155 | 4/18/03 | | | |
| **Ipratropium Bromide Nasal Spray, Rx** | Roxane Laboratories | ANDA 76-664 | 11/5/03 | | | |
| **Ipratropium Bromide Nasal Spray, Rx** | Roxane Laboratories | ANDA 76-598 | 11/5/03 | | | |
| **Iprivask (Desirudin) Injection, Rx** | Aventis Pharmaceuticals, Inc. | NDA 21-271 | 4/4/03 | | 4/18/03 | |
| **Iquix (Levofloxacin) Opthalmic Solution,** 1.5%, Rx | Santen Incorporated | NDA 21-571 | 3/1/04 | 3/3/04 | 4/5/04 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Iressa (Gefitinib) Tablets, Rx | AstraZeneca | NDA 21-399 | 5/5/03 | 5/12/03 | 5/5/03 | 7/15/03 |
| **Irrigating Solution G (PL 325),** | Baxter Healthcare Corporation | NDA 18-519/S-014 | 7/17/02 | 7/24/02 | | |
| **Isoflurane, USP(Liquid for Inhalation), 100 mL and 250 mL.** | Halocarbon Products Corporation | ANDA 75-225 | 10/20/99 | 12/30/99 | | |
| **Isoptin SR (verapamil hydrochloride) Tablets,** 120 mg, 180mg, and 240mg, Rx | Abbott Laboratories | NDA 19-152 /S-030 | 11/26/02 | 12/6/02 | | |
| **Isordil Sublingual (isosorbide dinitrate) Tablets 2.5, 5 and 10 mg, Rx** | Wyeth-Ayerst | NDA 12-940/S-044 | 9/16/01 | 11/21/02 | | |
| **Isordil Titradose (isosorbide dinitrate) Tablets, 5, 10, 20, 30, & 40 mg, Rx** | Wyeth-Ayerst | NDA 12-093/S-044 | 9/26/01 | 11/8/02 | | |
| **Isosorbide Dinitrate Extended-release Tablets, 40 mg, Rx** | Inwood Laboratories, Inc. | ANDA 40-009 | 12/30/98 | | | 1/24/02 |
| **Isosorbide Mononitrate Extended-release Tablets, 60 mg, Rx** | Zenith Goldline Pharmaceuticals, Inc. | ANDA 75-448 | 6/19/00 | 10/30/00 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Isosorbide Mononitrate Extended-release Tablets**, 30 mg, 60 mg, & 120 mg, Rx | KV Pharmaceutical | ANDA 75-395 | 3/16/00 | 3/21/00 | | | |
| **Isosorbide Mononitrate Tablets**, 10 mg and 20 mg, Rx | Purepac Pharmaceutical Company | ANDA 75-037 | 10/30/98 | 11/2/98 | | | |
| **Isosorbide Mononitrate Tablets**, 20 mg, Rx | Westward Pharmaceutical Corp. | ANDA 75-361 | 10/5/00 | 10/30/00 | | | |
| **Isosorbide Mononitrate Extended-release tablets**, 60 mg, Rx | Elan Pharmaceutical Research | ANDA 75-041 | 9/22/98 | 9/23/98 | 8/24/01 | 8/24/01 | |
| **Isosorbide Mononitrate Extended-release Tablets**, 30 mg and 60 mg, Rx | Purepac Pharmaceutical Inc. | ANDA 75-306 | 12/31/98 | | | | |
| **Isosorbide Mononitrate Tablets**, 20 mg, Rx | Teva Pharmaceuticals USA | ANDA 75-147 | 11/27/98 | 1/2/02 | 1/2/02 | 1/2/02 | |
| **Isosorbide Mononitrate Extended-release Tablets**, 60 mg, Rx | Brightstone Pharma | ANDA 75-166 | 10/7/99 | 12/30/99 | | | |
| **Isosorbide Mononitrate Extended-release Tablets**, 60 mg, Rx | Kremers Urban | ANDA 75-155 | 10/30/98 | 11/3/98 | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Isosorbide Mononitrate Extended-release Tablets,** 60 mg, Rx | Dexcel Ltd. | ANDA 75-522 | 4/17/00 | <u>4/24/00</u> | | | <u>12/6/01</u> |
| **Isovue-M (iopamidol injection),** | Bracca Diagnostics Inc. | NDA 18-735/SLR-043 | 7/8/02 | <u>7/9/02</u> | | | |
| **Isovue Multipack,** | Bracca Diagnostics Inc. | NDA 20-237/S4 | 12/5/03 | <u>12/11/03</u> | | | |
| **Isovue (iopamidol injection) and Isovue Multipack (iopamidol injection-pharmacy bulk pack),** | Bracca Diagnostics Inc. | NDA 18-735/SLR-044 & 20-237/SLR-002 | 6/20/02 | <u>6/24/02</u> | | | |
| **Isuprel (isoproterenol hydrochloride) Injection** | Abbott Laboratories | NDA 10-515/S-022 | 5/5/99 | <u>5/6/99</u> | 5/6/99 | <u>6/20/01</u> | |
| **Itraconazole Capsules,** 100 mg, Rx *Tentatively Approved* | Eon Labs Manufacturing, Inc. | ANDA 76-104 | 5/8/02 | | | | |
| **Jadelle (Levonorgestrel) Implants,** Rx | Population Council | NDA 20-544/S3 | 11/22/02 | <u>12/9/02</u> | 11/22/02 | | |
| **Jantoven (Warfarin Sodium) Tablets,** Rx | Upsher-Smith | ANDA 40416 | 10/2/03 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Junel™ 1.5/30 (Norethindrone Acetate and Ethinyl Estradiol) Tablets USP, 1.5 mg/0.03 mg, respectively), Rx** | Barr Laboratories, Inc. | ANDA 76-381 | 5/30/03 | | | |
| **Junel™ Fe 1/20 (Norethindrone Acetate and Ethinyl Estradiol) Tablets USP & Ferrous Fumarate Tablets, 1 mg/20 mcg, respectively), Rx** | Barr Laboratories, Inc. | ANDA 76-081 | 9/18/03 | | | |
| **Junel™ Fe 1.5/30 (Norethindrone Acetate and Ethinyl Estradiol) Tablets USP & Ferrous Fumarate Tablets, 1.5 mg/30 mcg, respectively), Rx** | Barr Laboratories, Inc. | ANDA 76-064 | 9/18/03 | | | |

[Accessibility]

 Back to Drug Information Page

Some of our documents are in **P**ortable **D**ocument **F**ormat (PDF) to retain the original format. To view or print these documents, you must use the Adobe Acrobat viewer. Acrobat is free and available directly from Adobe's website with full installation instructions. **Get Adobe Reader**

*June 20, 2001 03:56 PM*

4

REDACTED

5

REDACTED

EXHIBIT D

## PHARMACIA & UPJOHN'S MOTION IN LIMINE # 4:
### TO EXCLUDE USE OR REFERENCE TO CERTAIN
### <u>INFORMATION THAT HAS NO RELEVANCE TO ANY ISSUE</u>

Sicor has listed on its trial exhibit list certain exhibits that suggest it will attempt raise arguments that not only have no relevance to the issues at trial, but also are quite likely to prejudice the jury. For example, it appears that Sicor will seek to introduce evidence or argument relating to the absence of Dr. Carlo Confalonieri (and other inventors) from deposition or trial; documents or laboratory notebooks that were not produced because they are not now in Pharmacia's possession, custody, or control; and communications by or from the Upjohn company. Pharmacia asks for the exclusion of all such evidence, and arguments based on such evidence, at trial.

As a threshold matter, evidence must be relevant in order for it to be admissible. Federal Rule of Evidence 401 states that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. But even if evidence is considered relevant, it may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

## I.    DR. CONFALONIERI'S ABSENCE IS IRRELEVANT TO ANY ISSUE

Dr. Carlo Confalonieri is listed as an inventor on the face of the '285 patent and submitted declarations during prosecution of the patent application. Sicor has accused Dr. Confalonieri of inequitable conduct, but Dr. Confalonieri will not be able to be present at trial to defend himself – he is in ill health and was too sick even to sit for testimony in Italy. It is clear

that Pharmacia had no role in Dr. Confalonieri not being at trial; he apparently had a stroke and was therefore never able to provide testimony in this case. Ex. 1.

There simply is no relevance to Dr. Confalonieri's absence. Sicor should not be able to take advantage of his ill health to suggest something sinister or dishonest. Any reference to his absence by Sicor at trial should be prohibited by the Court.

## II.    SICOR SHOULD BE PREVENTED FROM REFERRING TO DOCUMENTS THAT WERE NOT LOCATED AFTER A REASONABLE SEARCH OF PHARMACIA'S RECORDS

During depositions, Sicor has pointed to several instances where decades-old Pharmacia documents, such as lab notebooks, testing documents and other materials lost or destroyed prior to litigation, were not located after multiple, good-faith searches of Pharmacia's records as kept in the ordinary course of business. Sicor should be prevented from introducing the absence of these documents or their absence at trial: there is nothing ominous about the fact that several very old documents could not be located within a company the size of Pharmacia, after the passage of so many years, and allowing the jury to learn of the absence of such documents would work an extreme prejudice on Pharmacia. Furthermore, the only context in which such an argument would be relevant would be in a laches case, which Sicor has expressly waived. Ex. 2.

Sicor cannot point to a single "missing" document that somehow would provide the missing link to its invalidity or inequitable conduct proofs. Instead, Sicor apparently wants to use the absence of a handful of documents to create an improper cloud over Pharmacia and the real issues of this case. The fact that a handful of documents twenty years old or older were not located by Pharmacia, after multiple mergers and acquisitions of various companies engaged in anthracycline glycoside research, over a long period of time, is simply irrelevant to any issue before the Court.

2

Again, Sicor's exhibit list gives the strong impression that Sicor will attempt to cloud the issues in this case by pointing to what is not in evidence, rather than what is. Given the posture of this case, it has no good faith basis for raising such an argument or seeking such testimony, and should be prohibited from doing so.

### III. THE UPJOHN COMPANY'S DOCUMENTS ARE IRRELEVANT

Sicor's trial exhibit list makes it clear that Sicor is intent on using documents and information related communications with the Upjohn Company. Upjohn merged with Pharmacia in 1995, but Pharmacia  By way of example, Sicor seeks to use in the liability phase the business alliance agreement and termination agreement between Delta West, the Upjohn Company, and Gensia Laboratories (DTX 103, 104).[1] Sicor should be prevented from introducing such Upjohn communication documents at trial, as they are completely irrelevant to any issue pending before the Court. The Upjohn communication documents simply do not relate in any way to invalidity, inequitable conduct, unclean hands, damages, or willfulness. Just as importantly, however, such documents are likely to be proffered in a way that is confusing to the jury. The fact that Sicor's predecessor-in-interest partnered with the Upjohn Company before the Upjohn Company had any rights in the '285 patent is likely to confuse the issues. Fed. R. Evid. 403. All such documents, including DTX 99-108, and all testimony and argument regarding the Upjohn Company should be excluded.

---

[1] Delta West was a pharmaceutical company that was owned by the Upjohn Company. Gensia Laboratories is Sicor's predecessor-in-interest.

3

1

REDACTED

2

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 11, 2006

**VIA ELECTRONIC FILING**

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

Re:  Pharmacia & Upjohn Co. LLC v. Sicor, Inc., et al.,
C.A. 04-833-KAJ

Dear Judge Jordan:

In furtherance of Jordan Sigale's representations in open court on July 7, 2006, Sicor, Inc. and SICOR Pharmaceuticals, Inc. hereby solely withdraw their fourth affirmative defense (Equitable Estoppel) and fifth affirmative defense (Laches) set forth in their Second Amended Answer To First Amended Complaint, Counterclaim And Demand For A Jury Trial (D.I. 212).

Respectfully,

/s/ John G. Day

John G. Day

JGD: dmf
171144.1

cc:  Clerk of the Court (via electronic mail)
Maryellen Noreika, Esquire (via electronic mail)
Reid L. Ashinoff, Esquire (via electronic mail)
Daniel A. Boehnen, Esquire (via electronic mail)

# EXHIBIT E

**PHARMACIA & UPJOHN'S MOTION IN LIMINE # 5:**
**TO PRECLUDE USE OF CERTAIN DOCUMENTS**
**DURING THE VALIDITY PHASE**

This Court has indicated that trial in this case would proceed in phases, separating

damages and willfulness from liability.  Sicor, however, has served a trial exhibit list that

identifies numerous documents that do not relate in any way to the validity of the '285 patent

(the sole remaining issue of liability), yet is seeking to use them during the validity phase.  In

relation to validity, Sicor's arguments are related only to obviousness, written description, and

enablement – all of which relate solely to publicly available information at or before the time of

filing of the patent application.  Yet Sicor's list of documents to be used in the validity phase

includes numerous confidential internal communications, documents relating to production of

the commercial embodiment of the claimed product, and documents related to independent

litigation.  The following documents have no relation whatsoever to validity and should be

excluded from the validity phase of the trial:

**I.    Internal Correspondence**

- DTX 21      Facsimile Message to Dr. G. Tosolini, November 11, 1985
- DTX 22      Facsimile Message to Dr. G. Tosolini, November 11, 1985 with handwritten notes
- DTX 23      Handwritten Notes (Wassermann and Bundgaard)
- DTX 28      Adria: Inter-Office Communication from R. L. Wolgemuth and S. Penco, May 31, 1985 FICE/Adria Review of the Ohio State Anthracycline Projects
- DTX 34      Memo on New Pharmaceutical Forms Requested by International Division by Marketing Estero-May 28, 1985
- DTX 121     Inter-Office Communication from R. L. Wolgemuth and S. Penco, May 31, 1985 – Review of the Ohio State Anthracycline Projects
- DTX 122     Message Transmittal Form to G. Tosolini – Regarding Adria Management suggested visit to FICE on discussion of Adriamycin RTU
- DTX 125     Message Transmittal Form to G. Tosolini, November 11, 1985 – Regarding Beijnen et al paper on Stability of Anthracyclines and Doxorubicin
- DTX 128     Message Transmittal Form to G. Tosolini, November 11, 1985, Regarding paper by Beignen et al.
- DTX 129     Message Transmittal Form Regarding Doxorubicin TRU Solutions to G. Tosolini, June 19, 1985

## II.   Documents Relating to Subsequent Commercial Embodiments

- DTX 27      Letter from C. Confalonieri to Dr. W. Wright, July 12, 1991 – Re: U.S. Pharmacopoeia Monograph for Doxorubicin Hydrochloride Injection
- DTX 38      Chart: Department Div-Mkt-Ent – Version – Currency – Exchange Rate Set – Accumulation Method
- DTX 59      Printout from Pfizer webpage – "Everyone Should Be Able to Get the Medicines They Need"
- DTX 64      Meeting Minutes for meeting between FDA and Pharmacia Regarding Inspection of Perth, Australia, facility – October 24, 2002
- DTX 65      Email from B. Winter to K. Loberg, April 10, 2003 - FW: Doxorubicin Agreement
- DTX 74      USA Idamycin – First Shipments – Batch Sizes

## III.   Documents Relating to Other Litigation or Other Matters

- DTX 94      Manual of Patent Examining Procedure – Original Fifth Edition, August 1983 – Latest Revision March 1994
- DTX 103      Signed Business Alliance Agreement Among: Delta West PTY: Limited, The Upjohn Company, Gensia Laboratories, LTD, and Gensia Pharmaceuticals – April 23, 1993
- DTX 104      Termination and License Agreement – The Upjohn Company, Delta West PTY, Ltd, Gensia, Inc., Gensia Laboratories, Ltd., October 11, 1995
- DTX 105      Letter from L. Welch to W. Fach, December 4, 1995-RE: *Pharmacia v. Gensia, Inc., et al.*
- DTX 107      Data "As Filed with the Securities and Exchange Commission on August 21, 1995" – Registration NO. 33"
- DTX 108      Letter from W. Fach to L. Welch, December 8, 1995, Pharmacia, Inc. v. Gensia, Inc., et al.