IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-833-KAJ |
| | ) | |
| SICOR INC. and SICOR | ) | **REDACTED VERSION** |
| PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED FINAL PRETRIAL ORDER
## VOLUME V OF V

MORRIS NICHOLS ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  Attorneys for Plaintiff

ASHBY & GEDDES

Steven J. Balick (#2114)
John G. Day (#2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
  Attorneys for Defendants

Original Filing Date:  September 22, 2006

Redacted Filing Date:  October 5, 2006

EXHIBIT 11

EXHIBIT A

## PHARMACIA'S OPPOSITION TO SICOR'S MOTION IN LIMINE #1:
## EVIDENCE RELATING TO SICOR'S CRIMINAL CONVICTIONS

As reported in Italy's premier afternoon newspaper and recalled by sworn witness Gaetano Gatti, Sicor and many of its executives were convicted of theft and stealing trade secrets for "having unduly and illegally taken from Farmitalia Carlo Erba [Pharmacia's predecessor-in-interest] the suitable strains that were used for the production of Doxorubicin." Ex. 1, p. 143; *see also* Exs. 2-7.[1]   Although Sicor now argues that it was a "purported conviction" and tries to dissociate it from this case, Sicor does nothing to controvert Dr. Gatti's powerful testimony. Instead, Sicor is merely attempting procedural maneuvers to avoid the introduction of that testimony and the underlying articles.   But there is no merit to any of Sicor's attacks: the testimony and articles are directly relevant, admissible evidence relating to both the measure of damages and Sicor's willful infringement.   Thus, Rule 609(b) of the Federal Rules of Evidence is wholly irrelevant, and Sicor's other arguments fall quickly as well.

**I.      Testimony and Articles Relating to Sicor's Crimes Are Relevant Evidence**

The criminal convictions at issue – of both Sicor and its officers and directors – were ones in which Pharmacia's predecessor-in-interest was the victim and related directly to Sicor's ability to infringe Pharmacia's intellectual property rights, including those at issue in this case. Ex. 1, p. 143-44; Exs. 2, 3.  Specifically, on behalf of Sicor, Sicor's officers and directors[2] "stole

---

[1] Sicor complains that it was not provided translations of the Italian articles used to refresh Dr. Gatti's recollection.  Sicor Motion, p. 1-2 n.1.  Pharmacia did not provide those translations because they had not been prepared at the time of the deposition.  Indeed, the translations were provided to Sicor less than one week after their preparation.    However, Sicor's argument that it was "deprived of a meaningful opportunity to examine Mr. Gatti on [the] contents" of the articles is not only false, but intentionally deceptive – one of its counsel's representatives at the deposition was not only fluent in Italian, his M.S. was earned at the Universita di Roma.  Ex. 8.  Such deception should not be permitted.

[2] One of the convicted individuals was Carlo Salvi, who later became President, CEO and Vice Chairman of the Board of Sicor Inc. and is still one of the directors of Sicor's ultimate parent company, Teva Pharmaceutical Industries.  Ex. 9.

the culture strains and the microorganisms for doxorubicin from Farmitalia Carlo Erba." Ex. 3.

Doxorubicin is one of the three anthracycline glycosides claimed in the '285 patent, including in

asserted claim 9. Sicor's apparent motivation in stealing doxorubicin-producing samples from

Pharmacia's predecessor-in-interest was to infringe patents:

> Sicor, in fact, aware that the Farmitalia patents on doxorubicin were about to
> expire in a few countries, had tried to insert itself into the market. The problem
> was how to produce the same drug. According to what the magistrate has verified,
> Sicor stole the culture strains and the microorganisms, probably using former
> employees of Farmitalia who had begun working for it. And that was not all:
> Sicor also snatched the secret to its production.

*Id.*

The no holds (or laws) barred approach of Sicor would have been something that

Pharmacia would have known at the time of Sicor's first infringement, which would have

affected the negotiating relationship between the two parties. One of the *Georgia-Pacific* factors

specifically requires the jury to consider the "commercial relationship between the [parties]" in

determining a reasonable royalty. *Georgia-Pacific Corp. v. U.S. Plywood Co.*, 318 F. Supp.

1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.), *cert. denied*, 404 U.S.

870 (1971). Clearly, in any hypothetical negotiation between Pharmacia and Sicor for a license

under the '285 patent for a ready-to-use idarubicin hydrochloride solution, Sicor's misconduct in

relation to anthracycline glycoside would be an important consideration. And Mr. Salvi's

involvement in the criminal activities would be relevant, as he was (at the time of the

hypothetical negotiation) the current Vice Chairman of the Board of Sicor and the immediate

past President and CEO.

Furthermore, the convictions of Sicor and Mr. Salvi would also be relevant to the issue of

whether Sicor's infringement was willful. To determine willfulness, the jury "must examine the

totality of the circumstances of the case." *Minnesota Mining & Mfg. Co. v. Johnson & Johnson*

*Orthopaedics Inc.,* 976 F.2d 1559, 1582 (Fed. Cir. 1992). According to the Federal Circuit, such factors include the infringer's "pattern of copying" in related products and "the intense business and technical rivalry" between the infringer and the patent owner. *Id.* (finding misappropriation of trade secrets and infringement of other patents evidence of willfulness); *see also Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.,* 63 F. Supp. 2d 1064, 1081 (N.D. Cal. 1999). In this case, Sicor's prior conviction for misappropriation of Farmitalia's doxorubicin intellectual property and theft of culture strains constitutes part of its pattern of copying, and demonstrates the scope of the intense business and technical rivalry between Sicor and Pharmacia.

Under these circumstances, it is clear that Dr. Gatti's testimony and the newspaper articles have a tendency to make the fact of Sicor's and Mr. Salvi's theft of Farmitalia's anthracycline glycoside trade secrets more probable than without that evidence. The evidence is therefore admissible under Rule 401. Fed. R. Evid. 401. In addition, precluding such clearly relevant evidence would significantly and unfairly prejudice Pharmacia in explaining the commercial relationship between Sicor and Pharmacia, the scope and intensity of the long-standing rivalry between these companies, and Sicor's pattern of misconduct with regard to Pharmacia's anthracycline glycoside intellectual property. Sicor will likely be put in the uncomfortable position of explaining its repeated misconduct with regard to Pharmacia's anthracycline glycoside intellectual property, but that is far from *unfair* prejudice and does not outweigh the probative value of the evidence, let alone substantially outweigh. Fed. R. Evid. 403. As such, this evidence is highly relevant and probative to jury issues in the damages and willfulness phase of this case and should be admitted.

Curiously, Sicor argues that no witness could testify to the nature of Sicor's and Mr. Salvi's misdeeds and convictions. One already has: Dr. Gatti, who testified at length from personal recollection of the nature of the misdeeds and convictions:

> Q:      Were you familiar with a court case between Farmitalia Carlo Erbe and the Sicor company located in [Rho]?
>
> A:      Yes.
>
> Q:      What did that case involve?
>
> A:      The synthesis of the active drug substance of Doxorubicin and anthracyclines in general.
>
> Q:      Do you know what the allegations in that case were?
>
> A:      At the time it was infringement of the patent for the production of Doxorubicin.
>
> . . .
>
> Q:      . . . Do you recall whether there was an investigation to determine whether Sicor had misappropriated the active drug substance?
>
> A:      There was not only an investigation, there was a trial, and in the end Sicor was found guilty.
>
> Q:      Sicor was found guilty of what?
>
> A:      For having unduly and illegally taken from Farmitalia Carlo Erbe the suitable strains that were used for the production of Doxorubicin.
>
> . . .
>
> Q:      Do you recall whether any individuals who worked for Sicor were found guilty of misappropriating the strains from which Doxorubicin could be obtained?
>
> A:      If I remember correctly, the Managing Director and some of the middle managers at Sicor.

Ex. 1, p. 137-44 (objections omitted).

## II.    Sicor's Arguments Are Irrelevant and Meritless

Sicor's primary – and almost exclusive – argument for precluding the evidence regarding its criminal convictions is Rule 609(b)[3] of the Federal Rules of Evidence, as interpreted in the *Shapiro*, *Pritchard* and *Cathay* cases.  Sicor Motion, p. 2-4.  Rule 609, however, relates only to impeachment of witnesses, not admissibility of criminal convictions as direct evidence of some other matter.  Fed. R. Evid. 609(a) ("For purpose of attacking the credibility of a witness, . . . .").  As a result, the ten-year time limit in the rule on the use of criminal convictions for attacking the credibility of a witness has nothing to do with the use of Sicor's prior criminal convictions in this case; Rule 609 has nothing to do with the use of criminal convictions for other purposes, including in connection with the determination of damages or the totality of the circumstances test for willfulness.  Thus, Rule 609 and the *Shapiro*, *Pritchard* and *Cathay* cases have no relevance to the issues in this action.

None of Sicor's other arguments have any more merit.  The length of time since the events has no relevance to the admissibility of Dr. Gatti's testimony – indeed, Sicor is seeking to use his testimony relating to even earlier events and is seeking to rely on documents from the same period, such as a 1993 internal Upjohn memo.  Similarly, Dr. Gatti's testimony is not hearsay and the newspaper articles are admissible under Rule 803 as statements describing or explaining events made while the declarant was perceiving the events or immediately thereafter.  In this case, the authors of the articles were reporting on ongoing judicial proceedings and providing their present sense impression of the results.  *See* Fed. R. Evid. 801(c) & 803(1).  Thus, Sicor's motion to preclude introduction of evidence regarding its criminal convictions should be denied.

---

[3] In its scattershot argument, Sicor raises Rule 608 of the Federal Rules of Evidence, but provides no argument about it.  Sicor Motion, p. 2.  In any event, Rule 608 also relates only to impeachment of witnesses, and does not relate to criminal convictions, so it is irrelevant.  Fed. R. Evid. 608.

1

REDACTED

2

14 | SABATO 5 DICEMBRE 1998 | CRONACHE ITALIANE | Corriere della Sera

Il magistrato è volato a Pescara, una folla commossa l'attendeva davanti all'ospedale

# Di Pietro al capezzale della madre

### A 79 anni, colpita da ictus mentre lavorava nell'orto, è in coma
### Applausi al giudice addolorato, il figliolo prediletto di Zi'Anna



LE SIGARETTE

### Ancora file davanti alle tabaccherie
### Minacce a Roma, un corteo a Napoli

### Appalti e mazzette a Monza
Estradato in Italia Politano

### L'inchiesta diventa una canzone
Bobby Solo incide «Mani pulite»

SERVIZI SEGRETI

### Cesis: trasferito Fulci
l'uomo di Andreotti

LE RIVELAZIONI DI COSSUTTA / Parlano intellettuali e amici dell'editore morto a causa di una bomba venti anni fa a Segrate

# Feltrinelli, fu davvero un complotto?

### La Caterina: Giangiacomo temeva di essere ucciso; Bocca: ricostruzione sbagliata






IN SENTENZA

### Condannata la società che rubò il segreto dell'«anticancro»



EXHIBIT

126

Da sinistra: il traliccio di Segrate con ai piedi il corpo di Feltrinelli ucciso da un'esplosione; Giorgio Bocca e Camilla Cederna (Foto Dufoto e Dossier)

## LA SENTENZA

# Condannata la società che rubò il segreto dell'«anticancro»

**MILANO** — Si chiude con quattro condanne il più grosso caso di spionaggio industriale degli ultimi anni, quello sul furto, ai danni della Farmitalia Carlo Erba, del microrganismo da cui veniva ricavato uno dei più avanzati farmaci anticancro.

[...]

M. Bra.

Dario Ferri

3

**THE SENTENCE**

# *Firm that stole the "anticancer" secret is sentenced*

MILAN – The largest case of industrial espionage in recent years has concluded with four convictions. It involved the theft, with Farmitalia Carlo Erba the victim, of the microorganism from which one of the most advanced anticancer drugs is extracted.

Yesterday, criminal magistrate Francesco Maisto sentenced Gaetano Palladino, the general manager and counsel of Sicor, a pharmaceutical company from Rho, to one year and ten months and three other persons to one year and six months: Rolando Santi Zoppi, counsel and managing director of Sicor; Peter Lindsey MacDonald, technical manager and counsel of the same company; and Carlo Salvi, owner of Alco Chemicals of Lugano, a company responsible for Sicor's foreign sales.

These four, with the aid of other persons, of whom one is now deceased and the others never identified, stole the culture strains and the microorganisms for doxorubicin from Farmitalia Carlo Erba. Doxorubicin is an antitumor drug that is sold under the name of Adriblastina and at the time of the acts (October 1987 - April 1988) was considered to be one of the most advanced in the world. Today, Adriablastina has been surpassed by a drug of the next generation, but from 1987 to 1988 it was the best on the market and Farmitalia Carlo Erba met the entire world's needs, which was estimated at 140 kilos per year, equalling sales (at that time) of 450 billion [Italian Lira].

It was a large business that produced resounding profits for Farmitalia: up to 130 billion [Lira] in 1988. Then, the earnings from doxorubicin began to decrease little by little in subsequent years, reaching "only" 65 billion [Lira] in 1990. The reason, maintains Farmitalia, was unfair competition.

Sicor, in fact, aware that the Farmitalia patents on doxorubicin were about to expire in a few countries, had tried to insert itself into the market. The problem was how to produce the same drug. According to what the magistrate has verified, Sicor stole the culture strains and the microorganisms, probably using former employees of Farmitalia who had begun working for it. And that was not all: Sicor also snatched the secret to its production.

While the defendants were actually found guilty of aggravated theft of the microorganism and of disclosure of industrial secrets, they were acquitted of the charge of theft of documents. The convictions are nearly identical to the requests of the Public Prosecutor, the attorney of the magistrate's courthouse Nicola Cerrato, the only substantial difference being the position of MacDonald, for whom Cerrato had requested acquittal.

Yet the detention sentences, which were additionally suspended in lieu of probation, were certainly not the part of the sentence that most concerned Sicor's top management. The magistrate had actually also sentenced the four defendants - together with the company - to compensate for damages, which would be quantified through civil proceedings, and established an "immediately enforceable interim award" (that is, an account that is to be paid immediately) of two and one half billion [Lira]. Attorney Marco Deluca, Farmitalia's lawyer, noted with satisfaction that this was "an exceptional figure."

And with yesterday's verdict, the magistrate also ordered the seizure of the equipment that Sicor had used to manufacture the anticancer drug. In conclusion, the company from Rho can continue production, but it will be impossible to compete with Farmitalia in doxorubicin.

Each of the defendants declared his innocence. They maintain that "they succeeded in manufacturing the drug by themselves."

**M. Bra.**

4

# RIERE DELLA SERA

## Centrali piccole e semplici
## Ecco l'energia del futuro

Festa con brevetto all'Enea - Azzardato par di parlare di applicazioni della scoperta - Le novità

### Ma non sogniamo ad occhi aperti

di UGO AMALDI

Il miliardario saudita arrestato in Svizzera rischia l'estradizione negli USA

# Kashoggi in manette per Marcos

## È accusato di ricettazione e concorso in frode con l'ex dittatore

Avrebbe venduto 11 tele sottratte dall'ex presidente filippino al museo di Manila - Contestato anche l'acquisto fittizio di 4 appartamenti a Manhattan - Una villa da 250 mila dollari al giorno



### Il garante chiede nuove regole

### Eni-Petromin le tangenti furono legittime

## «Terry Broome non ha ucciso mio figlio»

### Fu uno dei suoi amici, secondo il padre, a sparare i colpi mortali

Clamorosa dichiarazione di Carlo D'Alessio 5 anni dopo scagiona l'ex fotomodella ora in semilibertà



I nuovi giacobini tra verdi e femministe

## Qualcuno ha rubato il farmaco anticancro

### Pechino Gli studenti assediano la Città proibita

Giallo a Milano per un furto di colture che può fruttare centinaia di miliardi

## Tornano i Beatles, ma Liverpool non c'è più

Dopo la tragedia di Sheffield i superstiti del quartetto incideranno un disco per beneficenza

**REPLAY**

Oggi Replay midoppia

In palio
20 milioni

EXHIBIT
127

## Eni-Petromin
## Le tangenti furono legittime

Calabrò a pagina 9

---

CONTINUA A PAGINA 2

---

A pagina 2

## Psi: bloccare subito le ingiustizie dei ticket sanitari

---

## Dopo la tragedia di Sheffield
## Tornano i Beat

### di ORESTE DEL BUONO

Continua a pagina 5

---



REPLAY

Oggi Replay raddoppia

### In palio 20 milioni

---

## Pechino
## Gli studenti assediano la Città proibita

PECHINO — Gli studenti cinesi hanno ...

Ferrato a pagina 4

---

## Giallo a Milano per un furto di colture che può fruttare centinaia di miliardi
## Qualcuno ha rubato il farmaco anticancro

MILANO — La Procura della Repubblica di Milano ha aperto un'inchiesta su un caso di colture pirate...

Brambilla a pagina 8

5

Mystery in Milan: A theft of cultures that could fetch hundreds of billions [Lira]

# Someone has stolen the anticancer drug

MILAN – The District Attorney's office of Milan has opened an investigation into a case of presumed industrial piracy. A pharmaceutical company from Rho (Milan), Sicor, is suspected of having robbed Farmitalia of the culture strains and the microorganisms used to produce one of the most advanced antitumoral drugs, Doxorubicin, which is sold on the market under the name Adriplastina.

Deputy district attorney Nobili has issued nine subpoenas to appear in court for the same number of executives from Sicor and two Swiss pharmaceutical marketing companies whose roles have not yet been completely specified. The presumed offenses are criminal association and aggravated theft.

The investigation started with the discovery in Amsterdam of a shipment of vials of Doxorubicin with forged labels from Farmitalia. From this episode, officers from the team of health inspectors arrived at the Sicor plant in Rho, where culture strains and microorganisms where found, as well as plans for the manufacturing phase. In addition, the officials verified that Sicor had requested a license to manufacture an antitumor drug.

Judge Nobili ordered the University of Canterbury to conduct a comparative examination between the culture strains found at Sicor and those in Farmitalia's possession. The test verified that the two strains were identical. Based on this, nine subpoenas were issued under the suspicion that someone had stolen the active principals from Farmitalia to bring them to Rho.

Sicor's general manager issued a statement denying all charges. Doxorubicin costs four billion [Lira] per kilo and its production secured sales of over three hundred billion [Lira] for Farmitalia in 1988.

Brambilia on page 8

6

## CRONACHE ITALIANE

All'annuncio del successo della prova, i ministri Battaglia e Ruberti, il presidente dell'Enea, centinaia di fisici e studiosi

# Grande festa per il trionfo della fusione

Il titolare del dicastero della Ricerca: «I fatti dimostrano che ha fatto bene a incoraggiare i nostri esperti» - Colombo: «In-teoria si può immaginare che da tutto questo nascano macchine per la produzione di energia semplici, piccole e decentrate»

### A New York è sceso il prezzo del palladio
### In URSS fanno risalire la scoperta al 1926



Lo scienziato spiega che l'esperimento è riuscito creando uno squilibrio con le variazioni di temperatura

## Scaramuzzi: «Ho vissuto una settimana di passione»



Sottratti dai laboratori ceppi di colture, sequestrate in Olanda 120 mila fiale con etichette false

# Il giallo del farmaco anticancro rubato

### Denuncia della Farmitalia, la Procura dopo due anni incrimina nove persone



Porto di Genova
Forse la Coli
sta sfiorando l'accordo

## Premio a domicilio perché i vincitori non si amano

### Il tempo



NUVOLOSITÀ VARIABILE



COLLIRIO ALFA

EXHIBIT
PDX-128

Sottratti dai laboratori ceppi di coltura, sequestrate in Olanda 120 mila fiale con etichette false

# Il giallo del farmaco anticancro rubato

## Denuncia della Farmitalia, la Procura dopo due anni incrimina nove persone

MILANO – Fiale con etichette contraffatte, indicazioni che appaiono normali...



Michele Brambilla

NUVOLOSITÀ

VARIABILE

## Il tempo

### i vincitori non si amano

7

Culture strains taken from the laboratories, 120,000 vials with forged labels confiscated in Holland

# The mystery of the stolen anticancer drug

*Farmitalia files complaint, District Attorney's office charges nine individuals after two years*

MILAN – Vials with counterfeit labels, microorganisms that disappear from the Farmitalia Carlo Erba laboratories; the company, which is controlled by Erbamont (Ferruzzi group), filed a complaint about a sensational case of industrial piracy in the cancer research field. The District Attorney of Milan has already charged nine individuals, issuing each of them subpoenas to appear in court.

The adventure, which is somewhat complex, involves Doxorubicin, an antitumor drug that is considered to be among the most advanced and is manufactured and sold on the market by Farmitalia under the name of Adriplastina (22,675 Lira every [illegible], an expense that is covered completely by the [illegible]).

It took Farmitalia Carl Erba ten years to create this medicine with an investment of 250 billion [Lira]. Now, Farmitalia maintains that the culture strains and microorganisms for Doxorubicin were stolen from its plant. By whom? Farmitalia maintains they were stolen by individuals who worked for a competing company named Sicor, which is based in Rho and which began (or was about to begin) manufacturing the same drug, literally from the stolen material.

After an investigation lasting two years, deputy district attorney Alberto Nobili has issued nine subpoenas. The recipients are: Gaetano Palladino, 53, Sicor's general manager; Francesco Perrone, 43, microbiologist and former director of the Farmitalia plant and now Sicor's manager; Rolando Santi Zoppi, 55, Sicor's managing director; Australian Peter Lindsay MacDonald, Sicor's technical director; Paolo Lanzarini, 66, proprietor of Solidago Holding di Berna, a company that markets drugs; Ettore Boffelli, 49, also of Solidago; Carlo Salvi, 54, proprietor of Alco Chemicals of Lugano; Guglielmo Strada, 49, former employee of Farmitalia; and Riccardo Lo Muscio, 59, former employee of Farmitalia. All nine are charged with aggravated theft: the first seven must also answer to charges of criminal association.

Everything began in April of 1987 when 120,000 vials of Doxorubicin with forged Farmitalia labels were found in Amsterdam. Officers from the team of health inspectors went to Sicor SpA, a pharmaceutical firm with a plant located at via Terrazzano 77 in Rho (it is unknown as to why, because the various stages of the investigation remain top secret). The officers confiscated culture strains, microorganisms and documentation relating to the manufacturing process at the plant. They verified that Sicor had just requested a license to manufacture an antitumor drug from the ministry.

Judge Nobili ordered the University of Canterbury to conduct a comparative examination between the Farmitalia culture strains and those found at Sicor. The two products were "absolutely and undeniably identical." It is suspected that someone had stolen the material from

Farmitalia and had brought it to Rho. At this point, Erbamont, through its attorney Marco Deluca, are suing for damages.

Sicor denies everything. Its general manager Gaetano Palladino has issued a statement in which he maintains that "Sicor developed its own original method of production of a drug and was about to begin production. Farmitalia has used what was discovered in Holland, where it seems to have emerged that the packages where destined for the USA, as the basis for accusing Sicor of selling the drug on the market because in reality it wanted to continue to maintain its monopoly situation in the USA."

"The examination that was conducted," continues the statement from Sicor, "has not at all disproved the originality of the Sicor method; rather, it has ruled out any links between Sicor and the packages found in Holland, packages that contained active principals manufactured by Farmitalia; ultimately, it confirmed the identity of one of the strains of microorganisms from which the drug that is in Sicor's possession is extracted with the one used by Farmitalia to manufacture the same drug. However, aside from the fact that this type of evaluation of identity is arbitrary, Sicor has never used this strain."

The substance used to manufacture Doxorubicin costs four billion [Lira] per kilo. With this drug, Farmitalia posted sales of 331 billion [Lira] in 1987 and 373 billion [Lira] in 1988. According to one approximate estimate, Farmitalia would suffer losses of 400 billion [Lira] in the upcoming years if Sicor (supposing that the charges are well-grounded) inserted itself into the same market.

**Michele Brambilia**

8



Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

Home | Firm Facts | Practice Areas | Attorneys & Other Professionals | Recruitment | Diversity | Contact

## Attorneys & Other Professionals Search

🖨 print    ✉ email

## W. John Keyes, Scientific Advisor

**Chicago**

Phone:312/876-8127
jkeyes@sonnenschein.com

**Education:**

John Marshall Law School
(Anticipated Graduation, 2006)
University of Chicago, Ph.D., Chemistry, 2002
Universita di Roma "La Sapienza" in Rome, Italy, M.S., Chemistry, 1995

**Practice Areas:**

Intellectual Property and Technology
Life Sciences
Prosecution Attorney
Patent



📇 Download vCard

### Search Criteria

By Last Name:

By First Name:

By Keyword:

By Practice Area:
Antitrust & Marketing Practices
Asia Pacific Practice
Bankruptcy & Restructuring
Corporate Practice
Employee Benefits

By Location:
Boston
Brussels
Chicago
Kansas City

# of results per page:

| 10 |

[ search >> ]  [ reset ]

**Attorneys by last name:**

A B C D E F G H I J  K L M
N O P Q R S T U V W X Y Z

Full site search

**Professional Profile:**

Mr. Keyes, a member of Sonnenschein's Intellectual Property and Technology Practice Group, provides technological advice in support of validity, infringement and patentability analyses, patent application preparation and prosecution and litigation matters in the areas of chemistry and biotechnology. He specializes in Pharmaceuticals, Diagnostics, Biotechnologies, Semiconductors, Energy Storage Devices, Microscopy and Imaging Techniques, Novel Materials, Nanotechnologies, Specialty Chemicals and Industrial Processes.

A Ph.D. in Chemistry, Mr. Keyes has extensive research experience encompassing many aspects of organic chemistry, spectroscopy, biochemistry, molecular biology, plant physiology, plant pathology, laser scanning confocal microscopy and electron microscopy. His Ph.D. thesis focused on the discovery and characterization of interspecies signaling events exploited by the parasite in order to recognize and infect its hosts. He also carried out studies on the biology of parasitic pests affecting cereal crops in developing countries.

Mr. Keyes received his M.S. in chemistry in the field of supramolecular organic chemistry. His master's thesis work focused on the first characterization of a ring closure reaction catalyzed by the complexation between a synthetic template and substrate.

**Awards:**

Microscopy Society of America Presidential Award

© 2006 Sonnenschein Nath & Rosenthal LLP  All rights reserved | Disclaimer | Privacy Statement

9

Teva > Directors                                  http://www.tevapharm.com/about/directors.asp#Salvi



Corporate    Corporate Officers
Governance   Board of Directors
             Committees of the Board
             Code of Business Conduct
             Audit Committee Charter

## Board of Directors

Dr. Phillip Frost has served as Vice Chairman of the Board of Teva since the completion of the Ivax acquisition in January 2006 and as Chief Executive Officer of Ivax since 1987. He previously served as Chairman of the Board of Ivax from 1987 until January 2006 and as President of Ivax from 1991 until 1995. Dr. Frost is Chairman of the Board of Directors of Ivax Diagnostics, Inc. (diagnostic reagent kits), a public company that is 72% owned by Ivax. He is a director of Northrop Grumman Corporation (aerospace), Continucare Corporation (healthcare), Cellular Technical Services Company, Inc. (cellular services) and Ladenburg Thalmann Financial Services Inc. (securities brokerage). He is a life member, and former Chairman, of the Board of Trustees of the University of Miami, co-Vice Chairman of the Board of Governors of the American Stock Exchange, and a member of the Board of Trustees of The Scripps Research Institute. Dr. Frost received a B.A. in French literature from the University of Pennsylvania in 1957 and an M.D. from the Albert Einstein College of Medicine in 1961.

Ruth Cheshin is the President of the Jerusalem Foundation, a multi-national organization which raises funds around the world for the creation of social, educational and cultural projects for all the citizens of Jerusalem. Ms. Cheshin is also an active member in many of the city's most important boards.

Abraham E. Cohen served as Senior Vice President of Merck & Co. and from 1977 to 1988 as President of the Merck Sharp & Dohme International Division. Since his retirement in January 1992, Mr. Cohen has been active as an international business consultant. He is presently a director of Akzo Novel NV., Chugai Pharmaceutical Co. U.S.A., Neurobiological Technologies, Inc. and Vasomedical, Inc.

Leslie Dan is the Chairman of Novopharm, which he founded and managed until its acquisition by Teva in 2000. Mr. Dan serves on several hospital boards in Canada and is a director of Draxis Pharmaceutical Company and Chairman of Viventia Biotech. He is a pharmacist with over 50 years of business experience in the pharmaceutical industry. Mr. Dan received three honorary doctorates and numerous other awards for his charitable contributions, including the CAN-MAP organization that he founded. He holds an M.B.A. from the University of Toronto.

Prof. Meir Heth has served on Teva's Board since 1977 and as Chairman of the Board from 1994 to 2002. During his service at Teva, Prof. Heth served as Chairman of the Executive Committee for an extended period. Prof. Heth was designated as the financial expert on Teva's audit committee, for the purposes of SEC regulations and as financial and accounting expert under Israeli law. Prof. Heth has served as Chairman of the Board of Bank Leumi Ltd. and as Chairman of Bank Leumi Trust Company of New York from 1987 to 1988. From 1978 to 1986, Prof. Heth was Chairman of the Tel Aviv Stock Exchange. Prof. Heth served at The Bank of Israel beginning in 1962 in various positions, including Senior Economist from 1962-1968, Supervisor of Banks from 1969 to 1975 and Senior Advisor to the Governor from 1975 to 1977. Prof. Heth is a Professor at the Law School of the College of Management and serves as Chairman of

Psagot-Ofek Investment House Ltd. and as a director of Nilit Ltd.

Prof. Moshe Many, M.D., Ph.D. has served as president of the Ashqelon Academic College since January 2002. He previously served as the President of the Tisom International School of Management. He is a former President of the Tel Aviv University, the former Medical Director of the Ramat Marpeh Hospital and the former Deputy Chairman of Maccabi Health Care Fund. He has been a Department Head at Tel Hashomer Hospital since 1976. He has served as a director at Elbit Medical Imaging since 1997 and at Israel Laser Industries from 1994 to 1998. He received his M.D. degree from Geneva University in 1952 and his Ph.D. in Surgery from Tufts University in 1969.

Dr. Leora (Rubin) Meridor has been a director of Teva since December 2002. Dr. Meridor was determined by the Board as a financial and accounting expert under Israeli law. Dr. Meridor is a business and financial consultant. She served as the Chairman of the Board of Bezeq International Ltd. and Walla Communications Ltd. from 2001 to 2005. She served as Chairman of the Board of Hapoalim Capital Markets between 2001-2004. From 1996 to 2000, Dr. Meridor served as Senior Vice President and Head of the Credit and Risk Management Division of the First International Bank of Israel. Between 1983 and 1996, Dr. Meridor held various positions in the Bank of Israel, the last of which was Head of the Research Department. Dr. Meridor has held various teaching positions with the Hebrew University and holds a Bachelor's degree in mathematics and physics, a Master's degree in Mathematics and a Ph.D. in Economics from the Hebrew University, Jerusalem. She serves on several boards of directors (NICE Systems Ltd., Gilat Satellite Networks Ltd., Isrotel Ltd., GEJ Yizum Ltd. and Weizmann Institute of Science) and qualifies as a statutory independent director under Israeli law.

Dr. Max Reis is Chairman of Degem Systems Ltd. and serves on the boards of Oridion Medical Ltd., Yachin Hakal Ltd. and Gaon Holdings. From 1971 until 1986, he was Chairman or Managing Director of half a dozen companies in the Israel Chemicals Group. From 1986 until 1990, he served as President of Technion Israel Institute of Technology. From 1992 until 1999, he was Chairman of the Audit Committee of the board of directors of the Union Bank of Israel. Dr. Reis has a Ph.D. in Chemical Engineering from the Imperial College, London and attended the Advanced Management Program of the Harvard Business School.

Carlo Salvi commenced his service on the Board of Teva upon completion of the acquisition by Teva of Sicor in January 2004. Previously, Mr. Salvi served as Vice Chairman of Sicor from August 2001. Mr. Salvi was Sicor's President and Chief Executive Officer from August 1998 to September 2001. In addition, Mr. Salvi served as a director of Sicor since February 1997 and was Chairman of the Board of Sicor S.p.A. from February 1997 to June 1999. Prior to the merger of Gensia Inc. and Rakepoll Holdings in 1997, Mr. Salvi was a consultant to Alco Chemicals Ltd. from 1995 to 1997 and served as General Manager of Alco from 1986 to 1995.

Prof. Michael Sela is Institute Professor of Immunology at the Weizmann Institute of Science where he was the President from 1975 through 1985 and served as a Deputy Chairman of the Board of Governors of the Weizmann Institute of Science from 1985 through 2004. He received his Ph.D. degree in Biochemistry from the Hebrew University in 1954. He is the recipient of nine honorary doctorate degrees from institutions in the United States, France, Mexico and Israel. He is a member of 15 Academies of Science in various countries, including the U.S. National Academy of Sciences.

Dov Shafir, Colonel (retired) of the Israel Defense Forces, served as chairman of the Executive Committee of Teva's board of directors from 1992 until 2002 and presently serves as a director of Ofer Technologies Ltd. and "Am-Shav"- Initiative and Technological Applications Ltd.

Prof. Gabriela Shalev has been a member of the Faculty of Law of the Hebrew University since 1964, where from 1986 she held the position of Professor of Contract Law. Having retired from the Hebrew University in 2002, she is currently President and Rector of Ono Academic College. Over the years she has been a visiting professor in many law schools in Europe and the U.S. Prof. Shalev was a member of the Board of Directors and chairperson of the audit committee of Bank Hapoalim Ltd., Israel's largest commercial bank, from 1990 until 1996. From 1995 until 2005, she was a member of the Board of Directors and chairperson of the audit committee of the Israel Electric Company. Currently she is also a director of Koor Industries Ltd. and Osem Investments Ltd., as well as a member of various committees serving non-profit organizations. Prof. Shalev qualifies as a statutory independent director under Israeli law and was determined by the Board to have professional competence under Israeli law.

Teva > Directors

David Shamir has served as the General Manager of Texas Instruments Israel Ltd. since 2001. From 1986 to 2001, he served in several R&D and management positions in Motorola Semiconductor Israel Ltd. He received his B.Sc. in Computer Engineering from the Technion, Israel Institute of Technology in 1986.

Harold Snyder, now retired, was Senior Vice President of Teva USA and the former President of Biocraft Laboratories, Inc. Mr. Snyder founded Biocraft Laboratories in 1964. He had previously served as President of Stoneham Laboratories Inc. He received his B.S. in Science from New York University in 1948 and his M.A. in Natural Science from Columbia University in 1950.

⌃ Back to Top

Legal Note | Site Map

Copyright © 1999 - 2006 Teva. All rights reserved

9/21/2006 12:38 PM