IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY, LLC,  )
                                                 )
             Plaintiff,  )
                                                   )
             v.  )      C.A. No. 04-833-KAJ
                                                   )
SICOR INC. and SICOR  )
PHARMACEUTICALS, INC.,  )
                                                   )
             Defendants.  )

**JOINT PROPOSED PRELIMINARY JURY INSTRUCTIONS
RE: WILLFULNESS AND DAMAGES**

Pursuant to D. Del. L.R. 51.1(a), Pharmacia & Upjohn, LLC submit the attached Joint Proposed Jury Instructions, in triplicate, relating to willfulness and damages issues (what the parties have termed phase II). The parties have reached agreement with respect to Proposed Instruction Nos. 4, 5.1, 5.2, 6.1, 6.3, 6.11, 6.12, 6.13, 7. With respect to the other proposed instructions, the agreed upon language, if any, and additional proposals by one or both parties is indicated. These instructions are also being submitted on disk in WordPerfect format..

                                     MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:                   */s/ Maryellen Noreika*

Daniel A. Boehnen                       ————————————————
Joshua R. Rich                         Jack B. Blumenfeld (#1014)
McDONNELL BOEHNEN HULBERT      Maryellen Noreika (#3208)
& BERGHOFF LLP                    1201 N. Market Street, P.O. Box 1347
300 S. Wacker Drive                 Wilmington, Delaware  19899-1347
Chicago, Illinois  60606             (302) 658-9200
(312) 913-0001                    *Attorneys for Plaintiff*
                                        *Pharmacia & Upjohn Company LLC*

October 12, 2006

**4.     SECOND PHASE INSTRUCTIONS (AGREED)**

Earlier in this case, before you were empanelled as the jury, Sicor conceded that its product was covered by claims 9 and 13 of the '285 patent as a result of the construction of the claims I have provided to you.  As you have now found that claims 9 and/or 13 of the '285 patent are not invalid, Sicor is liable for infringing these claims.  You must now, in this phase of the trial determine two things.  First, whether Pharmacia has proven by clear and convincing evidence that infringement was "willful."  Second, what damages should be awarded for Sicor's infringement of claims 9 and 13 of the '285 patent.

Each of the general instructions that I provided to you in the first phase of the litigation, including your duties as jurors, what is and is not evidence, what your role is in deliberating, unanimity of a verdict, etc. applies equally well to this phase of the trial.

**5.      PATENT INSTRUCTIONS — WILLFUL INFRINGEMENT**

**5.1.    WILLFUL INFRINGEMENT (AGREED)**

Pharmacia contends that Sicor's infringement was willful. Sicor's concession that its product infringes the claims of the '285 patent does not establish that Sicor's infringement was willful. Whether Sicor's infringement was willful or not is an independent decision that you, the jury, must make.

Pharmacia must prove that Sicor infringement was willful by clear and convincing evidence. As with the clear and convincing standard that you applied for validity, clear and convincing evidence is evidence that produces an abiding or lasting conviction that the truth of a fact is highly probable. The burden to prove a fact by clear and convincing evidence is a heavier burden than the burden to prove that fact by a preponderance of the evidence. But the burden of clear and convincing evidence is not as heavy as the burden of proving beyond a reasonable doubt, which only applies to criminal cases.

Source:

*Cryovac v. Pechiney*, § 2.1

## 5.2.    WILLFULNESS DEFINED (AGREED)

When a company such as Sicor becomes aware that a patent may have relevance to its activities, that company has a duty to exercise due care to avoid violating the patent owner's rights. That obligation includes a duty to investigate whether or not its activities infringe any valid claim of an issued patent before the initiation of any possible infringing activity.

To establish willful infringement, Pharmacia must prove two things by clear and convincing evidence:

1.      That Sicor was aware of the '285 patent, and

2.      That Sicor proceeded with its infringing activities without having a reasonable good faith belief that the '285 patent was invalid or that the patent was not infringed.

No single fact alone determines whether infringement was willful or not willful.  To determine whether Sicor willfully infringed the patent, you must consider all of the facts, including the strength of the defenses raised by Sicor in this trial and the following factors:

1.      In designing the product accused of infringement, whether Sicor intentionally copied Pharmacia's invention as claimed claims 9 and 13 in the '285 patent, or whether Sicor instead tried to "design around" the patent by designing a product that Sicor believed did not infringe the patent. Evidence of copying can be evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims, even if later determined to infringing, can be evidence that the infringement was not willful.

2.      When Sicor became aware of the patent, whether its decision maker formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether that

decision maker obtained and followed the advice of a competent lawyer before the initiation of any

possible infringing activity. The obtaining and following of counsel's advice may be evidence that

infringement was not willful.

3.    Whether Sicor had an appreciation of the commercial significance of the patented

technology and the technological improvement of its described inventions over the prior art.

4.    Whether Sicor attempted to conceal its infringement.

5.    Whether Sicor took steps to remedy the harm caused by its infringement.

6.    Whether Sicor had a pattern of copying innovations in the market.

You may also consider conduct preceding issuance of the patent in evaluating willfulness.


Source:

*Cryovac v. Pechiney*, § 2.1; *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992) (factors include copying, design around, opinion of counsel, duration of conduct, remedial action); *Vulcan Engineering Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002) (reasonable good faith belief); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (same); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181 (Fed. Cir. 1994)(reasonable good faith belief and totality of circumstances) *Minnesota Mining and Manufacturing Co. v. Johnson & Johnson Orthopaedics Inc.*, 976 F2d 1559 (Fed. Cir. 1992) (appreciation of commercial significance, pattern of copying and conduct preceding issuance); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004) (totality of circumstances); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir. 1993) (same).

**5.3.    ADVICE OF COUNSEL (AGREED IN PART)**

**5.3.A.  AGREED SECTION**

As I just mentioned, one consideration in your determination of whether Sicor's infringement was willful is whether Sicor obtained and followed the competent advice of a lawyer.  The obtaining and following of a lawyer's advice can be evidence that infringement was not willful.

In evaluating Sicor's reliance on the advice of a lawyer, you should consider when Sicor obtained the advice, the quality of the information Sicor provided to the lawyer, the competence of the lawyer's opinion, who within Sicor allegedly relied upon the advice of counsel, and when obtaining advise, whether you believe that such person did in good faith rely upon the advice of counsel in deciding to go forward.

Advice is competent if it was based upon a reasonable examination of the facts and law relating to infringement issues and/or invalidity, consistent with the standards and practices generally followed by competent lawyers.  You should consider both the qualifications of the person giving the opinion and the content of the opinion.

Reliance on a lawyer's opinion was reasonable if the opinion provided the kind of analysis that would give the defendant confidence that a proper opinion had been reached.  Because lawyers' opinions usually describe infringement in terms of probabilities rather than certainties, reliance on an opinion stating that a product might be found to infringe a patent would not necessarily be unreasonable.

That Sicor's lawyer's opinion on validity of the '285 patent turned out to be different from your determination on invalidity does not make the lawyer's advice regarding the '285 patent

incompetent. Whether the lawyer may have made errors in reaching the conclusion, or whether factors justifying the opinion may later have been shown to be incorrect may or may not be relevant to a determination that reliance on the lawyer's advice was or was not reasonable.

### 5.3.B. PHARMACIA INSERT (AT END)

In assessing the reliance of Sicor's decision maker on an opinion of counsel, you may also consider whether that decision maker has relied in good faith on legal opinions as legitimate advice as to whether his company's products infringed, or rather sought legal opinions for their potential evidentiary value on the issue of willful infringement in future litigation.

Source:

*Cryovac v. Pechiney*, § 2.2; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (duty of due care); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181 (Fed. Cir. 1994) (same). *Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356 (Fed. Cir. 2006) (reliance in good faith or sought legal opinions for their potential evidentiary value).

6

**6.    PATENT DAMAGES**

**6.1.    PATENT DAMAGES — GENERALLY (AGREED)**

In addition, because you have found that at least one of claims 9 and 13 of the '285 patent

is not invalid, and Sicor has admitted infringement, you must turn to the issue of damages.

Source:

*Cryovac v. Pechiney*, § 6.1; 35 U.S.C. § 284.

## 6.2.   COMPENSATORY PATENT DAMAGES IN GENERAL (AGREED IN PART)

### 6.2.A.  AGREED SECTION

Patent law provides that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.   Damages are compensation for all losses suffered as a result of the infringement.   You may not add anything to the amount of damages to punish Sicor or to set an example.

It is not relevant to the question of Pharmacia's damages whether Sicor benefited from, realized profits from, or even lost money as a result of the acts of infringement.  It is also not relevant if Sicor did not foresee that it would cause Pharmacia damage at the time that it infringed claims 9 and 13.  The only issue is the amount necessary to adequately compensate Pharmacia for Sicor's infringement.

### 6.2.B.  PHARMACIA INSERT (AT END)

Adequate compensation should return Pharmacia to the position it would have occupied had there been no infringement.

Source:

*Cryovac v. Pechiney*, § 6.3; 35 U.S.C. § 284; *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).

## 6.3.    PATENT DAMAGES - BURDEN OF PROOF (AGREED)

Pharmacia has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty. On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Pharmacia's right to recover. On the other hand, Pharmacia is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result of mere conjecture. You may base your evaluation of reasonable certainty on opinion evidence, in other words, the testimony you heard from expert witnesses. Any doubts regarding the computation of the amount of damages should be resolved against Sicor and in favor of Pharmacia.

Source:

*Cryovac v. Pechiney,* § 6.4; *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

**6.4.    DATE PATENT DAMAGES BEGIN**

**6.4.A  PHARMACIA'S PROPOSED SECTION**

Pharmacia can only recover damages for patent infringement that occurred once Sicor received FDA approval, which occurred on May 1, 2002.

Source:

*Cryovac v.  Pechiney*, § 6.5

**6.4.A  PHARMACIA'S CONTINGENT SECTION**

**(Pharmacia will object to any instruction on notice, but is providing this section only in the event that such objection is overruled)**

Damages are to be calculated from the date that Pharmacia first gave "notice of infringement" to Sicor.  In giving notice,  the patentee need not make an unqualified charge of infringement.  For example, the patentee may comply with the notice requirement by informing the infringer of the identity of the patent and generally describing the activity that is believed to infringe, accompanied by a proposal to resolve the infringing conduct.

The patentee need not specifically identify the patent number in the notice, as long as the patented invention itself is identified.   Such notice can also be given before the infringing conduct actually occurs.

Source:

35 U.S.C. § 287; *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345-7 (Fed. Cir. 2001); *SRI International, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462 (Fed. Cir. 1997); *T.D. Williamson, Inc. v. Laymon*, 723 F. Supp. 587, 606 (N.D. Okl. 1989); *Ceeco Machinery Manufacturing, Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D. Mass 1992).

11

**6.4.B   SICOR'S PROPOSED SECTION**

The date that Pharmacia first gave notice to Sicor of its claim of patent infringement is the date on which patent damages begin to be calculated.  That date of notice is in dispute here, and it is up to you to determine the date on which Pharmacia communicated to Sicor a specific charge of infringement.

Pharmacia contends that it first communicated a specific charge of infringement to Sicor on _____.  Sicor contends that Pharmacia first communicated a specific charge of infringement on February 20, 2003.

The notice must specifically state that the sale of Sicor's particular product was actually infringing the '285 patent.  It is not sufficient notice for Pharmacia to merely inform Sicor of the existence or prospective issuance of the '285 patent.

Source:

D. Del. Draft Model Patent Jury Instructions 2004, Instr. 5.4 (modified); 35 U.S.C.§ 287(a); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062-1066 (Fed. Cir. 1987).

## 6.5.    TWO TYPES OF PATENT DAMAGES — LOST PROFITS AND REASONABLE ROYALTY (AGREED IN PART)

### 6.5.A.  AGREED SECTION

There are two basic types of damages for patent infringement.

The first type of patent damages is lost profits.  Briefly, lost profits damages compensate the patent owner for the additional profits it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test.

The second type of patent damages is called reasonable royalty.  Generally, the patent laws define a reasonable royalty as the result of a hypothetical negotiation at the time the infringement began.  A reasonable royalty is the minimum amount of damages that a patent owner may recover.

Source:

*Cryovac v.  Pechiney*, § 6.6; *Panduit Corp.  v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Rite-Hite Corp.  v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc).

13

**6.5.B  PHARMACIA'S PROPOSED INSERT (AT END)**

As such, a reasonable royalty is a floor for damages; it is not merely an alternative to lost profits. You must award Pharmacia either lost profits or a reasonable royalty for each infringing sale of Sicor's products. You cannot, however, award Pharmacia both lost profits and a reasonable royalty for the same sale.

Source:

*Cryovac v. Pechiney*, § 6.6 (modified); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc).

14

**6.5.B  SICOR'S PROPOSED INSERT (AT END)**

These methods are alternatives for computing damages.  For each infringing sale of Sicor's products, you must award Pharmacia either lost profits or a reasonable royalty for each infringing sale of Sicor's products.  You cannot, however, award Pharmacia both lost profits and a reasonable royalty for the same sale.

Source:

*Cryovac v. Pachiney*, § 6.6; *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Rite-Hite Corp v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc).

**6.6.    PATENT LOST PROFITS — GENERALLY (AGREED IN PART)**

**6.6.A.  AGREED SECTION**

In this case, Pharmacia is seeking lost profits as its patent damages.  Lost profits damages are the profits Pharmacia asserts it lost because of Sicor's infringement.  They are not the profits Sicor actually made.  Pharmacia's asserted lost profits are in this case in the form of lost sales or reduced profit on the sales that Pharmacia retained.  In this case, Pharmacia must establish that the infringement caused its lost profits.  Thus, Pharmacia must show that "but for" the infringement, Pharmacia would have made the sales or profits that were allegedly lost.

Source:

*Cryovac v. Pechiney*, § 6.7; *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978).

**6.6.B  PHARMACIA'S PROPOSED INSERT (AT END)**

Once Pharmacia has established entitlement to lost profits with reasonable probability, the

burden shifts to Sicor to show that the inference is unreasonable for any of those profits.

Source:

*Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) (when the patentee has established the reasonableness of this inference "[t]he burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales"); *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003) (burden shifts).

### 6.6.C  SICOR'S PROPOSED INSERT (AT END)

Once Pharmacia has established entitlement to lost profits with reasonable probability, Sicor

may demonstrate that those profits are unreasonable.

Source:

*Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1125 (Fed. Cir. 2003) ("Although the burden of persuasion remains with the patentee, the burden of going forward then shifts to the infringer").

18

**6.7.    PATENT LOST PROFITS (AGREED IN PART)**

**6.7.A.  AGREED SECTION**

Pharmacia is claiming that it lost sales because of Sicor's infringement.  To get lost profits as actual damages, the patent owner must demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales.  A standard way of proving lost profits is for the patent owner to show:

1.    there was demand for the patented product;

2.    Pharmacia had the ability to meet the market demand;

3.    no acceptable non-infringing substitutes were available; and

4.    the amount of profit Pharmacia would have made.


Source:

*Cryovac v. Pechiney*, § 6.8; *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978);

**6.7.B   PHARMACIA'S PROPOSED INSERT (AT END)**

In a two-supplier market, where there are no acceptable non-infringing substitutes, it is presumed that the patentee would have made the sales of the infringer, but for the infringement.

Source:

*Cryovac v. Pechiney*, § 6.8; *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (two supplier market).

**6.7.C  SICOR'S CONTINGENT SECTION (AT END)**

**(Sicor will object to any instruction on a two-supplier market but is providing this section only in the event that such objection is overruled)**

In a two-supplier market, where there are no acceptable non-infringing substitutes and patent owner has the marketing and manufacturing capability to meet the market demand, it is presumed that the patentee would have made the sales of the infringer, but for the infringement.

To demonstrate a two-supplier market, the patent holder must show that the relevant market contains only two suppliers: itself and the infringer. The relevant market includes the patented invention and other substitutes similar in physical or functional characteristics to the patented invention. If the patent holder establishes a two-supplier market, the infringer may rebut the presumption of lost sales by showing that there are acceptable non-infringing substitutes or that the patent holder did not have the marketing and manufacturing capability to meet the market demand. A finding of a two-supplier market does not change the burden of the patent holder to demonstrate the amount of profit it would have made.

Source:

*Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124-25 (Fed. Cir. 2003) (rebutting the presumption and relevant market); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (burden); *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989) (manufacturing and marketing capabilities).

## 6.8.    ACCEPTABLE NON-INFRINGING SUBSTITUTES (NOT AGREED)

### 6.8.A  PHARMACIA'S PROPOSED SECTION

To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products. However, consumer demand for the unique advantages of a patented invention, as opposed to an alleged non-infringing substitute, may suggest that there is no acceptable non-infringing substitute. In determining the acceptability of an alleged non-infringing alternative, a product that lacks the advantages of the patented product or has significantly different characteristics is not acceptable.

Pharmacia need not negate every possibility that purchasers of Sicor's infringing products might have bought another product or no product at all. The mere existence of a competing device does not make that product an acceptable substitute.

If Sicor demonstrates that it could have chosen to market a noninfringing alternative and that it would have done so had it known that it was infringing Pharmacia's patent, the sales Sicor made of the infringing products were not sales that Pharmacia would otherwise have made. The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, that is, the period during which the infringing sales occurred.

When an alleged alternative is not on the market during the time when the infringing sales occurred, one may reasonably infer that it was not available as a noninfringing substitute at that time. Sicor has the burden to overcome this inference by showing that the substitute was available when the infringing sales occurred.   Mere speculation or conclusory assertions will not suffice to overcome the inference.

Source:

*Cryovac v. Pechiney*, § 6.8; *Rite-Hite Corp. v. Kelley Co.*, Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (two supplier market); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1356 (Fed. Cir. 1999) (product not on market); *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) (product lacking advantages); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed.Cir.1991) (significantly different characteristics); *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (same); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) (same); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir 1991) (same); *TFW Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986) (same).

## 6.8.B   SICOR'S PROPOSED SECTION

A non-infringing substitute is a product that is a product that does not infringe either of claims 9 and 13 of the '285 patent and is either on the marketplace or available to Sicor or another company to place on the market.  A product does not infringe a patent when it does not include all of the limitations required by a patent claim.  A product is available if a company has all the necessary equipment, materials, know-how, and experience to design and manufacture it.  The time period for determining the availability of a substitute product is the period of infringement for which Pharmacia claims damages.

The mere existence of a competing device does not make that product an acceptable substitute.  In order to be an acceptable substitute, the product must have the advantages of the patented invention that were important to customers.  Consumer demand for the unique advantages of a patented invention may suggest that there is no acceptable non-infringing substitute.  If, however, the realities of the marketplace are that Sicor or other competitors would have captured some or all of the sales, even despite a difference in the products, then Pharmacia is not entitled to lost profits on those sales.  The test is whether the purchasers were motivated to make their purchase by the patented features.

Source:

AIPLA Model Patent Jury Instructions 12.6 (realities of the marketplace and availability); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (availability); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142-43, 1143 n. 17, (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991) (realities of the marketplace).

**6.9.    DEMAND (NOT AGREED)**

**6.9.A   PHARMACIA'S PROPOSED SECTION**

One of your considerations when deciding whether Pharmacia lost sales was the demand for products having the features recited in claims 9 and 13 of the '285 patent. Demand for the patented product can be proven by significant sales of Sicor's products containing the patented features. However, if you find that Sicor generated new or different markets by sales efforts or by creating demand because of features other than those recited in claims 9 and 13 of the '285 patent, the sales of Sicor's products may not establish a demand for the patented product.

Source:

*Cryovac v. Pechiney*, § 6.9

## 6.9.B  SICOR'S PROPOSED SECTION

One of your considerations when deciding whether Pharmacia lost sales was the demand for products having the all of the limitations in claims 9 and 13 of the '285 patent. Pharmacia can prove demand by demonstrating that there were significant sales of Sicor's products, and that the purchasers were by the patented features of the product. However, if you find that the purchasers of Sicor's products were motivated to purchase for reasons other than the patented features, or that Sicor generated new or different markets by sales efforts, the sales of Sicor's products may not establish a demand for the patented product.

Source:

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1348 (Fed. Cir. 1999) ("the question is whether there is an economically sufficient demand for a product having … all attributes of the claim in suit, i.e., whether consumers demand every claimed feature") (internal brackets and quotations omitted) (emphasis in original), aff'd, ; *Becton Dickinson & Co. v. Tyco Healthcare Group LP*, No. Civ.A. 02-1694 GMS, 2006 WL 890995, at * 8 (D. Del. March 31, 2006) (demand shown by testimony at trial that the "primary drivers for customer decisions to purchase the products" were the specific patented advantages at issue); see also *Slimfold Manufacturing Co. v. Kinkead Ind., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) ([Patent owner] failed to show that buyers of bi-fold metal doors specifically want a door having the advantages of the Ford patent…."); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984) (demand shown by evidence of sales accompanied by evidence that "the patented control features were advertised").

## 6.10.  REASONABLE PROBABILITY (PHARMACIA ONLY)

In proving its damages, Pharmacia's burden of proof is not an absolute one, but rather a burden of reasonable probability.  If it is reasonably probable that Pharmacia would have made some or all of the infringing sales, and it is reasonably probable what amount Pharmacia would have netted from the denied sales, then Sicor is liable for the lost profits of those infringing sales.


Source:

*Cryovac v. Pechiney*, § 6.8; *Oiness v. Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1577, 24 USPQ2d 1321, 1336 (Fed. Cir. 1992); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577, (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990).  *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)

## 6.11.  REASONABLE ROYALTY AS A MEASURE OF PATENT DAMAGES (AGREED)

In this case, Sicor asserts that Pharmacia is entitled only to a reasonable royalty, and not lost profits.  A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.  If you find that Pharmacia has not established lost profits, then you may award Pharmacia a reasonable royalty.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall.  Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Pharmacia and Sicor, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement began.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of Sicor was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Sicor.  You must also assume that Pharmacia would have been willing to grant a license.  Finally, you must assume that both Pharmacia and Sicor knew all pertinent information at the time of the hypothetical negotiations.

28

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Sicor's use of the patented invention, including the opinion testimony of experts.

Source:

*Cryovac v. Pechiney*, § 6.11; *Unisplay S.A. v. American Electronic Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158 (6th Cir. 1978); 35 U.S.C. § 284; *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1580 (Fed. Cir. 1989).

## 6.12. FACTORS FOR DETERMINING REASONABLE ROYALTY FOR PATENT DAMAGES (AGREED)

In determining the amount of a reasonable royalty, you may consider evidence of any of the following factors:

1.      The royalties received by Pharmacia for the licensing of others under the `285 patent;

2.      The rates paid by Pharmacia, Sicor, or others for the use of other patents comparable to the '285 patent;

3.      The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.      Pharmacia's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      The commercial relationship between Pharmacia and Sicor, including whether they are competitors in the same territory in the same line of business;

6.      The effect of selling the patented specialty in promoting sales of other products of Sicor, the existing value of the invention to Pharmacia as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.      The duration of the '285 patent and the length of the licenses;

8.      The established profitability of the product made under the patent, its commercial success and its current popularity;

9.      The utility and advantages of Pharmacia's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

30

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Pharmacia, and the benefits to those who have used the invention;

11.    The extent to which Sicor has made use of the invention, and any evidence that shows the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Sicor;

14.    The opinion testimony of qualified experts; and

15.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.


Source:

*Cryovac v. Pechiney*, § 6.12; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp 1116, 1121 (S.D.N.Y. 1970), modified and aff'd sub nom., *Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

**6.13.   PATENT DAMAGES INTEREST (AGREED)**

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way.  It is the function of the Court to award interest after you the jury have established your damages calculation.

Source:

*Cryovac v. Pechiney*, § 6.13

7.    **DELIBERATIONS AND VERDICT**

**DELIBERATIONS AND VERDICT (AGREED)**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence with respect to willfulness and damages.

Now you should apply the same rules that I discussed with you regarding your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. We will follow the same procedure I outlined for you before. All of your deliberations, including how you stand on your vote during deliberations, should stay secret until you are finished.

Once again, in order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

Finally, once again, let me remind you that nothing that I have said or done during this trial was meant to influence your decision in any way. You decide for yourselves if Pharmacia has proved that Sicor's infringement was willful by clear and convincing evidence, and if Pharmacia has proved the amount of damages to which it is entitled by the preponderance of the evidence.

Source:

D. Del. Uniform Jury Instructions, Deliberations and Verdict; *Cryovac v. Pechiney*, § 8.3

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on October 12, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Steven J. Balick
>John G. Day, Esquire
>ASHBY & GEDDES

and that I also caused copies to be served upon the following in the manner indicated:

### BY HAND

>Steven J. Balick
>John G. Day
>ASHBY & GEDDES
>222 Delaware Avenue
>Wilmington, DE  19801

### BY EMAIL

>Reid L. Ashinoff
>David R. Baum
>SONNENSCHEIN NATH & ROSENTHAL LLP
>1221 Avenue of the Americas
>New York, NY  10020

>Jordan Sigale
>SONNENSCHEIN NATH & ROSENTHAL LLP
>8000 Sears Tower
>Chicago, IL  60606

>/s/  Maryellen Noreika (#3208)
>Maryellen Noreika (#3208)
>mnoreika@mnat.com