IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-833-KAJ |
| | ) | |
| SICOR INC. and SICOR PHARMACEUTICALS, INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO INTRODUCE INEQUITABLE CONDUCT EVIDENCE DURING THE LIABILITY PHASE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
Wilmington, Delaware 19899-1347
(302) 658-9200
  *Attorneys for Plaintiff,*
  *Pharmacia & Upjohn Company LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN HULBERT
  & BERGHOFF LLP
300 S. Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

Original Filed November 7, 2006
Redacted Public Version Filed November 9, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-833-KAJ |
| ) | |
| SICOR INC. and SICOR ) | **CONFIDENTIAL** |
| PHARMACEUTICALS, INC., ) | **FILED UNDER SEAL** |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO INTRODUCE INEQUITABLE CONDUCT EVIDENCE DURING THE LIABILITY PHASE**

Sicor's motion for leave to introduce evidence relating to inequitable conduct before the jury betrays a desire to taint the jury's perception of plaintiff and its attorneys and to use out-of-context snippets of testimony and partial documents to turn the liability phase of the trial into a jury referendum on potential inequitable conduct. To do so, however, would be prejudicial to Pharmacia, and precisely what the Court prohibited at the beginning of the Pretrial Conference. D.I. 304, p. 4 ("Do not endeavor to put in front of the jury, in any form or fashion, evidence that goes to these [inequitable conduct and unclean hands] defenses and is not specifically applicable to one of the issues that has to be before the jury.")

In support of its motion, Sicor attempts to use the presumption of validity as a loophole to vitiate the rule that equitable issues should be tried to the Court, not the jury. There is, however, no such loophole. Indeed, if there were, that loophole would apply in virtually every case and evidence of inequitable conduct would routinely be part of validity trials. But the Federal Circuit precedent is clear – inequitable conduct and issues involving the "conduct-of-the-applicant" should not be tried to the jury. *See Gardco Mfg, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987) ("Thus the conduct-of-the-applicant-in-the-PTO issue raised in the nonjury trial and the separated infringement/validity issues are distinct and without commonality either as claims or in relation to

1

the underlying fact issues."); *also Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366 (Fed. Cir. 2006). And the Federal Circuit has never endorsed Sicor's argument that less weight should be given to Patent Office determinations based on disclosures made to the PTO.

The Court has already ruled that it will not instruct the jury that patents are presumed valid. Sicor cannot, however, attempt to gut the presumption altogether by improperly attempting to raise the specter of impropriety before the Patent and Trademark Office in the validity phase in front of the jury. Finally, the evidence that Sicor identifies either (i) does not support Sicor's position when put in context, (ii) does not relate in any way to the strength of the presumption of validity, or (iii) does not relate to the nonobviousness arguments that Sicor has indicated in the Pre-Trial Order that it will rely upon for trial. Thus, Sicor's motion should be denied.

A.      **The Examiner Was Not Misled About the Use of Buffers to Adjust pH**

Sicor argues that it should be permitted to introduce evidence, including Dr. Gatti's testimony and the Lachman reference, to support its allegation that "the PTO received inaccurate and unreliable information concerning the conventional wisdom on the use of buffers to adjust pH levels." Sicor Memo, p. 4. Sicor, however, fails to demonstrate how its argument relates to any of the references that it has cited in the Pre-Trial Order in support of its obviousness defense – specifically the Wassermann, Janssen and Kaplan references. Moreover, this argument is based on partial answers taken out of context. Contrary to what Sicor would suggest in its edited testimony sound bites, Dr. Gatti never testified about

REDACTED

Further, Sicor is seeking to taint the jury through an argument related to alleged "burying" of the Lachman reference, a reference that Sicor is not even relying on to show obviousness. In short, Sicor's proposed evidence does not support its arguments, and could only serve to prejudice, confuse and mislead the jury.

Sicor frames its argument about possible conflicts between Dr. Confalonieri's declaration and Dr. Gatti's testimony through a series of partial sentence quotations that do not stand for the propositions for which Sicor cites them. Dr. Confalonieri indicated that, *prior to the inventors' discovery*, scientists would generally have used buffers rather than hydrochloric acid to adjust pH. Sicor Ex. D. In spite of Sicor's attempts to edit Dr. Gatti's answers, Dr. Gatti actually testified

REDACTED

When read as complete answers, Dr. Gatti's testimony means something completely different from what Sicor suggests.

Sicor next cites testimony in which Dr. Gatti indicated     REDACTED

REDACTED     Once again, however, Sicor's selective quotations paint an

---

[1]     pH is a measure of the concentration of H+ ion in solution. An acid is a chemical species that donates H+, a base is a chemical species that donates OH- (which forms water with H+) or accepts H+. A buffer is a solution containing both a weak acid and its conjugate base whose pH changes only slightly on the addition of acid or alkali. Thus, when a buffer is adjusting pH, it is doing so because it has a weak acid.

3

erroneous picture. Dr. Gatti explained REDACTED

REDACTED

In other words, Dr. Gatti's testimony is completely consistent with Dr. Confalonieri's statements in establishing that, contrary to conventional wisdom, the inventors determined that buffers were harmful during their inventive process:

REDACTED

Once again, Sicor ignores the timing of what Dr. Gatti knew when, and should not be permitted to confuse the jury with extraneous issues.

Next, Sicor twists Dr. Gatti's words to argue that he suggested that hydrochloric acid would be used instead of a buffer, when Dr. Gatti was actually testifying

REDACTED

4

REDACTED

In all of these instances, a complete review of the testimony makes it clear that Sicor's position has no merit whatsoever. However, the complexity of the testimony (and rough translation from Italian to English) makes the likelihood of jury confusion and prejudice high. The Court should not countenance that risk, especially when there is not benefit to allowing Sicor to introduce deceptive sound bites from that testimony.

Similarly, Sicor's arguments about the Lachman reference fail. As noted above, that reference is not one of the references that Sicor stated in the Pre-Trial Order that it is relying upon to prove obviousness, *i.e.*, the Wassermann Janssen and Kaplan references. Neither the timing nor the completeness of the inventors' citation of the Lachman reference relevant in any way to the conventional wisdom of using buffers to adjust pH. Furthermore, the Lachman reference actually supports *Pharmacia's position* regarding the conventional wisdom that a buffer should be used if the pH is critical to degradation. Sicor Ex. F, p. 41 ("Buffer salts are commonly used in the formulation

of pharmaceutical liquids to regulate the pH of the solution.").[2]

Indeed, Sicor's argument is nothing more than an attempt to take a shot at Pharmacia's counsel with accusations of misdeeds in the Patent Office. Sicor should not be permitted to tar Pharmacia with allegations of misconduct when the evidence is both irrelevant and duplicative of evidence that it can introduce without reference to misconduct.

### B.    The Examiner Was Not Misled About the Wassermann Reference

Sicor's argument of alleged deception regarding the Wassermann Reference is controverted by the documents and testimony, and cannot be fairly construed as anything other than hope that mudslinging will confuse the jury and prejudice it against Pharmacia. Neither the documents nor the testimony support Sicor's arguments; rather, the evidence in context directly contradicts Sicor's argument. But the proof of that context is sufficiently complex that the jury is likely to become confused and frustrated.

Sicor argues that certain "data and conclusions were wrong" because they involve the use of buffered solutions rather than solutions whose pH was adjusted using hydrochloric acid . *See* Sicor Memo, p. 6. Notably, Sicor provides no evidence that the data or conclusions were actually wrong – it does not show that a solution of pH 2.1 would be as stable as a solution of pH 2.5. To the contrary, later-reported data prove that a solution of pH 2.5 is substantially more stable than a solution of pH 2.1. *See* Ex. 2, p. 81 (Fig. 7). Thus, Sicor's argument is baseless.

Sicor's argument is also remarkable because it does not relate in any way to the January 6, 1993 Amendment that it discusses. In that Amendment, the inventors' only discussion of the Wassermann reference was to indicate that the reference involved adjustment with hydrochloric acid to a pH of 2.1 rather than a pH of 2.5, which resulted in inferior storage stability:

---

[2]    Even if the teachings of the Lachman reference were relevant, they are merely duplicative of the Wassermann reference itself, as Sicor admits in its brief. Sicor Memo, p. 5 ("Moreover, the Wassermann reference taught that ionic strength has a negative effect on doxorubicin stability.")

6

> Wasserman teaches adjusting an aqueous doxorubicin solution to a pH of 2.1 with hydrochloric acid. However, at this low pH the solution has inferior storage stability as compared with a pH of 2.5. Further discussion of Wasserman is to be found in Dr. Confalonieri's May 27, 1991 declaration, found at tab 2 to his present declaration.

Sicor Ex.. G, p. 5-6. Sicor does not attach the 1991 declaration to its motion nor seek to address the statements made therein. Instead, Sicor seeks to raise only Dr. Confalonieri's 1987 declaration. But in that 1987 declaration, Dr. Confalonieri clearly indicated that his data provided a buffer-solution-to-buffer solution comparison.. Sicor Ex. H, p. 3 (PU 0016668). He was trying to evaluate the variability of stability due to changes in pH; to ensure a more stable pH, he used buffer solutions. *See* Sicor Ex. F, p. 41 ("Buffer salts are commonly used in the formulation of pharmaceutical liquids to regulate the pH of the solution."). He was not providing a buffer-solution-to acid-adjusted-pH-solution comparison. Nor was he performing any tests that correlated with Wassermann's doxorubicin concentration (about $1/80^{th}$ of the lower end of the claimed concentration). That is, Sicor seeks to create the false impression that the Amendment and Dr. Confalonieri's 1987 declaration are an unfair comparison of the claimed solutions to the solutions of the Wassermann reference; yet that was not the point of Dr. Confalonieri's tests, and was not how his tests were portrayed to the PTO.

Furthermore, the sworn testimony confirms that the tests reported in the 1987 declaration are a fair comparison. For example, Dr. Gatti – in the testimony cited by Sicor – testified

REDACTED

7

REDACTED

While the data ultimately supports Pharmacia, it is technical and difficult to unravel, and would serve only as a side show to the real issues to be determined by the jury. Thus, Sicor should be prohibited from offering evidence and arguing to the jury that the Examiner was misled about the Wassermann reference.[3]

## C. The Examiner Was Not Misled About the Janssen Reference

Sicor finally seeks to present evidence that it claims "shows that the PTO considered inaccurate information about the scope and content of the Janssen prior art." Again, however, the support cited in Sicor's papers distorts the record beyond recognition to reach that conclusion. Pharmacia did not mislead the Patent Examiner – not only was the quoted fragment of a sentence correct in context and merely confirming something the Patent Examiner had already said, it was irrelevant to patentability. To explain all of this, however, would likely confuse the jury unnecessarily and Sicor should not be permitted to raise the point.

In a December 6, 1996 Office Action, the Examiner rejected the pending claims as obvious over the Janssen reference. Ex. 3. The Examiner specifically did _not_ rely on the concentration of the solutions disclosed in the Janssen reference, stating:

> Claims 31, 33-38, 40 and 42 are rejected under 35 U.S.C. § 103 as being unpatentable over Janssen et al (International Journal of Pharmaceutics, 23 (1985) 1-11).
>
> Janssen et al disclose a composition containing doxorubicin adjusted to pH 4 with

---

[3] This case contrasts specifically with *Syntex LLC v. Apotex, Inc.*, 407 F.3d 1371 (Fed. Cir. 2005), cited by Sicor. In *Syntex*, the Federal Circuit found that the case was "unusual" and wanted the district court to examine the prosecution history because of an "inconsistency between the views of two examiners."

> hydrochloric acid (page 4) ***but do not disclose the claimed concentration of doxorubicin***. However, since it would have been within the ordinary skill in the art at the time the instant invention was made to vary the concentration of the prior art composition, the claimed composition is deemed prima facie obvious over Janssen et al.

Ex.3, p. 2 (emphasis added). The inventors responded by distinguishing the claimed invention from the solutions disclosed in the Janssen reference on numerous bases, but not arguing concentration:

> Janssen merely relates to a doxorubicin-HCl salt dissolved in Tris or phosphate buffer or cell culture medium for determination of decomposition kinetics in the presence or absence of liposomes. While Janssen teaches that doxorubicin decomposition rates can be modulated by buffer choice and temperature, Janssen does not teach or suggest that any of the disclosed buffers are "pharmaceutically acceptable solutions" as recited in the present claims. Moreover, Janssen does not suggest that its results can be achieved irrespective of the manner of adjusting the pH, i.e., irrespective of using buffer. The reader knows only that the buffer used therein achieved the results disclosed. There is nothing in Janssen that implies the need for a storage stable physiologically acceptable solution of anthracycline glycoside. There is also nothing in Janssen that suggest the same result could be obtained by pH adjustment of a physiologically acceptable aqueous solvent medium with the use of a physiologically acceptable acid. Moreover, as the Examiner had acknowledged on page 2 of the prior Office Action, Janssen does not teach or suggest a concentration of anthracycline glycoside ranging from 0.1 to 100 mg/ml in pharmaceutically acceptable solution or otherwise.

Ex. 4, p. 4. The Patent Examiner accepted the distinction based on physiological acceptability, the use of hydrochloric acid instead of the buffers listed in the Janssen reference, and storage stability. On those bases – not concentration – she indicated that the claims of the '285 patent were allowable. Ex. 5.

Under these circumstances, it is clear that the Patent Examiner was not misled by the inventors. She considered concentration as a relatively unimportant issue for purposes of her decision – as witnessed by her rejection despite the use of concentrations in the Janssen reference different from those in the claims – but considered the other attributes of the Janssen solutions important. The inventors distinguished the claimed invention based on those other attributes. Sicor should not be permitted to accuse Pharmacia's counsel of misconduct when the quotations it seeks to emphasize are irrelevant. This is especially true because Sicor's arguments appear to be nothing more than an attempt to accuse Pharmacia's trial counsel of misconduct in front of the jury. Sicor

9

should instead argue the merits of its case.

## CONCLUSION

This Court should deny Sicor's Motion because allowing Sicor to offer the evidence it seeks to place before the jury risks infecting the jury with equitable issues that are irrelevant to the validity issues to be tried and because Sicor's arguments are without merit. Sicor should stick to traditional proof of obviousness and be prohibited from making accusations of misconduct before the jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Maryellen Noreika (#3208)*
_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
Wilmington, Delaware 19899-1347
(302) 658-9200
 *Attorneys for Plaintiff,*
 *Pharmacia & Upjohn Company LLC*

OF COUNSEL:

Daniel A. Boehnen
Joshua R. Rich
McDONNELL BOEHNEN HULBERT
 & BERGHOFF LLP
300 S. Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

November 7, 2006

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on November 7, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Steven J. Balick
> John G. Day, Esquire
> ASHBY & GEDDES

and that I also caused copies to be served upon the following in the manner indicated:

### BY HAND

Steven J. Balick
John G. Day
ASHBY & GEDDES
222 Delaware Avenue
Wilmington, DE 19801

### BY EMAIL

Reid L. Ashinoff
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, NY 10020

Jordan Sigale
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, IL 60606

/s/ Maryellen Noreika (#3208)
Maryellen Noreika (#3208)
mnoreika@mnat.com

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on November 9, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Steven J. Balick
>John G. Day, Esquire
>ASHBY & GEDDES

and that I also caused copies to be served upon the following in the manner indicated:

### BY HAND

>Steven J. Balick
>John G. Day
>ASHBY & GEDDES
>222 Delaware Avenue
>Wilmington, DE  19801

### BY EMAIL

>Reid L. Ashinoff
>David R. Baum
>SONNENSCHEIN NATH & ROSENTHAL LLP
>1221 Avenue of the Americas
>New York, NY  10020

>Jordan Sigale
>SONNENSCHEIN NATH & ROSENTHAL LLP
>8000 Sears Tower
>Chicago, IL  60606

>/s/ Maryellen Noreika (#3208)
>Maryellen Noreika (#3208)
>mnoreika@mnat.com