# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACIA & UPJOHN COMPANY,

Plaintiff,

v.

SICOR, INC. and SICOR
PHARMACEUTICALS, INC.,

Defendants.

Civil Action No. 04-833-KAJ

## DEFENDANTS' SUPPLEMENTAL RESPONSES TO INTERROGATORIES NO. 2, 4, 5, AND 6 OF THE FIRST SET OF INTERROGATORIES BY PLAINTIFF

Defendants Sicor Inc. and SICOR Pharmaceuticals, Inc. (collectively "Defendants" or "Sicor"), by and through their undersigned counsel, as and for their supplemental objections and responses to Interrogatories Nos. 2, 4, 5, and 6 of the First Set of Interrogatories by Plaintiff Pharmacia & Upjohn Company LLC ("Plaintiff" or "Pharmacia"), state as follows:

## GENERAL OBJECTIONS

1.     Defendants incorporate their general and specific objections from their previous response to Plaintiffs' First Set of Interrogatories.

2.     Defendants incorporate by reference their prior response to interrogatories No. 2, subpart No. 1, No. 4, subparts Nos. 1 and 2, No. 5, subparts Nos. 1 - 5, and No. 6, subparts Nos. 1 - 5.

## SPECIFIC RESPONSES AND OBJECTIONS

## INTERROGATORY NO. 2 SUBPART NO. 1

Describe in detail each factual and legal basis for Sicor's contention that "the manufacture, sale and offer for sale of Sicor's Idarubicin HCl does not infringe any valid and

enforceable claim of the '285 patent," and, as part of your response, identify in detail all facts and/or legal contentions that constitute the basis for Sicor's assertion of noninfringement; identify all documents that support, refute or are inconsistent with each of Sicor's assertion of noninfringement; and identify all corroborating witnesses or others having knowledge of any facts that relate to such assertion of noninfringement.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 SUBPART NO. 1

Defendants state that the following individuals may have knowledge regarding the subject matter of this interrogatory: Allyn Becker and Rosalie Lowe.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 4 SUBPART NO. 1

Describe in detail each factual and legal basis for Sicor's affirmative defenses, including without limitation, Sicor's assertions that: "Pharmacia is barred in whole or in part from maintaining this action and from recovering any damages or equitable relief thereunder" under the doctrine of laches, including citation to any case law that Sicor asserts supports its assertion; identify all documents that support, refute or are inconsistent with each of Sicor's affirmative defenses; and identify all corroborating witnesses or others having knowledge of any facts that relate to such affirmative defenses.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 SUBPART NO. 1

Defendants object to this interrogatory on the grounds that it is overly broad and unduly burdensome. Defendants further object to this interrogatory on the grounds that it seeks information covered by the attorney-client privilege or work product doctrine. Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: Pharmacia is barred in whole or in part from maintaining this action and from recovering any damages or equitable relief thereunder under the doctrine of laches because its delay in filing this action was for an unreasonable and inexcusable length of time after it knew or reasonably should have known of its claims, and the delay has materially prejudiced Sicor. Pharmacia was aware that Sicor filed an ANDA well before it was approved

- 2 -

and could have asserted its purported claim for patent infringement at that time. Pharmacia sent

Sicor a letter in August 2000 advising Sicor of the impending grant of the '285 patent, but took

no steps to follow up on that letter. Indeed, when Sicor began to sell its product commercially in

or about September 2002, Pharmacia stood silent and did not seek to enforce its rights. In 2003,

Pharmacia again sent a letter to Sicor regarding the idarubicin product, but again took no steps to

enforce its patent. Instead, it appears that Pharmacia was intent to wait until Sicor had developed

relationships with its customers and let potential damages mount. It was not until July 2004,

almost four years since the '285 patent issued, and almost two years since Pharmacia knew that

Sicor had began selling its product and after Sicor had changed its economic position based on

Pharmacia's inaction, that Pharmacia finally filed a lawsuit. To date, Pharmacia has offered no

justification for its unreasonable delay in bringing this action. Pursuant to Federal Rule of Civil

Procedure 33(d), Defendants intend to produce documents in response to Pharmacia's First

Request for the Production of Documents which are sufficient for Plaintiff to derive or ascertain

additional information in response to this interrogatory.

Defendants' investigation into these issues is continuing, and Defendants reserve the right

to supplement and/or amend the response to this interrogatory as appropriate as discovery

proceeds or after additional information becomes available.

INTERROGATORY NO. 4 SUBPART NO. 2

Describe in detail each factual and legal basis for Sicor's affirmative defenses, including without limitation, Sicor's assertions that: "Pharmacia is barred in whole or in part from maintaining this action and from recovering any damages or equitable relief thereunder" under the doctrine of **equitable estoppel**, including citation to any case law that Sicor asserts supports its assertion; identify all documents that support, refute or are inconsistent with each of Sicor's affirmative defenses; and identify all corroborating witnesses or others having knowledge of any facts that relate to such affirmative defenses.

- 3 -

<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 SUBPART NO. 2</u>

Defendants object to this interrogatory on the grounds that it is overly broad and unduly burdensome. Defendants further object to this interrogatory on the grounds that it seeks information covered by the attorney-client privilege or work product doctrine. Subject to and without waiver of any of the foregoing objections or the General Objections, at this time, Defendants respond as follows: Pharmacia is barred in whole or in part from maintaining this action and from recovering any damages or equitable relief thereunder under the doctrine of equitable estoppel because, during its delay in commencing this action, Pharmacia engaged in commercial negotiations and transactions with Sicor that conveyed to Sicor that Pharmacia did not intend to enforce its alleged patent against Sicor. Simultaneously with the service of this response, Sicor will serve subpoenas upon non-party witnesses Timothy Ruane and John McBride, who acted on behalf of Pharmacia and are knowledgeable about the business relations between Sicor and Pharmacia. Upon completing those depositions, Sicor will supplement this response.

Pharmacia's delay in filing this action was for an unreasonable and inexcusable length of time after it knew or reasonably should have known of its claims, and the delay has materially prejudiced Sicor. Pharmacia was aware that Sicor filed an ANDA well before it was approved and could have asserted its purported claim for patent infringement at that time. Pharmacia sent Sicor a letter in August 2000 advising Sicor of the impending grant of the '285 patent, but took no steps to follow up on that letter. Indeed, when Sicor began to sell its product commercially in or about September 2002, Pharmacia stood silent and did not seek to enforce its rights. In 2003, Pharmacia again sent a letter to Sicor regarding the idarubicin product, but again took no steps to enforce its patent. Instead, it appears that Pharmacia was intent to wait until Sicor had developed relationships with its customers and let potential damages mount. It was not until July 2004,

- 4 -

almost four years since the '285 patent issued, and almost two years since Pharmacia knew that Sicor had began selling its product and after Sicor had changed its economic position based on Pharmacia's inaction, that Pharmacia finally filed a lawsuit. To date, Pharmacia has offered no justification for its unreasonable delay in bringing this action. Sicor relied upon Pharmacia's conduct in connection with the business negotiations discussed above and in connection with Pharmacia consistent inaction in enforcing its alleged patent rights, and, as a consequence, Sicor will suffer material prejudice if Pharmacia is permitted to proceed with this action.

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants intend to produce documents in response to Pharmacia's First Request for the Production of Documents which are sufficient for Plaintiff to derive or ascertain additional information in response to this interrogatory.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

<u>INTERROGATORY NO. 5 SUBPART NO. 1</u>

Identify and describe in detail all natural persons having responsibility for the **research and development** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by identifying Sicor's corporate structure relating to the research and development of Sicor's Idarubicin Hydrochloride Injection Product (including but not limited to all subsidiaries; predecessors; and/or other related business entities owned, partially owned, controlled, and/or partially controlled by Sicor; and the function of all departments, groups, units, and/or divisions within each such entity pertaining to such production of Sicor's Idarubicin Hydrochloride Injection Product); identifying the role that each such individual had in the research and development of Sicor's Idarubicin Hydrochloride Injection Product; identifying all documents that relate to Sicor's corporate structure or the role that each such individual had in the research and development of Sicor's Idarubicin Hydrochloride Injection Product; and identifying all corroborating witnesses or others having knowledge of any facts that relate to Sicor's corporate structure or the role that each such individual had in the research and development of Sicor's Idarubicin Hydrochloride Injection Product.

<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 SUBPART NO. 1</u>

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

<u>INTERROGATORY NO. 5 SUBPART NO. 2</u>

Identify and describe in detail all natural persons having responsibility for the **manufacture** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by identifying Sicor's corporate structure relating to the manufacture of Sicor's Idarubicin Hydrochloride Injection Product (including but not limited to all subsidiaries; predecessors; and/or other related business entities owned, partially owned, controlled, and/or partially controlled by Sicor; and the function of all departments, groups, units, and/or divisions within each such entity pertaining to such production of Sicor's Idarubicin Hydrochloride Injection Product); identifying the role that each such individual had in the manufacture of Sicor's Idarubicin Hydrochloride Injection Product; identifying all documents that relate to Sicor's corporate structure or the role that each such individual had in the manufacture of Sicor's Idarubicin Hydrochloride Injection Product; and identifying all corroborating witnesses or others having knowledge of any facts that relate to Sicor's corporate structure or the role that each such individual had in the manufacture of Sicor's Idarubicin Hydrochloride Injection Product.

<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 SUBPART NO. 2</u>

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

<u>INTERROGATORY NO. 5 SUBPART NO. 3</u>

Identify and describe in detail all natural persons having responsibility for the **offer for sale** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by identifying Sicor's corporate structure relating to the offer for sale of Sicor's Idarubicin

Hydrochloride Injection Product (including but not limited to all subsidiaries; predecessors; and/or other related business entities owned, partially owned, controlled, and/or partially controlled by Sicor; and the function of all departments, groups, units, and/or divisions within each such entity pertaining to such production of Sicor's Idarubicin Hydrochloride Injection Product); identifying the role that each such individual had in the offer for sale of Sicor's Idarubicin Hydrochloride Injection Product; identifying all documents that relate to Sicor's corporate structure or the role that each such individual had in the offer for sale of Sicor's Idarubicin Hydrochloride Injection Product; and identifying all corroborating witnesses or others having knowledge of any facts that relate to Sicor's corporate structure or the role that each such individual had in the offer for sale of Sicor's Idarubicin Hydrochloride Injection Product.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 SUBPART NO. 3

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 5 SUBPART NO. 4

Identify and describe in detail all natural persons having responsibility for the sale of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by identifying Sicor's corporate structure relating to the sale of Sicor's Idarubicin Hydrochloride Injection Product (including but not limited to all subsidiaries; predecessors; and/or other related business entities owned, partially owned, controlled, and/or partially controlled by Sicor; and the function of all departments, groups, units, and/or divisions within each such entity pertaining to such production of Sicor's Idarubicin Hydrochloride Injection Product); identifying the role that each such individual had in the sale of Sicor's Idarubicin Hydrochloride Injection Product; identifying all documents that relate to Sicor's corporate structure or the role that each such individual had in the sale of Sicor's Idarubicin Hydrochloride Injection Product; and identifying all corroborating witnesses or others having knowledge of any facts that relate to Sicor's corporate structure or the role that each such individual had in the sale of Sicor's Idarubicin Hydrochloride Injection Product.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 SUBPART NO. 4

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 5 SUBPART NO. 5

Identify and describe in detail all natural persons having responsibility for the **importation** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by identifying Sicor's corporate structure relating to the importation of Sicor's Idarubicin Hydrochloride Injection Product (including but not limited to all subsidiaries; predecessors; and/or other related business entities owned, partially owned, controlled, and/or partially controlled by Sicor; and the function of all departments, groups, units, and/or divisions within each such entity pertaining to such production of Sicor's Idarubicin Hydrochloride Injection Product); identifying the role that each such individual had in the importation of Sicor's Idarubicin Hydrochloride Injection Product; identifying all documents that relate to Sicor's corporate structure or the role that each such individual had in the importation of Sicor's Idarubicin Hydrochloride Injection Product; and identifying all corroborating witnesses or others having knowledge of any facts that relate to Sicor's corporate structure or the role that each such individual had in the importation of Sicor's Idarubicin Hydrochloride Injection Product.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 SUBPART NO. 5

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 6 SUBPART NO. 1

Identify each and every entity within Sicor that has or has had responsibility for or with which Sicor has or has had a business relationship (whether by agreement, license, informal arrangement, or otherwise) relating to **research and development** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by describing the nature and terms of the responsibility or relationship; identifying the responsibilities of each entity within Sicor and every other entity under the relationship; identifying the date on which the relationship began (and, if applicable, terminated); identifying the person(s) involved in commencing, negotiating, maintaining, and/or deciding, if applicable, to terminate the relationship; identifying, if applicable, the reason(s) for deciding to terminate the relationship; identifying all documents that relate to what led up to, defines, describes, relates, or refers to that responsibility or

relationship; and identifying all corroborating witnesses or others having knowledge of any facts that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 SUBPART NO. 1

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 6 SUBPART NO. 2

Identify each and every entity within Sicor that has or has had responsibility for or with which Sicor has or has had a business relationship (whether by agreement, license, informal arrangement, or otherwise) relating to **manufacture** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by describing the nature and terms of the responsibility or relationship; identifying the responsibilities of each entity within Sicor and every other entity under the relationship; identifying the date on which the relationship began (and, if applicable, terminated); identifying the person(s) involved in commencing, negotiating, maintaining, and/or deciding, if applicable, to terminate the relationship; identifying, if applicable, the reason(s) for deciding to terminate the relationship; identifying all documents that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship; and identifying all corroborating witnesses or others having knowledge of any facts that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 SUBPART NO. 2

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 6 SUBPART NO. 3

Identify each and every entity within Sicor that has or has had responsibility for or with which Sicor has or has had a business relationship (whether by agreement, license, informal arrangement, or otherwise) relating to **offer for sale** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by describing the nature and terms of the responsibility or relationship; identifying the responsibilities of each entity within Sicor and every other entity under the relationship; identifying the date on which the relationship began (and, if applicable, terminated); identifying the person(s) involved in commencing, negotiating, maintaining, and/or deciding, if applicable, to terminate the relationship; identifying, if applicable, the reason(s) for deciding to terminate the relationship; identifying all documents that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship; and identifying all corroborating witnesses or others having knowledge of any facts that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 SUBPART NO. 3

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387, as organizational charts.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 6 SUBPART NO. 4

Identify each and every entity within Sicor that has or has had responsibility for or with which Sicor has or has had a business relationship (whether by agreement, license, informal arrangement, or otherwise) relating to **sale** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by describing the nature and terms of the responsibility or relationship; identifying the responsibilities of each entity within Sicor and every other entity under the relationship; identifying the date on which the relationship began (and, if applicable, terminated); identifying the person(s) involved in commencing, negotiating, maintaining, and/or deciding, if applicable, to terminate the relationship; identifying, if applicable, the reason(s) for deciding to terminate the relationship; identifying all documents that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship; and identifying all corroborating witnesses or others having knowledge of any facts that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 SUBPART NO. 4

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

## INTERROGATORY NO. 6 SUBPART NO. 5

Identify each and every entity within Sicor that has or has had responsibility for or with which Sicor has or has had a business relationship (whether by agreement, license, informal arrangement, or otherwise) relating to **importation** of Sicor's Idarubicin Hydrochloride Injection Product, including without limitation, by describing the nature and terms of the responsibility or relationship; identifying the responsibilities of each entity within Sicor and every other entity under the relationship; identifying the date on which the relationship began (and, if applicable, terminated); identifying the person(s) involved in commencing, negotiating, maintaining, and/or deciding, if applicable, to terminate the relationship; identifying, if applicable, the reason(s) for deciding to terminate the relationship; identifying all documents that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship; and identifying all corroborating witnesses or others having knowledge of any facts that relate to what led up to, defines, describes, relates, or refers to that responsibility or relationship.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 SUBPART NO. 5

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify documents SICOR-PNU 028530-028624, and SICOR-PNU 030069-030387.

Defendants' investigation into these issues is continuing, and Defendants reserve the right to supplement and/or amend the response to this interrogatory as appropriate as discovery proceeds or after additional information becomes available.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888

*Attorneys for Defendants*

- 11 -

*Of Counsel:*

Reid Ashinoff
Brian T. Moriarty
David R. Baum
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Dated:  August 31, 2005
160972.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of August, 2005, the attached **DEFENDANTS'**

**SUPPLEMENTAL RESPONSES TO INTERROGATORIES NO. 2, 4, 5, AND 6 OF THE**

**FIRST SET OF INTERROGATORIES BY PLAINTIFF** was served upon the below-named

counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire                                         **HAND DELIVERY**
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Joshua R. Rich, Esquire                                        **VIA FEDERAL EXPRESS**
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

Steven J. Balick

# EXHIBIT B

REDACTED

EXHIBIT C

<u>AGREED TO ISSUES OF FACT AND LAW</u>

I.  Whether Sicor can demonstrate by clear and convincing evidence that the '285 patent fails to disclose sufficient written description to support the scope of claim 9, which requires the following general proofs:

A.  the Scope of claim 9, as determined by the Court and

B.  the understanding of a person of ordinary skill in the art of the scope of the invention as disclosed in the written description of the invention as set forth in the operative patent application.

II.  Whether Sicor can demonstrate by clear and convincing evidence that the '285 patent fails to disclose sufficient written description to support the scope of claim 13, which requires the following general proofs:

A.  the Scope of claim 13, as determined by the Court; and

B.  the understanding of a person of ordinary skill in the art of the scope of the invention as disclosed in the written description of the invention as set forth in the operative patent application.

III.  Whether Sicor can demonstrate by clear and convincing evidence that claim 9 of the '285 patent would have been obvious to one of ordinary skill in the art at the time the invention was made over the Janssen and Wassermann references taken alone or in combination with one another, which includes the following general proofs:

A.  the scope and content of the prior art;

B.  the differences between the Janssen and Wassermann references taken alone or in combination with one another and claim 9 of the '285 patent;

C. the level of one of ordinary skill in the art at the time the invention of the '285 patent; and

D. objective evidence of non-obviousness (to the extent that evidence has a nexus with the claimed invention).[1]

    1. Commercial success of embodiments of the claimed invention, including those sold by Pharmacia, Sicor, Pharmachemie, and Gensia;

    2. Unexpected results provided by the claimed invention, including storage stability;

    3. Unexpected properties of the claimed invention;

    4. Long-felt, but unmet, need for the claimed invention;

    5. Skepticism of those in the art;

    6. Teaching away from the claimed invention by those in the art;

    7. Copying of the claimed invention, including by Sicor, Pharmachemie, and Gensia;

    8. Inability of Sicor to design around the claimed invention;

    9. Lack of non-infringing alternatives;

    10. Industry recognition of the importance of the claimed invention; and

    11. Licensing of the claimed invention.

IV. Whether Sicor can demonstrate by clear and convincing evidence that claim 13 of the '285 patent would have been obvious to one of ordinary skill in the art at the time the invention was made over the Janssen and Wassermann references taken alone or in

---

[1] Sicor does not concede that all of these proposed types of secondary considerations are recognized in the law.

combination with one another, in further view of Kaplan[2], which includes the following general proofs:

A.   the scope and content of the prior art;

B.   the differences between the Janssen and Wassermann references taken alone or in combination with one another, in further view of Kaplan, and claim 13 of the '285 patent;

C.   the level of one of ordinary skill in the art at the time the invention of the '285 patent; and

D.   objective evidence of non-obviousness.

    1.   Commercial success of embodiments of the claimed invention, including those sold by Pharmacia and Sicor;

    2.   Unexpected results provided by the claimed invention, including storage stability;

    3.   Unexpected properties of the claimed invention;

    4.   Long-felt, but unmet, need for the claimed invention;

    5.   Skepticism of those in the art;

    6.   Teaching away from the claimed invention by those in the art;

    7.   Copying of the claimed invention, including by and Sicor;

    8.   Inability of Sicor to design around the claimed invention;

    9.   Lack of non-infringing alternatives.

---

[2]   Pharmacia has moved *in limine* to exclude consideration of the Kaplan reference, as it was not identified in Sicor's answers to interrogatories or expert witness statement as a potentially invalidating reference.

V.    Whether Sicor can demonstrate by clear and convincing evidence that the '285 patent is unenforceable due to inequitable conduct, which requires the following general proofs:[3]

    A.    either an affirmative misrepresentation or an omission of material information, as detailed below; and

        1.    Misrepresentations

           a)    in the '285 patent specification that for concentrations over 2 mg/ml it would be difficult (if not impossible) to dissolve lyophilized forms of anthracycline glycosides;

           b)    in the '285 patent specification that actual stability tests had been conducted before filing on other anthracycline glycosides (e.g. idarubicin and epirubicin) and concentrations greater than 2 mg/ml.

           c)    during prosecution including declarations that Wasserman provided "no information" that would allow one skilled in the art to produce storage stable doxorubicin solutions when Dr. Confalonieri had demonstrable knowledge that the rate constant values and activation energy disclosed in Wassermann directly applied to the already well-known rate equations for estimating shelf-life of aqueous doxorubicin solutions.

           d)    during prosecution and in declarations regarding the purported prior use of buffers rather than acids to adjust the pH of an

---

[3]    Pharmacia does not agree that Sicor properly identified all of the issues it seeks to introduce in relation to its inequitable conduct defense.

anthracycline glycoside solution because those in the art did not previously recognize the deleterious effects of buffers on anthracycline glycosides.

e)    through the submission and reliance on false comparative testing of the claimed invention to a solution purported to be close to the Wassermann solution, but -- in fact -- was not.

2.    Failure to disclose

a)    that the subject matter of the '285 patent was publicly available before the critical date in reconstituted Adriamycin®.

b)    that it was known to Pharmacia before 1983 that anthracycline glycosides were more stable at an acidic pH than at an alkaline one from their manufacturing experience with doxorubicin and the falsity of contradictory statements that one of the novel aspects of the invention is that it teaches that anthracycline glycosides are stable in the claimed pH range.

c)    material information from the Australian and Canadian patent infringement litigations on related foreign patents including expert reports, Upjohn's invalidity position, and prior art (e.g. complete version of Lachman and U.S. Patent No. 4,310,515)

3.    Burying the Patent Examiner with two hundred and twenty-eight (228) separate references after allowance (including some of the highly material references at issue in the Australian litigation, which had been settled almost three years earlier) and not noting for the PTO that five of those

228 references (Schou, Windheuser, Sandell, Ilver and the incomplete version of Lachman) contradicted Pharmacia's *seriatim* arguments regarding what one of ordinary skill would have understood.

B.   an intent to deceive through the misrepresentation or omission, as detailed below.

1.   The inventors were demonstrably aware that stability testing had not been done;

2.   Dr. Gatti was demonstrably aware of the truth of lyophilizate solubility;

3.   Dr. Confalonieri was aware of the true facts about knowledge vis a vis Wassermann;

4.   One or more of Dr. Confalonieri, Richard Kelly, Emily Miao, Daniel Boehnen, Geoffrey Woods, Vittorino Ferrario, and R. Metelli had a known obligation to the USPTO and were aware or should have been aware that the comparative testing did not properly reflect the disclosure of Wassermann given the high materiality of the reference, the testing and the declaration to allowance of the patent.

5.   One or more of Dr. Confalonieri, Richard Kelly, Emily Miao, Daniel Boehnen, Geoffrey Woods, Vittorino Ferrario, and R. Metelli had a known obligation to the USPTO and were aware of the Canadian and Australian litigation, yet withheld material information while submitting other less material information;

6.   Moreover, the high materiality of most (if not all) of these misrepresentations and omissions leads to an inference of an intent to mislead.

VI.    Whether Sicor can demonstrate that Pharmacia's actions before the Patent Office and in this litigation result in a finding of unclean hands, as detailed below.[4]

    A.    Inequitable conduct set forth above.

    B.    Pharmacia informed Sicor through its predecessor-in-interest that it believed the Australian counterpart to the '285 patent to be invalid, and that the way Sicor manufactures its allegedly infringing product would not infringe any of the worldwide Gatti patents, even if they were valid.

    C.    Litigation misconduct, including

        1.    Contrary to Italian law, Pharmacia's counsel prepared at least one witness for his deposition and attempted to prepare at least one other.

        2.    During Dr. Bottoni's deposition, Sicor also first learned that Dr. Bottoni had executed and was acting pursuant to a consulting agreement with Pharmacia's counsel, McDonnell Boehnen Hulbert & Berghoff, LLP ("MBHB"), which was about one year *before* the deposition took place and which was never produced.

        3.    Pharmacia misrepresented to the Court that "none of [the inventors] are Pharmacia's employees or agents."

        4.    Pharmacia's counsel misrepresented to Sicor's counsel on June 21, 2005 (after the Bottoni agreement) that neither Pharmacia nor counsel could direct or control their appearance for deposition.

---

[4] Pharmacia has moved *in limine* to exclude consideration of any evidence of unclean hands, as no such evidence was identified in Sicor's answers to interrogatories or otherwise in discovery.

5.    During his testimony, Dr. Bottoni suggested that the agreement's geographic limitation on where his deposition could take place was suggested to him by Pharmacia's counsel, and that there was nothing other than the agreement that would have prevented him from traveling to the United States for the deposition.

VII.    If the '285 patent is not found invalid or unenforceable, the quantum of damages to which Pharmacia is entitled, including:

A.    But for Sicor's infringement, Pharmacia would have made additional sales of the claimed invention (proofs conforming to the traditional four *Panduit* factors);

B.    To the extent that lost profits are not proven, the reasonable royalty for the use made of the invention by Sicor (based on the *Georgia-Pacific* factors), together with interest and costs as fixed by the Court.

VIII.    Whether a permanent injunction should be issued in view of the four-factor test for injunctive relief reiterated by the United States Supreme Court in *eBay v. Mercexchange LLC*.

IX.    If the '285 patent is not found invalid or unenforceable, whether Pharmacia can demonstrate by clear and convincing evidence that Sicor's actions, including those enumerated below, in infringing the '285 constitute willful infringement.

A.    Sicor's deliberate copying of the ideas of Pharmacia in formulating its infringing product, including by rejecting alternative formulations;

B.    Sicor's failure, upon knowing of Pharmacia patent protection, to investigate the scope of the patent and form a good-faith belief that it was invalid or not infringed, including by not relying reasonably on competent advice of counsel;

C.  Sicor's behavior as a party to this litigation, including its vexatious litigation conduct;

D.  Sicor's size and financial condition;

E.  The lack of closeness of this case;

F.  The duration of Sicor's misconduct;

G.  Sicor's lack of remedial action;

H.  Sicor's motivation for harm;

I.  Sicor's attempts to conceal its misconduct, including by failing to disclose its pending ANDA and intentionally and willfully refusing to respond to Pharmacia's cease and desist letters;

J.  Sicor's pattern of stealing and copying Pharmacia's (and its predecessor-in-interest's) intellectual property, including trade secrets and patents relating to anthracycline glycosides.

X.  If the '285 patent is not found invalid or unenforceable, whether Pharmacia can demonstrate by clear and convincing evidence that Sicor's actions both with respect to willful infringement and in this litigation, including those enumerated below, make this an exceptional case.

A.  Sicor's deliberate copying of the ideas of Pharmacia in formulating its infringing product, including by rejecting alternative formulations;

B.  Sicor's failure, upon knowing of Pharmacia patent protection, to investigate the scope of the patent and form a good-faith belief that it was invalid or not infringed, including by not relying reasonably on competent advice of counsel;

- 9 -

C.      Sicor's behavior as a party to this litigation, including its vexatious litigation conduct;

D.      Sicor's size and financial condition;

E.      The lack of closeness of this case;

F.      The duration of Sicor's misconduct;

G.      Sicor's lack of remedial action;

H.      Sicor's motivation for harm;

I.      Sicor's attempts to conceal its misconduct, including by failing to disclose its pending ANDA and intentionally and willfully refusing to respond to Pharmacia's cease and desist letters;

J.      Sicor's pattern of stealing and copying Pharmacia's (and its predecessor-in-interest's) intellectual property, including trade secrets and patents relating to anthracycline glycosides.

# EXHIBIT D

REDACTED

# EXHIBIT E

REDACTED