IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACIA & UPJOHN COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-833-KAJ |
| | ) | |
| SICOR INC. and SICOR PHARMACEUTICALS, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PRELIMINARY JURY INSTRUCTIONS**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for guidance on your role as jurors in this case.

**Duty of Jury**

It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts, as you find them, to the law I will provide to you at the close of the evidence. You must follow my instructions on the law whether you agree with them or not.

Nothing I may say or do during the course of the trial is intended to indicate what your verdict should be.

**Evidence**

The evidence from which you will find the facts will consist of the testimony of witnesses, and the documents and other things admitted into evidence. In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence are not admissible under the Rules of Evidence.  You should not be influenced by a lawyer's objection or by my ruling on the objection.  If I sustain or uphold the objection, you should ignore the question or document in question.  If I overrule an objection and allow the matter into evidence, treat the testimony or document like any other evidence.  If I instruct you that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only.  If this does occur during the trial, I will try to clarify the issue for you at that time.

3.      I reemphasize, you should not consider testimony and documents I have excluded and not admitted into evidence.

4.      Anything you see or hear outside the Courtroom is not evidence and must be disregarded.  You are to decide this case solely on the evidence presented here in the Courtroom.

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  I will give you further instructions on these as well as other matters at the end of the case, but have in mind that you may consider both kinds of evidence.

2

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. I will give you some guidelines for determining the credibility of witnesses at the end of the case.

**Burden of Proof**

This is a civil case involving a patent. I'll explain some general things about patents in a bit. At this point, I want to talk about burdens of proof. In a civil case, which this is, the burden of proof is often, but not always, one of proof by a preponderance of the evidence, which simply means that the party asserting the claim has to produce evidence which, when considered in the light of all the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the claimant's evidence and the other party's evidence on opposite sides of a scale, the evidence on the claimant's side would have to make the scales tip somewhat to its side. If the claimant fails to meet that burden, your verdict must be for the other side.

Based on rulings that occurred in the case before this trial, the defendant, Sicor, has been held to be engaged in activities that would infringe the patent rights of the plaintiff, Pharmacia, if the Pharmacia patent is valid. The issues you will be concerned with in the first instance are about whether the patent is valid. If it is, we will need to discuss the issue of damages, that is how much money Sicor must pay to Pharmacia for infringing the patent.

Since Sicor is contending that the patent is not valid, it bears a higher burden of proof than the "preponderance of the evidence standard" that I've just described. To prevail on its contention that the patent is invalid, Sicor has the burden of proving that

3

contention by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. The burden to prove something by clear and convincing evidence is, as I said, a heavier burden than the burden to prove that same thing by a preponderance of the evidence. But the burden of clear and convincing evidence is not as heavy as the burden of proving something beyond a reasonable doubt. The "proof beyond a reasonable doubt" standard applies only in criminal cases, and therefore is not applicable in this case at all.

### Conduct of the Jury

In a few moments, I'm going to discuss with you the nature of the case to be presented to you. First, however, I have a few words about your conduct as jurors, and I have some logistical information to share with you.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, bring it to my attention promptly. There are important reasons for this, including the need for you to keep an open mind throughout the presentation of evidence.

Second, do not read or listen to anything touching on this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case. Please don't do any sleuthing on the internet, for example. You are to decide the case upon the evidence.

4

Again, do not reach any conclusion as to the claims until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

If you wish to, you may take notes during the evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. And remember that they are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. However, you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of the testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.    Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2.    Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Over-indulgence in note-taking may be distracting. You, the jurors, must pass on the credibility of witnesses; hence, you must observe the demeanor and appearance of each person on the witness stand to assist you in passing on his or her credibility. Note-taking must not distract you

from that task.  If you wish to make a note, you need not sacrifice the opportunity to make important observations.  You may make your note after having made an observation itself.

       3.     <u>Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors</u>.  In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes.  As I mentioned earlier, your notes are not official transcripts.  They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial.  They are valuable, if at all, only as a stimulant to your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.  You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

       4.     <u>Do not take your notes away from court</u>.  I repeat, at the end of each day, please leave your notes in the jury room.  At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

       **Some Logistical Information**

       1.  Temperature – dress in layers.  It is difficult for our landlord, the Government Services Administration, to maintain a constant temperature in the building.  That is particularly true when the seasons are changing and the temperature outside can be erratic.  So bring a sweater or jacket you can wear if the air conditioning is overdone but which you can take off if things get too warm.

2.  Jury Stickers – Please wear the stickers you've been given that identify you as jurors.  We don't have specialized access for you to the elevators or other common areas in the building.  You will be sharing those with the representatives of the parties and others who have business with the Court.  Everyone wants to help you maintain the appropriate detachment you must have in order to avoid being influenced by things outside the courtroom.  By wearing your stickers, you help the parties and others to preserve that detachment.  And please, do not be offended if the attorneys or court personnel or others involved in the trial seem stand-offish when you see them in the elevators or elsewhere in the building.  Again, they are not trying to be unfriendly, but they are obligated to avoid contact with you outside the context of the presentations in the courtroom.

3.  Security System and Timeliness – You'll recall that when you came into the building today, you had to go through a security screening system.  If you had a cell phone, you had to check that in with one of the Court Security Officers.  Such screening can cause delays, so please plan your arrival time at court in a manner that will allow you to be in the jury room before 9:00 a.m. each day of trial so that you can all come in and be seated together in the jury box promptly at 9:00.  I should note that, sometimes, the other participants in this proceeding may cause you to wait.  You will have done your part and arrived in the morning or after a break so that we can begin on time and yet you will be left in the jury room.  I promise that I will do my utmost to hold such delays to the absolute minimum.  We may be able to eliminate them entirely, but there are times during the course of a trial when matters arise which could not reasonably have been anticipated and which require the Court's attention.  For example, the

attorneys may have a legal issue which they need help resolving and in which it would not be appropriate to have you involved. If we have to deal with matters outside your presence, please be patient. Likewise, if I am required to deal with other proceedings, I ask your indulgence. Neither the Court nor the parties mean you any disrespect by a delay. On the contrary, your willingness to serve and the sacrifice of your time is deeply appreciated by all of us involved in these proceedings.

4. Schedule – A few additional words about the daily schedule: as I mentioned, we will begin taking testimony each day at 9:00 a.m. We will plan to have a break at mid-morning (at about 10:30), to recess for a one-hour lunch at approximately 12:30, to have a mid-afternoon break (at about 3:00), and to conclude the taking of testimony by 4:30 p.m. sharp. You can plan that you will be able to leave court each day by 4:30. We will meet only today and tomorrow this week. We'll reconvene next Monday, after the Thanksgiving holiday, to continue the trial.

**Nature of the Case**

[Preliminary instruction based on the Federal Judicial Center Production entitled "An Introduction to the Patent System"]

As you know by now, this is a patent case. Let me give you some of the background you will need to do your job as jurors in this case. This case will involve some special issues that the lawyers and I will endeavor to explain to you, but all patent cases involve some basics that I will talk about now. I'm going to try to tell you:

- What patents are;

8

- Why we have them;

- How people get them; and

- Why there are sometimes disputes that require us to call in a jury like you.

The United States Constitution gives Congress the power to pass laws relating to patents. It allows Congress ". . . to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." A patent, then, is an official grant by the United States Government, that gives its owner certain rights to an invention. Those include the right to keep others from making, using, selling or offering for sale the invention that is described in the patent. A patent lasts for a specific period of time, usually 20 years, and represents a bargain made between the government and the inventor. In return for the right to keep others from using the invention, the inventor must enhance the public knowledge, or what we sometimes call the "state of the art," by adding something new and useful to it. An example is Thomas Edison's invention of the light bulb. During the lifetime of the patent, its disclosure may inspire new inventions, and after it expires, the invention is free for anyone to use. It is this giving of something new and valuable to the public that justifies giving a patent to the inventor.

A patent is in many ways like a deed to a piece of property. It grants the owner the right to keep people off the property, or to charge them a fee - like rent - for using it. And, just as a deed indicates limitations on the rights of a landowner, a patent sets limits on the rights of an inventor.

9

The patent system works because the inventor is required to describe the invention in clear and specific terms, so that the boundaries of the invention can be understood by someone familiar with the technical field of the patent. Once a patent is issued by the government, it becomes available for public inspection. In that way, anyone who learns of the patent, and is interested, can read it.

Now that we understand what a patent is, let's take a closer look at the term "invention." An invention is a new way of solving a problem. The patent process begins in the mind of the inventor, and, in particular, when the invention is formulated in the mind of the inventor. Patent lawyers call this "conception." An invention is "conceived" when the idea occurs to the inventor clearly enough that he or she can write it down and explain it to someone.

To qualify for a patent, the invention needs to be new and useful. Also, it must not be obvious to one of ordinary skill in the field. If the inventor believes these requirements are met, he or she will prepare an application for filing with the United States Patent and Trademark Office in Washington, D.C. The Patent and Trademark Office, often called the PTO, is the agency of the federal government whose job it is to examine patent applications to make sure they are in proper form and comply with the requirements of the law.

The inventor can prepare the application for filing with the PTO, but usually it's drafted by an attorney who specializes in this work, or by a patent agent, who is not an attorney. The attorney or agent works with the inventor to be sure the invention is

described and claimed in a way that complies with the law and the regulations of the PTO. The application is basically a document in which the inventor describes the invention he or she is trying to protect. When the PTO receives the inventor's application, it assigns a patent examiner, a PTO staff person with background in the field – or "art" – that the claimed invention falls within, to examine the application and decide whether a patent can be granted.

There are three main parts to a patent. [Hold up patent in suit.] To begin with, there is some basic identifying information on the first page. On the upper right side of the page is the number assigned to the patent by the government. And on the left side is the title that describes the invention, the names of the inventors and sometimes the company they have assigned the patent to, and the date when the patent application was filed. There is also more detailed information on the first page, including a list of numbers following the caption "Field of Search." These numbers identify previously-issued patents the examiner looked at, or "searched," to make sure the applicant's claimed invention really is something new, not obvious, and thus patentable.

Also listed on the first page, and several following pages, are what we call "references," that is, previous patents or articles that describe the technology, or "prior art," known at the time the application was filed. It may seem strange to you that we call this pre-existing technology "prior art," even though it has nothing to do with artists. We use the word "art" in its broadest sense, to include inventions and other subject matter reasonably related to the claimed invention. We also refer to the latest

11

technology as "state of the art," and we say of someone who can understand and apply the technology, that he or she is "skilled in the art."

The second major part of the patent is what we call the "specification," or "written description." As is the case in the patent at issue in this case, it's usually the longest part of the patent. It includes an abstract, which is a brief summary of the invention; a background section that describes the nature of the problem the invention is supposed to solve; and a detailed description of one or more "embodiments" of the invention. An embodiment is a specific physical thing that incorporates the invention or it is a method that uses the invention. Some patents also include one or more drawings called "figures," that illustrate various aspects of the invention, but for some inventions drawings are not necessary.

The third part of the patent is the claims. These are the numbered paragraphs that appear at the end. These are of great importance because the claims are what give the public notice of the boundaries of the invention. They are similar to the description of property you may have seen in a deed, referring to precise measurements taken on the ground.

Now that we've discussed the main parts of a patent, let's take a look at how the PTO processes patent applications. This process, which is called "prosecution of the patent application," begins when the inventor's application arrives at the PTO mailroom. There, it receives a stamp that establishes its filing date. Applications go from the mailroom to the Office of Initial Patent Examination, which looks them over to make

sure all the required parts are there. This office also decides what field of technology an application relates to, and assigns it to the appropriate Examiner Group. Soon, it is assigned to an individual patent examiner for handling.

When the examiner turns to an application to begin the examination, he or she typically begins by reading it, especially the specification and claims, in order to come to a conclusion about whether the inventions described in the claims are patentable. A patent might contain one claim or many claims, and the examiner must make this conclusion about each individual claim. In order to make that decision, the patent examiner usually looks at patents that have been issued previously, in the same or very closely related fields of art. In most areas of technology, the examiner also has computer databases that contain additional information.

Another part of the examiner's job is to decide if the inventor's description of the invention is complete and clear enough to meet the requirements for a patent, including the requirement that the description enable someone of ordinary skill in the field to actually make and use it. It's important to note that the process of patent examination is private. In other words, the public does not know that someone has applied for a patent on an invention until the patent issues, or, in some cases, until the application has been pending for at least 18 months. The reason for this secrecy is to give the inventor a chance to get the examiner's reaction to the application and decide whether to withdraw it for whatever reason and keep the invention as confidential information.

13

The law requires the applicant to tell the examiner whatever he or she knows about the prior art, that might be important to the examiner's decision on whether to allow the patent. We call this the applicant's "duty of candor." One way the applicant can satisfy this duty is by bringing certain prior art to the attention of the examiner, either in the original application or in other submissions called "Information Disclosure Statements." In this way, the decisions of the examiner are based on both the information provided by the applicant, and on the information the examiner is able to find during the examination process.

Sometimes the examiner concludes that the application meets all the requirements we've discussed and allows the patent to issue at this first stage. But, more frequently, the examiner will reject the application as deficient in some respect. The examiner communicates the grounds for rejecting the application to the applicant in a paper referred to as an "Office Action." At that point, the applicant usually prepares a written response, called an "office action response" or simply a "response," either agreeing or disagreeing with the examiner. An applicant can submit amendments to the application designed to overcome the examiner's objection. An applicant who disagrees with the examiner can explain the reasons for the disagreement. This exchange of office actions and responses goes on until the examiner issues a Final Office Action, which may reject or allow some or all of the applicant's claims.

Once a Final PTO Office Action has occurred, and one or more claims have been allowed, the applicant is required to pay an issuance fee, and the patent is

14

granted. Then, on the date shown on the upper right corner of the first page of the patent, it is issued by the PTO and the inventor receives all the rights of the patent.

By the time a patent issues and the public can take a look at it, the record of what the examiner did is also made public. This is the patent's file, which is commonly referred to as "prosecution history," "file history" or "file wrapper." The file history contains the original application and all the communications between the applicant and the patent examiner, including a record of any rejections, the applicant's responses, and any amendments.

Once a patent is issued, the inventor - or the person or company the inventor has assigned the patent to - can enforce the patent against anyone who uses the invention without permission. We call such unlawful use "infringement," and often, though not in this case, whether a patent has been infringed is something that a jury will be asked to decide. Sometimes in a court case, you are also asked to decide about "validity," that is, whether the patent should have been allowed at all by the PTO. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or non-obvious in light of the prior art, or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

You may wonder why it is that you would be asked to consider such things when the patent has already been reviewed by a government examiner. There are several reasons to permit a jury to help answer a question about validity. First, there may be

15

facts or arguments that the examiner did not consider, such as prior art that was not located by the PTO or provided by the applicant. In addition, there is, of course, the possibility that mistakes were made, or important information overlooked. No process is perfect, including the process of granting patents. Also, unlike a court proceeding, prosecution of a patent application takes place in private, without input from people who might later be accused of infringement. So it is important that we provide a chance for someone who is accused of infringement to challenge the patent in court.

In deciding the issues of validity, it is your job to decide the facts of the case. I will instruct you about the law, which may include the meaning of certain words or phrases contained in the patent. But it is up to you, as exclusive judges of the facts, to apply the facts as you find them to the law, and decide the questions of validity in the case before you.

Now, I've just introduced you to a lot of new concepts, so, to further assist you, I'm going to have handed out to each of you a short glossary of words and phrases that frequently come up in patent cases.

**Course of the Trial**

The trial will now begin. First, each side may make an opening statement. An opening statement is neither evidence nor argument. It is an outline of what that party intends to prove, and is presented to help you follow the evidence as it is offered.

After the opening statements, Sicor, since it has the burden of proof, will present witnesses concerning whether the patent is or is not valid, and Pharmacia may cross-

examine those witnesses.  Then Pharmacia will present its witnesses, and Sicor may cross-examine them.  Both sides may offer documents in evidence.

When all the evidence is in on the question of validity, the attorneys will make their closing arguments on that issue, to summarize and interpret the evidence for you; then I will give you instructions on the law.  You will then retire to deliberate on your verdict regarding validity.  As, I've noted, we may need your further assistance after that question is answered.